# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

RUBY FREEMAN, *et al.*,

        Plaintiffs,

        v.

RUDOLPH W. GIULIANI,

        Defendants.

Civil Action No. 21-3354 (BAH)

Chief Judge Beryl A. Howell

---

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

### I.      PRELIMINARY STATEMENT

In their Amended Complaint [Doc. 22] ("Complaint"), Plaintiffs Ruby Freeman ("Freeman") and Wandrea Moss ("Moss" and, together with Freemen, the "Plaintiffs") have sued Defendant Rudolph Giuliani ("Giuliani") for defamation *per se*, intentional infliction of emotional distress, and civil conspiracy arising from statements attributed to Giuliani related to the contested 2020 Presidential Election ("Election") in the State of Georgia.  As will be discussed below, Plaintiffs' claims are inadequately pleaded, and, in any event, are barred by the First Amendment.  As a result, Plaintiff has failed to state any claim upon which relief can be granted as against Giuliani, the Complaint should be dismissed pursuant to FED. R. CIV. P. 12(b)(6).

## II.     PERTINENT FACTS

The following are the pertinent facts as alleged in the Complaint, referred to in the Complaint, or which the Court can take judicial notice of:[1]

Plaintiffs identify multiple statements that Plaintiffs attribute to Giuliani as the basis for Plaintiffs' claims, referring to them as the "Actionable Defamatory Statements".  Complaint at ¶¶ 27, 57-101.  The statements will be recited herein and then enumerated for ease of use throughout this memorandum.

### A.  <u>Statement 1</u>

First, Plaintiffs point to a document entitled "STRATEGIC COMMUNICATIONS PLAN GIULIANI PRESIDENTIAL LEGAL DEFENSE TEAM" ("***Statement 1***").  *See id.* at ¶ 57, n.42 (a true and correct copy is attached hereto as Exhibit A for the Court's convenience).  According to the Complaint, Statement 1 was generated by "authors" who were seeking to advance the Trump Campaign's "private political goals".  Complaint at ¶ 57.  Statement 1 did not become public until January 2022.  *Id.*  The Complaint dates the Statement at December 17, 2020.  *Id.* at n.42.  The Complaint also attributes Statement 1's custodianship to Bernard Kerik who it describes as an "ally" of Giuliani.  Complaint at ¶ 57, n.43.  Other than this and the fact that whoever the "authors" were included "Giuliani" in the title of the document, there are no facts pleaded that indicate that Giuliani authored the document, endorsed the document, commissioned the document's creation, or otherwise communicated the document to third parties.  *See generally* Complaint at ¶¶ 57-64.

---

[1] In deciding a motion under Rule 12(b)(6), a court may take judicial notice of public records from other proceedings. *See, e.g., Covad Commc'ns Co. v. Bell Atlantic Co.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (permitting judicial notice of facts contained in public records of otherproceedings). A court may also take judicial notice of historical, political, or statistical facts, or any other facts that are verifiable with certainty. *Mintz v. FDIC*, 729 F. Supp. 2d 276, 278 n.5 (D.D.C. 2010) (internal citation omitted). A court may also consider matters referenced in the plaintiff's complaint. *See Scott v. Dist. Hosp. Partners, L.P.*, 60 F. Supp. 3d 156, 161 (D.D.C. 2014), *aff'd*, 715 F. App'x 6 (D.C. Cir. 2018).

### B.  Statement 2

Second, Plaintiffs complain of the following statement on Giuliani's podcast on December

23, 2020 ("***Statement 2***"):

> There's a video recording in Fulton County, Georgia, of what is obviously, without any doubt, the theft of votes.  You have to be a naive child or a completely dishonest partisan not to realize that the observers are being thrown out of the room.  A phony excuse of a water main break was used. They still were thrown out of the room, didn't want to leave. Once they were all left and a last check was done around the hall, the workers for Atlanta—for Fulton County—the five or six, one of whom has a history of voter fraud participation, Ruby Freeman, uh, they scurry under these desks. Hardly where you would keep ballots, right?  And they start taking ballots out and then put them on a wheelbarrow sort of thing and wheel them around.  And you can see the ballots don't really look like, like absentee ballots that are in envelopes; they look more like pristine pieces of paper.  And then they're given out and very quickly are being counted, counted, counted, counted, there are times in which it appears that they were being counted more than one time—three, four, five, six, seven times, eight times. . . . [I]t's quite clear no matter who they're doing it for, they're cheating. It looks like a bank heist.

