## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUBY FREEMAN<br><br>*and*<br><br>WANDREA MOSS,<br><br>            *Plaintiffs*,<br><br>    v.<br><br>RUDOLPH W. GIULIANI,<br><br>           *Defendant*. | Civil Action No. 21-cv-3354 (BAH)<br><br> Chief Judge Beryl A. Howell |

### PLAINTIFFS' UNOPPOSED MOTION FOR ORDER APPROVING ALTERNATIVE SERVICE OF RULE 45 SUBPOENA ON THIRD-PARTY KATHERINE FRIESS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...............................................................................................................1

BACKGROUND .................................................................................................................2

    A.  Mr. Giuliani Identified Ms. Friess as the Principal Author of the Giuliani Strategic
        Plan. ....................................................................................................................2

    B.  Plaintiffs Seek Relevant Discovery From Ms. Friess. .........................................5

    C.  Plaintiffs Have Been Unable to Serve Ms. Friess with a Rule 45 Subpoena Despite
        Making Numerous Attempts over Many Months to Serve Ms. Friess at Addresses
        Identified as Recently Belonging to Her.............................................................6

LEGAL STANDARD.........................................................................................................12

ARGUMENT .....................................................................................................................14

    I.  ALL OF THE FACTORS COURTS CONSIDER WARRANT  PERMITTING
        PLAINTIFFS TO SERVE MS. FRIESS THROUGH ALTERNATIVE MEANS............14

    A.  It Appears Ms. Friess Is Aware of Plaintiffs' Lawsuit and Their Interest in Her
        Personal Knowledge but Is Evading Service. ..................................................14

    B.  Plaintiffs Have Made More Than Reasonable, Diligent Efforts to Serve Ms.
        Friess. ...............................................................................................................16

    C.  The Proposed Method of Alternative Service is Reasonably Calculated To
        Ensure Receipt of the Friess Subpoena.........................................................17

    II.  THE LAW OF THIS CIRCUIT DOES NOT FORECLOSE PERSONAL SERVICE
        WHERE, AS HERE, CERTAIN CONDITIONS ARE MET. ............................................18

CONCLUSION...................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. FBI*,
   186 F.R.D. 128 (D.D.C. 1998) .................................................................................. 18

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*,
   262 F.R.D. 293 (S.D.N.Y. 2009) .............................................................................. 13

*Bland v. Fairfax County, Va.*,
   275 F.R.D. 466 (E.D. Va. 2011) ............................................................................... 13

*Call of the Wild Movie, LLC v. Does 1-1,062*,
   770 F. Supp. 2d 332 (D.D.C. 2011) .................................................................... 18, 19

*Cordius Tr. v. Kummerfeld*,
   No. 99 CIV. 3200 (DLC), 2000 WL 10268 (S.D.N.Y. Jan. 3, 2000) ...................... 13

*Fed. Trade Comm'n v. Zurixx, LLC*,
   No. 219CV00713DAKDAO, 2020 WL 9255400 (D. Utah Dec. 21, 2020) ............. 13

*FTC v. Compagnie de Saint-Gobain-Pont-a-Mousson*,
   636 F.2d 1300 (D.C. Cir. 1980) .......................................................................... 19, 20

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989) .................................................................................................... 6

*Henderson v. Day*,
   No. CV 19-945 (RDM), 2021 WL 1978793 (D.D.C. May 17, 2021) ...................... 19

*Herbert v. Lando*,
   441 U.S. 153 (1979) .................................................................................................... 6

*In re Falcon Air Exp., Inc.*,
   No. 06-11877-BKC-AJC, 2008 WL 2038799 (Bankr. S.D. Fla. May 8, 2008) ...... 14

*In re Shur*,
   184 B.R. 640, 644 (Bankr. E.D.N.Y. 1995) ........................................................ 14, 15

*In re Subpoena to VaughnPerling*,
   No. 219MC00083CASEX, 2019 WL 8012372 (C.D. Cal. Dec. 2, 2019) ................ 13

*Ott v. City of Milwaukee*,
   682 F.3d 552, 557 (7th Cir. 2012) ........................................................................... 14

*New Jersey Bldg. Laborers Statewide Ben. Funds & Trustees Thereof v. Torchio Bros.*,
 No. CIV A 08-552, 2009 WL 368364 (D.N.J. Feb. 11, 2009) ................................................. 14

*New York Times Co. v. Sullivan*,
 376 U.S. 254 (1964).......................................................................................................... 6

*People v. Williams*,
 845 P.2d 1150, 1151 (Colo. 1993)........................................................................................ 16

*Performance Credit Corp. v. EMC Mortg. Corp.*,
 No. SACV07383DOCRNBX, 2009 WL 10675694 (C.D. Cal. Apr. 16, 2009) ...................... 13

*Sanchez v. Yu Lin Corp.*, No. 21-CV-2119 (TSC),
 2022 WL 4598653 (D.D.C. Sept. 30, 2022) ........................................................................... 17

*St. Amant v. Thompson*,
 390 U.S. 727 (1968).......................................................................................................... 6

*Ultradent Prods., Inc. v. Hayman*,
 No. M8–85 RPP, 2002 WL 31119425 (S.D.N.Y. Sept. 24, 2002) .......................................... 20

*United States ex rel. El-Amin v. George Washington Univ.*,
 No. 1:95-cv-02000-CKK, 2000 U.S. Dist. LEXIS 15635 (D.D.C. Oct. 23, 2000)  12, 16, 18, 20

*United States v. Philip Morris Inc.*,
 312 F. Supp. 2d 27 (D.D.C. 2004) ......................................................................................... 18

**Other Authorities**

Minute Order, *Fridman v. Orbis Bus. Intelligence Ltd.*,
 No. 1:17-cv-02041-RJL (D.D.C. Aug. 21, 2020) ...................................................... 13, 16, 18

Order, *OAO Alfa Bank v. Ctr. For Public Integrity*,
 No. 1:00-cv-02208-JDB (D.D.C. Jan. 6, 2004), ECF No. 122 ......................................... *passim*

Order, *Rich v. Butowsky*,
 No. 18-681 (D.D.C. Jan. 24, 2020), ECF No. 133........................................................... 12, 13

**Rules**

D.C. Super Ct. R. Civ. P. 4 .................................................................................................. 17

Fed. R. Civ. P. 4 ................................................................................................................... 14, 17

Fed. R. Civ. P. 45 ................................................................................................................. 12, 14

**Treatises**

Charles A. Wright & Arthur R. Miller, 9A Fed. Prac. & Proc. Civ. § 2454 (3d ed.)................... 12

## INTRODUCTION

Plaintiffs Ruby Freeman and Wandrea' ArShaye ("Shaye") Moss respectfully move this Court for permission to serve third-party Katherine Friess with a Federal Rule of Civil Procedure 45 subpoena via alternative methods.

