# EXHIBIT 6

Raymond A Mansolillo
Law Offices of Raymond Mansolillo
One Marina Park Drive
Suite 1410
Boston, MA 02210
(617) 807-7061
Email: rmansolillo@cox.net

*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| Katherine Friess | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| Bennie G. Thompson, in his official capacity | ) | |
| As Chairman of the House Select Committee | ) | **(Jury Trial Demanded)** |
| To Investigate the January 6th Attack on the | ) | |
| United States Capitol; Select Committee to | ) | |
| Investigate the January 6th Attack on the | ) | |
| United States Capitol, a committee of the | ) | |
| Unites States House of Representatives; | ) | |
| AT & T, a Delaware Corporation. | ) | |
| | ) | |
| Defendants | ) | |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Katherine Friess, by and through her attorney, Raymond Mansolillo Esq., brings this action against Defendants, Chairman Bennie G. Thompson, The Select Committee to Investigate the January 6th Attack on the United States Capitol, and AT&T, Inc., and alleges as follows:

### INTRODUCTION

1. On or around February 9, 2022, Katherine Friess received an email from the AT&T Global Legal Demand Center stating that AT&T had received a subpoena *duces tecum* from the United States House of Representatives Select Committee to Investigate the January 6th

1

Attack on the United States Capitol (*Exhibit A, Letter from AT & T and attached subpoena. Note: the subpoena which was emailed and not properly served was missing an exhibit containing critical details containing the phone number in question)*.

2. The February 1, 2022 Subpoena *Duces Tecum* by the House of Representatives of the Congress of the United States of America to AT&T before the Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Subpoena") (Exhibit A) called for the production of certain documents covering a date range from November 1, 2020 to January 31,2021 by the deadline of February 23, 2022. This subpoena presumably requests certain information related to the lines associated with the AT&T account ending 1661 assigned to Katherine Friess by AT&T (the "Phone Number") including the records of incoming and outgoing calls, their durations and associated phone numbers, and information about the callers commonly called "metadata" or call data records.

3. The production of these documents by AT&T concerning the Phone Number, and the subpoena upon which this production would be based, violate the constitutional rights of the Plaintiff, specifically implicating the protections of the First and Fourteenth Amendments to the United States Constitution; constitute and *ultra vires* action by the Committee in violation of its own Rules, the rules of the House of Representatives of the United State Congress, and the fundamental basis underlying the limited congressional power to investigate for legislative purposes; violates state and federal privileges; The Executive Privilege-presidential communications, the deliberative process and the attorney-client communications. In addition, it substantially infringes upon the right to privacy guaranteed under Colorado state law-invasion of privacy by intrusion upon the Plaintiff's seclusion or solitude.

4. For these reasons, and as further articulated below, Plaintiff respectfully asks that this Court declare that the Subpoena is a violation of the Plaintiff's constitutional rights, an overbroad overreach of congressional power for improper purposes. Moreover, it violates the attorney-client privilege. As such, Plaintiff asks this Court quash the subpoena and enjoin Defendants from enforcing the Subpoena or producing any documents in compliance with its demands.

## PARTIES

5. **Plaintiff Katherine Friess**, is a practicing attorney who served as staff attorney for President Donald Trump. She is domiciled in Colorado, practices law in Washington, D.C. and conducts a multi jurisdictional practice both nationally and internationally. Affidavit of Katherine Friess (Exhibit B).

6. **Defendant Bennie G. Thompson** ("Chairman Thompson") is the U.S. Representative for Mississippi's 2nd District and the Chairman of the House Select Committee to Investigate the January 6 Attack on the United States Capitol. He is a member of the Democratic Party. Chairman Thompson signed the subpoena in question and is sued in his official capacity.

7. **Defendant The Select Committee to Investigate the January 6th Attack on the United States Capitol** (The "Committee") is a committee created by House Resolution 503 passed by the United States House of Representatives of the 117th Congress on June 30, 2021.

