# EXHIBIT A

# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel:  212 728 8000
Fax: 212 728 8111

August 5, 2022

**VIA EMAIL**
**Joe Sibley**
CAMARA & SIBLEY LLP
1108 Lavaca St.
Suite 110263
Austin, TX 78701
713-966-6789
Fax: 713-583-1131
Email: sibley@camarasibley.com

Re:    *Freeman v. Giuliani*, 1:21-cv-21-3354 (BAH)

Dear Mr. Sibley,

     I write regarding the discovery responses provided by Defendant Rudolph W. Giuliani ("Mr. Giuliani" or "Defendant") in response to Plaintiffs' First Set of Requests for Production (the "First Set of RFPs") and Plaintiffs' First Set of Interrogatories (the "First Set of Interrogatories," collectively, the "First Set of Discovery Requests"), which Plaintiffs served on May 20, 2022.  On June 28, 2022, Mr. Giuliani served on Plaintiffs responses and objections to the First Set of RFPs ("First RFP R&Os") and the First Set of Interrogatories (the "First Interrogatory Responses"), and a privilege log (the "First Privilege Log").  On July 6, 2022, counsel for Defendant ("You" or "Your") and counsel for Plaintiffs participated in a meet and confer regarding the Plaintiffs' First Set of Discovery Requests and Defendant's responses (the "July 6 M&C").  On July 12, 2022, Defendant made his first production (the "First Production"), and also provided the first set of requests for production that were served on Mr. Giuliani in *US Dominion Inc. v. Herring Networks, Inc.*, No. 1:21-cv-02130-CJN (D.D.C) ("*Dominion*") and Mr. Giuliani's responses and objections to the same.  On August 1, 2022, Mr. Giuliani served on Plaintiffs amended responses and objections to the First Set of Interrogatories (the "Amended First Interrogatory Responses").

     I write now to memorialize certain deficiencies in the First Interrogatory Responses, First Production, First RFP R&Os, and First Privilege Log.

BRUSSELS   CHICAGO   FRANKFURT   HOUSTON   LONDON   LOS ANGELES   MILAN
NEW YORK   PALO ALTO   PARIS   ROME   SAN FRANCISCO   WASHINGTON

August 5, 2022
Page 2

## I.      DEFENDANT'S FIRST INTERROGATORY RESPONSES.

As discussed during the July 6 M&C, all of Defendant's First Interrogatory Responses are incomplete and evasive.  *See* Fed. R. Civ. P. 37(a)(4), (b)(2)(A) ("an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond" and "court . . . may issue further just orders" including sanctions where a party "fails to obey an order"); *Danzy v. IATSE Loc. 22*, No. CV 17-02083 (RCL/RMM), 2020 WL 6887651, at *4 (D.D.C. Nov. 23, 2020) (finding plaintiff's interrogatory responses with general descriptions incomplete to the extent they did not provide full responses to the questions asked and ordering plaintiff to supplement and clarify); *Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 33 (D.D.C. 2007) (finding answer that is "inadequate, vague, cryptic, evasive, and completely lacking in the candid disclosure required of the parties" fails to "completely and fully address the question asked of it") (citation omitted).

Mr. Giuliani represented in the text of the First Interrogatory Responses and via counsel in the July 6 M&C that he would provide supplemental answers to the First Set of Interrogatories by July 22, 2022.  On July 26, attorneys for Plaintiffs followed up with You on the status of Mr. Giuliani's amended/supplemental interrogatory responses.  You represented that Mr. Giuliani would provide amended/supplemental interrogatory responses by no later than August 1, 2022.  *See* 7/26/2022 email from J. Sibley to A. Houghton-Larsen, cc'ing others, *RE: Freeman v. Giuliani* – Amended Interrogatories. On August 1, 2022, Mr. Giuliani served on Plaintiffs the Amended First Interrogatory Responses.  Plaintiffs are reviewing the First Amended Interrogatory Responses and reserve all rights to raise objections, concerns, or challenges in the future.  At this time,  Plaintiffs note that the First Amended Interrogatory Responses appear incomplete and deficient.

## II.     DEFENDANT'S FIRST PRODUCTION AND RESPONSES & OBJECTIONS TO PLAINTIFFS' FIRST SET OF RFPS.

A.  *Defendant's First Production of Documents on July 12, 2022.*

During the July 6 M&C, You confirmed that Mr. Giuliani would produce all documents that he had already produced in *Dominion*, which You explained included all documents produced to the United States House of Representatives' Select Committee to Investigate the January 6th Attack on the United States Capitol ("January 6 Committee").  You represented that this initial production would contain approximately 7,000 documents.  You also claimed that the documents requested by and produced in *Dominion* would cover most of Plaintiffs' First Set of RFPs.

Plaintiffs received Defendant's First Production on July 12, 2022.  While Plaintiffs are continuing to review Defendant's First Production, and reserve all rights to raise questions and concerns in the future, I write to note a number of deficiencies that we expect Defendant to promptly address.

*First*, despite Your representations that Mr. Giuliani's first production would contain approximately 7,000 documents, Defendant's First Production contains only 1,269 documents.  Please explain the discrepancy between the number of documents You indicated Mr. Giuliani would produce and the number actually produced in the First Production.  Please also confirm that Defendant's First Production contains **all** documents produced in *Dominion* and to the January 6 Committee.  **Please**

August 5, 2022
Page 3

**confirm by August 8, 2022 if Mr. Giuliani inadvertently withheld nearly 6,000 documents when making the First Production or that he has produced only 1,269 in both *Dominion* and to the January 6 Committee.  If the former, please provide a date certain by which Defendant will produce the remaining documents.**

*Second*, we have carefully reviewed the first set of document requests for production served on Mr. Giuliani in *Dominion*, and they are not substantively similar to Plaintiffs' First Set of RFPs such that Defendant's reproduction of the documents produced in *Dominion* would be sufficient to satisfy Defendant's discovery obligations in this case.  *See generally* Fed. R. Civ. P. 26(b).  For example, none of the *Dominion* requests seek information specifically about Plaintiffs or about Mr. Giuliani's claims about Georgia or Fulton County—it would be inadvertent and fortuitous if any of the discovery materials produced in response to the *Dominion* requests for production were also responsive to Plaintiffs' First Set of RFPs.  Our initial review of the First Production confirms that there are few, if any, documents that would be responsive to the First Set of RFPs.  **To assess whether Mr. Giuliani's production in *Dominion* overlaps with his discovery obligations in this case in any part, please provide by August 12, 2022 a detailed explanation of how Defendant identified the documents produced in *Dominion*, including, but not limited to: his collection methodology; the Communications, Documents, and Social Media (as defined in the First Set of RFPs) collected and searched; the search methodology; the discovery vendor utilized; the search terms Defendant applied; all of the custodians from which the materials were produced; and how Defendant came to have access to and produce documents on which he is not a custodian.**

*Third*, even if Mr. Giuliani produced ***all*** of the documents that were responsive to the *Dominion* requests, providing solely those materials would not be sufficient to comply with his discovery obligations in this case.  In order to comply with his discovery obligations here, Defendant must search the documents and communications within his custody or control for responsiveness to Plaintiffs' First Set of RFPs.  *See* Fed. R. Civ. P. 34(a)(1); Fed. R. Civ. P. 37(a)(4) ("incomplete" discovery responses "must be treated as a failure to disclose, answer, or respond"); *English v. Wash. Metro. Area Transit Auth.*, 323 F.R.D. 1, 8 (D.D.C. 2017) (same); *Finkelstein v. District of Columbia*, No. CIV.A. 85-2616, 1987 WL 14976, at *6 (D.D.C. July 22, 1987) (Rule 34 contemplates "the diligent search through all likely repositories of records"); *U.S. Commodity Futures Trading Comm'n v. Trade Exch. Network Ltd.*, 61 F.Supp.3d 1, 7 (D.D.C. 2014) ("It is not up to the party from whom documents are requested to pick and choose how to present relevant information . . . .").  It is our understanding from Your representations that Mr. Giuliani has not collected, searched, or produced any materials specific to any of Plaintiffs' First Set of RFPs.  If that understanding is incorrect, please tell us so.  **Either way, please provide a detailed explanation for how Defendant Giuliani attempted to and/or intends to comply with his discovery obligations in this case, including but not limited to: the complete list of all of Defendant's likely repositories of responsive information, including his devices, email, social media, and communications accounts; his collection methodology; his search methodology; the discovery vendor; and search terms by August 12, 2022.  To help expedite the process, Plaintiffs attach the proposed search terms (Ex. A), all of which we will expect Mr. Giuliani to use in collecting and producing responsive discovery unless we hear otherwise.**

August 5, 2022
Page 4

*Fourth*, Defendant's First Production was produced with insufficient metadata. *See generally The Sedona Principles, Best Practices, Recommendation & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1, cmt. 12 (3d ed. 2018). For 1,203 documents, there is no custodian metadata. The remaining documents all list "Christina Bobb" as a custodian. Additionally, 1,269 documents have no metadata regarding date or author. **Please promptly reproduce Defendant's First Production with custodian, author, and date metadata for these documents.**

### B. *Documents Held by the Special Master.*

During the July 6 M&C, You reiterated that Mr. Giuliani's electronic devices and various documents had been seized by the Department of Justice ("DOJ") and are now being held by a Special Master. You represented that Mr. Giuliani no longer has access to these documents, the electronic devices, or online back-ups of these documents and devices (such as Mr. Giuliani's iCloud account). **By August 12, 2022 please detail in writing the specific devices, email, social media, and communications accounts, any and all online/cloud-based accounts or back-ups, and any other materials that the DOJ seized. At the same time, confirm that Mr. Giuliani no longer has direct access to *any* of these materials and, if so, please explain why that is the case. If Mr. Giuliani has direct access to any repositories likely to contain responsive information, including but not limited to those materials seized, confirm and detail in writing (1) which repositories those are, (2) whether the contents of those repositories were collected, searched, and/or produced in Defendant's First Production and, if not, confirm that Mr. Giuliani will do so consistent with his discovery obligations in this case. By August 12, 2022 please also explain the origins of the documents in the First Production, which Mr. Giuliani was able to access despite having had materials seized by the DOJ.**

During the July 6 M&C, You confirmed that Mr. Giuliani had not yet provided ***any*** information to the Special Master regarding Plaintiffs' First Set of Discovery Requests or in response to any discovery requests in *Dominion*. You also explained that Plaintiffs may provide search terms and date ranges to the Special Master in order to obtain discovery of those documents for a nominal cost. You represented that Mr. Giuliani would promptly reach out to the Special Master, copying Plaintiffs' counsel and counsel for Plaintiff in *Dominion*, to begin a coordinated process of getting discovery responsive to Plaintiffs' First Set of Discovery Requests. I sent You an email on July 12, 2022 requesting a "date certain when you will connect us with the Special Master so we may begin this process promptly." *See* 7/12/2022 email from A. Houghton-Larsen to J. Sibley, cc'ing others, *RE: Freeman v. Giuliani – Discovery.* You did not reply. On August 2, 2022, I sent You another email in which I explained that Plaintiffs expect You will reach out to the Special Master no later than the end of the week. *See* 8/02/2022 email from A. Houghton-Larsen to J. Sibley, cc'ing others, *RE: Freeman v. Giuliani – Discovery.* As of today's date, You have neither provided a date certain nor emailed the Special Master copying Plaintiffs' counsel to initiate this process. **We expect that You will begin this coordination process with the Special Master no later than August 8, 2022. To help expedite the process, please provide the attached proposed search terms (Ex. A) to the Special Master.**

Finally, You represented for the first time during the July 6 M&C that Mr. Giuliani has recently learned that some of the seized material held by the Special Master may have been corrupted or damaged

August 5, 2022
Page 5

during the DOJ's collection process. **Please detail in writing and provide any communications, including but not limited to any communications from the Special Master, about the potential corruption of the data seized by the DOJ, such as the extent of such damage and when and how it occurred.** We expect that You will provide ongoing updates regarding potential corruption.

