UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
 *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
RUBY FREEMAN, et al.              )  Civil Action
               Plaintiffs,       )  No. 21-3354
vs.                              )
                                 )
RUDOLPH GIULIANI,                )  March 21, 2023
               Defendant.        )  9:42 a.m.
                                 )  Washington, D.C.
   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF DISCOVERY HEARING**
**BEFORE THE HONORABLE BERYL A. HOWELL,**
**UNITED STATES DISTRICT COURT JUDGE**

<u>**APPEARANCES**</u>:


FOR THE PLAINTIFFS: MICHAEL J. GOTTLIEB
                    MARIE ANNIE HOUGHTON-LARSEN
                    Willkie Farr & Gallagher, LLP
                    1875 K Street, NW
                    Washington, DC 20006
                    (202) 303-1442
                    Email: mgottlieb@willkie.com


FOR THE DEFENSE:    JOSEPH D. SIBLEY, IV
                    Camara & Sibley LLP
                    1108 Lavaca St
                    Austin, TX 78701
                    (713) 966-6789
                    Email: sibley@camarasibley.com



Court Reporter:     Elizabeth Saint-Loth, RPR, FCRR
                    Official Court Reporter

        This hearing was held via videoconference and/or
   telephonically and is, therefore, subject to the limitations
    associated with audio difficulties while using technology,
      i.e., overlapping speakers, static interference, etc.


            Proceedings reported by machine shorthand.
        Transcript produced by computer-aided transcription.

1                    **P R O C E E D I N G S**

2                    THE COURTROOM DEPUTY:  Matter before the Court,

3        Civil Action No. 21-3354, Ruby Freeman, et al. versus

4        Rudolph Giuliani.

5                    Counsel, please state your full names for the

6        record, starting with the plaintiffs.

7                    MR. GOTTLIEB:  Good morning, Your Honor.

8        Mike Gottlieb from Willkie Farr & Gallagher, on behalf of

9        the plaintiffs.

10                   THE COURT:  All right.  Excuse me just one second.

11                   (Whereupon, the Court and staff confer.)

12                   THE COURT:  So we've started with the plaintiffs'

13       lawyer.

14                   And who just introduced himself?

15                   MR. GOTTLIEB:  Your Honor, this is Mike Gottlieb

16       from Willkie Farr & Gallagher on behalf of the plaintiffs.

17       I will lead the discussion for us today.

18                   THE COURT:  Okay.  Good.

19                   Well, good morning, Mr. Gottlieb.

20                   And then, for Mr. Giuliani?

21                   MR. SIBLEY:  Good morning, Your Honor.

22       Joe Sibley on behalf of Defendant Giuliani.

23                   THE COURT:  All right.  And I see that

24       Mr. Giuliani is present.  Thank you.

25                   I know it was fairly short notice, but I like to

1     have teleconferences with respect to discovery disputes.

2     For this one it seemed really helpful to have Mr. Giuliani

3     here to clarify any misunderstandings that there might be.

4          We're reaching -- we're about two months before

5     the end of an already extended factual discovery cutoff.  So

6     when I saw that the plaintiffs wanted to file a motion to

7     compel, and that plaintiffs appear -- based on their

8     supplemental filing yesterday -- to have some legitimate

9     concerns about the production -- the completeness of the

10    production, the completeness and accuracy of responses to

11    requests for admission, and so on -- I just thought it would

12    be better to have this teleconference, review the issues,

13    see what resolution we could reach now so that should a

14    motion to compel become inevitable, perhaps the issues will

15    be more limited, and perhaps we won't need a motion to

16    compel at all.

17         Every motion to compel automatically delays the

18    close of discovery by at least 21 days for the completion of

19    briefing, let alone the Court's resolution.  I would like to

20    just cut right through that and have a conversation before

21    we proceed to litigation.  It also not only saves time when

22    we're facing a cutoff of fact discovery, but it also saves

23    some funds.

24         Based on the filings by the parties -- the last

25    ones yesterday -- let me just tell you how I'm understanding

1    the disputes between the parties; and then you can correct

2    me if I'm wrong.

3            It appears to me that there are about five

4    disputes -- discovery disputes between the parties.  The

5    plaintiffs believe that Mr. Giuliani has failed to preserve,

6    adequately search for, and produce all of the materials

7    responsive to the plaintiffs' requests.

8            Second, that he's also failed to sign and fully

9    answer his interrogatory responses.

10           Third, that Mr. Giuliani has failed to respond

11   truthfully to the request for admissions numbered 82, 83,

12   and 90.

13           Fourth, that Mr. Giuliani has failed to supplement

14   his initial disclosures as required by the rules.

15           And fifth, that Mr. Giuliani failed to appear at

16   two scheduled depositions for him, canceling at what the

17   plaintiffs call the "eleventh hour"; and the plaintiffs want

18   him to bear the plaintiffs' cost for scheduling and

19   arranging for those depositions.

20           So those are five different issues.  I am going to

21   review each of them one by one.

22           Have I covered the pending discovery disputes,

23   Mr. Gottlieb?

24           MR. GOTTLIEB:  Yes, Your Honor.  I believe the

25   first category is probably -- it was quite broad and

1      encompasses a number of sub-issues within it.  But I think

2      with that -- with that in mind, I think that the five you

3      have laid out cover what we have submitted to the Court.

4                   THE COURT:  All right.  Well, clearly, if there

5      are issues that require additional briefing, that require

6      additional conferral between the parties, that -- you know,

7      at the end of this, we'll see where we are, and whether or

8      not the authorization that you sought, as required under my

9      standing order for further litigation, needs to be granted.

10                  So this telephone conference is not a resolution

11     of your request to make a motion to compel; it's for me to

12     see how much we can refine it, if not, obviate the need for

13     a motion to compel.

14                  All right.  So according to the plaintiffs'

15     supplemental submission yesterday, they believe that

16     Mr. Giuliani confirmed -- has not confirmed that he

17     preserved documents responsive to the plaintiffs' request,

18     nor confirmed that he searched for documents responsive to

19     the plaintiffs' document requests.

20                  I get it.  In response, the defense says that he

21     has produced many of these documents.  That's at the

22     submission docketed at ECF 38, at page 1.

23                  Well, produced "many" leaves me scratching my

24     head, Mr. Sibley.  "Many" is not:  We've responded fully,

25     and we're ready to certify to that.  So that response, on

1    its face, suggests to me that plaintiffs may be right.

2              So I understand that -- I understand that

3    Mr. Giuliani has produced the 1269 documents produced to the

4    January 6th Committee; and he has also produced, apparently,

5    194 documents, and that -- as responsive.

6              So what -- is that it, Mr. Sibley?

7              MR. SIBLEY:  As far as the productions,

8    Your Honor, that is correct.

9              If I could give you the background of what

10   happened with our document issues because -- as the Court

11   may know -- I think it was April of 2021 -- Mr. Giuliani had

12   all of his electronic devices taken by the Department of

13   Justice; so that sort of captured what was on those devices

14   up until that point, which would have been the lion's share

15   of any relevant documents in this case.

