UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUBY FREEMAN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>RUDOLPH W. GIULIANI,<br><br>Defendant. | Case No. 1:21-cv-03354 (BAH)<br><br>Chief Judge Beryl A. Howell |

**JOINT STATUS REPORT**

Plaintiffs Ruby Freeman and Wandrea' ArShaye ("Shaye") Moss and Defendant Rudolph W. Giuliani (together, the "Parties"), through undersigned counsel and pursuant to the Court's March 21, 2023, Minute Order ("March 21 Order"), hereby submit the following Joint Status Report (1) apprising the Court on their progress in resolving their discovery disputes, (2) clarifying whether Plaintiffs intend to file a motion to compel, and (3) proposing a briefing schedule for any motion to compel.  Plaintiffs raised several discovery issues with Defendant in an April 4, 2023, letter ("April 4 Letter," attached as Exhibit A), and Plaintiffs believe there remain several outstanding disputes as to which the Parties are at an impasse.  The issues pertain to (1) Defendant Giuliani's document productions to date and (2) Defendant Giuliani's supplemental answers to Plaintiffs' interrogatories.  Accordingly, Plaintiffs respectfully inform the Court of their intent to file a motion to compel.[1]  The Parties hereby submit a proposed briefing schedule for the requested motion.

---

[1] Plaintiffs understood that during the March 21, 2023, discovery hearing, the Court authorized Plaintiffs to file a motion to compel as to any discovery disputes that are outstanding as of today's

I.  **The Parties' Progress in Resolving Their Discovery Disputes**

On March 21, 2023, the Court entered a Minute Order directing the Parties as follows:

> (1) by March 24, 2023, plaintiffs shall provide defendant with supplemental interrogatories, as discussed at the hearing;
>
> (2) by March 24, 2023, defendant shall (a) submit notice to the Court describing in specific terms the data on the "Trust Point" database that were searched in response to plaintiffs' Requests for Production (RFPs), including date range and contents (e.g., social media accounts, text messages, and communications on other messaging platforms, such as Signal, Telegram, etc.); (b) what locations and data sources remain for searches to be completed to respond fully to plaintiffs RFPs; (c) provide updated complete responses to plaintiffs' Requests for Admission 82, 83, and 90; and (d) provide updated initial disclosures to plaintiffs, pursuant to Federal Rule of Civil Procedure 26(a);
>
> (3) by March 30, 2023, defendant shall (a) complete searches and production of responsive records to plaintiffs' RFPs; (b) provide responses in full to plaintiffs' supplemental interrogatories; and
>
> (4) by April 10, 2023, the parties shall jointly submit a status report apprising the Court on their progress in resolving their discovery disputes, clarifying whether plaintiffs intend to file any motion to compel and, if so, proposing a briefing schedule for any motion to compel.

On March 24, 2023, Plaintiffs provided Defendant with five new interrogatories and asked Defendant to supplement his responses to nine of their original interrogatories. The same day, Defendant filed a notice with the Court regarding the TrustPoint database. *See* ECF No. 40. Defendant separately sent Plaintiffs updated responses to Plaintiffs' Requests for Admission Nos. 82, 83, and 90, as well as provided Plaintiffs with updated initial disclosures ("Amended Disclosures"). Because Defendant's Amended Disclosures did not include certain

---

date. Plaintiffs accordingly intend to file a motion to compel on April 17 pursuant to the schedule set forth below. In the event leave of the Court is required pursuant to the Court's Standing Order 8(a), Plaintiffs respectfully request leave to file the motion to compel.

witnesses Plaintiffs expected would be listed, Plaintiffs emailed Defendant's counsel to confirm whether those omissions were purposeful. In response, Defendant's counsel pointed to Federal Rule of Civil Procedure 26(a)(1)(A)(i), noting that the Rule only requires disclosure of persons likely to have relevant evidence that the disclosing party may use to support its claims or defenses, not every person known to possess relevant evidence. On April 7, Defendant served a second amended Initial Disclosure.

On March 29, 2023, Plaintiffs wrote Defendant's counsel to confirm whether his forthcoming production would capture records from Giuliani Partners, LLC and/or Giuliani Communications, LLC, as Plaintiffs' understanding is that Defendant has possession, custody, or control of those records.

