**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RUBY FREEMAN, *et al.*, | |
| Plaintiffs, | Case No. 1:21-cv-03354 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| RUDOLPH W. GIULIANI, | |
| Defendant. | |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY,
FOR ATTORNEYS' FEES AND COSTS, AND FOR SANCTIONS**

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................2

    A.   Plaintiffs Served Discovery On Defendant Giuliani Nearly One Year Ago And Have Unsuccessfully Attempted Since To Secure His Compliance....4

    B.   The Court's March 21 Order Directed Defendant Giuliani To Fulfill His Discovery Obligations, Which He Has Still Failed To Do. ......................10

LEGAL STANDARD............................................................................................14

ARGUMENT ......................................................................................................16

    I.   THE COURT SHOULD COMPEL DEFENDANT GIULIANI TO COMPLY WITH HIS DISCOVERY OBLIGATIONS AND THE MARCH 21 ORDER...16

    A.   The Court Should Compel Defendant Giuliani To Detail His Preservation Efforts To Date. ........................................................................16

    B.   The Court Should Compel Defendant Giuliani Complete Searches And Production Of All Responsive Materials To All Of Plaintiffs' RFPs, As The Court Ordered on March 21, At His Own Expense...........................18

        1.   Defendant Giuliani refuses to engage in a search for or produce any materials responsive to the Third and Fourth Set of RFPs......19

        2.   Defendant Giuliani has not engaged in a comprehensive search for or production of all materials in his possession, custody or control. ........................................................................21

        3.   Defendant Giuliani's TrustPoint search is insufficient in substance and insufficiently described. ........................................................23

    C.   The Court Should Compel Defendant Giuliani To Fully Answer His Deficient Responses To Interrogatory Numbers 11 And 12.....................25

    II.   THE COURT SHOULD GRANT PLAINTIFFS ADDITIONAL RELIEF AND SANCTION DEFENDANT GIULIANI. ............................................................26

    A.   Rule 37 Requires The Award Of Attorneys' Fees For The Costs Of This Motion, If Granted. ...................................................................26

    B.   The Court Should Preclude Defendant Giuliani From Relying On Any Evidence Not Provided In His Initial Disclosures Or Interrogatory Responses....................................................................................27

    C.   The Court Should Impose Additional Sanctions As It Deems Appropriate. ............................................................................28

CONCLUSION....................................................................................................29

CERTIFICATE OF SERVICE ..............................................................................32

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. FBI,*
 193 F.R.D. 1 (D.D.C. 2000)...........................................................................21

*Alvarado v. Rainbow Inn, Inc.,*
 312 F.R.D. 23 (D.D.C. 2015)..........................................................................15

*In re Barnwell Enters.,*
 265 F. Supp. 3d 1 (D.D.C. 2017) ...................................................................17

*Campbell v. Nat'l R.R. Passenger Corp.,*
 309 F.R.D. 21 (D.D.C. 2015)..........................................................................15

*CFTC v. McGraw-Hill Cos.,*
 390 F. Supp. 2d 27 (D.D.C. 2005) ..................................................................19

*Cobell v. Babbitt,*
 37 F. Supp. 2d 6 (D.D.C. 1999) ......................................................................19

*D'Onofrio v. SFX Sports Grp.,*
 247 F.R.D. 43 (D.D.C. 2008)..........................................................................20

*Dershowitz v. Cable News Network, Inc.,*
 No. 20-61872-CIV, 2022 WL 2662352 (S.D. Fla. June 15, 2022).................20

*Dickerson v. District of Columbia,*
 No. CV 09-2213 (PLF), 2019 WL 6910043 (D.D.C. Dec. 19, 2019) ............27

*DL v. District of Columbia,* 251 F.R.D. 38, 48 (D.D.C. 2008)............................ *passim*

*Equal Rights Ctr. v. Post Props., Inc.,*
 246 F.R.D. 29 (D.D.C. 2007)..........................................................................26

*Escamilla v. Nuyen,*
 No. 14-CV-00852-AK, 2015 WL 4245868 (D.D.C. July 14, 2015) ...............26

*Jones v. Carson,*
 No. CV 15-310, 2018 WL 11410070 (D.D.C. Mar. 30, 2018)........................29

*Kifle v. Parks & Hist. Ass'n,*
 No. CIV.A. 98-00048 (CKK), 1998 WL 1109117 (D.D.C. Oct. 15, 1998) ..........19

*Landmark Legal Found. v. EPA,*
 272 F. Supp. 2d 70 (D.D.C. 2003) ..................................................................19

*Lebron v. Powell*,
217 F.R.D. 72 (D.D.C. 2003) ...........................................................................................26

*Mahaffey v. Marriott Int'l, Inc.*,
898 F. Supp. 2d 54 (D.D.C. 2012) ...................................................................................16

*McNair v. District of Columbia*,
325 F.R.D. 20 (D.D.C. 2018) ...........................................................................................28

*Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*,
130 F.R.D. 149 (D. Kan. 1990) ........................................................................................20

*Moore v. Napolitano*,
723 F. Supp. 2d 167 (D.D.C. 2010) .................................................................................29

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) .........................................................................................................14

*Owens v. Republic of Sudan*,
333 F.R.D. 291 (D.D.C. 2019) .........................................................................................17

*Palmieri v. United States*,
72 F. Supp. 3d 191 (D.D.C. 2014), *aff'd*, 896 F.3d 579 (D.C. Cir. 2018) ......................16

*Parsi v. Daioleslam*,
778 F.3d 116 (D.C. Cir. 2015) ..........................................................................15, 16, 26, 28

*Perry v. Sera*,
623 A.2d 1210 (D.C. 1993) ..............................................................................................15

*Peskoff v. Faber*,
251 F.R.D. 59 (D.D.C. 2008) ................................................................................14, 24, 25

*Pietrangelo v. Refresh Club, Inc.*,
No. 18-CV-1943-DLF-ZMF, 2021 WL 1209300 (D.D.C. Mar. 31, 2021),
*aff'd*, No. 18-CV-1943, 2021 WL 2156504 (D.D.C. May 26, 2021) ...............................20

*Shatsky v. Syrian Arab Republic*,
312 F.R.D. 219 (D.D.C. 2015) .................................................................................15, 29

*United States v. All Assets Held at Bank Julius Baer & Co., Ltd., Guernsey*
*Branch, Acct. No. XXXXXX in Name of Pavlo Lazarenko*,
No. CV 04-798, 2018 WL 8867711 (D.D.C. Jan. 19, 2018) ...........................................19

*United States v. Held*,
No. 13-1832 (JDB), 2019 WL 13197264 (D.D.C. June 12, 2019) ...................................29

*Walls v. Paulson*,
 250 F.R.D. 48 (D.D.C. 2008)........................................................................................16, 25, 29

*Williams v. Johnson*,
 278 F.R.D. 10 (D.D.C. 2011)......................................................................................................27

*Wilson v. On the Rise Enters., LLC*,
 No. 16-2241 (BAH), 2019 WL 399821 (D.D.C. Jan. 30, 2019) (J. Howell)..........................15

**Rules**

Fed. R. Civ. P. 26........................................................................................................................20, 25

Fed. R. Civ. P. 26(b)(1).......................................................................................................................18

Fed. R. Civ. P. 26(b)(5)(A)(ii)...........................................................................................................29

Fed. R. Civ. P. 33(b)(3).......................................................................................................................25

Fed. R. Civ. P. 37................................................................................................................................26

Fed. R. Civ. P. 37(a)(5)(A).............................................................................................................15, 26

Fed. R. Civ. P. 37(a)(5)(A)(i)............................................................................................................27

Fed. R. Civ. P. 37(a)(5)(A)(ii)...........................................................................................................27

Fed. R. Civ. P. 37(a)(5)(A)(iii)..........................................................................................................27

Fed. R. Civ. P. 37(b)(2)(A).................................................................................................................15

Fed. R. Civ. P. 37(c)(1).......................................................................................................................27

Fed. R. Civ. P. 37(d)(1)(3)..................................................................................................................15

Fed. R. Civ. P. 37(e).......................................................................................................................14, 16

**Other Authorities**

8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2289
 (1970 and 1992 Supp.).................................................................................................................15

