# EXHIBIT 12

# WILLKIE FARR & GALLAGHER LLP

1875 K Street, N.W.
Washington, DC 20006-1238

Tel: 202 303 1000
Fax: 202 303 2000

April 4, 2023

**VIA EMAIL**

**Joe Sibley**
CAMARA & SIBLEY LLP
1108 Lavaca St. Suite 110263
Austin, TX 78701
713-966-6789
Email: sibley@camarasibley.com

Re:     *Freeman v. Giuliani*, 1:21-cv-3354 (BAH)

Dear Mr. Sibley,

As you know, on March 21, 2023, the Court ordered Defendant Rudolph W. Giuliani to "(a) complete searches and production of responsive records to plaintiffs' RFPs; [and] (b) provide responses in full to plaintiffs' supplemental interrogatories" by March 30, 2023.  Minute Order (Mar. 21, 2023) ("Order" or "March 21 Order").  Defendant Giuliani failed to comply with either obligation, as detailed below.

Defendant Giuliani did not, by your own admission, ***complete searches and production of responsive records***" to all of Plaintiff's RFPs by March 30, 2023.  Instead, Defendant Giuliani has produced only a single, one-page text message chain that he purports is the *only* responsive document from some form of search that he personally performed on "new devices."  You represent that Defendant Giuliani "reports that he conducted searches pursuant to the search terms for RFP sets 1 and 2 and has no non-privileged responsive documents."  You did not provide any details whatsoever, including but not limited to, for example:  (1) how Defendant Giuliani performed that purported "search"; (2) what "new devices" he searched; (3) whether the search included non-device cloud accounts, such as the Gmail account(s) to which he has access, social media accounts, and text messaging applications he has used to discuss matters (such as Signal); or (4) if you personally oversaw the search and can attest to its comprehensiveness.  Defendant Giuliani also appears to have unilaterally determined that all of the responsive documents besides the one produced are privileged but he fails to provide a privilege log, as the law requires.

BRUSSELS   CHICAGO   FRANKFURT   HOUSTON   LONDON   LOS ANGELES   MILAN
NEW YORK   PALO ALTO   PARIS   ROME   SAN FRANCISCO   WASHINGTON

April 4, 2023
Page 2

And even if the search were sufficient (which it was not), you admit that Defendant Giuliani has not attempted to engage in *any* search for documents responsive to any of the requests in the Fourth Set of RFPs and instead attempt to stand on objections, despite the Court ordering the production of all responsive documents.  As far as the TrustPoint documents, Defendant Giuliani has not, as the Court required, provided "in *specific terms* the data on the 'Trust Point' database that were searched in response to plaintiffs' Requests for Production (RFPs), including date range and contents (e.g., social media accounts, text messages, and communications on other messaging platforms, such as Signal, Telegram, etc.); [and] (b) what locations and data sources remain for searches to be completed to respond fully to plaintiffs RFPs."  March 21 Order (emphasis added); *see also* March 21 Hearing Tr. at 22:21-23 (instructing Defendant Giuliani to "find out *precisely* what was put on that database and *precisely* what was searched, and what wasn't") (emphases added), 46:18-23 (instructing defense counsel to "report in a submission to this Court . . . *precisely* what information is on the Trustpoint database in terms of particular file formats . . . in terms of time and subject matter, whether it's just everything or whether they've only put up certain refined file extensions, or within a particular time frame all cabined by the search warrant return") (emphasis added).  Defendant Giuliani has yet to provide details about what exactly is included the TrustPoint documents, such as the specific email accounts it includes, whether it includes all emails or a set limited to a certain search warrant, and whether there are other non-email extensions to be searched.  And, as discussed below, Defendant Giuliani has never explained how his initial representation that the TrustPoint database contained more than 50,000 documents responsive to Plaintiffs' requests—18,000 of which dated from November 2020 to April 2021—was ultimately (and seemingly arbitrarily) narrowed down to the 178 produced.  Far from complying with the Court's Order, Defendant Giuliani now purports to shift his own discovery obligations (which the Court has already ordered him to undertake) by asking for *Plaintiffs* to "pay for any further searching on this data."  There is no basis for Defendant Giuliani to defy a Court order and instead to shift costs to *Plaintiffs*, whose lives he upended by targeting them with lies for his own political aims.  What's more, Defendant Giuliani is attempting to use his own incomplete searches as a basis for doing so.

