**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RUBY FREEMAN, *et al*.,<br><br>                     Plaintiffs,<br><br>         v.<br><br>RUDOLPH W. GIULIANI,<br><br>                   Defendant. | Case No. 1:21-cv-03354 (BAH)<br><br>Chief Judge Beryl A. Howell |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY,
FOR ATTORNEYS' FEES AND COSTS, AND FOR SANCTIONS**

## <u>TABLE OF CONTENTS</u>

ARGUMENT ....................................................................................................................1

I.   DEFENDANT GIULIANI'S DISCOVERY EFFORTS ARE DEMONSTRABLY
     INADEQUATE, AND HE HAS FAILED TO PROVIDE ANY REASON FOR WHY
     THE COURT SHOULD NOT COMPEL HIM TO COMPLY ...................................1

     A.   Defendant Giuliani's Discovery Efforts To Collect, Search, and Produce
          Communications—Including Via Messaging Application, Text, Social Media,
          Or Email—Are Insufficient ...................................................................................2

          i.    Defendant Giuliani has failed to search for or produce all responsive
                communications from all potential sources of data ....................................2

          ii.   Defendant Giuliani's proffered excuses do not justify his failure to
                search or produce all responsive communications ...................................8

     B.   Defendant Giuliani's Discovery Efforts To Collect, Search, and Produce
          Documents Are Insufficient ..............................................................................12

II.  THE COURT SHOULD CONSIDER THE ADDITIONAL FORMS OF RELIEF
     PLAINTIFFS REQUESTS ...................................................................................13

     A.   Defendant Giuliani Failed To Explain His Preservation Efforts....................13

     B.   Defendant Giuliani Ignored The Court's March 21 Order Compelling Him
          To Provide A List Of All Data Sources And To Search For And Produce
          Responsive Materials By March 30....................................................................14

     C.   Defendant Giuliani Must Produce A Privilege Log ...........................................15

     D.   Defendant Giuliani Must Pay The Costs Of This Motion .................................15

     E.   The Court Should Impose Whatever Other Relief It Deems Appropriate.....16

CONCLUSION .............................................................................................................16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
   No. 3:19-MD-2885, 2020 WL 6140469 (N.D. Fla. Oct. 15, 2020)........................................9

*In re Barnwell Enters.*,
   265 F. Supp. 3d 1 (D.D.C. 2017) ....................................................................................5, 10

*Belcastro v. United Airlines, Inc.*,
   No. 17 C 1682, 2019 WL 7049914 (N.D. Ill. Dec. 23, 2019) ....................................................9

*CFTC v. First State Depository Co., LLC*,
   No. 21-MC-048, 2021 WL 7448016 (D.D.C. June 23, 2021) ................................................11

*Clear-View Techs., Inc. v. Rasnick*,
   No. 5:13-CV-02744-BLF, 2015 WL 2251005 (N.D. Cal. May 13, 2015) ............................10

*Ctr. for Biological Diversity v. U.S. EPA*,
   279 F. Supp. 3d 121 (D.D.C. 2017)....................................................................................3, 4

*D'Onofrio v. SFX Sports Grp., Inc.*,
   247 F.R.D. 43 (D.D.C. 2008)....................................................................................................13

*Gerlich v. U.S. Dep't of Just.*,
   711 F.3d 161 (D.C. Cir. 2013)..................................................................................................14

*Hopkins v. Women's Div., Bd. of Global Ministries*,
   238 F. Supp. 2d 174 (D.D.C. 2002) ....................................................................................2, 5

*Nasreen v. Capitol Petro. Grp., LLC*,
   No 20-cv-1867, 2022 U.S. Dist. LEXIS 104653 (D.D.C. Apr. 11, 2022)............................13

*Peskoff v. Faber*,
   251 F.R.D. 59 (D.D.C. 2008).......................................................................................9, 10, 11

*Pub. Emps. for Envt. Responsibility v. Beaudreau*,
   No. CV 10-1067, 2012 U.S. Dist. LEXIS 199850 (D.D.C. Nov. 9, 2012).........................3, 4

*United States v. All Assets Held at Bank Julius Baer & Co., Ltd., Guernsey
   Branch, Acct. No. XXXXXX in Name of Pavlo Lazarenko*,
   No. CV 04-798, 2018 WL 8867711 (D.D.C. Jan. 19, 2018) ................................................10

*Zimmerman v. AL Jazeera Am. LLC*,
   No. 16-00013, 2018 U.S. Dist. LEXIS 246901 (D.D.C. Sept. 26, 2018)..............................13

