# EXHIBIT 4

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

-------------------------------x

RUBY FREEMAN and

WANDREA MOSS,

        Plaintiffs,

   v.              Civil Action No.

                     21-3354 (BAH)

RUDOLPH W. GIULIANI,

        Defendant.

-------------------------------x

DEPOSITION OF RUDOLPH W. GIULIANI

March 1, 2023

Reported by:

MARY F. BOWMAN, RPR, CRR

JOB NO. 5786854

Page 2

```
 5              March 1, 2023
 6              9:30 a.m.
 9       Deposition of RUDOLPH W. GIULIANI,
10  held at Willkie, Farr & Gallagher, LLP, 787
11  Seventh Avenue, New York, New York, before
12  Mary F. Bowman, a Registered Professional
13  Reporter, Certified Realtime Reporter, and
14  Notary Public of the States of New Jersey
15  and New York.
```

Page 3

```
 2             APPEARANCES:

 4  WILLKIE FARR & GALLAGHER, LLP
 5  Attorneys for Plaintiffs
 6      1875 K Street, NW
 7      Washington DC  20006
 8  BY: MICHAEL J. GOTTLIEB, ESQ.
 9      M. ANNIE HOUGHTON-LARSEN, ESQ.
10      MAGGIE MacCURDY, ESQ.
11      MERYL GOVERSKI, ESQ. (Via Zoom)
12      JOHN KNOBLETT, ESQ.  (Via Zoom)
13         -and-
14  DUBOSE MILLER LLC
15      75 14th Street NE, Suite 2110
16      Atlanta, Georgia 30309
17  BY: VON A. DUBOSE, ESQ. (Via Zoom)
18         -and-
19  UNITED TO PROTECT DEMOCRACY, INC.
20      82 Nassau Street, #601
21      New York, NY 10038
22  BY: JOHN LANGFORD, ESQ. (Via Zoom)
```

Page 4

```
 2             APPEARANCES:

 4  CAMARA & SIBLEY
 5  Attorneys for Defendant
 6      1108 Lavaca Street, Suite 110263
 7      Austin, TX 78701
 8  BY: JOE SIBLEY, ESQ.
 9         -and-
10  DAVIDOFF HUTCHER & CITRON LLP
11      605 Third Avenue
12      New York, New York   10158
13  BY: ROBERT J. COSTELLO, ESQ.

18  Also Present:
19      Deverell Write, Legal Videographer
```

Page 5

Giuliani

THE VIDEOGRAPHER: We are on the record at 9:36 a.m. on March 1, 2023.

Please note that the microphones are sensitive and may pick up whispers and private conversations. Audio and video recording will continue to take place unless all parties agree to go off the record.

This is media unit 1 of the video-recorded deposition of Rudolph Giuliani. This the taken by counsel for the plaintiff in the matter of Ruby Freeman, et al., versus Rudolph W. Giuliani.

This case is pending in the United States District Court for the District of Columbia. We're at the offices the Willkie Farr & Gallagher located at 787 Seventh Avenue.

My name is Deverell Write from Veritext Legal Solutions. The court reporter is Mary Bowman from Veritext Legal Solutions.

At this time, will counsel please

2 (Pages 2 - 5)

Page 190

Giuliani

into machines, counting machines, to affect the vote.

It wasn't only them. There were other pictures and other people doing it, maybe three -- three different groups.

I asked, Are we talking about the voting machine? Or are we talking about the counting machine? Because the counting machines were Dominion also.

And they said they weren't sure. But by looking at the -- by looking at the drive, they couldn't tell which it was, whether it was the counting machine or the voting machine.

Q. When you say, "by looking at the drive," you're saying by looking at the thumb drive that was allegedly seen --

A. When they looked at the thumb drive, they said it didn't show them anything as to whether or not it was for one machine or the other, and they didn't think there was much of a distinction between the thumb drives that you use.

So I guess the end result of it

Page 191

Giuliani

is, it was impossible to tell whether these were being prepared for the machines on Election Day or then the calculating machines that were going to be used afterwards.

Q. When you say, "the calculating machines," you're talking about -- I just want to make sure we are on the same page on terminology -- there are voting machines at the polling places that voters use to cast a ballot.

A. Right.

Q. And then there are scanning and tabulation machines that occur that state officials have access to.

So when you say the -- which of those machines --

A. They were confused about which of those machines they were to be used for. If I could give you the consensus of opinion is that they were being used for the election machines, the actual election machines.

