# EXHIBIT 5

*People v. Jenna Lynn Ellis.* 23PDJ004. March 8, 2023.

The Presiding Disciplinary Judge approved the parties' stipulation to discipline and publicly censured Jenna Lynn Ellis (attorney registration number 44026). The public censure is effective March 8, 2023.

In November and December 2020, while serving as a senior legal advisor to the then-President of the United States and as counsel for his reelection campaign, Ellis made misrepresentations on national television and on Twitter regarding the 2020 presidential election.

Through this conduct, Ellis violated Colo. RPC 8.4(c) (it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).

The case file is public per C.R.C.P. 242.41(a). Please see the full opinion below.

|  |  |
|---|---|
| SUPREME COURT, STATE OF COLORADO<br>ORIGINAL PROCEEDING IN DISCIPLINE BEFORE<br>THE OFFICE OF THE PRESIDING DISCIPLINARY JUDGE<br>1300 BROADWAY, SUITE 250<br>DENVER, CO 80203<br>_____<br>**Complainant:**<br>THE PEOPLE OF THE STATE OF COLORADO<br><br>**Respondent:**<br>JENNA LYNN ELLIS, #44026 | _____<br>Case Number:<br>**23PDJ004** |
| **OPINION APPROVING STIPULATION TO DISCIPLINE UNDER C.R.C.P. 242.19(c)** ||

While serving as a senior legal advisor to the then-President of the United States and as counsel for his reelection campaign, Jenna Lynn Ellis ("Respondent") repeatedly made misrepresentations on national television and on Twitter, undermining the American public's confidence in the 2020 presidential election. The parties stipulate that Respondent's misconduct warrants public censure, and the Presiding Disciplinary Judge ("the Court") approves the parties' stipulation.

## I. STIPULATED FACTS AND ARGUMENT

On February 13, 2023, Jessica E. Yates and Jacob M. Vos, Office of Attorney Regulation Counsel ("the People"), and Michael W. Melito, counsel for Respondent, filed a "Stipulation to Discipline Pursuant to C.R.C.P. 242.19." In the stipulation, the parties agree that Respondent should be publicly censured.

The parties stipulate to the following facts. From February 2019 to January 15, 2021, Respondent was a senior legal advisor to the then-serving President of the United States. She "was a member of President Trump's legal team . . . that made efforts to challenge President Biden's victory in the 2020 Presidential Election."[1] Though Respondent "was part of the legal team . . . she was not counsel of record for any of the lawsuits challenging the election results."[2] Respondent made ten public misrepresentations in November and December 2020 in her capacity as counsel for the then-President's reelection campaign and as personal counsel to the then-President, while also advertising her status as a lawyer.

---

[1] Stip. ¶ 6(a).
[2] Stip. ¶ 6(c).

Respondent agrees she made the following ten misrepresentations:

- On November 13, 2020, Respondent claimed that "Hillary Clinton still has not conceded the 2016 election."
- On November 20, 2020, Respondent appeared on Mornings with Maria on Fox Business and stated: "We have affidavits from witnesses, we have voter intimidation, we have the ballots that were manipulated, we have all kinds of statistics that show that this was a coordinated effort in all of these states to transfer votes either from Trump to Biden, to manipulate the ballots, to count them in secret . . ."
- On November 20, 2020, Respondent appeared on Spicer & Co. and stated, "with all those states [Nevada, Michigan, Pennsylvania, Wisconsin, Georgia] combined we know that the election was stolen from President Trump and we can prove that."
- On November 21, 2020, Respondent stated on Twitter under her handle @JennaEllisEsq., " . . . SECOND, we will present testimonial and other evidence IN COURT to show how this election was STOLEN!"
- On November 23, 2020, Respondent appeared on The Ari Melber Show on MSNBC and stated, "The election was stolen and Trump won by a landslide."
- On November 30, 2020, Respondent appeared on Mornings with Maria on Fox Business and stated, "President Trump is right that there was widespread fraud in this election, we have at least six states that were corrupted, if not more, through their voting systems. . . We know that President Trump won in a landslide." She also stated, "The outcome of this election is actually fraudulent it's wrong, and we understand than when we subtract all the illegal ballots, you can see that President Trump actually won in a landslide."
- On December 3, 2020, Respondent appeared on Mornings with Maria on Fox Business and stated, "The outcome of this election is actually fraudulent it's wrong, and we understand than when we subtract all the illegal ballots, you can see that President Trump actually won in a landslide."
- On December 5, 2020, Respondent appeared on Justice with Judge Jeanine on Fox News and stated, "We have over 500,000 votes [in Arizona] that were cast illegally . . ."
- On December 15, 2020, Respondent appeared on Greg Kelly Reports on Newsmax and stated, "The proper and true victor, which is Donald Trump . . ."
- On December 22, 2020, Respondent stated on Twitter, through her handle @JennaEllisEsq, "I spent an hour with @DanCaplis for an in-depth discussion about President @realDonaldTrump's fight for election integrity, the overwhelming evidence proving this was stolen, and why fact-finding and truth—not politics—matters!"

