## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUBY FREEMAN | |
| and | Civil Action No. 21-3354 (BAH) |
| WANDREA MOSS, | ORAL ARGUMENT REQUESTED |
| Plaintiffs, | |
| v. | |
| RUDOLPH W. GIULIANI, | |
| Defendant. | |

## PLAINTIFFS' MOTION TO COMPEL BERNARD KERIK TO PRODUCE A DOCUMENT-BY-DOCUMENT PRIVILEGE LOG AND TO PRODUCE DOCUMENTS AND TESTIMONY IMPROPERLY WITHHELD AS PRIVILEGED

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND.................................................................................................1

    A.     Mr. Kerik Played A Central Role In Giuliani's Scheme To Defame Plaintiffs.......1

    B.     Mr. Kerik Is Withholding Documents And Testimony Based On Purported Privilege Grounds. ..................................................................................................5

LEGAL STANDARD.......................................................................................................10

ARGUMENT....................................................................................................................12

I.      MR. KERIK HAS WAIVED HIS RIGHT TO OBJECT TO PLAINTIFFS' SUBPOENAS FOR DOCUMENTS...................................................................12

II.    THE COURT SHOULD COMPEL MR. KERIK TO PRODUCE A DOCUMENT-BY-DOCUMENT PRIVILEGE LOG FOR ALL OF THE DOCUMENTS HE IS WITHHOLDING......................................................................................................12

III.   THE COURT SHOULD COMPEL MR. KERIK TO PRODUCE THE 43 WITHHELD DOCUMENTS BECAUSE THE FACE OF THE KERIK PRIVILEGE LOG SHOWS THEY ARE NOT PROTECTED WORK PRODUCT.......................................14

IV.   THE COURT SHOULD COMPEL MR. KERIK TO ANSWER THE QUESTIONS HE WAS IMPROPERLY INSTRUCTED NOT TO ANSWER DURING HIS DEPOSITION. ......................................................................................................18

V.    THE COURT SHOULD AWARD PLAINTIFFS COSTS AND FEES PURSUANT TO RULE 37. ............................................................................................................20

CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. FBI*,
  186 F.R.D. 21 (D.D.C. 1998) ........................................................................................10, 12

*Alexander v. FBI*,
  192 F.R.D. 12 (D.D.C. 2000) ................................................................................................18

*Alexander v. FBI*,
  192 F.R.D. 42 (D.D.C. 2000) ........................................................................................11, 15

*Athridge v. Aetna Cas. & Sur. Co.*,
  184 F.R.D. 200 (D.D.C. 1998) .............................................................................................15

*Banneker Ventures, LLC v. Graham*,
  253 F. Supp. 3d 64 (D.D.C. 2017) .......................................................................................11

*Calvin Klein Trademark Tr. v. Wachner*,
  198 F.R.D. 53 (S.D.N.Y. 2000) ............................................................................................16

*Chevron Corp. v. Weinberg Grp.*,
  286 F.R.D. 95 (D.D.C. 2012) ........................................................................................11, 13

*Cobell v. Norton*,
  213 F.R.D. 16 (D.D.C. 2003) ...............................................................................................12

*DL v. District of Columbia*,
  251 F.R.D. 38 (D.D.C. 2008) ...............................................................................................20

*Ellis v. U.S. Dep't of Just.*,
  110 F. Supp. 3d 99 (D.D.C. 2015), *aff'd*, No. 15-5198, 2016 WL 3544816
  (D.C. Cir. June 13, 2016) .....................................................................................................13

*Jones v. Carson*,
  No. CV 15-310, 2018 WL 11410070 (D.D.C. Mar. 30, 2018) ......................................13, 16

*Jordan v. U.S. Dep't of Just.*,
  591 F.2d 753 (D.C. Cir. 1978) ..............................................................................................14

*Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*,
  926 F. Supp. 2d 121 (D.D.C. 2013) ......................................................................................14

*In re Lindsey*,
  158 F.3d 1263 (D.C. Cir. 1998) ............................................................................................16

*Loftin v. Bande*,
    258 F.R.D. 31 (D.D.C. 2009)................................................................................................13

*Nat'l Sec. Couns. v. CIA*,
    960 F. Supp. 2d 101 (D.D.C. 2013) ...................................................................................11

*Parsi v. Daioleslam*,
    778 F.3d 116 (D.C. Cir. 2015) ...........................................................................................20

*Pub. Citizen, Inc. v. U.S. Dep't of Educ.*,
    388 F. Supp. 3d 29 (D.D.C. 2019) .....................................................................................11

*In re Sealed Case*,
    146 F.3d 881 (D.C. Cir. 1998)...........................................................................................16

*In re Sealed Case*,
    676 F.2d 793 (D.C. Cir. 1982)...........................................................................................17

*Shvartser v. Lekser*,
    292 F. Supp. 3d 272 (D.D.C. 2018) .............................................................................10, 12

*United States v. All Assets Held at Bank Julius Baer & Co.*,
    315 F.R.D. 103 (D.D.C. 2016)...........................................................................................17

*United States v. Philip Morris Inc.*,
    212 F.R.D. 421 (D.D.C. 2002)......................................................................................15, 19

*In re Veiga*,
    746 F. Supp. 2d 27 (D.D.C. 2010) .....................................................................................11

**Rules**

Fed. R. Civ. P. 26(b)(1)...............................................................................................................11

Fed. R. Civ. P. 26(b)(5)...............................................................................................................11

Fed. R. Civ. P. 26(b)(5)(A)..........................................................................................................11

Fed. R. Civ. P. 30(c)(2)................................................................................................................12

Fed. R. Civ. P. 37(a)(5)(A)..........................................................................................................20

Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii)..............................................................................................20

Fed. R. Civ. P. 45(d)(2)(B) .........................................................................................................10

Plaintiffs Ruby Freeman and Wandrea ArShaye ("Shaye") Moss (collectively, "Plaintiffs") respectfully submit Plaintiffs' Motion to Compel Bernard Kerik to produce a document-by-document privilege log and to produce documents and testimony improperly withheld as privileged (the "Motion") and the accompanying Declaration of M. Annie Houghton-Larsen, in support.[1]  Specifically, Plaintiffs seek the following forms of relief: (1) Mr. Kerik to produce a document-by-document privilege log for all the documents he is withholding that are responsive to Plaintiffs' requests; (2) Mr. Kerik to produce 43 specific documents that he is improperly withholding as work product privilege; (3) Mr. Kerik to provide testimony that he was improperly instructed not to answer during his deposition; and (4) Mr. Kerik to pay the costs and fess of this Motion.

