**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RUBY FREEMAN, *et al.*, | |
| Plaintiffs, | Case No. 1:21-cv-03354 (BAH) |
| v. | Judge Beryl A. Howell |
| RUDOLPH W. GIULIANI, | |
| Defendant. | |

**PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANT GIULIANI'S
MOTION FOR RECONSIDERATION AND
RESPONSE TO DEFENDANT'S DECLARATION**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

RELEVANT FACTUAL BACKGROUND.............................................................................3

ARGUMENT ........................................................................................................................8

    I.    THE COURT SHOULD DENY THE RECONSIDERATION MOTION
         BECAUSE PLAINTIFFS ARE LEGALLY ENTITLED TO THE FINANCIAL
         MATERIALS THAT THE COURT ORDERED DEFENDANT GIULIANI TO
         PRODUCE. ........................................................................................................8

    II.    DEFENDANT'S DECLARATION IS INSUFFICIENT AND UNDERSCORES
         THE CONTINUED NEED FOR JUDICIAL INTERVENTION RELATED TO
         DEFENDANT GIULIANI'S FAILURE TO COMPLY WITH HIS
         DISCOVERY OBLIGATIONS. ........................................................................12

         A.    The Giuliani Declaration Fails To Sufficiently Detail Any Efforts He Has
              Made To Preserve All Potentially Responsive Data Or Sources..............12

         B.    The Giuliani Declaration Fails To Sufficiently Detail Efforts He Has Made
              To Collect All Potentially Responsive Data Or Sources. .........................18

         C.    The Giuliani Declaration Fails To Sufficiently Detail Efforts He Has Made
              To Search All Potentially Responsive Data Or Sources. ..........................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Dep't of Just.*,
No. CV 17-1197 (CKK), 2020 WL 474526 (D.D.C. Jan. 29, 2020) .........................................8

*Arias v. DynCorp*,
856 F. Supp. 2d 46 (D.D.C. 2012) .............................................................................................8

*Borum v. Brentwood Vill., LLC*,
No. CV 16-1723 (RC), 2019 WL 11779199 (D.D.C. Jan. 11, 2019) ......................................10

*Floyd-Mayers v. Am. Cab Co.*,
No. CIV. A. 89-1777 (CRR), 1990 WL 116855 (D.D.C. July 30, 1990) ................................10

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989) .................................................................................................................11

*Houlihan v. World Wide Ass'n of Specialty Programs & Schs.*,
No. 04-01161-HHK-AK, 2006 WL 8433976 (D.D.C. Oct. 27, 2006) ...................................11

*John Does I–VI v. Yogi*,
110 F.R.D. 629 (D.D.C. 1986) ............................................................................................9, 10

*Kirwa v. U.S. Dep't of Def.*,
No. CV 17-1793 (ESH), 2018 WL 7141989 (D.D.C. May 23, 2018) ......................................8

*Marshall v. Honeywell Tech. Sols., Inc.*,
598 F. Supp. 2d 57 (D.D.C. 2009) .............................................................................................8

*McFadden v. Wash. Metro. Area Transit Auth.*,
168 F. Supp. 3d 100 (D.D.C. 2016) ...........................................................................................9

*Peskoff v. Faber*,
No. CIV A. 04-526, 2006 WL 1933483 (D.D.C. July 11, 2006)............................................10

*Pro-Football, Inc. v. Harjo*,
191 F. Supp. 2d 77 (D.D.C. 2002) ...........................................................................................10

*Skinner v. Aetna Life Ins. Co.*,
No. 83-cv-0679, 1984 U.S. Dist. LEXIS 19817 (D.D.C. Feb. 2, 1984) ..................................9

*Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*,
330 F.3d 1110 (9th Cir. 2003) .................................................................................................11

*Tavoulareas v. Piro,*
   817 F.2d 762 (D.C. Cir. 1987) ........................................................................................11

*United States v. All Assets Held at Bank Julius,*
   234 F. Supp. 3d 115 (D.D.C. 2017) ...............................................................................10

*US Dominion, Inc. v. Byrne,*
   600 F. Supp. 3d 24 (D.D.C. 2022) .................................................................................10

*US Dominion, Inc. v. Powell,*
   554 F. Supp. 3d 42 (D.D.C. 2021) .................................................................................11

Pursuant to the Court's May 31 Minute Order ("May 31 Order"), Plaintiffs Ruby Freeman and Wandrea' ArShaye ("Shaye") Moss (collectively, "Plaintiffs") submit this combined opposition to Defendant Rudolph W. Giuliani's Motion to Reconsider Court's May 19th Minute Order Granting, In Part, Motion To Compel (ECF No. 61) ("Reconsideration Motion" or "Recon. Mot.") and response regarding the sufficiency of the Declaration Of Rudolph Giuliani In Compliance With Court Minute Order Dated May 19, 2023 (ECF No. 60) ("Declaration" or "Decl.").

## INTRODUCTION

Plaintiffs filed a motion to compel Defendant Giuliani only after he spent nearly a year avoiding fulfilling his most basic discovery obligations.  ECF No. 44 ("Motion"); ECF No. 56 ("Reply") (collectively, "Motion to Compel").  During that time, Defendant Giuliani refused to provide any clarity as to his preservation, collection, search, and production efforts—offering only vague, inconsistent, incomplete, and half-hearted claims about what he had or had not done in discovery, and what email accounts, messaging applications, social media, or phone numbers he used during the relevant time period.  He did not provide that information even after the Court ordered him to do so to avoid a motion to compel, and instead indicated his to-date efforts were sufficient based on demonstrably incomplete searches (using that term generously) of email extensions of whatever pre-April 2021 emails were located in TrustPoint and post-April 2021 content located in unspecified devices and social media.

