**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RUBY FREEMAN, *et al.*, | |
| Plaintiffs, | Case No. 1:21-cv-03354 (BAH) |
| v. | Judge Beryl A. Howell |
| RUDOLPH W. GIULIANI, | |
| Defendant. | |

**PLAINTIFFS' MOTION FOR DISCOVERY SANCTIONS AGAINST DEFENDANT
GIULIANI FOR FAILURE TO PRESERVE ELECTRONIC EVIDENCE**

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

RELEVANT FACTUAL BACKGROUND................................................................................3

LEGAL STANDARD...................................................................................................................14

ARGUMENT ................................................................................................................................16

    I.    THE COURT SHOULD SANCTION DEFENDANT GIULIANI FOR HIS
         FAILURE TO TAKE REASONABLE STEPS TO PRESERVE ELECTRONIC
         EVIDENCE.................................................................................................................16

         A.    Defendant Giuliani Admits That The Electronic Evidence Should Have Been
                Preserved In Anticipation Of This Litigation..................................................17

         B.    Defendant Giuliani Admits That He Has Failed To Take Reasonable Steps
                To Preserve The Electronic Evidence In Violation Of Rule 37(e).................17

         C.    The Electronic Evidence Is Irretrievable As A Result Of Defendant
                 Giuliani's Failure To Preserve. .......................................................................19

         D.    Plaintiffs Are Prejudiced By The Loss Of The Electronic Evidence. ............21

         E.    Defendant Giuliani Intended Not To Take Reasonable Steps To Preserve The
                Electronic Evidence..........................................................................................29

         F.    The Court Should Order Sanctions. .................................................................31

                1.    The Court should order default judgment against Defendant Giuliani
                      on liability.............................................................................................31

                2.    The Court should order adverse inferences against Defendant
                      Giuliani. ...............................................................................................33

                3.    The Court should preclude Defendant Giuliani from relying on any of
                      the unpreserved electronic evidence....................................................35

          G.    In the Alternative, the Court Could Order Defendant Giuliani to Produce His
                 Devices to Plaintiffs ........................................................................................36

    II.    THE COURT SHOULD AWARD PLAINTIFFS' FEES AND COSTS. ................37

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Beck v. Test Masters Educ. Servs.*,
    289 F.R.D. 374 (D.D.C. 2013) ......................................................................... 30

*Borum v. Brentwood Vill., LLC*,
    332 F.R.D. 38 (D.D.C. 2019) ...................................................................... *passim*

*Butera v. District of Columbia*,
    235 F.3d 637 (D.C. Cir. 2001)......................................................................... 15

*Done v. District of Columbia*,
    No. 1:19-CV-01173 (CJN), 2023 WL 3558038 (D.D.C. Feb. 14, 2023) .......................... 15, 18, 22, 37

*Guarantee Co. of N. Am. USA v. Lakota Contracting Inc.*,
    No. CV 19-1601 (TJK), 2021 WL 2036666 (D.D.C. May 21, 2021) ..................... 15, 31, 32

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989) ....................................................................................... 23

*Herbert v. Lando*,
    441 U.S. 153 (1979) ....................................................................................... 23

*Jim S. Adler, P.C. v. McNeil Consultants, LLC*,
    No. 3:19-CV-2025-K-BN, 2023 WL 2699511 (N.D. Tex. Feb. 15, 2023) ......................... 19

*Klayman v. Judicial Watch*,
    256 F.R.D. 258 (D.D.C. 2009) ......................................................................... 35

*Mannina v. District of Columbia*,
    437 F. Supp. 3d 1 (D.D.C. 2020)................................................................ 18, 30

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ....................................................................................... 22

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ....................................................................................... 23

*U.S. Bank Nat'l Ass'n v. Poblete*,
    No. CV 15-312 (BAH), 2017 WL 598471 (D.D.C. Feb. 14, 2017) ..................... 31, 32

*United States v. Philip Morris USA, Inc.*,
    327 F. Supp. 2d 21 (D.D.C. 2004)................................................................... 36

*US Dominion, Inc. v. Powell*,
    554 F. Supp. 3d 42 (D.D.C. 2021)................................................................... 23

*Vasser v. Shulkin*,
No. 14-CV-0185 (RC), 2017 WL 5634860 (D.D.C. Nov. 22, 2017) .................................. 15, 30, 31, 34

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
269 F.R.D. 497 (D. Md. 2010), *aff'd in part, modified in part*, No. CV MJG-06-2662,
2010 WL 11747756 (D. Md. Nov. 1, 2010) .................................................................. 32

*Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*,
776 F.3d 1 (D.C. Cir. 2015) ......................................................................................... 15, 16

*Webb v. District of Columbia*,
146 F.3d 964 (D.C. Cir. 1998) ..................................................................................... 31

*Zhi Chen v. District of Columbia.*,
839 F. Supp. 2d 7 (D.D.C. 2011) ................................................................................ 33, 37

**Other Authorities**

Fed. R. Civ. P. 37 advisory committee's notes on rules - 2015 Amendment ........................................ 15, 16

Fed. R. Civ. P. 37(e) .............................................................................................................. 1

Fed. R. Civ. P. 37(e) advisory committee's notes on rules - 2015 Amendment ........................... 15, 16, 22

Fed. R. Civ. P. 37(e)(1) .......................................................................................................... 14, 15

Fed. R. Civ. P. 37(e)(2) .......................................................................................................... 14, 16, 30

WILLFULNESS, *Black's Law Dictionary* (11th ed. 2019) ........................................................ 30

Pursuant to Federal Rule of Civil Procedure 37(e) and the Court's June 23, 2023 minute order ("June 23 Order"), Plaintiffs Ruby Freeman and Wandrea' ArShaye ("Shaye") Moss (collectively, "Plaintiffs") respectfully move the Court to sanction Defendant Rudolph W. Giuliani ("Defendant" or "Defendant Giuliani") for failure to preserve electronic evidence (the "Motion").

## **INTRODUCTION**

In December 2020, Defendant Giuliani started widely publishing false claims that Plaintiffs, two Georgia election workers, had engaged in a conspiracy to commit election fraud. His claims were no more grounded in reality than a fever dream. However, given his stature and that of his client (then-President Trump), state and federal investigators promptly undertook an investigation of Defendant Giuliani's claims, quickly concluded those investigations, and subsequently announced in public that there was no basis for Giuliani's claims. In the face of seriatim official rejections of his false claims about Plaintiffs, Defendant Giuliani consciously avoided further inquiry, instead choosing to continue publishing his accusations—sometimes embellishing them with new imagined details—for more than a year. Plaintiffs brought this lawsuit to clear their names and hold Defendant Giuliani accountable for besmirching their reputations and brazenly disregarding the truth.

The time allotted for discovery in this case has concluded. Based on the record developed, there is no real dispute that Defendant Giuliani published false and defamatory claims about Plaintiffs to the world; that these publications caused Plaintiffs harm; that Defendant Giuliani's conduct was outrageous and caused Plaintiffs to suffer severe emotional distress; and that Defendant Giuliani conspired with others to do the same.

The only defenses Defendant Giuliani appears poised to offer on liability are that his allegations about Plaintiffs all constitute non-actionable opinion, and that he failed to act with the requisite degree of fault—whether that standard is negligence or "actual malice." The first defense

amounts to a legal question that this Court will confront in due course.  As for the second, Plaintiffs dispute that this case should be governed by the "actual malice" standard, but even if that standard did apply to private figures like Ruby Freeman and Shaye Moss, the law is clear that a defendant's self-serving attestations of good faith belief do not resolve the question of actual malice.  Instead, claims that turn on a defendant's subjective belief may be tested through discovery into whether a defendant *in fact* knew that his or her claims were false or recklessly disregarded the truth.

In this case, Defendant Giuliani has severely prejudiced Plaintiffs' ability to test his claims about what he knew, as well as what information he received but chose to ignore, before he made his numerous defamatory claims between December 2020 and January 12, 2022.  Plaintiffs know that pertinent documentary evidence on those questions existed at one point, based not just on common sense, but also because of discovery productions made by third parties.  But Defendant Giuliani himself has never produced meaningful documentary discovery in this case.  And the likely reason for that is because, as Defendant Giuliani's May 30 declaration (the "Declaration") makes abundantly clear, he failed to take *any steps* to preserve relevant electronic evidence.

Throughout the course of discovery, Plaintiffs have repeatedly inquired into the status of Defendant Giuliani's preservation efforts, and the Court has also given Defendant Giuliani the opportunity to cure his failures by ordering him to detail his preservation efforts and take steps to cure any deficiencies.  Moreover, Defendant Giuliani is an attorney with over half a century of experience and therefore is intimately familiar with his obligation to make reasonable efforts to preserve electronic discovery.  Despite this, Defendant Giuliani has now effectively conceded that he has not taken even the most basic steps to preserve evidence that might be relevant to this litigation.

In sum, Defendant Giuliani has had eighteen months since Plaintiffs first filed this suit to take reasonable steps to preserve his electronic evidence, including more than six months since Plaintiffs first raised the question of preservation. Defendant Giuliani has had nearly three months since Plaintiffs filed the motion to compel. Defendant Giuliani's failure to preserve his electronic records in the face of repeated reminders, and a personal awareness of his obligations, can and should be interpreted by this Court as a deliberate effort to deprive Plaintiffs of material evidence in this litigation.

