# EXHIBIT 7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
 *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
RUBY FREEMAN, et al.            )  Civil Action
                Plaintiffs,     )  No. 21-3354
vs.                             )
                                )
RUDOLPH GIULIANI,               )  March 21, 2023
                Defendant.      )  9:42 a.m.
                                )  Washington, D.C.
   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF DISCOVERY HEARING
BEFORE THE HONORABLE BERYL A. HOWELL,
UNITED STATES DISTRICT COURT JUDGE**

<u>**APPEARANCES**</u>:


FOR THE PLAINTIFFS: MICHAEL J. GOTTLIEB
                    MARIE ANNIE HOUGHTON-LARSEN
                    Willkie Farr & Gallagher, LLP
                    1875 K Street, NW
                    Washington, DC 20006
                    (202) 303-1442
                    Email: mgottlieb@willkie.com


FOR THE DEFENSE:    JOSEPH D. SIBLEY, IV
                    Camara & Sibley LLP
                    1108 Lavaca St
                    Austin, TX 78701
                    (713) 966-6789
                    Email: sibley@camarasibley.com



Court Reporter:     Elizabeth Saint-Loth, RPR, FCRR
                    Official Court Reporter

        This hearing was held via videoconference and/or
   telephonically and is, therefore, subject to the limitations
   associated with audio difficulties while using technology,
      i.e., overlapping speakers, static interference, etc.


        Proceedings reported by machine shorthand.
   Transcript produced by computer-aided transcription.

# Excerpted

1      thought.

2                  So talking about the seizure of his forensic

3      devices doesn't, to my mind, help you because they have been

4      returned.

5                  MR. SIBLEY:  I understand that, Your Honor.

6                  I was getting to the next point, which is that all

7      of that data --

8                  THE COURT:  Well, why don't we stop right there.

9                  They have been returned.  Mr. Giuliani has had all

10     of his electronic devices returned to him in his custody.

11                 Has each and every one of those electronic devices

12     been searched for responsive documents?

13                 MR. SIBLEY:  The answer is --

14                 THE COURT:  It's a simple:  Yes, no, or I don't

15     know.  And Mr. Giuliani is here to help respond to that.

16                 MR. SIBLEY:  Sure, Your Honor.

17                 And what I'm trying to explain is that that data

18     taken by the DOJ was put onto a server, all of it.  So what

19     we did was we searched that data, which would have

20     encompassed all of the information taken from the devices

21     pursuant to the search terms the plaintiffs provided.  And

22     pursuant to those search terms, those were the 100-something

23     documents that we ultimately produced.

24                 So have we searched those devices?  No.

25                 But I feel pretty confident that the DOJ did a

1    pretty good job of searching the devices.  So, by searching

2    their data, I feel like we have complied with that part of

3    the request.

4            The reason why I didn't -- I couldn't certify to

5    Her Honor that everything has been searched is that

6    Mr. Giuliani had electronic devices after the seizure, and I

7    am not sure that he has -- I think -- I think everything has

8    been produced.

9            But I don't think he has gone through and looked

10   at his social media accounts to see if there are messages,

11   for example, that were sent pertaining to plaintiffs.  There

12   are some things like that that I don't think he's fully

13   certified.  I think we've -- I think he needs to do that.

14   And so I think the lion's share of everything has been

15   searched, Your Honor; but I do think there are some rocks

16   that need to be turned over and looked under, and that needs

17   to be done.

18           THE COURT:  Okay.  194 documents does seem to be

19   fairly small, given -- just based on the length of time, the

20   amount of public statements that were made, and so on, in

21   connection with the claims in this case.

22           Did that number of documents -- responsive

23   documents in the search of the database of all of the data

24   forensically retrieved from his devices seized by the

25   government surprise you as being particularly a low number,

1       Mr. Sibley?

2               MR. SIBLEY:  No, because these -- the plaintiffs

3       were a very small piece, I think, of broader election

4       issues; and there just isn't -- there just aren't very many

5       things in writing about the plaintiffs, Your Honor.

6               Mr. Giuliani was not a big texter or emailer.  He

7       is a little more of an old-school, kind of, paper and phone

8       conversations.  I don't think we had a single document that

9       even had their names mentioned on it.  I think it was a

10      strategic communications plan document that I don't think

11      Mr. Giuliani even created that -- that was out there.  But

12      that's really it.  I mean, that was the only document that I

13      recall seeing the plaintiffs' names even on.

