# EXHIBIT 8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUBY FREEMAN, *et al.*,<br><br>               Plaintiffs,<br><br>                v.<br><br>RUDOLPH W. GIULIANI,<br><br>               Defendants. | Civil Action No. 21-3354 (BAH)<br><br>Chief Judge Beryl A. Howell |

**SUPPLEMENTAL ANSWERS TO FIRST SET OF INTERROGATORIES**

Defendant serves his Supplemental Answers to First Set of Interrogatories as follows:

**INTERROGATORY NO. 1:**

Identify and describe in detail all evidence on which You relied to support any and all Statements attributed to You in the Complaint, including but not limited to evidence that Plaintiffs engaged in any form of election fraud or illegal conduct during the 2020 Presidential Election, and the attempts, if any, You took to examine or independently confirm the veracity of such evidence.

**ANSWER:**

Defendant objects to this Interrogatory as overly broad and calling for a narrative answer.

Defendant reviewed the video of Plaintiffs in Fulton County that is referenced in the Complaint.

Defendant also became aware of stories circulating that Plaintiff Freeman had been arrested on allegations relating to voter fraud.

Defendant reserves the right to supplement the answer to this Interrogatory.

**AMENDED ANSWER:**

Defendant reviewed the videos of Plaintiffs in Fulton County that are referenced in the Complaint and other videos of Plaintiffs' election-related activities, which speak for themselves. The Statements attributed to

Defendant in the Complaint, as they relate to the video footage, are Defendants subjective interpretation and opinion regarding what the video footage shows and is, therefore, an opinion based on disclosed facts. Defendant also became aware of stories circulating that Plaintiff Freeman had been arrested on allegations relating to voter fraud and several publications that agreed with his subjective interpretation of the video. Defendant does not recall any further specifics but reserves the right to supplement if his recollection is refreshed.

**SUPPLEMENTAL ANSWER:**

Defendant may have also relied on information from Bernard Kerik as to Plaintiffs' backgrounds and arrest records over the phone as discussed in his deposition. Defendant also relied on interviews with GOP election observers and recalls seeing their affidavit/declaration testimony as discussed in his deposition.

**INTERROGATORY NO. 2:**

Identify and describe in detail all evidence of which You are or have been aware that contradicted and/or discredited the Statements attributed to You in the Complaint, and provide details regarding the attempts, if any, You took to examine such evidence. Your answer to this Interrogatory should specifically address, but not be limited to, whether and how You considered: statements by the Georgia Bureau of Investigation; statements by Voting Implementation Manager for the State of Georgia, Gabriel Sterling; the Watson Affidavit; and the December 7, 2020 recertification of Joe Biden's victory in Georgia; the articles and publications by Lead Stories, PolitiFact, and Georgia Public Broadcasting referenced in the Complaint; the January 12, 2021, report by Mr. Carter Join, State Election Board Report – Post-Election Executive Summary, Seven Hills Strategies (Jan. 12, 2021), https://perma.cc/7U3Z-DX2J; the decision in In re Giuliani, 197 A.D.3d 1, 146 N.Y.S.3d 266 (1st Dep't 2021); the May 5, 2021, deposition of James Calloway in *Jeffords v. Fulton County*, No. 2020-cv-343938 (Ga. Super. Ct. May 5, 2021), available at https://perma.cc/PYU3-G5K4; the Georgia Secretary of State's October 12, 2021, filing in *Favorito v. Wan*, No. 2020-cv-343938 (Ga. Super. Ct. Oct. 12, 2021) and the exhibits thereto, available at https://perma.cc/PYU3-G5K4; and statements by former Attorney General William Barr in One Damn

2

Thing After Another: Memoirs of an Attorney General (2022) or otherwise made by Mr. Barr around the book's publication concerning the Statements.