Complaint at ¶ 66.

### C.  Statement 3

The third statement complained of is a statement made on Giuliani's December 25, 2020

podcast ("***Statement 3***"):

> Live from Fulton County, let's watch the Democrats steal the election!  And there you see it.  Ruby Freeman and her crew getting everybody out of the center, creating a false story that there was a— that there was a water main break.  No water main break. They get everybody out. They wait, they wait, they wait.  They check, they check, they check, like they're gonna do a heist, and all of a sudden the crooks sprang into action.  They go under a desk covered like a casket, and they start pulling ballots out.  Tremendous numbers of ballots. And they bring them over to one counting stand, all the way over here, another counting stand, another—and they keep looking around to make sure there's nobody in the room! . . . Every once in a while, you look closely, you can them doing this—one ballot [gestures scanning a ballot multiple times].  You know what that does? That takes Biden and multiplies it by 5.  […]  [J]ust look at the tape. That accounts for anywhere from 40 to 80,000 votes.  The number then when we look at it on, was like 138,000 for Biden and 2,000 for Trump. Take those out of their numbers—Trump won Georgia honestly.  We want honest votes here.

Complaint at ¶ 69.

### D.  Statement 4

The fourth statement complained of is a statement made by Giuliani during an OAN

interview on December 30, 2020 ("***Statement 4***"):

3

There are five or six states that can make the difference here and that have the evidence already have the evidence that shows that the Biden people stole the election, and not only that, they have the evidence that shows that Trump actually had more votes.  Georgia is maybe the easiest to demonstrate because it's on video.  During that videotape, that we can all see right in front of our eyes, we can see them stealing the votes.  We can see them throwing out the people.  We can see them counting it four and five times.  We also have the statistics during that period of time, 120,000 votes for Biden, couple hundred votes for Trump, no observers, makes it totally illegal.  That alone changes the election.  That alone means that if you get rid of those illegal votes, Trump wins Georgia by 40 or 50 thousand votes. . . . Georgia has the one video tape, I consider it like the Zapruder film was to the Kennedy assassination, this film will live for a hundred years.  For a hundred years, this film will show that the the, the 2020 presidential election, there was an attempt to steal it.

[…]

I've heard Democratic senators get on television and say it's espionage to say that it was fraud.  You're not gonna tell me that. I see, I can see the fraud, it's in front of my eyes.  What am I supposed to do, close my eyes and make believe that in Fulton County, Georgia, when they closed the doors, and they got rid of the public, and they started triple counting ballots and it ends up being 120,000 for, for Biden and 3,000 for Trump?  They weren't cheating?  Am I stupid?

Complaint at ¶¶ 71-72.

### E.  Statement 5

The fifth statement complained of is a statement made during a Giuliani podcast on December 30, 2020 ("**Statement 5**"):

[T]he Fulton County vote counting [videotape], which in and of itself proves that Georgia was stolen by, uh, Joe Biden and by the Democrats.  That one video proves it.

[. . .]

[T]he first thing that the election workers do . . . is they, um, move out the observers. . . . [T]hey make sure there's no one around, they make sure the doors are locked so nobody else can come in, and then at a certain point they look around again, and they go under a table covered by a black, like a black blanket, and they start pulling out ballots. Now we begin with, why are ballots under a table? And then they start distributing those ballots for counting to three or four different areas where there are counting machines. And you can see it's done very hurriedly; it's done in a way suggesting that they are nervous about what they're doing, and by the way, even if these ballots were legitimate ballots, which I doubt they are, this would be entirely illegal.  And every one of those ballots would be declared null and void because each one of these ballots is being counted in violation of the law of Georgia that in fact there must be the public present when ballots are being counted. . . . [I]t looks an awful lot like a bank heist, doesn't it?

Complaint at ¶ 74.