Ms. Friess has personal knowledge that goes to the heart of Plaintiffs' claims against Defendant Rudolph Giuliani. As described more fully below, Mr. Giuliani has represented to Plaintiffs that Ms. Friess is the principal author of a December 2020 communications plan (the "Giuliani Strategic Plan" or "Plan"). The Plan proposed spreading lies about Ms. Freeman and Ms. Moss nationwide as part of an effort to sow distrust in the results of the 2020 election. Ms. Friess is accordingly an important witness in this case, with personal knowledge of the origins of Defendant Giuliani's lies about Plaintiffs; Defendant Giuliani's awareness of the falsity of his claims; the nature and reliability of Defendant Giuliani's sources for his claims, if any; and the extent to which he investigated his claims, if at all.

After Defendant Giuliani identified Ms. Friess as the principal author of the Giuliani Strategic Communications Plan (the "Giuliani Strategic Plan" or "Plan") on August 1, 2022, Plaintiffs promptly prepared a third-party subpoena to Ms. Friess and began their efforts to serve her on August 4, 2022. Over the last four months, Plaintiffs have made more than ten good faith attempts to personally serve Ms. Friess. Plaintiffs hired a private investigator to identify an address for Ms. Friess; attempted to serve Ms. Friess at six addresses identified as her potential residence or place of business; attempted to serve Ms. Friess via her counsel in litigation in federal court in Colorado seeking to quash a Congressional subpoena; and attempted to directly contact Ms. Friess by phone and email. Despite these efforts, Plaintiffs have not been able to serve Ms. Friess either personally or through her counsel in the Colorado litigation, who represented that he was not

authorized to accept service and stopped responding to Plaintiffs. Most troubling, Plaintiffs have evidence suggesting that Ms. Friess, a barred attorney, may be intentionally evading service. She closed a P.O. box after Plaintiffs attempted to serve her at that address, and Plaintiffs have evidence that she opened an email Plaintiffs sent her, attaching their subpoena, but refused to respond.

Given the importance of Ms. Friess's knowledge, Plaintiffs seek the Court's permission to serve Ms. Friess by alternative means the subpoena attached as Exhibit 1 to the Declaration of John Langford in Support of Plaintiffs' Unopposed Motion for Order Approving Alternative Service of Rule 45 Subpoena on Third-Party Katherine Friess (hereinafter, "Langford Decl."), having exhausted every other means of serving Ms. Friess. Plaintiffs are amenable to serving Ms. Friess via any method(s) preferred by the Court, and herein request permission to serve Ms. Friess by (1) emailing a copy of any order authorizing alternative service and the subpoena to each of her email addresses, (2) sending a copy of the order and confirmatory copy of the subpoena to all of the Colorado addresses Plaintiffs have attempted to serve Ms. Friess to-date, and (3) sending a copy of the order and confirmatory copy of the subpoena to Ms. Friess's attorney in the Colorado litigation regarding the Congressional subpoena for Ms. Friess's phone records.[1]

## BACKGROUND

### A.    Mr. Giuliani Identified Ms. Friess as the Principal Author of the Giuliani Strategic Plan.

In the near immediate aftermath of the 2020 presidential election, and after it became clear that his candidate of choice was likely to lose, Defendant Rudolph Giuliani launched a campaign to undermine the election by claiming it was "stolen." ECF No. 22 ¶¶ 57–64. Defendant Giuliani

---

[1] Pursuant to Local Civil Rule 7(m), Plaintiffs' counsel met and conferred with Defendant's counsel with respect to the requested relief. Defendant's counsel indicated that, while they have not seen the motion papers, they do not oppose the relief requested, and otherwise take no position on the motion.

targeted Ms. Freeman and Ms. Moss as part of that effort, accusing them of committing election fraud while serving as nonpartisan election workers in Fulton County, Georgia in the 2020 presidential election. *Id*. ¶¶ 19–20, 30–32. He publicly and widely accused Ms. Freeman and Ms. Moss of, for example, hiding illegal ballots in suitcases, orchestrating a plan to kick out Republican election observers in order to count the illegal ballots, counting ballots for President Biden multiple times, and passing around a flash drive to hack vote-counting machines. *Id.* ¶¶ 57–101.

Targeting Mr. Freeman and Ms. Moss was a strategic and intentional decision. The elements of the election subversion campaign—including the plan to defame Ms. Freeman and Ms. Moss nationwide—are detailed in the Giuliani Strategic Plan written by the "Giuliani Presidential Legal Defense Team" as part of a "communications outreach campaign to educate the public on the fraud numbers." ECF No. 26-3 *see also* ECF No. 31 at 6.[2]  The Plan included a roadmap of steps to achieve the explicit goal of "disregard[ing] the fraudulent vote count and certify[ing] the duly-elected President Trump." Langford Decl. Ex. 2.[3]

The Plan identified Ms. Freeman and Ms. Moss as targets of its communication plan, and itself contained the following defamatory statements about Ms. Freeman and Ms. Moss:

- "Video of Ruby and Shay [*sic*] at midnight" at which time the document alleges there was a "200,000 vote bump" as a result of "a lie to get the Republican observers and media to leave at 10:30 p.m.";

- "Ruby Freeman is seen surreptitiously & illegally handing off hard-drives ON CAMERA"; and

- "**'Suitcase Gate'** - Video of "ballot stuffing" when "suitcases" (container type) filled with ballots (approximately 6,000 in each container) were rolled out from under table at GA arena and placed in

---

[2] The Court observed the significance of the Giuliani Strategic Plan to Plaintiffs' defamation and civil conspiracy claims in denying Defendant Giuliani's motion to dismiss. *See, e.g.*, ECF No. 31 at 21–22, 24–25.