8. **Defendant AT & T** is a Delaware corporation. Plaintiff at this time makes no accusation of wrongdoing on the part of AT&T and they are named herein only insofar as is necessary to ensure that they will be bound by this Court's judgment. Note of caution – private sector organizations that are requested to disclose metadata to Government institutions, including law enforcement, already know or should know what metadata can reveal about an individual thus are on notice and must be cautious to govern their collection and disclosure activities according to appropriate processes and standards that are commensurate with the potential level of sensitivity of metadata in any given set of circumstances.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. §1331 because this case arises under the Constitution and laws of the United States, including U.S. Const. Amends. I, IV; 28 U.S.C. §1367; and 28 U.S.C. §§2201-2202.

10. Venue is proper because Katherine Friess is domiciled in this District, no real property is involved in the action; and the Subpoena was served on AT&T to seek records of Katherine Friess, created in and inform concerns in this District. 28 U.S.C. §1391.

## BACKGROUND AND GENERAL ALLEGATIONS

### *Katherine Friess' Usage of the Phone Number*

*(Note: The phone number in question is also the personal phone number utilized by her)*

11. As an attorney, Katherine Friess provides confidential counsel and advises clients on legal matters throughout the country and internationally.

12. In most circumstances, Katherine Friess gives the Phone Number to clients to address their questions and provide the status and the state of their legal matters and concerns. As legal counsel, she also advises these clients that any and all communications remain confidential and protected from disclosure in accordance with the attorney-client privilege.

13. Katherine Friess gives the Phone Number to clients on average several times a day in the course of a normal week. She telecommutes and often works via mobile communications while traveling or in transit. During the COVID pandemic, Katherine Friess has typically given out the Phone Number more frequently so that she can answer legal questions and consult with her client(s) when office visits or face-to-face meetings are not possible, unnecessary or inconvenient to the parties.

14. Katherine Friess also uses this phone to confer with other attorneys about related client matters.

15. Additionally, Katherine Friess served as staff attorney for President Donald Trump. While on call for the President and his legal team, the Phone Number serves as a point of contact for the President and his legal team to ask questions and seek confidential legal advice often sensitive in nature.

16. Katherine Friess also uses the Phone Number for personal calls with her family and friends, as well as individuals with whom she is in contact for political, religious, health issues and other personal purposes.

### *Katherine Friess' Usage of the Phone Number*

17. Since November 2019, Katherine Friess has counseled the President and his legal team full time in her position as a staff attorney to President Donald Trump. She also derives meaning and satisfaction from her work outside politics as an attorney.

18. Since COVID-19 pandemic began, Katherine Friess has counseled clients almost exclusively via telephone communications.

4

19. Katherine Friess uses the Phone Number to converse with the President and his legal team, as well as with family and friends.

20. Upon information and belief, Katherine Friess' clients are located throughout the country and Washington, D.C. area although many continue to telecommute from other states and maintain phone numbers from different states.

21. For many of Katherine Friess' clients, the mere fact that they are consulting an attorney about a legal issue is a private concern and requires confidentiality so as not to thwart the free flow of communications between a client and her as attorney/legal advisor.

*The Nature of the Subpoena*

22. The Subpoena requires AT & T produce certain documents associated with the Phone Number, including all metadata.

23. Among these documents, the Subpoena requires that AT & T provide "subscriber information" including all authorized users on the associated account, and the names and identifies of individuals associated with the account, including IP addresses. Exh. A, Section A, ¶ 1.

24. The Subpoena also requires AT & T produce "Connection Records, and Records of Session Times and Durations," specifically seeking

> All call, message (SMS & MMS), Internet Protocol ("IP"), and data-connection detailed records associated with the Phone Numbers, including all phone numbers, IP addresses, or devices that communicated with the Phone Number via delivered and undelivered inbound, outbound, and routed calls, messages, voicemail, and data connections.

Exh. A, Section A, ¶ 2.