      C. *Specific Deficiencies in Mr. Giuliani's First RFP R&Os.*

      Plaintiffs object to Defendant's First RFP R&Os as deficient. Below, Plaintiffs lodge specific objections, but reserve all rights to lodge additional concerns and objections in the future. **Please provide amended First RFP R&Os addressing the outlined deficiencies by August 12, 2022.**

**Documents Previously Produced to the January 6 Special Committee and in _Dominion_**. In his First RFP R&Os to Requests 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, and 18, Mr. Giuliani agrees only to produce documents "previously produced to the January 6th Special Committee and *Dominion*" (subject to his objections). As discussed above, limiting Mr. Giuliani's productions to documents previously produced to the January 6 Committee and in *Dominion* is insufficient to fulfill Mr. Giuliani's discovery obligations here. *See, e.g., Klayman v. Jud. Watch, Inc.*, 6 F.4th 1301, 1312 (D.C. Cir. 2021) (explaining that party's production of some discovery does not excuse his failure to produce all properly requested discovery), *cert. denied*, 142 S. Ct. 2731 (2022). Mr. Giuliani must search the documents and communications within his custody or control for responsiveness to Plaintiffs' First Set of RFPs and produce any documents that are responsive, regardless of whether those documents were previously produced in other actions.

**Request for Production 12**.

| REQUEST | RESPONSE |
|---|---|
| All Agreements, whether formal or informal, between You and OAN executed between January 1, 2013, and the date of the Requests. | Defendant will produce a joint defense agreement entered into in the Coomer litigation pending in Denver, Colorado. |

      In response to Request 12, Mr. Giuliani agreed to produce (and has produced) what he purports to be a joint defense agreement between him, OAN, and others in connection with *Eric Coomer, Ph.D. v. Donald J. Trump for President, Inc., et al.*, Case No. 2020-cv-034319, in the District Court for the City and County of Denver, Colorado. This response is incomplete as Request 12 requests "[a]ll Agreements, whether formal or informal, between [Mr. Giuliani] and OAN executed between January 1, 2013, and the date of the Requests" (emphasis added).[1] If any other agreements exist between Mr. Giuliani and OAN during the requested time frame, Mr. Giuliani is required to produce them. If no other agreements exist between Mr. Giuliani and OAN during the requested time frame, Mr. Giuliani must provide confirmation of such in writing.

---

[1] In *Lamaute v. Power*, the court granted a workplace discrimination plaintiff's motion to compel with respect to a discovery request requesting all internal reports and statistics on diversity and inclusion. 339 F.R.D. 29, 39 (D.D.C. 2021). The court found defendant's production of three documents and a partial dataset in response to this request was inadequate where plaintiff sought all documents. *Id.*

August 5, 2022
Page 6

**Request for Production 19**.

| REQUEST | RESPONSE |
|---|---|
| Documents sufficient to summarize viewer and listener metrics for All Your Statements on Social Media and your Podcast, Rudy Giuliani's Common Sense, from the date of original publication through today, including reach, count, page visits, posts, shares, time spent, impressions, and listener numbers. | Defendant objects to this request as overly broad and unduly burdensome as it calls for Defendant to create documents. Subject to and without waiving these objections, Defendant does not have summary documents available but will supplement if and when able regarding the numbers Plaintiffs' requests. |

Defendant's response to Request 19 is non-responsive as it contemplates Defendant having to create summary documents. Request 19 neither asks for nor requires Defendant to make a summary document. Request 19 asks for "[d]ocuments sufficient to summarize." Defendant must amend his response to Request 19 to be responsive to the request made.

**Relevance**. Plaintiffs note that Defendant does not object to any of the First Set of RFPs on the basis of relevance. Plaintiffs therefore understand that Mr. Giuliani has conceded the relevance of the First Set of RFPs.

## III.   DEFENDANT'S FIRST PRIVILEGE LOG.

The First Privilege Log is 49 pages in length and reflects that Defendant Giuliani is withholding 665 documents in their entirety or in part (the "Withheld Documents") based on attorney-client, work product, and/or common interest grounds.[2] Mr. Giuliani is withholding more than half the amount of documents that he has produced to Plaintiffs to date. Among the 665 Withheld Documents, Mr. Giuliani is withholding: 325 based solely on attorney-client privilege;[3] 141 based solely on work product;[4] 190

---

[2] During the July 6 M&C, counsel for Plaintiffs raised a number of general concerns regarding Mr. Giuliani's Privilege Log. Counsel for Plaintiffs explained that they would continue to review the First Privilege Log and follow-up with a formal letter memorializing our questions and concerns. This letter constitutes that formal response. This letter is not intended to catalogue every possible deficiency and Plaintiffs reserve all rights, including to raise arguments not discussed herein.

[3] First Privilege Log Entries 1-4, 6-10, 12-15, 17, 19, 21-22, 25-30, 32-33, 35-39, 41-43, 45-52, 54-58, 60-67, 70-79, 81-82, 84-94, 98-99, 101, 103, 105, 107-109, 112-113, 116-130, 132-133, 135, 138-144, 146-149, 151, 153-158, 160-166, 168-179, 181, 183-189, 192-198, 200, 203-205, 209-211, 213, 215-218, 220, 222-224, 227-234, 236-241, 243-245, 248-251, 253-256, 258-263, 266, 270-272, 275, 277, 279-284, 287-288, 290-293, 314-315, 328-329, 347, 374, 384-387, 389, 391-393, 395-405, 407-409, 411, 415, 424, 425, 428-430, 433-435, 437, 443, 448-449, 451-452, 454, 458, 464, 467, 471-472, 484, 491, 493, 495, 497, 507, 517, 519, 523, 526, 528, 530, 535, 536, 538, 543, 546, 549, 556, 565-566, 568-569, 573, 575, 577-578, 581, 583-584, 588, 592, 599-600, 602, 609, 613, 619, 642, 644-646, 649-650, 652-654, 658-664.

[4] First Privilege Log Entries 265, 274, 308, 322, 333, 340, 354, 412, 441-442, 444-447, 450, 453, 455-456, 459-463, 465-466, 468-470, 473-481, 483, 485, 487, 490, 492, 494, 496, 498-506, 508, 509-515, 518, 522, 525, 527, 529, 531-534, 537, 539-542, 544-545, 547-548, 550-555, 557, 560-562, 564, 567, 570-572, 574, 576, 579-580, 582, 585, 589-591, 593-598, 601, 604-608, 610-612, 614-615, 618, 621, 623-624, 626-629, 631-641, 643, 665.

August 5, 2022
Page 7

based on both attorney-client and work product privilege;[5] 6 based on attorney-client, work product, and common interest privilege;[6] and 3 based on attorney-client and common interest privilege.[7]

Where a defendant claims privilege, he "bears the burden to prove the communication or document is protected." *Banneker Ventures, LLC v. Graham*, 253 F.Supp.3d 64, 69 (D.D.C. 2017); *see also Pub. Citizen, Inc. v. U.S. Dep't of Educ.*, 388 F.Supp.3d 29, 40 (D.D.C. 2019); Fed. R. Civ. P. 26(b)(5). A defendant must do so by introducing "competent evidence" that satisfies "each of the essential elements necessary to sustain a claim of privilege." *Pub. Citizen, Inc.*, 388 F.Supp.3d at 40 (quoting *Alexander v. FBI*, 192 F.R.D. 42, 45 (D.D.C. 2000)). This evidence must be more than "conclusory statements, generalized assertions, and unsworn averments of [] counsel." *In re Veiga*, 746 F.Supp.2d 27, 34 (D.D.C. 2010). A defendant must offer evidence that establishes the claimed privilege with "reasonable certainty" and defendant's failure to do so would permit the court to conclude that his burden has not been met. *FTC v. TRW, Inc.*, 628 F.2d 207, 213 (D.C. Cir. 1980); *see also In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 750–51 (D.C. Cir. 2006) ("The basis of a privilege must be adequately established in the record through evidence sufficient to establish the privilege with reasonable certainty.") (cleaned up).

A privilege log must provide sufficient description to permit the opposing party and the Court to assess why the material is being withheld. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii) (requiring withholding party "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim"). "From the entry itself the opposing party and ultimately the judge should be able to tell that the information not being disclosed is properly claimed as privileged." *Chevron Corp. v. Weinberg Grp.*, 286 F.R.D. 95, 98 (D.D.C. 2012) (brackets omitted); *see also Nat'l Sec. Couns. v. CIA*, 960 F.Supp.2d 101, 193–95 (D.D.C. 2013) (Howell, J.) (finding the CIA's privilege descriptions were insufficient for the court to determine that the documents were sent for the purpose of securing an opinion on law, legal services, or assistance in some legal proceeding).

The First Privilege Log is deficient in form and substance. Given the breadth of the Withheld Documents, this letter does not provide document-level comments but instead groups the documents to articulate categorical issues and illustrative examples. The documents listed below are by no means exhaustive, and Plaintiffs reserve all rights to challenge Defendant's privilege claims as to any of the Withheld Documents. **In order for Plaintiffs to be able to assess the propriety of the privilege that Mr. Giuliani is asserting across a large number of documents, Mr. Giuliani must provide an updated privilege log that addresses the deficiencies described herein by August 26, 2022.**

---

[5] First Privilege Log Entries 5, 11, 16, 18, 20, 23-24, 31, 34, 40, 44, 53, 59, 68-69, 80, 83, 95-96, 100, 102, 104, 106, 110-111, 114-115, 131, 134, 136, 137, 145, 150, 152, 167, 177, 190-191, 199, 201-202, 206-208, 212, 214, 219, 221, 225-226, 235, 242, 246-247, 264, 267-269, 273, 278, 285-286, 289, 294-307, 309-313, 316-321, 323-327, 330-332, 334-339, 341-346, 348-353, 355-373, 375-383, 388, 406, 410, 413-414, 416-423, 426-427, 431-432, 436, 438-440, 457, 482, 486, 488-489, 516, 520-521, 524, 558-559, 563, 586-587, 603, 616-617, 620, 622, 625, 630, 647-648, 651, 655-657.