16             So what we did was we went through all of his

17   documents, all of his paper files --

18             THE COURT:  Well, let's stop right there for a

19   second.

20             When Mr. Giuliani's electronic devices were seized

21   pursuant to a search warrant by the Department of Justice,

22   were they returned to him?

23             MR. SIBLEY:  They ultimately were returned,

24   Your Honor.  They were returned --

25             THE COURT:  So I, really, find that it is as I

1      thought.

2              So talking about the seizure of his forensic

3      devices doesn't, to my mind, help you because they have been

4      returned.

5              MR. SIBLEY:  I understand that, Your Honor.

6              I was getting to the next point, which is that all

7      of that data --

8              THE COURT:  Well, why don't we stop right there.

9              They have been returned.  Mr. Giuliani has had all

10     of his electronic devices returned to him in his custody.

11             Has each and every one of those electronic devices

12     been searched for responsive documents?

13             MR. SIBLEY:  The answer is --

14             THE COURT:  It's a simple:  Yes, no, or I don't

15     know.  And Mr. Giuliani is here to help respond to that.

16             MR. SIBLEY:  Sure, Your Honor.

17             And what I'm trying to explain is that that data

18     taken by the DOJ was put onto a server, all of it.  So what

19     we did was we searched that data, which would have

20     encompassed all of the information taken from the devices

21     pursuant to the search terms the plaintiffs provided.  And

22     pursuant to those search terms, those were the 100-something

23     documents that we ultimately produced.

24             So have we searched those devices?  No.

25             But I feel pretty confident that the DOJ did a

1   pretty good job of searching the devices.  So, by searching

2   their data, I feel like we have complied with that part of

3   the request.

4        The reason why I didn't -- I couldn't certify to

5   Her Honor that everything has been searched is that

6   Mr. Giuliani had electronic devices after the seizure, and I

7   am not sure that he has -- I think -- I think everything has

8   been produced.

9        But I don't think he has gone through and looked

10  at his social media accounts to see if there are messages,

11  for example, that were sent pertaining to plaintiffs.  There

12  are some things like that that I don't think he's fully

13  certified.  I think we've -- I think he needs to do that.

14  And so I think the lion's share of everything has been

15  searched, Your Honor; but I do think there are some rocks

16  that need to be turned over and looked under, and that needs

17  to be done.

18        THE COURT:  Okay.  194 documents does seem to be

19  fairly small, given -- just based on the length of time, the

20  amount of public statements that were made, and so on, in

21  connection with the claims in this case.

22        Did that number of documents -- responsive

23  documents in the search of the database of all of the data

24  forensically retrieved from his devices seized by the

25  government surprise you as being particularly a low number,

1     Mr. Sibley?

2          MR. SIBLEY:  No, because these -- the plaintiffs

3     were a very small piece, I think, of broader election

4     issues; and there just isn't -- there just aren't very many

5     things in writing about the plaintiffs, Your Honor.

6          Mr. Giuliani was not a big texter or emailer.  He

7     is a little more of an old-school, kind of, paper and phone

8     conversations.  I don't think we had a single document that

9     even had their names mentioned on it.  I think it was a

10    strategic communications plan document that I don't think

11    Mr. Giuliani even created that -- that was out there.  But

12    that's really it.  I mean, that was the only document that I

13    recall seeing the plaintiffs' names even on.

14         So I understand that, sort of on the surface, that

15    seems surprising given how much of this was out there, how

16    much of this was talked about.  But I don't think -- I mean,

17    I think that's just the way it is.  There's just not that

18    many documents with the plaintiffs -- referring to the

19    plaintiffs because they were -- they were a small -- I know

20    Your Honor was not at Mr. Giuliani's deposition.  But what

21    he testified to is he wasn't even really aware of these

22    ladies until he went down to Georgia for the Senate hearing;

23    and that's kind of when he became aware of it.

24         So there really wasn't a lot of -- he was really

25    relying on other people, I think, for information about the

1    ladies.  He was looking at the videos and making statements.

2    There really was not a lot of paper background.  And

3    that's -- your know, that's relevant to the case, that there

4    wasn't.  But it's -- that's just the way -- that's the way

5    the documents played out.

6            THE COURT:  And did you produce a privilege log,

7    along with your production of 194 responsive documents?

8            MR. SIBLEY:  We did produce a privilege log,

9    Your Honor.  We also went into those privileged documents to

10   see -- because these privileged documents were the whole

11   gamut of January 6th stuff, Dominion, Smartmatic; it was all

12   of the election litigation.  We produced all of those

13   documents to the plaintiffs just because -- I mean, it was

14   already produced and it was easy for us to do it.

15           We went through the privileged documents and

16   looked to see which ones of those documents specifically

17   related to Fulton County or, potentially, the plaintiffs;

18   and there were only a handful that even did.  And I produced

19   a supplemental privilege log that gave some more detailed

20   information to the plaintiffs about those specific

21   documents.

22           THE COURT:  All right.  And so have you -- well,

23   plaintiff has also gotten, certainly, the impression that he

24   has not preserved records relating to these plaintiffs.

25           So has, basically, Mr. Giuliani locked down -- put

1   a litigation hold on -- all of his records given the

2   pendency of this litigation?

3           MR. SIBLEY:  Well, Your Honor, I think the answer

4   is yes.  I don't know -- I don't recall in his deposition if

5   he was specifically asked that question.  But, certainly,

6   the documents that were taken by the DOJ were locked -- in

7   April of 2021.  So all of those documents are fixed, so

8   that's certainly locked in.

9           Everything after that -- I mean, I think he

10  test- -- I think he answered an interrogatory and said he

11  has not -- he has not destroyed or deleted any documents.

12  So I think what they're asking for -- I don't know that

13  there was so much concern about whether the documents had

14  been spoiled.  But I think the concern is he needs to

15  certify that that has, in fact, not occurred; and I am not

16  sure that he has -- I'm not sure that he has done that.

17          I am not sure that there was specifically -- I

18  don't know that there was a specific interrogatory asked,

19  other than the one I mentioned that asked whether he deleted

20  documents.  But he -- he certainly is willing to certify

21  that however the Court would like him to do so.

22          THE COURT:  All right.  So back to you,

23  Mr. Gottlieb.

24          Did you understand how the search was executed and

25  what the data source was when the search was executed, or

1    are you learning that here?

2         MR. GOTTLIEB:  We understood what Defendant

3    Giuliani's explanation was for where the documents came

4    from.  In other words, that the DOJ had seized a number of

5    devices and that search terms had been applied as to those

6    devices.

7         What we don't know is -- first of all, we don't

8    know what the DOJ collected and put onto that database.  So

9    we have no idea, you know, which, if any, of the devices

10   were fully pulled, for what time period, what -- and we also

11   don't know if that collection contains anything other than

12   emails.