On March 30, 2023, Defendant provided Plaintiffs with a "supplemental production" ("Supplemental Production") that consisted of a single page with images of what appear to be five direct messages from Sidney Powell on Twitter. Defendant also provided Plaintiffs with answers to their new interrogatories and supplemental answers to the original interrogatories Plaintiffs identified, as well as Defendant's verification of those answers (collectively, "Supplemental Interrogatory Responses"). In addition, Defendant's counsel conveyed the following to Plaintiffs:

- "[T]here is no email address or website for Giuliani Communication";

- "The only remaining employee with a Giuliani partners email appears to be Maria Ryan, who [Plaintiffs] subpoenaed";

- "Any employee who was terminated in the past, [Giuliani Partners] no longer have access to. However, whatever emails were sent to Giuliani would have been included in the TrustPoint search";

- "As for the new devices, Giuliani reports that he has conducted searches pursuant to the search terms for RFP sets 1 and 2 and has no non-privileged responsive documents. All of

- the responsive documents that are privileged were created as a result of the instant litigation;"

- "Giuliani also reports he does not have phone records, but will execute whatever release is necessary to obtain the phone records";

- "Giuliani stands on his objections to RFP set 4"; [2]

- "Finally, the TrustPoint documents have been archived. Giuliani will have to pay considerable fees to have the documents unarchived and searched for additional files (and it does not appear the original seized devices are searchable or contain the data any longer). Given the paucity of his text messages and other messaging, he is requesting that Plaintiffs pay for any further searches on this data."

On April 4, Plaintiffs sent Defendant a letter, detailing their position that Defendant has failed to Comply with the March 21 Order and his discovery obligations more broadly, as summarized below.[3] Additionally, Plaintiffs requested that Defendant support with case law his position that Plaintiffs should bear the cost of additional discovery efforts by Defendant.

### A. Plaintiffs' Position on Current Discovery Disputes

#### 1. Defendant Giuliani's "Supplemental Production" Is Deficient.

Defendant Giuliani has not complied with the March 21 Order, including by having failed to "*complete* searches and production of responsive records to plaintiffs' RFPs" by March 30, 2023. March 21 Order (emphasis added). Defendant Giuliani's Supplemental Production included a total of *one* additional document since the March 21 Order, bringing the grand total of documents

---

[2] "RFP Set 4" refers to Plaintiffs' Fourth Set of Requests for Production, which concern requests for information about Defendant's finances.

[3] As Plaintiffs previously noted, Defendant has also produced to Plaintiffs 1,533 documents that were collected in response to discovery demands in another, unrelated litigation with a voting machine company, and which were also produced to the United States House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol. ECF Nos. 36–37. 264 of these documents were produced on April 5 and April 10, 2023. These 264 documents, Defendant represented, were previously withheld as privileged but "are not being claimed as privileged by Trump Campaign" any longer.

collected and produced specifically in response to Plaintiffs' requests in this litigation to just 195, and an additional eight documents over which Defendant asserts privilege.[4]  It appears that Defendant Giuliani's production in response to Plaintiffs' RFPs is comprised of only (1) a set of email and paper file documents from the TrustPoint database ("TrustPoint") derived from applying search terms relating to Plaintiffs' first and second sets of RFPs to limited extensions and then culled down to 194 documents without explanation; and (2) the "Supplemental Production" of a single document from a purported search Defendant Giuliani made, on his own, of his social media accounts which he determined was the only document not privileged (without providing a corresponding privilege log).  The lack of responsive documents appears to be the result of Defendant's plainly insufficient searches to date.

Defendant has never provided Plaintiffs or the Court with anything approximating adequate assurance that he has fulfilled his obligations to collect and search the full universe of records potentially responsive to Plaintiffs' requests within his possession, custody, or control.  Instead, as best Plaintiffs can discern, the totality of Defendant's searches to date may be summarized as follows:

- For all social media records (i.e. records pre- and post-April 2021), Defendant conducted an undefined *manual* search (apparently between March 21 and April 5, 2023) of an *unknown set* of social media accounts, and he produced only the single page of direct messages from Sidney Powell described above (all of which appear to be irrelevant to this case).