Pursuant to the Court's April 11, 2023 Minute Order and Federal Rule of Civil Procedure ("Rule" or "Federal Rules") 37, Plaintiffs Ruby Freeman and Wandrea' ArShaye ("Shaye") Moss (collectively, "Plaintiffs") respectfully request that the Court issue an order compelling Defendant Rudolph W. Giuliani ("Defendant Giuliani" or "Defendant") to fulfill his discovery obligations, including by searching for and either producing or justifying the withholding of all materials in his possession, custody, or control responsive to Plaintiffs' requests for production, and providing a sworn declaration regarding the preservation efforts he has taken, all locations and data that he used to communicate about relevant topics, the specific "data" that is housed in the TrustPoint database ("TrustPoint"), and the searches he has conducted to locate responsive documents. Plaintiffs also request that the Court award attorneys' fees for the costs of this Motion and any additional sanctions the Court deems appropriate.[1]

## INTRODUCTION

For nearly ten months, Defendant Giuliani has avoided fulfilling his most basic discovery obligations, including by refusing to search for and produce responsive documents even after the Court ordered him to do so.  In good faith, Plaintiffs have attempted *for more than eight months* to resolve these discovery disputes without Court intervention.  While the parties were able to narrow the issues following the Court's March 20, 2023 discovery conference, the parties remain at an impasse regarding Defendant Giuliani's refusal to search for and produce all responsive materials (despite the Court's Order) or to detail his efforts to preserve, collect, and search potentially responsive data and locations that may contain such materials.  By his own admission, Defendant Giuliani has never searched for and is refusing to produce any materials responsive to

---

[1] Pursuant to Local Civil Rule 7(m), before Plaintiffs filed this Motion, counsel for Plaintiffs notified counsel for Defendant of Plaintiffs' intention to file this Motion in the Joint Status Report filed on April 10, 2023.  Joint Status Report, ECF No. 44 ("JSR") at 1, 13-14.

two (of four) sets of Plaintiffs' Requests for Production ("RFPs"), namely his phone records and financial-related information. As to all four sets of Plaintiffs' RFPs, Defendant Giuliani does not appear to have ever engaged in a collection (professional or otherwise) of all potential sources of responsive information. Defendant has not confirmed whether he has ever searched any of his own email accounts or engaged in any search of any of his text message or messaging applications, including those which he admits to having used to talk about his efforts to overturn the 2020 presidential election. He is, instead, relying entirely on (1) a self-described "manual search" of certain undefined "social media" that resulted in one document and his "new devices"; (2) an under-inclusive and arbitrarily limited search of a database that contains an *unknown* set of records from an *unknown* set of devices; and (3) documents collected and produced before Plaintiffs issued any of the discovery requests and in response to document subpoenas issued in other litigation and proceedings. Defendant Giuliani's decision to opt out of meaningfully participating in the discovery process violates the Federal Rules and the Court's March 21, 2023 Minute Order ("March 21 Order"), and necessitates the Court entering the relief Plaintiffs respectfully request herein.

## BACKGROUND

Since the March 21 Order directing Defendant Giuliani to "complete searches and production of responsive records to plaintiffs' RFPs," Defendant produced a single, one-page social media communication as the only document directly responsive to Plaintiffs' requests, bringing the total number of such documents to 194. Defendant Giuliani now refuses to engage in any further search. March 21 Order; *infra* at 18–23. As detailed in the exhaustive history below and based on Plaintiffs best-faith effort to surmise, the totality of Defendant's searches and productions to date are comprised of:

- A manual search by Defendant Giuliani (apparently between March 21 and April 5, 2023)

of an unknown set of social media available on his "new devices" records, which resulted in the single page of direct messages, *infra* at 12;

- A manual search (apparently between March 21 and April 5, 2023) of unknown "new devices" that he claims yielded no non-privileged responsive records and that the only privileged records located were records created for this case, *infra* at 12, 22;

- A production of 126 emails and fifty-one blank documents that his counsel determined to be responsive from a purported search for emails responsive to two (of four) sets of Plaintiffs' RFPs from devices seized and stored in a TrustPoint server, *infra* at 8;

- A production of 16 documents of material that his counsel determined to be responsive, mostly consisting of filings in other lawsuits and documents purportedly related to the seizure of Defendant's devices;

- A production of 1,269 documents that he produced in response to requests in other litigation and to the United States House of Representatives' Select Committee to Investigate the January 6th Attack on the United States Capitol ("January 6th Committee") prior to April 2021 that were not the result of a search of his electronic media and were presumably searched before Plaintiffs served discovery in this case;

- A production of 264 additional documents on April 4, 2023, that also appear to have been collected in response to requests in other litigation and to the January 6th Committee prior to April 2021 that were not the result of a search of Defendant's electronic media and were presumably searched before Plaintiffs served discovery in this case.

Defendant Giuliani has admitted to using multiple devices (at least two cell phones), email accounts (including rhelen0528@gmail.com, rudolphgiuliani@icloud.com, and RudyGiuliani@me.com), text messaging, and messaging applications (including Signal, Telegram, and WhatsApp), and social media accounts (including Twitter) in his effort to overturn the 2020 presidential election.  Declaration of Meryl C. Governski ("Governski Decl."), Ex. 7 at 17:14–19; 21:5–11; 22:24–25:6.; Governski Decl., Ex. 11 at 20.  To date, Defendant Giuliani appears to have never searched all of his (1) email accounts to which he may have personal access, including in the Cloud; (2) text messages; or (3) text messaging applications (such as Signal, Telegram, or WhatsApp).  He has never engaged a professional vendor or attempted to engage in a wholesale collection of all of the repositories of information to which he has actual or practical

access.  Despite Plaintiffs seeking this information for more than eight months, Defendant Giuliani has never provided Plaintiffs or the Court with an explanation of the steps (if any) he has taken to preserve responsive materials or to search the full universe of repositories or records potentially responsive to Plaintiffs' requests within his possession, custody, or control.

A.    **Plaintiffs Served Discovery On Defendant Giuliani Nearly One Year Ago And Have Unsuccessfully Attempted Since To Secure His Compliance.**

Plaintiffs filed this lawsuit in December 2021 to hold Defendant Giuliani accountable for orchestrating a conspiracy to accuse them of engaging in election fraud in the 2020 presidential election when they served as election workers in Fulton County, Georgia.  Defendant Giuliani publicly and widely falsely accused Plaintiffs of, for example, hiding illegal ballots in suitcases, orchestrating a plan to kick out Republican election observers in order to count the illegal ballots (including by inventing claims of a water leak), counting ballots for President Joseph Biden multiple times, and passing around a flash drive to hack vote-counting machines.  *See* Am. Compl., ECF No. 22 ("Amended Complaint") ¶¶ 57–101.[2]  Officials in Georgia publicly and definitively debunked Defendant Giuliani's statements within twenty-four hours of their original publication, but he nevertheless continued to repeat the same, false accusations.  *See id.* ¶¶ 7, 19–20, 30–32. Defendant Giuliani's strategic defamatory campaign subjected Plaintiffs to violent and racist threats and harassment and has destroyed their personal and professional reputations and physical and emotional well-being.

Plaintiffs filed the operative Amended Complaint on May 10, 2022, and first served discovery on Defendant Giuliani ten days later, in the form of their First Set of Requests for Production ("First RFPs") and First Set of Interrogatories.  Governski Decl., Ex. 1; Ex. 11 at 5.

---

[2] All paragraph citations are to the operative Amended Complaint unless otherwise specified.

Defendant Giuliani served his responses and objections ("R&Os") to the First RFPs and First Set of Interrogatories on June 28, 2022, and provided a forty-nine-page privilege log. Defendant's counsel informed Plaintiffs' counsel that all of Defendant Giuliani's electronic devices had been seized by the Department of Justice and were in the physical possession of a Special Master with whom it might be possible to coordinate a search for records on those devices via TrustPoint. Governski Decl., Ex. 2 at 4. Defendant Giuliani's counsel separately represented that he would produce documents that had been collected and produced (presumably before Plaintiffs served discovery in this case) in response to requests for production received in *US Dominion Inc. v. Giuliani*, No. 1:21-cv-00213-CJN (D.D.C) ("*Dominion* Documents")—a defamation lawsuit concerning statements Defendant Giuliani and others made about the voting machine company and its equipment. *Id.* The forty-nine-page privilege log had been prepared in response to the same. The documents also purportedly included all documents produced to the January 6th Committee. *Id.* Defendant Giuliani produced 1,269 of the *Dominion* Documents on July 12, 2022, which reflected his first and only substantial document production to date.