It also is unclear why Defendant Giuliani seems to be under the misguided notion that he can fulfill his discovery obligations with the TrustPoint documents alone.  Defendant Giuliani has never explained which of his cloud accounts—including, for example, Gmail, Signal or other messaging apps—he may have possession, custody, or control of *outside* of the TrustPoint documents.  We first discussed this with you many months ago when we suggested (and you seemed to agree) that Defendant Giuliani should collect the cloud accounts to which he has access and perform a search and production of them.  To date, our requests for an update on the status of that effort have gone unanswered.  Instead, Defendant Giuliani seems to have decided that he is *only* obligated to search the TrustPoint documents. That is not so. The Court's Order was not limited to only "new devices" or only to a search of the TrustPoint documents.  Defendant Giuliani was obligated but failed to complete searches for *all* responsive materials in his possession, custody, or control.  As laid out herein and in detail below, your explanation lays bare that Defendant Giuliani has failed to comply with the Court's order in word or spirit.

While Defendant Giuliani's Interrogatory responses are now verified and provide a modicum of additional details, they still are utterly deficient.  While Plaintiffs reserve all rights, below we detail the

April 4, 2023
Page 3

specific Interrogatory responses that require immediate amendment for failing to comply with the Court's order.

Finally, we separately emailed you about the deficiencies in Defendant Giuliani's Amended Initial Disclosures ("Amended Disclosures"). We incorporate that communication by reference and include it below for the sake of completeness.

## I.     DEFENDANT'S MARCH 30, 2023 DOCUMENT PRODUCTION

In total, Defendant Giuliani has produced 1,463 documents, nearly all of which were the result of searches he purportedly undertook for purposes of separate litigation and/or the United States House Select Committee on the January 6 Attack. As Plaintiffs understand from your communications to date, a subset of only 178 documents were produced based on purported searches to certain devices that were in the custody of the Department of Justice; and there are other documents that were in collected, but not produced, in response to discovery requests in other litigation or investigations. Judge Howell remarked at the hearing held on March 21, 2023 that the number of produced documents "does seem to be fairly small . . . based on the length of time, the amount of public statements that were made, and so on, in connection with the claims in this case." March 21 Hearing Tr. at 8:18-21. In response to the Court ordering Defendant Giuliani to "complete searches and production of responsive records to plaintiffs' RFPs," Defendant Giuliani has produced *only one document*, and has otherwise either refused to engage in any additional search or has engaged in a limited self-search without providing any details and clarifications. Defendant Giuliani is in non-compliance with the Court's Order, including for the following reasons.

*First*, to date Defendant Giuliani has not searched or produced for *any* documents responsive to Plaintiffs' Third and Fourth Requests for Production, dated November 11, 2022 and December 7, 2022, respectively.[1] He is therefore in non-compliance with the Court's Order. Defendant Giuliani claims that

---

[1] For reference, Request for Production No. 39, from Plaintiffs' Third Set of Requests for Production, calls for "Mobile phone records sufficient to show all phone number and providers You used between December 1, 2020 and January 31, 2021 and all Documents, including mobile phone billing records, showing the calls You made or received between December 1, 2020 and January 31, 2021 relating to Your Claims concerning Plaintiffs."

Request for Production No. 40, from Plaintiffs' Fourth Set of Requests for Production, calls in pertinent part for "Documents sufficient to show Your yearly income since 2018 and Your current net worth, including but not limited to Your tax returns for the years 2018 through 2021, all periodic statements from January 1, 2018 to the present date for all Your checking accounts, and all Your other accounts . . . ."

Request for Production No. 41, from Plaintiffs' Fourth Set of Requests for Production, calls in pertinent part for "All filings in *Judith S. Giuliani v. Rudolph Giuliani*, Docket No. 350019/2018 (N.Y. Sup Ct. Aug 31, 2018) and all filings related to the enforcement of the terms of the settlement agreement reached in *Judith S. Giuliani v. Rudolph Giuliani* . . . including, but not limited to, Judith S. Giuliani's lawsuit filed in the Supreme Court of the State of New York in or around August 2022."

April 4, 2023
Page 4

he "does not have phone records" but has failed to explain any efforts he has made to personally obtain them and, instead, insists that Plaintiffs incur that burden.