**Rules**

Fed. R. Civ. P. 26(b)(5)..................................................................................................15

Fed. R. Civ. P. 37(e) ...................................................................................................14

As has been discussed at length in Plaintiffs' Motion ("Motion" or "Mot."), the Parties' Joint Status Report, and during the March 20 discovery hearing, Defendant Giuliani has avoided his most basic discovery obligations for nearly a year now.[1]  Defendant Giuliani's discovery *modus operandi* is to delay, obfuscate, and blame others, and his Opposition to Plaintiffs' Motion to Compel ("Opposition" or "Opp.") is no different.  Defendant Giuliani admits that he has not produced all responsive materials or searched all sources likely to possess responsive materials, which is dispositive of the issue before the Court and warrants granting Plaintiffs' Motion. Defendant Giuliani's Opposition grossly exaggerates what amounts to perfunctory efforts to comply, while providing no meaningful clarity or assurances about his preservation, search, or production efforts.  Defendant Giuliani has not even provided Plaintiffs (or this Court, as required by its March 21 Order) a clear explanation of what repositories (including email addresses, messaging applications, or social media accounts) he has and has not searched, how he has searched them, and if he has not searched, why not.  And Defendant Giuliani fails to provide any explanation for the gaping holes in his production other than to declare, based on his own opinion, that he is finished with discovery in this case.  The Federal Rules, Local Rules, and the March 21 Order require Defendant Giuliani to search for responsive material within his possession, custody, and control, and to produce all responsive non-privileged materials.  Defendant admitted that he has failed to do so.  The Court should grant Plaintiffs' Motion and issue sanctions as it deems appropriate.

## **ARGUMENT**

**I.      DEFENDANT GIULIANI'S DISCOVERY EFFORTS ARE DEMONSTRABLY INADEQUATE, AND HE HAS FAILED TO PROVIDE ANY REASON FOR WHY THE COURT SHOULD NOT COMPEL HIM TO COMPLY.**

---

[1] All capitalized terms not defined herein shall have the meaning assigned in Plaintiffs' Motion to Compel Discovery, for Attorneys' Fees and Costs, and for Sanctions.  ECF No. 44.

Defendant Giuliani admits, by concession or omission, that he has failed to search various sources of data, including text messages, messaging applications, and certain email accounts, that, per his own testimony and discovery in this case, contain relevant materials responsive to Plaintiffs' requests for production.  The limited search that Defendant claims to have conducted— namely, his recent manual searches of social media, his recent manual searches of certain devices he obtained after April 2021, and some form of searches of whatever pre-April email data is in TrustPoint—are inadequate.  *See supra* § (A).  None of the excuses Defendant Giuliani offers justify shirking the discovery obligations that every federal litigant must bear.  *See supra* § (B).

A. **Defendant Giuliani's Discovery Efforts To Collect, Search, and Produce Communications—Including Via Messaging Application, Text, Social Media, Or Email—Are Insufficient.**

i. <u>Defendant Giuliani has failed to search for or produce all responsive communications from all potential sources of data.</u>

**Messaging Applications**.  Defendant Giuliani has admitted to having conversations about topics relevant to this litigation using messaging applications, such as WhatsApp, Telegram, and Signal.  *See* ECF No. 44-9 at 22:24–25:6.  The Opposition concedes by omission that Defendant Giuliani has not conducted any search of such messaging applications.  (*See generally* Opp.; *see* Mot. at 21–24.)  *See, e.g.*, *Hopkins v. Women's Div., Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion . . . addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citations omitted)).  Defendant also has confirmed that his search of TrustPoint did not include any such messaging.  (Opp. at 3–4, 6–7.)  The Court is well within its discretion to order that Defendant Giuliani must search all of his messaging applications and produce all responsive communications contained therein, or explain in detail why he has not and cannot do so.  *See Pub. Emps. for Envt.*

*Responsibility v. Beaudreau*, No. CV 10-1067 (RBW/DAR), 2012 U.S. Dist. LEXIS 199850, at

*22 (D.D.C. Nov. 9, 2012) (ordering defendants to provide declaration "providing further

explanation as to why certain" communications no longer exist); *see also Ctr. for Biological

Diversity v. U.S. EPA*, 279 F. Supp. 3d 121, 142–44 (D.D.C. 2017) (J. Howell).