Q. The counting and tabulation

Page 192

Giuliani

machines?

A. Counting machines, yes.

Q. So the idea was --

A. But it wasn't clear.

Q. Okay. The idea was -- I just want to make sure I understand the theory.

The idea was these flash drives or hard drives were being used and placed in either the voting machines or the counting machines to then alter the count at the end of -- when all was said and done with counting the votes that happened on Election Day, is that right?

A. Yeah, but I mean -- yeah, I mean, that was implied, but I'm not sure that was said.

Q. So it might have been the machines at the polling places?

A. Yeah, I think that was what I took out of it, that it was the polling places.

Q. And it might have been the machines at State Farm?

A. I can't exclude that.

Page 193

Giuliani

Q. But in any event, the idea was essentially, these workers are passing off these thumb drives or hard drives to each other. They are then going into some machines somewhere and that is altering the way votes are tabulated and counted when all is said and done?

A. Yeah, that they had been doing this during that big, long -- big, long period for sending in your votes. They had been -- they started -- they started the manipulation of the votes right from the beginning of the absentee ballots being sent in.

Q. Okay. And so you're saying that you saw video that was from the start of that period?

A. No, this was -- this appeared to be -- well, actually, I should describe what I saw.

I saw a video, fairly dark room, looked like an office room, and they were handing off these drives. They described it as -- they described it as thumb drives

49 (Pages 190 - 193)

Page 194

Giuliani

that were -- that are being used to recalculate the vote, and reiterated to me, you know, that thing about Dominion not being able to be accessed by the internet is bullshit.

I say, Yeah, I know that. I've seen the videos of them accessed by it. And I've even seen the manual which allows it. And I've seen the movie -- what the heck is the name of it -- Killing Field back in 2017 that warns people that the Dominion machine can do this.

And Senator Klobuchar wants them banned.

Yeah, I said, I know all about that.

Q. Sorry, sir, you said, "they" said this to you. Who is "they"?

A. The people who were showing it to me.

Q. Do you remember any of the specific people involved in that presentation?

A. I don't. I could probably

Page 195

Giuliani

reconstruct them by talking maybe to Jenna or --

Q. And "Jenna" is who, I'm sorry?

A. Jenna Ellis, who is my assistant in -- because they brought me over to them, you've got to see this.

Q. Okay. Do you recall when this meeting was where you were shown this video?

A. I'm going to say, without great assurance, but some, that it was the same day that I testified. The same date that I testified on December 3rd. December 3rd.

Q. In Georgia?

A. In Atlanta. I saw it in Atlanta.

Q. You saw it in Atlanta. Okay.

So you saw this video at the RNC -- some RNC offices in Atlanta, right around the time you were testifying?

A. Yeah, it could have been. And it could have been at the lawyers' office, too.

I saw it again, it was replayed for me again in Washington, so that other

Page 196

Giuliani

people could see it. So I've seen it maybe three or four times, but that was the first time I saw it. And there were no different observations the second or third time.

Q. Did you all then show this video in any of the subsequent hearings in Georgia?

A. I think it's in Ligon's report.

Q. Sorry --

A. I'm sorry, Senator Ligon and conducted the investigation. He had about a hundred witnesses of fraud in Georgia, and then he wrote up a summary report alleging that the vote was inaccurate.

And I don't know if he came to the conclusion that it was outcome determinative. He came to the conclusion that it was inaccurate enough that it had to be recounted and forensically audited.

I believe in that, he came to the conclusion that these votes were manipulated this way. I'm pretty sure of that.

Q. And --

Page 197

Giuliani

A. And this stuff was being prepared for his committee.

Q. Okay. So just to make sure I understand, you don't -- you don't presently have a recollection of who might have presented this information to you at the Republican committee offices but you think Jenna Ellis might be able to --

A. Yeah, it would have been among the group of lawyers presenting evidence to the Republican Senate subcommittee investigating election fraud that culminated in a report that he submitted in early January.

Q. Was Jackie Pick involved with that?

A. I don't know.

It does cover -- it does cover the video. So I guess the answer to that is, I imagine she was. Otherwise, who else would have taken him through the video.

I didn't. My contribution of the video was watching it with him.

Q. Is it your view -- I know you've

50 (Pages 194 - 197)

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

```
              VERITEXT LEGAL SOLUTIONS
       COMPANY CERTIFICATE AND DISCLOSURE STATEMENT
```

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.