Respondent made these misrepresentations on Twitter and on various television programs, including Fox Business, MSNBC, Fox News, and Newsmax.[3] The parties agree that by making these misrepresentations, Respondent violated Colo. RPC 8.4(c), which provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

---

[3] Stip. ¶ 6(e). The Court understands that these television programs are nationally televised broadcasts.

2

The parties ask the Court to approve their stipulation and to publicly censure Respondent for this misconduct. In doing so, the parties rely on *Standard* 5.13 under the American Bar Association *Standards for Imposing Lawyer Sanctions* ("ABA *Standards*"),[4] which provides that "[public censure] is generally appropriate when a lawyer knowingly[5] engages in any [non-criminal] conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law."

On February 15, 2023, the Court ordered the parties to set this matter for a hearing on the stipulation. The Court asked the parties to address whether ABA *Standard* 5.13 is the most fitting ABA *Standard* for Respondent's misconduct. The Court also directed the parties to address the applicability of other ABA *Standards*, including ABA *Standards* 7.1, 7.2, and 5.11(b). At the hearing, which took place on March 1, 2023, the Court heard legal argument from both parties as to the appropriate ABA *Standards* and in support of their proposed sanction.[6] The parties represented that they could not locate published lawyer discipline cases that present facts akin to those to which they stipulate, noting that this case is novel and one of first impression. Throughout the hearing, the parties also signaled that First Amendment considerations, including limitations on lawyers' speech, were an important part of their analysis in reaching the terms of their negotiated settlement.

## II.   STANDARD OF REVIEW AND LEGAL ANALYSIS

In considering a stipulation to discipline, the Court "may either reject the stipulation and order that the disciplinary proceeding go forward . . . or approve the stipulation and enter an appropriate order."[7] The Court endeavors to accord parties broad latitude to fashion mutually agreeable resolutions, wishes to honor parties' agreements, and is favorably inclined to accept targeted and proportionate stipulations that protect the public and promote confidence in the legal profession.

Reviewing stipulations "[u]sing discretion and in accordance with the considerations governing imposition of disciplinary sanctions,"[8] the Court looks to the ABA *Standards* as its guiding authority in imposing an appropriate sanction, unless doing so would contradict Colorado Supreme Court case law.[9] The Court is also guided by the Colorado Supreme Court's

---

[4] Found in ABA *Annotated Standards for Imposing Lawyer Sanctions* (2d ed. 2019).

[5] The parties stipulate that Respondent acted with a mental state that was "at least reckless." Stip. ¶ 13(b). For disciplinary purposes, recklessness is treated as equivalent to a knowing state of mind, with a limited exception not applicable here. *See* Colo. RPC 1.0 cmt. 7A; *People v. Small*, 962 P.2d 258, 260 (Colo. 1998).

[6] Yates and Vos appeared on the People's behalf, and Melito appeared for Respondent, who did not attend the hearing.

[7] C.R.C.P. 242.19(c).

[8] C.R.C.P. 242.19(c).

[9] *See In re Roose*, 69 P.3d 43, 46-47 (Colo. 2003). The ABA *Standards* were created to "enhance the consistency of the sanctions imposed in attorney disciplinary proceedings." *Id.* at 47.

stated regulatory objectives to increase public understanding of and confidence in the rule of law and to ensure lawyers' compliance with the rules of professional conduct and other rules in a manner that is fair, efficient, effective, targeted, and proportionate.[10] This Court is thus cognizant that disciplinary decisions serve to guide and educate the members of the legal profession.[11]

The Court understands that this matter presents unique facts, and it is keenly aware that it does not have the benefit of factually analogous cases imposing discipline. Absent comparable prior cases, the Court's analysis centers exclusively on the ABA *Standards* and interpretive Colorado Supreme Court case law, which provide a framework to assess the stipulation.

The ABA *Standard* 5.0 series sanctions lawyers for violations of duties owed to the public, and the ABA *Standard* 5.1 series specifically focuses on lawyers' failure to maintain personal integrity. ABA *Standard* 5.1 appears singular in that it takes no account of the type or quantum of harm a lawyer's misconduct causes. Under ABA *Standard* 5.11(b), disbarment is generally appropriate when a lawyer engages in intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice. ABA *Standard* 5.12 provides for suspension when a lawyer's dishonesty implicates criminal misconduct. Under a strict reading of the *Standards*, it is not applicable here.[12] ABA *Standard* 5.13 provides that reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.[13]

---

[10] Preamble to Chapters 18 to 20 of the Colorado Rules of Civil Procedure, ¶¶ 1- 2.

[11] *See In Re Attorney C.*, 47 P.3d 1167, 1174 (Colo. 2002).