## FACTUAL BACKGROUND

### A.    Mr. Kerik Played A Central Role In Giuliani's Scheme To Defame Plaintiffs.

In the days after the 2020 presidential election, Defendant Rudolph Giuliani asked his decades-long confidante, Bernard Kerik, to "come back and assist him" in efforts to challenge the results of the 2020 presidential election.  (Ex. 1 at 12:24–13:5; Ex. 2 at 37:18–39:2; Ex. 3 at 821:14–822:3.)   Mr. Kerik answered that call and became, in his own words, "the primary investigator and coordinator" for Defendant Giuliani's post-2020 election efforts. (Ex. 3 at 824:6–7). Mr. Kerik agreed that he was "one of the main people funneling information" to Defendant Giuliani because, in Mr. Kerik's words, "not a lot of people had access to the Mayor's email address, so most of the stuff that was emailed to the Mayor came to my email or came through me." (*Id.* at 825:2–7, 828:17–21.)

---

[1] Pursuant to Rule 7(m), Plaintiffs conferred with Defendant Giuliani regarding this Motion. Defendant Giuliani does not oppose this Motion.

Beyond Mr. Kerik's own testimony, Mr. Kerik was identified as a "key member" of the Giuliani Team Strategic Communications Plan (the "Giuliani Strategic Plan"), which described a nationwide "communications outreach campaign to educate the public on the fraud numbers, and inspire citizens to call upon legislators and members of Congress." (Ex. 2 at 92:8–11; Ex. 4 at 3–23.) The Giuliani Strategic Plan falsely accused Plaintiffs of committing election fraud while serving as nonpartisan election workers in Fulton County, Georgia. (Ex. 4 at 3–23; Dkt. 22 ¶¶ 19–20, 30–32.) Included in the Giuliani Strategic Plan is a summary sheet of "voter fraud highlights for 2020 US election" with a headline stating it was "[p]resented by the Giuliani Team" (hereinafter, summary sheet is defined as "Summary Sheet" and Mr. Kerik, together with the other individuals assisting Mr. Giuliani with his post-2020 Presidential election efforts, is defined as "Giuliani Team"). (Ex. 4 at 10.) Defendant Giuliani testified that the Summary Sheet was "kept up to date every week or two weeks" and relied on by the Giuliani Team. (Ex. 1 at 278:19–279:5.)

In December 2020, Mr. Kerik used his Twitter account to publish false accusations about Ms. Freeman and Ms. Moss similar to those contained in the Giuliani Strategic Plan and the Summary Sheet, and published by Defendant Giuliani:



Bernard B. Kerik ✔ @BernardKerik · Dec 3, 2020
Watching the **Georgia** Senate hearing video in which Democratic poll workers waited until the coast was clear, before pulling out containers of ballots and counting them without republican monitors. #Evidence of a #crime.



Bernard B. Kerik ✔ @BernardKerik · Dec 6, 2020
Now what can possibly be on that thumb drive? What's so secret, that they must act like it's a drug deal? Or, is it just my imagination? Same woman counting concealed ballots in Georgia? 🚨 Video Breakdown USB HANDOFF RUBY FREEMAN TO DAUGHTER youtu.be/uI0kI7JTPNo



**Bernard B. Kerik** ✔ @BernardKerik · Dec 11, 2020

This man @GeoffDuncanGA wants to certify an election where there is 100% irrefutable proof of election fraud involving at a minimum of 24,000 ballots that would make President @realDonaldTrump the winner! Why? #malfeasance #criminal Georgia wake up!



**Bernard B. Kerik** ✔ @BernardKerik · Dec 13, 2020

The fact that you and your lieutenant governor has known for weeks about clear-cut fraud in **Fulton** County and none of those people have been subpoenaed or arrested, no one should count on this fake assessment.



**Brian Kemp** ✔ @BrianKempGA · Dec 13, 2020

🏛 Governor candidate, GA

ICYMI: GBI using hand-picked task force to help look into possible election fraud across state  wsbtv.com/news/local/atl… #gapol



**Bernard B. Kerik** ✔ @BernardKerik · Dec 14, 2020

Ruby **Freeman** and her daughter in Georgia have yet to be questioned before a grand jury and there's been no #MSM coverage of their alleged crimes that were seen around the world. #coverup #censorship #Election2020 #StopTheSteal2020

(Ex. 5.)[2]  On December 28, 2020, Mr. Kerik emailed then-White House chief-of-staff Mark Meadows a copy of the Giuliani Strategic Plan (including the Summary Sheet), stating in the cover email:

> I know the mayor sent this to you last evening, but just wanted to emphasize the importance of timing.  We need to pull the trigger today, to have the impact that's needed in the states that we're targeting.

---

[2] *See* Bernard B. Kerik (@BernardKerik), Twitter (Dec. 3, 2020, 2:02 PM), https://perma.cc/8WLN-RCNT; *id.* (Dec. 6, 2020 at 12:22 AM), https://perma.cc/5S55-EAVL; *id.* (Dec. 11, 2020, 8:26 AM), https://perma.cc/Z95V-5BM2; *id.* (Dec. 13, 2020, 1:05 PM), https://perma.cc/DDK4-ZM9V; *id.* (Dec. 14, 2020, 12:21 AM), https://perma.cc/MR7B-K2N8.