Only in opposition to Plaintiffs' Motion to Compel did Defendant Giuliani claim, for the first time, that he was financially unable to engage in any further discovery.  Defendant Giuliani maintained his claims of inability to pay throughout a three-hour hearing on the Motion to Compel that the Court held on May 19, 2023 ("Motion to Compel Hearing"), subsequent to which the Court reserved ruling on Plaintiffs' Motion to Compel and ordered Defendant Giuliani to first (1)

file a declaration detailing his preservation, collection, and search efforts, the location and data of potentially responsive information, the "*specific* 'data'" located in TrustPoint, and his searches of those locations and data; and (2) produce all financial information requested in Plaintiffs' Requests for Production ("RFPs") Nos. 40 and 41 and documentation to support his estimated costs to search TrustPoint.  May 19, 2023 Minute Order ("May 19 Order").  On the evening of Friday, May 26, counsel for Defendant Giuliani notified Plaintiffs of the "significant development" that Defendant Giuliani "has been able to procure third-party funding to cure the arrearage to search the TrustPoint docs." (Ex. 1 at 5–6.)[1]  Defendant subsequently filed the Reconsideration Motion as to the portion of the May 19 Order compelling the production of financial documents, and submitted the Declaration to purportedly respond to the Court's May 19 Order in which he professes a desire to search for responsive records, but still apparently only those located in TrustPoint.

In other words, after requiring the Court and Plaintiffs to expend considerable time and resources to address his claims of financial distress, Defendant Giuliani has withdrawn that excuse and returned the parties to virtually the same position that necessitated Plaintiffs to ask the Court for permission to move to compel in the first place.  And Defendant now seeks to undo the Court's May 19 Order requiring him to produce his financial records.  The Reconsideration Motion provides no basis in law for why the Court should reconsider its order or to accept the same objection that it previously found insufficient.  *Infra* § I.

As for Defendant Giuliani's Declaration, it does not sufficiently address the Court's May 19 Order, and further affirms the Court's May 31 Order requiring Defendant Giuliani to engage a

---

[1] All references to exhibits are attached to the Declaration of M. Annie Houghton-Larsen In Support of Plaintiffs' Combined Opposition to Defendant Giuliani's Motion for Reconsideration and Response to Defendant's Declaration ("Houghton-Larsen Declaration").

professional vendor to preserve, collect, and search for all materials responsive to Plaintiffs'

RFPs.[2]  Whatever "efforts" Defendant Giuliani describes in his Declaration provide little clarity

into what data and sources (if any) he has preserved, collected, and searched to date.  And what

Defendant Giuliani does not say in his Declaration—coupled with the representations his counsel

and he made at the Motion to Compel Hearing—demonstrate the insufficiency of any such

"efforts."  It is apparent that Defendant Giuliani has not attempted to preserve or collect data from

all potential sources of responsive materials.  He has, instead, relied on whatever data the

government purportedly seized and whichever of that data is stored in TrustPoint, the contents of

which Defendant Giuliani does not appear to know and has not explained to the Court.  And

Defendant Giuliani's personal search efforts are demonstrably incomplete because he did not

locate and produce responsive documents that were produced to Plaintiffs by third parties.  The

Court has, rightly, compelled Defendant Giuliani to engage a professional vendor to attempt to

cure his own lack of discovery efforts to date.  *Infra* § II.[3]

## RELEVANT FACTUAL BACKGROUND

Plaintiffs' discovery efforts and Defendant Giuliani's conduct that necessitated the Motion

to Compel are exhaustively discussed in various filings, which Plaintiffs incorporate here by

reference.  *See* ECF Nos. 36–38, 40–42, 44, 51, 56, 60–61.  Directly relevant here, Plaintiffs filed

the Motion to Compel on April 17, 2023, requesting an order compelling Defendant Giuliani to

*inter alia*: detail in a declaration his preservation, collection, and search efforts, including the

---

[2] Plaintiffs adopt the defined terms used in the Motion to Compel briefing.
[3] Plaintiffs understand the Court's May 31 Order to require Defendant Giuliani to do so at his own expense.  Plaintiffs respectfully submit that the Court should grant Plaintiffs the costs associated with the Motion to Compel pursuant to Rule 37, and reserve the right to file a renewed motion to compel and/or for sanctions, including depending upon Defendant Giuliani's response to the Court's May 31 Order.

location and data used to communicate about issues relevant to this case and the specific data located in the TrustPoint database; collect, search, and produce (or justify withholding *via* a privilege log) all documents responsive to Plaintiffs' RFPs; and pay Plaintiffs' related fees and costs pursuant to Rule 37. *See* ECF No. 44. In opposition, Defendant Giuliani claimed that he had "searched all documents within his possession, custody, and control"[4] and stood on his objections to RFPs 40 and 41 for financial information that Plaintiffs must "make a prima facie showing of their case (as in surviving an MSJ) before they are entitled to this discovery." ECF No. 51 at 1–2 (citing *D'Onofrio v. Sfx Sports Grp., Inc.*, 247 F.R.D. 43, 53 (D.D.C. 2008)). Defendant Giuliani also argued that the cost of any additional search of TrustPoint should be shifted to Plaintiffs because it would cost more than $320,000 to cure his arrears with TrustPoint and he "does not have the funds to pay this amount at this time." *Id*. at 1, 5.

On May 19, the Court held the Motion to Compel Hearing, during which the Court heard from counsel for both parties, and from Defendant Giuliani directly, over the course of many hours. The Court walked through the various types of relief sought in the Motion to Compel, including to understand any efforts Defendant Giuliani had taken to preserve, collect, and search all data and sources for responsive materials.[5] The Court summarized part of the dispute as follows:

> I think you don't have particularly sympathetic ears on the part of the plaintiffs right now for the claim of poverty by Mr. Giuliani, that he can't afford to make up the arrears to have access to the data; he can't get professional vendor help; he's relying on his own manual searches rather than using professional help.

---

[4] Such claims are belied by Defendant Giuliani's production to date, which does not include many of the documents and communications that discovery in this case and by the Select Committee has revealed. Those missing documents include, but are not limited to, the handful of communications attached to Plaintiffs' Motion. ECF Nos. 56-2, 56-3, 56-7.

[5] Attached as Exhibit 2 to the Houghton-Larsen Declaration is an excerpt of the certified transcript of that hearing, which is quoted from and cited throughout to explain the various representations made regarding Defendant's efforts to date.

So I think you would agree that the plan, first, perhaps to get more sympathetic ears from the plaintiffs, is if Mr. Giuliani responds to the request for production in 40 and 41 so that they can take -- make an assessment of that financial situation themselves.