In light of Defendant Giuliani's willful misconduct, severe sanctions are appropriate. Fact discovery in this matter concluded on May 22, 2023—a deadline which this Court has already extended six months due almost entirely to Defendant Giuliani's recalcitrance. While, in theory, additional discovery might plausibly be able to remedy some of the prejudice Plaintiffs have suffered, ordering that additional discovery would be inequitable and unjust. Plaintiffs have already faced substantial delay in the adjudication of their claims. Fact discovery should not be extended again simply because Defendant Giuliani has chosen not to comply with his obligations. Indeed, sanctions exist to remedy the precise situation here—a sophisticated party's abuse of judicial process designed to avoid accountability, at enormous expense to the parties and this Court. Defendant Giuliani should know better. His conduct warrants severe sanctions.

## **RELEVANT FACTUAL BACKGROUND**

Plaintiffs initiated this lawsuit on December 23, 2021, ECF No. 1, and filed their operative, amended complaint on May 10, 2022, ECF No. 22. Fact discovery opened on May 18, 2022, and Plaintiffs served their first set of discovery requests on Defendant on May 20, 2022. Defendant Giuliani's counsel initially conveyed that the key electronic devices had been seized by the FBI and that he had lost access to certain email and other accounts. ECF No. 44-4; ECF No. 44-5. Defendant's devices were returned to him no later than August 19, 2022. ECF No. 44-5.

Defendant Giuliani's counsel conveyed that there was a database that consisted of some set of documents collected by the FBI when they seized certain of Defendant Giuliani's devices in April 2021 ("TrustPoint"), but he did not know what documents were contained in that database.  *See* ECF No. 44 at 10–12; ECF No. 56 at 6–8; ECF No. 64 at 15–16.  Between July 12 and November 1, 2022, Defendant Giuliani produced a total of 193 documents collected in response to Plaintiffs' discovery demands in this case, none of which were particularly responsive.  ECF No. 44 at 4–8.

Concerned that Defendant's meager productions might be the result of spoliation, Plaintiffs first requested confirmation that Defendant Giuliani had taken reasonable steps to preserve his electronic evidence during a meet and confer on December 21, 2022.  ECF No. 44-7.  Counsel for Defendant Giuliani confirmed in writing that he was not aware of any preservation efforts by Defendant Giuliani, writing "I am not aware of his preservation efforts." *Id*.  In an email dated February 6, 2023, Plaintiffs again asked counsel for Defendant Giuliani to confirm that "Mr. Giuliani has preserved, searched, and produced documents from his e-mail accounts, devices, social media accounts, messaging applications, or other electronic devices for documents responsive to" Plaintiffs' Requests for Production ("RFPs").  (Ex. 1.)  Counsel for Defendant Giuliani did not provide a response to that question.  (*Id*.)

During Defendant Giuliani's deposition on March 1, 2023, Plaintiffs specifically inquired into Defendant Giuliani's repositories of potentially relevant information and his preservation and search efforts.  Defendant Giuliani confirmed during his deposition that he used multiple phones, email addresses, and messaging applications in the months following the 2020 presidential election.  (Ex. 4 at 17:14–19, 21:5–11, 22:24–25:6.)  Defendant Giuliani claimed to have taken "a quick look" for responsive material on messaging platforms and some of his devices but did not "know" if that look related to "this case" or if he "lumped a group of cases together."  (*Id.* at 25:19–

26:8, 26:20–27:7.)  Defendant Giuliani could not recall ever reaching out to any of the companies

for applications he used, like WhatsApp or Signal, to ask them to pull down his data.  (*Id*. at 28:9–

16.)  When asked whether he had ever gone back to the companies, as far as searching the devices

seized by the FBI in April 2021 after they were returned, Defendant Giuliani claimed they were

"wiped out" when he received them back and any search of them "hasn't helped because…I can't

get anything off" of those devices.  (*Id.* at 391:23–392:11.)

On March 20, 2023, Plaintiffs submitted a filing detailing the outstanding discovery

disputes with Defendant Giuliani and specifically argued that Defendant Giuliani had been unable

to confirm that he had adequately preserved materials responsive to Plaintiffs' RFPs despite

Plaintiffs' requests.  ECF No. 36 at 6.  Defendant Giuliani's response was silent regarding his

attempts to preserve electronic evidence.  ECF No. 38.

During a discovery conference before this Court on March 21, the Court asked counsel for

Defendant Giuliani whether Defendant Giuliani had "locked down – put a litigation hold on – all

of his records given the pendency of this litigation?"  (Ex. 7 at 10:22–11:2.)  Counsel for Defendant

Giuliani stated:

> **Well, Your Honor, I think the answer is yes.  I don't know** -- I don't recall in his
> deposition if he was specifically asked that question.  But, certainly, the documents
> that were taken by the DOJ were locked – in April of 2021.  So all of those
> documents are fixed, so that's certainly locked in.
>
> Everything after that -- I mean, I think he test- -- I think he answered an
> interrogatory and said he has not -- he has not destroyed or deleted any documents.
> So I think what they're asking for -- I don't know that there was so much concern
> about whether the documents had been spoiled.  But I think the concern is he needs
> to certify that that has, in fact, not occurred; and I am not sure that he has -- I'm not
> sure that he has done that.
>
> I am not sure that there was specifically – I don't know that there was a specific
> interrogatory asked, other than the one I mentioned that asked whether he deleted
> documents.  But he -- he certainly is willing to certify that however the Court would
> like him to do so.

(*Id.* at 11:3–21 (emphasis added).)

Following the March 21 discovery hearing, the Court issued a minute order directing Defendant Giuliani to, *inter alia*, (a) submit notice to the Court describing in specific terms the data on TrustPoint that were searched in response to Plaintiffs' RFPs, including date range and contents (e.g., social media accounts, text messages, and communications on other messaging platforms, such as Signal, Telegram, etc.); and (b) what locations and data sources remained for searches to be completed to respond fully to Plaintiffs' RFPs.  March 21 Minute Order.  In response, Defendant filed a notice on March 24 in which he did not describe in specific terms the data on TrustPoint or what locations and data sources remain for searches to be completed.  ECF No. 40; *see* ECF No. 44 at 11.

On April 17, with the Court's leave, Plaintiffs' filed a motion to compel Defendant Giuliani, specifically requesting that the Court compel Defendant Giuliani to detail his preservation efforts.  ECF No. 44 at 16–18.  In his opposition, the only effort regarding preservation that Defendant Giuliani was able to articulate was an action he did not even take, but instead one taken by the FBI when that agency seized Giuliani's electronic devices in April of 2021.  ECF No. 51 at 3–6.

In their briefing, Plaintiffs explained having obtained discovery from third-parties and public sources making clear what Plaintiffs suspected all along: there exists, somewhere in various accounts and devices, documentary evidence that goes to the heart of Plaintiffs claims.  For example, on April 26, between Plaintiffs filing their motion to compel and reply in support thereof, Plaintiffs received a production of documents from Christina Bobb.  That production yielded a text thread with Defendant Giuliani discussing sending a video of Plaintiffs to Rusty Bowers, then the Speaker of the Arizona House of Representatives, ECF No. 56-3; and an August 17, 2022, direct

message with Ms. Bobb on Instagram, which Defendant has never produced, ECF No. 56-4.  *See*

ECF No. 56 at 3, 5.  Defendant Giuliani has never produced either of those documents or any

social media communications from Ms. Bobb, and he had never even disclosed the phone number

he used to communicate with Ms. Bobb to Plaintiffs prior to Ms. Bobb's production.  (Gottlieb

Decl. ¶ 3); ECF No. 56 at 3, 5.  Nor are either of these documents listed in Defendant Giuliani's

privilege log as far as Plaintiffs can discern.  (Ex. 2 at 11:25–13:12); ECF No. 44 at 8; (Gottlieb

Decl. ¶ 3; Ex. 3.)

A production from one of Defendant Giuliani's assistants, third-party Christianne Allen,

yielded a December 7, 2020, email from a Fox News reporter to "press@giulianipartners.com,"

seeking a comment from Defendant Giuliani on one of the key early rebuttals of Defendant

Giuliani's claims—i.e., Georgia Secretary of State Chief Investigator Frances Watson's December

6, 2020, affidavit, specifically addressing and refuting Defendant Giuliani's claims:

> Good morning,
>
> First, I hope Mayor Giuliani is doing well and has a full and speedy
> recovery from Covid-19. Has he had a chance to see the affidavit
> from Frances Watson, the chief investigator for the Georgia
> secretary of state, that was filed yesterday? Watson claims that,
> according to his investigation, poll watchers and media were not
> asked to leave before counting ended, but that they "simply left on
> their own when they saw one group of workers, whose job was only
> to open envelopes and who had completed that task, also leave."
> Watson also says that "there were no mystery ballots that were
> brought in from an unknown location and hidden under tables,"
> claiming that ballots were sealed in boxes and placed under the table
> by workers who thought they were done for the night, and that the
> boxes were later opened when counting continued. Watson does not
> explain why workers thought they were done.
>
> Does Mayor Giuliani have any comment on this?

ECF No. 64-7.  Defendant Giuliani has never produced that email (or listed on a privilege log as

far as Plaintiffs can discern).

Similarly, the U.S. House of Representatives' Select Committee to Investigate the January 6th Attack on the U.S. Capitol released a December 13, 2020, email from Defendant Giuliani to Boris Epshteyn, an advisor to the 2020 Trump Campaign, approving a draft statement from the Trump Legal Team, which reiterates Defendant's false claims about Plaintiffs: "Georgia has video evidence of 30,000 illegal ballots cast after the observers were removed."  ECF No. 56-7 at 3. Defendant Giuliani has never produced that email to Plaintiffs, and the December 13 email does not appear on any privilege log produced in this case (or listed on a privilege log as far as Plaintiffs can discern).  (Gottlieb Decl. ¶ 4.)