14              So I understand that, sort of on the surface, that

15      seems surprising given how much of this was out there, how

16      much of this was talked about.  But I don't think -- I mean,

17      I think that's just the way it is.  There's just not that

18      many documents with the plaintiffs -- referring to the

19      plaintiffs because they were -- they were a small -- I know

20      Your Honor was not at Mr. Giuliani's deposition.  But what

21      he testified to is he wasn't even really aware of these

22      ladies until he went down to Georgia for the Senate hearing;

23      and that's kind of when he became aware of it.

24              So there really wasn't a lot of -- he was really

25      relying on other people, I think, for information about the

1  ladies.  He was looking at the videos and making statements.

2  There really was not a lot of paper background.  And

3  that's -- your know, that's relevant to the case, that there

4  wasn't.  But it's -- that's just the way -- that's the way

5  the documents played out.

6          THE COURT:  And did you produce a privilege log,

7  along with your production of 194 responsive documents?

8          MR. SIBLEY:  We did produce a privilege log,

9  Your Honor.  We also went into those privileged documents to

10  see -- because these privileged documents were the whole

11  gamut of January 6th stuff, Dominion, Smartmatic; it was all

12  of the election litigation.  We produced all of those

13  documents to the plaintiffs just because -- I mean, it was

14  already produced and it was easy for us to do it.

15          We went through the privileged documents and

16  looked to see which ones of those documents specifically

17  related to Fulton County or, potentially, the plaintiffs;

18  and there were only a handful that even did.  And I produced

19  a supplemental privilege log that gave some more detailed

20  information to the plaintiffs about those specific

21  documents.

22          THE COURT:  All right.  And so have you -- well,

23  plaintiff has also gotten, certainly, the impression that he

24  has not preserved records relating to these plaintiffs.

25          So has, basically, Mr. Giuliani locked down -- put

1    a litigation hold on -- all of his records given the

2    pendency of this litigation?

3                MR. SIBLEY:  Well, Your Honor, I think the answer

4    is yes.  I don't know -- I don't recall in his deposition if

5    he was specifically asked that question.  But, certainly,

6    the documents that were taken by the DOJ were locked -- in

7    April of 2021.  So all of those documents are fixed, so

8    that's certainly locked in.

9                Everything after that -- I mean, I think he

10   test- -- I think he answered an interrogatory and said he

11   has not -- he has not destroyed or deleted any documents.

12   So I think what they're asking for -- I don't know that

13   there was so much concern about whether the documents had

14   been spoiled.  But I think the concern is he needs to

15   certify that that has, in fact, not occurred; and I am not

16   sure that he has -- I'm not sure that he has done that.

17               I am not sure that there was specifically -- I

18   don't know that there was a specific interrogatory asked,

19   other than the one I mentioned that asked whether he deleted

20   documents.  But he -- he certainly is willing to certify

21   that however the Court would like him to do so.

22               THE COURT:  All right.  So back to you,

23   Mr. Gottlieb.

24               Did you understand how the search was executed and

25   what the data source was when the search was executed, or

1       are you learning that here?

2               MR. GOTTLIEB:  We understood what Defendant

3       Giuliani's explanation was for where the documents came

4       from.  In other words, that the DOJ had seized a number of

5       devices and that search terms had been applied as to those

6       devices.

7               What we don't know is -- first of all, we don't

8       know what the DOJ collected and put onto that database.  So

9       we have no idea, you know, which, if any, of the devices

10      were fully pulled, for what time period, what -- and we also

11      don't know if that collection contains anything other than

12      emails.

13              What we know for sure is that the only search that

14      the defendant ran for documents was a search relating to

15      email extension files.  So no searches for text messages; no

16      searches for social media accounts; private messages, which

17      Defendant Giuliani testified at his deposition he did recall

18      sending during the relevant -- sending and receiving during

19      the relevant period of time.  No collection from things like

20      Signal or WhatsApp or Wickr, or other messaging platforms

21      that Defendant Giuliani also testified during his deposition

22      that he used during the relevant period of time.