**ANSWER:**

Defendant objects to this Interrogatory as assuming facts not in evidence. An interrogatory cannot create a "reading list" for Defendant. Defendant eventually became aware of claims that his statements regarding Plaintiffs were disputed but he does not have a specific recollection of what documents/evidenced he reviewed to this effect or when this occurred. Defendant interviewed John Solomon—over a year after the original event in question—who indicated that he did not agree with the veracity of certain allegations in Defendants' statements regarding Plaintiffs.

**AMENDED ANSWER:**

Defendant objects to this Interrogatory as assuming facts not in evidence, namely that the answer "should include" a discussion of materials for which a predicate has not been laid. The interrogatory seeks to answer its own question by volunteering a reading list.

Subject to, and without waiving these objections, Defendant eventually became aware of claims that his statements regarding Plaintiffs were disputed but he does not have a specific recollection of what documents/evidenced he reviewed to this effect or when this occurred.

Defendant is aware of allegedly contradictory evidence in the Complaint and in this Interrogatory but has not undertaken to review such materials.

Defendant also interviewed John Solomon—over a year after the original event in question—who indicated that he did not agree with the veracity of certain allegations in Defendants' statements regarding Plaintiffs, but Solomon did agree that protocols were not properly followed such as closing the vote counting to the public.

**INTERROGATORY NO. 3:**

Identify and describe in detail any conversations You had, participated in, or are aware of with former President Donald J. Trump or members of the Trump Campaign regarding Plaintiffs.

3

**ANSWER:**

Defendant does not have a specific recollection of conversations regarding Plaintiffs with former President Trump. Defendant does not have specific recollection of conversations with the Trump Campaign regarding Plaintiffs but does not deny that conversations must have occurred at some level because the video of Plaintiffs counting ballots was utilized in various proceedings in which Defendant represented the Trump Campaign.

**AMENDED ANSWER:**

Defendant does not have a specific recollection of conversations regarding Plaintiffs with former President Trump but believes that there may have been discussions regarding the videos in which Plaintiffs appear. Should Defendant's recollection be refreshed on this subjection matter, this would be protected by attorney-client privilege. Defendant also does not have specific recollection of conversations with the Trump Campaign regarding Plaintiffs but does not deny that conversations must have occurred at some level because the video of Plaintiffs counting ballots was utilized in various proceedings in which Defendant represented the Trump Campaign. However, once again, to the Defendant's recollection be refreshed on this subjection matter, this would be protected by attorney-client privilege.

**SUPPLEMENTAL ANSWER:**

Defendant generally recalls that he was made aware of the existence of a video the night before the hearing before the Georgia Senate Election Hearing on December 3, 2020. Defendant did not see the video until it was played at the hearing. Defendant generally recalls that after the hearing he was shown what he believes was the same video shown in the hearing room (and some additional segments showing what appeared to be thumb drives being passed and were described that way by the people in the viewing room) in the presence of Jackie Pick, William Smith, Burt Jones, unknown Burt Jones associates, and unknown GOP operatives who were present in Atlanta, GA when he reviewed the videos. See also Deposition Transcript testimony. Defendant does not recall the specifics of the conversations. These conversations would not be

privileged because they were not in anticipation of litigation. Defendant does not recall the specific videos he watched.

**INTERROGATORY NO. 4:**

Describe in detail the Giuliani Communications Plan, including but not limited to its formation, its author(s), all of the individuals identified as members of the "Giuliani Presidential Legal Defense Team" and/or the "Giuliani Team," all of the individua ls identified as "Key Team Members," whether or not listed by name or acronym, including but not limited to "BK," KF," "SB," "BE," "CR," "SP," "TF," "PW," "Media Advisors," "Serrano Public Relations Team," "Research Team," "Tech Team," "Peter Navarro Team," "Local Legal Teams in AZ, GA, MI, NV, PA, WI," the "Identified Legislative Leaders in each swing state," and the "Freedom Caucus Members," the basis or facts supporting the "Voter Fraud Highlights" for the State of Georgia listed on pages 9, 10, and 11 of the Giuliani Communications Plan, the basis or facts supporting the "Suitcase Gate" and "Water Leak" "Fraud Incidents" listed on pages 20 and 21 of the Giuliani Communications Plan, and all individuals You are aware were intended to receive copies of the Giuliani Communications Plan and/or who were intended to assist in its implementation..