### F.  Statement 6

The sixth statement complained of is actually not a statement of Giuliani, but rather of former President Trump's statements to Georgia Secretary of State Raffensperger and others during a call on January 2, 2021.  Complaint at ¶¶ 77-86 ("*Statement 6*").  The Complaint does not allege that Trump is acting as agent for Giuliani.  *See id.*  Trump does not mention Giuliani during the call.  *See id.*  Rather, Plaintiffs allege on "information and belief" that Trump was "republishing" Giuliani's statements during this call and that Giuliani "encouraged" Trump to make the call.  Complaint at ¶ 79.

### G.  Statement 7

The seventh statement complained of Giuliani made at the January 6, 2021 rally at the White House Ellipse ("*Statement 7*"):

> In Fulton County, Republican poll watchers were ejected, in some cases, physically from the room under the false pretense of a pipe burst. Water main burst, everybody leave.  Which we now know was a total lie.  Then election officials pull boxes, Democrats, and suitcases of ballots out from under a table. You all saw it on television, totally fraudulent.  And illegally scanned them for nearly two hours, totally unsupervised.  Tens of thousands of votes.  This act coincided with a mysterious vote dump of up to 100,000 votes for Joe Biden, almost none for Trump. Oh, that sounds fair.  That was at 1:34 AM.

Complaint at ¶ 88.

### H.  Statement 8

The eighth statement complained of was made by Giuliani made during an OAN interview on January 18, 2021 ("*Statement 8*"):

> I mean, they pretty much censored it while it was going on, so they would love to turn the page on it.  I mean, I get banned from any of the big tech things when I say that not only was there voter fraud, I have evidence of it, I've seen it, I have a motion picture of it.  I can show you the voter fraud in living color.  It was done in Fulton County, Georgia, it was well over 30,000 ballots were stolen. They were attributed to Biden instead of Trump.  Had they been caught and held to account for it, Trump would have won Georgia.

Complaint at ¶ 89.

### I.  <u>Statement 9</u>

The ninth statement complained of was made by Giuliani made during an OAN interview on June 14, 2021 ("***Statement 9***").   Complaint at ¶¶ 90-93.   During the dialogue, which reverberates similar talking points to the previous Statements, neither one of the Plaintiffs are mentioned by name.  *Id.*

### J.  <u>Statement 10</u>

The tenth statement complained of was made by Giuliani made during an OAN interview on July 23, 2021 ("***Statement 10***"):

> Giuliani:  How about the videotape that I have where they're shoving the thing into the machine three and four times so they can be recounted by the same two women that earlier in the day were passing around hard drives or flash drives that supposedly can't be used in Dominion machines, but can.
>
> OAN reporter:  Right.  We have this proof.
>
> Giuliani: I know we've lost the spin war, but we haven't lost the truth war.  I have the truth.

Complaint at ¶ 94.

### K.  <u>Statement 11</u>

The tenth statement complained of was made by Giuliani made during an OAN interview on December 10, 2021 ("***Statement 11***"):

> The situation in Georgia, uh, that videotape about as clear evidence of stealing votes as I've ever seen.  And it was mischaracterized by the Secretary of State, the crooked Governor Kemp, uh, the Democrats—I mean, they're all in league together… In any event, you've got a tape in, in, in Georgia that's crystal clear, it looks like a, it looks like a bank robbery, my goodness.  And, uh this [Pennsylvania tape] is very, very clear.  There are about ten others.  There's no doubt that people stole votes in that election for Biden, and the numbers are—I would say—way beyond what was necessary to switch the vote in about four states.  But they certainly are extremely significant and can't be ignored.  When people cheat in elections on some kind of substantial scale, how do you know in advance without investigating whether it affects the election or not?  Right?

Complaint at ¶ 96.