[3] All exhibits referenced herein are exhibits to the simultaneously filed Langford Declaration.

> tabulation machines (one batch repeatedly tabulated at least 3 times) by [X number] of poll workers who remained AFTER all Poll Watchers (GOP and the like), press and all third parties were required to leave the premises per announcement at or about [___ AM] until [___ AM] in violation of election laws enacted by GA state legislature. Ruby Freeman (woman in purple shirt on video), now under arrest and providing evidence against GA SOS Stacey Abrams and DNC on advanced coordinated effort to commit voter / election fraud [*need confirmation of arrest and evidence*]."

Ex. 2 at 3, 9, 20; ECF No. 31 at 10, 31. For more than a year, Defendant used his platform and position of power to execute the Plan and publicly accuse Plaintiffs of performing numerous "election fraud" activities including hiding illegal ballots in suitcases, expelling Republican election observers in order to count the illegal ballots, counting ballots for President Biden multiple times, and passing around a flash drive to hack vote-counting machines. ECF No. 22 ¶¶ 57–101.

Discovery from Defendant and others taken in this action has revealed that Ms. Friess possesses critical first-hand knowledge regarding the Giuliani Strategic Plan and Defendant Giuliani's role in its creation and execution. Most importantly, Defendant Giuliani identified Katherine Friess as the principal author of the Giuliani Strategic Plan. Ex. 3 at 4 (Amended Answer to Interrogatory 4). Defendant Giuliani's discovery responses further indicate that Ms. Friess may have proposed "to implement the substance of the document" to then-President Trump. *Id.* Additionally, Ms. Friess appears on 48 entries in Defendant Giuliani's first privilege log. Ex. 4.[4] Notably, the communications on which Ms. Friess was copied include a December 27, 2020, email purportedly regarding "legal advice from Rudolph Giuliani regarding Georgia state litigation and hearings." *Id.* at 11 (Entry No. 128). That is remarkable, given that Defendant Giuliani helped spread lies about Ms. Freeman and Ms. Moss in hearings before the Georgia legislature and that

---

[4] Ms. Friess appears as the author or recipient on entry numbers 13, 21, 23, 25, 31, 34, 41, 47–48, 59, 65, 67, 84, 86, 88, 91–92, 96, 104–06, 111, 119, 128, 134, 155, 158, 168, 171, 184, 192–93, 207, 223, 225, 229, 266, 270, 272, 278, 280, 293, 391, 406, 410, 568, 588, and 630.

the Giuliani Strategic Plan may have "been published on or right before December 27, 2020." *See* ECF No. 31 at 14. Finally, at Mr. Giuliani's ongoing disciplinary hearing before the D.C. Bar's Board on Professional Responsibility regarding Mr. Giuliani's actions to overturn the 2020 presidential election results, Mr. Giuliani testified on December 15, 2022, that "Katherine [Friess] had a reluctance to testify but had an extraordinary amount of information" relevant to his activities.[5]

### B.    Plaintiffs Seek Relevant Discovery From Ms. Friess.

Plaintiffs seek to obtain documents and testimony from Ms. Friess that are directly relevant to the case against Mr. Giuliani and demonstrate Ms. Friess' personal knowledge about issues in dispute. The Rule 45 subpoena Plaintiffs hope to serve includes requests relating to:

- the Giuliani Strategic Plan, including but not limited to any drafts and documents relating to the reasons for its creation, the names of all individuals involved, and the research that went into its creation;

- claims made in the Giuliani Strategic Plan about Plaintiffs or election administration in Georgia, including but not limited to claims about the Plaintiffs that are specifically identified as central to the "[n]ationwide communications outreach campaign to educate the public on the fraud numbers, and inspire citizens to call upon legislators and Members of Congress to disregard the fraudulent vote count and certify the duly-elected President Trump"; and

- Ms. Friess' role in the creation and authorship of the Giuliani Strategic Plan, including but not limited to the purpose of the plan, the individuals involved in its creation and the individuals involved in its implementation, and specifically Mr. Giuliani's role in the creation and implementation of the Giuliani Strategic plan.

*See* Ex. 1 (Proposed Subpoena to Katherine Friess).

These documents will enable Plaintiffs to assess Defendant's representation about Ms. Friess's role in crafting the Plan. They will also shed light on Defendant's subjective knowledge

---

[5] There is no transcript available of these proceedings yet. However, members of Plaintiffs' counsel team watched Mr. Giuliani testify on December 15, 2022, via a livestream of the proceedings.

of the falsity of his claims; what, if any, steps he took to investigate his claims; whether Defendant Giuliani relied on any sources and, if so, the reliability of those sources; and the extent to which Defendant Giuliani's continued to publish claims about Plaintiffs because of a preconceived narrative. Those are material facts that go to, among other things, whether Defendant Giuliani published his claims about Plaintiffs' with knowledge or reckless disregard of the falsity of those claims, i.e. with "actual malice." *See, e.g.*, *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964) (actual malice standard); *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989) (avoidance of the truth); *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) (fabrication and unreliable sources); *Herbert v. Lando*, 441 U.S. 153, 163–64 (1979) (improper motive).[6]

### C.   Plaintiffs Have Been Unable to Serve Ms. Friess with a Rule 45 Subpoena Despite Making Numerous Attempts over Many Months to Serve Ms. Friess at Addresses Identified as Recently Belonging to Her.

Since August 4, 2022, Plaintiffs have spent considerable time and resources attempting to serve Ms. Friess on more than 10 occasions. Ex. 5 (Felter Affidavit of Due Diligence). Plaintiffs retained a private investigator to assist their efforts to locate Ms. Friess. *Id.* Along with information gathered by Plaintiffs' private investigator, Plaintiffs relied on contact information identified in connection with the investigation by The Select Committee to Investigate the January 6th Attack on the United States Capitol (the "January 6th Committee"). On February 22, 2022, Ms. Friess filed a complaint in Colorado federal district court seeking to quash a subpoena AT&T received from the January 6th Committee seeking access to her phone records. *See* Ex. 6 (Compl., *Friess v. Thompson*, No. 22-cv-448 (D. Colo. Feb. 22, 2022), ECF No. 1) ("Colorado Action"). Ms. Friess attached to her complaint a copy of a letter AT&T transmitted to Ms. Friess, enclosing a copy of

---

[6] Plaintiffs pled, but do not concede they must prove, that Defendant acted with actual malice.

the January 6th Committee's subpoena, and a declaration executed by Ms. Friess. *See* Ex. 7 (AT&T Letter); Ex. 8 (Friess Declaration).