25. In particular, the Subpoena also requires that the electronic document productions produce "metadata," which is data about data, identifying such features as the date of creation, modification, file sizes and extensions, authors, subject, titles, message identifiers and headers, and internal file paths for all documents provided. Exhibit A, Document Production Definitions and Instructions ¶ 5, at b. This type of metadata is also known as "call data records". An analysis of call data records can reveal a large amount of personal information and social network contact information. Blondel, V.D. Decuyper, A. & Krings G., *A survey of results on*

5

*mobile phone datasets analysis*, 4 EPJ Data Science, https://epjdatascience.springeropen.com/articles/10.1140/epjds/s13688-015-0046-0 (2015) ("even the simple knowledge of communication patterns between individuals or their mobility traces contains highly personal information that one typically does not want to be disclosed"), not to mention disclosures between the President and his legal counsel which demand confidentiality.

26. When Congress "seeks information directly from a party," that party "can resist and thereby test the subpoena." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 n.14(1975). But when Congress "seeks that same information from a third person," that option is not available to the party; the third party might not have an interest in protecting the information or resisting the subpoena, and its "compliance with the subpoena "could frustrate judicial inquiry." *Id.* For that reason, the law allows the person whose information will be exposed to sue in federal court for an "injunction or declaratory judgment" to block the subpoena's "issuance, service on, or enforcement against" the third party. *U.S. Servicemen's Fund v. Eastland* 488 F.2d 1252, 1259 (D.C. Cir. 1973), *subsequent merits decision rev'd on other grounds,* 421 U.S. 491; *see also Trump v. Deutsche Bank AG,* 941 F. 3d 627, 635 (2d Cir. 2019) ("No dispute that Plaintiffs had standing in the District Court to challenge the lawfulness of the Committee's subpoenas by seeking injunctive relief against banks as custodians of the documents.").

### *The Nature of the Congressional Power of Inquiry*

27. While the Congressional power of inquiry is "an essential and appropriate auxiliary to the legislative function," it is limited solely to that "only legitimate object" – legislating. *McGrain v. Daugherty,* 273 U.S. 135, 174 (1927). "[N]either house is invested with 'general' power to inquire into private affairs and compel disclosures." McGrain, 273 U.S. at 173.

28. There is a constitutional burden which is placed upon the Committee to justify the need for the information sought.

> Unless the subject matter has been made to appear with undisputable clarity, it is the duty of the investigative body, upon objection of the witness on grounds of pertinency, to state for the record the subject under inquiry at that time and the manner in which the propounded questions are pertinent thereto. To be

meaningful, the explanation must describe what the topic under inquiry is and the connective reasoning whereby the precise questions asked relate to it.

*Watkins v. United States,* 354 U.S. 178, 214-15 (1957)

29. "Investigations conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated are indefensible[,]" and Congress has no power to "try" someone before a subcommittee for any crime or wrongdoing, because law enforcement is assigned "under our Constitution to the Executive and the Judiciary." *Trump v. Mazars USA, LLP,* 140 S. Ct. 2019, 2031-2032 (2020) (internal citations omitted).

30. "Recipients of legislative subpoenas retain their constitutional rights throughout the course of an investigation. And recipients have long been understood to retain common law and constitutional privileges with respect to certain materials, such as attorney-client communications and governmental communications protected by executive privilege." *Id.* 140 S.Ct. at 2032.

## FIRST CAUSE OF ACTION
## Declaratory Judgment and Injunctive Relief
## The Subpoena is an *Ultra vires* Action by the Committee and Thus Invalid
## (Against All Defendants)

31. Plaintiff incorporates by reference all preceding and subsequent allegations.

32. The Subpoena seeks records relating to a Phone Number including metadata assigned to the Plaintiff, who has not been accused of or charged with presence at the January 6th attack on the United States Capitol.

33. Because the Subpoena fails to comport to its enabling resolution by seeking records pertaining to a Phone Number assigned to the Plaintiff, the Subpoena fails to provide a valid legislative purpose. *See e.g.,* U.S. Const. Art II, Sec. 1, C1.2 (the ability to legislate regarding the appointment and mode of appointment of electors belongs exclusively to the States).

34. Furthermore, or in the alternative, because the Subpoena seeks an overbroad survey of the phone conversations and phone metadata of several private citizens unrelated to the enabling resolution of the issuing Committee, it fails to concern a subject on which legislation could be had.