[6] First Privilege Log Entries 159, 180, 257, 276, 390, 394.

[7] First Privilege Log Entries 97, 182, 252.

August 5, 2022
Page 8

       A.  *Form Deficiencies*.

**Undated Entries**.  Nearly 200 of the entries in the First Privilege Log fail to provide any date of the document and, therefore, disclose insufficient information to determine the applicability of any privilege.[8]

**Lack of Custodian Information**.  As discussed in connection with the First Production, neither the metadata nor the First Privilege Log identify the custodians of any of the documents.  It does not appear that Mr. Giuliani is the custodian of, or even a sender or recipient of, more than half of the documents listed on the First Privilege Log.[9]

      The issues associated with the lack of custodian are aggravated by the fact that Mr. Giuliani uses various aliases for his email address.  In addition to the email address rudolphgiuliani@icloud.com, the First Privilege Log also lists "Rudy Giuliani" as the sender and/or recipient of emails to the accounts "rhelen0528@gmail.com" and "giuliani.andrew@gmail.com."[10]  Mr. Giuliani must confirm that he is the sole recipient of emails at all three email addresses and/or correct any clerical errors in the First Privilege Log.

      The lack of a custodian also renders incomplete and deficient the entries that list no recipient (320)[11] or no sender (11).[12]  Without any information as to the custodian, the recipient, or the sender, Plaintiffs are unable to assess the applicability or validity of any of the claimed privileges.

---

[8] First Privilege Log Entries 303-304, 309, 322, 332, 379-380, 383, 413, 418, 421, 424, 440-441, 444-456, 458-464, 466-470, 472-474, 476-480, 482-486, 489-492, 495-517, 519, 521-522, 524-527, 531-538, 540-543, 545-549, 551-555, 557-558, 560-564, 567, 569-579, 582-585, 587, 589, 591-602, 604-605, 608-609, 612-615, 617-621, 623-624, 626-629, 631-635, 637-647, 649-657, 659-664.

[9] First Privilege Log Entries 4, 8, 10-11, 14-15, 17, 19-20, 23, 27, 29-31, 37-38, 40, 43-44, 46, 49, 50, 57, 60, 71, 73, 75, 77-79, 81, 85, 89, 94, 97, 103-104, 107-108, 110-112, 114, 117-118, 120, 122, 127, 129, 133-136, 141, 143-144, 146-147, 149, 151-154, 159-160, 163-164, 169, 172-173, 175-176, 181-182, 187-190, 194-195, 200, 204-205, 207-209, 211, 214, 216-218, 220-221, 224, 230, 234-241, 243-244, 247, 249, 251-253, 257, 261-265, 267-268, 270, 271, 274-277, 279-282, 284-287, 290-292, 294-330, 333-336, 338-339, 341-346, 348-349, 351-353, 355-356, 358-370, 372-377, 379-383, 386-387, 389-390, 392-393, 395, 398-399, 404, 407, 409, 411-424, 426-427, 431-432, 434, 437-438, 440, 443, 454, 459, 462, 482, 488, 516-517, 519, 523-524, 528, 530, 532, 543, 549, 556, 563, 565-566, 573, 575, 603, 606, 613, 625, 640, 643-654, 656-665.

[10] Five entries list Andrew Giuliani's email address as a recipient of a communication, but list Defendant as the individual associated with the email address.  *See* First Privilege Log Entries 199, 242, 246, 391, 430.  Mr. Giuliani must confirm and provide evidence demonstrating his use of his son's email address on the applicable dates and times and that his son did not have access to this email address during the date of the Withheld Documents.  *See Doe 1 v. George Wash. Univ.*, 480 F.Supp.3d 224, 226 (D.D.C. 2020) (listing one of the factors courts should consider in assessing privilege waiver as whether "third parties have a right of access to the computer or e-mails") (quoting *In re Asia Glob. Crossing, Ltd.*, 322 B.R. 247, 257 (Bankr. S.D.N.Y. 2005)).

[11] First Privilege Log Entries 202, 214, 221, 264, 267-268, 274, 285-286, 294-313, 316-327, 330-346, 348-373, 375-383, 412-414, 417-424, 426-427, 431-432, 438, 440-456, 458-492, 494-519, 521-522, 524-558, 560-567, 569-580, 582-585, 587, 589-602, 604-606, 608-621, 623-624, 626-629, 631-647, 649-665.

[12] First Privilege Log Entries 308, 462, 524, 543, 549, 556, 573, 575, 613, 658, 662.

August 5, 2022
Page 9

**Lack of Document Identification**.  The First Privilege Log does not provide corresponding Bates numbers of any of the documents, including to identify those documents withheld entirely or which are produced, but redacted.

**Insufficient Privilege Descriptions**.  The First Privilege Log fails to provide any subject lines and the information contained in the "Privilege Description" column lacks sufficient description to permit Plaintiffs to assess why the material is being withheld and whether that withholding is proper.  *See* Fed. R. Civ. P. 26(b)(5)(A)(ii).  For example, various entries merely state the document relates to "legal advice" relating to "potential voter fraud" without any geographical or litigation reference.[13]  By way of another example, another entry claims legal advice "regarding a team call," which also provides no information from which Plaintiffs could understand the basis of the asserted privilege.[14]

**Inaccurate Information**.  There are a number of privilege log entries that are inaccurate on their face.[15] For example, Entry 6 purports to withhold a document from Christina Bobb and to Mr. Giuliani, but the Privilege Description reads "Confidential email communication providing information necessary to obtain legal advice from Christina Bobb regarding Pennsylvania state litigation and hearings."  Entry 184 suffers from the same error, claiming to be a document from Victoria Toensing and to Katherine Friess, in order "to obtain legal advice from Victoria Toensing regarding Michigan state litigation and hearings."

***

In order for Plaintiffs to assess the propriety of Mr. Giuliani's privilege assertions, Mr. Giuliani must provide the dates of the undated Withheld Documents and confirm that he is the custodian of all of the documents listed on the First Privilege Log and, if so, how he came to possess them without having sent or received them.  If he is not the custodian of certain of the documents, he must identify those documents, confirm the custodian, describe how he came to possess those documents, and explain why he has standing to assert privilege over documents for which he was not the custodian.

Defendant Giuliani must identify which materials have been withheld in full versus redacted in part, and provide a revised privilege log indicating the Bates numbers for the redacted documents.  To the extent he has withheld documents in their entirety rather than redact the protected portions, he must produce documents with proper redactions and adjust the privilege log accordingly.

Defendant Giuliani also must provide sufficient information for Plaintiffs to determine the propriety of the privileges, and correct any facial inaccuracies.

        B. *Substantive Deficiencies.*

           i.   Attorney-client Privilege

---

[13] *See, e.g.*, First Privilege Log Entries 14, 73, 127, 141, 154, 204, 248, 284, 391, 425.
[14] *See* First Privilege Log Entry 221.
[15] *See, e.g.*, First Privilege Log Entries 25, 30, 35, 39, 47, 55, 60, 62, 78, 99, 101, 116, 125, 150, 157, 170, 188.

August 5, 2022
Page 10

Defendant Giuliani is withholding a total of 524 documents based on attorney-client privilege,[16] of which 325 are withheld based solely on attorney-client privilege,[17] 190 are withheld based on both attorney-client and work product privilege,[18] 6 are withheld based on attorney-client, work product, and common interest privilege,[19] and 3 are withheld based on attorney-client and common interest privilege.[20]  As the United States Court of Appeals for the District of Columbia Circuit has explained:

> The [attorney-client] privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984) (citation omitted).  The First Privilege Log fails to provide sufficient information for Plaintiffs or the Court to assess any of the required elements to withhold documents on the basis of attorney-client privilege.

**Identification of Client and Attorney**.  The First Privilege Log neither identifies the "client" (i.e. the asserted holder of the privilege who "is or sought to become a client") nor the attorney "to whom the communication was made."  For example, while various documents include You, which suggests that the client is Mr. Giuliani, others reference the receipt of legal advice *from* Mr. Giuliani.  Mr. Giuliani

---

[16] First Privilege Log Entries 1-264, 266-273, 275-307, 309-321, 323-332, 334-353, 355-411, 413-440, 443, 448-449, 451-452, 454, 457-458, 464, 467, 471-472, 482, 484, 486, 488-489, 491, 493, 495, 497, 507, 516-517, 519-521, 523-524, 526, 528, 530, 535-536, 538, 543, 546, 549, 556, 558-559, 563, 565-566, 568-569, 573, 575, 577-578, 581, 583-584, 586-588, 592, 599-600, 602-603, 609, 613, 616-617, 619-620, 622, 625, 630, 642, 644-664.

[17] First Privilege Log Entries 1-4, 6-10, 12-15, 17, 19, 21-22, 25-30, 32-33, 35-39, 41-43, 45-52, 54-58, 60-67, 70-79, 81-82, 84-94, 98-99, 101, 103, 105, 107-109, 112-113, 116-130, 132-133, 135, 138-144, 146-149, 151, 153-158, 160-166, 168-179, 181, 183-189, 192-198, 200, 203-205, 209-211, 213, 215-218, 220, 222-224, 227-234, 236-241, 243-245, 248-251, 253-256, 258-263, 266, 270-272, 275, 277, 279-284, 287-288, 290-293, 314-315, 328-329, 347, 374, 384-387, 389, 391-939, 395-405, 407-409, 411, 415, 424-424, 428-430, 433-435, 437, 443, 448-449, 451-452, 454, 458, 464, 467, 471-472, 484, 491, 493, 495, 497, 507, 517, 519, 523, 526, 528, 530, 535, 536, 538, 543, 546, 549, 556, 565-566, 568-569, 573, 575, 577-578, 581, 583-584, 588, 592, 599-600, 602, 609, 613, 619, 642, 644-646, 649-650, 652-654, 658-664.

[18] First Privilege Log Entries 5, 11, 16, 18, 20, 23-24, 31, 34, 40, 44, 53, 59, 68-69, 80, 83, 95-96, 100, 102, 104, 106, 110-111, 114-115, 131, 134, 136, 137, 145, 150, 152, 167, 177, 190-191, 199, 201-202, 206-208, 212, 214, 219, 221, 225-226, 235, 242, 246-247, 264, 267-269, 273, 278, 285-286, 289, 294-307, 309-313, 316-321, 323-327, 330-332, 334-339, 341-346, 348-353, 355-373, 375-383, 388, 406, 410, 413-414, 416-423, 426-427, 431-432, 436, 438-440, 457, 482, 486, 488-489, 516, 520-521, 524, 558-559, 563, 586-587, 603, 616-617, 620, 622, 625, 630, 647-648, 651, 655-657.

[19] First Privilege Log Entries 159, 180, 257, 276, 390, 394.

[20] First Privilege Log Entries 97, 182, 252.