13        What we know for sure is that the only search that

14   the defendant ran for documents was a search relating to

15   email extension files.  So no searches for text messages; no

16   searches for social media accounts; private messages, which

17   Defendant Giuliani testified at his deposition he did recall

18   sending during the relevant -- sending and receiving during

19   the relevant period of time.  No collection from things like

20   Signal or WhatsApp or Wickr, or other messaging platforms

21   that Defendant Giuliani also testified during his deposition

22   that he used during the relevant period of time.

23        And I think more to the point, notwithstanding

24   sort of two other large areas that we don't believe have

25   been searched, Defendant Giuliani continued to defame our

1    clients after his devices were seized into 2022.  He had

2    both continued access to his email accounts, which are

3    accessible not just through his devices but through the

4    Cloud, as well as a new phone that he received -- or that he

5    purchased and started using after his devices were seized.

6           And when I asked him at his deposition if he had

7    searched those -- that new phone, new devices, in response

8    to our discovery requests, I, essentially, got a -- I asked

9    that question about four or five times.  I got responses

10   that, essentially, amounted to:  I know I did a search at

11   some point in time for something related to these sets of

12   cases.

13          So I couldn't get a precise answer as to whether a

14   search had ever been done -- or the specific request for

15   production of interrogatories that we have advanced in this

16   litigation -- for the phone that he had after the point in

17   time that the government seized his phone.

18          And I did ask -- well, first of all, we had both

19   RFPs and interrogatories directed at the question of

20   preservation specifically; so those were propounded in

21   discovery back when we first served our discovery requests.

22   So we did put that at issue.  I did ask questions about that

23   during the deposition.  And we have -- we still, up until

24   this date, have no idea whether steps have been taken to

25   preserve those accounts.

1          In fact, I specifically asked Mr. Giuliani during

2     his deposition whether he had contacted, for example, any of

3     the social media platforms or his email provider in order to

4     do a takedown or pull-down of his data.  And he said he had

5     no recollection of ever having performed any type of a

6     search -- or any type of a request like that.

7          And then last, but not least, one of our

8     earliest -- we asked -- in our initial set of requests for

9     production, we asked for phone records from the defendant in

10    order to be able to ascertain both the numbers that he was

11    using but, also, to be able to ascertain a certain -- the

12    records of phone calls around particular periods of time

13    which became -- has become very important in this litigation

14    with respect to the so-called strategic communications plan,

15    as well as the defendant's participation and knowledge

16    regarding the phone call that former President Trump made to

17    Secretary of State Raffensperger because White House phone

18    logs show that Defendant Giuliani -- or we believe show that

19    Defendant Giuliani had calls with President Trump both

20    before that conversation took place and immediately

21    afterwards.

22          So we believe that there is, you know, evidence in

23    those phone logs that we requested in our initial request

24    for production directly relevant to some of the key claims

25    in our case relating to defamation of our clients which took

1    place during that phone call.  We have never received those

2    phone records or any explanation as to why Defendant

3    Giuliani doesn't have access to them.

4            So, in sum -- and with respect to the privilege

5    log discussion, I may be mistaken.  I may have missed

6    something.  The only privilege log I am aware of that we

7    have been provided is a version of the privilege log that

8    was provided to the January 6th Commission.

9            I think it's possible that -- I will check our

10   records on this just to be sure.  I know we have an ongoing

11   back-and-forth with Mr. Sibley related to the adequacy of

12   these privilege logs and our ability to decipher some of the

13   information in them.  But we haven't teed that issue -- we

14   haven't teed that issue up for the Court in this particular

15   motion because we believe there is still -- we thought we

16   had to get the universe of documents in hand first and

17   understand what we were looking at before we could

18   adequately assess whether the privilege assertions that are

19   being made on those documents are things we need to litigate

20   over.

21            THE COURT:  Okay.  So Mr. Gottlieb -- I mean,

22   Mr. Sibley, I think you would agree that to the extent there

23   are documents on social media and texts and other forms of

24   communications -- those would all be subject to the document

25   request.

1    Is it correct that those forms of communications

2    have not been searched?

3    MR. SIBLEY:  Your Honor, I am not sure if they

4    have, that's why I believe I -- that's what I said to the

5    Court in the beginning --

6    THE COURT:  Well, let me just interrupt you for a

7    second.

8    The 194 documents produced, did those consist of

9    only emails?

10    MR. SIBLEY:  I believe that's correct, Your Honor.

11    THE COURT:  So no texts?

12    MR. SIBLEY:  I don't believe any -- I am not sure

13    if the electronic discovery vendor that we used to search

14    those documents -- I am not sure if they only looked at

15    email files.  That might be correct.  I thought that they

16    had looked at all files that pertained to communications.

17    But that -- Mr. Gottlieb might be correct about that; I

18    can't recall.  But if that's the case, then, certainly,

19    those would need to be looked for.

20    I think -- I think -- because there were so many

21    files -- I mean, this was a massive amount of data.  I think

22    we had just agreed that, look, let's look for email files

23    first, and let's go from there.

24    But, certainly, yes, I agree that -- text

25    messages, obviously, have to be searched; the new phone

1    needs to be searched.

2              And I am not sure that Mr. Giuliani can certify to

3    that, which is, I think, what Mr. Gottlieb said he said in

4    his deposition.  He thinks he did, but he is not sure.  He

5    needs to do that.  Which is why I was hesitant to represent

6    to the Court that it has all been done because I need him to

7    certify to that.

8              THE COURT:  All right.  And what about the very

9    significant point that Mr. Gottlieb pointed out:  That

10   performing searches on the database, I guess, created, so to

11   speak, by the Department of Justice -- based on the

12   parameters of the search warrant -- which may or may not be

13   coterminous with your obligations for discovery in this

14   case.

15             What is your response to that, Mr. Sibley?

16             MR. SIBLEY:  I am not sure I understand the

17   Court's -- what the Court's question is.

18             Is the Court asking -- my understanding is that

19   DOJ took everything from these devices, like, every file was

20   extracted, even background files like operating system files

21   and things like that.

22             So my understanding is that every -- the entire

23   universe of files from these devices was extracted by the

24   DOJ, and that's what we, in fact, searched pursuant to the

25   search terms the plaintiffs provided, at least with respect

1    to the emails.

2              THE COURT:  And the basis of that understanding is

3    what?

4              MR. SIBLEY:  That the DOJ --

5              THE COURT:  Because I would think that DOJ might

6    put material on a database that's responsive to the search

7    warrant, so you have to know the specific parameters of the

8    search warrant to know what is on the database.

9              MR. SIBLEY:  So my understanding -- and this is

10   from speaking with the special master's counsel -- was --

11   and I don't think this is really in dispute; that all of the

12   files that were extracted were put onto one server, which we

13   then got a copy of from the DOJ, and that's -- with an

14   electronic discovery vendor called Trustpoint.One, and so

15   that's what we searched.