- For non-social-media records (i.e., all emails, Word documents, PDFs, images, text messages, Signal messages, WhatsApp messages, etc.) post-dating April 2021, Defendant conducted an undefined *manual*  search (apparently between March 21 and April 5, 2023) of an *unknown set* of "new devices" for records, and he reported, without a privilege log, that his manual searches yielded no non-privileged responsive records and that the only privileged records located were records created for this case.

---

[4] The 1,533 other documents that Defendant has produced are largely irrelevant to, and were not collected in response to, Plaintiffs' RFPs.

- For non-social-media records (i.e., all emails, Word documents, PDFs, images, text messages, Signal messages, WhatsApp messages, etc.) pre-dating April 2021, Defendant's counsel searched (a) documents that were collected and produced from an *unknown* universe of devices, accounts, and locations in response to *discovery requests from a voting machine company in another case*—discovery requests Plaintiffs reviewed, and which have almost no overlap with Plaintiffs' discovery requests—resulting in the production of 1,269 documents that are largely irrelevant; and (b) a *subset* of files in the TrustPoint database, which contains some *unknown set* of files from an *unknown universe* of devices the Department of Justice seized in April 2021 (and which Plaintiffs understand were returned to him in August or September 2022), using search terms responsive only to Plaintiffs first and second set of requests for production, and not to their third and fourth sets of requests—a search that has thus far yielded less than 200 documents.[5]

Given the clear insufficiency of Defendant's manual searches and producing records responsive to discovery requests in other litigation, Defendant is effectively relying entirely on his underinclusive searches of the TrustPoint database to satisfy all of his documentary discovery obligations in this case. That is inappropriate, both because Plaintiffs still have no assurance that the TrustPoint database contains all relevant documents and because the limited searches Defendant ran in that database are underinclusive.

On March 24, 2023, Defendant represented that, "The TrustPoint One server contained all files that could be extracted from Giuliani's devices that existed as of the time they were taken in April 2021 all the way back (for some of the devices) to February 24, 1995," and that, in addition to emails, the database contains "pdfs, images, word files, as well as text and messenger files from messaging applications." ECF No. 40 at 1–2. These representations leave the Court and Plaintiffs without *critical* details. For example, Defendant has never represented that all electronic devices he possessed at the time were seized by the Department of Justice in April 2021, or that *all* of the files from *all* of the devices seized are captured in the TrustPoint database as opposed to some

---

[5] Importantly, Defendant seems to have taken the position that he has complied with his discovery obligations and the Court's order by doing no more than applying Plaintiffs' proposed search terms to certain repositories of documents. At no time did Plaintiffs ever agree to or suggest that Defendant would fulfill his obligations by only applying Plaintiffs' proposed search terms.

subset of documents responsive to a warrant and not minimized.  Defendant has never represented which email accounts are captured in the TrustPoint database, or that the database contains all pre-April 2021 emails from the two email accounts (one @icloud.com and one @gmail.com account) Defendant represented to Plaintiffs that he primarily used for communications that might be relevant to this case.  Defendant has never represented which messaging applications were captured, or whether the database contains files from Signal and WhatsApp, which Defendant testified in his deposition he used.

Defendant's search efforts as described are admittedly insufficient to comply with the March 21 Order.  Defendant Giuliani has admitted that he has not engaged in *any* search of the materials located in the TrustPoint database since the March 21 Order and, instead, demands *Plaintiffs* "pay for any further searching" of TrustPoint.  Defendant Giuliani has conceded that the only search he has undertaken to date of TrustPoint was for "paper files and email files" even though that database also contains "email files, pdfs, images, word files, as well as text messenger files from messaging applications."  ECF No. 40.  Defendant Giuliani is refusing to search for those additional TrustPoint materials irrespective of the March 21 Order.  Leaving aside failing to justify searching only email and paper files, Defendant Giuliani has never explained how he culled down that search to only 194 documents (of 400 email extension documents that hit on Plaintiffs' search terms) from between September 1, 2020 to January 21, 2021, after initially representing that Plaintiffs' search terms returned 50,000 hits total, including 18,000 between November 2020 and April 2021.