After numerous attempts to confer, Plaintiffs' counsel sent a twenty-five-page deficiency letter on August 5, 2022 detailing the insufficiency of the *Dominion* Documents as a response to the First RFPs, requesting information about a search that resulted in the *Dominion* Documents (including the repositories searched), and explaining why many of the privilege assertions appeared improper. ECF No. 36-1 Ex. A. Plaintiffs requested "a detailed explanation for how Defendant Giuliani attempted to and/or intends to comply with his discovery obligations in this case, including but not limited to: the complete list of all of Defendant's likely repositories of responsive information, including his devices, email, social media, and communications accounts; his collection methodology; his search methodology; the discovery vendor; and search terms by

August 12, 2022." *Id.* Plaintiffs also asked Defendant Giuliani to "detail in writing the specific devices, email, social media, and communications accounts, any and all online/cloud-based accounts or back-ups, and any other materials that the DOJ seized" and if he has "direct access to any repositories likely to contain responsive information, including but not limited to those materials seized, confirm and detail in writing (1) which repositories those are, (2) whether the contents of those repositories were collected, searched, and/or produced in Defendant's First Production and, if not, confirm that Mr. Giuliani will do so consistent with his discovery obligations in this case." *Id.* Plaintiffs simultaneously served their Second Set of Requests for Production ("Second RFPs"), Second Set of Interrogatories, Governski Decl., Ex. 11 at 20, and First Set of Requests for Admission, and proposed search terms to assist with Defendant's review of the First and Second RFPs.

On August 19, 2022, Defendant Giuliani's counsel explained via email that the collection for the *Dominion* Documents did not occur "until after the FBI seized Mr. Giuliani's electronic devices" and was not the result of any search terms applied to any of his client's devices or email accounts (including available in the Cloud). Governski Decl., Ex. 3 at 3. The *Dominion* Documents were drawn *only* from (1) "paper files at his apartment in NYC" that "were reviewed for responsiveness to discovery requests" in *Dominion* and from the January 6th Committee and imaged; (2) files included in Defendant Giuliani's various bar-grievance hearings; and (3) an unknown set of documents collected from two third parties, Christianne Allen (Defendant Giuliani's former public relations professional) and Christina Bobb (who volunteers to work with Defendant Giuliani on his efforts after the 2020 election). Defendant Giuliani's counsel confirmed that the seized electronic devices had been returned to his client's possession, and "Now that we have those devices, we will perform searches in accordance with the search terms you have

requested."  *Id.* (for recent devices, counsel represented that "we are in the process of searching those").  He also confirmed that Defendant Giuliani was "determining what we still have access to as far as icloud, email accounts, etc. we have access to that would have information from the relevant time frame."  *Id*.

On September 30, 2022, Defendant Giuliani's counsel reported that "there were over 50,000 documents" in TrustPoint that hit on the search terms Plaintiffs provided in response to the First and Second RFPs and that a more limited search of records between November 2020 and April 2021 yielded "18,000 documents" that would take "several weeks to be reviewed by a team of 7-10 reviewers."  Governski Decl., Ex. 4 at 10.  The parties agreed to limit the relevant time period to September 1, 2020 to January 21, 2022 (nine days after the date of Defendant Giuliani's most recent defamatory statement).  The parties also separately conferred regarding Defendant Giuliani's interrogatory responses, which his counsel agreed would be amended to include all of the modes of communication used to communicate about claims of election fraud and a detailed explanation about his discovery vendor's suggested approach for collecting Defendant Giuliani's email and other accounts.  Governski Decl., Ex. 4 at 4–5.  On October 11, 2022—less than two weeks after representing that Defendant would need to hire seven to ten reviewers to spend weeks reviewing documents—Defendant Giuliani's counsel told Plaintiffs' counsel that about "400 documents have been identified in the universe of documents held by TrustPoint One that are emails that are responsive to your search hits."  Governski Decl., Ex. 4 at 3–4.  In response to requests for clarification on how the universe of responsive documents had narrowed so dramatically, Defendant Giuliani's counsel responded that he was not "entirely sure" but would try to find out.  Governski Decl., Ex. 4 at 2.

Defendant made three limited document productions in October 2022, which brought the

total number of documents collected and produced specifically in response to Plaintiffs' First and Second RFPs to 193: (1) 16 documents and a supplemental privilege log that Plaintiffs understand was a narrowed version of the forty-nine-page privilege log; (2) additional documents totaling twenty-four pages that were duplicative of documents already included in the *Dominion* Documents; and (3) 177 documents from TrustPoint, fifty-one of which were blank.[3]  Plaintiffs promptly raised that Defendant's discovery to date was deficient.  ECF No. 36-2 Ex. B.  Plaintiffs subsequently served additional discovery, including: their Third Set of Interrogatories; their Third Set of Requests for Production ("Third RFPs"), Governski Decl., Ex. 1, which contained one request for "Mobile phone records sufficient to show all phone number and providers You used between December 1, 2020 and January 31, 2021 and all Documents, including mobile phone billing records, showing the calls You made or received between December 1, 2020 and January 31, 2021 relating to Your Claims concerning Plaintiffs"; and their Fourth Set of Requests for Production ("Fourth RFPs"), Governski Decl., Ex. 1, which contained two requests, both seeking financial materials.[4]

---

[3] The 193 varies from the previously reported 194 (ECF No. 37) because Plaintiffs have since realized that the second category of documents were duplicative of the previously produced *Dominion* Documents.  As the Court observed during the March 20, 2023 discovery hearing, 194 documents "does seem to be fairly small . . . based on the length of time, the amount of public statements that were made, and so on, in connection with the claims in this case."  March 21 Hearing Tr. at 8:18–21.

[4] RFP 40 asked for "Documents sufficient to show Your yearly income since 2018 and Your current net worth, including but not limited to Your tax returns for the years 2018 through 2021, all periodic statements from January 1, 2018 to the present date for all Your checking accounts, and all Your other accounts, including but not limited to savings accounts, money market funds, mutual fund accounts, hedge fund accounts and certificates of deposit, regardless of whether or not the account has been closed, including those held jointly with another person or entity, all insurance policies on Your life which are presently in force whether owned by you or any corporation in which You are an officer, director or stockholder or employee, copies of all applications for credit or loans from any bank, credit union, lending institution, issuer of credit cards and any related financial statements prepared by or on Your behalf since January 2018, copies of any corporate tax returns for all corporations in which You were or are a stockholder

In late December 2022, Defendant's counsel explained that he could not confirm and detail Defendant Giuliani's preservation efforts, but that Defendant Giuliani had made no effort to personally search his email accounts, computers, personal phones, social media accounts, messaging applications, or other electronic devices for documents responsive to Plaintiffs' discovery requests. Governski Decl., Ex. 5 at 2. Based on the understanding that Defendant's counsel would attempt to complete all productions ahead of Defendant's deposition and that any deposition would be held open subject to a search and production if that did not occur, Plaintiffs scheduled Defendant Giuliani's deposition, which ultimately occurred on March 1, 2023. *Id.* Defendant Giuliani did not provide any additional documents before his deposition.

Defendant Giuliani confirmed during his deposition that he used multiple phones, email addresses, and messaging applications in the months following the 2020 presidential election. Governski Decl., Ex. 7 at 17:14–19; 21:5–11; 22:24–25:6; Ex. 11 at 20–21. He claims to have taken "a quick look" for responsive material on message platforms and some of his devices but did not "know" if that look related to "this case" or if he "lumped a group of cases together." Governski Decl., Ex. 7 at 25:19–26:8; 26:20–27:7. As far as searching the devices seized by the FBI in April 2021 after they were returned, Defendant Giuliani has claimed they were "wiped out" when he received them back and any search of them "hasn't helped because…I can't get anything off" of those devices. *Id.* at 391:23–392:11.