Defendant Giuliani's objections to Plaintiffs' Third and Fourth Requests for Production, which you represented Defendant Giuliani stands on in your transmittal email, do not shield him from the requested discovery. First, contrary to your assertion that such evidence is only relevant to the issue of punitive damages, evidence of Defendant Giuliani's financial condition before and after his defamatory statements is also relevant to Defendant Giuliani's financial motives in this case, and they therefore must be produced.[2] Second, with respect to evidence relevant to punitive damages, even the court in *D'Onofrio v. Sfx Sports Group*, the case you cite in support of Defendant Giuliani's position, acknowledged that the majority rule is to "permit pretrial discovery of financial information of the defendant without requiring plaintiff to establish a *prima facie* case on the issue of punitive damages."[3]

Similarly, Defendant Giuliani's position that "all of the information sought in [Request No. 41] is equally accessible to Plaintiffs as public records," apart from being inaccurate, does not justify a refusal to produce these records. The filings in the 2018 case are not readily accessible to Plaintiffs, and Plaintiffs have been unable to ascertain even the case number for the lawsuit filed in or around August 2022—much less any case filings—despite diligent efforts. In any event, "[t]he Federal Rules do not shield publicly available documents from discovery merely because of their accessibility." *Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, 223 (D.D.C. 2015). "To the contrary, the federal discovery rules are designed to make litigation a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Id.* at 224 (internal citations omitted). Accordingly, **if Defendant Giuliani does not produce all documents responsive to Plaintiffs' Third and Fourth Requests for Production by April 6, 2023, Plaintiff will seek the Court's intervention.**

*Second*, Defendant Giuliani seems to be under the misguided notion that his search of the TrustPoint documents is both necessary *and* sufficient. But it is not. Defendant Giuliani must, and is now under a Court order to, search and produce all responsive materials. If he has separate access to (or the practical ability to access) additional documents, he is under a Court order to search for and produce them. *See, e.g., Bush v. Ruth's Chris Steak House, Inc.*, 286 F.R.D. 1, 5 (D.D.C. 2012) ("Control [for Rule 34 purposes] does not require that the party have legal ownership or actual physical possession of the documents at issue, but rather 'the right, authority or practical ability to obtain the documents from a non-party to the action.'") (quoting *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007)); *Alexander v. F.B.I.*, 194 F.R.D. 299, 301 (D.D.C. 2000) ("It is well established that 'control', which is defined not as possession, but as the legal right to obtain documents on demand, is the test as to whether the production is required."). That the TrustPoint documents may have some responsive documents does not obviate his obligation to search other repositories to which he has practical access for the same.

---

[2] *See Dershowitz v. Cable News Network, Inc.*, No. 20-61872-CIV, 2022 WL 2662352, at *3 (S.D. Fla. June 15, 2022).

[3] 247 F.R.D. 43, 52 (D.D.C. 2008) (quoting *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 151–52 (D. Kan. 1990)).

April 4, 2023
Page 5

Defendant Giuliani has, to date, failed to detail any of his preservation or search efforts. As described above, he has not detailed all of the accounts (emails, social media, text messaging, or otherwise) to which he has practical access or the process he has used to search all of those accounts. Still, after the Court's Order, he refers to "new devices" and "TrustPoint" without any confirmation about which accounts he searched. During the March 21 hearing, the Court explained that Defendant Giuliani was obligated "to find out precisely what was put on that database and precisely what was searched, and what wasn't. And you need to figure that out really promptly." March 21 Hearing Tr. at 22:21-23. **Plaintiffs will provide Defendant Giuliani until April 6, 2023 to explain, in detail, 1) the specific methodology he employed in searching for responsive documents (including but not limited to search terms used) and 2) which repositories were searched (including but not limited to which specific physical devices, social media accounts, text messaging applications, and email accounts)**. This includes the additional details that the Court has ordered Defendant Giuliani to provide regarding the TrustPoint documents, explained immediately below.

*Third*, and relatedly, Defendant Giuliani must but has never explained his productions to date, especially the small production from TrustPoint. To recap what you have explained to date: on September 30, 2022, you represented that an initial search of the TrustPoint database using Plaintiffs' proposed search terms yielded "over 50,000 documents," and a narrower search from November 2020 to April 2021 "resulted in a reduction to 18,000 documents." You stated that it would take a team of seven to ten reviewers "several weeks" to review the 18,000 documents. On October 3, Plaintiffs agreed to limit the universe of documents to the period from September 1, 2020, to January 21, 2022, which means that the universe of responsive documents should, at a minimum, have been larger than 18,000 documents. On October 11 (a mere eight days later), you conveyed that there were only 400 responsive emails in the entire TrustPoint database, and you ultimately only produced 178 documents and a supplemental privilege log with eight additional documents. Despite Plaintiffs repeatedly requesting an explanation of how the universe of responsive documents narrowed so dramatically, you have never provided such an explanation, including in the status report you filed last week. ECF No. 40. Accordingly, **by April 6, 2023, Defendant Giuliani must:**