      **<u>Text Messages</u>**.  Defendant Giuliani has admitted, and discovery has proven, that he used

text messages to communicate about this case.  ECF No. 44-1 at Ex. 7.  Third-party productions

illustrate that Defendant Giuliani used text messaging to communicate about claims of fraud in

Georgia, including prior to the seizure of his devices in April 2021, and via a phone number about

which Plaintiffs were unaware and Defendant Giuliani did not provide during his deposition.  (*See*

Ex. 1; Ex. 2.)  After attempting to quash a subpoena and pursuant to a subsequent order by a Florida

court, third-party Christina Bobb confirmed that she communicated with Defendant Giuliani about

his 2020 post-election efforts via an undisclosed phone number, including on December 4, 2020.

(Ex. 2.)  In this text message, Defendant directs Ms. Bobb to "[s]end" Rusty Bowers, then-Speaker

of the Arizona House of Representatives, the "tape of theft."  (*Id.*)  Ms. Bobb replies "The GA

Suitcase tape?" and "I just sent it."  (*Id.*)  This text has neither been produced nor logged by

Defendant.  Defendant also represents that even though (at least some of) his pre-April 2021 text

messages were collected and stored in TrustPoint (a representation he has not substantiated), he

chose to exclude text messages from his review irrespective of their responsiveness.  (Opp. at 4.)

Defendant Giuliani admits that he did not, instead or otherwise, personally search for any pre-

April 2021 text messages on any of his devices.  (*See generally id.*)  In other words, Defendant

Giuliani admits that he has not produced any text messages prior to the April 2021 seizure of his

devices (i.e., during the most critical time period for purposes of this litigation), despite the

existence of responsive communications.

Defendant Giuliani's claim that emails are "the overwhelming majority of potentially pertinent communications during the relevant time period," *Opp.* at 6, is unpersuasive.  Defendant Giuliani implicitly admits (as he must) that there are "potentially pertinent communications" in mediums other than email, which by itself warrants relief.  In any event, Defendant Giuliani's conclusory assertion is insufficient to excuse his admitted failure to produce responsive text messages (or any of the other non-email communications) in his possession, custody, or control. The Court should compel Defendant Giuliani to collect, search, and produce all responsive text messages before April 2021 and, if he claims that they do not exist, he must say so and explain the circumstances.  *See Pub. Emps. for Envt. Responsibility*, 2012 U.S. Dist. LEXIS 199850, at *22; *see also Ctr. for Biological Diversity*, 279 F. Supp. 3d at 142–44.

With respect to post-April 2021 text messages, Defendant Giuliani claims he has conducted his own manual search of "all of his electronic devices obtained after the April 2021 DOJ seized" and that there were no non-privileged text messages.  (Opp. at 3–4).  Defendant has not provided Plaintiffs with sufficient detail regarding the search in order for them to assess whether the search was sufficient.  Defendant Giuliani has failed to provide a privilege log or to explain what devices his search included, whether his search was within the text messaging application itself (as opposed to just the device), or any other details to assure the search would have captured all of his text messages.

**Social Media**.  Discovery (including since Plaintiffs filed the Motion) has proven that Defendant Giuliani communicated about topics relevant to this litigation on social media, including Twitter and Instagram.  (*See, e.g.*, Ex. 3.)  Defendant Giuliani has confirmed that his search of TrustPoint did not include a review of any such messaging.  (Opp. at 3–7.)  The only purported search that Defendant Giuliani has made of his social media is a non-descript, manual

search of some (but not necessarily all) of his "social media" on devices he purchased since April 2021, which resulted in the production of a single responsive message.  ECF No. 44-1 ¶ 15; ECF No. 44-13 at 4.  This search was demonstrably incomplete, as a social media message produced by Ms. Bobb demonstrates.  (Ex. 3.)  Furthermore, Defendant Giuliani has failed to specify *what* social media he searched, whether he attempted to do so via the Cloud, whether it included all of the social media accounts he has ever used, or any additional details necessary to determine whether whatever efforts he has taken to date would reasonably lead to all responsive materials.  To the extent that Defendant is also arguing that he does not possess social media records, this fails.  *See In re Barnwell Enters.*, 265 F. Supp. 3d 1, 16 (D.D.C. 2017).