[12] *See In re Convisser*, 242 P.3d 299, 313 (N.M. 2010) ("Under Standard 5.13, a reprimand is generally considered appropriate when a lawyer knowingly engages in non-criminal conduct involving dishonesty, fraud, deceit, or misrepresentation that adversely reflects on his or her fitness to practice law."); *In re Schaeffer*, 45 A.3d 149, at *9 (Del. 2012) ("The main distinction between Standard 5.12 and Standard 5.13 appears to be the seriousness of the conduct, with Standard 5.12 focused on 'criminal conduct' that 'seriously adversely reflects on the lawyer's fitness to practice' and Standard 5.13 focused on 'other [presumably non-criminal] conduct.'") (alteration in original).

[13] Significant gaps exist between ABA *Standards* 5.13 and 5.11(b). Those gaps include the distinction in the mental state—intentional versus knowing—and whether the lawyer's conduct "adversely reflects" or "seriously adversely reflects" on a lawyer's fitness to practice law. Moreover, suspension under ABA *Standard* 5.1 is limited to certain criminal conduct, leaving the binary option of disbarment or public censure as the only available sanctions for noncriminal conduct under this ABA *Standard*. Courts have repeatedly struggled with this aspect of ABA *Standard* 5.1's design. *See People v. Steinman*, 452 P.3d 240, 250 (Colo. O.P.D.J. 2019) (imposing suspension under ABA *Standard* 7.2 after a prosecutor made misrepresentations to his supervisors and to another lawyer regarding his work on a civil matter, finding that an analysis under ABA *Standard* 5.1 "suggests that the presumptive sanction should occupy a middle ground between disbarment and public censure" because the conduct, though intentional, did not seriously adversely reflect on the lawyer's fitness to practice law); *see also In re Graeff*, 485 P.3d 258, 265 (Or. 2021) (recognizing that analysis under *Standard* 5.1 is "not a perfect fit"); *In re*

In contrast, ABA *Standard* 7.0 implicates violations of the duties lawyers owe as professionals, which generally involve "false or misleading communication about the lawyer or the lawyer's services, improper communication of fields of practice, improper solicitation of professional employment from a prospective client, unreasonable or improper fees, unauthorized practice of law, improper withdrawal from representation, or failure to report professional misconduct." Under ABA *Standard* 7.2, suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

Although ABA *Standard* 7.2 seemingly fits the fact pattern at hand, the Colorado Supreme Court's opinion in *In re Rosen* counsels against relying on that *Standard* outside the context of lawyers' misrepresentations while executing their professional duties.[14] *Rosen* further counsels against imposing a sanction in the gap left between ABA *Standards* 5.11(b) and 5.13. Indeed, the *Rosen* court addressed at length the appropriate *Standards* to apply when faced with instances of lawyer misrepresentation:

> Unless deceit or misrepresentation is directed toward a client, *see* ABA Standard 4.6, a tribunal, *see* ABA Standard 6.1, or the legal profession itself (as, for example, by making false representations in applying for admission to the bar), *see* ABA Standard 7.0, it is considered by the ABA Standards to be the violation of a duty owed to the public, *see* ABA Standard 5.0. As the violation of a duty owed to the public (as distinguished from a client, a court, or the profession), even conduct involving dishonesty, fraud, deceit, or misrepresentation, *as long as it falls short of actual criminality or comparable intentional conduct seriously adversely reflecting on one's fitness to practice law*, should generally be sanctioned only by reprimand, or censure.[15]

With these authorities in mind, the Court turns to the parties' stipulation. Respondent and the People agree that Respondent made ten misrepresentations on Twitter and to nationally televised audiences in her capacity as personal counsel to the then-President of the United States and as counsel for his reelection campaign. The parties agree that Respondent made these statements, which violated Colo. RPC 8.4(c), with at least a reckless state of mind. The parties agree that Respondent was not counsel of record in any lawsuits challenging the 2020 election results. The parties agree that Respondent, through her conduct, undermined the American public's confidence in the presidential election, violating her duty of candor to the public. Finally, the parties agree that two aggravators apply—Respondent had a selfish motive and she engaged in a pattern of misconduct—while one factor, her lack of prior discipline, mitigates her misconduct.

---

*Flannery*, 47 P.3d 891, 895 (Or. 2002) (same); *In re Complaint as to Conduct of Carpenter*, 95 P.3d 203, 211 (Or. 2004) (same); *In re Discipline of Walton*, 287 P.3d 1098, 1103 (same).
[14] 198 P.3d 116 (Colo. 2008).
[15] *Id.* at 120 (emphasis added).

5

Based on the parties' agreements and *Rosen*'s clear directives, the Court concludes that ABA *Standard* 5.13 applies in this circumstance. Though the aggravating factors outweigh the mitigators, the factors are not so out of balance as to warrant departing from the presumptive sanction of public censure. Given the limited information before the Court—which includes only the four corners of the parties' stipulation and their arguments supporting this outcome at the hearing on March 1, 2023—the Court finds the terms of the stipulation to be consistent with the considerations governing imposition of disciplinary sanctions and **APPROVES** the parties' stipulation in this case.

DATED THIS 8th DAY OF MARCH, 2023.

_____
BRYON M. LARGE
PRESIDING DISCIPLINARY JUDGE