(Ex. 4 at 1.)  Mr. Kerik's email explained that the purpose of the efforts described in the Giuliani

Strategic Plan and Summary Sheet was to target state legislators:

> There is only one thing that's going to move the needle and force the legislators to do what their constitutionally obligated to do, and that is apply pressure... specific pressure in targeted areas.  This plan does exactly that, while educating the American people who will then apply pressure to make sure their legislators refuse to certify a fraudulent vote count.
>
> We can do all the investigations we want later, but if the president plans on winning, it's the legislators that have to be moved, and this will do just that.  We're just running out of time.

(*Id.*)  A few hours after sending the email to Mr. Meadows, Mr. Kerik publicly posted the portion

of Summary Sheet on Georgia from the Giuliani Strategic Plan on his Twitter account, including

the portion that identified Plaintiffs by name:



(Ex. 5 at 6.)[3]

While the Giuliani Team was advancing legislative and political efforts in various states,

including Georgia, Mr. Giuliani has testified that the only post-2020 election *litigation* in which

he was involved related to alleged fraud in Pennsylvania.[4]

---

[3] *See* Bernard B. Kerik (@BernardKerik), (Dec. 28, 2020, 3:57 PM), https://perma.cc/6LJ7-V9TT.

[4] *See* Rudolph Giuliani Dep., H.R. Select Comm. to Investigate the January 6th Attack on the U.S. Capitol   (May   20,   2022),   https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-

**B.**    **Mr. Kerik Is Withholding Documents And Testimony Based On Purported Privilege Grounds.**

Plaintiffs initially sought discovery from Mr. Kerik via a Rule 45 subpoena in August of 2022 ("First Kerik Subpoena"), and shortly thereafter began to confer with his counsel via email. (*See* Houghton-Larsen Decl. ¶¶ 3–5.)  Without accepting service of the First Kerik Subpoena, Mr. Kerik's counsel, Timothy C. Parlatore, "reactivated" a public link to a collection of 53 documents that Mr. Kerik had produced to the Select Committee to Investigate the January 6th Attack on the United States Capital ("Select Committee") in November 2021.  (*See id.* ¶ 4.)  The 53 documents available at the public link included a privilege log listing 302 documents Mr. Kerik is withholding. (Ex. 6 ("Kerik Privilege Log").)   The Kerik Privilege Log lists the materials withheld on a categorical, rather than a document-by-document, basis, and does not include precise dates, specific names of recipients or authors, or the type, subject, title, or length of the withheld document or communication.  (*Id.*)   300 of the documents are withheld on "Attorney Work Product" grounds, with the exception being two documents withheld based on "UNK" grounds. (*Id.*)   The Kerik Privilege Log lists the following three categories to describe 43 withheld documents and/or communications ("43 Withheld Documents") which are at issue in this Motion:

---

[CTRL0000083774/pdf/GPO-J6-TRANSCRIPT-CTRL0000083774.pdf](CTRL0000083774/pdf/GPO-J6-TRANSCRIPT-CTRL0000083774.pdf) at 52:15-20 ("Giuliani Jan. 6th Comm. Dep.".)

| TYPE OF DOCUMENT | QUANTITY | REASON WITHHELD | GENERAL SUBJECT MATTER | DATE/ AUTHOR / ADDRESSEE | RELATIONSHIP OF AUTHOR/ | BASIS FOR WITHHOLDING |
|---|---|---|---|---|---|---|
| INTERNAL COMMUNICATIONS RELATED TO EXTERNAL MESSAGING | 37 | ATTORNEY WORK PRODUCT | INTERNAL COMMUNICATIONS FROM INVESTIGATION TEAM ATTORNEY TO TRUMP ELECTION TEAM & GIULIANI REGARDING EXTERNAL COMMUNICATIONS AND PLANS MADE IN CONSIDERATION OF FUTURE LITIGATION. | DATES: MULTIPLE DATES WITHIN THE WEEKS FOLLOWING ELECTIONS AND TALLIES AUTHORS: VARIOUS AUTHORS WITHIN THE TRUMP ELECTION TEAM DISCUSSING STRATEGIC COMMUNICATIONS ADDRESSEES: VARIOUS MEMBERS OF TRUMP ELECTION TEAM | via ATTORNEY/CLIENT RELATIONSHIP | COMMUNICATIONS MADE BY THE ELECTION INVESTIGATION LEGAL TEAM IN ANTICIPATION OF LITIGATION. |
| INTERNAL EMAILS ABOUT LEGISLATURE MEETINGS | 5 | ATTORNEY WORK PRODUCT | COMMUNICATIONS RELATED TO LEGISLATURE MEETINGS AND HEARINGS | DATES: BETWEEN O/A 1 NOVEMBER 2020 AND O/A 1 JAN 2021. AUTHORS: MEMBERS OF TRUMP LEGAL TEAM, AND THIRD PARTIES TO THE TRUMP LEGAL TEAM (E.G. "CJH") ADDRESSEES: MEMBERS OF TRUMP LEGAL TEAM | UNK | CREATED AND RETAINED FOR INVESTIGATION PURPOSES. |
| PACKETS OF EVIDENCE THAT ACCOMPANY AFFIDAVITS | 1 | ATTORNEY WORK PRODUCT | OBSERVATIONS OF WITNESSES OF INSTANCES OF FRAUD THAT WERE MEMORIALIZED IN ANTICIPATION OF LITIGATION. | DATES: BETWEEN O/A 1 NOVEMBER 2020 AND O/A 1 JAN 2021. AUTHORS: VARIOUS WITNESSES IDENTIFIED BY THE LEGAL INVESTIGATIVE TEAM ADDRESSEES: VARIOUS MEMBERS OF TRUMP ELECTION TEAM | via ATTORNEY/CLIENT RELATIONSHIP | AFFIDAVITS COLLECTED BY THE LEGAL TEAM IN ANTICIPATION OF LITIGATION. |

After Plaintiffs spent months negotiating with Mr. Kerik's counsel and made more than a dozen unsuccessful attempts to effectuate personal service on Mr. Kerik,[5] counsel for Mr. Kerik accepted service of the First Kerik Subpoena on November 14, 2022.  (*See* Houghton-Larsen Decl. ¶ 4.)  On November 21, 2022, Plaintiffs agreed to narrow the requests and provided examples of emails produced during discovery that were sent to Mr. Kerik but were not present in his production to the Select Committee.  (*See id.* ¶ 5.)  On December 21, 2022, Mr. Parlatore responded that "Mr. Kerik has looked and we do not seem to have any additional responsive documents to provide."  (*See id*. ¶ 6.)  Mr. Kerik has never explained why he does "not seem to have" any of the example communications Plaintiffs provided to him, on which he was copied, and which have been produced by other parties.