(Ex. 2 ("Hearing Transcript") at 46:3–13.)   Counsel for Defendant Giuliani confirmed that Defendant's only concern with Plaintiffs' request for the Court to "direct Mr. Giuliani to collect, search, and produce all materials responsive to all of plaintiffs' requests for production in all locations, whether in TrustPoint or not" was a "financial issue."  (*Id*. at 56:14–57:13.)  Defendant Giuliani and his counsel also confirmed their willingness "to allow whoever [Plaintiffs'] forensic person is to assess" the devices seized by the FBI in April 2021, as well as to access materials stored in the cloud, including in his Gmail and iCloud accounts.  (*Id.* at 45:9–16, 77:1–3 ("if they would like their expert, before you decide this, to come and look and see if he can find what the FBI took out, fine."), 94:1–95:12 ("There is no objection to assistance . . .").)

After the Motion to Compel Hearing, the Court ordered Defendant Giuliani to, by May 30:

(1) file a declaration, subject to penalty of perjury, that details:

a) All efforts taken to preserve, collect, and search potentially responsive data and locations that may contain responsive materials to all of plaintiffs' Requests for Production (RFP);

b) A complete list of all "locations and data" that defendant used to communicate about any materials responsive to any of Plaintiffs' RFPs (including, but not limited to, *specific* email accounts, text messaging platforms, other messaging applications, social media, devices, hardware, and any form of communication);

c) The *specific* "data" located in the TrustPoint database, including—

i) a list identifying the source devices from which the data was extracted or obtained;

ii) for each such device, the type of device (i.e., iPhone, Macbook, laptop, iPad, etc.) and user, if known;

iii) a list identifying any social media accounts, messaging applications, and email accounts from which the data was extracted or obtained; and

iv) for each such account and application, the account name and user; and

d) What searches, if any, have occurred as to both categories (b) and (c) . . . and

(2) [...] in order to evaluate defendant's claim of an inability to afford the cost of access to, and search of, the TrustPoint dataset or to use a professional vendor, either to access the original electronic devices seized from defendant by the Federal Bureau of Investigation in April 2021 and returned to defendant, or, alternatively, to conduct a search of the archived TrustPoint dataset, defendant is DIRECTED to produce to plaintiffs:

a) full and complete responses to plaintiffs' requests for financial information in RFP Nos. 40 and 41; and

b) documentation to support his estimated costs for further searches on the TrustPoint dataset.

May 19 Order.

On Friday, May 26, counsel for Defendant Giuliani emailed Plaintiffs' counsel regarding a "significant development" and represented:

Giuliani has been able to procure third-party funding to cure the arrearage to search the TrustPoint docs.  TrustPoint was paid today.

They have also been paid additional money to conduct a search and review of the documents from the relevant time frame.

(Ex. 1, at 5–6.)  In response to Plaintiffs' request for further explanation about the impact of such a "development" on the Court's May 19 Order, counsel for Defendant Giuliani indicated that Defendant would not be producing the financial records by May 30 subject to either an extension or a motion for reconsideration.  (*Id*. at 2–4.)  In light of his new-found funding, Defendant Giuliani did not explain what type of search he envisioned conducting in TrustPoint, or commit to conducting any searches outside of TrustPoint.  (*Id*. at 1–6.)

On May 30, Defendant Giuliani filed the Declaration and the Reconsideration Motion instead of producing materials.[6]  The next day, the Court directed Plaintiffs to file an opposition

---

[6] The Declaration does not reference third-party financing, stating only that "we have cured the arrearage with TrustPoint and the data is in the process of being unarchived."  Decl. ¶ 5.

to Defendant's Reconsideration Motion and "any response regarding the sufficiency" of the Declaration.   May 31 Order.   The Court also stated that, in light of Defendant Giuliani's representation regarding his access to funding "and finding that defendant's access to funds necessary to comply with his discovery obligations warrants further consideration" of Plaintiffs' requested relief, it was directing Defendant Giuliani to:

> search and produce all materials responsive to plaintiffs' RFPs, with the exception of RFP Nos. 40 and 41, within the date ranges agreed to by the parties, with the assistance of a professional vendor, and produce a privilege log specifically tailored to the searches he has performed for materials responsive to plaintiffs' RFPs.

*Id*.

During a June 2, 2023 conferral, and in a subsequent email, Plaintiffs' counsel explained their position that the Court's May 31 Order requires Defendant Giuliani to engage in a professional collection and search of *all* data and sources of data, not limited to TrustPoint.   (Ex. 3 at 1–4.)   Defendant Giuliani's counsel agreed that the appropriate course of action is for Defendant Giuliani to use a professional vendor to collect and/or engage in a search of: all of his personal and professional email accounts, his iCloud account, the TrustPoint database, his Unseized Devices (as defined below), and his social media accounts.   (*Id.* at 2–5.)   In addition, counsel seemed to agree that to the extent that TrustPoint does not include all materials from all of Defendant Giuliani's Seized Devices (as defined below), the proper step would be to have his vendor image and search the Seized Devices likely to have responsive information.   (*Id.* at 3.)   The parties also agreed that: Defendant Giuliani was obligated to take specific targeted steps to obtain the viewer metrics materials and phone records; the operative time frame for all searches would be September 1, 2020 through present, which for purposes of the TrustPoint data would be up until the devices were seized; and that the Court's May 31 Order requires Defendant to provide a privilege log of all withheld documents.   (*Id.* at 1, 4–5.)