Defendant Giuliani has also never produced (or listed on a privilege log as far as Plaintiffs can discern) a December 7, 2020, text thread between Mr. Epshteyn, Defendant Giuliani, and others.  The thread reads:

| | |
|---|---|
| Mr. Epshteyn (12:54 p.m. ET): | Team – |
| Mr. Epshteyn (12:54 p.m. ET): | Urgent POTUS request  need best examples of "election fraud" that we've alleged that's super easy to explain. |
| | Doesn't necessarily have to be proven, but does need to be easy to understand |
| | Is there any sort of "greatest hits" clearinghouse that anyone has for best example? |
| | Thank you!!! |
| . . . | |
| Mr. Giuliani (12:57 p.m. ET): | The security camera in Atlanta alone captures theft of a minimum of 30,000 votes which alone would change result in Georgia  Remember it will live in history as the theft of a state if it is not corrected by State  Legislature |
| . . . | |
| Mr. Giuliani (1:22 p.m. ET): | [REDACTED] GA, the state recorded on camera for history, [REDACTED] |

(Gottlieb Decl. ¶ 3; Ex. 11.)  These are not the only examples Plaintiffs have of relevant documents and communications that appear to have vanished from Defendant Giuliani's repositories.  (Decl. ¶ 5.)

Discovery from Defendant Giuliani and third-parties suggests that there should be many records responsive to Plaintiffs' discovery requests in this case.  For example, Defendant Giuliani testified that he "talked to many people" who said that poll observers were excluded from State Farm Arena on election night 2020 and that "there were constant complaints about that."  (Ex. 4 at 352:22–353:21.)  Christina Bobb testified that Defendant Giuliani was "getting like 10,000 emails a day" during the relevant time period, and that she was copied on some emails precisely to ensure that certain emails were actually brought to Defendant's attention.  (Ex. 5 at 40:16–41:21.)  Similarly, Bernard Kerik testified that Defendant Giuliani's team was receiving leads on possible fraud from "a hundred different sources" during November and December 2020.  (Ex. 6, Kerik at 47:12–48:7.)

On May 19, 2023, three days before the close of fact discovery, the Court held another discovery hearing, during which Defendant Giuliani admitted that he had been under an obligation to preserve documents related to this litigation since before this action was even filed.  (Ex. 2 at 67:21–68:2.)  When the Court inquired as to what steps Defendant Giuliani had taken to preserve his electronic evidence, counsel for Defendant stated that Defendant Giuliani "has not deleted any documents."  (*Id*. at 65:20–25.)  The Court explained that "not deleting documents is not the same as preserving the information in a manner that can be retrieved and searched."  (*Id*. at 66:1–20.)  With respect to pre-April 2021 material, counsel for Defendant Giuliani represented (without substantiation of any kind) that Defendant Giuliani "lost the ability to do any preservation as of April 2021" and that whatever data was preserved "was preserved because it was taken by the

government." (*Id*. at 67:11–18.) Defendant Giuliani represented to the Court that "90 to 95 percent of my communication is done on Apple, and it's backed up by the iCloud." (*Id*. at 53:4–8.) But that there "is a problem with the cloud. When we go back to the period of time -- material that was seized by the FBI, that I don't have access to on the cloud. They have it, but I don't have access to it." (*Id*. at 95:17–97:8.) Regarding his preservation obligations, Defendant Giuliani stated "understand, I have been doing this for 50 years; I understand the obligations." (*Id*. at 68:5–6.)

Following the hearing, the Court ordered Defendant Giuliani to, by May 30, *inter alia*:

**(1) file a declaration, subject to penalty of perjury, that details:**

> **a) All efforts taken to preserve, collect, and search potentially responsive data and locations that may contain responsive materials to all of plaintiffs' Requests for Production (RFP);**
>
> b) A complete list of all "locations and data" that defendant used to communicate about any materials responsive to any of Plaintiffs' RFPs (including, but not limited to, *specific* email accounts, text messaging platforms, other messaging applications, social media, devices, hardware, and any form of communication); [and]
>
> c) The *specific* "data" located in the TrustPoint database, including—
>
> > i) a list identifying the source devices from which the data was extracted or obtained;
> >
> > ii) for each such device, the type of device (i.e., iPhone, Macbook, laptop, iPad, etc.) and user, if known;
> >
> > iii) a list identifying any social media accounts, messaging applications, and email accounts from which the data was extracted or obtained; and
> >
> > iv) for each such account and application, the account name and user . . . .

May 19 Minute Order (the "May 19 Order") (emphasis added).

On May 30, Defendant Giuliani filed a declaration, but failed to resolve these issues. ECF No. 60 (the "Giuliani Declaration" or "Giuliani Decl."). The Giuliani Declaration identifies the following data sources as likely to contain (or at one point to have contained) responsive

information: (1) three personal email accounts (Gmail, iCloud, and Protonmail); (2) an iCloud account; (3) three phone numbers that he used to send messages via text and messaging application; (4) three messaging applications (Signal, WhatsApp, Telegram); (5) five social media handles, (items (1) through (5) collectively, "Identified Sources"); (6) and nine devices, two of which were not seized by the FBI ("Seized Devices" as to the seven seized, "Unseized Devices" as to the two unseized, and "Responsive Devices" as to the nine collectively).  Giuliani Decl. ¶ 3.

The Declaration is silent on any efforts by Defendant Giuliani to take any steps to preserve the Identified Sources or the Responsive Devices.  *See generally id*.  The Declaration states that Defendant Giuliani turned off the auto-delete function at some period "in late 2020 or early 2021" on his "email, messaging, communication, or other document storage platforms" (without specifying which of those platforms this action applied to, or the process that Defendant Giuliani used to take such steps) and did not manually delete "any electronic documents or dispose[] of any paper files."  *Id*. ¶ 2.

As to TrustPoint, the Declaration represents that "TrustPoint One documents consist of all documents that were extracted from the electronic devices taken by the DOJ in April 2021 when the DOJ seized those devices" but does not confirm what exactly was "extracted."  *Id*. ¶ 4.  The Declaration is silent on whether TrustPoint contains all of Defendant Giuliani's iMessage, text message, WhatsApp, Signal, Telegram, or social media accounts or rather, if it contains any of them, it is limited to whatever communications DOJ happened to extract from whatever information happened to be stored locally on the Seized Devices.  *Id*. ¶ 5.  The Declaration does not include any representations about whether the government extracted Defendant Giuliani's Gmail or Proton Mail accounts or his Business Files (as defined below), in part or in their entirety. *Id.* ¶¶ 4–5.  The Declaration explains that if Defendant Giuliani had accessed his social media

- 11 -

accounts "via the web, no data from social media would have been extracted from the devices" to TrustPoint. *Id*. ¶ 5. As to the iCloud account, the Declaration assumes that data would have also been included "because I synced my iCloud to my devices" without providing any confirmation of when or how such activities might have taken place, such as the intervals at which Defendant Giuliani generally "synced" his "iCloud to my devices" or whether all of his various accounts were included within such activities. Giuliani Decl. ¶ 5. The Declaration is silent on any efforts to recover any of the evidence that was "wiped" from his devices. *See generally* Giuliani Decl.

Plaintiffs responded to the Declaration in a filing on June 14 (as directed by the Court's May 31 Minute Order). ECF No. 64 (the "Response to the Declaration"). In the Response to the Declaration, Plaintiffs show in detail that the Declaration does not explain any affirmative steps by Defendant Giuliani to preserve any materials relevant to this action at any time. *Id*.

On June 16, Defendant produced 4,902 TrustPoint files to Plaintiffs. ECF No. 77 at 13. Of those files, 3,233 are .txt files. ECF No. 77-1 ¶ 5. Txt files are generally non-usable, non-readable raw data. *Id*. Of those txt files, 2,350 are completely non-readable, non-usable computer files known as "blobs." *Id*. In his position statement, Defendant Giuliani opined that, in his non-expert view, the large volume of blank and/or non-responsive documents in his June 16 production of materials from TrustPoint "appears to be a result of file corruption resulting from the DOJ seizure." ECF No. 77 at 20. The non-txt files are overwhelmingly non-responsive junk including: non-readable computer code; emails advertising a year-long spiritual apprenticeship course; informational packets regarding Microsoft auto-updates (in five different languages); articles and memes about George Floyd; and death notices from *The Washington Post*. (Gottlieb Decl. ¶ 6.)

On June 23, the Court granted Plaintiffs' request for leave to file a motion for sanctions for Defendant Giuliani's failure to sufficiently preserve discoverable information and directed

Plaintiffs to file their motion by July 7, 2023.  June 23 Minute Order Granting Plaintiffs' Request for Leave to File a Motion for Sanctions.

On June 29, 2023, Defendant introduced further confusion regarding TrustPoint, when his counsel provided Plaintiffs with a sealed motion filed by Defendant Giuliani's criminal defense counsel in *In re Search Warrant Dated April 21, 2021*, No. 21-MJ-4335 (S.D.N.Y.).  ECF No. 77-2.  That motion makes clear that the records collected in the TrustPoint database were collected as part of an investigation into a possible Foreign Agents Registration Act violation "involving Ukrainian individuals, Ambassador Maria Yovanovitch and the office of the U.S. Ambassador to the Ukraine; a trip by Giuliani to Poland in 2019 and issues involving Franklin Templeton and funds misappropriated from the Ukraine."  (Gottlieb Decl. ¶ 7.)  In that motion, Defendant Giuliani's criminal defense counsel requested that the New York court order the Government to suppress and destroy the majority of records contained in the TrustPoint database, and limit any remaining records to a time period between 2018 and 2019.  (*Id.*)  Plaintiffs do not know the result of that motion, as the docket remains sealed, or whether anything was ultimately deleted or suppressed from the TrustPoint database.  In all events, it is now undisputed that the records contained in TrustPoint were collected in response to a search warrant that had nothing to do with the 2020 election, or Plaintiffs' claims, and further that Defendant Giuliani attempted not to *preserve* the evidence involved in that collection, but instead to have that evidence narrowed and (in some circumstances) deleted.  (*Id.*)

On June 30, 2023, Defendant made a production of 3,407 documents from TrustPoint.  On the same day, the parties submitted a joint status report.  ECF No. 77.  As with the production on June 16, the June 30 production appears to be largely non-responsive junk files, including: 258

"blob" files; 141 Apple information packets in various languages; and more death notices from *The Washington Post*.  (Gottlieb Decl. ¶ 8.)