23              And I think more to the point, notwithstanding

24      sort of two other large areas that we don't believe have

25      been searched, Defendant Giuliani continued to defame our

clients after his devices were seized into 2022.  He had
both continued access to his email accounts, which are
accessible not just through his devices but through the
Cloud, as well as a new phone that he received -- or that he
purchased and started using after his devices were seized.

And when I asked him at his deposition if he had
searched those -- that new phone, new devices, in response
to our discovery requests, I, essentially, got a -- I asked
that question about four or five times.  I got responses
that, essentially, amounted to:  I know I did a search at
some point in time for something related to these sets of
cases.

So I couldn't get a precise answer as to whether a
search had ever been done -- or the specific request for
production of interrogatories that we have advanced in this
litigation -- for the phone that he had after the point in
time that the government seized his phone.

And I did ask -- well, first of all, we had both
RFPs and interrogatories directed at the question of
preservation specifically; so those were propounded in
discovery back when we first served our discovery requests.
So we did put that at issue.  I did ask questions about that
during the deposition.  And we have -- we still, up until
this date, have no idea whether steps have been taken to
preserve those accounts.

1    In fact, I specifically asked Mr. Giuliani during

2    his deposition whether he had contacted, for example, any of

3    the social media platforms or his email provider in order to

4    do a takedown or pull-down of his data.  And he said he had

5    no recollection of ever having performed any type of a

6    search -- or any type of a request like that.

7    And then last, but not least, one of our

8    earliest -- we asked -- in our initial set of requests for

9    production, we asked for phone records from the defendant in

10   order to be able to ascertain both the numbers that he was

11   using but, also, to be able to ascertain a certain -- the

12   records of phone calls around particular periods of time

13   which became -- has become very important in this litigation

14   with respect to the so-called strategic communications plan,

15   as well as the defendant's participation and knowledge

16   regarding the phone call that former President Trump made to

17   Secretary of State Raffensperger because White House phone

18   logs show that Defendant Giuliani -- or we believe show that

19   Defendant Giuliani had calls with President Trump both

20   before that conversation took place and immediately

21   afterwards.

22   So we believe that there is, you know, evidence in

23   those phone logs that we requested in our initial request

24   for production directly relevant to some of the key claims

25   in our case relating to defamation of our clients which took

# Excerpted

 1   needs to be searched.

 2        And I am not sure that Mr. Giuliani can certify to

 3   that, which is, I think, what Mr. Gottlieb said he said in

 4   his deposition.  He thinks he did, but he is not sure.  He

 5   needs to do that.  Which is why I was hesitant to represent

 6   to the Court that it has all been done because I need him to

 7   certify to that.

 8        THE COURT:  All right.  And what about the very

 9   significant point that Mr. Gottlieb pointed out:  That

10   performing searches on the database, I guess, created, so to

11   speak, by the Department of Justice -- based on the

12   parameters of the search warrant -- which may or may not be

13   coterminous with your obligations for discovery in this

14   case.

15        What is your response to that, Mr. Sibley?

16        MR. SIBLEY:  I am not sure I understand the

17   Court's -- what the Court's question is.

18        Is the Court asking -- my understanding is that

19   DOJ took everything from these devices, like, every file was

20   extracted, even background files like operating system files

21   and things like that.

22        So my understanding is that every -- the entire

23   universe of files from these devices was extracted by the

24   DOJ, and that's what we, in fact, searched pursuant to the

25   search terms the plaintiffs provided, at least with respect

1    to the emails.

2              THE COURT:  And the basis of that understanding is

3    what?

4              MR. SIBLEY:  That the DOJ --

5              THE COURT:  Because I would think that DOJ might

6    put material on a database that's responsive to the search

7    warrant, so you have to know the specific parameters of the

8    search warrant to know what is on the database.

9              MR. SIBLEY:  So my understanding -- and this is

10   from speaking with the special master's counsel -- was --

11   and I don't think this is really in dispute; that all of the

12   files that were extracted were put onto one server, which we

13   then got a copy of from the DOJ, and that's -- with an

14   electronic discovery vendor called Trustpoint.One, and so

15   that's what we searched.

16             That's -- I mean, I wasn't involved in that part

17   of the case, Your Honor, this is just -- that's my

18   understanding from the special master that was involved with

19   this data collection.  I don't know that anyone has really

20   disputed that.  I am pretty confident that the DOJ did take

21   all of the files.