**ANSWER:**

Defendant objects to this Interrogatory because it seeks information regarding a document that Defendant is not the author of. Defendant does not have personal knowledge of the questions asked by this Interrogatory. Subject to and without waiving these objections, Defendant will supplement this answer with non-personal knowledge as he further looks into the document as discovery progresses.

**AMENDED ANSWER:**

Defendant objects to this Interrogatory because it seeks information regarding a document that Defendant is not the author of. Defendant does not have personal knowledge of the questions asked by this Interrogatory.

Subject to and without waiving these objections, Defendant has learned that this document was authored by Katherine Friess. Defendant was not involved in the creation of the document. Defendant did not

5

approve the document or the proposals/statements therein.  Defendant did not approve his name being used in connection with the document.  Defendant does not even recall specifically seeing the document in the 2020-time frame.  Defendant was aware that Friess wanted to make a proposal to implement the substance of the document to the White House but did not support the plan in its particulars or support it.  In short, it was Defendant's opinion that the White House would not fund the proposal.  Defendant had nothing to do with the preparation or creation of the document.

**INTERROGATORY NO. 5:**

Identify and describe in detail all individuals with whom you have ever discussed either of the Plaintiffs and describe what You said about the Plaintiffs in these conversations.

**ANSWER:**

Defendant objects to this Interrogatory as overly broad and unduly burdensome.  Other than the statements itemized in Plaintiff's Complaint, which speak for themselves as to what was said and who they were said to, Plaintiff does not have a specific recollection of discussing Plaintiffs with any particular individuals.

**SUPPLEMENTAL ANSWER:**

Defendant generally recalls that he was made aware of the existence of a video the night before the hearing before the Georgia Senate Election Hearing on December 3, 2020.  Defendant did not see the video until it was played at the hearing.  Defendant generally recalls that after the hearing he was shown what he believes was the same video shown in the hearing room (possibly some additional segments) in the presence of Jackie Pick, William Smith, Burt Jones, unknown Burt Jones associates, and unknown GOP operatives who were present in Atlanta, GA when he reviewed the videos. See also Deposition Transcript testimony. Defendant does not recall the specifics of the conversations.  These conversations would not be privileged because they were not in anticipation of litigation.

**INTERROGATORY NO. 6:**

Describe in detail Your role, official or unofficial, with the Trump Campaign and/or any engagement you had or continue to have with former President Donald J. Trump from November 3, 2020 to the Present, at the time you made each of the various Statements about Plaintiffs described in Paragraphs 57–101 of the Complaint.  If Your role with the Trump Campaign and/or your engagement with former President Donald J. Trump changed or varied over this time period, describe in detail the exact dates on which your role and/or engagement started, ended, or changed.

**ANSWER:**

Defendant served as head of the Trump Campaign's legal team shortly after the 2020 Election and remained involved in that position until January 2021 when the legal challenges to the election reached their conclusion.  Defendant has also served as personal legal advisor to former President Trump on and off throughout the years and did so in the 2020-21 timeframe on miscellaneous matters.

Respectfully submitted,

By: */s/ Joseph D. Sibley IV*

CAMARA & SIBLEY L.L.P.

Joseph D. Sibley IV
DC Bar ID: TX0202
1108 Lavaca St.
Suite 110263
Austin, TX 78701

Telephone:  (713) 966-6789
Fax:  (713) 583-1131
Email:  sibley@camarasibley.com

**ATTORNEYS FOR RUDOLPH GIULIANI**

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of March, 2023, I served the foregoing via email.

                                            */s/ Joseph D. Sibley IV*
                                            Joseph D. Sibley IV