### L.  <u>Statement 12</u>

The twelfth and final statement complained of was made by Giuliani made during a January 12, 2022 podcast as he interviewed investigative reporter John Solomon ("***Statement 12***" and, collectively, the "***Statements***").  Complaint at ¶¶ 98-101.  During the dialogue, which reverberates similar talking points to the previous Statements, neither one of the Plaintiffs are mentioned by name.  *Id.*

### III.    SUMMARY OF ARGUMENT

Based on the Statements, Plaintiffs sue for:  (1) defamation *per se*; (2) intentional infliction of emotional distress ("IIED"); and (3) civil conspiracy to commit these torts.  Complaint at ¶¶ 163-191.  The Court should dismiss the Complaint in its entirety against Giuliani for various reasons.  First, Statement 1 is time-barred and there is no plausible allegation it was authored by or published by Giuliani.  Second, none of the Statements mention Plaintiff Moss by name and the Complaint is not pleaded in such a way to indicate that persons reasonably understood the Statements to be of and concerning her.  Third, several of the Statements also do not mention Plaintiff Freeman by name and the Complaint is not pleaded in such a way to indicate that persons reasonably understood those Statements to be of and concerning her.  Fourth, Giuliani cannot be vicariously liable for the statements of former President Trump and the civil conspiracy claim is inadequately and implausibly pleaded.  Fifth, the overwhelming majority of the Statements are protected opinions based on disclosed facts (video evidence) that listeners were free to draw their own conclusions on.  Sixth, Plaintiff Freeman failed to plead actual malice as to the Statements that accused her of having a criminal history.  Finally, the IIED claim is duplicative of the defamation claim and should be dismissed for the same reasons.

## IV.    ARGUMENTS AND AUTHORITIES

### A.    Overview Of Pertinent Legal Standards.

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain sufficient factual allegations that, if accepted as true, would state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Instead, plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In addition, a Rule 12(b)(6) motion is a proper vehicle for dismissal on an affirmative defense when the facts that give rise to the defense are clear from the face of the complaint. *See Greer v. Bd. of Trustees of Univ. of D.C.*, 113 F. Supp. 3d 297, 306 (D.D.C. 2015). Moreover, where a plaintiff is a public figure—as is the case here—tort claims based on the defendant's exercise of First Amendment rights, the plaintiff must plausibly plead that the defendant acted with actual malice. See *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 240 (D.C. Cir. 2021). The actual malice standard applies to all claims involving free speech – not just defamation claims. See *id.* at 243 (applying to false light claims); *Montgomery v. Risen*, 197 F. Supp. 3d 219, 267 (D.D.C. 2016), aff'd, 875 F.3d 709 (D.C. Cir. 2017) (applying to common law assault claim).

In addition to pleading actual malice, to succeed on their defamation claims, under D.C. law,[2] Plaintiffs must show that: (1) Giuliani made a false and defamatory statement concerning

---

[2] Giuliani does not believe that there is a material difference in the elements of defamation between D.C. and Georgia and, therefore, does not believe the Court needs to engage in a conflict of laws analysis at this stage.

plaintiffs; (2) Giuliani published the statement to a third party; (3) the statement's publication caused plaintiffs special harm or else was actionable as a matter of law irrespective of special harm. *Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005) (citing *Crowley v. N. Am. Telecommc'ns Ass'n*, 691 A.2d 1169, 1173 n.2 (D.C. 1997)); *see also, e.g., Farah v. Esquire Magazine*, 736 F.3d 528, 533-34 (D.C. Cir. 2013).  Further, since "[c]ostly and time-consuming defamation litigation can threaten [the] essential freedoms" guaranteed by the First Amendment, in order to preserve those freedoms "and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017).

To plausibly allege civil conspiracy, plaintiffs must allege Giuliani had "an agreement to take part in an unlawful action or a lawful action in an unlawful manner." *Hall v. Clinton*, 285 F.3d 74, 83 (D.C. Cir. 2002).  The elements of civil conspiracy consist of: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme. *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).  A plaintiff must allege a "meeting of the minds" as to some improper purpose, as it is an essential element of a conspiracy claim. *See Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997).  A plaintiff must also allege a causal connection between the overt act(s) taken in furtherance of the conspiracy and the alleged injury. *See id. at 321.*  Moreover, the plaintiff must allege these elements with particularity. *See Leon v. Murphy*, 988 F.2d 303, 310–11 (2d Cir.1993).