The Colorado Action provides Ms. Friess's contact information and evidence of her location. The AT&T Letter listed Ms. Friess's email address as "KEF@hushmail.com" and her home address as 1947 N. Uhle St., Arlington, VA 22201. Ex. 7 at 2. It is without question that Ms. Friess received the subpoena at the above email address. In her declaration, Ms. Friess attests, "I received an email on 9 February 2022 from the AT&T Global Legal Department stating that a subpoena had been issued to them by the January 6th Commission seeking the entirety of my personal phone records, including all metadata, from 1 November 2020 through 31 January 2021." Ex. 8 ¶ 8.

The Friess Declaration did not provide Ms. Friess's physical location. While AT&T's email listed a Virginia address for Ms. Friess, Ex. 7 at 2, Ms. Friess attested that she "reside[s] in the great state of Colorado," Ex. 8 ¶ 3. However, the Friess Declaration was executed in Providence, Rhode Island. *Id.* at 3.[7,8]

Plaintiffs' attempts to serve Ms. Friess are detailed below:

1. August 4, 2022: Based on Ms. Friess's attestation in the Friess Declaration, Plaintiffs initially sought to serve Ms. Friess in Colorado. In addition to attesting that she is a resident of Colorado, Ms. Friess attested that she is an attorney, licensed in Colorado and D.C. Ex. 8 ¶ 2. The D.C. Bar's attorney register lists Ms. Friess's license as suspended, and it

---

[7] Ms. Friess's lawsuit to quash the AT&T subpoena was ultimately unsuccessful and final judgement was entered on November 17, 2022, granting the January 6th Committee's motion to dismiss. Final Judgment, *Friess v. Thompson*, No. 22-cv-448 (D. Colo. Nov. 17, 2022), ECF No. 46.

[8] Neither Plaintiffs nor their process servers have located a Rhode Island address for Ms. Friess.

includes no address for Ms. Friess. Ex. 9. The Colorado Bar's attorney register lists Ms. Friess's license as "inactive," but includes a business address for her firm, Seven Good Stones, LLC, of 2121 N. Frontage Road West. 124 Vail, CO 81657. Ex. 10. Accordingly, Plaintiffs first attempted to serve Ms. Friess at that address on August 4. Exs. 5, 11 (Bryson Affidavit of Non-Service). This address turned out to be a UPS store. *Id.* Plaintiffs' server confirmed that Ms. Friess had a postal box at the store at that time, *id.*, but the server was told that Ms. Friess listed no forwarding address.

2. August 8, 2022: Plaintiffs' counsel next emailed the attorney who represented Ms. Friess in the Colorado Action to ask whether he would be willing to accept service. Ex. 12 (Emails to Friess's Counsel). The attorney responded the same day, replying, "I can not accept service on behalf of Ms. Friess as im not sure at this time that i will even be the attorney representing her in this matter." *Id.* Plaintiffs' counsel followed-up the same day to ask whether Ms. Friess's counsel had any information about her location but received no response. *Id.*

3. August 18, 2022: Still believing that Ms. Friess was a resident of Colorado, Plaintiffs attempted to serve Ms. Friess at 1265 N Frontage Rd W #3310 Vail, CO 81657, Exs. 5, 11, which is listed as Ms. Friess's address on voterrecords.com, Ex. 13. The server spoke with the current resident who claimed they did not know Ms. Friess and that Ms. Friess did not reside at that address. Exs. 5, 11.

4. August 19, 2022: Plaintiffs next attempted to serve Ms. Friess at the address listed on the AT&T Letter: 1947 N. Uhle St., Arlington, VA 22201, Ex. 7 at 2. This address is an apartment/condo complex. *See* Ex. 5. The server spoke with a concierge, who looked Ms.

Friess up in the complex's computer system and concluded that Ms. Friess had previously been a resident but was no longer a resident. *Id.*

5. <u>August 22, 2022</u>: Plaintiffs' counsel emailed Ms. Friess's counsel in the Colorado Action again to ask if that attorney would speak with Plaintiffs' counsel. Ex. 12. Plaintiffs received no response. *Id.*

6. <u>August 23 and 25, 2022</u>: Plaintiffs next attempted to serve Ms. Friess at 85 Aspen Pl., Edwards, CO 81632, including twice on August 23 and once on August 25, 2022. *See* Exs. 5, 11. That address is the address listed by the Virginia State Corporation Commission as the address for a company for which Ms. Friess is the registered agent. Ex. 14. That attempt was unsuccessful—after two attempts on the 23, the server spoke with a resident who claimed Ms. Friess did not reside at the address. *See* Exs. 5, 11.

7. <u>September 27, 28, and 30, 2022</u>: After Plaintiffs' service processor for the first Uhle St. attempt conveyed to Plaintiffs that perhaps Ms. Friess still resided at the address listed in the AT&T subpoena but in a different unit, Plaintiffs attempted to serve Ms. Friess at a different unit at 1947 N. Uhle St., Arlington, VA 2220. *See* Ex. 5. That effort was unsuccessful. *Id.*

8. <u>October 6, 2022</u>: Plaintiffs' counsel next tried to email Ms. Friess directly at four email addresses Plaintiffs and Plaintiffs' investigator located for her, Ex. 15 (email to Friess), including the address listed in the AT&T Letter, addresses the investigator located for Ms. Friess, and email addresses Defendant Giuliani identified as belonging to Ms. Friess in his first privilege log, Ex. 4 at 6; Ex. 5; Ex. 7 at 2. Plaintiffs attached their subpoena and asked if Ms. Friess would accept service. Ex. 15. Plaintiffs received no response. *Id.*

9. <u>November 15, 2022</u>: Plaintiffs attempted to serve Ms. Friess a fourth time at the 85 Aspen Place in Colorado with no luck. Ex. 5. The server spoke with a current resident who believed Ms. Friess had moved to Avon, Colorado three years prior. *Id.* Plaintiffs' counsel searched property records in Avon for any property under Ms. Friess's name or the name of a company registered to Ms. Friess in Colorado, Seven Good Stones, LLC, but located no current address for Ms. Friess. Langford Decl. ¶ 23.