7

35. Furthermore, or in the alternative, the subpoena fails to set forth with "undisputable clarity" the connection between the records being sought and a valid legislative purpose. That is a constitutional requirement the Committee has not met.

36. Furthermore, or in the alternative, the Subpoena appears to facially serve the purpose of law enforcement or as a prelude to a criminal investigation against an individual serving as legal counsel (staff attorney) to the President and members of his legal team. It is therefore invalid as a *ultra vires* expression of congressional power.

37. Furthermore, or in the alternative, the Phone Number is used for a wide range of personal and professional uses by Plaintiff, from talking with her immediate family to conversing about sensitive legal information with the President and other clients. As such, the subpoena is not narrowly tailored to its purported purpose and is being used as a general power or inquiry into private affairs, and as such must be declared invalid and enjoined.

38. Furthermore, or in the alternative, it is well settled that executive privilege most certainly extends to staff attorneys advising and communicating with the President and his legal teams. Thus, said committee's reasoning is specious at best here and the facts suggest that the subpoena is being used for a purpose or purposes well outside of the legitimate Congressional subpoena power, whether for the personal aggrandizement of investigators and/or to punish those investigated, and/or to expose for the sake of exposure, some or all of which are forbidden *ultra vires* actions and must therefore be declared as such and enjoined.

## SECOND CAUSE OF ACTION
### Violation of the 1st Amendment to the United States Constitution
### (Against Defendants Chairman Thompson and the Committee)

39. Plaintiff incorporates by reference all preceding and subsequent allegations.

40. An individual's First Amendment freedoms require by nature a "correlative" freedom to engage in group effort toward those ends." *Roberts v. United States Jaycees,* 468 U.S. 609, 622 (1984).

41. "Implicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Brock v. Local 375, Plumbers Int'l Union,* 860 F.2d 346, 349 (9th Cir. 1988) (internal citations omitted).

8

42. Katherine Friess was a staff attorney to President Trump and served in that capacity during the period in question by the committee. It is her job to contact, coordinate and confer with members of her legal team about matters of concern to the President. Her job responsibilities are especially acute when there is public controversy concerning the outcome of an election. Such a controversy was raging during the exact time period covered by the subpoena.

43. When political associational rights are at stake, the Supreme Court analyzes potential infringement under a framework that it has descripted as "exacting scrutiny". Exacting scrutiny requires that there be "a substantial relation between the disclosure requirement and a sufficiently important governmental interest, and that the disclosure requirement be narrowly tailored to the interest it promotes." *Ams. For Prosperity Found. V. Bonta*, 141 S. Ct. 2373, 2385 (2021) (internal citations omitted).

44. The Subpoena seeks all phone records, metadata, connection records and records session times and durations of all calls made to and from the phone number for a three month span, commencing just before one of the most contentious elections in modern history.

45. Providing that list to the Committee would give a committee of the House of Representatives, which was formed and chaired by political rivals, the personal telephone numbers, text message headers and subjects, email headers and subjects, VOIP data, IP addresses, file names of attachments, and contact details of the party members most in communication during a time when the legitimacy of the last presidential election was in dispute. As such, the Subpoena provides the Committee with the means to chill the First Amendment associational rights not just of the Plaintiff but any citizen concerned with the integrity of this country's elections; including the President's office and future presidents for years to come regardless of party affiliation.

46. Furthermore, the disclosure required by the Subpoena does not relate to a sufficiently important government interest because there has been no link, alleged or otherwise, between the events of the January 6th attack on the Capitol the Committee was formed to investigate, and the Plaintiff.

47. Furthermore, or in the alternative, the violation of the First Amendment rights of the Plaintiff would lead to substantial and serious injury and harassment.

**48.**    Because of the controversy and her associational status, Katherine Feiss has received threats, and harassing phone calls deeply concerning to her both personally and professionally.

**49.**    Therefore, the Subpoena must be declared to be violative of the Plaintiff's First Amendment right to association and enjoined.