August 5, 2022
Page 11

also has claimed that he formerly represented Donald Trump in his personal capacity and, for a more limited period of time, the Trump Campaign.[21]  Understanding the identity of the client and the attorney from whom legal advice is purportedly being sought or given is essential to assessing every element of attorney-client privilege, including the existence of a relationship and the type of communications that would be privileged.  *See In re Sealed Case*, 737 F.2d at 98 (attorney-client privilege applies only if "the asserted holder of the privilege is or sought to become a client"); *In re Search of Info. Associated with Premises Known as Off. of [Redacted] and the Offs. [Redacted]*, No. MC 20-GJ-35 (BAH), 2020 WL 7042616, at *3 (D.D.C. Dec. 1, 2020) (Howell, J.) ("attorney-client privilege applies only when the participants in the communication are the client and the client's attorney").  Mr. Giuliani must supplement the First Privilege Log to identify the specific client and attorney(s) over whom he is claiming attorney-client privilege.

**Attorney-Client Relationship**.  The First Privilege Log fails to provide sufficient information to assess the existence of an attorney-client relationship.  Mr. Giuliani, "as the party asserting the existence of an attorney-client privilege," bears the "burden to establish that a privileged relationship existed between himself" as the attorney and Mr. Trump and/or the Trump Campaign (and/or any other client) and the time period of that representation (or any of the purported attorney-client relationships on which the privilege is based).  *In re Grand Jury Investigation*, No. 19-15 (BAH), 2019 WL 2179116, at *12 (D.D.C. Mar. 4, 2019) (Howell, J.).  Where Mr. Giuliani claims that he was the client seeking or receiving legal advice, Mr. Giuliani must similarly establish that an attorney-client relationship existed between him and the attorneys and the time period of that representation for communications over which he is claiming attorney-client privilege.  *Id.*

Mr. Giuliani claims that his representation of Mr. Trump in his personal capacity and the Trump Campaign both ended by February or March 2021.[22]  Senior Trump adviser Jason Miller publicly stated on February 16, 2021 that Mr. Giuliani is "not currently representing President Trump in any legal matters."[23]  But Mr. Giuliani is withholding 110 documents that postdate February 16, 2021 (and which do not include You as a sender or recipient).[24]  Mr. Giuliani must provide an explanation of the basis for the asserted privileges relating to communications when there was neither an attorney-client relationship

---

[21] Aug. 14, 2021 Dep. of R. Giuliani at 27:10–29:14, *Coomer v. Donald J. Trump for President, Inc., et al.*, No. 2020-cv-034319, https://lede-admin.coloradosun.com/wp-content/uploads/sites/15/2021/09/Giuliani-depo-in-Coomer-case.pdf (hereinafter, "Giuliani Coomer Deposition").

[22] *Id.* at 37:21–38:14.  *See also* First RFP R&Os Requests 7 and 8 ("Defendant cannot confirm whether or which documents may or may not have been produced to the GBI by the legal team representing the Trump Campaign") ("Defendant cannot confirm whether or which documents may or may not have been produced to the DOJ by the legal team representing the Trump Campaign").

[23] Jim Acosta & Paul LeBlanc, *Giuliani not currently representing Trump 'in any legal matters' adviser says*, CNN (Feb. 16, 2021), https://www.cnn.com/2021/02/16/politics/rudy-giuliani-donald-trump/index.html.

[24] First Privilege Log Entries 1, 4, 11-12, 14-15, 20, 24, 35, 38, 40, 42, 49, 73, 76-77, 79, 82, 89, 93, 97, 99, 101, 103, 107-110, 112-114, 120, 125-127, 129, 132, 138 141, 144, 152, 154, 160, 162, 164, 167, 169, 172-173, 178, 182, 185, 187, 190, 193-195, 202, 204, 209, 212, 217, 219-220, 227-228, 236-239, 241, 244, 251-252, 254, 257, 263, 265, 275, 282, 287-288, 291-292, 324-325, 331, 337, 339, 350, 357, 370-371, 376, 378, 386, 389, 392, 396-398, 401, 409, 411, 416, 435, 439, 442, 550, 611, 665.

August 5, 2022
Page 12

between Mr. Giuliani and Donald Trump and/or the Trump Campaign nor between You and Mr. Giuliani.

Moreover, Mr. Giuliani has testified under oath that he is not always wearing a "legal hat" during his communications with Mr. Trump because he also provides Mr. Trump with nonlegal political advice.[25]  Mr. Giuliani must remove from the privilege log and promptly produce any documents in which Mr. Giuliani was providing nonlegal advice.

The majority of the 524 documents over which the First Privilege Log asserts attorney-client (and in some cases additional privileges) are communications that include individuals whom Defendant Giuliani has testified comprised Mr. Trump's *personal* team of lawyers beginning after the 2020 presidential election: Jenna Ellis, Sidney Powell, Joseph diGenova, Victoria Toensing, Boris Epshteyn, and Christina Bobb (collectively, "Trump's Personal Lawyers").  During a recent deposition, Mr. Giuliani confirmed that Trump's Personal Lawyers were not also working for the Trump Campaign during that time and that the lawyers representing Donald Trump in his personal capacity and lawyers from the Trump Campaign were "two separate groups" of lawyers "that did different things."[26] However, Donald Trump is not on any of the Withheld Documents.  Mr. Giuliani must explain the basis for asserting attorney-client communications for communications among Trump's Personal Lawyers when the client is not on the communications, and provide sufficient information to determine whether the allegedly privileged communications "rested in significant and inseparable part on the client's confidential disclosure."  *In re Sealed Case*, 737 F.2d at 99 (citation omitted); *Alexander v. FBI*, 193 F.R.D. 1, 5 (D.D.C. 2000) (no privilege over communications among counsel where party moving to protect documents did not demonstrate that the "information withheld pertained to a confidential communication from the client"); *Cobell v. Norton*, 226 F.R.D. 67, 88 (D.D.C. 2005) ("Where the communications at issue were made by attorneys, rather than by clients, those communications are privileged only if they 'rest on information obtained from a client'") (quoting *In re Sealed Case*, 737 F.2d at 99).

To the extent that Mr. Giuliani intends to claim some sort of an attorney-client relationship between Trump's Personal Lawyers and the Trump Campaign (despite testifying that there was no such relationship), the majority of the 524 documents—330—do not contain any individual with an email address indicating that they were agents of the Trump Campaign.  On its face, the First Privilege Log provides no basis for why these 330 documents would qualify as attorney-client privileged, including any information to determine if the communications "rest on information obtained from a client."[27] *Cobell*, 226 F.R.D. at 88.

---

[25] Giuliani Coomer Deposition at 39:2–7.

[26] *Id.* at 19:24–20:19, 22:2–23:19, 30:7–20.  Mr. Giuliani was unsure whether Jenna Ellis had previously served as counsel to Mr. Trump personally.  *Id.* at 24:13–20.

[27] First Privilege Log Entries 1, 4, 6, 8-9, 11-12, 14-15, 20, 22-24, 28, 35, 38, 40, 42, 44, 49, 51, 56-57, 59, 61, 69, 73, 76-77, 79, 81-82, 84, 87, 89, 93, 97-99, 101, 103-104, 107-114, 116, 120, 125-129, 132, 134, 136, 138, 140-142, 144, 152, 154, 159-160, 162, 164, 167-169, 172-173, 178, 180, 182, 185, 187, 190, 193-195, 202, 204, 208-209, 211-212, 214, 217, 219-221, 224, 227-228, 230, 234, 236-239, 241, 244, 248, 251-252, 254, 257, 261, 263-264, 267-268, 275-276, 279-280, 282, 285-288, 290-292, 294-307, 309-313, 316-321, 323-327, 330-332, 334-339, 341-346, 348-353, 355-373, 375-383, 386, 388-390, 392-399, 401, 404, 409, 411, 413-414, 416-427,

August 5, 2022
Page 13

As far as the limited number of documents that contain an author or recipient with an email address with the domain "@donaldtrump.com," the First Privilege Log fails to provide sufficient explanation for why the attorney-client privilege would attach, including because of the lack of a purported attorney-client relationship between Trump's Personal Lawyers and the lawyers working for the Trump Campaign. For example, the only individuals with a "donaldtrump.com" domain name on a number of the documents are Boris Epshteyn and Jenna Ellis, both of whom Mr. Giuliani testified did *not* represent the Trump Campaign at the time of the documents.[28]   And a number of documents are between an individual with an @donaldtrump.com domain name and other of Trump's Personal Lawyers and/or other third parties.[29]   The First Privilege Log also provides no basis to determine whether the limited documents *from* individuals with an @donaldtrump.com domain name were seeking legal advice or if the responses included protected information. While the First Privilege Log asserts a common interest privilege (as discussed below), it only does so as to 9 documents[30] over which Mr. Giuliani also claims attorney-client privilege and, therefore, does not resolve how the attorney-client privilege attaches to communications between Trump's Personal Lawyers and lawyers representing the Trump Campaign.

**Trump's Personal Lawyers and Political, Not Legal, Advice**. Mr. Giuliani must detail "the role and relationship of various individuals" that comprised Trump's Personal Lawyers lest Plaintiffs (and the Court) are left to guess at whether there was any attorney-client relationship, as well as provide a basis for determining whether Trump's Personal Lawyers were serving in a legal capacity as opposed to providing "advice on political, strategic, or policy issues" which would not be shielded from disclosure. *See In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998); *In re Domestic Airline Travel Antitrust Litig.*, No. MC 15-1404 (CKK), 2020 WL 3496748, at *9 (D.D.C. Feb. 25, 2020), *report and recommendation adopted,* No. MC 15-1404 (CKK), 2020 WL 3496448 (D.D.C. May 11, 2020). For example, Defendant Giuliani has withheld 244 documents sent from or to Ms. Bobb.[31]   While Plaintiffs understand that Ms. Bobb is a member of the California bar,[32] her email address on the Withheld Communications— christina@cgbstrategies.com—is affiliated with CGB Strategies, LLC, a public relations firm. Ms. Bobb also worked as a host for former-Defendant One America News Network ("OAN") between June 2020

---

[28] Giuliani Coomer Deposition at 24:4–20

[29] *Id*. at 22:2–24:20; *see, e.g.*, First Privilege Log Entries 17, 25, 41, 60, 65, 67, 86, 88, 91-92, 99, 105, 115, 117, 119.

[30] First Privilege Log Entries 97, 159, 180, 182, 252, 257, 276, 390, 394.

[31] First Privilege Log Entries 1, 2, 4-6, 8-10, 12-13, 15-19, 20-26, 28-39, 40, 42, 44-45, 48-49, 51, 53, 55-57, 59-63, 68-69, 71, 75-76, 78-82, 85-91, 93, 95-97, 99-101, 103-104, 106, 109, 111-114, 116-117, 123-126, 132, 134, 136-138, 140, 142-144, 147, 149-152, 155-157, 159, 161-162, 164-165, 167-171, 175-178, 180, 185, 187-189, 191-193, 200, 206-207, 208-209, 211-213, 219-221, 225-226, 227, 228-231, 234, 236, 238, 243, 245, 247-249, 252, 254, 260-262, 267, 269-270, 273, 276, 278-288, 290, 293, 303-305, 309-313, 321, 324-325, 334, 339, 347, 349, 353, 356, 367, 369-370, 376-377, 384-386, 388, 390, 395-402, 404-405, 410, 413-414, 417-421, 424, 427-429, 433, 437, 439, 519, 530, 568, 644-647, 648-657, 659-661, 663-664.