16             That's -- I mean, I wasn't involved in that part

17   of the case, Your Honor, this is just -- that's my

18   understanding from the special master that was involved with

19   this data collection.  I don't know that anyone has really

20   disputed that.  I am pretty confident that the DOJ did take

21   all of the files.

22             If the Court would like us --

23             THE COURT:  Over what date range?  All the files

24   no matter what the date range was?

25             MR. SIBLEY:  Yes.  In fact, Your Honor, some of

1    the -- we did give an inventory, I think, to plaintiffs of

2    some devices that were returned pretty early on, which were,

3    like, really old devices.  I mean, any electronic device --

4    my understanding is any electronic device that they found at

5    Mr. Giuliani's apartment, they took.

6              THE COURT:  Okay.  Mr. Sibley, you are going to

7    need to get a much better definition of what documents were

8    put on whatever database it was that you researched so

9    that -- that you searched so that you can figure out what is

10   missing because -- based on what you are telling me -- it's

11   all way too vague.  It is -- it raises so many questions

12   that make me think you really don't have any idea what has

13   been searched and what hasn't been searched because you

14   don't really know what's been put up on that database, which

15   is the only place you have searched.

16             You need to do a lot better than that.  And I am

17   going to you give you some deadlines --

18             THE DEFENDANT:  Your Honor.

19             THE COURT:  -- so that we can --

20             THE DEFENDANT:  Your Honor.

21             THE COURT:  -- so that we can -- who is -- yes,

22   Mr. Giuliani.

23             THE DEFENDANT:  Your Honor, can I supplement that?

24   I might know this better than Mr. Sibley.

25             THE COURT:  That's why I wanted you here,

1     Mr. Giuliani, because you have a full view of all of --

2              THE DEFENDANT:  I am not sure I --

3              THE COURT:  -- of what -- of where all your data

4     is going and where people want to look at your data, and it

5     may -- you may have a broader view than Mr. Sibley.

6              THE DEFENDANT:  I am happy to help you.

7              THE COURT:  So please.

8              THE DEFENDANT:  So let's just -- let's just

9     confine ourselves to my electronic devices for a moment, and

10    that would be up until the date of the seizure.

11             They seized every single electronic device, both

12    in my home and in my law office, including electronic

13    devices that hadn't been used for 20 years, and electronic

14    devices of other people.

15             They then took all of my electronic devices --

16             THE COURT:  And what was the precise date of it,

17    Mr. Giuliani?

18             THE DEFENDANT:  The date of it, I don't -- I'm

19    sorry.  I don't -- we can get that date; it's an official

20    date.  It seems like it was in April of 2021 -- I don't

21    know -- something like that, that they seized it.

22             They held it for over a year.  I had no access to

23    any of them at that time; nor do I have access, as someone

24    said mistakenly, to my prior email account.  I still don't

25    have access to that and haven't used it since then.  So

1    that's completely frozen.

2            My lawyers, United States Attorney's Office,

3    Barbara Jones -- the Special Master, former United States

4    District Judge -- all agreed on a vendor called Trustpoint.

5    Trustpoint took all -- after sorting out all of the

6    electronic devices that were irrelevant, meaning belonging

7    to other people or relating to other parts of my law

8    practice that were clearly only devoted to a particular

9    client having nothing to do with this, they homed in on

10   everything having to do with my representation of Trump,

11   which would encompass anything involving this, plus a lot

12   more.

13           And they put it in -- and Trustpoint put it in

14   their program, which cost a great deal of money, and then

15   set up a search engine for the benefit, first, of the

16   special master, so she could make rulings on privilege; and

17   then for the benefit of the government so they can do their

18   investigation; and then, I guess, for our benefit, should we

19   ever have to defend ourselves.

20           And, eventually, when the government determined

21   there was no case and closed the case, they returned -- they

22   returned that to me.

23           The only thing I am not sure of that I would have

24   to check with my lawyer, Mr. Costello, is when did we first

25   get access to the Trustpoint rubric -- call it -- computer,

1    that has every one of my electronic devices that exists for

2    20 years in it.  I seem to think we might have gotten access

3    to it slightly before they closed the case, even before we

4    got the electronic devices back.  I'm not sure of that.

5    That's when we started doing searches.

6            Now, you have to understand, Your Honor -- it's

7    not an excuse, but can be a source of confusion.  But there

8    are about -- I don't know -- seven or eight cases that had

9    pending requests for discovery, much like this one, that had

10   been delayed for a year or more, including not just civil

11   but criminal investigations that were awaiting these

12   documents to get completed.

13           THE COURT:  Okay.  Mr. Giuliani, I am going to

14   interrupt you.

15           Mr. Gottlieb [sic], I think it's incumbent on you

16   to get detailed information about precisely what is on the

17   Trustpoint database.  I am not -- I really -- I appreciate

18   what Mr. Giuliani thinks he understands, that everything on

19   all of his electronic devices were put on that database; I

20   would be surprised.

21           But you need to find out precisely what was put on

22   that database and precisely what was searched, and what

23   wasn't.  And you need to figure that out really promptly

24   because it's a little late in the day for you to not know

25   exactly what you have searched yet in terms of what file

1   formats were put on that database, what the date range was

2   put on that database.  Really, you need to figure that out.

3   You need to confer with Mr. Gottlieb about what else you

4   need to search.

5          And given how late in the day it is, I would like

6   you to be able to do that -- figure all of that out and keep

7   the Court apprised now at this point, since I am involved,

8   of what still has to be searched given the limitations of

9   what is on the database, which is the only thing you have

10  searched so far --

11         THE DEFENDANT:  No.  It is not, Your Honor.

12         THE COURT:  -- what steps you have taken to obtain

13  social media and other counts that Mr. Giuliani, apparently,

14  has already testified at a deposition under oath that he

15  used in a communication about the issues relevant to this

16  lawsuit.

17         Can you do that by the end of the week?

18         MR. SIBLEY:  I want to make sure I understand what

19  the Court is asking with respect to the Trustpoint

20  documents.

21         The Trustpoint documents are -- I mean, in order

22  for me to certify to that, I would have to get -- I mean, I

23  suppose I would have to get something from the special

24  master or the DOJ, which -- I have already -- I have already

25  had conversations with the special master about it, and they

 1     have confirmed this.  I just don't know --

 2              THE COURT:  Well, I am sure Mr. Costello knows

 3     precisely what's on that database.  I am sure you can just

 4     talk to Mr. Giuliani's counsel in that case.

 5              Is it Mr. Costello, Mr. Giuliani?

 6              THE DEFENDANT:  Excuse me, Judge?

 7              THE COURT:  Is your counsel on the case involving

 8     Judge Jones serving as special master, did you say that was

 9     Mr. Costello?

10              THE DEFENDANT:  Yes.  Yes.

11              THE COURT:  So, Mr. Gottlieb [sic], that seems

12     like a good place to start.  And he would likely know --

13     have much more firsthand information about precisely what

14     was uploaded onto the Trustpoint database.