Nor do Defendant's recent, *manual* searches cure these issues.  Defendant Giuliani admits that TrustPoint does not contain "any social media messaging files" and that his TrustPoint search did not include any pdfs, images, or text messenger files.  ECF No. 40.  Defendant has not

represented to Plaintiffs whether or how he searched any of those repositories of information, including for example to search all of his email accounts, text messages, or messaging applications (like Signal) to which he has actual or practical access. Instead, his counsel represented that the only post-March 21 search that Defendant Giuliani engaged was his own "search" of "social media messages" that resulted in only one non-privileged communication and of "new devices" that identified "no non-privileged responsive documents." Defendant Giuliani has not provided a privilege log or any details of the purported "search,"[6] including what he searched (such as specific accounts or devices), the method used, the process of determining responsiveness, the dates of materials searched, or the privilege review process.

Defendant Giuliani has further conceded that he still, to date, has not produced any documents responsive to Plaintiffs' Third set of RFPs, which seeks his mobile billing records to show calls made or received between December 1, 2020 and January 31, 2020. Nor has he made any efforts to search for or produce any documents in response to Plaintiffs' Fourth set of RFPs, which seeks certain financial information including documents sufficient to show yearly income and net worth and the filings in his divorce dispute. Counsel for Defendant previously represented that Defendant would at least agree to release his divorce records to Plaintiffs, but has failed to do so.

At bottom, Defendant Giuliani has admitted that he has not "complete[d] searches and

---

[6] Defendant has produced three privilege logs to date, including one produced on the date of this filing that appears to relate to the 264 de-designated Trump Campaign documents. These privilege logs are incomplete. So far as Plaintiffs can discern, the privilege logs are limited to the documents that Defendant Giuliani collected in response to discovery demands in unrelated litigations, as discussed above. Plaintiffs therefore reserve the right to challenge all privilege claims put forth by Defendant Giuliani once he has undertaken a complete search and production, including providing an accompanying privilege log identifying *all* responsive documents he attempts to withhold.

production of responsive records to plaintiffs' RFPs" and appears to be refusing to do any more than he has already done, including refusing to conduct additional searches of the TrustPoint documents unless Plaintiffs bear the cost. Plaintiffs' request in the April 4 Letter that Defendant Giuliani provide case law to support his attempt to shift costs to Plaintiffs to avoid his own discovery obligations has gone unanswered. Nor should Defendant Giuliani be permitted to avoid his own discovery obligations by shifting costs to Plaintiffs, including because any purported costs are Defendant Giuliani's own fault—had he complied with his discovery obligations when he was support to, no "unarchiving" would have been required. It does not appear that Defendant has ever engaged in a collection or search of all of the various repositories of potentially relevant information in his possession, custody, or control. Plaintiffs are not aware of, for example, the engagement of a vendor to collect Defendant Giuliani's various personal and business email accounts, text messages, social media communications, or messaging applications to which he currently has actual or practical access (including via the Cloud and which are presumably untethered to any specific "device"). Instead, Defendant Giuliani seems to be claiming that he can sufficiently comply with all his discovery obligations by half-hearted and non-descript searches as to limited RFPs of whatever email and paper files are in TrustPoint and whichever social media accounts he has decided to look through on his own. The law, and this Court's March 21 Order, requires more.

        **2.**     **Defendant Giuliani's "Supplemental Interrogatory Responses" Are Deficient.**

Defendant has not complied with the March 21 Order requiring he "provide responses *in full* to plaintiffs' supplemental interrogatories" by March 30, 2023. Defendant's response to interrogatories asking him to describe, in detail, how he first learned of the surveillance footage at the heart of this case and identify who was involved—to which he loosely invokes attorney-client

privilege and responds only that Defendant "generally recalls that he was made aware of the video the night before the hearing before the Georgia Senate Election Hearing on December 3, 2020"—are particularly deficient.