On March 3, 2023, Plaintiffs' counsel again detailed Defendant Giuliani's discovery

---

during any part of the years 2018 through present, copies of any partnership tax returns filed by You or on Your behalf since December 2018, and financial statements." RFP 41 asked for "All filings in *Judith S. Giuliani v. Rudolph Giuliani*, Docket No. 350019/2018 (N.Y. Sup Ct. Aug 31, 2018) and all filings related to the enforcement of the terms of the settlement agreement nreached in *Judith S. Giuliani v. Rudolph Giuliani*, Docket No. 350019/2018 (N.Y. Sup Ct. Aug 31, 2018), including, but not limited to, Judith S. Giuliani's lawsuit filed in the Supreme Court of the State of New York in or around August 2022." Governski Decl., Ex. 1.

deficiencies, including his failure to complete productions of documents, and served additional discovery. Governski Decl., Ex. 8 at 2.  Receiving no substantive response, Plaintiffs sought judicial intervention, which resulted in a discovery hearing on March 21, 2023 and the subsequent March 21 Order.  *See* Minute Entry for Proceedings Held Before Judge Beryl A. Howell, March 21, 2023; March 21 Order.[5]

### B.     The Court's March 21 Order Directed Defendant Giuliani To Fulfill His Discovery Obligations, Which He Has Still Failed To Do.

The March 21 Order directed the parties as follows:

(1) by March 24, 2023, plaintiffs shall provide defendant with supplemental interrogatories, as discussed at the hearing;

(2) by March 24, 2023, defendant shall (a) submit notice to the Court describing in specific terms the data on the "Trust Point" database that were searched in response to plaintiffs' Requests for Production (RFPs), including date range and contents (e.g., social media accounts, text messages, and communications on other messaging platforms, such as Signal, Telegram, etc.); (b) what locations and data sources remain for searches to be completed to respond fully to plaintiffs RFPs; (c) provide updated complete responses to plaintiffs' Requests for Admission 82, 83, and 90; and (d) provide updated initial disclosures to plaintiffs, pursuant to Federal Rule of Civil Procedure 26(a);

(3) by March 30, 2023, defendant shall (a) complete searches and production of responsive records to plaintiffs' RFPs; (b) provide responses in full to plaintiffs' supplemental interrogatories; and

(4) by April 10, 2023, the parties shall jointly submit a status report apprising the Court on their progress in resolving their discovery disputes, clarifying whether plaintiffs intend to file any motion to compel and, if so, proposing a briefing schedule for any motion to compel.

March 21 Order.

---

[5] Plaintiffs have sought discovery from various third parties—including Christina Bobb, Bernard Kerik, Phil Waldron, Katherine Friess, Jenna Ellis, Mark Serrano, Jacki Pick, Sidney Powell, and Maria Ryan—the majority of whom have delayed and/or refused to produce any documents.

Pursuant to the March 21 Order, on March 24, 2023, Plaintiffs requested that Defendant supplement his responses to nine of their original interrogatories.[6]   The same day, Defendant Giuliani provided updated initial disclosures, which did not include all of the individuals on whom, during his deposition, Defendant Giuliani claimed to have relied and included anonymous groups of people including "Unknown Associates of Burt Jones" and "Unknown GOP Operatives." Governski Decl., Ex. 9 at 4, Ex. 10 at 20.  Defendant Giuliani's counsel confirmed that these amended initial disclosures disclosed all persons likely to have relevant evidence that he may  "use to support its claims or defenses."  Governski Decl., Ex. 10 at 2.  Defendant Giuliani since updated his disclosures to eliminate the anonymous individuals.  Governski Decl., Ex. 13 ("Amended Disclosures.")

On March 24, 2023, Defendant Giuliani filed a notice with the Court, ECF 40 ("March 24 Notice"), which does not (a) provide "in *specific terms* the data on the 'Trust Point' database that were searched in response to plaintiffs' Requests for Production (RFPs), including date range and contents (e.g., social media accounts, text messages, and communications on other messaging platforms, such as Signal, Telegram, etc.); [and] (b) what locations and data sources remain for searches to be completed to respond fully to plaintiffs RFPs."  *See* March 24 Notice; *see also* March 21 Order; March 21 Hearing Tr. at 22:21–23 (instructing Defendant Giuliani to "find out *precisely* what was put on that database and *precisely* what was searched, and what wasn't") (emphases added), 46:18–23 (instructing defense counsel to "report in a submission to this Court . . . *precisely* what information is on the TrustPoint database in terms of particular file formats . . . in terms of time and subject matter, whether it's just everything or whether they've only put up

---

[6] Plaintiffs also provided Defendant with five new interrogatories, and Defendant Giuliani provided updated responses to Plaintiffs' Requests for Admission Nos. 82, 83, and 90.

certain refined file extensions, or within a particular time frame all cabined by the search warrant return") (emphasis added).  The March 24 Notice concedes that TrustPoint includes some set of non-email files (including text and messenger files), but that Defendant Giuliani has never searched those files and instead only searched for email extensions among some set of undefined email accounts.  *Id.* at 1.

On March 30, 2023—the date by which he was required to "complete searches and production of responsive records to plaintiffs' RFPs"—Defendant Giuliani provided a "supplemental production consisting of the social media messages that Giuliani reports to have found responsive to Plaintiffs' requests" which consisted of a single page with images of what appear to be five direct messages from Sidney Powell on Twitter.  Governski Decl., Ex. 11 at 4. Accordingly, the total number of documents that Defendant has collected and produced specifically in response to Plaintiffs' RFPs to date is 194.  In addition, Defendant Giuliani's counsel confirmed that he had not engaged in any additional searching in TrustPoint (or presumably the "wiped" devices that have been in his possession since August 2022) and would not unless Plaintiffs paid for it, writing:

> The TrustPoint documents have been archived.  Giuliani will have to pay
> considerable fees to have the documents unarchived and searched for additional
> files (and it does not appear the original seized devices are searchable or contain
> the data any longer).  Given the paucity of his text messages and other messaging,
> he is requesting that Plaintiffs pay for any further searches on this data.

Governski Decl., Ex. 11 at 2.  Defendant Giuliani claims to have "conducted searches pursuant to the search terms for RFP sets 1 and 2" on "new devices" and reported that he "has no non-privileged responsive documents" and all the privileged responsive documents "were created as a result of the instant litigation."  *Id.*  Defendant Giuliani refused to produce any materials responsive to the Third or Fourth Sets of RFPs, stating that "he does not have phone records, but will execute whatever release is necessary to obtain the phone records" and "stands on his objections to RFP

set 4." *Id.* Finally, Defendant Giuliani represented that there is "no email address or website for Giuliani Communication," that the "only remaining employee with a Giuliani partners email appears to be Maria Ryan, who [Plaintiffs] subpoenaed," and that he no longer has access to any of his employees' emails. *Id.*[7] Defendant also provided supplemental answers to the original interrogatories Plaintiffs identified, including by responding identically to Interrogatory Nos. 11 and 12 by invoking attorney-client privilege and making the vague statement that he "generally recalls that he was made aware of the video the night before the hearing before the Georgia Senate Election Hearing on December 3, 2020." Governski Decl., Ex. 11 at 26–27.

Plaintiffs sent Defendant Giuliani a letter on April 4, 2023, detailing their position that Defendant Giuliani failed to comply with the March 21 Order. Governski Decl., Ex. 12. The next day, Defendant produced an additional 263 documents, presumably which were part of the *Dominion* Documents and later determined not to be privileged by the Trump Campaign. The 263 documents are predominantly comprised of court filings by the Trump Campaign in states other than Georgia, claims about voting machines and election hacking, claims about Hunter Biden and Robert Biden, and random documents, including a Costco receipt for groceries purchased from Pentagon City. On April 10, 2023, Defendant produced one additional, irrelevant document and a third privilege log from the Trump Campaign.

On April 10, the parties filed their Joint Status Report on the state of discovery, in which Defendant Giuliani concedes that he has not personally searched any of the text messages, or messaging applications, the devices previously seized, or any of the documents maintained in

---

[7] On March 29, 2023, Plaintiffs wrote Defendant's counsel to confirm whether his forthcoming production would capture records from Giuliani Partners, LLC and/or Giuliani Communications, LLC, as Plaintiffs' understanding is that Defendant has possession, custody, or control of those records.