- **Identify the total number of responsive documents that were yielded by applying Plaintiffs' search terms during the time period that the parties have agreed upon (September 1, 2020 through January 21, 2022);**
- **Explain why this initial search of the database was limited to emails;**
- **Explain how you arrived at the conclusion that there were only 400 additional responsive documents contained within those that had already been collected by the FBI, as you first represented on October 11, 2022, and whether you or a team of reviewers have reviewed any documents from the TrustPoint database apart from those 400 documents.**

*Fourth*, you represented in your transmittal email that "the TrustPoint documents have been archived. Giuliani will have to pay considerable fees to have the documents unarchived and searched for additional files," and that Defendant Giuliani is now apparently refusing to search for TrustPoint documents unless Plaintiffs pay for the accompanying cost. Defendant Giuliani did not raise this issue at any time prior to the date by which the Order required him to *complete and search* all of the

April 4, 2023
Page 6

repositories to which he has possession, custody or control.  *See* March 21 Order; *see also* March 21 Hearing Tr. at 24:20-25 (instructing defense counsel to submit a status report by March 24 "so that *you* know what *you* have left to search" regarding the TrustPoint documents "and what the time frame is for *you* completing a search for all of those appropriate records") (emphases added).  Defendant Giuliani's admitted failure to search the TrustPoint documents concedes non-compliance with the Court Order, and he is further in non-compliance by failing to provide "precisely what information is on the TrustPoint database."  March 21 Hearing Tr. at 46:18-23.  Moreover, Plaintiffs are aware of no legal authority whereby Defendant Giuliani can avoid a Court Order to search for and produce all responsive documents by instead insisting Plaintiffs pay for his compliance.  **To the extent that Defendant Giuliani has any case law to support his attempt to shift costs to Plaintiffs to avoid his own discovery obligations, he should provide it by April 6, 2023.**  But any such legal authority is irrelevant to shifting costs here because any purported costs are Defendant Giuliani's own fault—had he complied with his discovery obligations when he was supposed to, no "unarchiving" would have been required.

*Fifth*, Defendant Giuliani must detail the purported "search" effort he undertook, including the specific devices he searched, all of the repositories he searched, how he searched them, and how he determined what documents were responsive.  He also must produce a privilege log for the responsive documents he decided, on his own, to withhold.

*Lastly*, you stated in your transmittal email that "[t]he only remaining employee with a Giuliani partners email appears to be Maria Ryan."  That does not answer the question we asked, which is whether Defendant Giuliani has possession, custody, or control of the Giuliani Partners business files. To the extent he does, he must produce them. To the extent he has possession custody, or control over any of the email accounts (including Maria Ryan's), he must search and produce them. In the event that Defendant Giuliani does have custody, possession, or control of these records, Plaintiffs expect that Defendant Giuliani will search these records and produce any responsive records.

## II.   DEFENDANT'S SUPPLEMENTAL ANSWERS TO PLAINTIFFS' THIRD SET OF INTERROGATORIES

In addition to his deficient responses to Plaintiffs' Requests for Production, Defendant Giuliani's supplemental answers to Plaintiffs' Third Set of Interrogatories are deficient. Rule 33(b)(3) states that each interrogatory "must, to the extent it is not objected to, be answered separately and *fully* in writing under oath."  Fed. R. Civ. P. 33(b)(3) (emphasis added).  "A party to whom an interrogatory is propounded must provide true, explicit, responsive, *complete*, and candid answers." *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 7 (D.D.C. 2009) (emphasis added) (citations and quotations omitted).

Plaintiffs' Interrogatories Nos. 11 and 12 ask you to describe in detail how you learned of the State Farm Surveillance footage at the heart of this case; to identify any individuals you worked with, oversaw, or who assisted you in obtaining, editing, analyzing, and/or disseminating the footage; and to describe your conversations with all of those individuals including, specifically, any conversations with Jacki Pick before or after the December 3, 2020, hearing. Defendant Giuliani responds to each of Interrogatory Nos. 11 and 12 by invoking attorney-client privilege and with the vague statement that he

April 4, 2023
Page 7

"generally recalls that he was made aware of the video the night before the hearing before the Georgia Senate Election Hearing on December 3, 2020." Both responses are self-evidently incomplete on their face given the specificity of the Interrogatories and the request in each Interrogatory that Defendant Giuliani "describe [his response] in detail." **Plaintiffs will provide Defendant Giuliani until April 6, 2023 to supplement these responses to provide *complete* answers**, which includes, at a minimum, describing how Defendant Giuliani became aware of the video; identifying the individuals involved in obtaining, editing, analyzing, and/or disseminating the video; and detailing the substance of conversations with all of those individuals, including the substance of any conversations Defendant Giuliani or anyone affiliated with him had with Ms. Pick in the 24 hours before the December 3, 2020 hearing.