**Emails**.  Defendant Giuliani's own admissions and discovery to date indicate that he used various email accounts to communicate about topics related to this case, including rhelen0528@gmail.com and RudyGiuliani@me.com.  *See* ECF No. 44-9 at 27:21–24.  Defendant Giuliani concedes by omission that he has not attempted to access his personal email accounts via the Cloud, even though he could have done so.  (Opp. at 3–7.)  *See Hopkins*, 238 F. Supp. 2d at 178.  With respect to his work email accounts—discovery in this case, including from third parties, has indicated that Defendant Giuliani and his agents used email addresses associated with Giuliani Partners LLC ("Giuliani Partners")—a company that he founded and owns, Ex. 4 at 30:10–32:12— to communicate about matters related to this action.  (*See* Governski Decl. at ¶ 3.)  For example, the email alias press@giulianipartners was used to communicate specifically about the topics relevant to this litigation, including an affidavit publicly filed by Francis Watson (the Chief Investigator of the Georgia Secretary of State's Office) on December 6, 2020 that directly refuted many of Defendant Giuliani's future claims.  (*Id*.)  Defendant Giuliani's concession that he has

not made any attempt to produce or access any materials associated with these email accounts warrants the Court to compel him to do so.  (*See* Opp. at 5.)

The Opposition relies on only two purported searches and production of email: (1) for post-April 2021 emails, a manual search of unspecified devices that Defendant claims would have captured emails without specification of email accounts (Opp. at 3–4); and (2) for pre-April 2021 emails, whatever unspecified accounts and emails the DOJ seized and loaded into TrustPoint.  (*See* Mot. at 2–3, 6–7; Opp. at 3–6.)  Neither justifies his efforts.

Defendant Giuliani relies almost entirely on his purported search and production of materials in TrustPoint, which as discussed above apparently included types of data beyond solely emails (e.g., text messages and documents) that he chose to withhold regardless of whether they contain responsive information.  (Opp. at 6–7.)[2]  So to the extent Defendant's search and production of materials from TrustPoint could theoretically provide any support for his discovery efforts to date, it would be limited to email communications.  But even as to emails, Defendant Giuliani's reliance on TrustPoint is insufficient.[3]  Defendant Giuliani has still never explained what information was provided by DOJ to TrustPoint.  In his Opposition, Defendant again relies on general statements that do not—despite the Court's March 21 Order requiring him to do so—specify the data and sources of information contained in TrustPoint.  (*See* Mot. at 23–25; *see also* Opp. at 4 ("TrustPoint One documents consisted of all documents that were extracted from his

---

[2] Defendant misrepresents any agreement between Defendant and Plaintiffs regarding his search of TrustPoint materials.  Plaintiffs never agreed that Defendant's search of only email files on TrustPoint would be sufficient.

[3] Even if Defendant Giuliani decides to produce from these additional sources of data in TrustPoint, that alone would be insufficient, including because: he admits that TrustPoint does not include certain sources of data (e.g., messaging applications, and social media communications); there could be responsive material that did not hit on Plaintiffs' proposed search terms; post-April 2021 communications are relevant but not located in TrustPoint; and as discussed herein there is no clarity about the scope of what pre-April 2021 materials are actually contained therein.

electronic devices taken by the DOJ in April 2021" and "TrustPoint contains all electronic files in his possession, custody, or control as of April 2021").)  Defendant does not explain with any specificity *inter alia* the scope of the DOJ's search warrant; whether all devices he used in 2020 were seized; whether and what email accounts were extracted from the seized devices, including whether TrustPoint contains all emails from the primary email accounts he testified to using; or if it included a separate extraction of his Cloud email accounts.  Accordingly, there is no factual basis on which this Court could conclude that any search of TrustPoint would capture all of Defendant's pre-April 2021 relevant email communications.  (*See* Mot. at 23–25.)

And even if, *arguendo*, TrustPoint did contain a comprehensive set of email sources, there is no basis to believe that Defendant's production is complete.   Discovery has revealed communications from various email accounts pre-dating April 2021 that Defendant has not produced despite their relevance and responsiveness, which illustrates the insufficiency of Defendant's TrustPoint search and/or production.  (*See, e.g.*, Exs. 6, 7.)  Defendant Giuliani's Opposition does not explain *why* he ultimately produced only 400 responsive emails from TrustPoint for the September 2020 to January 2022 time period despite Plaintiffs' search terms originally yielding 50,000 hits, including 18,000 between November 2020 and April 2021. Defendant asserts without support that the hits were "dramatically reduced" when eliminating what someone determined to be "background and other files."  (Opp. at 6.)  But Defendant does not explain who made that determination, how it was made, whether there was a review for responsiveness, or what types of documents qualified as "background and other files."  (*See id*.) In other words, there are potentially 17,600 files that may be responsive to Plaintiffs' Requests (from whatever set of communications happened to be in TrustPoint).  Defendant Giuliani should not be permitted to produce only pre-April 2021 emails that happened to be located in TrustPoint

based on whatever unspecified materials the DOJ collected in April 2021, and whatever arbitrary file type he chose to produce.