Plaintiffs spent months negotiating the time and place of Mr. Kerik's deposition.  Mr. Kerik's counsel, who lives in D.C., indicated that Mr. Kerik would not attend the deposition in

---

[5] The over a dozen good faith attempts to serve Mr. Kerik cost the Plaintiffs an estimated over $15,000. *See (*Houghton-Larsen Decl. ¶ 3)

New York and asked that the deposition instead take place in D.C.  (Ex. 7 at 5, 10–12.)[6]  Plaintiffs agreed and served Mr. Kerik via email to his counsel, with a third subpoena, which requested documents and noticed a deposition for March 20, 2023 at Willkie, 1875 K Street NW, #100, Washington, DC 20006.  (Ex. 8 ("Third Kerik Subpoena") (together with the First Kerik Subpoena and the Second Kerik Subpoena, the "Kerik Subpoenas").)  Mr. Kerik never formally responded to or objected to the Third Kerik Subpoena, or produced any documents or privilege in response. (Houghton-Larsen Decl. ¶ 10.)

Mr. Kerik appeared with his counsel at Willkie's D.C. office on March 20, 2023 for a deposition.  Mr. Kerik did not bring any documents to his deposition, despite testifying that his recollection was refreshed during deposition preparation by reviewing an "electronic file" of documents and reports he collected and reviewed about the post-2020 election efforts.  (Ex. 2 at 12:22–14:7.)  Mr. Kerik did not provide any supplemental privilege log, and it is unclear whether the contents of the "electronic file" include all of the items he has withheld as privileged.

Prior to Mr. Kerik's deposition, Mr. Parlatore expressed his view of the work product privilege: "Mr. Kerik served as an investigator under Mr. Giuliani and, as such*, all of his activities are covered under the work product privileg*e."  (Ex. 7 at 8) (emphasis added). During the deposition, Mr. Parlatore instructed Mr. Kerik not to answer four categories of questions based on work product privilege that related to:

- The purpose of the Giuliani Team's efforts (Ex. 2 at 41:21–44:11);

---

[6] Plaintiffs have spent many months in communication with counsel for Mr. Kerik, who has repeatedly cast aspersions at counsel for Plaintiffs, including most recently accusing undersigned counsel of making misrepresentations in the course of conferrals.  Counsel for Plaintiffs chose not to engage the false accusations, but does not concede their accuracy and respectfully submits much of that lengthy correspondence attached herein speaks for itself.

- The work he performed in six swing states, including Georgia (*id*. at 47:6–49:4, 52:21–55:15);

- The methods of communication used by the Giuliani Team (*id*. at 51:19-52:20); and

- The members and roles of the Giuliani Team (*id*. at 55:17–57:4, 57:7–21)

(together, the "Withheld Testimony").[7]

In the months since Mr. Kerik's deposition, Plaintiffs have repeatedly attempted to confer with Mr. Parlatore regarding the 43 Withheld Documents, explaining that they do not appear on their face to be properly withheld, as well as regarding the improper assertions of privilege during his deposition. (*See* Ex. 10; Ex. 11 at 18–23.) Additionally, Plaintiffs requested that Mr. Kerik produce a document-by-document privilege log in order for Plaintiffs to assess both the 43 Withheld Documents, as well as the other documents withheld. (Ex. 11 at 18–23.) On April 20, 2023, Plaintiffs' counsel emailed counsel for Mr. Kerik and requested the following:

> Having re-reviewed the privilege log Mr. Kerik produced in connection with his production to the J6 Committee in light of the deposition testimony of Mr. Giuliani and Mr. Kerik, Plaintiffs believe that some of the documents are responsive to Plaintiffs' subpoena and either should not have been withheld as privileged in the first place, or are no longer properly withheld as privileged because the privilege has been waived. In sum, **Plaintiffs request that Mr. Kerik promptly produce: the 37 "internal communications related to external messaging." Plaintiffs also request that Mr. Kerik promptly confirm whether the 5 "internal emails about legislature meetings" relate to the Georgia State Legislature, and, if they do, to promptly produce them. Plaintiffs further request that Mr. Kerik promptly confirm whether the single "packets of evidence that accompany affidavits" relates to Fulton County, and, if it does, to promptly produce that as well.** We address each of these categories below.

(*Id*. at 19.) (emphasis in original). A few days later, Plaintiffs' counsel followed up again, including to suggest that "because Mr. Giuliani was attorney relevant to Mr. Kerik's claims of privilege, Mr. Kerik can provide the documents to Mr. Sibley, who can then clarify whether Mr.

---

[7] For ease of the Court's review, Plaintiffs attach a chart of the relevant testimony at Exhibit 9.

Giuliani has waived any applicable privilege or whether the documents are privileged.  In the event that Mr. Sibley confirms that the communications are not privileged, Mr. Kerik can then produce them to Plaintiffs.  In the event that Mr. Sibley asserts that the documents are privileged, Mr. Kerik can then provide a document-by-document privilege log." (*Id.* at 18.)  Mr. Parlatore stated that he will "discuss it with Mr. Sibley and, if necessary, the client" that that "there is a lot going on right now so this will take some time."[8]  (*Id.* at 16.)  Having received no substantive response, counsel for Plaintiffs followed up with Mr. Kerik's counsel on May 16, May 22, and May 24 and ultimately reached out directly to Mr. Sibley seeking his assistance. *See generally id.*  On May 31, 2023, counsel for Defendant Giuliani explained the following via an email chain that included Mr. Kerik's counsel:

> I would say that any communications or materials created in anticipation of the December 2020 Georgia Senate hearings are not privileged and should not be withheld.