**ARGUMENT**

**I.    THE COURT SHOULD DENY THE RECONSIDERATION MOTION BECAUSE PLAINTIFFS ARE LEGALLY ENTITLED TO THE FINANCIAL MATERIALS THAT THE COURT ORDERED DEFENDANT GIULIANI TO PRODUCE.**

Defendant Giuliani provides no basis in law for the Court to reconsider its May 19 Order, particularly given that the Court considered and rejected the only objection he offered to producing his financial records in the ordinary course regardless of their relation to the TrustPoint database. While Defendant Giuliani does not cite a legal rule as the basis for his Reconsideration Motion, his request for the Court to reconsider its interlocutory, non-final discovery order is governed by Federal Rule of Civil Procedure 54. *E.g.*, *Allen v. Dep't of Just.*, No. CV 17-1197 (CKK), 2020 WL 474526, at *10 (D.D.C. Jan. 29, 2020). Pursuant to Rule 54, it is Defendant Giuliani's burden to demonstrate that some harm would accompany a denial of his motion for reconsideration. *Id.* The Rule 54 bar is uniquely high in the discovery context, where "a court 'should be loathe' to grant a motion for reconsideration 'in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.'" *Kirwa v. U.S. Dep't of Def.*, No. CV 17-1793 (ESH), 2018 WL 7141989, at *1 (D.D.C. May 23, 2018) (quoting *Marshall v. Honeywell Tech. Sols., Inc.*, 598 F. Supp. 2d 57, 59 (D.D.C. 2009)); *Arias v. DynCorp*, 856 F. Supp. 2d 46, 51 (D.D.C. 2012) (same). Defendant Giuliani does not assert or offer any basis to determine that any harm would result from the Court enforcing its May 19 Order, and has therefore failed to meet his burden.

In his Reconsideration Motion, Defendant Giuliani does not, because he cannot, address any of the factors courts consider when adjudicating a Rule 54 motion: that the Court "patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred." *Arias*, 856 F. Supp. 2d at 51 (internal citation and quotation marks

omitted).  To the contrary, the Court already considered and rejected the only argument that

Defendant Giuliani advances in his Reconsideration Motion for why he should not produce his

financial records, and which the parties briefed prior to the Motion to Compel Hearing: that a

minority of courts defer compelling financial materials until the punitive damages phase when

those materials are only relevant to punitive damages.  Recon. Mot. at 1–2 (citing *D'Onofrio v. Sfx

Sports Grp., Inc.*, 247 F.R.D. 43, 53 (D.D.C. 2008)); *see* ECF Nos. 44 at 20; ECF No. 51 at 2–3;

ECF No. 56 at 12–13.  At the Motion to Compel Hearing, the Court explained that Defendant

Giuliani's financial records "would be pertinent in evaluating his financial net worth" and rejected

his reliance on *D'Onofrio*, stating:

> I have to say I was really puzzled by that citation because that case expressly states,
> quote: A majority of the federal courts have permitted pretrial discovery of financial
> information of the defendant without requiring plaintiffs to establish a prima facie
> case. So I actually think that the majority view holds here, and I am -- I am going
> to order that.

(Hearing Tr. at 47:10–49:18.)  Defendant Giuliani does not point to any controlling decisions

overlooked or a significant change in controlling authority.  The only citations that Defendant

Giuliani provides to support his position are *John Does I–VI v. Yogi*, 110 F.R.D. 629 (D.D.C. 1986)

and *D'Onofrio*, the latter of which the Court already considered and rejected as unsupportive of

his position.[7]  As far as *Yogi*, the question before the Court in that case was whether to enter a

---

[7] Defendant Giuliani refers to the "D.D.C." cases cited in *D'Onofrio*, which are *Yogi* and one other,
*Skinner v. Aetna Life Insurance Co.,* No. 83-cv-0679, 1984 U.S. Dist. LEXIS 19817, at *3 (D.D.C.
Feb. 2, 1984).  In *Skinner*, a magistrate judge denied a motion to compel because the request for
damages was not relevant to *either* liability or punitive damages.  The opinion explained that the
case before the court related to breach of contract, which does not allow for the recovery of punitive
damages except in a narrow circumstance where the claim "merges with, and assumes the character
of, a willful tort . . . ."  *Id*. at *2.  Unlike in that case, Defendant's financial information goes to
*both* liability and punitive damages, which the torts at issue in this case allow.  *See infra* at 10; *see
also McFadden v. Wash. Metro. Area Transit Auth.*, 168 F. Supp. 3d 100, 110 (D.D.C. 2016)
("punitive damages are available as damages based on liability for torts such as intentional
infliction of emotional distress and defamation").

broad protective order that would provide for the designation of materials as "confidential" and impose limitations that "would severely restrict access" to designated documents. *Id.* at 631. The Court rejected the need for a blanket protective order and agreed to "extend limited protection to discovery concerning defendants' financial status" by stating it "should not be revealed until necessary to prove up punitive damages." *Id.* at 633. *Yogi* has nothing to do with deferring *production* of material until a punitive-discovery phase, but rather with the degree of access until that point via the use of confidentiality designations. *Id.* Leaving aside that the cases he cites do not provide support of his position, Defendant Giuliani also provides no reasoning for why the Court should adopt the admittedly "minority view" as opposed to the majority approach that courts in this District have adopted by permitting discovery into financial records during the course of discovery. *See Borum v. Brentwood Vill., LLC*, No. CV 16-1723 (RC), 2019 WL 11779199, at *3 (D.D.C. Jan. 11, 2019); *United States v. All Assets Held at Bank Julius*, 234 F. Supp. 3d 115, 119 (D.D.C. 2017); *Peskoff v. Faber*, No. CIV A. 04-526 (HHK/JMF), 2006 WL 1933483, at *3 (D.D.C. July 11, 2006); *Pro-Football, Inc. v. Harjo*, 191 F. Supp. 2d 77, 83 (D.D.C. 2002); *Floyd-Mayers v. Am. Cab Co.*, No. CIV. A. 89-1777 (CRR), 1990 WL 116855, at *1 (D.D.C. July 30, 1990) (compelling production of financial information).

Nor does or could Defendant Giuliani explain why it would be appropriate to follow the "minority" approach where, as here, the financial information is relevant to liability *and* punitive damages. Defendant Giuliani's financial motives, including whether he earned any additional income or increased viewership or followers, is directly relevant to fault.[8] *See, e.g., US Dominion, Inc. v. Byrne*, 600 F. Supp. 3d 24, 33 (D.D.C. 2022) (assertion that defendant "had a financial

---

[8] Plaintiffs do not concede that actual malice is the relevant standard for the Court to apply by arguing that it is entitled to discovery as to actual malice.