On July 6, one day before Plaintiffs were required to file this Motion, counsel for Defendant Giuliani reached out to Plaintiffs' counsel offering to discuss whether an agreement might be reached in lieu of Plaintiffs filing this motion.  (Gottlieb Decl. ¶ 9.)  In response to that outreach, counsel for each of the Parties negotiated over the course of two days in an effort to reach such an agreement.  (*Id.*)  When it appeared by late afternoon on Friday, July 7 that counsel appeared to agree upon a set of key principles for that agreement, the Parties filed a motion, ECF No. 80, seeking a brief extension of time to file this Motion.  (*Id.*)  The representations made in that Motion relied upon representations from Counsel for Plaintiffs and Defendant Giuliani.  (*Id.*)  However, counsel for Defendant Giuliani communicated on the morning of Monday July 10, for the first time, that Defendant Giuliani did not agree with the key principles referenced above, and accordingly, the agreement contemplated in ECF No. 80 was not achievable.  (*Id.*)  That turn of events necessitated this Motion.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 37(e), the Court may sanction a party "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because that party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery."  Rule 37(e)(1) authorizes, upon a finding of prejudice, sanctions to cure that prejudice, whereas Rule 37(e)(2) authorizes sanctions upon a finding that a party intended to deprive another party of information.  The Court may impose curative measures such as "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding

the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." Fed. R. Civ. P. 37(e) advisory committee's notes on rules – 2015 Amendment.

"Discovery sanctions serve two purposes: punishing disobedient parties and deterring others from emulating their behavior." *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 6–8 (D.C. Cir. 2015) (holding district court did not abuse its discretion by entering default judgment where district court found that defendant willfully refused to participate in discovery and violated numerous court orders); *see also Butera v. District of Columbia*, 235 F.3d 637, 661 (D.C. Cir. 2001); *Guarantee Co. of N. Am. USA v. Lakota Contracting Inc.*, No. CV 19-1601 (TJK), 2021 WL 2036666, at *3–4 (D.D.C. May 21, 2021).

"When analyzing a motion for sanctions under Rule 37(e)(1), courts consider whether (1) electronically stored information (ESI) should have been preserved in the anticipation or conduct of litigation; (2) a party failed to take reasonable steps to preserve the ESI; (3) ESI was lost as a result; and (4) the ESI could not be restored or replaced by additional discovery." *Doe v. District of Columbia*, No. 1:19-CV-01173 (CJN), 2023 WL 3558038, at *12 (D.D.C. Feb. 14, 2023) (cleaned up). The party alleging spoliation bears the burden of proof, *Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 43 (D.D.C. 2019), and that burden is not onerous. *See Vasser v. Shulkin*, No. 14-CV-0185 (RC), 2017 WL 5634860, at *4 (D.D.C. Nov. 22, 2017) (finding the burden was satisfied with "relatively thin" evidence).

For sanctions permitted by Rule 37(e)(1), the Court must then determine whether the moving party suffered prejudice as a result of the failure to preserve and may upon a finding of prejudice may "impose proportional sanctions upon the finding of prejudice." *Borum*, 332 F.R.D. at 46–47 (D.D.C. 2019). Courts have "discretion to determine how best to assess prejudice in particular cases." Fed. R. Civ. P. 37 advisory committee's notes on rules – 2015 Amendment.

And imposing the sanctions necessary to cure prejudice is "entrusted to the court's discretion." *Id.* 37(e) advisory committee's notes on rules – 2015 Amendment.

Under Rule 37(e)(2), if the Court finds that a party intended to deprive another of information, "no separate showing of prejudice is required because 'the finding of intent . . . can support . . . an inference that the opposing party was prejudiced by the loss of information.'" *Borum*, 332 F.R.D. at 48 (quoting Fed. R. Civ. P. 37(e) advisory committee's notes on rules – 2015 Amendment). The Court may impose the most severe sanctions, including default judgment and adverse inferences, where it finds that the party that lost the information acted with the intent to deprive another party of the information's use in the litigation. Fed. R. Civ. P. 37(e) advisory committee's notes on rules – 2015 Amendment; Fed. R. Civ. P. 37(e)(2). The Court of Appeals reviews the imposition of discovery sanctions for abuse of discretion. *See Wash. Metro. Area Transit Comm'n*, 776 F.3d at 4.

## **ARGUMENT**

## I.   **THE COURT SHOULD SANCTION DEFENDANT GIULIANI FOR HIS FAILURE TO TAKE REASONABLE STEPS TO PRESERVE ELECTRONIC EVIDENCE.**

Defendant Giuliani has not taken any steps, let alone reasonable steps, to preserve electronic evidence in the locations he identified as potentially containing responsive information. Specifically, Defendant Giuliani has failed to take reasonable steps to preserve, and therefore failed to produce, any meaningful amount of electronic evidence that surely was contained within his accounts and devices, including: (1) three personal email accounts (Gmail, iCloud, and Protonmail); (2) an iCloud account; (3) three phone numbers that he used to send messages via text and messaging application; (4) three messaging applications (Signal, WhatsApp, Telegram); (5) five social media handles; (6) and nine devices, two of which were not seized by the FBI

(together, the "Electronic Evidence").[1]

### A.    Defendant Giuliani Admits That The Electronic Evidence Should Have Been Preserved In Anticipation Of This Litigation.

Defendant Giuliani conceded that he understands that he has been obligated to preserve materials relevant to this lawsuit's claims since *before* Plaintiffs even filed suit.  (Ex. 2 at 67:21–68:2); *see also Borum*, 332 F.R.D. at 45 (explaining that the duty to preserve evidence starts when a party anticipates litigation).  And Defendant Giuliani cannot credibly claim that the materials on his own devices, that he testified to using during the time period at issue in the litigation to discuss issues relevant to the litigation, do not meet the low-bar for *potential* relevance.  *See Borum*, 332 F.R.D. at 45 (explaining that a party "must preserve potentially relevant evidence that might be useful to an adversary").

### B.    Defendant Giuliani Admits That He Has Failed To Take Reasonable Steps To Preserve The Electronic Evidence In Violation Of Rule 37(e).

Defendant Giuliani admits that he did not take *reasonable* steps to preserve the Electronic Evidence because Defendant Giuliani admits that he essentially took *no* steps to preserve the Electronic Evidence (apart from his claim to have disabled the auto-delete function on certain accounts).[2]  *See* ECF No. 64 at 12–18; *see generally* Giuliani Decl.  Defendant Giuliani also

---

[1] Plaintiffs note that they are submitting this Motion without having been able to complete a full review of Defendant Giuliani's productions from June 16 and 30.  It is possible, given the nature of the productions, that a complete review may require the assistance of a forensics vendor given the data at issue.  Plaintiffs do not object if this Court defers ruling on this Motion in full or in part, until Plaintiffs have been afforded the opportunity to complete their analysis of Defendant Giuliani's productions, and are willing to provide an update to this Court in the form of a supplement to this Motion.

[2] The only effort at preserving Defendant Giuliani's Electronic Evidence was not his, but rather the FBI's, when it seized certain of Defendant Giuliani's devices in April 2021 and retained some portion of those electronic materials on the TrustPoint database.  Defendant Giuliani may not claim credit for the FBI's seizure, not just because it was not a step *he* took, but also because he has been

admits by omission that he has not taken any steps to *recover* any Electronic Evidence—whether via the retention of a forensics company or by contacting various email or social media platforms—that he claims was "wiped" from his devices.

Courts routinely find that a party failed to take reasonable steps to preserve electronic evidence where the party made significantly greater efforts at preservation than Defendant Giuliani's paltry steps here. *See, e.g.*, *Doe*, 2023 WL 3558038, at *14 (finding the defendant "failed to fulfill its obligations by a long shot" where its only preservation effort was a partial litigation hold and text messages from the relevant time period were lost); *Mannina v. District of Columbia*, 437 F. Supp. 3d 1, 13 (D.D.C. 2020) (holding a party's issuance of a litigation hold three years after it anticipated litigation was unreasonable).  The only "effort" Defendant Giuliani has made was to turn off auto-delete at some period "in late 2020 or early 2021" on his (undefined) "email, messaging, communication, or other document storage platforms" and his claim that he refrained from manually deleting "any electronic documents or dispose[] of any paper files."  Giuliani Decl. ¶ 2.  But Defendant Giuliani's representation lacks the kind of details that would make it worthy of credit—he has not explained *which* of his accounts had auto delete functions on them, how he turned them off (if so) or when, whether he did so or tasked someone else to do so, and whether he sought to recover any records (from his various online accounts) confirming these changes.  And in any event, as the Court recognized during the Motion to

---

unable to provide *any* assurance that TrustPoint contains all electronic evidence from all the Seized Devices, despite being ordered by the Court to do so.  March 21 Minute Order; May 19 Minute Order; ECF No. 64 at 14–16.  Finally, assuming the FBI preserved all materials on TrustPoint's database, this effort only preserved materials generated prior to April 2021.