22             If the Court would like us --

23             THE COURT:  Over what date range?  All the files

24   no matter what the date range was?

25             MR. SIBLEY:  Yes.  In fact, Your Honor, some of

1    the -- we did give an inventory, I think, to plaintiffs of

2    some devices that were returned pretty early on, which were,

3    like, really old devices.  I mean, any electronic device --

4    my understanding is any electronic device that they found at

5    Mr. Giuliani's apartment, they took.

6              THE COURT:  Okay.  Mr. Sibley, you are going to

7    need to get a much better definition of what documents were

8    put on whatever database it was that you researched so

9    that -- that you searched so that you can figure out what is

10   missing because -- based on what you are telling me -- it's

11   all way too vague.  It is -- it raises so many questions

12   that make me think you really don't have any idea what has

13   been searched and what hasn't been searched because you

14   don't really know what's been put up on that database, which

15   is the only place you have searched.

16             You need to do a lot better than that.  And I am

17   going to you give you some deadlines --

18             THE DEFENDANT:  Your Honor.

19             THE COURT:  -- so that we can --

20             THE DEFENDANT:  Your Honor.

21             THE COURT:  -- so that we can -- who is -- yes,

22   Mr. Giuliani.

23             THE DEFENDANT:  Your Honor, can I supplement that?

24   I might know this better than Mr. Sibley.

25             THE COURT:  That's why I wanted you here,

1    Mr. Giuliani, because you have a full view of all of --

2             THE DEFENDANT:  I am not sure I --

3             THE COURT:  -- of what -- of where all your data

4    is going and where people want to look at your data, and it

5    may -- you may have a broader view than Mr. Sibley.

6             THE DEFENDANT:  I am happy to help you.

7             THE COURT:  So please.

8             THE DEFENDANT:  So let's just -- let's just

9    confine ourselves to my electronic devices for a moment, and

10   that would be up until the date of the seizure.

11            They seized every single electronic device, both

12   in my home and in my law office, including electronic

13   devices that hadn't been used for 20 years, and electronic

14   devices of other people.

15            They then took all of my electronic devices --

16            THE COURT:  And what was the precise date of it,

17   Mr. Giuliani?

18            THE DEFENDANT:  The date of it, I don't -- I'm

19   sorry.  I don't -- we can get that date; it's an official

20   date.  It seems like it was in April of 2021 -- I don't

21   know -- something like that, that they seized it.

22            They held it for over a year.  I had no access to

23   any of them at that time; nor do I have access, as someone

24   said mistakenly, to my prior email account.  I still don't

25   have access to that and haven't used it since then.  So

1    that's completely frozen.

2              My lawyers, United States Attorney's Office,

3    Barbara Jones -- the Special Master, former United States

4    District Judge -- all agreed on a vendor called Trustpoint.

5    Trustpoint took all -- after sorting out all of the

6    electronic devices that were irrelevant, meaning belonging

7    to other people or relating to other parts of my law

8    practice that were clearly only devoted to a particular

9    client having nothing to do with this, they homed in on

10   everything having to do with my representation of Trump,

11   which would encompass anything involving this, plus a lot

12   more.

13             And they put it in -- and Trustpoint put it in

14   their program, which cost a great deal of money, and then

15   set up a search engine for the benefit, first, of the

16   special master, so she could make rulings on privilege; and

17   then for the benefit of the government so they can do their

18   investigation; and then, I guess, for our benefit, should we

19   ever have to defend ourselves.

20             And, eventually, when the government determined

21   there was no case and closed the case, they returned -- they

22   returned that to me.

23             The only thing I am not sure of that I would have

24   to check with my lawyer, Mr. Costello, is when did we first

25   get access to the Trustpoint rubric -- call it -- computer,

1    that has every one of my electronic devices that exists for

2    20 years in it.  I seem to think we might have gotten access

3    to it slightly before they closed the case, even before we

4    got the electronic devices back.  I'm not sure of that.

5    That's when we started doing searches.

6          Now, you have to understand, Your Honor -- it's

7    not an excuse, but can be a source of confusion.  But there

8    are about -- I don't know -- seven or eight cases that had

9    pending requests for discovery, much like this one, that had

10   been delayed for a year or more, including not just civil

11   but criminal investigations that were awaiting these

12   documents to get completed.