**B.      Statement 1 Is Time-Barred And Otherwise Non-Actionable Against Giuliani**.

According to the Complaint, Statement 1 was originally published on December 17, 2020. Complaint at ¶ 57, n.42.  Plaintiffs did not bring this action until December 23, 2021.  *See* Doc. 1. The statute of limitations for a defamation claim under either D.C. or Georgia law is one year.  *See* D.C. Code §12-301(4); Ga. Code Ann. § 9-3-33.  Where a complaint affirmatively demonstrates on its face that it is time-barred, dismissal is appropriate.  *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).  Therefore, no claim for defamation can lie against Giuliani as to Statement 1 and the Complaint should be dismissed as to that Statement.

Moreover, even if Statement 1 was not time-barred, there are no plausible allegations in the Complaint that Giuliani even made the Statement, was otherwise responsible for its contents, or published it to a third party.  These are all necessary elements of a defamation claim.  *See Oparaugo*, 884 A.2d at 76.  The allegations, rather, simply claim that an "ally" of Giuliani produced/published a document created by "authors" seeking to advance the "private political goals" of the Trump Campaign.  Complaint at ¶¶ 57-64.  Other than the fact that Giuliani's name is listed by whoever the "authors" are in the title of the document, there is no plausible allegation in the Complaint that Giuliani is in anyway responsible for the document.

Accordingly, any claim based on Statement 1 must be dismissed.

**C.      The Complaint Does Not Plausibly Allege Persons Understood The Statements As Referring To Moss**.

As the Court can see for itself, none of the Statements complained of mention Plaintiff Wandrea Moss by name.  *See generally* Discussion of Statements above.  A required element of defamation is that the statements be "of and concerning" the plaintiff.  *See Oparaugo*, 884 A.2d at 76.  To survive a Rule 12(b)(6) motion, Moss must allege that Giuliani's Statements "concerned"

her—that is, that a "reasonable listener" could think that Giuliani was referring to Moss even though he never named her. *Browning v. Clinton*, 292 F.3d 235, 247 (2002).  When a statement refers to a group, a member of that group may claim defamation if the group's size or other circumstances are such that a reasonable listener could conclude the statement referred to each member or "solely or especially" to the plaintiff.  *Id.; see also* RESTATEMENT (SECOND) OF TORTS § 564A (1977) ("Generally … no action lies for … defamatory words concerning a large group or class of persons," but it may when "the words are … reasonably understood to have personal application … [based on the] circumstances[.]").

Unlike Plaintiff Freeman, Moss was never named in any of the Statements.  In addition, Moss is never singled out by description—as in what color shirt she is wearing or other identifying characteristic—in any of the Statements.  The video—by Plaintiffs' own admissions—shows multiple persons.  Plaintiffs have not pleaded any specific, non-conclusory facts, that demonstrate that anyone understood Giuliani's Statements to be specifically of and concerning Plaintiff Moss.  For example, in the "harm" section of the Complaint, Moss lists multiple harms allegedly resulting from Giuliani's Statements.  Complaint at ¶¶ 151-62.  However, nowhere in this section or elsewhere in the Complaint is any allegation that anyone harassed Plaintiff due to *Giuliani's* Statements, as opposed to the myriad of others—including OAN who Plaintiffs previously non-suited—who were discussing the Fulton County voting issues.  Because there are no plausible allegations that anyone understood Giuliani's Statements as referring to her, Moss's claims must be dismissed.

**D.      The Complaint Does Not Plausibly Allege Persons Understood Statements 4, 5, 7, 8, 9, 10, 11, and 12 As Referring To Freeman**.

While Statements 1, 2, 3, and 6 do mention Freeman by name, the remainder of the Statements (4, 5, 7, 8, 9, 10, 11, and 12) do not.  For the same reasons as discussed above with respect to Moss, Freeman's Complaint must be dismissed as to Statements 4, 5, 7, 8, 9, 10, 11, and 12 because there are no plausibly pleaded allegations that anyone understood these Statements as specifically referring to Freeman.  Just as with Moss, the "harm" allegations as to Freeman contain no recitations that anyone harassed her due to Giuliani's Statements as opposed to the litany of persons who had made claims about her, including (apparently false) allegations that she had been arrested/had a criminal record regarding voting fraud that pre-date any of the public Statements Giuliani made regarding Freeman.  *See, e.g.,* https://www.snopes.com/fact-check/ruby-freeman-arrested-by-fbi/ (last visited June 6, 2022).  Accordingly, Freeman's claims based on these Statements (4, 5, 7, 8, 9, 10, 11, and 12) must be dismissed.