10. <u>November 21, 2022</u>: Plaintiffs' investigator located one additional address for Ms. Friess in Tampa, Florida, and Plaintiffs attempted to serve Ms. Friess at that address. Ex. 5. That attempt was unsuccessful. *Id.* As noted below, it turned out this address belonged to Ms. Friess's ex-husband, who does not know where Ms. Friess now resides.

11. <u>December 1, 2022</u>: Realizing that Plaintiffs' initial email to Ms. Friess did not include one of the email addresses listed on Defendant Giuliani's privilege log as belonging to her, Plaintiffs' counsel emailed Ms. Friess at that email address and the four previous email addresses, all five of which Plaintiffs believe belong to Ms. Friess. Ex. 16.[9] This time, Plaintiffs' counsel requested a read receipt to notify Plaintiffs' counsel if the email was opened. Plaintiffs' counsel received notification that their email was opened seven times between December 1 and December 5, 2022. Ex. 17.

12. <u>December 1, 2022</u>: Plaintiffs' counsel attempted to call Ms. Friess's counsel in the Colorado Action and left a message asking her attorney to call Plaintiffs' counsel. At the

---

[9] Note that Plaintiffs' counsel also email Ms. Friess on November 23, 2022, requesting a read receipt. However, Plaintiffs' counsel failed to include the email address on Defendant Giuliani's privilege log and, by copying multiple of Plaintiffs' counsel, could not be sure that the read receipt for that email did not inadvertently capture email opens by members of Plaintiffs' counsel team.

time of this filing, that attorney has not returned Plaintiffs' counsel's call. Langford Decl. ¶ 24.

13. <u>December 5, 2022</u>: Plaintiffs' counsel contacted Ms. Friess's ex-husband, Brent W. Yessin, by phone to inquire about contact information for Ms. Friess. Mr. Yessin relayed that the Tampa address Plaintiffs attempted to serve on November 21, 2022, belonged to him, and that he has no current address information for Ms. Friess. Mr. Yessin conveyed that he believes Ms. Friess may reside in Vail, Colorado, but is not sure. Langford Decl. ¶ 25.

14. <u>December 6, 2022</u>: Plaintiffs' counsel contacted Defendant Giuliani's counsel to inquire whether he is in contact with Ms. Friess and/or has any contact information for Ms. Friess. Counsel for Defendant emailed a "V card" for Ms. Friess provided to him by Defendant Giuliani. Ex. 18. The contact information Defendant Giuliani has for Ms. Friess lists a phone number and one of the email addresses (KEF@hushmail.com) Plaintiffs emailed on October 6 and December 1, 2022.

15. <u>December 7, 2022</u>: Plaintiffs' counsel attempted to call the number listed on Defendant Giuliani's V card for Ms. Friess. The call did not go through; instead, calling that number yields a message that the recipient is no longer accepting calls at that number. Langford Decl. ¶ 26.

Troublingly, it appears Ms. Friess may be willfully evading service. On December 1, 2022, in preparing this motion, Plaintiffs' counsel called the UPS store located at 2121 N. Frontage Road West. 124 Vail, CO 81657—the address Ms. Friess previously listed as her business address in the Colorado Bar registry and the address at which Plaintiffs attempted to serve her on August 4. Plaintiffs' counsel was informed that Ms. Friess did have a P.O. box at that address at the time Plaintiffs attempted service, but that Ms. Friess has since closed this P.O. box. Langford Decl. ¶

22. In other words, it appears that Ms. Friess is actively taking steps to limit her available mailing addresses after Plaintiffs attempted to serve Ms. Friess at that address, and after Plaintiffs' counsel emailed Ms. Friess directly to apprise her of the subpoena and their efforts to serve her. In addition, as noted above, Ms. Friess apparently opened Plaintiffs' December 1, 2022, email and refused to respond. Exs. 16–17.

## LEGAL STANDARD

Rule 45(b)(1) provides that service of a third-party subpoena "requires delivering a copy to the named person." Fed. R. Civ. P. 45(b)(1). "In recent years a growing number of cases have departed from the view that personal service is required and alternatively have found service of a subpoena under Rule 45 proper absent personal service." Charles A. Wright & Arthur R. Miller, 9A Fed. Prac. & Proc. Civ. § 2454 (3d ed.). Courts, including in this District, have recognized that "alternative forms of service may be acceptable under Rule 45 in some circumstances," including "where the witness is aware of the lawsuit, knows that one of the parties is interested in h[er] testimony, and is aware that there have been multiple attempts at personal service, and where the proposed alternative service is reasonably designed to insure the witness' receipt of the subpoena." Ex. 19 at 2 (Order, *OAO Alfa Bank v. Ctr. For Public Integrity*, No. 1:00-cv-02208-JDB (D.D.C. Jan. 6, 2004), ECF No. 122) (hereinafter, "*OAO*"); *accord United States ex rel. El-Amin v. George Washington Univ.*, No. 1:95-cv-02000-CKK, 2000 U.S. Dist. LEXIS 15635, at *3–4 (D.D.C. Oct. 23, 2000); Ex. 20 (Order, *Rich v. Butowsky*, No. 18-681 (D.D.C. Jan. 24, 2020), ECF No. 133) (hereinafter, "*Rich*").[10] This construction ensures, as one court put it, that "[t]he Federal Rules of Civil Procedure . . . not be construed as a shield for a witness who is purposefully attempting to

---

[10] Orders unavailable on Westlaw or Lexis cited herein are attached as exhibits to the Declaration of Attorney John Langford.

evade service." *Cordius Tr. v. Kummerfeld*, No. 99 CIV. 3200 (DLC), 2000 WL 10268, at *2 (S.D.N.Y. Jan. 3, 2000).