**50.**    Further, the 9th Circuit recognizes a Bivens cause of action for damages for First Amendment retaliation claims.  *Boule v. Egbert*, 998 F. 3d 370, 390 (9th Cir.2021) (review pending).

**51.**    Plaintiff has been injured by this retaliation against her First Amendment protected interests reputationally, professionally, emotionally and personally, in an amount to be determined at trial, and the Defendant's invasion was the cause of Plaintiff's injuries.  They are also entitled to presumed damages for her loss of liberty from the violation in an amount to be proven at trial.  This claim is made for those damages suffered to date and those reasonably expected to be suffered in the future.

### THIRD CAUSE OF ACTION
### Violation of State and Federal Statutory Privilege Protections
### (Against Defendants Chairman Thompson and the Committee

52.    Plaintiff incorporates by reference all preceding and subsequent allegations.

53.    "Colorado" has adopted attorney-client privilege "work product protection" laws for both civil and criminal proceedings.  "Confidential Communications" comprise any information not intended to be revealed to another person.  They are protected communications, whether they took place in person, over the phone, or via text message, email or written letters.  The Supreme Court of Colorado has stated the attorney-client privilege is a matter of substantive law not legal ethics citing Colorado Bar Association Ethics Commission; Formal op. 123@6 2011; see *Freirich v. Rabin* 2020 CO77.

54.    In criminal matters:

> A person shall not be examined as a witness in the following cases:  an attorney or staff working for the attorney without consent of the client (who holds the privilege) as to any information acquired while representing the client which could be adverse to the client's interest.  This also includes work product

10

55. In Civil matters:

Unless otherwise provided by law, all attorney-client privileged and confidential information in any form obtained or gleaned during the representation of the client. This and the information, phone records and metadata are privileged and confidential. Shall include the mental impressions and deliberations of the attorney and the legal team.

56. Telephone metadata permits even rudimentary algorithms to determine intimate personal details, especially and specifically privileged and confidential information protected by law based on the premise that people should feel free "to seek open and frank communication with their counsel, undeterred by fear that discussions about legal matters, deliberations or legal strategy with their counsel will become a matter of public discussion".

57. Therefore, the provision of telephone metadata from the Phone Number by virtue of this Subpoena to the Committee constitutes a violation of state law related to privileged communications and confidential work product and must be enjoined until and unless limitations are put in place to protect the confidential nature or the privilege – i.e. privilege waiver granted by President Trump and/or sufficient measures limiting the scope and breadth with a protective order.

58. In general, "attorneys may not disclose client information, confidences, or secrets" subject to certain exceptions.

59. The committee has not provided President Trump with notice of the instant Subpoena, and no one has even discussed a privilege waiver or a protective order what would limit the use that the Committee could make of this information.

60. Disclosing the phone records and metadata from the Phone Number would provide privileged and confidential information not only from President Trump but of an unknown but quantifiable number of wholly unrelated individuals seeking legal advice from the Plaintiff to the Committee and potentially to the public at large.

61. Therefore, the enforcement of the Subpoena must be enjoined until and unless President Trump authorizes a privilege waiver, mutually agreed upon (i.e. protective order) incorporating specific limitations put in place to protect the Plaintiff's client(s) and personal information.

# FOURTH CAUSE OF ACTION

## Violation of the Rules of the House of Representatives

## (Against Defendants Chairman Thompson and the Committee)

*Failure to Issue Subpoena in the Presence of a Majority of the Committee*

62. Plaintiff incorporates by reference all preceding and subsequent allegations.

63. The Subpoena issued on February 1, 2022, with the signature of the Chairman, Bennie Thompson (D-MS),

64. At the time of the issuance of the Subpoena, the Committee had only nine members, seven Democrats and two Republicans.

65. The Committee's enacting resolution, H. Res. 503, passed by the House on June 30, 2021, provided that the Committee was to have 13 members. H. Res. 503 Section 2(a).

66. At the time the Subpoena was issued, the Committee had only nine members of which, on information and belief, none were appointed in consultation with the Minority Leader in violation of the rules adopted in the enacting resolution.