[32]   *Christina   Gabrielle   Bobb*,   Attorney   Profile,   State   Bar   of   California, https://apps.calbar.ca.gov/attorney/Licensee/Detail/259430.

August 5, 2022
Page 14

and March 2022.  The First Privilege Log does not make clear whether Ms. Bobb was included on the emails for legal advice, as opposed to for a public relations-related consult.  *See In re Veiga*, 746 F.Supp.2d at 42 (no privilege for documents sent or received by certain individuals on the privilege log where the Court had no way of knowing "in what capacity [they were] operating or what [their] relationship was with respect to other participants"); *In re Lindsey*, 148 F.3d at 1106 ("[C]onsultation with one admitted to the bar but not in that other person's role as lawyer is not protected.") (quoting Restatement (Third) of the Law Governing Attorneys § 122 cmt. c); *In re Sealed Case*, 737 F.2d at 99 (noting a lawyer's advice is only privileged "upon a clear showing that [the lawyer] gave it in a professional legal capacity").

**Waiver**.  Even if there were a basis for asserting attorney-client privilege over the 524 documents withheld on those grounds, Mr. Giuliani must explain why the attorney-client privilege was not waived by sharing the documents with individuals who did not have a legal relationship with the relevant client, including sharing the Withheld Documents with more than *60* other third parties listed in the First Privilege Log (hereinafter, "Third Parties").  The First Privilege Log fails to provide even the most basic identifying information, including in some cases full names, about the 60+ Third Parties who are listed as sending or receiving purportedly attorney-client privileged communications:

1.   TruthandJustice4U@protonmail.com[33]
2.   Katherine Friess (kfriess@protonmail.com or kef@husmail.com)[34]
3.   Bruce Marks (marks@mslegal.com)[35]
4.   Retired judge John Leventhal (judgeleventhal@aidalalaw.com)[36]
5.   Retired judge Barry Kamins (judgekamins@aidalalaw.com)[37]
6.   Matthew Stroia[38]
7.   Andrew Giuliani, the Defendant's son[39]
8.   p@bonfiresearch.org[40]
9.   Mark Serrano (serrano@proactivecommunications.com)[41]

---

[33] First Giuliani Privilege Log Entries 11, 14, 20, 27, 38, 40, 46, 49, 50, 73, 77, 89, 97, 17-108, 110, 114, 120, 122, 127, 129, 133, 141, 152-154, 160, 163-164, 172-173, 181-182, 187, 189-190, 194-195, 204, 217-218, 220, 224, 237, 239-241, 244, 251-253, 257, 263, 271, 275, 277, 282, 284, 287, 291-292, 386-387, 389, 392-393, 398, 407, 409, 411, 415-416, 434.

[34] First Privilege Log Entries 13, 21, 23, 31, 34, 64, 67, 84, 92, 96, 104, 106, 111, 119, 128, 134, 158, 168, 184, 207, 223, 229, 266, 270, 272, 278, 280, 391, 406, 410, 443, 528, 565-566, 568, 586, 588, 630.

[35] First Privilege Log Entries 7, 43, 135, 186, 256, 259, 385, 408.

[36] First Privilege Log Entries 4, 11, 14, 20, 38, 40, 49, 73, 77, 79, 89, 93, 97, 107-110, 114, 120, 126-127, 129, 141, 152, 154, 160, 162, 164, 172-173, 182, 187, 190, 194-195, 204, 217, 220, 237-239, 241, 244, 251-252, 257, 263, 275, 282, 287, 291-292, 386, 389, 392, 396-398, 409, 411, 416, 482.

[37] First Privilege Log Entries 11, 14, 38, 40, 49, 73, 77, 89, 93, 97, 107-108, 110, 114, 120, 127, 129, 141, 152, 154, 160, 164, 172-173, 182, 187, 190, 194-195, 204, 217, 220, 237, 239, 241, 244, 251-252, 257, 263, 275, 282, 287, 291-292, 386, 389, 392, 398, 409, 411, 416, 440.

[38] First Privilege Log Entries 2, 7, 25, 32, 48, 67, 85-86, 88, 91-92, 155, 171, 179, 184, 186, 192, 223, 229, 256, 266, 293, 385, 391, 402, 408, 430, 437.

[39] First Privilege Log Entries 5, 16, 179, 180, 199, 242, 246, 273, 391, 394, 430.

[40] First Privilege Log Entries 13, 61, 98, 290, 395, 406.

[41] First Privilege Log Entries 13, 406.

August 5, 2022
Page 15

10.   Williambailey1@protonmail.com[42]
11.   Matt DePerno (mdeperno@protonmail.com)[43]
12.   Mirna Tarraf (mirnatarraf@hotmail.com)[44]
13.   joannamiller6201@protonmail.com[45]
14.   prestonhaliburton@gmail.com[46]
15.   Mark Foster (mfoster@markfoster.com)[47]
16.   Patrick Colbeck (Patrick.Colbeck@protonmail.com)[48]
17.   Bernard Kerik[49]
18.   Bob Costello (rjc@dhclegal.com)[50]
19.   Chip Borman (chipborman@yahoo.com)[51]
20.   Tom Sullivan (tsullivan@mslegal.com)[52]
21.   Nina Khan (NKhan@msegal.com) or "Nina Khan B"[53]
22.   Marc A. Scaringi (march@scaringilaw.com)[54]
23.   mgs@taalaw.com[55]
24.   Alexander Kolodin[56]
25.   Bobby Burchfield[57]
26.   Carter Harrison[58]
27.   Chaz Nichols[59]
28.   Christina Pesce[60]
29.   Cleta Mitchell[61]
30.   Daniel Cox[62]
31.   Dinero, Inc.[63]

---

[42] First Privilege Log Entry 13.
[43] First Privilege Log Entries 13, 406.
[44] First Privilege Log Entries 13, 21, 34, 53, 80, 131, 206, 225, 260, 278, 399, 405.
[45] First Privilege Log Entry 13.
[46] First Privilege Log Entries 13, 135, 457, 622.
[47] First Privilege Log Entry 13.
[48] First Privilege Log Entry 13.
[49] First Privilege Log Entries 13, 21, 25, 31, 34, 41, 47-48, 59, 64-65, 67, 86, 88, 91-92, 96, 105-106, 119, 155, 158, 168, 171, 183-184, 192, 206-207, 223, 225, 229, 266, 278, 293, 391, 406, 410, 568, 586.
[50] First Privilege Log Entries 22, 125, 143, 209, 288.
[51] First Privilege Log Entries 41, 43, 135, 216, 360.
[52] First Privilege Log Entry 43.
[53] First Privilege Log Entries 41, 366.
[54] First Privilege Log Entries 43, 52, 255.
[55] First Privilege Log Entries 52, 66, 255.
[56] First Privilege Log Entry 648.
[57] First Privilege Log Entry 516.
[58] First Privilege Log Entries 307, 363.
[59] First Privilege Log Entry 319.
[60] First Privilege Log Entry 665.
[61] First Privilege Log Entries 250, 379, 380.
[62] First Privilege Log Entries 326-327.
[63] First Privilege Log Entry 298.

August 5, 2022
Page 16

32.    John Eastman[64]
33.    Emilie O. Denmark[65]
34.    Graziella Pastor[66]
35.    Heather Flick[67]
36.    "Hilary"[68]
37.    Howard Kleinhendler (howard@kleinhendler.com)[69]
38.    Jack Wilenchik and JackW[70]
39.    James Fitzpatrick[71]
40.    Kenneth Chesebro (kenchesebro@msn.com)[72]
41.    "Kurt"[73]
42.    Linda Brickman[74]
43.    "lindak"[75]
44.    Mark Caruso[76]
45.    "Microsoft Outlook"[77]
46.    Mikayla Leef[78]
47.    "MS"[79]
48.    "Omni Platform"[80]
49.    Ray S. Smith, III (rsmith@smithliss.com)[81]
50.    Rod Wittstadt (Rod@gwwlegal.com)[82]
51.    Ron Coleman[83]
52.    Ronald Hicks, Jr.[84]
53.    Thor Hearne (thor@truenorthlawgroup.com)[85]

---

[64] First Privilege Log Entries 170, 203, 259, 272, 295, 317, 323, 381, 403, 408.
[65] First Privilege Log Entries 84, 128, 361, 368.
[66] First Privilege Log Entry 382.
[67] First Privilege Log Entry 351.
[68] First Privilege Log Entries 341-344.
[69] First Privilege Log Entry 523.
[70] First Privilege Log Entries 264, 268, 296-297, 300, 316, 330, 345-346, 362.
[71] First Privilege Log Entries 302, 355, 408.
[72] First Privilege Log Entries 102, 135, 177, 191, 259, 318, 320.
[73] First Privilege Log Entries 359, 373, 375.
[74] First Privilege Log Entries 214, 299, 306, 348.
[75] First Privilege Log Entry 365.
[76] First Privilege Log Entries 52, 66, 255, 258, 285, 335, 338, 364, 426 (from).
[77] First Privilege Log Entry 279.
[78] First Privilege Log Entries 454, 517.
[79] First Privilege Log Entries 286, 294, 336, 432.
[80] First Privilege Log Entry 412.
[81] First Privilege Log Entries 84, 128, 274, 457, 622.
[82] First Privilege Log Entries 135, 179, 301, 422, 430.
[83] First Privilege Log Entries 372, 423.
[84] First Privilege Log Entry 383.
[85] First Privilege Log Entries 83, 115, 159, 211, 230, 233, 276, 353, 358, 390, 404 436.

August 5, 2022
Page 17

54.  Steven Davis (sdavis@truenorthlawgroup.com)[86]
55.  "Trump Legal Team"[87]
56.  Eric Ryan (eric9ryan@gmail.com)[88]
57.  Justin Riemer (JRiemer@gop.com)[89]
58.  Judge Troupis (judgetroupis@gmail.com)[90]
59.  Christianne L. Allen (christianneallen@gmail.com)[91]
60.  Larry Weitzner (larry@jamestownassociates.com)[92]
61.  jorns@templarbaker.com[93]
62.  Harrison Furman[94]
63.  George Burnett (GB@lcojlaw)[95]

Additionally, there are more than 100 documents to or from Maria Ryan (Maria.Ryan@giulianipartners.com or mariaryan@cottagehospital.org)[96] and Jo Ann Zafonte (JoAnn.Zafonte@giulianipartners.com)[97] who ostensibly work for Mr. Giuliani, but the First Privilege Log fails to explain any agency relationship existing between them.