15              But based on what I am hearing, it certainly

16     doesn't include social media accounts.  It may or may not

17     include texts; it may or may not include Signal

18     communications.  It may not include other communication

19     forms.

20              So I think -- I would like you to get that done by

21     this Friday, the 24th, and confer with Mr. Gottlieb about

22     it, and provide notice to the Court that that has been done

23     so that you know what you have left to search and what the

24     time frame is for you completing a search for all of those

25     appropriate records.

1          Mr. Gottlieb, at the end of that conferral

2     process, production process, I am going to leave it to

3     you-all to control your own destinies and work out time

4     frames for that without my involvement, hopefully.  But you

5     will make any appropriate motion based on subsequent

6     productions or subsequent searches as -- and you're going to

7     be authorized to do that.  But I think we have cleared the

8     air.

9          Let's move on to issue number two, which is

10     plaintiffs saying that Mr. Giuliani had only signed and

11     certified one of his interrogatories, and that he hasn't

12     fully answered all of the interrogatories because his

13     answers were limited to a few short sentences.

14          Sometimes interrogatories only require a few short

15     sentences in response, so I am going to ask you,

16     Mr. Gottlieb, to explain precisely what the issue is with

17     that.

18          MR. GOTTLIEB:  Sure, Your Honor.

19          I mean, the first problem is just, simply, that

20     Defendant Giuliani did not verify his interrogatories.

21          We brought the interrogatories to the -- to his

22     deposition and asked him to verify them at the deposition,

23     which he said he would do.  And then, at the end of the

24     deposition -- before there was any issue about transcripts

25     or requests to change the deposition -- change the

1    interrogatory based on the deposition answers, he did not

2    provide us with the verified interrogatory responses at the

3    end of the deposition as he said he would.

4          You know, with respect to the different objections

5    we have with respect to interrogatory answers, I can -- the

6    best I can do here, Your Honor, without getting too deep

7    into the weeds is:  We have a number of interrogatories

8    drafted, for example, as to Mr. Giuliani's knowledge

9    regarding, for example, the State Farm Arena surveillance

10   video -- how he came to learn about it; what process he used

11   to review it; who he worked on -- who he worked with in

12   reviewing it.  Essentially, what -- we have attempted to get

13   him to explain in an interrogatory answer everything that he

14   did in learning about the video, reviewing it later, who it

15   may have been sent to, whose custody it may have been in,

16   and the like.

17         And his responses to each of those

18   interrogatories -- I think we have two -- two different ones

19   that relate to it -- are one sentence each.  That -- you

20   know, one of them is, essentially:  Defendant generally

21   recalls he was made aware of the video the night before the

22   hearing -- before the Georgia Senate election hearing on

23   December 3rd; defendant had no involvement with the creation

24   or editing of the video -- which is fine so far as it goes.

25         But it doesn't respond at all to our request about

1    identifying the individuals that, you know, he may have been

2    in touch with regarding the video, the process that was used

3    to -- to review it.

4         He later did testify in his deposition that he

5    thought he reviewed about eight hours of the total

6    surveillance video.  So, clearly, there came a point in time

7    where there was a longer review of this -- of this video.

8    There is no explanation of any of that in the interrogatory

9    responses.

10        So that is one example, Your Honor, of some of the

11   issues that we have had with the interrogatory responses.

12   And we do recognize that there are certain kinds of

13   interrogatories that may well call for a one-sentence

14   answer, but I think the ones that we have identified in the

15   deficiency letters that we have exchanged with Mr. Sibley

16   really don't -- really are not those kinds of interrogatory

17   responses, Your Honor.

18        THE COURT:  So do you still need him to respond

19   more fully to these interrogatories or have you already

20   obtained the information that the interrogatories require at

21   Mr. Giuliani's deposition?

22        MR. GOTTLIEB:  I do think we still need

23   comprehensive answers to certain of these interrogatories.

24        I mean -- I think, Your Honor, it's a fair

25   question.  There may be certain of the interrogatory

1    responses that the deposition testimony would suffice for,

2    and we can -- we are happy to confer with Mr. Sibley on

3    those.  But I think, for most of them, we still need full

4    answers.

5           I mean, to give you one example, we had asked an

6    interrogatory describing -- sorry, just give me one second.

7    I am trying to find it.

8           So, for example, we have an interrogatory response

9    that asks him to explain the viewing metrics on social media

10   posts about our clients.  So the specific statements in the

11   case -- we want him to provide responses to how many

12   eyeballs were attached to tweets or Rumble posts or other

13   videos in which he defamed our clients.  And, essentially,

14   we -- as of this date, we don't have a response to that

15   interrogatory; and we didn't get any kind of an answer to

16   that at his deposition.

17          We have another interrogatory --

18          THE COURT:  Well, Mr. Gottlieb, can I just pause

19   for a second.

20          Would it make sense for you to review the

21   responses to the interrogatories that you have received --

22   much more fulsome responses to -- at the deposition, and do

23   follow-up conferral with Mr. Sibley about where you want

24   additional information?

25          And then, if you are bumping up against your limit

1    on the number of interrogatories, perhaps that's something

2    that we can take care of here to give you some follow-up

3    changes on interrogatory answers for the numbers of

4    interrogatories in order to follow up and not keep pestering

5    Mr. Giuliani with the answers that he's already given at the

6    deposition; which no one needs to waste their time writing

7    out the answers in an interrogatory response at this point.

8            Mr. Sibley, does that make sense?

9            MR. SIBLEY:  It does, Your Honor.  And that was --

10   that was going to be my response, is that -- the day -- I

11   think it was the day or so after the deposition, they sent

12   an email that said, he needs to change his interrogatory

13   answers to include what he said in his deposition.  And my

14   thought was it seems a little -- you know, if I have to cut

15   and paste deposition testimony in the irog [sic], that

16   doesn't seem like a good use of time.

17           But with respect to other issues, certainly --

18   this thing he's talking about with metrics on the viewing, I

19   am not sure what we need to do with that; that's not my

20   expertise.  I need to talk to --

21           THE COURT:  Well, that's the next issue, about the

22   requests for admission and potential incorrect responses to

23   the request for admission.  We're going to get to that next.

24           But with respect to the interrogatory responses --

25   and I also understand, Mr. Sibley, that you have been

1    concerned that you did not see a transcript of

2    Mr. Giuliani's deposition.  Have you received a copy of that

3    transcript at this point?

4              MR. SIBLEY:  We have, Your Honor.

5              I think there was some concern about another

6    witness having access to that transcript prior to his

7    testimony.  That's now been resolved, so I don't think there

8    are any issues with that.

9              We have -- plaintiffs have given us a copy of the

10   transcript, and we're good with that.  It's been provided to

11   Mr. Giuliani.  It's a very -- it's a full-day deposition, so

12   it's going to take some time for him to review that.

13             THE COURT:  Okay.

14             THE DEFENDANT:  I haven't received it yet.

15             MR. SIBLEY:  I sent it to you already.  You

16   probably just missed it.  But I did provide you with a copy

17   of it.