### B. Defendant's Position

Defendant's position is that Plaintiffs are positing a red herring by pointing to only the number of documents "specifically" collected for this litigation. The litigations that Plaintiffs claim are "unrelated" include documents productions for the January 6th Special Committee, Dominion, and Smartmatic, all of which broadly requested documents related to the 2020 Election claims and positions taken by Defendant. The production to the January 6th Committee and other litigations contained over a thousand documents and, specifically, documents pertaining to claims of Election Fraud in the State of Georgia. Defendant did not also understand the March 21 Order as compelling production of every document Plaintiffs requested and thus overruling any objections made by Defendant and/or assertions of privilege as none of these matters were discussed at the hearing or in Plaintiffs' report to the Court about the nature of the discovery dispute. In fact, the Court was clear that it was not ruling on any motion to compel, but rather attempting to narrow the issues. Giuliani conceded additional searches/supplementations would be made. Giuliani also produced approximately 263 documents upon which privilege was previously asserted, but was subsequently de-designated by the Trump Campaign, which was Giuliani's former client.

Defendant's position is that he produced these documents because Plaintiffs, in fact, requested he produce all documents produced in these other litigations or were otherwise responsive to Plaintiffs' search terms.

Defendant's position is that he searched all of his social media accounts, which are very

rarely used for direct messaging, by a manual search and only discovered the Powell message, which generally pertained to the 2020 Election issues.

Defendant's position is that he did, in fact, conduct a manual search of the devices that contained information only created after April of 2021 using Plaintiffs' provided search terms. Defendant did not locate any responsive documents except for documents that were created as a result of the instant litigation and should not have to be logged for privilege (especially on less than weeks' notice).

Defendant's position, as defined above, is that any documents pertinent to Plaintiffs or the Georgia 2020 Election were produced to the January 6th Committee as well as to other litigants. There was no need to do an additional search. The devices returned to Defendant no longer have the files on them and the only way to re-access this data is to pay a substantial sum of money to search for what would essentially be phone records, tax returns, and divorce records, all of which could be accessed by other means.

Defendants' position is that the TrustPoint documents contain every electronic file that was extant as of April 2021. Defendant searched these documents per the search terms provided by Plaintiffs for email communications. Defendant communicated almost exclusively through email during the relevant time frame and has no recollection of any text or messaging exchanges regarding the Plaintiffs. He has testified in deposition already about how his knowledge of Plaintiffs and basis for his statements came to fruition.

Defendants' position is that he has stated, *ad nauseum*, that the DOJ seized all of his electronic devices and extracted every file contained on those devices, which were then stored at TrustPoint One. Defendant cannot provide any further information than this as he cannot possibly remember all of the files that were on all of his electronic devices.

Defendant's position is that he did, in fact, explain how the range of hits were reduced from the initial 50,000 that contained no date restriction to the 18,000 that contained a date restriction to the relevant time frame. This was explained to Plaintiffs' counsel in correspondence and on meet and confer calls. The vagueness of Plaintiffs' search terms (e.g., "purple shirt") captured files that could not possibly be relevant to Plaintiffs' claims, such as background operating files that were not even created by Giuliani. Therefore, the parties agreed to reduce the search to include only files containing an email extension, thus reducing the hits to the number ultimately reviewed.

Defendant's position is that he manually searched social media messaging (something that rarely happens). As for other files, the email files (that would include accompanying pdfs or other attachments) were searched. Files from text messages, etc. were not searched and he no longer has access to them because they are off of his devices and in TrustPoint One's archives, which will cost a substantial sum to unarchive. Giuliani does not believe that the needs of the case warrant such expenses to search for text and other messages, which he does not recall utilizing to discuss Plaintiffs. Plaintiffs' request for "case law" is unnecessary because this principle is found in the text of Rule 26(b)(B, which provides that "A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery." Defendant intends to make such showing in response to any motion to compel. In fact, he does not recall discussing Plaintiffs in written communication at all and despite a flurry of subpoenas that Plaintiffs have served, there is

absolutely no evidence that Giuliani ever communicated in writing regarding Plaintiffs as they were only a small piece of the broader 2020 Election issues that Defendant dealt with.

Defendant does not have his phone records but does not and has not objected to a subpoena for Plaintiffs to obtain them. As for financial information, Giuliani objects to production of these documents as premature as they are only relevant to punitive damages and, under the law of the D.D.C., Plaintiffs' must first make a *prima facie* showing of their claims to obtain those records.