TrustPoint to which he otherwise has access since the March 21 Order.  JSR at 11–12.  Defendant

Giuliani also admitted that he has not engaged in another search of TrustPoint and that he will

not produce records responsive to the Third or Fourth Sets of RFPs.  JSR at 12.[8]  To date,

Defendant still has yet to provide details that Plaintiffs first requested in August 2022, including

whether and which repositories of information Defendant Giuliani has searched (and how), and

what exactly is included in the TrustPoint database, such as the specific email accounts it

includes, whether it includes all emails or a set limited to a certain search warrant, and whether

there are other non-email extensions to be searched.

## **LEGAL STANDARD**

Rule 37(a) authorizes a party to move to compel when another party fails to cooperate in

discovery, including by failing to comply with a court order or providing an "evasive or

incomplete" answer to an interrogatory submitted under Rule 33.  Rule 37(e) provides for certain

forms of relief when a party "fail[s] to take reasonable steps to preserve" electronically stored

information "that should have been preserved in the anticipation or conduct" of litigation.  Under

the Federal Rules, "the presumption is that the responding party must bear the expense of

complying with discovery requests" including when discovery is stored electronically.  *Peskoff v.

Faber*, 251 F.R.D. 59, 61 (D.D.C. 2008) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S.

340, 358 (1978)).

When a party fails to obey a discovery order, Rule 37(b) authorizes the Court to "issue

further just orders," including the imposition of sanctions such as "directing that the matters

embraced in the order or other designated facts be taken as established for purposes of the action,"

---

[8] Defendant states in the JSR that he "does not have his phone records but does not and has not objected to a subpoena for Plaintiffs to obtain them."

"prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," or "treating as contempt of court the failure to obey" an order.  Fed. R. Civ. P. 37(b)(2)(A); *see also Perry v. Sera*, 623 A.2d 1210, 1216 (D.C. 1993) (observing that "Rule 37(b) provides comprehensively for sanctions for failure to obey discovery orders") (quoting 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2289 (1970 and 1992 Supp.)).  When a court grants a motion to compel, "the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless certain circumstances exist.  Rule 37(a)(5)(A) (emphasis added);[9] Rule 37(d)(1)(3); *see also Alvarado v. Rainbow Inn, Inc.*, 312 F.R.D. 23, 33 (D.D.C. 2015). Additionally, courts possess "broad discretion to impose sanctions for discovery violations under Rule 37."  *Wilson v. On the Rise Enters., LLC*, No. 16-2241 (BAH), 2019 WL 399821, at *3 (D.D.C. Jan. 30, 2019) (Howell, J.) (quoting *Parsi v. Daioleslam*, 778 F.3d 116, 125 (D.C. Cir. 2015)); *see also Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, 223–30 (D.D.C. 2015) (imposing sanctions on plaintiff where plaintiff produced the bulk of discovery after the discovery deadline had already passed); *Campbell v. Nat'l R.R. Passenger Corp.*, 309 F.R.D. 21, 24–25, 28–29 (D.D.C. 2015) (imposing monetary sanctions under Rule 37(d) where plaintiffs repeatedly canceled and rescheduled noticed depositions on short notice); *DL v. District of Columbia*, 251 F.R.D. 38, 48 (D.D.C. 2008) (ordering defendant "to certify to the court that it has responded fully to all document requests and that no other

---

[9] The circumstances are that "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."

responsive documents exist as of the time of certification").

Separate from Rule 37, courts have an "inherent power at common law to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments."  *Parsi*, 778 F.3d at 131 (internal citations omitted).  Sanctions "have been entrusted to the district courts to enable district judges to discharge efficiently their front-line responsibility for operating the judicial system."  *Walls v. Paulson*, 250 F.R.D. 48, 50 (D.D.C. 2008) (internal citations omitted).[10]

## ARGUMENT

**I.     THE COURT SHOULD COMPEL DEFENDANT GIULIANI TO COMPLY WITH HIS DISCOVERY OBLIGATIONS AND THE MARCH 21 ORDER.**

### A.     The Court Should Compel Defendant Giuliani To Detail His Preservation Efforts To Date.

To date, Defendant Giuliani (personally or via counsel) has failed to articulate any specific steps he has made to preserve what he "knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request."  *Mahaffey v. Marriott Int'l, Inc.*, 898 F. Supp. 2d 54, 60 (D.D.C. 2012); *see* Fed. R. Civ. P. 37(e).[11]  As discussed

---

[10] The relief Plaintiffs seek in this Motion is narrow, while recognizing that the Court in its discretion may enter additional forms of relief, including sanctions.  Plaintiffs reserve all rights relating to seeking expanded forms of relief in the future.

[11] *Palmieri v. United States*, 72 F. Supp. 3d 191, 215 (D.D.C. 2014) (Rule 26 imposes implicit duty to preserve relevant documents and records), *aff'd*, 896 F.3d 579 (D.C. Cir. 2018); *DL*, 251 F.R.D. at 47–48 (D.D.C. 2008) ("While a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.") (internal citation omitted).

above, Defendant Giuliani has admitted to using multiple cell phones, email accounts, social media accounts, text messaging, and messaging applications in his effort to overturn the 2020 presidential election. Governski Decl., Ex. 7 at 17:14–19; 21:5–11; 22:24–25:6.; Ex. 11 at 20–21. Despite Plaintiffs' repeated requests for confirmation of the steps Defendant Giuliani has taken to preserve relevant and responsive materials, he has failed to provide any such confirmation or any sufficient detail about the specific steps he has taken, other than to tell Plaintiffs that he assumes that any steps to preserve documents have been undertaken by TrustPoint. Governski Decl., Ex. 7 at 391:14–22. Nor has Defendant identified all of the devices or accounts (including but not limited to email, social media, text messages, or messaging accounts) to which he has or has at any point had actual and practical access[12] or which are located in TrustPoint, despite Plaintiffs' requests seeking, and the Court ordering, the detailing of such information. *See* Governski Decl., Ex 11 at 20–21; March 21 Order. It is well within the Court's discretion, under Rule 37 or inherently, to compel Defendant Giuliani to detail his preservation efforts to date, to explain if, why, and when any such access to any repositories of documents, whether physical or electronic, ceased to exist, and to take all necessary steps to promptly preserve his documents. *See, e.g.*, *DL*, 251 F.R.D. at 48 (ordering party to certify to the court that it has responded fully to all requests and that no other responsive documents exist). Plaintiffs respectfully request that the Court order Defendant Giuliani to do so within five (5) days of granting this Motion to prevent any further delay or prejudice.

---

[12] *See, e.g.*, *In re Barnwell Enters.*, 265 F. Supp. 3d 1, 16 (D.D.C. 2017) (FRCP 34 only requires that a party have "the right, authority, or practical ability to obtain the documents."); *Owens v. Republic of Sudan*, 333 F.R.D. 291, 295–96 (D.D.C. 2019) (requiring compliance with discovery where a party had the practical ability to obtain documents at issue).