## III.    AMENDED INITIAL DISCLOSURES

As an initial matter, the Amended Disclosures include a boilerplate description of purported relevance that Defendant Giuliani uses for paragraphs 8-14 ("Was involved with providing Giuliani with information and discussing with Giuliani allegations regarding Plaintiffs."). "[W]hile a party is not required to provide a detailed narrative of the potential witness' knowledge, the Rule 26(a)(1)(A) disclosure should provide enough information that would allow the opposing party to help focus the discovery that is needed." *Klayman v. Barmak*, No. CV 08-1005 (JDB), 2009 WL 10695670, at *1 (D.D.C. Oct. 28, 2009). Defendant Giuliani must amend paragraphs 8-14 to provide information that will allow Plaintiffs to understand what relevant information that *each* of these individuals is likely to have and to focus their discovery efforts accordingly. *See id.* at *2 (granting in part motion to compel further initial disclosures).

In addition, Rule 26 requires that disclosures include "the name *and*, if known, the address and telephone number of each individual likely to have discoverable information." Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added). Paragraphs 9, 11, and 12, in addition to not providing the topics of the relevant information they may have and on which Defendant Giuliani intends to rely (as discussed above), fail to provide sufficient information to identify the individuals disclosed. Paragraph 9 lists "William Smith" with no further identifying information. Paragraph 9 fails to provide Plaintiffs with any ability to determine who he is or what relevance he has to Plaintiffs' claims or Defendant Giuliani's defenses. With such a common name, and without any specific information, it is impossible for Plaintiffs to locate "William Smith." Defendant Giuliani must amend paragraph 9 to include sufficient details, including the specific information provided to Defendant Giuliani, and the address and telephone number of this individual. *See Amiri v. Omni Excavators, Inc.*, No. CV 18-586 (RMC), 2019 WL 5653622, at *5 (D.D.C. Oct. 31, 2019) (ordering amendment of "woefully inadequate" initial disclosures due in part to "fail[ure] to identify contact information"). If, as the Amended Disclosures represent, Mr. Smith provided information to Defendant Giuliani, Defendant Giuliani must have contact information to share.

Paragraphs 11 and 12 fail to "identify specific individuals at all" and state only "Unknown Associates of Burt Jones" and "Unknown GOP Operatives" with the same boilerplate description. *Klayman*, 2009 WL 10695670 at *1 (D.D.C. Oct. 28, 2009) (holding that a disclosure of

April 4, 2023
Page 8

"All lawyers, paralegals and secretaries who worked with Barmakon Klayman, his law firms, and Judicial Watch matters, such as Joanne Jarquin, and the partners of Sherman Meehan and Cohen, Barmak's former firm" failed to sufficiently identify specific individuals); *see also Klayman*, Motion to Compel Ex. A ¶ 24, ECF No. 41-1.  The Amended Disclosures are plainly deficient in this respect.  In addition to the amendments described above, Defendant Giuliani must amend paragraphs 11 and 12 to include the 1) name, 2) address, and 3) telephone number of *each* individual likely to have discoverable information.  *See Klayman*, 2009 WL 10695670 at *2.  If, as the Amended Disclosures represent, these anonymous individuals provided information to Defendant Giuliani, Defendant Giuliani must have identifying information to share.

        <u>**We will afford Defendant Giuliani until April 6, 2023 to cure the deficiencies in the Amended Disclosures**</u>.  If he does not, we reserve the right to seek judicial intervention and all available remedies.

        Finally, per separate exchanges, you have made clear that the Amended Disclosures list all of the individuals whom Defendant Giuliani "may use to support" his "claims or defenses."  We will hold Defendant Giuliani to that representation should he attempt to rely on any individuals whom he has failed to list, and is a further basis for why Defendant Giuliani may not properly rely on anonymous groups of "unknown" individuals whom his Amended Disclosures fail to identify.  *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *see also Ghawanmeh v. Islamic Saudi Acad.*, 274 F.R.D. 329, 331 (D.D.C. 2011) ("The penalty for failing to make the required initial disclosure or the requisite supplemental disclosure is specified in Rule 37(c) of the Federal Rules of Civil Procedure.  According to the rule, [a party] cannot later call a previously unidentified witness unless her failure to identify the witness in a timely fashion was either substantially justified or harmless.").

                        *        *        *

        If Defendant Giuliani fails to comply with the Court's Order in the manner set forth above by Thursday, April 6, 2023, Plaintiffs will seek relief from the Court.


Sincerely,

*/s/ Timothy P. Ryan*
Timothy P. Ryan