As far as post-April 2021 emails, Defendant Giuliani claims that his search of unspecified devices satisfies his obligations.  (*Id*. at 3–4.)  Leaving aside that Defendant concedes by admission that he did not search his emails via the Cloud, his Opposition also fails to explain whether his manual search was within any (or all) email applications and/or would have otherwise hit on search terms.  (*Id*.)  Defendant also claims to have located privileged information, but has failed to provide a privilege log that would allow Plaintiffs to assess that claim.  (*Id*.)

      ii.    <u>Defendant Giuliani's proffered excuses do not justify his failure to search or produce all responsive communications.</u>

Defendant Giuliani argues that Plaintiffs must live with whatever production he has made to date based on three purported justifications: (1) that his pre-April 2021 devices are "inoperable," Ex. 5; Opp. at 5; (2) that he lacks access to certain email accounts and Cloud accounts, *id.*; and (3) that he cannot afford to access the materials in TrustPoint, *id*.  None of the excuses justify his lack of compliance with the rules of discovery.

*First*, Defendant Giuliani claims that he cannot collect, search, or produce pre-April 2021 materials because he cannot access those devices or they are otherwise "inoperable."  (Ex. 5; Opp. at 5.)  Accepting as true (without conceding) that certain devices are in fact inoperable, that would only limit Defendant's ability to search for and produce communications that were saved locally, not his ability to search for documents in the Cloud or that are otherwise accessible (including, for example, by asking his third-party providers to download the contents of his account, like Gmail which Plaintiffs understand stores data on the Cloud).  There is, moreover, no basis to credit Defendant Giuliani's *ipse dixit* that his pre-April 2021 devices are "inoperable."  Defendant Giuliani has admitted by omission that he has not engaged a professional vendor for assistance and

has never provided any forensic accounting of whether or why his devices are inoperable.  (*See generally* Opp.)  While he has not been able to review Defendant Giuliani's devices, an expert on forensics from Plaintiffs' discovery vendor has opined that he is "not aware of any instance where an electronic device was rendered inoperable, inaccessible, or devoid of data as a result of that device being seized and accessed by a law enforcement entity."  (Ex. 8 at ¶ 5.)  Furthermore, based on this expert's own "experience extracting forensic data from more than 1,000 electronic devices, it would be highly atypical to be unable to recover data from such devices if the passcodes to such devices or data are known."  (*Id*. at ¶¶ 3–4.)  To the extent the Court considers the operability of these devices relevant, Plaintiffs respectfully request that the Court grant Plaintiffs permission to inspect Defendant Giuliani's devices; insist Defendant provide a detailed list of what devices are inoperable, what is meant by inoperable, and how those devices became inoperable; or require Defendant to engage a forensic expert to determine whether the devices are in fact inoperable.  *See Peskoff v. Faber*, 251 F.R.D. 59, 62–63 (D.D.C. 2008) (ordering forensic examination of defendant's devices); *Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 WL 7049914, at *3 (N.D. Ill. Dec. 23, 2019) (granting motion to compel expert inspection of plaintiff's devices "to ensure that all responsive documents on plaintiff's devices is discovered and produced" where plaintiff "lacks the expertise necessary to search and retrieve all relevant data from his multiple varied devices") (cleaned up); *cf. In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-MD-2885, 2020 WL 6140469, at *5 (N.D. Fla. Oct. 15, 2020) (denying motion to compel neutral expert's review of plaintiff's devices where the plaintiff had engaged an expert to assist with his review and production and there was no dispute plaintiff's production complied with the court's pretrial order).  (*See also* Ex. 8.)  Defendant should bear the cost of any forensic expert.  *See, e.g.,*

*Peskoff,* 251 F.R.D. at 63 (ordering defendant to pay the cost of a forensic examination where the problem was of his own making and therefore not undue).