> …if you mean the 'Giuliani Strategic Communication Plan' document or any iterations of that document then, yes, that subject matter would not be privileged because it was disclosed.

(*Id.* at 8.)  Mr. Sibley's conclusion is in accord with Defendant Giuliani's testimony during his own deposition that he was not involved in the lawsuits challenging the election in Georgia.  (Ex. 1. at 139:14–23.)[9]

1.       After Defendant Giuliani's counsel provided this clarification, Plaintiffs made a final attempt to confer with Mr. Parlatore to avoid motions practice.  (Ex. 11 at 4–8.)  On June 7, Mr. Parlatore explained that he had not yet begun the process of having Mr. Giuliani review Mr.

---

[8] This is not the first (or last) time that Mr. Parlatore has indicated that he was too busy to engage with Plaintiffs.  *See, e.g.,* (Houghton-Larsen Decl. ¶ 7) ("I have been extremely busy the past few weeks").

[9] *See* Giuliani Jan. 6th Comm. Dep. at 52:15–20.

Kerik's withheld documents because of a "technical glitch" and because "there are other more pressing matters that have taken priority." (*Id.* at 1.)  Unable to delay any longer, Plaintiffs filed the instant Motion.

Notwithstanding the numerous extensions and courtesies provided to Mr. Parlatore, on June 9, 2023, Plaintiff reached out to inquire whether Mr. Parlatore would accept service of this motion by electronic means.  Three minutes after Plaintiffs sent that inquiry, Mr. Parlatore responded claiming that his client had refused to permit him to accept service by email "given the total lack of courtesy that you have given me throughout this matter."  It is unclear how Mr. Parlatore was able to consult with his client in the intervening minutes between these two emails given the numerous obligations he has cited as reasons to be unable to comply with the subpoena for the past several months, but in any event, Plaintiffs deny his characterizations regarding courtesy. As the above history makes plain, Plaintiffs have repeatedly, over many months, attempted to give Mr. Parlatore and his client the time and space necessary to review less than 100 documents in response to a subpoena to which Mr. Kerik never objected.

To date, Plaintiffs have not received any of the 43 Withheld Documents or a document-by-document privilege log, or any assurance that Mr. Kerik would cure these withholdings or his Withheld Testimony.

## <u>LEGAL STANDARD</u>

Objections to a Rule 45 subpoena to produce documents "*must* be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."  Fed. R. Civ. P. 45(d)(2)(B) (emphasis added).  "The failure to serve written objections to a subpoena within the time frame specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections." *Alexander v. FBI*, 186 F.R.D. 21, 34 (D.D.C. 1998); *see also Shvartser v. Lekser*, 292 F. Supp. 3d 272, 275–76 (D.D.C. 2018) (granting motions to compel two third-party witnesses where the

witnesses did not raise written objections to Rule 45 subpoenas to produce documents and appeared at depositions without producing requested documents).

The party claiming privilege "bears the burden to prove the communication or document is protected." *Banneker Ventures, LLC v. Graham*, 253 F. Supp. 3d 64, 69 (D.D.C. 2017); *see also Pub. Citizen, Inc. v. U.S. Dep't of Educ.*, 388 F. Supp. 3d 29, 40 (D.D.C. 2019); Fed. R. Civ. P. 26(b)(5). A party must do so by introducing "competent evidence" that satisfies "each of the essential elements necessary to sustain a claim of privilege." *Pub. Citizen, Inc.*, 388 F. Supp. 3d at 40 (quoting *Alexander v. FBI*, 192 F.R.D. 42, 45 (D.D.C. 2000)). This evidence must be more than "conclusory statements, generalized assertions, and unsworn averments of [] counsel." *In re Veiga*, 746 F. Supp. 2d 27, 34 (D.D.C. 2010).

Federal Rule of Civil Procedure 26(b)(5)(A) requires that a party that claims privilege as to information must expressly make the claim and "describe the nature of the documents ... not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). "From the entry itself the opposing party and ultimately the judge should be able to tell that the information not being disclosed is properly claimed as privileged." *Chevron Corp. v. Weinberg Grp.*, 286 F.R.D. 95, 98 (D.D.C. 2012) (brackets omitted); *see also Nat'l Sec. Couns. v. CIA*, 960 F. Supp. 2d 101, 193–95 (D.D.C. 2013) (Howell, J.) (finding the CIA's privilege descriptions were insufficient for the court to determine that the documents were sent for the purpose of securing an opinion on law, legal services, or assistance in some legal proceeding).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim .... Information within the scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rule 30(c)(2) permits a person to instruct a deponent

- 11 -

not to answer when necessary to preserve a privilege.  *Id*. 30(c)(2).  Where a deponent was instructed not to answer in response to deposition questions that do not infringe on any privilege, the court may order the deponent to be redeposed and directed to answer the questions.  *See Cobell v. Norton*, 213 F.R.D. 16, 26–28 (D.D.C. 2003).

## ARGUMENT

### I.   MR. KERIK HAS WAIVED HIS RIGHT TO OBJECT TO PLAINTIFFS' SUBPOENAS FOR DOCUMENTS.

The Court is within its discretion to find that Mr. Kerik has waived his right to withhold any responsive documents based on purported privilege grounds for failure to assert any objections in response to the three Kerik Subpoenas requesting documents or to produce a privilege log in response to the same.  *See Alexander*, 186 F.R.D. at 34; *Shvartser*, 292 F. Supp. 3d at 275–76. None of the limited circumstances excusing *untimely* objections apply here, because Mr. Kerik's objections are not untimely—rather, they do not exist.  *See Alexander*, 186 F.R.D. at 34. Accordingly, the Court should compel Mr. Kerik to produce all of the responsive documents in his possession because he has waived his right to object to Plaintiffs' subpoenas.