motive to make his false claims . . . adequately alleged actual malice."); *US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 62–63 (D.D.C. 2021) (allegations of a profit motive to recklessly disregard the truth could support a finding of actual malice); *Houlihan v. World Wide Ass'n of Specialty Programs & Schs.*, No. 04-01161-HHK-AK, 2006 WL 8433976, at *5–6 (D.D.C. Oct. 27, 2006) (granting motion to compel financial information regarding defendant's ownership of various schools and agencies as relevant in showing whether defendant's had knowledge that statements were untrue); *see also Suzuki Motor Corp. v. Consumers Union of U.S., Inc*., 330 F.3d 1110, 1136 (9th Cir. 2003) (holding "financial motive " is "a relevant factor bearing on the actual malice inquiry"); *cf. Tavoulareas v. Piro*, 817 F.2d 762, 796–97 (D.C. Cir. 1987) ("pressure to produce sensationalistic or high-impact stories with little or no regard for their accuracy would be probative of actual malice"); *see generally Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667–68 (1989) ("plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence" including "profit motive").[9]

The Court has already rejected Defendant Giuliani's only proffered objection to producing his financial records, and he fails to provide any basis to reconsider that opinion. And Defendant's financial materials are relevant to both liability and punitive damages. Accordingly, the Court should re-instate its May 19 Order and compel Defendant to collect and produce his financial records as requested in RFP Nos. 40 and 41.

---

[9] Defendant Giuliani's financial records are separately relevant to his credibility. Defendant Giuliani represented to this Court that he was not able to pay his $320,000 TrustPoint arrearage, but then found the requisite funds just two weeks later. This quick change in Defendant's apparent financial circumstances raises questions about Giuliani's credibility and representations toward the Court.

II.     **DEFENDANT'S DECLARATION IS INSUFFICIENT AND UNDERSCORES THE CONTINUED NEED FOR JUDICIAL INTERVENTION RELATED TO DEFENDANT GIULIANI'S FAILURE TO COMPLY WITH HIS DISCOVERY OBLIGATIONS.**

The Declaration does not sufficiently comply with the Court's May 19 Order, which ordered Defendant Giuliani to "file a declaration, subject to penalty of perjury, that **details**[:]" all "**efforts taken to preserve, collect, and search** potentially responsive data and locations that may contain responsive materials to all" of Plaintiffs' RFPs; a "**complete list of all** 'locations and data'" likely to contain responsive materials; the "*specific* **'data' located in TrustPoint**"; and what "**searches**, if any, have occurred as to" those locations.  May 19 Order (bolding added).  Defendant Giuliani's Declaration does not sufficiently describe his efforts to *preserve* potentially responsive data and sources, and instead relies on whatever the government did with the devices seized in April 2021, which Defendant Giuliani does not know and cannot describe.  *Infra* § A.  Nor does the Declaration sufficiently describe Defendant's efforts to *collect* potentially responsive data and sources, and also relies only on whatever unknown and undescribed data and sources the government extracted and retained from the Seized Devices.  *Infra* § B.  And, *finally*, the Declaration does not sufficiently describe *search* efforts to date, including because of the failure to identify what data and sources were preserved and collected.  *Infra* § C.  To the extent that the Declaration makes anything clear, it is that Defendant Giuliani's preservation, collection, search, and production efforts to date are demonstrably deficient and support the Court's decision to compel him to hire a professional vendor to comply with his discovery obligations.

A.     **The Giuliani Declaration Fails To Sufficiently Detail Any Efforts He Has Made To Preserve All Potentially Responsive Data Or Sources.**

The Declaration identifies that the following data sources likely to contain (or at one point to have contained) responsive information: (1) three personal email accounts (Gmail, iCloud, and Protonmail); (2) an iCloud account; (3) three phone numbers that he used to send messages via

text and messaging application; (4) three messaging applications (Signal, WhatsApp, Telegram); (5) five social media handles, (items (1) through (5) collectively, "Identified Sources"); (6) and nine devices, two of which were not seized by the FBI ("Seized Devices" as to the seven seized, "Unseized Devices" as to the two unseized, and "Responsive Devices" as to the nine collectively). ECF No. 60 ¶ 3.  Defendant Giuliani represented to the Court that he has been under an obligation to preserve materials relevant to this lawsuit's claims since before Plaintiffs filed suit, (Hearing Tr. at 67:21–68:2), but the Declaration fails to provide any basis to conclude that he has sufficiently preserved responsive data from all Identified Sources and Responsive Devices.

Defendant Giuliani states that he turned off auto-delete at some period "in late 2020 or earlier 2021" on his "email, messaging, communication, or other document storage platforms" and did not manually delete "any electronic documents or dispose[] of any paper files." Decl. ¶ 2.[10] But as the Court and Defendant Giuliani's counsel recognized during the Motion to Compel Hearing, "not deleting documents is not the same as preserving the information in a manner that can be retrieved and searched."  (Hearing Tr. at 66:1–20; *see also id*. at 87:9–23.)  Noticeably absent from the Declaration is any confirmation that Defendant Giuliani took any affirmative steps to preserve any materials in the Identified Sources, including by downloading and safeguarding their contents "in a manner that can be retrieved and searched." *See* Decl. ¶ 1.

Defendant Giuliani's inability to demonstrate any efforts he has taken to preserve materials is consistent with his claims during the Motion to Compel Hearing and his deposition that he lacks access to certain data that would have been located in his iCloud and Gmail accounts, which he has stated would be the sources of the majority of his communications.  (Hearing Tr. at 53:5–8

---

[10] It is unclear if the term "electronic documents" includes electronic communications (such as emails, messaging applications, text messages, and social media).

("90 to 95 percent of my communication is done on Apple, and its backed up by the iCloud."), 68:3–6, 95:17–97:8; ECF No. 44-9 at 21:20–22:10, 27:21–28:8.)   The purported lack of access appears to be limited only to data from the relevant time period, i.e. Defendant Giuliani seems to admit that he can access those accounts via the cloud but that would-be responsive materials are missing.  (Hearing Tr. at 95:17–97:8 ("And here is the problem with the cloud. When we go back to the period of time - - material that was seized by the FBI, that I don't have access to on the cloud.  They have it, but I don't have access to it.").)  By his own admissions, Defendant Giuliani impliedly concedes that he has not taken any steps to preserve materials from any of the Identified Sources or Responsive Devices.