Compel hearing, "not deleting documents is not the same as preserving the information in a manner that can be retrieved and searched." (Ex. 2 at 66:1–20; *see also id*. at 87:9–23.)

### C.     The Electronic Evidence Is Irretrievable As A Result Of Defendant Giuliani's Failure To Preserve.

Electronic evidence is deemed irremediably lost for purposes of Rule 37 where, as here, a custodian acknowledges that information has been lost, attempts to recover that information are unsuccessful, and no amount of discovery will confirm the extent to which information was lost. *Borum*, 332 F.R.D. at 46. To combat a finding of loss, "[i]t is not sufficient" for a custodian to claim that all of relevant emails "must have been preserved and produced through . . . other custodians' emails." *Jim S. Adler, P.C. v. McNeil Consultants, LLC*, No. 3:19-CV-2025-K-BN, 2023 WL 2699511, at *20 (N.D. Tex. Feb. 15, 2023) (citing *Borum*, 332 F.R.D. at 46). In *Borum*, for example, a company lost its own copies of an employee's emails. 332 F.R.D. at 46. This Court held that the evidence should be deemed lost because the employee likely sent emails to only external parties without copying another employee, such that it was impossible for the custodian to fully recover all of that employee's e-mails, and because "no amount of discovery w[ould] confirm the extent to which information was lost." *Id.*

The record here supports a finding that Defendant Giuliani's electronic evidence is irretrievable. Defendant Giuliani has repeatedly conceded as much. In an August 12, 2022, email, Defendant's counsel represented that Defendant Giuliani had lost access to some of his "icloud, email accounts, etc." after the FBI seized his devices. ECF No. 44-5 at 4. In his March 1 deposition, Defendant Giuliani testified that at least some of the devices returned by the FBI had been wiped. (Ex. 4 at 391:23–392:11.) At the March 21 discovery hearing, Defendant Giuliani explained that he has lost access to at least one email account. (Ex. 7 at 20:22–21:1.) At the Motion to Compel hearing, Defendant Giuliani explained that he no longer has access to his iCloud

account for the relevant time period, which would have contained "90 to 95 percent" of his communications.  (Ex. 2 at 53:4–8, 95:17–97:8); (*see also* Ex. 4 at 21:20–22:10, 27:21–28:8.) After reiterating that he cannot access his iCloud account for the relevant period, Defendant Giuliani himself suggested that that evidence may have been "destroy[ed]."  (Ex. 2 at 96:8–18.)

Separately, Defendant has never demonstrated what *exactly* is on the TrustPoint database, such that the Court or Plaintiffs may have any degree of confidence that it contains all of Defendant's potentially relevant documents from the pre-April 2021 period.  *See supra* at pp. 4–6, 11.  And his searches and productions of that database have failed to yield clearly relevant evidence, *see supra* at pp. 12–13, which strongly suggests the TrustPoint database is incomplete as to electronic evidence pre-dating the FBI's seizure in April 2021.

What is missing from *all* of Defendant Giuliani's various representations is *any* documented effort to recover this allegedly lost evidence.  To the contrary, as mentioned above, on June 29, Defendant's counsel produced a sealed motion to Plaintiffs' counsel in which Defendant's criminal defense attorneys specifically requested that all evidence outside of a time period between 2018 and 2019 be destroyed—a motion the resolution of which Plaintiffs do not know.  (Gottlieb Decl. ¶ 7.)  Most recently, in the parties' June 30, 2023, joint status report, Defendant Giuliani reported that many of the files he produced from the TrustPoint database are blank or consist of a jumble of text because of "file corruption."  ECF No. 77 at 20.  But at no point, to Plaintiffs' knowledge, has Defendant Giuliani ever claimed to have sought to remedy these issues—whether by hiring a forensics vendor to examine his devices, by contacting Apple to determine what if anything might be recovered from his supposedly corrupted iCloud account, or by contacting various social media platforms to determine what if anything might be recovered from his Instagram, Facebook, Twitter, or other social media accounts.  Indeed, to date, Defendant

Giuliani has *still* not even produced to Plaintiffs the most rudimentary phone records from the provider of his cell phone accounts.

Further, Plaintiffs have been prejudiced in even being able to ascertain the full consequences of Defendant Giuliani's lackadaisical approach to his discovery obligations.  It is still unclear whether Plaintiffs will ever understand what precisely the FBI transferred (or did not transfer) from Defendant Giuliani's Seized Devices; nor do Plaintiffs know the actual status of Defendant Giuliani's cloud-based accounts.  Moreover, at least one third-party, Katherine Friess, with whom Defendant Giuliani was in close contact when he first began making his claims about Plaintiffs and was working with Defendant Giuliani in the aftermath of the 2020 election, has vanished.  Despite months of efforts, including extensive investigation and an order from this Court authorizing Plaintiffs to serve Katherine Friess by alternative service, *see* ECF No. 34; December 20, 2022 Minute Order; ECF No. 34-5 (listing Ms. Friess on various privilege log entries), Ms. Friess has never responded to Plaintiffs' subpoenas nor provided documentary evidence, and Defendant Giuliani has declined to say where she might be.

When considered together, (1) Defendant Giuliani's direct admissions of loss of access to evidence, (2) Defendant Giuliani's defiance of multiple court orders requiring him to provide a meaningful description of what is and is not located in the TrustPoint database, (3) the evidence Plaintiffs have obtained from other sources but not from Defendant Giuliani, and (4) the unavailability of key witnesses are more than sufficient to conclude that electronic evidence has been lost for purposes of Rule 37.

### D.    Plaintiffs Are Prejudiced By The Loss Of The Electronic Evidence.

Defendant Giuliani's failure to preserve the Electronic Evidence has severely prejudiced Plaintiffs' ability to learn what he knew or did not know—including what information he received, and what he did or did not do in response to that information—when he published his

defamatory claims.   That information is critical to permit Plaintiffs to evaluate and rebut Defendant Giuliani's defense that he did not act with the requisite degree of fault.   Rule 37(e) "leaves judges with discretion to determine how best to assess prejudice in particular cases," including how to allocate the burden of proving prejudice.   Fed. R. Civ. P. 37(e) advisory committee's notes on rules – 2015 Amendment.   In evaluating prejudice, courts should consider "the information's importance in the litigation."  Fed. R. Civ. P. 37(e) advisory committee's notes on rules – 2015 Amendment.   Where it is difficult to determine the content of lost information, courts must evaluate whether it is fair to place the "burden of proving prejudice on the party that did not lose the information."  *Id*; *see also Doe*, 2023 WL 3558038, at *14–15 (finding plaintiff was prejudiced by loss of ESI where she came forward with "plausible, concrete suggestions as to what the destroyed evidence might have been") (internal citations omitted).   In assessing prejudice, courts may also weigh the time and resources a party spent as a result of the spoliation. *See, e.g.*, *Doe*, 2023 WL 3558038, at *15 (finding plaintiff was prejudiced by defendant's spoliation by having to spend time conferring with opposing counsel and deposing witnesses on the issue and filing the sanctions motion)

In this case, Defendant Giuliani argues that because Plaintiffs are public figures (which Plaintiffs contest), to prove their defamation claim, Plaintiffs must prove that Defendant Giuliani published his claims with "actual malice."  *E.g.*, ECF No. 26-2 at 8–9, 18–19; ECF No. 33 ¶ 193. If the actual malice standard applies,[3] Plaintiffs will need to prove that Defendant Giuliani knew his claims were false or that he acted with reckless disregard for the truth.  *E.g.*, *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964).   Because defamation defendants typically do not

---

[3] Plaintiffs do not concede that actual malice is the appropriate standard and, to the contrary, as Plaintiffs will argue in summary judgment briefing, the negligence standard should apply.

acknowledge an "awareness of falsehood," *Herbert v. Lando*, 441 U.S. 153, 170 (1979), plaintiffs in actual malice cases are permitted to discover and "to prove the defendant's state of mind through circumstantial evidence."  *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989); *see also Herbert*, 441 U.S. at 165 (acknowledging that plaintiffs may discover and use "*any* direct or indirect evidence relevant to the state of mind of the defendant") (emphasis added).

Plaintiffs cannot fairly litigate their claims without access to circumstantial evidence of Defendant Giuliani's state of mind—that evidence is vital to Plaintiffs' ability to rebut Defendant's self-serving attestations of good faith belief.  The Supreme Court has explained that a defendant's unsupported claims of good faith *do not* resolve the issue of actual malice.  *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968).  Instead, good faith defenses can and must be tested through discovery, including by pursuing evidence that a defendant: fabricated claims out of whole cloth; was aware that the published claims were false; consciously avoided finding out the truth; relied on wholly unreliable sources; set out to make facts conform to a preconceived narrative; published their claims with an ulterior motive; and had economic or other incentives to misrepresent the facts, among others.  *See, e.g.*, *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 692 (avoidance of the truth); *St. Amant*, 390 U.S. at 732 (fabrication and unreliable sources); *Herbert*, 441 U.S. 153, 163–65 & nn.12, 15 (improper motive); *US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 60–61 (D.D.C. 2021) (preconceived narrative of election fraud).  Through third-party discovery, Plaintiffs have developed considerable evidence supporting each of these responses to Defendant Giuliani's claim of good faith, yet Plaintiffs have been undermined by Defendant's discovery misconduct at every turn.  Much of this evidence is also relevant to Plaintiffs' IIED claim, which requires Plaintiffs to demonstrate that Defendant Giuliani acted intentionally or recklessly.  *See* ECF No. 31 at 23.  And evidence of whom Defendant Giuliani worked with and the extent of those individuals' acts in

defaming and inflicting emotional distress on Plaintiffs is relevant to Plaintiffs' civil conspiracy claim.  *Id.*

In this case, Defendant Giuliani's failure to preserve the Electronic Evidence has severely prejudiced Plaintiffs' ability to test his claim that he believed, and did not recklessly disregard the falsity of, his false claims about Plaintiffs.  The following examples are illustrative.