13         THE COURT:  Okay.  Mr. Giuliani, I am going to

14   interrupt you.

15         Mr. Gottlieb [sic], I think it's incumbent on you

16   to get detailed information about precisely what is on the

17   Trustpoint database.  I am not -- I really -- I appreciate

18   what Mr. Giuliani thinks he understands, that everything on

19   all of his electronic devices were put on that database; I

20   would be surprised.

21         But you need to find out precisely what was put on

22   that database and precisely what was searched, and what

23   wasn't.  And you need to figure that out really promptly

24   because it's a little late in the day for you to not know

25   exactly what you have searched yet in terms of what file

1    formats were put on that database, what the date range was

2    put on that database.  Really, you need to figure that out.

3    You need to confer with Mr. Gottlieb about what else you

4    need to search.

5            And given how late in the day it is, I would like

6    you to be able to do that -- figure all of that out and keep

7    the Court apprised now at this point, since I am involved,

8    of what still has to be searched given the limitations of

9    what is on the database, which is the only thing you have

10   searched so far --

11           THE DEFENDANT:  No.  It is not, Your Honor.

12           THE COURT:  -- what steps you have taken to obtain

13   social media and other counts that Mr. Giuliani, apparently,

14   has already testified at a deposition under oath that he

15   used in a communication about the issues relevant to this

16   lawsuit.

17           Can you do that by the end of the week?

18           MR. SIBLEY:  I want to make sure I understand what

19   the Court is asking with respect to the Trustpoint

20   documents.

21           The Trustpoint documents are -- I mean, in order

22   for me to certify to that, I would have to get -- I mean, I

23   suppose I would have to get something from the special

24   master or the DOJ, which -- I have already -- I have already

25   had conversations with the special master about it, and they

24

1    have confirmed this.  I just don't know --

2              THE COURT:  Well, I am sure Mr. Costello knows

3    precisely what's on that database.  I am sure you can just

4    talk to Mr. Giuliani's counsel in that case.

5              Is it Mr. Costello, Mr. Giuliani?

6              THE DEFENDANT:  Excuse me, Judge?

7              THE COURT:  Is your counsel on the case involving

8    Judge Jones serving as special master, did you say that was

9    Mr. Costello?

10             THE DEFENDANT:  Yes.  Yes.

11             THE COURT:  So, Mr. Gottlieb [sic], that seems

12   like a good place to start.  And he would likely know --

13   have much more firsthand information about precisely what

14   was uploaded onto the Trustpoint database.

15             But based on what I am hearing, it certainly

16   doesn't include social media accounts.  It may or may not

17   include texts; it may or may not include Signal

18   communications.  It may not include other communication

19   forms.

20             So I think -- I would like you to get that done by

21   this Friday, the 24th, and confer with Mr. Gottlieb about

22   it, and provide notice to the Court that that has been done

23   so that you know what you have left to search and what the

24   time frame is for you completing a search for all of those

25   appropriate records.

# Excerpted

1    searched.

2              MR. SIBLEY:  I understand.

3              THE COURT:  Is that clear, Mr. Sibley?

4              MR. SIBLEY:  Yes, Your Honor.

5              THE COURT:  All right.

6              If there is nothing further, you are all excused.

7    Thank you.

8              MR. SIBLEY:  Thank you, Your Honor.

9              MR. GOTTLIEB:  Thank you, Your Honor.

10             (Whereupon, the proceeding concludes, 10:52 a.m.)

11                          *  *  *  *  *

12                          **CERTIFICATE**

13             I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
     certify that the foregoing constitutes a true and accurate
14   transcript of my stenographic notes, and is a full, true,
     and complete transcript of the proceedings to the best of my
15   ability.

16             PLEASE NOTE:  This hearing was held via
     videoconference and is, therefore, subject to the
17   limitations associated with the use of technology, including
     but not limited to telephone signal interference, static,
18   overlapping speakers, signal interruptions, and other
     restrictions and limitations associated with remote court
19   reporting via telephone, speakerphone, and/or
     videoconferencing capabilities.

20
               This certificate shall be considered null and void
21   if the transcript is disassembled and/or photocopied in any
     manner by any party without authorization of the signatory
22   below.

23
               Dated this 30th day of March, 2023.
24
               /s/ Elizabeth Saint-Loth, RPR, FCRR
25             Official Court Reporter