**E.      Statement 6 Claims And The Conspiracy Claim Must Be Dismissed**.

Plaintiffs' claim that Statement 6—made by former President Trump to Georgia officials—is somehow vicariously attributable to Giuliani must be dismissed as it has no basis in law or fact.  Plaintiffs admit that Giuliani did not make the Statement.  Complaint at ¶¶ 77-86.  Plaintiffs plead no plausible facts that would give rise to a theory of liability as against Giuliani resulting from Trump's Statement 6.  There are no facts that would indicate that a sitting president was somehow an "agent" Giuliani in making the Statement.  There are no other facts or legal theories pleaded that could attach liability.  Even the "republication" theory, assuming that even had legal legs to stand on, is not plausibly pleaded because there is nothing more than mere suspicion or surmise

that Trump learned the information from Giuliani as opposed to OAN or a host of other sources who were circulating information about Freeman.

The only other theory that could make Giuliani liable for Trump's Statement 6 would be under a civil conspiracy theory.  However, Giuliani's participation in any conspiracy with other parties is implausible and inadequately pleaded.  First, Plaintiffs have not pleaded the particularization of an agreement between Giuliani and the alleged co-conspirators as he is required to do.  In fact, Plaintiffs do not even identify who the alleged co-conspirators are.  *See* Complaint at ¶¶ 187-91.  Plaintiff has pleaded no specific facts that would give rise to an inference that Giuliani and some unknown third parties had a meeting of the minds on the far-sweeping plot that Plaintiffs allege in their Complaint – namely to engage a public disparagement campaign to harm Plaintiffs by making false claim about them.

In fact, the one piece of evidence Plaintiffs point to that supposedly demonstrates evidence of a Giuliani conspiracy is Statement 1, the "STRATEGIC COMMUNICATIONS PLAN GIULIANI PRESIDENTIAL LEGAL DEFENSE TEAM" document (Ex. A) actually militates against the argument of illegal conspiracy.  That document does not indicate a plan to disseminate false information, but rather to "educate the public" (*id.* at p. 1), to affidavits of witness testimony of voting issues in Fulton County (*id.* at pp. 1-2), a desire to "back up" claims (*id.* at p. 6), and, most importantly, with respect to claims about Freeman the documents sought "confirmation of arrest and evidence" (*id.* at pp. 20-21).  These are not the words of conspirators who seek to publishing knowingly false statements as they would not seek to "fact check" and "back up" claims that they knew were false.

Plaintiffs have not, and cannot, allege the particulars of any meeting between Giuliani and any other conspirators wherein they came to a meeting of minds to engage in an elaborate plot to

13

defame and injure Plaintiffs.  Further, there are no allegations in the Complaint of the time, place, and manner of how Giuliani and others came to a meeting of the minds and reached an agreement on the course of action Plaintiffs complain of.  Because Plaintiffs were required to—but did not—plausibly alleged the "who, what, where, when" of the supposed meeting of the minds and agreement of the conspirators, the claim must be dismissed.  *See United States ex rel. PCA Integrity Assocs., LLP v. NCO Fin. Sys., Inc.,* No. CV 15-750 (RC), 2020 WL 686009, at *30 (D.D.C. Feb. 11, 2020) (dismissing conspiracy claim where plaintiff only alleged a shared conspiratorial objective or "plan").

Accordingly, all claims based on Statement 6 and the civil conspiracy claim must be dismissed.

## F.    The Gravamen Of The Statements Were Protected Opinion.

All else aside, and in any event, the gravamen of the defamatory implications in the Statements are protected opinions.  In fact, *all* of the defamatory import of the Statements are essentially Giuliani's opinions and subjective interpretations of a publicly disclosed and available video, with the exceptions of certain statements about Freeman's alleged criminal history that are discussed below.