Where alternative service is appropriate, courts have allowed service of a subpoena by a variety of methods—including by serving the third-party's counsel and/or serving the third-party via email or certified mail—as long as there is reasonable assurance that the individual will receive "fair and timely notice of its issues, contents, purpose and effect." Ex. 19 at 3 (*OAO*) (citing *United States ex rel. El-Amin v. George Washington Univ.*, No. 1:95-cv-02000-CKK, 2000 U.S. Dist. LEXIS 15635, at *23–4 (D.D.C. Oct. 23, 2000) (permitting service by posting on witness' residence with a confirmatory copy sent by certified mail where party unsuccessfully attempted service "on ten separate occasions")); *see also* Minute Order, *Fridman v. Orbis Bus. Intelligence Ltd.*, No. 1:17-cv-02041-RJL (D.D.C. Aug. 21, 2020) (hereinafter, "*Fridman*") (granting leave to serve Rule 45 subpoena via alternative means after six separate stakeouts); Ex. 20 at 1 (*Rich*) (permitting service of WikiLeaks via Twitter); *Bland v. Fairfax County, Va.*, 275 F.R.D. 466, 468– 71 (E.D. Va. 2011) (collecting case law and concluding methods other than personal service are sufficient).[11]

---

[11] *Fed. Trade Comm'n v. Zurixx, LLC*, No. 219CV00713DAKDAO, 2020 WL 9255400, at *1 (D. Utah Dec. 21, 2020) (permitting service by email, certified mail, and by leaving a copy at the same address where plaintiffs unsuccessfully attempted service on thirteen occasions over a three-month period despite, on several occasions, observing someone inside the home); *In re Subpoena to VaughnPerling*, No. 219MC00083CASEX, 2019 WL 8012372, at *4 (C.D. Cal. Dec. 2, 2019) (finding alternative service effective where witness "demonstrated actual knowledge of the subpoena," and where plaintiffs attempted to personally serve and mailing copy to witness at his last-known residence, and emailed to address witness used to correspond with plaintiffs' counsel); *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 293, 304 (S.D.N.Y. 2009) (following cases that "interpret Rule 45's personal service requirement liberally where the type of service used was calculated to provide timely actual notice" and after plaintiff "attempted personal service several times") (cleaned up); *Performance Credit Corp. v. EMC Mortg. Corp.*, No. SACV07383DOCRNBX, 2009 WL 10675694, at *2 (C.D. Cal. Apr. 16, 2009) ("a strong, and well reasoned minority now accepts that some other form of personal services, should the circumstances support it, is acceptable" and permitting service of subpoena by certified mail to the

## ARGUMENT

The Court should permit Plaintiffs to serve Ms. Friess by means other than in-person delivery.[12] As shown below, all of the factors courts consider when determining if alternative service is warranted are present here.

## I. ALL OF THE FACTORS COURTS CONSIDER WARRANT PERMITTING PLAINTIFFS TO SERVE MS. FRIESS THROUGH ALTERNATIVE MEANS.

### A. It Appears Ms. Friess Is Aware of Plaintiffs' Lawsuit and Their Interest in Her Personal Knowledge but Is Evading Service.

Ms. Friess is surely aware of Plaintiffs' lawsuit, their interest in her personal knowledge, and at least some of Plaintiffs' attempts to serve her. Ex. 19 at 2 (*OAO*). Plaintiffs have attempted to serve Ms. Friess personally on more than ten separate occasions. *See supra* at pp. 7–11. Plaintiffs' servers have attempted service at six different addresses where Ms. Friess is believed to reside, and Plaintiffs have contacted counsel known to represent Ms. Friess in other litigation, who

---

witness and his attorney after more than eight service attempts); *In re Falcon Air Exp., Inc*., No. 06-11877-BKC-AJC, 2008 WL 2038799, at *1 (Bankr. S.D. Fla. May 8, 2008) (finding alternative service effective where subpoena served on witness's wife at a residence owned by the witness and identified in public records); *In re Shur*, 184 B.R. 640, 644 (Bankr. E.D.N.Y. 1995) (finding Rule 45 does not require personal service where six unsuccessful service attempts, including multiple where process server conversed with a woman identifying as witness's wife, and where subpoena mailed to the witness's home address and personally delivered to witness's counsel in another proceeding).

[12] Notably, the text of Rule 45, unlike Rule 4, does not explicitly require personal service. *Compare* Fed. R. Civ. P. 45(b)(1) (serving "a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law"), *with* Fed. R. Civ. P. 4(e)(2)(A) (providing that plaintiff may effectuate the service by "delivering a copy of the summons and of the complaint to the individual *personally*" (emphasis added)). The "use of the word 'personally' in that part of Rule 4 would be 'pure surplusage' if Rule 45(b) were interpreted to require personal delivery by a specially designated agent." *Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012); *accord New Jersey Bldg. Laborers Statewide Ben. Funds & Trustees Thereof v. Torchio Bros.*, No. CIV A 08-552, 2009 WL 368364, at *2 (D.N.J. Feb. 11, 2009). Thus, while some courts have construed Rule 45 to require personal service, its text does not actually require as much.

conveyed that he was not authorized to accept service, *cf. In re Shur*, 184 B.R. at 644 (noting that it is not unreasonable to conclude that when counsel who represents a third-party witness in an unrelated matter "disclaim[s] authority to accept the subpoena on [the witness]'s behalf, counsel communicated to [the witness] the contents of that document").

Plaintiffs also emailed Ms. Friess directly at five different email addresses—at least one of which Ms. Friess is known to have received email at as recently as February 9, 2022, and Plaintiffs received notification that their email was opened seven times between December 1 and December 5, 2022. Ex. 19. As described above, Plaintiffs' email included a copy of their Subpoena to Ms. Friess and a cover note describing their efforts to serve Ms. Friess. *See* Exs. 15–16.

In addition, in preparing this motion, Plaintiffs learned that Ms. Friess closed the P.O. box at the address Plaintiffs first attempted to serve her on August 4, 2022, *following* Plaintiffs' service attempt. Langford Decl. ¶ 22.