67. Under the House Rules, a "measure … may not be reported by a committee unless a majority of the committee is actually present." (Rule XI, clause 2(h)(1)).

68. To the extent that, on information and belief, the Subpoena constituted a "measure" under the Rule, that required a meeting at which a majority of the Committee was actually present, the Subpoena was not properly issued.

69. To the extent that, on information and belief, no meeting took place at which a majority of the Committee (7 of the 13 required members) was present, the Subpoena was not issued in accordance with the Rules of the House.

70. The specific power of the Committee to issue subpoenas for records is governed by the Rules of the House. Rule XI, clause 2(m) provides that subpoenas may be issued by a committee in the conduct of an investigation "only when authorized by the committee or subcommittee, a majority being present." (*Id*. At subsection (3)(A)(i)).

71. H. Res. 503 did not change the requirement in Rule XI, clause 2(m) that a majority of the issuing committee be present to authorize issuance of any subpoena.

72. Therefore, to the extent that, on information and belief, the majority of the Committee, seven members, did not vote in favor of issuing the Subpoena at a meeting with a

12

"majority being present," the Subpoena was issued contrary to the Rules of the House and should be declared invalid and enjoined.

*Failure to Issue Subpoena in the Presence of a Quorum*

73. Further, or in the alternative, H. Res. 503 provides that two members would be a quorum for "taking testimony or receiving evidence." However, the Subpoena was issued for records, not to take testimony or receive evidence.

74. H. Res. 503 additionally provides that one-third of the members is a quorum for taking "any action other than one for which the presence of a majority of the Select Committee is required." (*Id*. At Sec. 5(c)(3)).

75. Issuing the Subpoena is a committee action that requires action at a meeting at which the majority of the committee was present and therefore the quorum requirement is a majority of the committee be present. (Rule XI, clause 2(m), at subsection (3)(A)(i)).

76. To the extent that, on information and belief, a quorum was not present for the issuance of the Subpoena, it was issued improperly and is in violation of House Rules and should be declared invalid and enjoined.

*Failure to Properly Delegate Authority for Subpoena Issuance to the Chairman*

77. Further, or in the alternative, the Rules of the House also provide that the Committee may delegate the power to issue subpoenas to the chair of the Committee. (House Rule XI, clause 2(m)(3)(A)(i)): "the power to authorize and issue subpoenas… may be delegated to the chair of the committee under such rules and under such limitations as the committee may prescribe.")

78. It is inferable from the House Rules that any committee action to delegate to the Chairman the authority to undertake actions that would require action by a majority of the committee at meeting where such a majority is present would likewise have the same quorum and vote requirements.

79. To the extend that, on information and belief, the Committee did not take a proper action at a meeting at which a majority was present when any delegation of authority was made to the Chairman to alone issue Subpoenas, the Subpoena was not properly issued and should be declared invalid and enjoined.

13

**PRAYER FOR RELIEF**

80. Plaintiff requests relief as follows:

    a. That the Court Assert jurisdiction over this action;

    b. That the Court enter an order declaring that Defendants' actions, as set forth in this complaint, violate federal law and the laws of the State of Colorado as set forth above:

    c. That the Court enjoin Defendants' unlawful acts as set forth in this Complaint, quash the Subpoena, enjoin Chairman Thomson and the Committee from enforcing the Subpoena, and enjoin Defendant AT&T from producing any documents in response to the Subpoena;

    d. For damages in an amount to be proven at trial:

    e. That the Court awards Plaintiff their reasonable attorneys' fees and costs of suit; and

    f. That the Court award any and all such other and further relief as the Court may deem just and proper under the circumstances.

    g. That the Court set this matter for a jury trial on all issues triable.

Katherine Friess by her Attorney,

Respectfully submitted this 22st day of February, 2022

/s/ Raymond Mansolillo
Law Offices of Raymond Mansolillo
One Marina Park Drive, Suite 1410
Boston, MA  02210
Email: rmansolillo@cox.net
Phone: 617-807-7061
*(Admission submitted)*