Mr. Giuliani must provide information sufficient to identify the Third Parties, as well as explain in detail their "role and relationship" and the basis for asserting attorney-client privilege over documents and communications shared with them, especially for those individuals who do not appear to be lawyers. *In re Domestic Airline Travel Antitrust Litig.*, 2020 WL 3496748, at *9. Even for those individuals who happen to be lawyers, the privilege does not attach solely because they have a law degree and Mr. Giuliani must provide sufficient information to determine that they all were operating in their professional legal capacity and pursuant to an attorney-client relationship. *See, e.g.*, *In re Lindsey*, 148 F.3d at 1106; *In re Sealed Case*, 737 F.2d at 99; *Alexander v. FBI*, 192 F.R.D. at 17; *Permian Corp. v. United States*, 665 F.2d 1214, 1219 (D.C. Cir. 1981).

If Mr. Giuliani intends to stand on his assertions that the communications that include all of the Third Parties are protected by attorney-client privilege, Mr. Giuliani must explain why he has not waived

---

[86] First Privilege Log Entry 115.
[87] First Privilege Log Entries 520, 559, 607.
[88] First Privilege Log Entries 81, 112.
[89] First Privilege Log Entry 115.
[90] First Privilege Log Entries 135, 259.
[91] First Privilege Log Entries 148, 245, 250.
[92] First Privilege Log Entry 174.
[93] First Privilege Log Entries 181, 395.
[94] First Privilege Log Entry 523.
[95] First Privilege Log Entry 259.
[96] First Privilege Log Entries 4, 8, 11, 13-15, 20, 27, 35, 38, 40, 46, 49, 50, 57-58, 64, 73-74, 77, 79, 89, 93, 97, 103, 107-109, 110, 112, 114, 116, 120-122, 126-127, 129, 133, 139, 141, 144, 146, 152-154, 160, 162-166, 169-170, 172-173, 181-182, 187, 189, 190, 194-195, 197, 203-205, 217-218, 220, 224, 231-232, 234-241, 244, 251-253, 257, 263, 271, 275, 277, 280, 282, 284, 287, 291-292, 372, 386-387, 389, 392-393, 396-397, 398, 403, 407, 409, 411, 415-416, 434, 581.
[97] First Privilege Log Entries 314-315, 328-329, 374, 425, 581, 603, 625.

August 5, 2022
Page 18

the right to assert attorney-client privilege by disclosing the contents to those Third Parties. *See Permian Corp.*, 665 F.2d at 1219 ("Any voluntary disclosure by the holder of such a privilege is inconsistent with the confidential relationship and thus waives the privilege."); *United States v. AT&T Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) ("[T]he mere showing of a voluntary disclosure to a third person will generally suffice to show waiver of the attorney-client privilege."); *In re Search of Info. Associated with Premises Known as Off. of [Redacted] and the Offs. [Redacted]*, 2020 WL 7042616, at *2 (to preserve attorney-client privilege, "the privilege holder 'must treat the confidentiality . . . like jewels – if not crown jewels' and must 'zealously protect the privileged materials, taking all reasonable steps to prevent their disclosure' lest it be waived") (internal quotations and citations omitted); *Nat'l Sec. Couns.*, 960 F.Supp.2d at 198 (finding public disclosure of portion of document waived attorney-client privilege protection as to that portion of the document); *Elkins v. District of Columbia*, 250 F.R.D. 20, 24 (D.D.C. 2008) ("voluntary disclosure of [attorney-client] privileged communications waives the privilege, as does the inadvertent disclosure of privileged information" and where the "communication is disclosed" the privilege is "waived for all documents and communications relating to the subject matter of the disclosure") (internal citations omitted); *Minebea Co., Ltd. v. Papst*, 228 F.R.D. 34, 36 (D.D.C. 2005) ("distributing otherwise privileged letters between counsel and client to third parties necessarily waives the privilege with respect to the subject matter of the disclosure").

**Potential Exceptions**.  Reports indicate that a grand jury in Georgia as well as a federal grand jury convened by the Department of Justice are investigating attempts to interfere in the 2020 election by Donald Trump and/or his lawyers, including perhaps Mr. Giuliani.[98]  Plaintiffs reserve the right to challenge the assertion of privilege based on the crime-fraud exception.  *See In re Grand Jury Investigation*, No. MC 17-2336 (BAH), 2017 WL 4898143, at *9 (D.D.C. Oct. 2, 2017).  Plaintiffs also reserve the right to challenge the assertion of privilege given the torts alleged in the Amended Complaint. *See In re Sealed Case*, 124 F.3d 230, 234 (D.C. Cir. 1997), *rev'd on other grounds sub nom Swidler & Berlin v. U.S.*, 524 U.S. 399 (1998) (explaining that the crime-fraud exception applies to intentional torts).

**Not A Member of the Bar**.  The First Privilege log lists 81 communications that postdate Mr. Giuliani's suspension from practicing law as attorney-client privileged, consisting of 81 emails sent by Maria Ryan on September 19, 2021.[99]  On June 24, 2021, the New York Supreme Court Appellate Division for the First Judicial Department suspended Mr. Giuliani's New York law license.  *In re Giuliani*, 197 A.D.3d 1 (2021).  On or about July 7, 2021, Mr. Giuliani's D.C. law license was also suspended.  *See* Affirmation

---

[98] *See, e.g.*, Kate Brumback, *Giuliani ordered to testify in Georgia 2020 election probe*, AP News (July 20, 2022), https://apnews.com/article/2022-midterm-elections-new-york-donald-trump-georgia-presidential-04b0918bde8c906fb4598220b6ee776a; Tierney Sneed & Evan Perez, *Latest moves suggest DOJ investigation of 2020 election is looking at conduct directly related to Trump and his closest allies* (July 26, 2022), https://www.cnn.com/2022/07/26/politics/justice-department-pence-short-jacob-trump-grand-jury/index.html.

[99] First Privilege Log Entries 4, 11, 14, 20, 27, 38, 40, 46, 49-50, 73, 77, 79, 89, 93, 97, 107-108, 110, 114, 120, 122, 127, 129, 133, 141, 146, 152-154, 160, 163-164, 169, 172-173, 181-182, 187, 189-190, 194-195, 204, 205, 217-218, 220, 224, 237-241, 244, 251-253, 257, 263, 265, 271, 275, 277, 282, 284, 287, 291-292, 386-387, 389, 392-393, 398, 407, 409, 411, 415-416, 434.

August 5, 2022
Page 19

¶ 2, *In re Giuliani*, No. 21 BG 423 (D.C. July 8, 2021).[100]  On information and belief, Mr. Giuliani is not a member of any other state bar or state court of last resort.  *See* In re Application for Pro Hac Vice Admission to Practice in this Court, *Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-CV-02078-MWB (M.D. Pa. Nov. 17, 2020), ECF No. 156 (listing the courts of the State of New York, United States Supreme Court, U.S. Court of Appeals for the Second Circuit, and the U.S. District Court for the Southern District of New York).  Nor could Giuliani continue to practice law under his federal bar admissions following the suspension of his New York law license.  *See* S.D.N.Y. Local Rule 1.5(d)(1) (providing for reciprocal suspension upon the entry of an order from any other court or disciplinary authority suspending the attorney from practice); Second Circuit Local Rule 46.2(c) (same); Sup. Ct. R. (8) (same).  Accordingly, no later than July 7, 2021, Giuliani was no longer "a member of the bar of a court or his subordinate" such that he may claim attorney-client privilege over communications in which he was not a client.  *In re Sealed Case*, 737 F.2d at 98–99.  For example, Entries 38 and 409 list September 19, 2021, emails from Maria Ryan to a group of individuals which purport to consist of "[c]onfidential email communication providing information necessary to obtain legal advice from Rudolph Giuliani," the first with respect to "Georgia state litigation and hearings" and the second with respect to "Pennsylvania state litigation and hearings."  Such entries are not privileged, to the extent the privilege is asserted on the basis of Mr. Giuliani being a member of a bar.

**Sibley Emails**.  The First Privilege Log lists 26 documents sent from Ms. Ryan or Ms. Zafonte to You and certain of the Third Parties, most commonly Ms. Bobb, an individual with the email address TruthandJustice4U@protonmail.com, and former judges Leventhal and Kamins.[101]  Mr. Giuliani himself appears on only one of these emails, and as a recipient.[102]  As detailed above, Mr. Giuliani must explain the basis of the attorney-client privilege when he, the client, is not present, as well as the role and relationship of the other Third Parties who are included on the documents.

ii.   Work Product

Defendant Giuliani asserts work product privilege over 337 of the Withheld Documents: 141 documents based solely on work product;[103] 190 documents based on both attorney-client and work product privilege;[104] and 6 documents based on attorney-client, work product, and common interest

---

[100] Notice of Motion, *In re Giuliani*, No. 21 BG 423 (D.C. July 8, 2021), https://fingfx.thomsonreuters.com/gfx/legaldocs/klvykerygvg/RG-motion.pdf.

[101] First Privilege Log Entries 27, 46, 50, 122, 133, 146, 153, 163, 181, 189, 205, 218, 224, 231, 240, 253, 271, 277, 284, 387, 393, 407, 415, 434, 603, 625.

[102] First Privilege Log Entry 231.

[103] First Privilege Log Entries 265, 274, 308, 322, 333, 340, 354, 412, 441-442, 444-447, 450, 453, 455-456, 459-463, 465-466, 468-470, 473-481, 483, 485, 487, 490, 492, 494, 496, 498-506, 508, 509-515, 518, 522, 525, 527, 529, 531-534, 537, 539-542, 544-545, 547-548, 550-555, 557, 560-562, 564, 567, 570-572, 574, 576, 579-580, 582, 585, 589-591, 593-598, 601, 604-608, 610-612, 614-615, 618, 621, 623-624, 626-629, 631-641, 643, 665.

[104] First Privilege Log Entries 5, 11, 16, 18, 20, 23-24, 31, 34, 40, 44, 53, 59, 68-69, 80, 83, 95-96, 100, 102, 104, 106, 110-111, 114-115, 131, 134, 136, 137, 145, 150, 152, 167, 177, 190-191, 199, 201-202, 206-208, 212, 214, 219, 221, 225-226, 235, 242, 246-247, 264, 267-269, 273, 278, 285-286, 289, 294-307, 309-313, 316-321, 323-327, 330-332, 334-339, 341-346, 348-353, 355-373, 375-383, 388, 406, 410, 413-414, 416-423, 426-427, 431-432, 436, 438-440, 457, 482, 486, 488-489, 516, 520-521, 524, 558-559, 563, 586-587, 603, 616-617, 620, 622, 625, 630, 647-648, 651, 655-657.

August 5, 2022
Page 20

privilege.[105]   The First Privilege Log fails to provide sufficient information to allow Plaintiffs to determine whether Defendant's assertion of work product is proper.