18             THE DEFENDANT:  I haven't received it.

19             THE COURT:  Well, Mr. Giuliani, I think you can

20   take that up with Mr. Sibley.

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  But I am sure -- if he said that he

23   sent it to you, you just haven't looked in the right place.

24   I am sure it's on its way to you.

25             All right.  So I don't think that there is any

 1     more for me to resolve here.  We have a plan going forward

 2     for the interrogatories that are going to be refined and

 3     where additional information is required and sent to

 4     Mr. Sibley --

 5                    THE DEFENDANT:  Your Honor.

 6                    THE COURT:  -- who now has a transcript in hand;

 7     and he can talk to his client if he needs to get additional

 8     information from Mr. Giuliani before he can provide a

 9     fulsome, complete, as legally required, response to each of

10     the interrogatories.

11                    And, Mr. Gottlieb, when are you going to get those

12     supplemental interrogatories to Mr. Sibley?

13                    MR. GOTTLIEB:  Your Honor, understanding that -- I

14     think it's an elegant solution to simply expand our number

15     of interrogatories so we cannot have dispute about former

16     interrogatories that weren't answered.  It would be helpful,

17     I think, for us to know -- to have a couple of things.

18                    First of all, I think we can get those to

19     Mr. Sibley by the end of this week.

20                    THE COURT:  By the 24th, okay.

21                    MR. GOTTLIEB:  I think we can get those, sort of,

22     revised new interrogatories to him.

23                    It would be helpful for us to have a deadline by

24     which those -- we receive those responses; and the direction

25     that whatever responses we do receive be verified as

1    required by the federal rules.

2              THE COURT:  Mr. Sibley, that sounds reasonable.

3    You will get the supplemental interrogatories by March 24th.

4              And can you get your responses back by the 30th?

5              MR. SIBLEY:  Yes, Your Honor.

6              THE COURT:  Good.  And they will be all properly

7    certified, as required by the rules.

8              MR. SIBLEY:  Yes, Your Honor.

9              THE COURT:  Okay.  Now, we're on to the third

10   issue, and that is, Mr. Giuliani's responses to three of the

11   plaintiffs' requests for admission; Nos. 82, 83, and 90.

12             As I understood -- understand from the parties'

13   submissions, the request for admission at 82 requested that

14   Mr. Giuliani admit that:  On or before December 23, 2020, he

15   had not watched the entirety of the surveillance footage

16   from the State Farm Arena.  The response was:  He lacked

17   sufficient knowledge to admit or deny that request.

18             Plaintiffs' Request No. 83 was that Mr. Giuliani

19   admit that he had not watched the entirety of the

20   surveillance footage from the State Farm Arena.  And he

21   responded:  Denied.

22             But at his deposition he admitted to watching only

23   8 of about -- I guess it's about 24 hours of footage.  And

24   that was at his deposition transcript at page 121, which is

25   different than the answer that he gave.

1    And then the plaintiffs' request for admission at

2    90 was that Mr. Giuliani admit that:  On or before

3    December 23, 2020, he was aware of the Giuliani

4    communications plan; and, that, he denied.  And yet, at his

5    deposition, he did say he was familiar with that

6    communications plan before this litigation.

7    So starting with Mr. Gottlieb.  It's your position

8    that his responses at his deposition -- his responses in the

9    subject matter areas at his deposition were inconsistent

10   with the responses that he gave in his request for

11   admission.

12   Do I understand that correctly?

13   MR. GOTTLIEB:  Correct, Your Honor.

14   THE COURT:  So just turning to the request for

15   admission at 90, which is that -- admit that:  On or before

16   December 23, 2020, you were aware of the Giuliani

17   communications plan, which is different from the question

18   posed at the deposition:  Whether he was familiar with the

19   communications plan before this litigation.  So that's a

20   different time frame.

21   So how is that an inconsistency with what he said

22   in his request for admission?

23   MR. GOTTLIEB:  Well, I think that -- I think that

24   the answer, Your Honor, is -- I acknowledge that that

25   particular RFA states:  On or before December 23, 2020.

1          I believe that the deposition testimony is

2     consistent with what we're saying here, which is that:  What

3     Defendant Giuliani is saying is that he didn't review the

4     specific document that has the title on it, Giuliani

5     Communications Plan, but that he was generally familiar with

6     the plan; that it was being developed; that it was going to

7     be presented to the White House; and that there was, sort

8     of, subcomponents within that document that he was directly

9     familiar with.  So attached -- essentially, attachments to

10    the communications plan that contained the relevant

11    defamatory material regarding our clients in it.

12          So notwithstanding that date restriction, we

13    believe that he was aware, based on his testimony, of the

14    plan itself.  He has even said he had an opinion about the

15    plan.  In other words, he has testified that he was -- he

16    thought it was a bad idea and that he allowed it to be

17    presented to the White House, but he didn't support it at

18    the time.

19          So he has given considerable testimony

20    demonstrating his awareness that this plan was being

21    developed, that this plan existed, and that he had a view

22    and an opinion about the plan itself.

23          THE COURT:  Well, if -- if Mr. Sibley, on

24    Mr. Giuliani's part, agrees that he should supplement his

25    responses to the request for admission, is that sufficient

1    relief from the plaintiffs' perspective, if there is a

2    supplement to those requests for admission?

3              MR. GOTTLIEB:  If the answers are changed

4    consistent with the testimony, yes.  That's sufficient from

5    our perspective.

6              THE COURT:  All right.  So, Mr. Sibley, you are

7    willing to correct any request for admission that appears to

8    be inconsistent with the deposition testimony; aren't you?

9              MR. SIBLEY:  Yes, Your Honor.  I need to go back

10   and look at the specific deposition testimony.  And like,

11   for example, this RFA that you've referred to -- it's a

12   defined term there; and I actually don't think it's

13   inconsistent because I think it refers specifically to that

14   document which he said he hadn't seen before.

15             But, I mean, I am happy to go back and look at it

16   on these three.  And if there's -- you know, obviously, when

17   you get ready for a deposition and there are all these

18   videos out there, it may be that his memory -- his memory

19   was refreshed and we may need to change some of those

20   answers.  I will certainly do that, if that is the case.

21             THE DEFENDANT:  May I clarify that?  I could

22   easily clarify that.

23             THE COURT:  Well, Mr. Giuliani, you can clarify

24   things but you might want to consult with your counsel

25   before you do that.

```
1              THE DEFENDANT:  I think it's very simple.

2              At the time that I got the interrogatories

3    originally, I really had forgotten about this report.  It

4    was not in my possession.  It was produced by another

5    witness, and then I was made aware of it.

6              When I looked at it, I -- it refreshed my

7    recollection considerably about it so that, by the time of

8    the deposition, I recalled a good deal more information

9    about it.  It was a document that I had not prepared.  It

10   was prepared by my -- the people working with me.

11             THE COURT:  Who prepared it?

12             THE DEFENDANT:  The people working with me in

13   various aspects of the investigation and people also working

14   for Mr. Navarro, a separate office.

15             And I disagreed with the plan.  So, yes, I did, in

16   a cursory way, look at -- looked at the document.  I am

17   surprised to this day that my name is on it because I let

18   them go to the White House and present it.  I specifically

19   did not go; and expressed my opposition to it.

20             So it was a document that I had a vague sort of

21   developing recollection of.  I think my testimony -- I don't

22   think my testimony is inconsistent as it is the document

23   refreshed my recollection, if that makes sense.

24             THE COURT:  Well, Mr. Sibley, your client has a

25   lot to say about this document, so I think you should give a
```

1    complete response to those requests for admission with the

2    full context and his evolving recollected memory about the

3    document.