Giuliani's position on this is adequately described above. Giuliani has searched every repository of documents in his possession, custody, or control for documents responsive to Plaintiffs' requests. He has produced all non-privileged documents. The only documents he is withholding from production, based on objections, are financial information that are only relevant to Plaintiffs' punitive damages claims. While Defendant's counsel did attempt to obtain a release of these records from Defendant as form of compromise, such authorization was not consented to by Defendant, and he stands on these objections as is his right.

Defendant has fully supplemented his Interrogatory Answers to the best of his ability. Plaintiffs spent an entire day in deposition (and, in fact, seek more deposition time) questioning Defendant over the same subject matter as the Interrogatories they now seek to compel supplemental answers to. Defendant's supplemental answers do not assert privilege and he did not assert privilege in his deposition regarding how he became aware of Plaintiffs/the video on which his statements are based. Defendant contends he has fully responded to the Interrogatories to the best of his ability.

## II.  Plaintiffs Intend to File a Motion to Compel

For the reasons outlined above, Plaintiffs intend to file a motion compelling Defendant Giuliani to (1) engage in a complete, professional collection and search of all repositories likely to

contain responsive information (including but *not* limited to those contained in the TrustPoint database) for all materials responsive to all of Plaintiffs' four sets of RFPs, in a manner consistent with the March 21 Order and the Federal Rules, (2) describe in detail the searches conducted and the universe of repositories and devices searched in undertaking these searches, both inside and outside of the TrustPoint database, (3) produce all non-privileged documents responsive to Plaintiffs' document requests, including a complete privilege log identifying all responsive documents he decided to withhold, by the close of discovery, (4) sit for an additional deposition; and (5) supplement his responses to Plaintiffs' third set of interrogatories to provide complete answers (or alternatively preclude Defendant Giuliani from relying on documents or testimony that contradict any of his interrogatory responses).  Plaintiffs additionally contemplate seeking additional forms of relief as permitted by Rule 37.

### III.     Defendant's Position on Plaintiffs' Intention to File a Motion to Compel

Defendants' position is that he has fully complied with his discovery obligations and, if Plaintiffs want additional searches to be done in TrustPoint, they should pay the discovery vendor costs.  Defendant also contends that he should not be required to log privileged communications or work product that were created as a result of this litigation.  Defendant also reserves the right to seek relief as permitted by Rule 37.

### IV.     The Parties' Proposed Briefing Schedule

The Parties have conferred and, in light of Plaintiffs' intent to file a motion to compel, have agreed on the following proposed briefing schedule.

| Event | Proposed Deadline |
|---|---|
| Plaintiffs' Motion to Compel | April 17, 2023 |
| Defendant's Response to Plaintiffs' Motion to Compel | May 1, 2023 |
| Plaintiffs' Reply | May 8, 2023 |

Dated:  April 10, 2023

By: */s/* Joseph D. Sibley IV
CAMARA & SIBLEY L.L.P.
Joseph D. Sibley IV
DC Bar ID: TX0202
1108 Lavaca St.
Suite 110263
Austin, TX 78701
Telephone: (713) 966-6789
Fax: (713) 583-1131
Email: sibley@camarasibley.com

***Counsel for Defendant***

Respectfully Submitted,

By: */s/* Michael J. Gottlieb
WILLKIE FARR & GALLAGHER LLP
Michael J. Gottlieb (974960)
Meryl C. Governski (1023549)
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com
mgovernski@willkie.com

UNITED TO PROTECT DEMOCRACY
John Langford
Rachel Goodman
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
john.langford@protectdemocracy.org
rachel.goodman@protectdemocracy.org

Brittany Williams
Sara Chimene-Weiss
15 Main St., Suite 312
Watertown, MA 02472
Tel: (202) 579-4582
brittany.williams@protectdemocracy.org
sara.chimene-weiss@protectdemocracy.org

DUBOSE MILLER LLC
Von A. DuBose
75 14th Street NE
Suite 2110
Atlanta, Georgia 30309
Tel: (404) 720-8111
dubose@dubosemiller.com

KASTORF LAW LLC
Kurt G. Kastorf (1011932)
1387 Iverson Street NE
Suite #100
Atlanta, GA 30307
Tel: (404) 900-0330
kurt@kastorflaw.com

***Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

I certify that on April 10, 2023, this Joint Status Report was filed and served on counsel for all parties using the Court's ECF system.

/s/ Michael J. Gottlieb