**B.    The Court Should Compel Defendant Giuliani Complete Searches And Production Of All Responsive Materials To All Of Plaintiffs' RFPs, As The Court Ordered on March 21, At His Own Expense.**

In the March 21 Order, the Court ordered that Defendant Giuliani "shall" *inter alia* "complete searches and production of responsive records to plaintiffs' RFPs" and "submit notice to the Court describing" the specific data contained in TrustPoint and its "date range and contents (e.g., social media accounts, text messages, and communications on other messaging platforms, such as Signal, Telegram, etc.)" and "what locations and data sources remain for searches to be completed to respond fully to plaintiffs RFPs."  March 21 Order.  Despite the Court's Order, Defendant Giuliani has not performed (let alone completed) "searches and production of responsive records" to Plaintiffs' RFPs for all materials in his possession, custody, or control. Defendant admitted that he has not and will not search or produce any materials responsive to two of Plaintiffs' sets of RFPs.  *Supra* at 10–14.  As to the other two sets of RFPs (which comprise the majority of Plaintiffs' served discovery), Defendant Giuliani's communications to date indicate that he has not engaged in and will not perform a comprehensive search for all materials in his possession, custody, or control, including items potentially accessible in the Cloud such as text messages, text messages applications, and email accounts.  *Supra* at 10–14.  Defendant instead is relying primarily on the existing and admittedly under-inclusive search of only email extensions in TrustPoint and is refusing to detail those efforts and sources or to engage in any further search within TrustPoint unless Plaintiffs pay for it, which contravenes the March 21 Order and the Federal Rules.  *Supra* at 12–13.  The law, and the March 21 Order, requires far more.  *See* Fed. R. Civ. P. 26(b)(1) (a party must produce documents "regarding *any* nonprivileged matter that is relevant to *any* party's claim or defense and proportional to the needs of the case") (emphasis added); *DL*, 251 F.R.D. at 47 (finding defendant's performance of its discovery obligations to be "completely inadequate" where "responses to plaintiffs' document requests have been incomplete

and its objections to production almost exclusively unfounded"); *Cobell v. Babbitt*, 37 F. Supp. 2d 6, 39–40 (D.D.C. 1999) (sanctions where party failed to obey document production order); *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 70, 89 (D.D.C. 2003) (sanctions where party failed to obey injunctive order).

> 1.   <u>Defendant Giuliani refuses to engage in a search for or produce any materials responsive to the Third and Fourth Set of RFPs.</u>

Defendant Giuliani must but has failed to search for or produce *all* records in his possession, custody, or control, which the law defines as those that he has the "right, authority, or practical ability to obtain." *See infra* at 21–23; *United States v. All Assets Held at Bank Julius Baer & Co., Ltd., Guernsey Branch, Acct. No. XXXXXX in Name of Pavlo Lazarenko*, No. CV 04-798 (PLF/GMH), 2018 WL 8867711, at *9 (D.D.C. Jan. 19, 2018) (litigant may not "sit on his hands" in response to RFPs and "Rule 34 requires the responding party to produce records that are in his possession, custody, or control"); *Kifle v. Parks & Hist. Ass'n*, No. CIV.A. 98-00048 (CKK), 1998 WL 1109117, at *1 (D.D.C. Oct. 15, 1998) ("By bringing within its ambit those parties that have "'control' over documents, Rule 34(a) minimizes the importance of actual possession."); *see also CFTC v. McGraw-Hill Cos.*, 390 F. Supp. 2d 27, 31 (D.D.C. 2005) ("The general rule in legal actions is to favor broad disclosure."). Defendant Giuliani is categorically refusing to produce any documents in response to the Third and Fourth RFPs, despite having responsive materials in his possession, custody, or control.

As far as his phone records, Defendant Giuliani impliedly admits that it is possible to obtain them, including from the provider itself, but refuses to do so and, instead, is insisting that *Plaintiffs* issue a third-party subpoena to do so. JSR at 12 (Defendant "does not have his phone records but does not and has not objected to a subpoena for Plaintiffs to obtain them"). Defendant Giuliani provides no basis for his refusal to produce materials to which he has actual or practical access,

nor has he (or can he) claim that obtaining his phone records would constitute *any* burden.  *Id.*  Plaintiffs have no obligation to assume Defendant's discovery duties to obtain responsive information that is reasonably accessible to him.  *See generally* Fed. R. Civ. P. 26.[13]

Defendant Giuliani also has failed to provide any colorable basis to refuse to search for or produce any documents in response to RFPs 40 and 41, which are directly relevant to and probative of his ability to satisfy a damages award.  *First*, contrary to Defendant's claim that the evidence sought in RFPs 40 and 41 is only relevant to the issue of punitive damages, evidence of Defendant Giuliani's financial condition before and after his defamatory statements is also relevant to Defendant Giuliani's motives.  *See Dershowitz v. Cable News Network, Inc.*, No. 20-61872-CIV, 2022 WL 2662352, at \*3 (S.D. Fla. June 15, 2022).  *Second*, with respect to relevance to punitive damages, the majority rule (as is acknowledged in the opinion that Defendant Giuliani cited in support of his position, *D'Onofrio v. SFX Sports Group*) is to "permit pretrial discovery of financial information of the defendant without requiring plaintiff to establish a *prima facie* case on the issue of punitive damages."   247 F.R.D. 43, 52 (D.D.C. 2008) (quoting *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.,* 130 F.R.D. 149, 151–52 (D. Kan. 1990)); *see also Pietrangelo v. Refresh Club, Inc.,* No. 18-CV-1943-DLF-ZMF, 2021 WL 1209300, at \*10 (D.D.C. Mar. 31, 2021) (explaining that discovery into damages is relevant), *aff'd*, No. 18-CV-1943 (DLF/ZMF), 2021 WL 2156504 (D.D.C. May 26, 2021).

Despite the March 21 Order, Defendant Giuliani admits to having failed to search for or produce materials in his possession, custody, or control responsive to the Third and Fourth RFPs.

---

[13] That Plaintiffs are in the process of serving such third-party subpoena(s) does not waive any objection to or concede the appropriateness of the demand by Defendant Giuliani that Plaintiffs do so.

The Court is well within its discretion to order him to do so.

> 2. Defendant Giuliani has not engaged in a comprehensive search for or production of all materials in his possession, custody or control.

Defendant Giuliani admits to having used various methods of communication to discuss topics relevant to this litigation, including multiple email accounts (rhelen0528@gmail.com, rudolphgiuliani@icloud.com, and RudyGiuliani@me.com), text messages, and messaging applications like Signal, Telegram, and WhatsApp. *See supra* at 16–17. Even Defendant's own muddled description of his discovery "efforts" to date reflect that he has never engaged in his own comprehensive search of any of those sources of data, even though they presumably are stored in the Cloud. Despite his counsel's representation in August 2022 that he would look into what accounts "as far as iCloud, email accounts, etc. we have access to that would have information from the relevant time frame," Defendant Giuliani has never confirmed whether or explained why he could not access the accounts himself and by requesting assistance of the provides or a third-party vendor.[14] Governski Decl., Ex. 3. Defendant Giuliani must, but will be unable to meet "the burden of showing why" he should be exempt from the discovery obligations of searching for and producing all materials in his possession, custody, or control. *Alexander v. FBI*, 193 F.R.D. 1, 3 (D.D.C. 2000) (cleaned up and internal citations omitted).[15]

The Court should reject any attempt by Defendant Giuliani to claim that the *Dominion* Documents and his two "manual" searches post-dating the March 21 Order are sufficient. As to the *Dominion* Documents, Defendant Giuliani has admitted that his devices were seized *before*

---

[14] At the March 21 Discovery Hearing, Defendant Giuliani claimed to have lost access to "my prior email account" but did not make the representation as to *all* of his accounts or provide any specificity, including what account he purported could not access, when he lost access, why he lose access, or whether he could seek access. March 21 Hearing Tr. at 20:22–21:1.

[15] Nor can Defendant Giuliani rely on his purported objections to the First and Second Set of RFPs as a failure to produce, because he did not object to them on relevance grounds.

Plaintiffs ever served discovery in this matter and so he could not have engaged in any search of devices for materials responsive to *Plaintiffs'* discovery requests before then. *Compare* JSR at 6 (seized in April 2021), *with* Ex. 11 at 5–12. And during his deposition, Defendant Giuliani testified that he could not have searched those devices after they were returned because they were "wiped." Governski Decl., Ex. 7 at 391:23–392:11. The self-described universe of materials Defendant Giuliani claims to have searched and which resulted in the *Dominion* Documents—paper files that happened to remain in his apartment, materials relating to his bar disciplinary hearings, and third-party documents—admittedly does not include a comprehensive search of all sources likely to have responsive materials, including his email accounts, text messages, or messaging applications. While some of the *Dominion* Documents may incidentally touch on some materials relevant to this matter, Defendant Giuliani does not (and cannot) claim that his production of those materials alone reflects a comprehensive search or production of materials responsive to all of Plaintiffs' RFPs. As far as his "manual" searches, Defendant Giuliani claims only to have searched "new devices" and "social media," not necessarily all of his email accounts, text messages, messaging applications, or any other repositories of information that may have responsive information. Nor has Defendant ever explained how he conducted that "manual" search or why his counsel concluded (or why the Court should find) that the process was sufficiently thorough to comply with the March 21 Order or the Federal Rules.