*Second*, Defendant Giuliani claims he lacks access to certain Cloud accounts and to all of his work emails.  *See* ECF No. 51-1 Ex. A ¶ 6 ("I also do not have access to the server for 'giulianipartners.co' or any of the emails associated with that domain that occurred before the April 2021 DOJ seizure. . . . I further do not have access to the iCloud account I had access to 'rudolphgiuliani@icloud.com' that I had access to prior to the DOJ seizure.").  Defendant does not provide any explanation for why he lacks access or when he lost access to his work emails.  For example, it is possible that he cannot access his accounts because he forgot the password.  Nor has Defendant Giuliani explained the steps he has taken to gain access, or why has not or cannot request access.[4]  Defendant should not be permitted to allow his conclusory assertion that he lacks access to excuse him from his discovery obligations without *at least* requiring him to do basic due diligence to overcome them.  *See, e.g.*, *Clear-View Techs., Inc. v. Rasnick*, No. 5:13-CV-02744-BLF, 2015 WL 2251005, at *5 (N.D. Cal. May 13, 2015) (issuing sanctions, including an adverse inference, where a party attempted to justify failing to search email accounts by attesting that they lost the passwords); *cf. CFTC v. First State Depository Co., LLC*, No. 21-MC-048, 2021 WL

---

[4] Defendant testified during his deposition that he is the sole member of Giuliani Communications LLC and that Giuliani Communications LLC owns Giuliani Partners.  (Ex. 4, at 30:10–31:9.).  He accordingly has possession, custody, or control of their documents.  *See, e.g.*, *In re Barnwell Enters.*, 265 F. Supp. 3d at 16 (explaining that an employee's documents are within an employer's possession, custody, and control and finding that the employer must produce any of the employee's responsive documents).  (*See also* Mot. at 19.)  Defendant's argument that Plaintiffs should obtain certain Giuliani Partners materials directly from Maria Ryan has no basis in law.  Plaintiffs have no obligation to get documents that are within Defendant's possession, custody, or control from a third party.  *Cf. United States v. All Assets Held at Bank Julius Baer & Co., Ltd., Guernsey Branch, Acct. No. XXXXXX in Name of Pavlo Lazarenko*, No. CV 04-798 (PLF/GMH), 2018 WL 8867711, at *9 (D.D.C. Jan. 19, 2018) ("Rule 34 requires the responding party to produce records that are in his possession, custody, or control") (cleaned up).

7448016, at *8 (D.D.C. June 23, 2021) (acknowledging that a request for emails appropriately required a subpoena recipient to search cloud accounts).  (*See also* Ex. 8.)

*Third*, Defendant claims without support that he cannot engage in any further review of TrustPoint because all materials have been archived and he cannot afford to access them.[5]  (Opp. at 6–7.)  But Defendant Giuliani is not, and never has been, artificially limited to the TrustPoint materials in collecting, searching, and producing responsive materials.  There is no reason why Defendant Giuliani cannot do what Plaintiffs suggested *months* ago: access his various email, text, messaging applications, and social media accounts via the Cloud.  If Defendant will not do so, he should permit Plaintiffs' own vendor to attempt to do so.  Additionally, because the DOJ returned all of the previously seized devices to Defendant many months ago, Defendant can hire a vendor (or allow Plaintiffs' vendor) to attempt to download their contents.  (Ex. 9 at 6:18–24.)

Even if it were necessary to access TrustPoint, Defendant Giuliani has failed to provide any legal basis for transferring the cost to Plaintiffs.  As Plaintiffs argued, and the Opposition ignores, the archiving is of his own making.  *See, e.g.*, *Peskoff*, 251 F.R.D. at 62.  Shifting costs is not appropriate because it was Defendant's decision not to search TrustPoint before it was archived despite knowing that TrustPoint would likely contain a significant amount of responsive material, that he might discontinue making payments to keep TrustPoint active, and that he could not get the materials from alternative sources because certain devices were inoperable.

*Fourth*, as far as his post-April 2021 efforts, this Court should reject Defendant's attempt to justify his production of a *single* Instagram message by stating that he "does not recall having

---

[5] The veracity of Defendant's representation that he cannot afford to pay his arrearage with TrustPoint should not be credited, at least not without Defendant providing supporting documentation.  During his deposition, Defendant testified that he earns money through advertisements on his various podcasts, one of which had ultimately over a million viewers.  (Ex. 4 at 30:10-33:25.)

any further communications regarding Plaintiffs after April 2021, other than on a podcast or two that Plaintiffs are aware of and with his counsel or other legal representatives in connection with this litigation."  (Opp. at 4.)  Not only is his claim not credible, but Defendant's own memory is also an insufficient substitute for conducting an actual collection, search, and production as the Federal Rules require.