### II.   THE COURT SHOULD COMPEL MR. KERIK TO PRODUCE A DOCUMENT-BY-DOCUMENT PRIVILEGE LOG FOR ALL OF THE DOCUMENTS HE IS WITHHOLDING.

Mr. Kerik has never produced a privilege log that complies with Rule 26, or even one that is addressed to the documents responsive to Plaintiffs' requests.  This Court should order Mr. Kerik to do so without further delay.  Even if the Kerik Privilege Log is properly applied to any of the Kerik Subpoenas (which Plaintiffs do not concede), the Court need not do more than glance at the Kerik Privilege Log to determine that it is insufficient as a matter of law.[10]  It is Mr. Kerik's burden

---

[10] Plaintiffs first raised concerns regarding the sufficiency of the Kerik Privilege Log on August 12, 2022.  (*See* Houghton-Larsen Decl. ¶ 5.)

to establish the basis for withholding materials based on work product.  At minimum, Mr. Kerik is required to:

> (1) provide a description of the nature of and contents of the withheld document, (2) identify the document's author or origin, (3) note the circumstances that surround the document's creation, and (4) provide some indication of the type of litigation for which the document's use is at least foreseeable.

*Ellis v. U.S. Dep't of Just.*, 110 F. Supp. 3d 99, 108 (D.D.C. 2015), *aff'd*, No. 15-5198, 2016 WL 3544816 (D.C. Cir. June 13, 2016) (internal citations omitted).

The Kerik Privilege Log does not provide virtually any of the information required by law. *See Chevron Corp.*, 286 F.R.D. at 98.  By way of example, the fifth entry of the Kerik Privilege Log describes 79 documents as "*internal communications related to conducting investigations into voter fraud*" and lists the date as "*multiple*" and authors as "*members of the Trump Legal Team*." (Ex. 6 at 2) (emphasis added.)  Similarly, the twelfth entry describes 18 documents as "*reports prepared by volunteer third parties for the Trump Legal Team*" and lists the date as "*between O/A 1 November 2020 and O/A 1 Jan 2021*" and authors as "*members of Trump Legal Team, researchers working with the team*."  (*Id.* at 3) (emphasis added.)  Plaintiffs are entitled to, and the Court should order Mr. Kerik to produce, a log which reflects the actual dates the communications were sent, the precise authors and recipients, an individualized description, and a description of the actual or anticipated litigations where work product protection is asserted.  *See Jones v. Carson*, No. CV 15-310 (CKK/GMH), 2018 WL 11410070, at *5 (D.D.C. Mar. 30, 2018) ("In this Court, privilege logs generally should 'state the basis upon which the privilege is claimed, state the subject matter, number of pages, author, date created, and the identity of all persons to whom the original or any copies of the document were shown or provided.'") (quoting *Loftin v. Bande*, 258 F.R.D. 31, 33 (D.D.C. 2009)).

During Mr. Kerik's deposition, counsel for Plaintiffs attempted to glean more information regarding Mr. Kerik's role assisting Defendant Giuliani's efforts following the 2020 Presidential election, in part in an effort to understand facts that would help understand the Kerik Privilege Log.  (Ex. 2. at 41:22–44:11, 47:6–50:4, 51:19–52:20, 52:21–55:8, 55:17–57:4, 57:7–21.)  As discussed below, counsel for Mr. Kerik objected to these questions and instructed Mr. Kerik not to answer any questions that would reveal any details about the team that Defendant Giuliani managed in the aftermath of the election.  (*Id.*)

### III.   THE COURT SHOULD COMPEL MR. KERIK TO PRODUCE THE 43 WITHHELD DOCUMENTS BECAUSE THE FACE OF THE KERIK PRIVILEGE LOG SHOWS THEY ARE NOT PROTECTED WORK PRODUCT.

While the Kerik Privilege Log provides insufficient information to assess the propriety of the majority of withheld documents, its face reflects that at a minimum the 43 Withheld Documents—37 "internal communications related to external messaging," five "internal emails about legislature meetings" and "packets of evidence that accompany affidavits"—are not protected work product.  (Ex. 6.)

"The work-product rule does not extend to *every* written document generated by anyone who happens to be an attorney, and it does not shield from disclosure *everything* that a lawyer does.  Its purpose is more narrow."  *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 142 (D.D.C. 2013) (quoting *Jordan v. U.S. Dep't of Just.*, 591 F.2d 753, 775 (D.C. Cir. 1978)) (emphasis added, cleaned up).  In assessing whether the party asserting privilege has carried its burden of showing the privilege applies, "the relevant inquiry is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation" based on a "subjective belief" by the preparing lawyer that "litigation was a real possibility."  *Id.* at 137 (citation and quotations omitted).  The Kerik Privilege Log fails to establish that the anonymous third parties—some of

whom were not even lawyers—reasonably anticipated litigation about anything relating to Georgia.

As an initial matter, Mr. Giuliani has testified that he and his team were focused on legislative and political advocacy in Georgia, but *not* involved in post-election *litigation* in Georgia (Ex. 1 at 139:14–23.)[11]  Counsel for Defendant Giuliani recently conceded that communications relating to legislative hearings would not be protected, stating to the Court that Defendant Giuliani would not be claiming "privilege on some of the meetings that Mr. Giuliani had with staff members and things like that before these Georgia hearings because, after looking at it, this was not in anticipation of litigation but in anticipation of presenting at a hearing which would not be privileged."  (Ex. 12 at 62:24–63:4.)  Thus, the attorney for whom Mr. Kerik was serving as an investigator has conceded that whatever materials Mr. Kerik possessed relating to Georgia were not created in anticipation of litigation.