Rather, Defendant Giuliani admits that any preservation that may have occurred was not the result of any of his own efforts, but rather whatever the government may or may not have done with his data.  (*See* Hearing Tr. at 67:10–18 ("lost the ability to do any preservation as of April 2021" and whatever data seized "was preserved because it was taken by the government"); Decl. ¶ 5.)  At a minimum, that means that Defendant Giuliani has not taken any steps to preserve responsive materials that post-date the April 2021 seizure—after which the Amended Complaint alleges Defendant Giuliani continued to engage in his campaign to defame Plaintiffs and before they filed suit, ECF No. 22 ¶¶ 90–101—including but not limited to the Unseized Devices and any post-April 2021 communications contained in any of the Identified Sources.

But even as to the pre-April 2021 materials, Defendant Giuliani's claims of preservation based on whatever the government seized is inadequate because he still has not provided sufficient information for this Court (or Plaintiffs) to know what is and is not in the TrustPoint database, let alone conclude that he sufficiently complied with his preservation obligations.  The Declaration does not, and cannot, sufficiently describe his preservation efforts because it does not detail the

- 14 -

"specific 'data'" located in TrustPoint, as ordered by the Court.  Defendant Giuliani avers that that the "TrustPoint One documents consist of all documents that were extracted from the electronic devices taken by the DOJ in April 2021 when the DOJ seized those devices" but does not confirm what exactly was "extracted."  Decl. ¶ 4.  The Declaration does not confirm whether TrustPoint contains *all* of his iMessage, text message, WhatsApp, Signal, Telegram, or social media accounts or rather, if it contains any of them, it is limited to whatever communications happened to be stored locally on the Seized Devices.  *Id*. ¶ 5.  Nor does Defendant Giuliani make any representations about whether the government extracted his Gmail or Proton Mail accounts or his Business Files (as defined below), in part or in their entirety.  *Id*. ¶¶ 4–5.  As to the iCloud account—which Defendant Giuliani represented to the Court would contain "90 to 95 percent" of his communications—the Declaration assumes without confirming that data would have also been included "because I synced my iCloud to my devices."  *Id*. ¶ 5.  (*See also* Hearing Tr. at 53:5–8, 68:3–6, 95:17–97:8.)[11]

Defendant's Declaration, in other words, has done nothing to cure the lack of knowledge he and his counsel expressed to the Court during the Motion to Compel Hearing about what is located in TrustPoint.  Defendant Giuliani and his counsel conceded that they did not know all of the data and sources located in TrustPoint or "know exactly what" the government did with the seized data.  (Hearing Tr. at 95:17–97:8.)  Defendant Giuliani could not confirm, when the Court asked, whether the government took possession of contents of his iCloud account or if those

---

[11] Defendant Giuliani's claim that because he backed up his devices with the iCloud, the devices would have included all messages Defendant stored on the iCloud, such that the TrustPoint database would include all relevant records, is a faulty syllogism.  Plaintiffs' understanding is that iCloud is meant to back up devices, not the other way around.  That means that Defendant's iCloud account may have messages that were never actually stored on a particular device or which were removed from local storage, and so would not be included in TrustPoint unless the database also included his entire iCloud account.

contents were located in TrustPoint, stating that it "may not have been." (*Id.* at 54:16–24; *see also id.* at 95:17–97:8.)  The Declaration does nothing to address the Court's comment during the Motion to Compel Hearing that Defendant Giuliani had not yet confirmed that TrustPoint included "all user created generated data on any of those devices without any exclusion, meaning they took a forensic image of the electronic devices, they took the entire dataset" and had not confirmed "what emails stored on those electronic devices actually derive from which accounts." (*Id.* at 50:5–16.)  Nor does the Declaration sufficiently address the Court's directive that Defendant Giuliani and his counsel "find out what the data sources are of that data, if it includes the entire iCloud account" in order to determine if the "iCloud account, at a minimum, is preserved." (*Id.* at 55:5–10.)  Despite telling the Court that Defendant Giuliani needed "to get to the bottom of" whether those materials are located in TrustPoint, the Declaration does not do so. (*Id.* at 83:13–84:19.)

Additionally, the Declaration does not provide any explanation about any efforts taken to preserve any of Defendant Giuliani's professional files of Giuliani Communications, LLC and Giuliani Partners, LLC ("Business Files"), both of which Defendant Giuliani founded, controls, and owns.[12]  ECF No. 56 at 5–6, 10.  Both companies are still in existence, and Defendant Giuliani has admitted to having at least one employee (Maria Ryan) who uses her giulianipartners.com email address.  ECF No. 44-13 at 1.  Discovery has indicated that Defendant Giuliani, as well as his employees, used email addresses with the giulianipartners.com domain to communicate about alleged fraud in the 2020 presidential election.  (*See, e.g.*, Ex. 4 (email to

---

[12] While Plaintiffs believe that the Court's orders require Defendant Giuliani to collect, search, and produce materials from his Business Files, they also have served document and deposition subpoenas on both businesses.  Both businesses have failed to respond to Plaintiffs' document subpoenas.  As a result, Plaintiffs intend to promptly file a related motion to compel.  Those efforts should not displace Defendant Giuliani's own obligations to search for and produce all responsive materials from his Business Files.

rudolph.giuliani@giulianipartners.com, JoAnn.Zafonte@giulianipartners.com, private@bernardkerik.com, and others regarding communications to "POTUS" and efforts in Georgia to request a "special session to investigate the massive evidence of election fraud"); Ex. 5 (email to rudy@giulianipartners.com and info@giulianipartners.com regarding alleged election fraud relating to Dominion); Ex. 7 (email from AnnMarie.Cretella@giulianipartners.com to JoAnn.Zafonte@giulianipartners.com); Ex. 8 (email chain with Defendant Giuliani, maria.ryan@giulianipartners.com, and others regarding press release on election fraud claims).) For example, Defendant Giuliani emailed Ms. Ryan at her admittedly still-active Giuliani Partners email address a Trump Campaign draft press release that includes the line "Georgia has video evidence of 30,000 illegal ballots cast after the observers were removed." (Ex. 8 at 2.)  By way of another example, on December 7, 2020, Fox News sent an email to press@giulianipartners with the title "Fox News request re: Georgia investigator's affidavit" that stated:

> First, I hope Mayor Giuliani is doing well and has a full and speedy recovery from Covid-19.  Has he had a chance to see the affidavit from Frances Watson, the chief investigator for the Georgia secretary of state, that was filed yesterday?  Watson claims that, according to his investigation, poll watchers and media were not asked to leave before counting ended, but that they "simply left on their own when they saw one group of workers, whose job was only to open envelopes and who had completed that task, also leave."  Watson also says that "there were no mystery ballots that were brought in from an unknown location and hidden under tables," claiming that ballots were sealed in boxes and placed under the table by workers who thought they were done for the night, and that the boxes were later opened when counting continued.  Watson does not explain why workers thought they were done.
>
> Does Mayor Giuliani have any comment on this?