*First*, as Plaintiffs alleged, Georgia election officials investigated Defendant Giuliani's claims in the hours and days after December 3, discovered that they were false, and broadcast their falsity to the world in refutations that were amplified by fact checking organizations.  ECF No. 22 ¶¶ 40–56.  Every message Defendant Giuliani sent or received about these investigations is probative of Defendant's actual malice with respect to *all* of the challenged statements in Plaintiffs' Complaint, because they evidence, at a minimum, his knowledge of falsity and conscious avoidance of the truth.

Defendant has failed to produce any records of having received or discussed these refutations, despite a clear record that such evidence existed.  On December 7, 2020, a Fox News reporter emailed to ask Defendant Giuliani for comment on one of the key rebuttals, the December 6, 2020 Affidavit of France Watson.  ECF No. 64-7.  At his deposition, Defendant Giuliani testified that, at some point prior to December 8, 2020 (and well before the first actionable statement on December 23, 2020), he learned of (1) a December 7 press conference, during which Georgia Voting Implementation Gabriel Sterling specifically rebutted his claims about Plaintiffs, and Georgia Secretary of State Brad Raffensperger re-certified the Georgia election results after conducting a recount requested by the Trump Campaign; and (2) other, unspecified actions by Messr. Raffensperger and Sterling "in general."  (Ex. 4 at 328:3–332:4, 376:7–378:11.)  Defendant Giuliani testified that this knowledge of the December 7 press

conference was the basis for his December 8 tweet that, "The Georgia video proves now and for posterity that crooked Democrat officials stole the votes to try to win the state and Republicans are covering up for them." (*Id*. at 377:17–378:9.)  But Defendant Giuliani was not able to specify when he learned of those rebuttals or what exactly he learned.  (*See id*. at 376:7–378:11).  Nor was Defendant Giuliani able to identify whether he discussed these statements with any other individuals, in person or via email, text, virtual meeting, or otherwise.  Without Defendant Giuliani's electronic data, Plaintiffs are not able to learn exactly when Defendant Giuliani learned of which fact checks, what exactly he learned, and what he did (or did not do) with that information; that is all evidence that would be highly probative of Defendant's state of mind with respect to the subsequent statements he made about Plaintiffs and which would permit Plaintiffs to learn the identities of other individuals who likely discussed the same with him.

*Second*, Plaintiffs allege that Defendant Giuliani published his claims about Plaintiffs to amplify a preconceived narrative of election fraud aimed at ensuring then-President Trump's continued tenure in office.  ECF No. 22 ¶¶ 9, 24, 132.  As such, every record evidencing his motives and purpose in publishing claims about Plaintiffs is highly probative of Defendant Giuliani's state of mind.

Yet again, Defendant Giuliani has failed to produce evidence revealing his purpose in publishing false claims about Plaintiffs, despite a clear record that such evidence existed.  As noted above, Defendant Giuliani failed to produce a December 7, 2020, text thread where then-President Trump asked for the "greatest hits" of election fraud examples that didn't "have to be proven" but did have to be "super easy to explain," and Defendant Giuliani responded by identifying his claims about Plaintiffs.  (Ex. 11.)  Similarly, Defendant Giuliani failed to produce an email produced by the January 6th Committee, making clear that he personally signed off on

Trump Campaign ads depicting Plaintiffs and parroting Defendant Giuliani's false claims about Plaintiffs. ECF No. 56-7 at 3. Nor are Plaintiffs able to reconstruct the lost records through good faith testimony from Defendant Giuliani. After learning of this last email (after Defendant's deposition), Plaintiffs propounded Requests for Admission to Defendant Giuliani asking him to admit that he reviewed and consulted some or all of the Trump Campaign ads featuring Plaintiffs prior to their airing, and that he provided information to the Campaign about Plaintiffs for the purpose of that information being used in advertisements to undermine faith in the results of the 2020 Presidential election. (Ex. 12.) To all of those requests, Defendant Giuliani responded that he "does not recall" whether he reviewed, consulted on, or provided information for Trump Campaign ads. (*Id.*)

*Third*, Plaintiffs allege that Defendant Giuliani conspired with others to carry out his campaign of defamation and intentional infliction of emotion distress, executing a written "Strategic Communications Plan" that plotted to use Defendants' false claims about Plaintiffs and others as part of a "[n]ationwide communications outreach campaign" to undermine the 2020 election. ECF No. 22 ¶¶ 9–12, 57–64, 187–91. That plan specifically identified Defendant Giuliani's claims about Plaintiffs as key evidence. *Id.* As such, every record evidencing Defendant Giuliani's coordination with his team and his team's amplification of false statements about Plaintiffs is relevant to Plaintiffs' claims.

Yet, Defendant Giuliani has failed to produce such records, despite clear indications that such records existed. For example, Defendant Giuliani's lead investigator, Bernard Kerik, testified that Defendant Giuliani is a "very hands on" boss, and that during November and December 2020 Defendant Giuliani was "in charge" and generally aware of everything Mr. Kerik and the team did, and that Defendant Giuliani directed everything Mr. Kerik did or did not do.

- 26 -

(Ex. 6 at 39:7–10; 65:14–22.)  At his deposition, Mr. Kerik testified that Defendant Giuliani and his team were engaged in "continual discussions" about the allegations in the team's Strategic Communications Plan for about "six weeks."  (*Id.* at 95:7–21.)  And Mr. Kerik also tweeted out a thread with screenshots of the Strategic Communications Plan, including a screenshot of the Georgia section which specifically names Plaintiffs and repeats Defendant Giuliani's false claims about them. (Ex. 13.)  Defendant Giuliani, for his part, testified that he "disagree[d] with a lot of what [was] in" the Strategic Communications Plan, that he was opposed to the plan, and that he didn't think it was "worth spending the 5 to 8 million dollars" it would take to execute the plan. (Ex. 4 at 250:14–20; 259:14–260:14.)  He also testified that while Mr. Kerik knew Defendant Giuliani was opposed to the plan, a lot of his communication about the plan was with Katherine Friess.  (*Id.* at 258:17–259:11.)  As for Mr. Kerik's tweet of the plan, Defendant Giuliani testified that he's "not sure" if he was aware of it, though it "sounds kind of familiar." (*Id.* at 261:17–25.) Yet, Defendant Giuliani has effectively not produced any records of his conversations about the Strategic Communications Plan with anyone, including Bernard Kerik and Katherine Friess, and Ms. Friess is (as noted above) nowhere to be found.

*Fourth*, Plaintiffs allege that Defendant Giuliani and his team were the first to publish claims about Plaintiffs on December 3, 2020, showing a video of Plaintiffs to the world and initiating their lies.  ECF No. 22 ¶¶ 37–39.  While Plaintiffs are not suing for defamation over those initial publications, when Defendant Giuliani learned of the existence of the video, what exactly he learned, and what he said of the video at the outset is highly probative of his state of mind on December 3 and afterwards.

Yet, Plaintiffs still do not even know exactly when Defendant Giuliani first learned of the video at the heart of this case, or what he learned about that video before he spoke about it in

public.  After this Court ordered Defendant Giuliani to supplement his interrogatory responses,

Defendant provided supplemental responses to Plaintiffs' interrogatories number 3 and 5, noting

that "Defendant generally recalls that he was made aware of the existence of a video the night

before the [December 3, 2020,] hearing."  (Ex. 8.)  Third-party discovery has revealed that Ray

Smith, a Georgia lawyer, obtained that video for the Giuliani team at around 1:00 a.m. on the

morning of December 3.  (Ex. 9; Ex. 10 at 104:8–15.)  Jacki Pick, the woman who first presented

the video of Plaintiffs to the world at the direction of Defendant Giuliani's team, testified that

certain individuals working with Defendant Giuliani reviewed the video at Mr. Smith's office in

Atlanta, but that Defendant Giuliani was not there and that he was not patched into any call about

the video.  (Ex. 10. at 105:25–108:22.)  Jacki Pick did not communicate with Defendant Giuliani

until the next morning, *id*. at 137:9–16, and Defendant Giuliani testified that he doesn't recall any

conversations with Mr. Smith about Plaintiffs or the video.  (Ex. 4 at 114:24–115:3.)  Taken

together, then, someone must have communicated the video's existence to Defendant Giuliani in

advance of the December 3, 2020 hearing, and presumably that person made certain

representations to Defendant Giuliani about what that video did or did not show.  But Plaintiffs

have no record of that communication ever taking place or who was involved, let alone what

precisely was communicated to Defendant Giuliani including about what the video supposedly

showed or how little of the video Smith's team had been able to review.