"[A] statement of opinion is actionable only if it has an explicit or implicit factual foundation and is therefore 'objectively verifiable.'"  *Washington v. Smith*, 80 F.3d 555, 556 (D.C. Cir. 1996) (quoting *Milkovich v. Lorain Journal Co*., 497 U.S. 1, 22 (1990)).  "[I]f it is plain that a speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable."  *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 597 (D.C. 2000) (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)).

14

Giuliani's Statements are clearly Giuliani's subjective views/conjectures on the video, as such, are protected as opinions drawn on disclosed facts. *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 365 (D. Mass. 2017).   As for Giuliani's commentary regarding what he saw on the infamous video—edited or not—the public at large was free to review the videos determine for themselves whether they agreed with Giuliani's conclusions.   Plaintiffs admit repeatedly that the video was publicly available and supposedly "refutes" Giuliani's claims.   *See* Complaint at ¶¶ 40-56.   Thus, no one who was interested in the subject relied on Giuliani for information about the video of Plaintiffs.

In every one of the Statements, Giuliani uses language that makes it clear to the listener to review the video for themselves (often playing during the Statements) or uses language like it "looks" like this or that, making it clear that this is Giuliani's subjective views:

| **Statement Number** | **Subjective/Advisory Language Used** |
|---|---|
| 2 | <ul><li>Mentions video recording.</li><li>Tells listener "you can see".</li><li>Use the word "appears".</li><li>Uses the phrase "it looks like".</li></ul> |
| 3 | <ul><li>Says "let's watch".</li><li>Tells listeners to "look at the tape".</li><li>Tells listeners to "look closely".</li></ul> |
| 4 | <ul><li>Video is playing during interview.</li><li>Referring to video playing, says "we can see".</li></ul> |

| | |
|---|---|
| | • Talks about what the "film shows". <br> • Says he "can see" fraud "in front of his eyes" referring to video. |
| 5 | • Video is playing during podcast. <br> • Referring to video, claiming "video proves it". <br> • Says it "looks like a bank heist". |
| 7 | • Tells audience what they "all saw" on television, referring to video. |
| 8 | • Tells audience, referring to video, he has a "motion picture" of the fraud in "living color". |
| 9 | • Video is playing during interview. <br> • Talks about what audience can "see them do" on the videotape. <br> • Invites listener to "watch" what happens on video. |
| 10 | • Refers to video where listener "can see" (in response to Sen. Dole's comments" alleged voter fraud. |

| 11 | <ul><li>Refers to videotape as "clear of evidence of stealing votes" as he has ever seen.</li><li>Refers to "tape" that "looks like" bank heist.</li></ul> |
|----|----|
| 12 | <ul><li>Talks about "famous video".</li><li>Says "looks like" ballots were hidden and counted multiple times.</li></ul> |

Very clearly, any ordinary reasonable listener would understand that Giuliani is simply drawing his own conclusions from a "famous" video that was publicly available for all to see about what was happening in Fulton County.  As such, all of Giuliani's statements about what was happening on the video are protected opinions on disclosed facts.  As a matter of law, Plaintiffs' claims should be dismissed to the extent it relies on Giuliani's commentary of what happened on the videos.

And as for Plaintiffs' state of mind and motivations for telling observers to leave, water leaks, etc., a number of courts have recognized that a person's motivations "can never be known for sure," even by that person.  *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993); *accord Greenspan v. Random House, Inc.*, 859 F. Supp. 2d 206, 224 (D. Mass. 2012) (concluding that statement about a person's motivations for filing a lawsuit "cannot objectively be proven as true or false"); *Gacek v. Owens & Minor Distrib., Inc.*, 666 F.3d 1142, 1147 (8th Cir. 2012) (noting that statements concerning a person's motivations for committing suicide were not objectively verifiable); *Murray v. HuffingtonPost.com, Inc.*, 21 F. Supp. 3d 879, 886 (S.D. Ohio 2004)

("[T]here are no objective tests to determine [a person's] internal motivation."). Here, Plaintiffs' subjective motivations as to their actions during Fulton County vote tabulations are not objectively verifiable and any of Giuliani's speculations regarding them are protected opinion and non-actionable.