On this record only, it is reasonable to infer that Ms. Friess is aware of Plaintiffs' lawsuit, their interest in her personal knowledge, and their attempts to serve her with a subpoena, and that she may be evading service. Buttressing this record, Ms. Friess is plainly aware of the interest in her personal knowledge about various aspects of Defendant Giuliani's broader scheme to undermine the 2020 election—conduct that is intimately related to the issues in this case, as evidenced by her challenge to the January 6th Committee's subpoena in court. Ex. 6. In addition, Ms. Friess is a lawyer with thirty-years' experience and is therefore familiar with the legal system and the mechanics of serving a witness. Ex. 8 ¶ 2 (Friess Declaration). She is no doubt aware that in Colorado, where she is licensed and was barred for decades, a lawyer has a duty not to "engage in conduct prejudicial to the administration of justice," which includes "attempt[ing] to avoid

service of process although [the lawyer] was aware of . . . efforts to effect the service." *People v. Williams*, 845 P.2d 1150, 1151 (Colo. 1993).

The most reasonable explanation for why Plaintiffs' myriad efforts to serve Ms. Friess have not succeeded is that she is deliberately evading service. And courts in this District have authorized alternative means of service where, as here, "multiple failed attempts to serve a witness give rise to a colorable allegation of evasion."[13] Ex. 19 at 3 (*OAO*); *see also El-Amin*, 2000 U.S. Dist. LEXIS 15635, at *3–4 (finding ten attempts at service "a reasonable attempt to personally serve" third party, "who may be evading service"); *Fridman* (granting motion for leave to serve Rule 45 subpoena via alternative means where there had been substantial time, energy, and money attempting to serve personally).

### B. Plaintiffs Have Made More Than Reasonable, Diligent Efforts to Serve Ms. Friess.

As detailed above, Plaintiffs have made more than diligent efforts to serve Ms. Friess. *See, e.g.*, *El-Amin*, 2000 U.S. Dist. LEXIS 15635, at *3–4 (granting motion for alternate service where plaintiffs "made a reasonable attempt to personally serve" a third-party witness). Over the course of four months, Plaintiffs have spent considerable time and money trying to serve Ms. Friess at six different addresses in three different states. *See supra* at pp. 7–11. In addition, Plaintiffs have attempted to contact Ms. Friess directly, through her counsel in the Colorado Action, and through her ex-husband. *Id.*

---

[13] There is no need to show proof of evasion as a necessary pre-condition to alternative service. Rather, the specter of possible evasion provides a strong basis for why courts may be inclined to adopt a flexible standard lest the law encourage purposeful evasion of legal process.

**C. The Proposed Method of Alternative Service is Reasonably Calculated To Ensure Receipt of the Friess Subpoena.**

Plaintiffs seek to serve Ms. Friess by alternate means through any method preferred by this Court, including as permitted by Rule 4 and District of Columbia law. *See* Fed. R. Civ. P. 4(e)(1); *Sanchez v. Yu Lin Corp.*, No. 21-CV-2119 (TSC), 2022 WL 4598653, at *3 (D.D.C. Sept. 30, 2022). Federal Rule of Civil Procedure 4(e)(1) allows service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." District of Columbia law allows Plaintiffs to employ "alternative methods of service" when "the court determines that, after diligent effort, a party has been unable to accomplish service by a method" specifically prescribed by District of Columbia law. D.C. Supr. Ct. R. Civ. P. 4(e)(3)(A). Service may be through "registered or certified mail, return receipt requested," or first-class mail requesting an acknowledgment, addressed "to the person to be served." D.C. Super Ct. R. Civ. P. 4(c)(4), 4(c)(5). However, the court may authorize alternative service "by any 'manner that the court deems just and reasonable,' so long as the chosen method is 'reasonably calculated to give actual notice of the action to the party to be served.'" *Sanchez*, 2022 WL 4598653, at *4.; *see* Ex. 19 at 3 (*OAO*).

Here, Plaintiffs propose three alternate means of service that will give actual notice of the action to Ms. Friess: (1) emailing a copy of any order authorizing alternative service and the subpoena to each of her email addresses, (2) sending a copy of the order and confirmatory copy of the subpoena to all of the Colorado addresses Plaintiffs have attempted to serve Ms. Friess to-date, and (3) sending a copy of the order and confirmatory copy of the subpoena to Ms. Friess's attorney in the Colorado litigation regarding the Congressional subpoena for Ms. Friess's phone records. These methods are reasonably calculated to give notice to Ms. Friess, given that Ms. Friess has opened the email Plaintiffs sent to her addresses; that Ms. Friess herself confirmed that she

received email at the kef@hushmail.com address as recently as February; and that Ms. Friess has clearly been in touch with her Colorado Action counsel this year. *See supra* at pp. 6–7; Exs. 6–8. In addition, these methods are similar to those previously approved by courts in this District under rule 45. *See, e.g.*, Ex. 19 (*OAO*) (delivery of the subpoena to the witness's attorney and to the witness's last known address by overnight delivery service); *El-Amin*, 2000 U.S. Dist. LEXIS 15635, at \*3 (posting the subpoena on the witness's residence and sending a confirmatory copy by certified mail); *Fridman* (posting a copy of the subpoena outside the lobby of the witness's place of residence, leaving a copy with the concierge, delivering a copy by certified mail to the witness's residence, sending the subpoena to emails associated with the witness's business and sending a copy by certified mail to the witness's registered business address).

## II.   THE LAW OF THIS CIRCUIT DOES NOT FORECLOSE PERSONAL SERVICE WHERE, AS HERE, CERTAIN CONDITIONS ARE MET.

Plaintiffs acknowledge that this Court has previously required personal service of a Rule 45 subpoena, but respectfully suggest that the factual basis for that holding is distinguishable from the one currently before the Court. In *Call of the Wild Movie, LLC v. Does 1-1,062*, this Court found improper service of a Rule 45 subpoena on a corporation which plaintiff "faxed and emailed" to the third-party counsel without confirmation that he would accept service and without taking *any* "steps to deliver the subpoena personally." 770 F. Supp. 2d 332, 361 (D.D.C. 2011) (citing cases, including *Alexander v. FBI*, 186 F.R.D. 128, 130 (D.D.C. 1998)). There were no allegations of evasion in that case. *See id.* at 361–62. In contrast, Plaintiffs did not start or stop their efforts with asking Ms. Friess' counsel to accept service and emailing her their subpoena; instead, Plaintiffs have made more than *ten* attempts, at considerable expense, to personally serve

Ms. Friess. Exs. 5, 12, 15, 16.[14] In addition, unlike the corporate counsel in *Call of the Wild*, Ms. Friess appears to be actively evading service. *See supra* at pp. 10–11.