The work product privilege applies only to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A).[106]  "The work product doctrine provides immunity from discovery for written materials that are prepared by a lawyer in anticipation of litigation." *United States v. Philip Morris Inc.*, 212 F.R.D. 421, 424 (D.D.C. 2002) (citations and quotations omitted); *see also United States ex rel. Barko v. Halliburton Co.*, 74 F.Supp.3d 183, 191 (D.D.C. 2014) (explaining that work product protection also protects the work product of a person working on behalf of the attorney).  The "work-product rule does not extend to *every* written document generated by [anyone who happens to be] an attorney, and it does not shield from disclosure *everything* that a lawyer does.  Its purpose is more narrow." *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 926 F.Supp.2d 121, 142 (D.D.C. 2013) (quoting *Jordan v. U.S. Dep't of Just.*, 591 F.2d 753, 775 (D.C. Cir. 1978)) (emphasis added).  In assessing whether the party asserting privilege has carried its burden of showing the privilege applies, "the relevant inquiry is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* at 137 (citation and quotations omitted).  The lawyer who created the document must have had "a subjective belief that litigation was a real possibility," and that subjective belief must have been "objectively reasonable." *Id.* at 137–38.  To meet its burden, the party claiming work product protection must:

> (1) provide a description of the nature of and contents of the withheld document, (2) identify the document's author or origin, (3) note the circumstances that surround the document's creation, and (4) provide some indication of the type of litigation for which the document's use is at least foreseeable.

*Ellis v. U.S. Dep't of Just.*, 110 F.Supp.3d 99, 108 (D.D.C. 2015), *aff'd*, No. 15-5198, 2016 WL 3544816 (D.C. Cir. June 13, 2016) (internal citations omitted).  "Disclosing work product to anyone without common interests in developing legal theories and analyses of documents serves as a waiver of the protection." *Philip Morris Inc.*, 212 F.R.D. at 424 (citations omitted).  The party asserting the work product protection bears both the burden of proving that the protection applies and of proving that the protection has not been waived. *Id.*  The work product privilege is not absolute, and may be overcome for materials that are "otherwise discoverable" and if the opposing "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii).

---

[105] First Privilege Log Entries 159, 180, 257, 276, 390, 394.

[106] Courts have recognized that Rule 26(b)(3) is the codification of the common law work-product doctrine with respect to documents. *See, e.g.*, *Yeda Rsch. & Dev. Co., Ltd. v. Abbott GmbH & Co. KG*, 292 F.R.D. 97, 105 (D.D.C. 2013) ("The work product doctrine has been developed by courts, including extensively in the D.C. Circuit, and is also codified in part in the Federal Rules of Civil Procedure.  Both standards are set forth here.").

August 5, 2022
Page 21

**Prepared by an Attorney for a Client**.  The First Privilege Log fails to specify any details about who the documents *were prepared for*, which is necessary to assess whether the documents are in fact protected by the work product protection.  "The work-product doctrine relies, in the first instance, on the existence of an attorney-client relationship."  *Banneker Ventures, LLC*, 253 F.Supp.3d at 70.  The privilege descriptions are focused singularly on who provided the work product, but do not describe who the document was prepared for, including whether an attorney-client relationship existed between them.  Additionally, as discussed above, there is no basis for determining the nature of the relationship between the author and recipient(s) of the documents.  There is not even sufficient information to determine whether all the individuals who are listed as the sender of the alleged work-product documents were the authors and/or are lawyers or were acting at the direction of lawyers.[107]  The First Privilege Log provides no basis to determine the role and relationship among the drafters and recipients of the documents to assess whether the documents qualify as work product.  *See, e.g.*, *In re Veiga*, 746 F.Supp.2d at 40–42 (explaining that party failed to carry its burden with respect to work product where the privilege log and accompanying cover letter did not adequately describe who the individuals on the privilege log were and what their roles and relationships were to one another).

Even if Mr. Giuliani is able to provide evidence of the relationships between the individuals creating and receiving the alleged work product, Mr. Giuliani must explain whether the alleged work produce with created by him (or another member of the alleged common interest agreement) in his role as an attorney or for him (or another member of the alleged common interest agreement) in his role as a client.  *See, e.g.*, *Banneker Ventures, LLC*, 253 F.Supp.3d at 70 (explaining that either the lawyer or the client may assert work product during discovery).

**Prepared in Anticipation of Litigation**.  The First Privilege Log generically states that the documents over which it asserts work product were created "during the course of litigation" but often fails to specify the litigation or anticipated litigation for which the material was prepared.  Fed. R. Civ. P. 26(b)(3)(A).  "To determine whether a particular document was prepared in anticipation of litigation, this Circuit applies the because of test, asking whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  *United States v. Anthem, Inc.*, No. 1:16-CV-1493 (ABJ), 2016 WL 8461264, at *7 (D.D.C. Oct. 6, 2016), *report and recommendation adopted*, No. CV 16-1493 (ABJ), 2016 WL 11164028 (D.D.C. Oct. 14, 2016) (internal quotations and citations omitted).  Additionally, "[w]here a document would have been created 'in substantially similar form' regardless of the litigation, work[-] product protection is not available."  *Banneker Ventures, LLC*, 253 F.Supp.3d at 72 (citing *FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015)).

---

[107] *See, e.g.*, First Privilege Log Entries 31, 406 (Katherine Friess); 177, 191, 318, 320 (Kenneth Chesebro); 214, 299, 306, 348 (Linda Brickman); 264, 296-297, 300, 330, 316, 345-346, 362 (Jack Wilenchik or "JackW"); 285, 335, 338, 364, 426 (Mark Caruso); 286, 336, 432 ("MS"); 298 ("Dinero, Inc."); 301, 422 (Rod Wittstadt); 302, 355 (James Fitzpatrick); 307 (Carter Harrison); 308, 462, 524 (no "from"); 319 (Chaz Nichols); 326-327 (Daniel Cox); 333 ("Microsoft Office User"); 341-344 ("Hillary"); 351 (Heather Flick); 359, 373, 375 ("Kurt"); 360 (Chip Borman); 361, 366 (Emile O. Denmark); 363 (Carter Harrison); 365 ("lindak"); 366 ("Nina Khan B"); 38 (Graziella Pastor); 383 (Ronald Hicks, Jr.); 412 ("Omni Platform"); 416 ("Maria Ryan"); 423 (Ron Coleman); 431, 438 (Matthew Morgan); 457 (Ray S. Smith III); 603 (Jo Ann Zafonte); 665 (Christina Pesce).

August 5, 2022
Page 22

The First Privilege Log repeatedly uses generic phrases (*e.g.*, "[c]onfidential memo, prepared during the course of litigation, providing legal advice") often with no information regarding the circumstances surrounding the document's creation or any indication of the type of litigation anticipated. These descriptions are insufficient and "simply too cursory for the Court to ensure that it is making an accurate assessment and not just giving the defendant more deference, beyond the good faith deference that it is due," in determining whether the privilege validly applies. *Cuban v. SEC*, 744 F.Supp.2d 60, 81 (D.D.C. 2010) ("The defendant must submit additional evidence that establishes that all of the communications were created with litigation in mind."), *on reconsideration in part*, 795 F.Supp.2d 43 (D.D.C. 2011); *cf. Nat'l Sec. Couns.*, 960 F.Supp.2d at 200–01 (finding the DOJ did provide sufficient detail in work product descriptions for the court to make a document-by-document assessment of whether the privilege was properly asserted). To the extent that any of the documents were prepared for reasons other than for litigation, the documents are not protected work product. *See United States v. Deloitte LLP*, 610 F.3d 129, 138 (D.C. Cir. 2010). Defendant must provide information describing the circumstances surrounding the documents' creation and for what anticipated litigations the documents were prepared and additional information such that the Plaintiffs and the Court can determine whether these documents would have been produced regardless of whether or not a litigation was anticipated.

**"Work Product" of Non-Attorneys**. The First Privilege Log asserts work product protection over numerous documents described as being prepared by non-attorneys in which there is no indication that the non-attorney was acting at the direction of an attorney.[108] *See United States ex rel. Barko*, 74 F.Supp.3d at 191. Unless Mr. Giuliani can provide evidence that these non-attorneys were acting at the direction of an attorney in the anticipation of litigation, these documents are improperly withheld.

**Other Exceptions**. As above, Plaintiffs reserve the right to challenge the assertion of work product protection based on the crime-fraud exception and based on the torts alleged in the Amended Complaint. *See In re Grand Jury Investigation*, 2017 WL 4898143, at *9; *In re Sealed Case*, 124 F.3d at 234.

**Not a Member of the Bar**. Similarly, the First Privilege Log asserts work product protection over two documents that post-date the suspension of Mr. Giuliani's New York and D.C. law licenses.[109] To the extent these were not prepared for Mr. Giuliani as a client, they are not protected. *See supra*.

      iii.   Common Interest

The First Privilege Log asserts a common interest privilege as to 9 documents.[110] The supposed basis of the 9 documents which Mr. Giuliani withholds on common interest grounds appears to be the purported joint defense and common interest agreement ("Purported Common Interest Agreement") dated April 21, 2020 and signed on various dates by counsel for Mr. Giuliani (undated) and Defending

---

[108] First Privilege Log Entries 215, 287, 295, 300, 307, 308, 320, 334, 337, 342-345, 349, 352, 360, 361, 362, 364, 369, 374, 376, 413, 433, 666.
[109] First Privilege Log Entries 611, 665.
[110] First Privilege Log Entries 97, 159, 180, 182, 252, 257, 276, 390, 394.

August 5, 2022
Page 23

The Republic (signed April 22, 2021), Sidney Powell (April 21, 2021), Herring News Networks (including Chanel Rion) (April 21, 2021), and Donald J. Trump for President, Inc. (June 18, 2021).[111]

**No Underlying Privilege**.  "Because the joint defense privilege operates as an extension of the attorney-client privilege and work product doctrine, a party who asserts the joint defense privilege must first show that one of these underlying privileges applies to the documents at issue."  *Anthem, Inc.*, 2016 WL 8461264, at \*2.  For the reasons discussed above, Defendant has not sufficiently established a basis for asserting either the attorney-client or work product privilege with respect to the Withheld Documents, which defeats any claim to a common interest privilege.  *NLRB v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 313 (D.D.C. 2009) (ordering *in camera* inspection of documents withheld under common interest privilege where "[t]he privilege log generally does not provide a sufficiently detailed description of the documents . . . to determine whether they are properly withheld as privileged").

**Time Frame**.  While the Purported Common Interest Agreement is dated April 21, 2020, it was not signed until a year later.  To the extent that "2020" is not a clerical error, Mr. Giuliani must provide a basis to determine that there was a common interest agreement of which Mr. Giuliani was a part and identify the individuals or entities who were part of that common interest agreement.  *See Intex Recreation Corp. v. Team Worldwide Corp.*, 471 F.Supp.2d 11, 16 (D.D.C. 2007) (holding that a common interest agreement must be established either through a "written agreement" or "an oral agreement whose existence, terms and scope are proved by the party asserting it").  Moreover, because Mr. Giuliani's agents who signed the Purported Common Interest Agreement did not date their signature, Mr. Giuliani must provide the date it was signed in order to assess the propriety of the agreement.