4              MR. SIBLEY:  We will, Your Honor.

5              I think there are different versions of this

6    document.  We will look at that and make sure that

7    we accurately respond to that.

8              THE DEFENDANT:  I mean, everything --

9    (indiscernible.)

10              THE COURT:  All right.  You can probably get that

11    done -- since Mr. Giuliani is being very vocal here and has

12    a lot to explain about it, you could probably get that done

13    by March 24th as well, Mr. Sibley?

14              MR. SIBLEY:  Yes, Your Honor.

15              THE COURT:  All right.  So now we're at the fourth

16    issue, which is what the plaintiffs frame as Mr. Giuliani's

17    failure to supplement his initial disclosures, which were

18    originally submitted to plaintiffs in May 2022.  And,

19    specifically, the plaintiffs have pointed out that

20    Mr. Giuliani initially disclosed seven witnesses, which

21    include himself and the plaintiffs, plus a catchall:  Any

22    witness disclosed by plaintiffs.

23              But at his deposition, he suggested that

24    plaintiffs could speak to Christina Bobb, Phil Waldron, and

25    Ray Smith to get certain relevant information.

1            And I take it, Mr. Gottlieb, that Bobb, Waldron,

2    and Smith were not among the seven witnesses listed in the

3    initial disclosures?

4            MR. GOTTLIEB:  That's correct, Your Honor.

5            THE COURT:  All right.  And Mr. Giuliani says that

6    he is going to formally supplement his initial disclosures

7    perhaps, Mr. Sibley, not only with the names of Bobb,

8    Waldron, and Ray Smith but, also, with anybody else who

9    Mr. Giuliani, with his refreshed recollection of these

10   issues, now thinks require listing as people who may have

11   relevant information to the claims in this lawsuit.

12           Mr. Gottlieb, I understand that the initial

13   disclosure focus, in your submissions to the Court, were on

14   the list of potentially relevant witnesses.  Is there

15   anything else that you believe that was insufficiently

16   disclosed in the disclosures, other than the potential

17   relevant witnesses?

18           MR. GOTTLIEB:  We don't think that -- we don't

19   think that Defendant Giuliani has sufficiently disclosed the

20   locations of discoverable material or discoverable materials

21   that he knows to be or has reason to believe to be in his

22   possession or relating to the case.

23           I think we've just talked about a lot of that, in

24   terms of searches and preservation requirements and so, in

25   some sense, this discussion is coterminous with that.

1          Perhaps once a comprehensive search has been

2     performed, and Mr. Sibley has a better understanding of both

3     what's in the Trustpoint database and what hasn't been

4     searched in terms of social media accounts, phone records,

5     and the like, then that aspect of the disclosures could be

6     amended as well.  But that -- I acknowledge, Your Honor,

7     that might need to be on a slightly longer timetable than

8     the witnesses that Mr. Sibley and Mr. Giuliani are certainly

9     aware of as they sit here today.

10          THE COURT:  All right.  And, Mr. Sibley, do you --

11    I mean, don't you believe you have an obligation to

12    supplement your initial disclosures, frankly, on a

13    continuing basis?

14          And that, should Mr. Giuliani's recollection get

15    refreshed, as it appears it was at his deposition where he

16    listed additional people, are you planning on supplementing

17    your initial disclosures with lists of other people with

18    relevant information?

19          MR. SIBLEY:  Yes, Your Honor.  In fact, I did

20    that.

21          And formally -- before the deposition, when I was

22    preparing with Mr. Giuliani, I was asked by plaintiffs'

23    counsel if we could -- if they could get that information.

24    And I sent an email identifying those witnesses; I just

25    haven't formally put it on the disclosure.

1          But I think they were already aware of many of

2     those witnesses anyway because they had served their

3     subpoenas to them many months ago.  We haven't objected to

4     any of these.  I mean, there have been a lot of subpoenas --

5          THE COURT:  All right.  Well, you will formally

6     comply with the rules by March 24th with --

7          MR. SIBLEY:  Yes, Your Honor.

8          THE COURT:  -- supplementing your initial

9     disclosures with the list of individuals with relevant

10    information, and with respect to the location and categories

11    of documents that may have relevant information, plus the

12    status of your search of that following your conferral with

13    Mr. Costello as to precisely what is on that database that

14    only produced 194 responsive documents.

15          Now, we're at the last issue, which is the

16    canceled depositions.  And I understand there was a

17    deposition scheduled on January 25, 2023.  Mr. Giuliani

18    canceled two days in advance because he was very ill, but

19    then ended up traveling promptly after that to Palm Beach,

20    Florida; Georgia; and Tennessee.

21          So with respect to that deposition, Mr. Sibley,

22    did Mr. Giuliani just have a miraculous recovery?

23          THE DEFENDANT:  That's not true.

24          MR. SIBLEY:  Well, I am not sure, Your Honor, that

25    that is accurate; that he promptly traveled after that.

1          I will let him answer for the Court what

2     specifically -- what his travel was after that deposition.

3     I know that he did have a health issue.  He can -- I mean, I

4     am happy to let him explain it to you.

5          THE COURT:  So, Mr. Giuliani, you are a litigator.

6     You know how much effort it takes to pull all of the

7     appropriate people into the same room with a transcriber --

8     you know, a court reporter, et cetera -- the planning to get

9     ready for a deposition.  And it is -- so canceling at the

10    last minute is -- you know, discombobulates a lot of people,

11    and it can be expensive.  They now have to redo a lot of

12    that work and redo a lot of that organizational, logistical

13    planning.

14          So when I see that two different depositions have

15    been canceled with very little prior notice, I can

16    appreciate how the plaintiffs, to put it lightly, are

17    somewhat annoyed -- but so annoyed they're now bringing it

18    to my attention.  I don't have time to get involved in the

19    scheduling of depositions, I really don't.

20          But let me just say, what is your explanation for

21    this?

22          THE DEFENDANT:  Well, Your Honor, first of all, I

23    think it's unfair to say that I quickly traveled.  I think

24    it was a week later that I traveled, and I traveled to my

25    home in Palm Beach in order to recuperate.

1           He also notes that I did some kind of a podcast as

2     if it was some great big television show; I actually did it

3     while I was recuperating from my home.