Defendant Giuliani's purported "searches" to date appear plainly insufficient when compared to other discovery and testimony solicited in this case. By way of example, Defendant Giuliani has not produced a standalone version of the Georgia summary sheet attached to the Giuliani Strategic Plan (as defined in the Complaint), ECF No. 34-3, or related communications despite the fact that he testified that he relied on it, and that it was "available to everybody on the

Mayor's – on the President's team" and was "kept up to date every week or two weeks as we gathered new evidence or changed evidence."  Governski Decl., Ex. 7 at 279:21–23; 278:24–279:3, 281:6–17.  Defendant also has not produced the December 2020 email on which he was cc'd, which was produced to the January 6th Committee by a non-party, where the possibility was discussed of Defendant Giuliani placing phone calls to Georgia state senators regarding voter fraud allegations.  Decl. 8, 2020 Email from Bill White to Dan Scavino et al., available at https://www.govinfo.gov/content/pkg/GPO-J6-DOC-CTRL0000081085/pdf/GPO-J6-DOC-CTRL0000081085.pdf.

In sum, Defendant Giuliani has provided no basis in law or fact for why the Court should not find him in violation of the March 21 Order, including for failing to explain the specific "locations and data sources remain for searches to be completed to respond fully to plaintiffs RFPs." The Court should compel Defendant to engage a professional vendor to perform a comprehensive search and production of *all* those "locations and data" within fifteen (15) days of so an order on this Motion.  Despite having practiced law for decades and the good-faith effort of Plaintiffs to confer with his counsel *for more than eight months*, Defendant Giuliani has proven that he is not willing or committed to engage in any collection, search, or production of materials responsive to all of Plaintiffs' RFPs.

### 3.   Defendant Giuliani's TrustPoint search is insufficient in substance and insufficiently described.

The Court should reject Defendant Giuliani's attempt to limit his discovery obligations to his efforts to date, including to the search of email extensions in TrustPoint.  Defendant Giuliani admitted that his search of TrustPoint documents was limited to only emails from some (unidentified) account(s), and did not include other mediums of communications he used to communicate about events relevant to this litigation, including text messages and messaging

applications.  JSR at 7.  That admission alone warrants finding that any purported "search" of TrustPoint is insufficient to comply with the March 21 Order or Defendant Giuliani's discovery obligations.  Despite the March 21 Order, Defendant Giuliani has never specified what email accounts are located in TrustPoint, or even if the email accounts contained therein include any or all of three accounts that he admits to using to discuss relevant topics.  Again, Defendant Giuliani's failure to do so violates the March 21 Order.  Furthermore, Defendant Giuliani has never described how he decided to produce fewer than 200 documents from TrustPoint despite there being more than 10,000 documents that hit on Plaintiffs' proposed search terms for the First and Second RFPs, or to explain why his search failed to produce materials involving him that have been produced in third-party discovery or to the January 6th Committee, as discussed above.

Rather than attempt to justify his lack of compliance with the March 21 Order or his own discovery obligations under the Federal Rules, Defendant Giuliani is instead attempting to force *Plaintiffs* to pay for his own decision to avoid discovery.  JSR at 4 (asking Plaintiffs to "pay for any further searches" of TrustPoint data).  Leaving aside that Defendant Giuliani's position is in direct defiance of the March 21 Order, there is no legal basis for demanding that the costs shift to Plaintiffs, which is available "*only when inaccessible data is sought.*"  *Peskoff*, 251 F.R.D. at 61 (emphasis added).  The data sought is accessible, including ostensibly by searching Defendant's own cloud email accounts or by "unarchiving" the data.  Moreover, any extra costs that Defendant Giuliani claims would be incurred by searching the database now are of his own making: had he complied with his discovery obligations when he was initially asked (and obligated) to, no "unarchiving" would have been required.  JSR at 9.  The supposed need for payment is therefore "directly attributable to what was and was not done by [Defendant Giuliani] to preserve electronically stored information," and accordingly Defendant's own "acts and omissions shatter

any argument that the burden or expense of that forensic examination, if incurred by [Defendant Giuliani], would be 'undue.'"  *Peskoff*, 251 F.R.D. at 62.

On these facts, the Court is well within its authority to compel Defendant Giuliani to do what he should have done early in this litigation within fifteen (15) days of the Court's Order.

*** 

At a minimum, Plaintiffs respectfully request that the Court compel Defendant Giuliani to do the following, which includes what the Court already has ordered him to do: (1) hire a professional vendor to collect, search, and produce *all* responsive materials in *all* locations (whether in TrustPoint or not) in response to *all* of Plaintiffs' RFPs within fifteen (15) days of the Court's Order; and (2) provide the Court with declaration that details *all* "locations and data" used to communicate about any materials responsive to any of Plaintiffs' RFPs (including but not limited to *specific* email accounts, text messages, messaging applications, social media, devices, hardware, and any form of communication), the *specific* "locations and data" located in TrustPoint, and what searches, if any, have occurred of both of the preceding categories.  *See* March 21 Order.

### C. The Court Should Compel Defendant Giuliani To Fully Answer His Deficient Responses To Interrogatory Numbers 11 And 12.

Defendant Giuliani's responses to each of Interrogatory Nos. 11 and 12—which ask him to describe in detail how he learned of the State Farm Surveillance footage at the heart of this case—are self-evidently incomplete.   By providing boilerplate and vague responses to Interrogatory Nos. 11 and 12, Governski Decl., Ex. 11 at 24, Defendant violated the March 21 Order and the Federal Rules.  *See* March 21 Order at (1); Fed. R. Civ. P. 33(b)(3); Fed. R. Civ. P. 37 (explaining that "an evasive or incomplete disclosure, answer, or response *must* be treated as a failure to disclose, answer, or respond") (emphasis added); Fed. R. Civ. P. 26 (A party "must supplement or correct its disclosure or response" in a "timely manner"); *Paulson*, 250 F.R.D. at

50 ("A party to whom an interrogatory is propounded must provide true, explicit, responsive, complete, and candid answers.") (internal citations omitted); *Escamilla v. Nuyen,* No. 14-CV-00852-AK, 2015 WL 4245868, at *5 (D.D.C. July 14, 2015) ("Responses must be 'true, explicit, responsive, complete, and candid'"); *Lebron v. Powell,* 217 F.R.D. 72, 76 (D.D.C. 2003) (party and counsel have a duty to examine documents and make sure they do not make any "discovery responses to interrogatories or deposition answers incomplete or incorrect"); *Equal Rights Ctr. v. Post Props., Inc.,* 246 F.R.D. 29, 33 (D.D.C. 2007) (answer that is "inadequate, vague, cryptic, evasive, and completely lacking in the candid disclosure required of the party" fails to "completely and fully address the question asked of it"); *DL*, 251 F.R.D. at 48 ("One of the primary purposes of discovery is to make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible.  A party frustrates this purpose when it refuses to answer proper interrogatories.") (cleaned up, internal citations omitted). The Court should compel Defendant to fully answer Interrogatories Nos. 11 and 12 within five (5) days of granting this Motion.

## II.   THE COURT SHOULD GRANT PLAINTIFFS ADDITIONAL RELIEF AND SANCTION DEFENDANT GIULIANI.

### A.   Rule 37 Requires The Award Of Attorneys' Fees For The Costs Of This Motion, If Granted.

The Federal Rules require, upon the granting of this Motion, the entry of an order requiring Defendant Giuliani to pay Plaintiffs' reasonable attorneys' fees and costs associated with its filing. Fed. R. Civ. P. 37(a)(5)(A); *see also Parsi*, 778 F.3d at 126; *DL*, 251 F.R.D. at 49 (the language of Rule 37(a)(5)(A) "itself is mandatory, dictating that the Court must award expenses upon granting a motion to compel disclosure unless one of the specified bases for refusing to make such

an award is found to exist") (internal quotations omitted).[16]   None of the enumerated exceptions

to that rule apply here: Plaintiffs filed their motion only after "attempting in good faith to obtain

the disclosure or discovery without court action," participated in a discovery conference with the

Court which provided Defendant additional opportunity to cure deficiencies; Defendant Giuliani's

"nondisclosure, response, or objection" has not been "substantially justified"—on the contrary, he

has flagrantly violated both the Federal Rules and the March 21 Order, and no "other circumstances

make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i), (ii) (iii).  For nearly ten months,

including in the face of the March 21 Order, Defendant Giuliani has been unwavering in his

resistance to participating in even the most basic discovery and must pay for Plaintiffs' efforts to

compel his participation.