> **B.    Defendant Giuliani's Discovery Efforts To Collect, Search, and Produce Documents Are Insufficient.**

Defendant's search and production efforts to date are incomplete because he appears not to have searched or produced *documents* (separate from communications) responsive to Plaintiffs' Requests.  As discussed above, his production from TrustPoint included only pre-April 2021 emails, *not documents*, and therefore can provide no basis for whatever responsive documents were in his possession, custody, or control that were not captured in any communications.  As far as post-April 2021 documents, Defendant Giuliani claims that he performed a manual search of certain "electronic devices obtained after the April 2021 DOJ seizure for text messages, emails, and other documents," but has provided no information as to what devices were searched, or what exactly was searched on those devices, i.e., whether they would include document repositories (like, for example, Google Drive) or documents generally.  As a result of this manual search, Defendant neither produced nor logged any responsive *document*.  Over the course of discovery, Defendant appears to have produced few, if any, documents other than whatever hard copies he had in his apartment that he collected in response to another case.[6]  *See, e.g.*, Mot. at 22.

Defendant's refusal to search for certain his phone records and financial documents is not justified.  Defendant Giuliani's claim that he does not physically possess his phone records, Opp.

---

[6] Because Defendant made productions without metadata, Plaintiffs cannot determine the file types of everything Defendant has produced.

at 6, does not excuse him from having to attempt to gain access to them.  (*See* Mot. at 19–21.)

"[A] party may be required to produce records that it does not possess, if it has the right or authority to obtain those records."  *Zimmerman v. AL Jazeera Am. LLC*, No. 16-00013, 2018 U.S. Dist. LEXIS 246901, at \*10–11 (D.D.C. Sept. 26, 2018) (granting order to compel employer to produce employee's phone records).  Defendant's objection to producing financial records is similarly misguided.  (*See* Opp. at 6; Mot. at 20.)  During his deposition, Defendant indicated willingness to provide these materials, including when he explained that the information regarding the revenue generated from his podcasts is "in my tax returns."  (Ex. 4 at 33:4–33:25.)  For the reasons discussed in the Motion, Defendant Giuliani's financial information is relevant and discoverable, before and separate from any proof required for punitive damages.  (Mot. at 25.)  To quote the very case that Defendant in his Opposition relies on, "a majority of federal trial courts" "have permitted pretrial discovery of financial information of the defendant without requiring plaintiff to establish a prima facie case on the issue of punitive damages."  *D'Onofrio v. SFX Sports Grp., Inc.*, 247 F.R.D. 43, 52 (D.D.C. 2008) (cleaned up).  (*See also* Mot. at 20.)  There is no reason here to stray from the majority approach.  Additionally, Plaintiffs are now entitled to Defendant's financial documents to assess the veracity of his assertion that he "does not have the funds" to pay his arrearage to TrustPoint.  *Cf. Nasreen v. Capitol Petro. Grp., LLC*, No 20-cv-1867, 2022 U.S. Dist. LEXIS 104653, at \*22 (D.D.C. Apr. 11, 2022) (explaining that courts should consider requiring financial documentation when a party makes an unsubstantiated assertion of financial hardship).

## II.   THE COURT SHOULD CONSIDER THE ADDITIONAL FORMS OF RELIEF PLAINTIFFS REQUESTS.

### A.   Defendant Giuliani Failed To Explain His Preservation Efforts.

Neither Defendant Giuliani nor his counsel has ever stated whether Defendant has preserved all materials in his possession, custody, or control since Defendant reasonably knew or anticipated this litigation (or litigation regarding his allegations of election fraud)[7] would occur. *See, e.g.*, *Gerlich v. U.S. Dep't of Just.*, 711 F.3d 161, 170 (D.C. Cir. 2013) (duty to preserve exists where litigation is reasonably foreseeable); Fed. R. Civ. P. 37(e).  Defendant has attempted to describe his preservation efforts in various filings, but those descriptions are incoherent and missing critical details, including which specific devices, accounts, and applications were preserved; the date of any preservation; the date range of accessible materials preserved in those specific devices, accounts, and applications; any information regarding the "inoperable" devices; or when TrustPoint was archived.  (*See* Mot. at 16–17.)