Further, the face of the Kerik Privilege Log indicates that the withheld materials were not created in anticipation of litigation.  Documents created for purposes of "*external messaging*" and "*legislature meetings*" do not constitute legal work product, which protects only documents created "for the purpose of assisting an attorney in preparing for litigation, and not for some other reason."  *Alexander*, 192 F.R.D. at 46; *see also Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 200, 205 (D.D.C. 1998) (work product protects documents "prepared in order to assist an attorney in preparing for a trial or for use at that trial" and if they "were prepared for some other reason, the work-product privilege did not apply merely because a lawyer prepared them at some point during the pendency of litigation"); *United States v. Philip Morris Inc.*, 212 F.R.D. 421, 424 (D.D.C. 2002) ("The work product doctrine provides immunity from discovery for written materials that

---

[11] *See* Giuliani Jan. 6th Comm. Dep. at 52:15–20.

are prepared by a lawyer in anticipation of litigation.") (citations omitted).  The Kerik Privilege Log concedes as much by not even claiming that the five "*internal emails about legislature meetings*" were made in anticipation of litigation.  Those documents must be produced.  *See Jones*, 2018 WL 11410070, at *7 (granting a motion to compel as to documents claimed as work product, because the Defendant did not meet its burden of providing facts sufficient to show that "any of the attorneys involved in the creation of the documents at issue believed at the time that [related] litigation was a real possibility") (citing *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998)).

As far as the 37 communications "*related to external messaging*," the Kerik Privilege Log's conclusory assertion that they were made "*in anticipation of litigation*" is belied by the fact that it admits the communications were prepared for purposes of "*external communications*." *See In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998) (An attorney's "advice on political, strategic, or policy issues, valuable as it may [be], would not be shielded from disclosure by the attorney-client privilege."); *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) ("[I]t is obvious that as a general matter public relations advice, even if it bears on anticipated litigation, falls outside the ambit of protection of the so-called "work product" doctrine."); *Jones*, 2018 WL 11410070, at *7.  Furthermore, discovery in this case and testimony from both Mr. Kerik and Defendant Giuliani indicate that their Post-Election efforts were largely focused on a public and legislative communications campaign.  (Ex. 2 at 63:19–64:22, 80:3–81:8, 98:17–100:5; Ex. 4

at 3–23.)[12]  Lawsuits were filed to challenge the election in Georgia, but Defendant Giuliani and his team were not involved in them.  (Ex. 1 at 139:14–23.)[13]

Separately, with respect to the "*packets of evidence that accompany affidavits*," factual matter in a document only warrants work product protection if it reflects an attorney's mental processes—there is no reason to believe that the packets of evidence reflect any attorney mental processes.  *See United States v. All Assets Held at Bank Julius Baer & Co.*, 315 F.R.D. 103, 109 (D.D.C. 2016).  Rather, the Categorical Privilege Log describes these packets of evidence as "observations of witnesses" and authored by "various witnesses."  At a minimum, the Court should examine these documents to determine whether there is segregable "fact work product," which can be disclosed.  *See id.*

Putting aside whether the 43 Withheld Documents were properly withheld in the first place, Mr. Kerik has no basis to continue withholding them because any applicable privilege has been waived.  During his deposition, Mr. Giuliani testified extensively regarding the "*external messaging plan*" of his legal efforts, his reliance on certain affidavits as a basis for his statements, and his efforts with state legislatures and at hearings, and the Giuliani Strategic Communications Plan has been made public.  (*See, e.g.*, Ex. 1 at 238:3–246:5, 254:11–261:16, 262:25–274:21, 123:8–124:16, 139:24–164:16.)  As such, any applicable privilege was waived.  *See, e.g.*, *In re Sealed Case*, 676 F.2d 793 (D.C. Cir. 1982).

---

[12] *See* Giuliani Jan. 6th Comm. Dep. at 45:2–20, 49:4–15; Bernard Kerik Interview, H.R. Select Comm. to Investigate the January 6th Attack on the U.S. Capitol (Jan. 13, 2022), https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CTRL0000083774/pdf/GPO-J6-TRANSCRIPT-CTRL0000083774.pdf at 12:16–13:3, 18:2–11, 44:11–20 ("Kerik Jan. 6th Comm. Interview ".)

[13] *See* Giuliani Jan. 6th Comm. Dep. at 52:15–20.

IV.     **THE COURT SHOULD COMPEL MR. KERIK TO ANSWER THE QUESTIONS HE WAS IMPROPERLY INSTRUCTED NOT TO ANSWER DURING HIS DEPOSITION.**

During his March 20, 2023 deposition, Mr. Kerik was instructed not to answer by his attorney on six occasions on the basis that the questions called for the disclosure of protective work product.  (Ex. 9.)  These instructions reflect Mr. Parlatore's broad—and misguided—view of the work product privilege in this case:  "Mr. Kerik served as an investigator under Mr. Giuliani and, as such, *all of his activities are covered under the work product privileg*e."  (Ex. 7 at 8) (emphasis added).  "The test for whether a claim of work-product privilege is viable is whether, in light of the nature of the intangible work product and the factual situation in the particular case, the information can fairly be said to have been prepared or obtained because of the prospect of litigation."  *Alexander v. FBI*, 192 F.R.D. 12, 17 (D.D.C. 2000) (cleaned up.)  Each of these instructions was improper as the Withheld Testimony called for relevant, non-protected information.