(Ex. 6.)  Defendant Giuliani has not listed *any* of his professional accounts among the list of "locations and data" he used to communicate about materials responsive to Plaintiffs' RFPs as required by the May 19 Order and even though discovery has shown them to include such materials.  Nor has Defendant Giuliani explained to the Court in person or by his Declaration any

efforts he has made to preserve any of the materials located in his Business Files despite them being in his possession, custody, or control as the sole owner of both businesses.  *See* Motion at 16–17; Reply at 13–14.  During a recent conferral, Defendant Giuliani's counsel explained that he was not aware of whether or which Business Files would have been collected by the government. (Ex. 3 at 2.)

In sum, the Declaration fails to detail his efforts to preserve materials relevant to this litigation.  He implicitly admits that he has not engaged in any of his own preservation efforts. And the efforts he points to are whatever efforts the government took, which Defendant Giuliani does not know and does not describe.  Defendant Giuliani cannot claim that all responsive materials have been preserved based on the government seizing his devices and certain data in TrustPoint because he has admitted to not even knowing what "specific data" is located in TrustPoint.  If Defendant Giuliani confirms that the Declaration details the totality of his preservation obligations (as he was required to do), Plaintiffs respectfully request leave to file a motion for sanctions due to failure to sufficiently preserve.

### B.    The Giuliani Declaration Fails To Sufficiently Detail Efforts He Has Made To Collect All Potentially Responsive Data Or Sources.

The only purported collection-related information that the Declaration provides is as follows:

> in collecting documents responsive to the RFPs, I collected my paper files in my residences and my law office, files my attorneys collected from various sources in connection with litigation matters I was involved in, files from Christiane Allen, Christina Bobb, certain electronic data from TrustPoint One containing data seized from my electronic devices by the DOJ in April 2021, and new electronic devices I obtained after the seizure, including an iPhone, and iPad, and a laptop computer.

Decl. ¶ 2.  The Declaration assumes, without explanation and contrary to his representations to the Court,  (*see* Hearing Tr. at 54:16–24, 95:17–97:8), that all of his "iCloud data would have also been included in the TrustPoint data because I synced my iCloud to my devices" and that the

"messaging data I had on the devices would have included iMessage, text message, WhatsApp, Signal, and Telegram."  Decl. ¶ 5.  None of the Declaration's description of Defendant Giuliani's purposed collection effort provides any "details" as required by the Court's Order.

But even the limited information the Declaration does provide reflects that any purported collection effort is insufficient.  Like with his preservation efforts, the Declaration omits any explanation of and impliedly admits the lack of any effort to collect his Business Files, the Unseized Devices, or the Identified Sources, other than whatever may or may not have been collected by the government.  Defendant's Declaration does not, for example, detail any effort he has taken to download a complete copy of his Gmail, ProtonMail, or iCloud accounts, or his text communications on WhatsApp, Signal, and Telegram.  And as to the "social media accounts" Defendant Giuliani claims to have searched, he admits in his Declaration that he does not know if those accounts were "extracted" by the government.  *Id.*  Nor does he claim that he or anyone downloaded an archive of any of his social media accounts, even though the five social media companies with which he identifies to having accounts likely to contain responsive information provide free ways for users to do so.[13]  *Id.* ¶ 3.  If taken at face value, the Declaration fails to provide any basis to show that Defendant Giuliani engaged in any efforts to collect all data and sources like to contain responsive information.

---

[13]     *See,  e.g.,*     help.twitter.com/en/managing-your-account/accessing-your-twitter-data; help.twitter.com/en/managing-your-account/using-the-tweet-activity-dashboard; help.instagram.com/553860108359435;              help.rumble.com/Stats-&-Analytics-API.html; facebook.com/help/794890670645072; support.google.com/youtube/answer/9002587?hl=en&co=GENIE.Platform%3DAndroid.  During a June 2, 2023 conferral , Plaintiffs' counsel explained that performing such archiving from social media would be a way for Defendant Giuliani to locate metric-related materials in response to RFPs 19, 24-25, which were included in the Court's recent order.  (Ex. 3 at 4.)

**C.      The Giuliani Declaration Fails To Sufficiently Detail Efforts He Has Made To Search All Potentially Responsive Data Or Sources.**

The Declaration claims that five sources of data were "primarily searched by my attorneys in response to requests for production in the *Dominion* litigation, January 6th Committee Subpoena, and requests for discovery in the *Coomer* litigation": (1) "paper files in my residences and my law office"; (2) "files my attorneys collected from various sources in connection with litigation matters I was involved in" (previously explained as those connected to his various bar-grievance hearings); (3) "files from Christiane Allen, Christina Bobb"; (4) "certain electronic data from TrustPoint One containing data seized from my electronic devices by the DOJ in April 2021"; and (5) "new electronic devices I obtained after the seizure, including an iPhone, and iPad, and a laptop computer."   Decl. ¶ 2.  Defendant Giuliani claims that he "manually searched" his "new electronic devices and social media accounts" and describes that search only by stating he "used the search terms provided by the Plaintiffs to conduct the search, which I did manually using the Plaintiffs' provided search terms as they were given to me."  *Id*. ¶¶ 2, 6.  As far as TrustPoint, the Declaration states that the "TrustPoint One documents were searched for email files in accordance with Plaintiffs' search terms."  *Id.* ¶ 6.