* * *

Unfortunately, as illustrated by the examples described above, Plaintiffs cannot accurately

assess the full scope of evidence that has been lost.  Third-party discovery and testimony from

Defendant Giuliani (and others) suggest there should be a considerable amount of discoverable

evidence—at minimum, that evidence would allow Plaintiffs to document when Defendant

Giuliani learned of key facts relevant to his statements about Plaintiffs.  Defendant Giuliani has admitted that evidence has been wiped and corrupted; and Plaintiffs have received, to date, minimal documentary discovery.  It is not fanciful to presume that Defendant Giuliani's numerous sent and received depositories contain concrete evidence acknowledging his lack of foundation for his claims about Plaintiffs.  Former Speaker of the Arizona House of Representatives, Rusty Bowers, testified to Congress that Defendant Giuliani told him Defendant Giuliani's team "just d[idn't] have the evidence of voter fraud" they alleged occurred in the 2020 election.[4]

Plaintiffs have also been further prejudiced by Defendant Giuliani's failure to preserve the Electronic Evidence in the time and resources expended in uncovering the truth about this spoliation.  Since at least December 21, 2022, Plaintiffs have spent hundreds, if not thousands of hours, meeting and conferring with counsel for Defendant, briefing the Court, consulting with discovery experts, and delaying other fact discovery, as a direct result of Defendant Giuliani's spoliation and piecemeal admittance of that spoliation.  *Supra* at Relevant Factual Background. On these facts, the record is clear that Plaintiffs have been severely prejudiced by Defendant's loss of relevant evidence.

### E.    Defendant Giuliani Intended Not To Take Reasonable Steps To Preserve The Electronic Evidence.

The only explanation for why Defendant Giuliani failed to take any steps to preserve the Electronic Evidence, let alone reasonable steps, is that he did so deliberately to deny Plaintiffs (and

---

[4] *See* Ximena Bustillo, *Arizona Lawmaker Rusty Bowers Details the Pressure Put on Him by Trump and Giuliani*, NPR (June 21, 2022), https://www.npr.org/2022/06/21/1106413341/arizona-lawmaker-rusty-bowers-pressure-giuliani.

the scores of other plaintiffs and government entities litigating and investigating his actions during and after the 2020 Presidential Election) evidence that would be helpful to their case. A party deliberately fails to fulfill its preservation obligations when, as Defendant Giuliani did here, it acts "with the intent to deprive another party of the information's use in litigation." Fed. R. Civ. P. 37(e)(2); *see, e.g.*, *Mannina*, 437 F. Supp. 3d at 14 (granting motion for sanctions on the basis of negligence where party failed to issue litigation hold until three years into litigation, but did otherwise request that documents be preserved); *Beck v. Test Masters Educ. Servs.*, 289 F.R.D. 374, 378 (D.D.C. 2013) (noting that failure "to make any serious effort to recover the data" is enough to demonstrate "a conscious disregard of [] preservation obligations."); *Vasser*, 2017 WL 5634860, at *5–6 (granting motion for sanctions where defendants failed to preserve relevant documents that plaintiffs repeatedly requested).

Defendant Giuliani told this Court that, as an experienced lawyer, he understands his obligations to take reasonable steps to preserve evidence: "I have been doing this for 50 years; I understand the obligations." (Ex. 2 at 68:5–6.) It is hardly a leap from that concession to infer that Defendant Giuliani also understands what is required to satisfy such obligations. Understanding one's obligations yet choosing not to fulfill them is textbook willfulness. WILLFULNESS, *Black's Law Dictionary* (11th ed. 2019) ("The voluntary, intentional violation or disregard of a known legal duty.") Plaintiffs also specifically asked counsel for Defendant on both December 21, 2022 and February 6, 2023 whether Defendant Giuliani had fulfilled his preservation obligations. Plaintiffs also moved to compel Defendant to confirm that he had fulfilled his preservation obligations on April 17, 2023 and the Court ordered him to do so on May 19, 2023. Despite all of this, Defendant Giuliani failed to take any reasonable preservation steps— even today, he has not taken any. This Court has more than sufficient evidence to conclude that

Defendant Giuliani's years-long failure, in light of his personal knowledge of his obligations and reminders from Plaintiffs and the Court, has been intentional.  *See, e.g., Vasser*, 2017 WL 5634860, at *6 (ordering sanctions for spoliation where defendant "not only knew or should have known that these documents were relevant, it knew the Plaintiff had requested them (and ha[d] done so *at every stage of this litigation*), yet it failed to preserve them") (emphasis added).

**F.    The Court Should Order Sanctions.**

1.    The Court should order default judgment against Defendant Giuliani on liability.

Although default judgment is the most severe sanction available, Plaintiffs respectfully submit that a default judgment on liability is warranted on these egregious facts.  The D.C. Circuit Court of Appeals has outlined "three basic justifications [to] support the use of dismissal or default judgment as a sanction for misconduct," any one of which alone can be the basis for entering default judgment.  *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998).  Here, at least two of those three justifications apply and therefore warrant default judgment as to Defendant Giuliani's liability: (1) Defendant Giuliani's "behavior has severely hampered" Plaintiffs' ability to present their case as to actual malice, and (2) Defendant Giuliani's conduct, particularly as a barred attorney, "is disrespectful to the court."  *Id*.[5]

---

[5] Default judgment could also be an appropriate sanction here as Defendant Giuliani's delay tactics have not only required Plaintiffs to seek case extensions both past and anticipated, but this Court has already had to schedule three discovery hearings to address various disputes, many of which have stemmed from said delay tactics.  In spite of the multitudinous hearings and Court orders, Defendant Giuliani has transparently flouted his discovery obligations at every turn.  A default judgment on liability would therefore also be appropriate due to the degree to which Defendant Giuliani's spoliation has stalled discovery and consumed Court resources.  *See U.S. Bank Nat'l Ass'n v. Poblete*, No. CV 15-312 (BAH), 2017 WL 598471, at *6 (D.D.C. Feb. 14, 2017) (finding the second element met where "[defendant's] failure to respond to discovery and penchant for instead filing irrelevant documents with the Court has stalled this litigation"); *Guarantee Co. of N. Am. USA*, 2021 WL 2036666, at *4 (finding the second element met and noting that "[t]ime and

*First*, as discussed *supra*, Defendant Giuliani's deliberate failure to preserve his electronic evidence has severely hampered Plaintiffs' ability to fully present their case as to liability.  Given that Defendant Giuliani plainly made false and defamatory statements regarding Plaintiffs, the crux of Plaintiffs' case is likely to be whether Defendant Giuliani knew the statements were false or recklessly disregarded their falsity.  Plaintiffs are therefore entitled to a default judgment on liability because of Defendant Giuliani's spoliation and blatant disregard for his discovery obligations, including with respect to evidence of his state of mind.  *See Guarantee Co. of N. Am. USA*, 2021 WL 2036666, at *4 (entering default judgment where "Defendants' wholesale failure to comply with their discovery obligations and participate in this litigation . . . made it all but impossible for Plaintiff to present its case").

*Second*, and similarly, Defendant Giuliani—despite being an attorney for over 50 years and barred in this District—has disrespected this Court by knowingly ignoring his discovery obligations.  *See U.S. Bank Nat'l Ass'n v. Poblete*, No. CV 15-312 (BAH), 2017 WL 598471, at *6 (D.D.C. Feb. 14, 2017) (finding third element met where defendant "demonstrated utter disrespect for the Court's deadlines and a need to deter further noncompliance" by employing tactics "plainly intended to do nothing more than delay the resolution of this matter").[6]   And

---

resources the Court has had to spend on Defendants' contumaciousness can never be recovered and applied toward resolving other matters").

[6] Certain district courts within this Circuit, as well as other circuits, have determined that the three-factor test set forth in Section F.2 *infra* also applies with respect to default judgment sanctions.  *See Borum*, 332 F.R.D. at 44 (applying the three-factor test and noting that "[a]vailable sanctions include default judgment, fines, and awards of attorneys' fees and expenses, among others"); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 521 (D. Md. 2010) (observing that, in addition to the Fourth Circuit, "District courts in the Second, Fifth, Sixth, Seventh, and Ninth Circuits have identified the same factors for sanction-worthy spoliation"), *aff'd in part*, *modified in part*, No. CV MJG-06-2662, 2010 WL 11747756 (D. Md. Nov. 1, 2010).

Defendant Giuliani's disrespect for this Court evidences a need to deter future misconduct particularly because Defendant Giuliani is currently litigating several cases with "pending requests for discovery." (Ex. 7 at 22:6–12.) Issuing the most severe of sanctions here may dissuade Defendant Giuliani from employing the same unlawful tactics in his other pending cases.

> 2. <u>The Court should order adverse inferences against Defendant Giuliani</u>.

Short of entering default judgment on liability, the Court should enter adverse inferences against Defendant Giuliani. Adverse inferences are appropriate where, as here, Plaintiffs have shown that (1) Defendant Giuliani had control over the Electronic Evidence and had an obligation to preserve it; (2) the failure to preserve was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to Plaintiffs' claims. *See Zhi Chen v. District of Columbia.*, 839 F. Supp. 2d 7, 13 (D.D.C. 2011) (ordering adverse inferences where defendant was plainly aware of duty to preserve video evidence and failed to do so).

*First*, Defendant Giuliani plainly had possession, custody, or control over the Electronic Evidence such that he could have preserved it at some time since Plaintiffs filed suit. Of the Electronic Evidence, Plaintiffs understand that Defendant Giuliani has always had control of: his three personal email accounts, his iCloud account, his three phone numbers, his three messaging applications, his five social media handles, and two devices. Plaintiffs understand that seven of Defendant Giuliani's Devices were seized in April 2021 and returned no later than August 2022— just three months after Plaintiffs first served discovery in this case. *See* ECF No. 44-5. And Defendant Giuliani has admitted that he had an obligation to preserve the Electronic Evidence

---

For the same reasons set forth in Section F.2, an entry of default as to liability is appropriate applying the three-factor test: (1) Defendant Giuliani clearly had possession, custody, or control of the spoliated evidence; (2) Defendant Giuliani deliberately spoliated the evidence (*i.e.*, with a culpable state of mind); and (3) the evidence was highly relevant to Plaintiffs' claims.

prior to Plaintiffs' ever filing suit.  ECF No. 60 ¶ 2 (acknowledging "receiving notice of potential

litigation issues surrounding my involvement in contesting the 2020 Election in late 2020 or early

2021" triggering preservation obligations).