### G.     The Complaint Fails To Plead Actual Malice As To Freeman's Alleged Criminal History.

Here, Plaintiff Freeman is clearly a limited purpose public figure. Whether Freeman is a public figure is a question of law to be resolved by the court. *See Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1293 n.12 (D.C. Cir.). Plaintiffs make clear in their Complaint, that prior to the Statements complained of, that there was a public controversy over the propriety of vote counting in Fulton County, Georgia. *See* Complaint at ¶¶ 37-56. Where a party has become a central figure to a public controversy—whether voluntary or not—that plaintiff has become a limited purpose public figure and must allege and prove actual malice to recover in defamation. *See Dameron v. Wash. Magazine*, 779 F.2d 736, 742-43 (1985). Here, Freeman chose to work as election worker and therefore voluntary placed herself in the crosshairs of the First Amendment and its heavy burden. However, even if she did nothing voluntarily and had "bad luck" she is still a limited purpose public figure relating to her actions as an election worker. *See id.*

As discussed above, where a public figure brings a tort claim based on speech, the First Amendment requires the plaintiff to plead and prove actual malice. This type of pleading requires more than "labels and conclusions" and a simple reference to the relevant legal standard. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The ill-will or wrongful motivation of the defendant is not sufficient to demonstrate actual malice. *See Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 90 (D.D.C. 2012); *see also Arpaio v. Zucker*, 414 F. Supp. 3d 84, 92 (D.D.C. 2019) ("[T]he

motivations behind defendants' communications—inspired by political differences or otherwise—do not impact whether defendants acted with actual malice as a matter of law.").

Rather, Plaintiff must show that Giuliani made the statements complained of with knowledge that the statements were false or with reckless disregard as to whether they were true or false. *See McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1301 (D.C. Cir. 1996). In order to prove that a statement was made with reckless disregard for the truth, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth" of his statements. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

Here, Plaintiff Freeman makes no attempt to plead that Giuliani knew that the Statements regarding Freeman and an alleged criminal history of voter fraud participation (Statements 1, 2, and 6) were false. She pleads no facts in the "Actual Malice" section of the Complaint to this effect. Complaint at ¶¶ 102-33. As discussed above there were stories circulating (true or not) that Freeman had been arrested and had a criminal history with voter fraud. Statement 1 itself raised the question of verification for the sources of these reports. Because there is no plausible allegation that Giuliani knew these statements were false—and he himself only made the statement once very early on—then Freeman's claims cannot lie to the extent they rely on Statements regarding her alleged criminal history with voter fraud.

### H. The IIED Claim Fails Because It Is Duplicative.

Plaintiffs' IIED claim rises or falls with their defamation claim, as the claims rely on the same facts. Complaint at ¶¶ 178-86. When a plaintiff relies upon the same factual allegations to establish both defamation and IIED, when the defamation claim fails, so must the IIED claim. *Couch v. Verizon Communs., Inc.*, No. 20-2151 (RJL), 2021 U.S. Dist. LEXIS 188637, at *14

(D.D.C. Sep. 30, 2021).  Therefore, because Plaintiffs' defamation claim must be dismissed, so must the IIED claim.

## V.    CONCLUSION

For all of the reasons discussed herein, the Court should dismiss the Complaint for failure to state a claim upon which relief can be granted.

Date:  <u>June 6, 2022</u>

               Respectfully submitted,

               By: <u>*/s/ Joseph D. Sibley IV*</u>

                   CAMARA & SIBLEY L.L.P.

                   Joseph D. Sibley IV
                   DC Bar ID: TX0202
                   1108 Lavaca St.
                   Suite 110263
                   Austin, TX 78701

                   Telephone:  (713) 966-6789
                   Fax:  (713) 583-1131
                   Email:  sibley@camarasibley.com

               **ATTORNEYS FOR RUDOLPH GIULIANI**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of June, 2022, I electronically filed the foregoing motion—together with the accompanying proposed order and memorandum of law—with the Clerk of the Court using the CM/ECF system, which I understand to have caused service on all counsel of record.

*/s/ Joseph D. Sibley IV*
Joseph D. Sibley I