Relatedly, in *Call of the Wild*, the Court assessed whether service on a third party had been effected and not the question before the Court here: the propriety of alternative service when certain circumstances, such as those that exist here, are present. 770 F. Supp. 2d at 361. In *OAO Alfa Bank*, another Court in this District recognized the importance of such a distinction while discussing the conclusions in *Alexander* that a third-party subpoena requires personal service:

> Distinguishing Alexander, plaintiffs note that the issue before the court in that case was "whether personal service of a subpoena had been effected – *not* the propriety of alternative service." That distinction has some force. The posture in which the present dispute is presented allows the Court the flexibility, in its equitable discretion, to authorize a manner of service that will suit the ends of Rule 45.

Ex. 19 at 2 n.1 (*OAO*) (italics in original). Like in *OAO Alfa*, and unlike in *Call of the Wild Picture*, the posture of the current dispute warrants flexibility for permitting alternative service in certain narrow situations, as other courts in this jurisdiction and others have done. *Supra* Legal Standard.

Plaintiffs also recognize that the D.C. Circuit acknowledged in dicta more than 40 years ago policy reasons for distinguishing between service under Rules 4 and 45 and that "compulsory process may be served upon an unwilling witness only in person." *FTC v. Compagnie de Saint-Gobain-Pont-a-Mousson*, 636 F.2d 1300, 1312–13 (D.C. Cir. 1980). But courts in this District have since permitted alternative service of a Rule 45 subpoena notwithstanding that case, explaining that the Circuit Court's "dictum about the necessity of in-person service under Rule 45 was not dispositive of the narrow question posed in that case – whether Congress expressly or

---

[14] Plaintiffs' proposed methods of service go far beyond simply leaving deposition subpoenas "at the mail room at DOJ or with support staff," as in *United States v. Philip Morris Inc.*, 312 F. Supp. 2d 27, 37–38 (D.D.C. 2004).

impliedly authorized the FTC to serve its investigatory subpoenas directly upon citizens of other countries by means of registered mail." Ex. 19 at 3 (*OAO*); *accord El-Amin*, 2000 U.S. Dist. LEXIS 15635.[15] Plaintiffs respectfully submit that *Compagnie* does not foreclose the ability of this Court to authorize service of a Rule 45 subpoena by alternative means where, as here, the circumstances warrant such consideration.[16]

## CONCLUSION

For the reasons discussed, Plaintiffs respectfully request the Court issue an order approving alternative service of Rule 45 subpoena on Katherine Friess by any alternative means of service preferred by this Court, including by (1) emailing a copy of any order authorizing alternative service and the subpoena to each of her email addresses, (2) sending a copy of the order and confirmatory copy of the subpoena to all of the Colorado addresses Plaintiffs have attempted to serve Ms. Friess to-date, and (3) sending a copy of the order and confirmatory copy of the subpoena

---

[15] While another court in this District adopted a different reasoning in *Henderson v. Day*, it limited that ruling to "the facts of" that case and recognized the possibility that "some future case might present compelling reasons" to permit alternative service. No. CV 19-945 (RDM), 2021 WL 1978793, at *2 (D.D.C. May 17, 2021). Unlike here, there was no indication that the third-party witness in *Henderson* had notice of the lawsuit. *Id*. at *1 (neighbors confirmed  "witness has not been at either address for a year or more" and regular and certified mail "was forwarded to an unknown address but was not signed for at that address"). Furthermore, unlike in *Henderson*, Ms. Friess is an essential witness. *See id*. at *3 ("If the testimony of the absent witness were essential to Henderson's case, and if the Court had reason to believe that the witness was willfully evading a judicial subpoena" and serving party "knew how to find the witness," alternative service "might be appropriate.").

[16] Courts outside this District have reached similar conclusions about *Compagnie*. *See, e.g., Ultradent Prods., Inc. v. Hayman*, No. M8–85 RPP, 2002 WL 31119425, at *3 n.4 (S.D.N.Y. Sept. 24, 2002) (noting that the "suggestion that Rule 4 exclusively advances the objective of providing notice to a party, while Rule 45 exclusively aims to compel a third party to comply with the subpoena" is a "distinction without substance" because "elements of notice and compulsion exist under both Rules").

to Ms. Friess's attorney in the Colorado litigation regarding the Congressional subpoena for Ms.

Friess's phone records.

Dated: December 16, 2022              Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**           **UNITED TO PROTECT DEMOCRACY**
Michael J. Gottlieb (974960)                    By: */s/ John Langford*
Meryl C. Governski (1023549)                 John Langford (admitted *pro hac vice*)
1875 K Street NW                             Rachel Goodman (admitted *pro hac vice*)
Washington, DC 20006                 UNITED TO PROTECT DEMOCRACY
Tel: (202) 303-1000                      82 Nassau Street, #601
Fax: (202) 303-2000                    New York, NY 10038
mgottlieb@willkie.com                  Tel: (202) 579-4582
mgovernski@willkie.com               john.langford@protectdemocracy.org
                                          rachel.goodman@protectdemocracy.org

**DUBOSE MILLER LLC**                   **KASTORF LAW LLC**
Von A. DuBose (admitted *pro hac vice*)      Kurt C. Kastorf (admitted *pro hac vice*)
GA Bar No. 231451                        GA Bar No. 315315
75 14th Street NE                       1387 Iverson Street NE
Suite 2110                             Suite #100
Atlanta, Georgia 30309                Atlanta, GA 30307
Tel: (404) 720-8111                    Tel: (404) 900-0330
dubose@dubosemiller.com              kurt@kastorflaw.com

*Attorneys for Plaintiffs Ruby Freeman and Wandrea Moss*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2022, this document was filed with the Clerk of the Court of the U.S. District Court for the District of Columbia by using the CM/ECF system, which will automatically generate and serve notices of this filing to all counsel of record.

Dated: December 16, 2022

*/s/ John Langford*

John Langford (admitted *pro hac vice*)
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
john.langford@protectdemocracy.org