Five of the Withheld Documents over which the First Privilege Log claims a common interest are dated November 17, 2020—which predates *any* of the signatures of the Purported Common Interest Agreement.  Mr. Giuliani must provide a basis to determine that there was a common interest agreement in existence as of November 17, 2020, since the written agreement was not signed until months after that date.  *See Minebea Co., Ltd v. Papst*, 228 F.R.D. 13, 17–19 (D.D.C. 2005) (rejecting claim of common interest privilege for multiple parties as to documents predating parties' signing of joint defense agreement where there was "no evidence to show that an understanding was reached prior to the signing of the Joint Defense Agreement"); *Molock v. Whole Foods Market Grp., Inc.*, No. 16-cv-02483 (APM), 2019 WL 10375614, at \*2 (D.D.C. Nov. 1, 2019) (ordering production of document that predated formation of a common interest agreement).

**Signatories**.  All of the documents withheld pursuant to the common interest privilege include individuals who did not sign the Purported Common Interest Agreement.[112]  Mr. Giuliani must explain

---

[111] Plaintiffs reserve all rights relating to the Purported Common Interest Agreement, including without limitation objections to its authenticity, scope, relevance, and applicability.  The document appears to be dated more than a year before effectuated, is only signed by a handful of proposed signatories, and does not appear to be a single document, as evidenced by pages that are duplicate in their entirety or duplicate preceding paragraphs.

[112] First Privilege Log Entries 159, 276, 390 (Christina Bobb to Thurd@truenorthlawgroup.com); 180, 394 (emails among Christina Bobb, non-signatories Andrew Giuliani, Jenna Ellis, jorns@templarbaker.com); 97, 182, 252, 257 (emails from Maria Ryan to Christina Bobb, TruthandJustice4U@protonmail.com, and former judges Leventhal and Kamins); 182, 257 (referencing advice from Cleta Mitchell).

August 5, 2022
Page 24

why communications from or to those individuals are subject to the Purported Common Interest Agreement. For example, Christina Bobb is the author of 4 of the withheld documents even though she is not a signatory to the Purported Common Interest Agreement, and neither is Mr. Trump in his individual capacity (who was Ms. Bobb's purported client, as discussed above). *See Minebea Co.*, 228 F.R.D. at 18 (ordering production of documents where party "[n]ever signed or otherwise indicated that it was entering into a joint defense agreement").

**Substantive Elements of Privilege**. Even accepting *arguendo* that attorney-client or work product privilege were established (which they are not), where Defendant asserts the common interest privilege, he has the burden of demonstrating "that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived." *Intex Recreation Corp.*, 471 F.Supp.2d at 16 (quoting *Minebea Co.*, 228 F.R.D. at 16); *see also Jackson Hosp. Corp.*, 257 F.R.D. at 312. To be properly withheld pursuant to the common interest privilege, the Withheld Documents must be "part of an on-going and joint effort to set up a common defense strategy in connection with actual or prospective litigation." *Intex Recreation Corp.*, 471 F.Supp.2d at 16 (quotations omitted); *see also Anthem, Inc.*, 2016 WL 8461264, at *10 ("Common sense suggests that there can be no joint defense agreements when there is no joint defense to pursue.") (quoting *In re Grand Jury Subpoena*, 274 F.3d 563, 575 (1st Cir. 2001)); *see also Jackson Hosp. Corp.*, 257 F.R.D. at 312 ("[I]n any event the parties must have a common interest in the prosecution of a common defendant."). Even if Mr. Giuliani can establish that a common interest or joint defense existed, he "still must demonstrate that the specific communications at issue were designed to facilitate a common *legal* interest." *Minebea Co.*, 228 F.R.D. at 16 (emphasis added); *see also Intex Recreation Corp.*, 471 F.Supp.2d at 16. Communications concerning business, commercial, political, strategic, or policy interests are insufficient to uphold a claim of common interest even if there exists a common legal interests between parties. *Minebea Co.*, 228 F.R.D. at 16; *In re Lindsey*, 158 F.3d 1263, 1270 (D.D.C. 1998) (holding that attorney's "advice on political, strategic, or policy issues . . . would not be shielded from disclosure by the attorney-client privilege").

In some of the descriptions of documents withheld as protected by a common interest, the First Privilege Log fails to identify any actual or anticipated litigation.[113] For all of the common interest documents, there is an insufficient basis to determine whether the Withheld Documents related to a joint defense effort or a common legal interest. Further to the point, Mr. Giuliani has testified that he often gave "political advice" while serving as counsel to the Trump Campaign and Donald J. Trump. Rudolph W. Giuliani Deposition Transcript at 39:2–7, *Coomer v. Donald J. Trump for President Inc., et al.*, 2020-cv-034319 (Colo. Den. Cty. 2020). Given the insufficient descriptions in the First Privilege Log, there is no way to know whether documents withheld under the common interest privilege (or for that matter the attorney-client and work product privileges) actually pertain to a common legal interest or rather are improperly withheld political advice. *See In re Lindsey*, 158 F.3d at 1270.

**Waiver**. As set forth above, Defendant may have waived any claimed common interest privilege by including Third Parties that break the underlying privileges.[114]

---

[113] First Privilege Log Entries 159, 180, 276, 390, 394.
[114] *See, e.g.*, First Privilege Log Entries 180, 394 (including Giuliani's son); 97, 182, 252, 257 (including unidentified third-party "TruthandJustice4U").

August 5, 2022
Page 25

*       *       *

Plaintiffs reserve all rights to supplement this deficiency letter and to challenge Defendant's First RFP R&Os, First Interrogatory Responses, First Amended Interrogatory Responses, and First Privilege Log, including any requests, interrogatories, or privilege log entries not explicitly mentioned here, up to and including seeking appropriate relief from the Court.

Sincerely,

*/s/ M. Annie Houghton-Larsen*
M. Annie Houghton-Larsen

**Exhibit A to Plaintiffs' Deficiency Letter dated August 5, 2022**

| |
|---|
| Ruby OR Freeman OR "purple shirt" |
| Shaye OR Shay OR Wandrea OR ArShaye OR Moss |
| (Ruby /10 shirt) OR (lady /10 purple) OR (women /10 yellow) OR (braids /10 blond!) |
| "Fulton" OR "State Farm" |
| (work! OR volun! OR offic! OR count! OR facil!) AND (Georgia OR GA OR Fulton OR Atlanta) |
| (Stole! OR steal! OR fraud! OR crim! OR investig! OR fals! OR illeg! OR commit! OR arrest! OR jail! OR theft OR thief!) AND (elect! OR vot! OR ballot! OR count! OR Jan! 6" OR "6th" OR 2020 OR Trump) |
| (suitcase OR scan! OR ballot! OR flash! OR drive! OR stuff! OR hard-drive!) AND (Georgia OR GA OR Atlanta OR stol! OR fraud! OR ballot! OR illeg!) |
| (count! /20 machine) AND (GA OR Georgia OR Atlanta OR Fulton) |
| "water leak!" OR "watermain" OR "water main" OR "pipe burst!" |
| (kick! OR exclu! OR out! OR throw!)  AND (observer! OR pretens!) |
| (phony OR scurry OR  heist OR cheat! OR crook! OR crew OR illeg! OR steal! OR stol! OR blanket OR scam! OR hustl! OR stuff! OR proof OR Dominion ) AND (GA OR Georgia OR Elect! OR 2020 OR Fulton OR Atlanta) |
| (rudolphgiuliani OR rhelen0528 OR giulianipartners) AND (Georgia OR GA OR Atlanta OR Fulton) |
| (Communi! OR Strateg! OR Outreach! OR Messag!) AND (Plan! Or Commun!) AND (Trump OR Elect! OR Fraud! OR Georgia) |
| (BK OR KF OR SB OR BE OR "Serrano Public Relations Team" OR CR OR SP OR TF OR PW OR Navarro OR Bernard OR Kerik OR Katherine OR Friess OR Steve OR Bannon OR Boris OR Epshteyn OR Epstein OR Mark OR Serrano OR Sidney OR Powell OR Chanel OR Rion OR Phil OR Waldron) AND (Plan! OR Commuic! OR Strateg!) |
| (Carter OR Jones OR "Seven Hills") AND  (Georgia OR GA OR invest! OR elect! OR vot! OR stole! OR steal! OR fraud! OR crim! OR Trump) |
| (Georgia OR GA OR Atlanta OR Fulton) AND (audit! OR "secretary of state" OR manual! OR count! OR ballot! OR re-count! OR invest! OR elect! OR vot! OR stole! OR steal! OR fraud! OR crim! OR Trump OR multiple OR affidav! OR Brad! OR Gab! OR Germany OR Ryan OR video OR evid!) |
| Sterling OR Gabriel OR Raffensperger OR Brad OR Watson OR Kemp OR Fuchs OR Barron OR Braum OR Callaway OR Jones |
| (GBI or Bureau or DOJ or "Department of Justice" OR FBI) AND (invest! OR elect! OR vot! OR stole! OR steal! OR fraud! OR crim! OR Trump) |
| ("fact check" OR "fact checks" OR "fact checked" OR Politifact OR "pants on fire" OR "lead stories" OR debunk! OR dispel! OR dispelled) AND (Georgia OR GA OR Fulton OR Atlanta) |
| ("Attorney General" OR AG OR Barr OR "One Damn Thing") AND (fraud! OR FBI OR "Georgia Bureau" OR video OR count! OR Georgia OR Fulton OR Atlanta) |
| ("Common Sense" OR "Uncovering the Truth" OR "War Room" OR  Twitter OR Rumble) AND (metrics OR reach! OR count! OR view! OR impress! OR visit! OR unique OR shar! OR time! OR listen! OR number! OR rating! OR subscrib!) |
| "Dec! 3" AND (hear! OR senate OR video OR tape) |
| "joint defense" OR JDA OR "common interest" |

| |
|---|
| "Willard" AND (war OR Trump OR elect! OR presid!) |
| Ellipse AND (Trump OR Elect! OR "Jan 6" OR "Jan. 6" OR "January 6") |
| (engage! OR retent!) /10 (letter! OR agreement!) |
| (Jackie OR Deason OR Pick) AND (Georgia OR GA OR invest! OR elect! OR vot! OR stole! OR steal! OR fraud! OR crim! OR Trump) |
| (Jenna OR Ellis) AND  (Georgia OR GA OR invest! OR elect! OR vot! OR stole! OR steal! OR fraud! OR crim! OR Trump) |
| (OAN OR Herring! OR "One America" OR Rion OR Chanel OR Bobb OR Christina OR Stephanie OR Hamill OR Natalie OR HARP OR) AND (Georgia! OR GA OR Atlanta OR Fulton OR invest! OR elect! OR vot! OR stole! OR steal! OR fraud! OR crim! OR Trump OR agree!) |
| ("The Gateway Pundit" OR "TGP") AND (GA OR Georgia OR Fulton OR Atlanta) |
| Sidney OR Powell AND  (invest! OR elect! OR vot! OR stole! OR steal! OR fraud! OR crim! OR Trump) |
| Solomon AND (elect! OR fraud! OR invest! OR "security camera" OR blanket OR suspic! OR FBI OR GBI OR Russia!) |
| (Select! OR "January 6" OR "Jan 6" OR "Jan 6th") AND Commit! |