4           I was examined both in New York and in Palm Beach

5     by different doctors.  I do have -- as a result of that bout

6     with some form of strange influenza, I have a partially

7     collapsed lung, which is an issue for me because I had two

8     stents put in six months ago.  I've also had to take

9     additional heart medication, and they're monitoring my heart

10    as a result of that.  These are not frivolous --

11          THE COURT:  I'm sorry to hear that, Mr. Giuliani.

12          THE DEFENDANT:  I resent the fact that plaintiffs'

13    counsel throughout has treated these as frivolous issues and

14    has given little or no concern to the fact that I have

15    survived cancer.  I had a 96 percent blockage of my arteries

16    that was just taken care of; and I have a one-quarter

17    collapsed lung.

18          For the month of January, I coughed almost every

19    night, and I actually did damage to my back and ribs.  I

20    have been treated by two different doctors for this.

21          These were informally arranged depositions; they

22    weren't by court order.  And I am used to lawyers being

23    quite accommodating when health issues are involved, and his

24    attitude was horrible.

25          And I do think -- I may be wrong about this, but I

1    thought -- I thought -- he puts down two days' notice.  Oh,

2    gosh.  In my experience and practice, two days is plenty of

3    time to cancel a deposition.  I have done plenty on one

4    day's notice cancellation when somebody had a cold, much

5    less a collapsed lung.

6              I didn't feel, you know, based on just

7    relationship between lawyers, I had to go into a great

8    detailed description of my health problems.  But I do resent

9    the fact that they're treating them like they're frivolous.

10    They are not.  And I still actually am being treated for it,

11    and the lung has not fully recovered.

12              The other -- I am expected --

13              THE COURT:  Mr. Giuliani, I think the second

14    deposition that was after this illness you also canceled;

15    and you -- that was precisely to travel to Ohio at the

16    request of former President Trump.  So you have a pretty --

17    it seems like you are traveling for business.

18              THE DEFENDANT:  I didn't do it for business.  I

19    did it for humanitarian reasons.

20              I was asked by the mayor of New Palestine to go

21    there because of my experience as a coordinator of

22    emergencies.  I have done that in at least four of the major

23    emergencies that have taken place, including two mass

24    killings.  I am usually one of the first people that the

25    mayors call up because of my experience on September 11th,

1    and since then.  But I didn't get paid a cent for it or

2    reimbursed.

3            It just so -- it just so happened that President

4    Trump was going, and he thought it was a good idea that I

5    go.  But I would have gone irrespective of President Trump.

6    And I have done this, gosh, at least three or four other

7    times.  It's not uncommon -- and then, on other occasions, I

8    am on the phone very often when there are emergencies.

9            I am one of the first people that mayors call when

10   this kind of a thing happens because of my experience on

11   September 11th, because I wrote a book about emergency

12   management, because many of them I have taught courses to on

13   emergency management.

14           THE COURT:  All right.  Well, thank you,

15   Mr. Giuliani.

16           Let me just -- I am going to interrupt you just to

17   move along here because I think the point of having this

18   conversation is that the plaintiffs are seeking to have --

19   to be reimbursed for their costs and any fees for the two

20   canceled depositions.

21           So I think with this explanation that Mr. Giuliani

22   has given to all of us here today, Mr. Gottlieb, on behalf

23   of the plaintiffs, will consider whether they really want to

24   proceed with making a motion for that reimbursement given

25   Mr. Giuliani's explanations of where he was and what he was

1    doing that prompted the cancellation of the two scheduled

2    depositions.

3         All right.  We have now covered all of those

4    issues.  We have Mr. Giuliani's explanation directly from

5    him about the reasons for the two canceled depositions.  I

6    am going to leave it to the plaintiffs to decide, and I

7    authorize them to make any motion for reimbursement of the

8    cost for those two canceled depositions having heard this

9    explanation from Mr. Giuliani, if they wish.  But I think

10   we're all better educated about the timing and what he was

11   doing around those times of the canceled depositions that

12   prompted his cancellation.

13        All right.  We now have some deadlines.  I am

14   going to be entering a minute order with the deadlines we

15   have set here, what needs to be done.  You will see all of

16   that.

17        And I think, after the supplementation of the

18   request for admission, for the requests for production, and

19   the conferral process, should the plaintiffs believe that

20   they still have a basis for a motion to compel, I will

21   authorize them to make such a motion.  But, hopefully, the

22   number of issues will be far more refined and that we have

23   now given another little kick-start to discovery here.  And

24   understanding the seriousness of full compliance with

25   discovery obligations, given the sanctions under Rule 37

1     that could be imposed, I would expect full cooperation on

2     all sides.

3              So is there anything further from the plaintiffs

4     today?

5              MR. GOTTLIEB:  No, Your Honor.  Thank you.

6              THE COURT:  Mr. Sibley, anything further from you?

7              MR. SIBLEY:  I just have one question, Your Honor.

8              With respect to the Court's request that we, sort

9     of, certify what documents are on the server and conferring

10    with Mr. Costello, what exactly would the Court like from me

11    to report to the Court, I guess?

12             Would the Court like a statement -- a signed

13    statement from Mr. Costello?  How would the Court like me to

14    report that?

15             THE COURT:  No.  You can report in a submission to

16    this Court, as an officer of the court, and making an

17    appearance in this court on this case, what you have been

18    advised about; precisely what information is on the

19    Trustpoint database in terms of particular file formats,

20    scope of -- in terms of time and subject matter, whether

21    it's just everything or whether they've only put up certain

22    refined file extensions, or within a particular time frame

23    all cabined by the search warrant return.

24             I will leave that to you so that you know and the

25    plaintiffs know and have assurance as to what has been

1    searched.

2              MR. SIBLEY:  I understand.

3              THE COURT:  Is that clear, Mr. Sibley?

4              MR. SIBLEY:  Yes, Your Honor.

5              THE COURT:  All right.

6              If there is nothing further, you are all excused.

7    Thank you.

8              MR. SIBLEY:  Thank you, Your Honor.

9              MR. GOTTLIEB:  Thank you, Your Honor.

10             (Whereupon, the proceeding concludes, 10:52 a.m.)

11                          * * * * *

12                          **<u>CERTIFICATE</u>**

13             I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
     certify that the foregoing constitutes a true and accurate
14   transcript of my stenographic notes, and is a full, true,
     and complete transcript of the proceedings to the best of my
15   ability.

16             PLEASE NOTE:  This hearing was held via
     videoconference and is, therefore, subject to the
17   limitations associated with the use of technology, including
     but not limited to telephone signal interference, static,
18   overlapping speakers, signal interruptions, and other
     restrictions and limitations associated with remote court
19   reporting via telephone, speakerphone, and/or
     videoconferencing capabilities.

20

21             This certificate shall be considered null and void
     if the transcript is disassembled and/or photocopied in any
     manner by any party without authorization of the signatory
22   below.

23

               Dated this 30th day of March, 2023.
24

               /s/ Elizabeth Saint-Loth, RPR, FCRR
25             Official Court Reporter