> **B.     The Court Should Preclude Defendant Giuliani From Relying On Any Evidence Not Provided In His Initial Disclosures Or Interrogatory Responses.**

The Court should preclude Defendant Giuliani from relying on witnesses or information

not provided in his Amended Disclosures, or any of his written discovery R&Os (including in his

Interrogatory and RFA responses).  *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide

information or identify a witness as required by Rule 26(a) or (e), the party ***is not allowed*** to use

that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the

failure was substantially justified or is harmless.") (emphasis added); *Dickerson v. District of

Columbia*, No. CV 09-2213 (PLF), 2019 WL 6910043, at *4 (D.D.C. Dec. 19, 2019) (noting that

a party must provide specific interrogatory responses or risk preclusion of evidence at trial);

*Williams v. Johnson*, 278 F.R.D. 10 (D.D.C. 2011) (precluding evidence where the party failed to

---

[16] Plaintiffs respectfully request permission to file the specific amount of fees upon the Court granting this relief.

provide information in discovery).  Defendant Giuliani should not be allowed to testify about conversations that he does not describe in his discovery responses and which occurred with anyone whom he does not list in his Amended Disclosures (including the individuals discussed in his deposition but whom he has refused to list in his Amended Disclosures, such as Christina Bobb and Phil Waldron).  *See* Governski Decl., Ex. 13; Ex. 7 at 388:4–25, 239:10–13.  In addition, as set forth above, *supra* at 25–26, to the extent Defendant Giuliani is not required to supplement his responses to Plaintiffs' Interrogatory Nos. 11 and 12, he should be precluded from relying upon any information bearing upon those responses that has not already been clearly identified therein.

### C.   The Court Should Impose Additional Sanctions As It Deems Appropriate.

Defendant Giuliani's conduct (or lack thereof) during discovery has prejudiced Plaintiffs. Plaintiffs have incurred significant time and expense conferring with Defendant Giuliani's counsel, including in lengthy written deficiency letters, over the course of many months.  In response, Defendant Giuliani has delayed and obfuscated at every turn.  Plaintiffs made the strategic decision to depose Defendant *without* his having complied with discovery as an effort to narrow the points of dispute, but his deposition only further demonstrated that responsive materials must exist and must be produced.  For his conduct, Plaintiffs respectfully submit that the Court should exercise its "inherent power" to protect its "institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions" it finds necessary to assess against Defendant Giuliani.  *Parsi*, 778 F.3d at 130–31 (internal citations omitted).  For example, Plaintiffs respectfully suggest, while deferring to the Court's discretion of what sanctions are appropriate, that the Court could preclude Defendant Giuliani from relying on any document, or any testimony relevant to such document, that Plaintiffs have requested but which he does not produce within fifteen (15) days of the Court's order granting this Motion.  *See, e.g.*, *McNair v. District of Columbia*, 325 F.R.D. 20, 21–22

(D.D.C. 2018) (barring party from "using at summary judgment or at trial any document"); *Shatsky*, 312 F.R.D. at 229 (precluding offending party from relying on documents requested but "untimely produced in the litigation"); *Moore v. Napolitano*, 723 F. Supp. 2d 167, 181, 183 (D.D.C. 2010) (same). The Court could also preclude Defendant from relying on documents that contradict his interrogatory responses, whether amended or not. *Paulson*, 250 F.R.D. at 54 (excluding party from using "any and all handwritten or typed notes, diaries, journals, logs, letters, memoranda and other documents" that contradict his faulty interrogatory responses.).[17]

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and compel Defendant, as set forth in the attached Proposed Order, to:

1)   Collect, search, and produce all materials responsive to all of Plaintiffs' RFPs in all locations (whether in TrustPoint or not), including a privilege log specifically tailored to the searches Defendant Giuliani performed specifically for materials responsive to Plaintiffs' RFPs, with the assistance of a professional vendor and within fifteen (15) days of the Court's Order, and bear all related costs;

2)   File a declaration subject to penalty of perjury requiring Defendant Giuliani to detail to the Court within five (5) days of the Court's Order:

   a.   All efforts taken to preserve, collect, and search potentially responsive data and

---

[17] If the Court grants the Motion and/or if Defendant Giuliani produces additional material, Plaintiffs reserve the right to seek to re-depose Defendant Giuliani (including if it exceeds the limit imposed by Rule 30) with respect to the documents and information that were not available to them at Defendant's first deposition. *See, e.g.*, *United States v. Held*, No. 13-1832 (JDB), 2019 WL 13197264, at *4 (D.D.C. June 12, 2019) (granting leave to take a second 30(b)(6) deposition where party produced significant additional discovery only after the first deposition). Plaintiffs also reserve all rights to compel a privilege log once Defendant Giuliani produces a log that catalogs documents withheld and specifically in response to Plaintiffs' requests, as the rules require. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii) (log must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."); *Jones v. Carson*, No. CV 15-310 (CKK/GMH), 2018 WL 11410070, at *5 (D.D.C. Mar. 30, 2018) ("Proponents of the privilege must give enough information so that the party seeking production of the materials in question can assess the proper applicability of the privilege.").

locations that may contain such materials;

b.   A complete list of *all* "locations and data" that Defendant Giuliani used to communicate about any materials responsive to any of Plaintiffs' RFPs (including but not limited to *specific* email accounts, text messages, messaging applications, social media, devices, hardware, and any form of communication);

c.   The *specific* "data" located in the TrustPoint database;

d.   What searches, if any, have occurred of both of the preceding categories;

3)   Supplement his responses to Plaintiffs' Interrogatories 11 and 12 to provide complete answers within five (5) days of the Court's Order;

4)   Preclude Defendant Giuliani from relying on any evidence not provided in his initial disclosures or interrogatory responses;

5)   Award Plaintiffs costs incurred for the filing of the Motion, subject to a future filing detailing the same; and

6)   Any additional forms of relief so desired by the Court, including those discussed herein.

Plaintiffs request oral argument, should the Court have any remaining questions not addressed by the briefing.

DATED:  April 17, 2023

/s/ *Meryl C. Governski*
**WILLKIE FARR & GALLAGHER LLP**
Meryl C. Governski (1023549)
Michael J. Gottlieb (974960)
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com
mgovernski@willkie.com

**WILLKIE FARR & GALLAGHER LLP**
M. Annie Houghton-Larsen
787 7th Avenue
New York, New York
Tel: (212) 728-8164
Fax: (212) 728-9164

mhoughton-larsen@willkie.com

**UNITED TO PROTECT DEMOCRACY**
John Langford
Rachel Goodman
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
john.langford@protectdemocracy.org
rachel.goodman@protectdemocracy.org

Brittany Williams
Sara Chimene-Weiss
15 Main St., Suite 312
Watertown, MA 02472
Tel: (202) 579-4582
brittany.williams@protectdemocracy.org
sara.chimene-weiss@protectdemocracy.org

**DUBOSE MILLER LLC**
Von A. DuBose
75 14th Street NE
Suite 2110
Atlanta, GA 30309
Tel: (404) 720-8111
dubose@dubosemiller.com

**KASTORF LAW LLC**
Kurt G. Kastorf (1011932)
1387 Iverson Street NE
Suite #100
Atlanta, GA 30307
Tel: (404) 900-0330
kurt@kastorflaw.com

*Attorneys for Plaintiffs Ruby Freeman*
*and Wandrea' Moss*

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2023, a copy of the foregoing document was emailed to Defendant Rudolph W. Giuliani via his counsel Joseph D. Sibley IV at sibley@camarasibley.com.


Dated:  April 17, 2023


*/s/ Meryl C. Governski*
**WILLKIE FARR & GALLAGHER LLP**
Meryl C. Governski (1023549)
1875 K Street, #100
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgovernski@willkie.com