**B.     Defendant Giuliani Ignored The Court's March 21 Order Compelling Him To Provide A List Of All Data Sources And To Search For And Produce Responsive Materials By March 30.**

Defendant claims that he did not violate the Court's March 21 Order because it was not an order granting a motion to compel.  (Opp. at 2–3.)  The March 21 Order was, nonetheless, an order of this Court, which stated in relevant part that "by March 30, 2023, defendant shall [] complete searches and production of responsive records to plaintiffs' RFPs" and "by March 24, 2023, defendant shall (a) submit notice to the Court describing in specific terms the data on the "Trust Point" database that were searched in response to plaintiffs' Requests for Production (RFPs), including date range and contents (e.g., social media accounts, text messages, and communications

---

[7] Defendant Giuliani is relying primarily on materials he produced in the *Dominion* litigation, which was filed in January 25, 2021 based on claims he made about the voting machines used in the 2020 election (including in Georgia), and on materials that were seized by the DOJ in April 2021.  (Mot at 9-14.)  Without conceding that those materials would be sufficient to respond to Plaintiffs' Request, Defendant Giuliani's reliance on them indicates that he knew or should have known to preserve potentially responsive materials since at least early 2021.

on other messaging platforms, such as Signal, Telegram, etc.); [and] (b) what locations and data sources remain for searches to be completed to respond fully to plaintiffs RFPs. . ."  (Mot. at 15.) Defendant Giuliani has not completed any of those obligations and therefore has not complied with the Court's Order.  The Court should treat Defendant Giuliani's lack of compliance with the March 21 Order as subject to the remedies afforded by Rule 37.

### C.    Defendant Giuliani Must Produce A Privilege Log.

Defendant Giuliani is withholding an indeterminate number of documents as privileged, including based on his own purported manual searches.  Defendant has never provided a document-by-document privilege log of all documents he is withholding as privileged that he has reviewed in connection with Plaintiffs' Requests (as opposed to in the *Dominion* litigation).  (*See* Mot. at 29; *see generally id*. at 5–13.)  Providing a privilege log is a basic discovery obligation required by the Federal Rules.  *See* Fed. R. Civ. P. 26(b)(5) ("When a party withholds information otherwise discoverable by claiming that the information is privileged [], the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim").

### D.    Defendant Giuliani Must Pay The Costs Of This Motion.

Defendant makes no principled argument why he should not be required to pay Plaintiffs' reasonable attorneys' fees and costs associated with this filing as required by Rule 37(a)(5)(A). (*See also* Mot. at 26–27.)  Indeed, Defendant makes no argument, nor can he, that his discovery deficiencies have been substantially justified.  Defendant's only argument is the demonstrably wrong conclusory assertion that he "has made every effort to comply with Plaintiffs' discovery requests" and a lackluster attempt to shift the blame to the DOJ.  (*See* Opp. at 7–8.)  The Federal

Rules are mandatory and require the imposition of costs when granting a motion to compel. (Mot. at 18–19.)

      **E.**      **The Court Should Impose Whatever Other Relief It Deems Appropriate.**

As outlined fully in the Motion, the Court should impose whatever other relief it deems appropriate, notwithstanding Defendant's three-sentence opposition containing no case law. (*See* Mot. at 26–29; *see also* Opp. at 7–8.)

<u>**CONCLUSION**</u>

For the reasons set forth above, and in the Motion, the Court should grant Plaintiffs' Motion to Compel Discovery, for Attorneys' Fees and Costs, and for Sanctions.

DATED: May 8, 2023

**UNITED TO PROTECT DEMOCRACY**

John Langford
Rachel Goodman
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
john.langford@protectdemocracy.org
rachel.goodman@protectdemocracy.org

Brittany Williams
Sara Chimene-Weiss
15 Main St., Suite 312
Watertown, MA 02472
Tel: (202) 579-4582
brittany.williams@protectdemocracy.org
sara.chimene-weiss@protectdemocracy.org

**DUBOSE MILLER LLC**
Von A. DuBose
75 14th Street NE
Suite 2110
Atlanta, GA 30309
Tel: (404) 720-8111
dubose@dubosemiller.com

*s/ Meryl C. Governski*
**WILLKIE FARR & GALLAGHER LLP**
Meryl C. Governski (1023549)
Michael J. Gottlieb (974960)
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com
mgovernski@willkie.com

**WILLKIE FARR & GALLAGHER LLP**
M. Annie Houghton-Larsen
787 7th Avenue
New York, New York
Tel: (212) 728-8164
Fax: (212) 728-9164
mhoughton-larsen@willkie.com

*Attorneys for Plaintiffs Ruby Freeman and Wandrea' Moss*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 8, 2023, a copy of the foregoing document was emailed to

Defendant Rudolph W. Giuliani via his counsel Joseph D. Sibley IV at sibley@camarasibley.com.


Dated:  May 8, 2023


/s/ *Meryl C. Governski*
**WILLKIE FARR & GALLAGHER LLP**
Meryl C. Governski (1023549)
1875 K Street, #100
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgovernski@willkie.com