Each of the objected-to questions did not seek information related to attorney impressions, opinions, or strategy regarding any anticipated or ongoing litigations but rather sought general, high-level information regarding the Giuliani Team.  For example, whether the Giuliani Team communicated by an email listserv or text thread is not information prepared or obtained because of litigation.  Whether Mr. Kerik viewed and treated Christina Bobb or any other third party as a member of the Giuliani team reveals nothing about any litigation strategy.  Whether the goal of Giuliani's efforts went beyond litigation, or what litigation it went towards, is not work product and is directly relevant to assessing the propriety of the claimed privilege.  Defendant Giuliani's counsel conceded as much when he represented to this Court last month that the Giuliani Team's work preparing for legislative hearings was not in anticipation of any litigation and therefore not privileged.  (Ex. 12 at 62:24–63:5.)  Additionally, Mr. Kerik testified before the Select Committee

that his work on the Giuliani Team was "not only to investigate the election for possible litigation, it was also to provide the legislators and electors in the various States, the six swing States, information that they may not have or be aware of."[14]  Mr. Kerik should not be permitted to refuse to answer questions of this type, particularly where such questions have been addressed (by himself or other witnesses) in other settings, such as Mr. Kerik's unsworn interview before the Select Committee.  *See United States v. Philip Morris Inc.*, 212 F.R.D. 421, 424 (D.D.C. 2002) ("[d]isclosing work product to anyone without common interests in developing legal theories and analyses of documents serves as a waiver of the protection") (cleaned up)[15]  By way of example, both Mr. Kerik and Defendant Giuliani have testified regarding the members of the Giuliani Team. (Ex. 1 at 97:10–17.)[16]

Because the Withheld Testimony is either not protected work product, or any applicable work product has been waived by disclosure, the Court should order Mr. Kerik's deposition re-opened and compel Mr. Kerik to provide the Withheld Testimony and any additional testimony in response to any follow-up questions by Plaintiffs relating to the subject matter areas about which Mr. Kerik was instructed not to provide testimony.

---

[14] *See* Kerik Jan. 6th Comm. Interview at 12:25–13:3.

[15] Mr. Kerik refused to answer questions on multiple topics during his deposition that he and other witnesses have discussed in other instances.  Those topics include (1) the purpose of the Giuliani Team's efforts (Ex. 2 at 41:21–44:11; Kerik Jan. 6th Comm. Interview at 23:7–22; Giuliani Jan. 6th Comm. Dep. at 25:22–26:10); (2) the work Mr. Kerik performed in six swing states, including Georgia (Ex. 2 at 47:6–49:4, 52:21–55:15; Kerik Jan. 6th Comm. Interview 82:16–22; Ex. 3 at 827:19–829:3; Giuliani Jan. 6th Comm. Dep. at 25:1–13; 34:4–25:11); (3) the methods of communication used by the Giuliani Team (Ex. 2 at 51:19–52:20; Kerik Jan. 6th Comm. Interview at 18:2–11, 79:12–80:23; Ex. 13 at 1175:19–1177:20); and (4) the members and roles of the Giuliani Team (Ex. 2 at 55:17–57:4, 57:7–21; Kerik Jan. 6th Comm. Interview at 19:11–20:17, 35:9–36:6; Ex. 1 at 96:17–98:17, 200:15–201:24; Giuliani Jan. 6th Comm. Dep. at 23:11–21, 26:6–23).

[16] *See* Kerik Jan. 6th Comm. Interview at 18:12–24.

## V.   THE COURT SHOULD AWARD PLAINTIFFS COSTS AND FEES PURSUANT TO RULE 37.

The Federal Rules require, upon the granting of this Motion, the entry of an order requiring Mr. Kerik to pay Plaintiffs' reasonable attorneys' fees and costs associated with its filing.[17]  Fed. R. Civ. P. 37(a)(5)(A); *see also Parsi v. Daioleslam*, 778 F.3d 116, 126 (D.C. Cir. 2015); *DL v. District of Columbia*, 251 F.R.D. 38, 49 (D.D.C. 2008) (the language of Rule 37(a)(5)(A) "itself is mandatory, dictating that the Court must award expenses upon granting a motion to compel disclosure unless one of the specified bases for refusing to make such an award is found to exist") (internal quotations omitted).  None of the enumerated exceptions to that rule apply here: Plaintiffs filed their motion only after "attempting in good faith to obtain the disclosure or discovery without court action," Mr. Kerik's "nondisclosure, response, or objection" has not been "substantially justified"—to the contrary, for eight months Mr. Kerik has resisted fulfilling his discovery obligations at every turn, and no "other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii).

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion.

Dated: June 9, 2023

**WILLKIE FARR & GALLAGHER LLP**
*/s/ Michael J. Gottlieb*
Michael J. Gottlieb (974960)
Meryl C. Governski (1023549)
J. Tyler Knoblett (1672514)
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com

**UNITED TO PROTECT DEMOCRACY**
John Langford*
Rachel Goodman*
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
john.langford@protectdemocracy.org
rachel.goodman@protectdemocracy.org

---

[17] Plaintiffs respectfully request permission to file the specific amount of fees upon the Court granting this relief.

mgovernski@willkie.com
jknoblett@willkie.com

**WILLKIE FARR & GALLAGHER LLP**
M. Annie Houghton-Larsen*
787 Seventh Avenue
New York, NY 10019
Tel: (212) 728-8164
Fax: (212) 728-9164
mhoughton-larsen@willkie.com

**UNITED TO PROTECT DEMOCRACY**
Christine Kwon*
555 W. 5th St.
Los Angeles, CA 90013
Tel: (919) 619-9819
christine.kwon@protectdemocracy.org

**DUBOSE MILLER LLC**
Von A. DuBose*
75 14th Street NE
Suite 2110
Atlanta, Georgia 30309
Tel: (404) 720-8111
dubose@dubosemiller.com

**UNITED TO PROTECT DEMOCRACY**
Sara Chimene-Weiss*
7000 N 16th Street Ste. 120, #430
Phoenix, AZ 85020
Tel: (202) 579-4582
sara.chimene-weiss@protectdemocracy.org

*Admitted pro hac vice*

**Attorneys for Plaintiffs Ruby Freeman and Wandrea Moss**

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2023, a copy of the foregoing document was emailed to Defendant Rudolph W. Giuliani via his counsel Joseph D. Sibley IV at sibley@camarasibley.com. I hereby certify that on June 9, 2023, a copy of the foregoing document was mailed to Mr. Parlatore at his office and mailed to Mr. Kerik's home address.  Plaintiffs also provided a copy via email to Mr. Parlatore at timothy.parlatore@parlatorelawgroup.com.

Dated:  June 9, 2023

/s/ *Michael J. Gottlieb*
WILLKIE FARR & GALLAGHER LLP
MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
1875 K Street, #100
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com