*First*, as a threshold point, the first paragraph of the Declaration implies that the only search for responsive materials in response to *Plaintiffs'* RFPs (as opposed to in response to other litigation) was whatever manual search Defendant Giuliani personally conducted without supervision, and any other search was solely for materials responsive to requests in other cases. *Id.* ¶ 2.  Such an understanding is consistent with Defendant Giuliani's own explanation to the Court at the Motion to Compel Hearing that he has "20 cases going on" with various document demands, which "gets confusing" and makes it so he "can't distinguish their case from the other cases" and cannot "remember this one exactly" with respect to his search efforts.  (Hearing Tr. at

75:12–77:10, 84:22–85:6.)   But later in the Declaration, Defendant Giuliani claims to have searched TrustPoint "for email files in accordance with Plaintiffs' search terms."  Decl. ¶¶ 6, 3 *bis*.[14]  For purposes of this filing, Plaintiffs will assume without conceding—and with skepticism—that Defendant Giuliani's previous (and demonstrably deficient) search of TrustPoint was specifically in response to Plaintiffs' RFPs.

*Second*, the Declaration fails to provide any details, as ordered by the Court, regarding Defendant's efforts to "search potentially responsive data and locations" including what "searches, if any," he performed of each of the Identified Sources, Unseized Devices, or of TrustPoint.  *See* May 19 Order.  The Declaration's only description of the search is to state that they occurred: the "TrustPoint One documents were searched for email files in accordance with Plaintiffs' search terms" and Defendant Giuliani "used the search terms provided by the Plaintiffs to conduct the search, which I did manually using the Plaintiffs' provided search terms as they were given to me." Decl. ¶¶ 2, 6.  Such claims do not address any of the specific concerns that the Court raised when Defendant Giuliani's counsel could not describe "precisely what process" his client used to "perform the manual search" or any related details, including whether he searched "application by application," used Boolean search terms, what search terms he used, or how he kept track of his results.  (Hearing Tr. at 78:16–81:16.)  The Court explained:

> That means this manual search, to my mind, is unverifiable.  And that's why, typically, you download the social media account contents, you put it into a form on a platform that can be searched so that you can ensure that the search is complete and thorough. These manual searches, as I pointed out the last time we were here, are very nerve-racking, not verifiable.

---

[14] The last page of the Declaration, which bears Defendant Giuliani's signature, includes a second paragraph numbered as "3" even though the paragraph preceding it is numbered as "6."  Plaintiffs refer to that paragraph as "3 *bis.*"

(*Id*. at 81:17–23.)  The same logic applies to the anemic descriptions of all of Defendant Giuliani's purported search efforts.  The fact that he claims to have "searched" (whether personally or via TrustPoint) without providing any details about the process fails to verify the sufficiency of any search to date.

*Third*, because of Defendant Giuliani's failures to detail and, if sufficiently described, to actually preserve or collect all data from all responsive materials, any search is necessarily insufficient.  A search of incomplete materials cannot, by definition, be complete.

*Fourth*, accepting the Declaration's description of Defendant's search efforts as complete illustrates the insufficiency of any purported search.  The Declaration does not state that Defendant has personally engaged in a search of any of his three personal email accounts, his iCloud account, his text messages, his messaging applications, or his Seized Devices.  Decl. ¶ 5.  Defendant Giuliani admits that his purported search of TrustPoint was limited to *only* email extensions, thereby admitting that that search did not include any of his text messages, messaging applications, social media, any email accounts that were not located in TrustPoint, any stand-alone documents, or any materials from his Unseized Devices.  *Id*. ¶ 6.  As far as what email accounts were searched, and as discussed above, Defendant Giuliani in his Declaration does not claim that he searched his iCloud account or that the full contents of that account would be in TrustPoint.  *Id*. ¶¶ 2, 5. (Hearing Tr. at 53:4–8, 54:16–24, 95:17–96:18.)  Same with his Gmail account, which he has not claimed was searched in its entirety, and to which he told the Court he lacks access.  (Hearing Tr. at 95:17–96:18.)

Nor can Defendant rely on his Declaration to justify whatever manual searches he claims to have performed.  Defendant Giuliani has not cured any of the defects that the Court found rendered the manual searches invalid, including for example to explain whether he searched

individual applications as opposed to just a general "device" search or how he managed to manually conduct the Boolean searches Plaintiffs proposed.   (Hearing Tr. at 78:16–81:25.) Accepting as true that he used the "search terms as they were given to me," a logical deduction is that the search was defective due to an inability to handle Boolean searches designed for professional vendors to use.  Decl. ¶ 6.  As the Court noted, one "can appreciate why the plaintiffs are somewhat concerned about all of the responsive records even from texts being properly identified, collected, and produced," given the lack of "clarity on how the manual searches were being done."  (Hearing Tr. at 87:24–88:12.)

Dated: June 14, 2023

**UNITED TO PROTECT DEMOCRACY**
John Langford*
Rachel Goodman*
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
john.langford@protectdemocracy.org
rachel.goodman@protectdemocracy.org

Sara Chimene-Weiss*
7000 N 16th Street Ste. 12, #430
Phoenix, AZ 85020
Tel: (202) 579-4582
sara.chimene-weiss@protectdemocracy.org

Christine Kwon*
555 W. 5th St.
Los Angeles, CA 90013
Tel: (919) 619-9819
christine.kwon@protectdemocracy.org

*/s/ Meryl C. Governski*

**WILLKIE FARR & GALLAGHER LLP**
Meryl C. Governski (1023549)
Michael J. Gottlieb (974960)
J. Tyler Knoblett (1672514)
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com
mgovernski@willkie.com
jknoblett@willkie.com

M. Annie Houghton-Larsen*
787 Seventh Avenue
New York, New York
Tel: (212) 728-8164
Fax: (212) 728-9164
mhoughton-larsen@willkie.com

**DUBOSE MILLER LLC**
Von A. DuBose*
75 14th Street NE
Suite 2110
Atlanta, GA 30309
Tel: (404) 720-8111
dubose@dubosemiller.com
* *Admitted pro hac vice*

*Attorneys for Plaintiffs Ruby Freeman and Wandrea' Moss*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 14, 2023, a copy of the foregoing document was emailed to

Defendant Rudolph W. Giuliani via his counsel Joseph D. Sibley IV at sibley@camarasibley.com.


Dated:  June 14, 2023


/s/ *Meryl C. Governski*

**WILLKIE FARR & GALLAGHER LLP**
Meryl C. Governski (1023549)
1875 K Street, #100
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgovernski@willkie.com