*Second*, as already discussed at length, *see supra* at pp. 17–19, 30–31, Defendant Giuliani

acted with a culpable state of mind by failing to preserve the Electronic Evidence in light of

Plaintiffs' repeated requests and his own professional knowledge.  *See Vasser*, 2017 WL

5634860, at *6.

*Third*, the Electronic Evidence was relevant.  While the inquiry of whether unpreserved

documents were relevant is "unavoidably imperfect," here the evidence Plaintiffs have obtained

from third-parties clearly demonstrates that the Electronic Evidence Defendant Giuliani failed to

preserve was highly relevant to Plaintiffs' claims for defamation, IIED, and conspiracy.  *Id.*

(explaining that the court may draw an inference of relevance based on a very slight showing that

the documents are relevant).  *See supra* at pp. 6–9, 17.

Therefore, if this Court is not inclined to enter default judgment, it should order the following

adverse inferences against Defendant:

1.  Defendant Giuliani spoliated significant relevant evidence contained on his personal and
    professional devices and personal and professional accounts.

2.  Prior to December 23, 2020, Defendant Giuliani acted with reckless disregard for the truth
    by avoiding and ignoring, or knew and understood, the falsity of the following statements:
    (1) Ruby Freeman has a criminal history; (2) Ruby Freeman and/or Shaye Moss excluded
    election observers from State Farm Arena under false pretenses, including but not limited
    to, because of a fake water leak; (3) Ruby Freeman and/or Shaye Moss locked the doors to
    State Farm Arena to keep election observers out; (4) Ruby Freeman and/or Shaye Moss
    passed each other a USB drive to illegally manipulate the vote count; (5) Ruby Freeman
    and/or Shaye Moss counted ballots multiple times; (6) Ruby Freeman and/or Shaye Moss
    hid suitcases of illegal ballots; (7) Ruby Freeman and/or Shaye Moss engaged in voter
    fraud (together, the "Defamatory Claims").

3.  Prior to December 23, 2020, Defendant Giuliani acted with reckless disregard for the truth
    by avoiding and ignoring, or knew and understood, that Georgia and federal officials had
    investigated and disproved the Defamatory Claims (with the exception of the claims

regarding USB drives), because the investigations and their findings were: (1) widely published and reported on, (2) sent to Defendant Giuliani, (3) freely and easily accessible to any member of the public, and (4) directly relevant to the Defamatory Claims.

4. Defendant Giuliani acted with reckless disregard for the truth by avoiding and ignoring, or knew and understood, that the Defamatory Claims were false because: (1) Defendant Giuliani and his team had consciously avoided investigating the purported basis for the Defamatory claims; (2) Defendant Giuliani and his team had no credible evidence or sources supporting the Defamatory Claims; and (3) Defendant Giuliani and his team pursued the Defamatory Claims based on political and public relations objectives rather than a belief that the Defamatory Claims were truthful in fact.

5. Defendant Giuliani published and spread the Defamatory Claims for his personal benefit, including his political, professional, and financial interests.

6. Defendant Giuliani knew his actions would cause Plaintiffs emotional distress and nonetheless intentionally and recklessly proceeded.

7. Defendant Giuliani made an agreement with his then-client, President Donald Trump, along with other individuals working for or volunteering with President Trump and his campaign, to publish the Defamatory Claims.

8. Before publishing the Defamatory Claims, Defendant Giuliani knew that each Defamatory Claim he made on his podcasts, his radio show, during interviews with One America News Network, on Twitter, and through other mediums, could potentially be heard by tens of millions of individuals, and intended his Defamatory Claims to be heard by as many people as possible.

### 3. The Court should preclude Defendant Giuliani from relying on any of the unpreserved electronic evidence.

If this Court does not enter default judgment, the Court should, along with the adverse inferences discussed earlier, preclude Defendant from relying on any of the Electronic Evidence—he failed to preserve and produce this evidence and therefore he should be precluded from using it to his benefit.  Courts in this District order preclusion where one party's conduct has prejudiced the other party's ability to litigate its case.  *See, e.g.*, *Klayman v. Judicial Watch*, 256 F.R.D. 258 (D.D.C. 2009) (precluding plaintiff, an experienced lawyer representing himself *pro se*, from testifying to or admitting any evidence in support of his damage claims or his alleged defenses to defendants' counterclaims where he had failed produce significant documentary

evidence and prejudiced the judicial system by failing to comply with court orders regarding discovery); *United States v. Philip Morris USA, Inc.*, 327 F. Supp. 2d 21, 25 (D.D.C. 2004) (precluding defendant from calling as fact or expert witnesses at trial any individual who has failed to comply with its internal data retention program).  As already demonstrated, Defendant Giuliani's failure to preserve has significantly prejudiced Plaintiffs such that preclusion is appropriate here.

Specifically, the Court should order that Defendant is prohibited from:

1. arguing, in summary judgment, at trial, or otherwise, that anything contained in the Electronic Evidence ever existed or would have supported his defense,

2. offering evidence, in summary judgment, at trial, or otherwise, about the contents of the Electronic Evidence, and

3. arguing, in summary judgment, at trial, or otherwise, the reach of the Defamatory Claims, including, but not limited to, the number of impressions, views, or clicks estimated by Plaintiffs' damages expert.[7]

### G.  In the Alternative, the Court Could Order Defendant Giuliani to Produce His Devices to Plaintiffs

Should the Court conclude that adverse inferences or default judgment are not yet warranted, as an interim step (or in conjunction with any of the sanctions described above), the Court should compel Defendant Giuliani to make all his devices and accounts available for collection and inspection by Plaintiffs' vendors, at Defendant Giuliani's expense.  The Court should permit Plaintiffs' discovery vendor to determine whether any evidence was lost and then permit Plaintiffs to renew a motion for sanctions.

---

[7] If the Court declines to preclude Defendant Giuliani from disputing the number of impressions estimated by Plaintiffs' expert, Plaintiffs request that the Court permit Plaintiffs to instead submit an adverse inference based on Plaintiffs' expert's report at a later date.

Plaintiffs note that any order along these lines will necessitate a significant delay in this litigation, prejudicing Plaintiffs ability to move this case to resolution expeditiously.   Fact discovery has closed; the time for Defendant to have carried his discovery obligations is long past. Undertaking a full forensic review of Defendant Giuliani's devices at this point would delay this litigation by many months, at minimum.   Accordingly, rather than effectively re-open and dramatically extend fact discovery, Plaintiffs respectfully submit that the more appropriate course in these circumstances is to award Plaintiffs the alternative relief delineated above.

## II.      THE COURT SHOULD AWARD PLAINTIFFS' FEES AND COSTS.

The Court should award Plaintiffs' fees and costs.   The Court may impose monetary sanctions pursuant to Rule 37(e)(1).  *See Doe*, 2023 WL 3558038, at *16 (awarding attorneys' fees and costs for Rule 37(e) motion); *see also Zhi Chen*, 839 F. Supp. 2d at 16 (same).   Defendant Giuliani's obstructive and bad-faith approach to discovery necessitated this Motion, and therefore should be required to cover the cost of the reasonable attorneys' fees and costs associated with bringing this motion.  *See Zhi Chen*, 839 F. Supp. 2d at 16–17 (explaining that an "award of fees and costs serves the remedial purpose of compensating" the movant "for the reasonable costs it incurred in bringing" the motion for sanctions) (internal quotations omitted).

DATED:  July 11, 2023

**UNITED TO PROTECT DEMOCRACY**
John Langford
Rachel Goodman
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
john.langford@protectdemocracy.org
rachel.goodman@protectdemocracy.org

Christine Kwon*
555 W. 5th St.
Los Angeles, CA 90013
Tel: (919) 619-9819
Christine.kwon@protectdemocracy.com

Sara Chimene-Weiss*
7000 N. 16th St. Ste. 120, #430
Phoenix, AZ 85020
Tel: (202) 579-4582
Sara.chimene-weiss@protectdemocracy.org

Brittany Williams**
15 Main St., Suite 312
Watertown, MA 02472
Tel: (202) 579-4582
brittany.williams@protectdemocracy.org

**DUBOSE MILLER LLC**
Von A. DuBose
75 14th Street NE
Suite 2110
Atlanta, GA 30309
Tel: (404) 720-8111
dubose@dubosemiller.com

*/s/ Michael J. Gottlieb*
**WILLKIE FARR & GALLAGHER LLP**
Michael J. Gottlieb (974960)
Meryl C. Governski (1023549)
Timothy P. Ryan (1719055)
J. Tyler Knoblett (1672514)
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com
mgovernski@willkie.com
tryan@willkie.com
jknoblett@willkie.com

**WILLKIE FARR & GALLAGHER LLP**
M. Annie Houghton-Larsen
787 7th Avenue
New York, New York
Tel: (212) 728-8164
Fax: (212) 728-9164
mhoughton-larsen@willkie.com

**admitted *pro hac vice***
** ***Pro hac vice*** application forthcoming

*Attorneys for Plaintiffs Ruby Freeman and*
*Wandrea' Moss*

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2023, the foregoing document was filed with the Clerk of the Court of the U.S. District Court for the District of Columbia by using the CM/ECF system, which will automatically generate and serve notices of this filing to all counsel of record.

Dated:  July 11, 2023

*/s/ Michael J. Gottlieb*
**WILLKIE FARR & GALLAGHER LLP**
Michael J. Gottlieb (974960)
1875 K Street, #100
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com