UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUBY FREEMAN, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 21-3354 (BAH) |
| RUDOLPH W. GIULIANI., | Judge Beryl A. Howell |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Civil society rests on the ability of courts to resolve disputes between private parties, subject to governing substantive law and procedural rules that "secure" for the disputing parties "the just, speedy, and inexpensive determination of every action." FED. R. CIV. P. 1; *see Runkle v. Nong Kimny*, 266 F.2d 689, 693 (D.C. Cir. 1959) ("[T]he purpose of the Federal Rules of Civil Procedure is to afford the litigant a just, inexpensive and speedy trial of issues[.]"). Paramount to fulfill the goals for which the procedural rules were designed is that parties to civil litigation comply fully and timely with their discovery obligations, an obligation that extends to non-parties brought into the litigation, pursuant to Federal Rule of Civil Procedure 45, to supply relevant testimony and documents for a fair appraisal of the facts and a "just" determination. Even when litigants and non-parties would prefer to do something—*or anything*—other than spend time and effort complying with discovery obligations, they must do so in service to the rule of law.

Lawyers have a special professional obligation to ensure compliance with the procedural rules because "[a] lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of

justice." ABA Model R. Prof'l Conduct, Preamble [1] (2023); *see* FED. R. CIV. P. 11 (c)(1) (authorizing imposition of "appropriate sanction on any attorney, law firm or party that violated . . . or is responsible for the violation" of Rule 11(b), which describes sanctionable attorney representations); FED. R. CIV. P. 11(d) (making Rule 11 sanctions inapplicable to "disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37"). Lawyers who fail to fulfill their professional obligations to ensure diligent compliance with discovery obligations frustrate the purposes of the procedural rules and therefore may be specially targeted for sanctions, including payment of reasonable attorney's fees and costs caused by the failure. *See* FED. R. CIV. P. 26(g)(3); FED. R. CIV. P. 37(a)(5)(A), (d)(3), (f).

Since initiation of the instant lawsuit in December 2021, plaintiffs Ruby Freeman and Wandrea Arshaye Moss, who worked as election workers for Fulton County, Georgia during the 2020 election, have vigorously sought to obtain discovery relevant to their three claims of defamation, intentional infliction of emotional distress, and civil conspiracy for all alleged torts, *see* Compl., ECF No. 1; Am. Compl., ECF No. 22, arising from defendant Rudolph W. Giuliani's alleged "campaign to undermine the legitimacy of the 2020 election," as part of which "Giuliani made a litany of statements and accusations against plaintiffs concerning their activities as election workers[.]" *Freeman v. Giuliani*, No. CV 21-3354 (BAH), 2022 WL 16551323, at *1 (D.D.C. Oct. 31, 2022).[1] Since discovery in this case began, however, plaintiffs have confronted obstacle after obstacle in their quest to obtain discoverable information, necessitating their filing of two separate motions to compel discovery from Giuliani and his businesses, Pls.' Mot. to Compel Discovery, ECF No. 44; Revised Pls.' Mot to Compel Giuliani Partners and Giuliani Communications to

---

[1] The factual background of this case is detailed in this Court's Memorandum Opinion denying defendant Giuliani's motion to dismiss in *Freeman v. Giuliani*, No. CV 21-3354 (BAH), 2022 WL 16551323 (D.D.C. Oct. 31, 2022).

Respond to Plaintiffs' Properly Served Rule 45 Subpoenas, ECF No. 70, as well as a motion for sanctions, Pls.' Mot. for Discovery Sanctions, ECF No. 81, and requiring, thus far, five separate Court Orders to secure Giuliani's compliance with his discovery obligations, *see* Minute Orders (May 19 and 31, June 22 and 23, and July 13, 2023).

Giuliani's recalcitrant discovery conduct, however, is not the only hurdle plaintiffs have had to overcome. Individuals not named as defendants in this litigation but who nonetheless were part of the effort by Giuliani, and others, to sow doubt in the legitimacy of the 2020 election have also thwarted plaintiffs' efforts to obtain relevant information and evidence, necessitating repeated intervention by this Court. *See, e.g.*, Minute Order (Dec. 20, 2022) (authorizing plaintiffs to serve Katherine Friess with a Rule 45 Subpoena via alternate means after plaintiffs spent considerable resources to serve Freiss "ten times over four months at six different addresses in three different states"); Minute Order (May 10, 2023) (authorizing plaintiffs to serve Jenna Ellis with a Rule 45 Subpoena via alternate means after plaintiffs spent considerable resources to "serve her three times at an address where she is believed to have recently resided and where her mother currently resides").

Most recently, plaintiffs identified in their pending motion to compel, *see* Pls.' Mot. to Compel ("Pls.' Mot."), ECF No. 63, yet another Giuliani associate to stand in their way to obtaining the discovery to which they are entitled under the procedural rules: non-party Bernard Kerik, who, during the period between December 3 and 28, 2020, "used his Twitter account to publish false accusations about" plaintiffs, including video of them and using the plaintiffs' names. *Id.* at 2–4; *see, e.g., id*. at 3 (screenshot of Kerik tweet, dated "Dec. 14, 2020," stating, "Ruby Freeman and her daughter in Georgia have yet to be questioned before a grand jury and there's been no #MSM coverage of their alleged crimes that were seen around the world. #coverup

#censorship #Election 2020 #StopTheSteal2020"). Kerik seems to have successfully ducked over a dozen attempts by plaintiffs to serve him with a Rule 45 subpoena for discovery—at a cost to plaintiffs of "an estimated over $15,000," *id*. at 6 n.5—from August 2022 until November 14, 2022, when Kerik's counsel, Timothy C. Parlatore, who had been communicating with contact with plaintiffs' counsel, finally agreed to accept service on his client Kerik's behalf, *id*. at 5–6.

As detailed below, Kerik has remained recalcitrant in complying fully with his discovery obligations. Consequently, after ten months of effort to obtain relevant information from Kerik, on June 9, 2023, plaintiffs were again forced to resort to filing the pending motion, under Federal Rule of Civil Procedure 37, to compel Kerik to produce a document-by-document privilege log and to produce documents and testimony improperly withheld as privileged. This motion was initially ignored by Kerik and his counsel.

When Kerik failed to file a timely response, the Court afforded Kerik an extended opportunity to respond to plaintiffs' motion to compel, by directing him to show cause why plaintiffs' motion should not be granted as conceded. *See* Order To Show Cause ("OTSC") (Jun. 26, 2023). Before the OTSC deadline, on June 28, 2023, Parlatore filed a brief, seven-paragraph declaration on Kerik's behalf, opposing the motion to compel for two claimed procedural reasons: (1) that the motion was never served on Kerik, such that his failure to oppose plaintiffs' motion was not untimely and he in fact had no obligation to respond; and (2) that the motion "was filed in the wrong Court." Declaration of Timothy C. Parlatore ¶¶ 2-4, 7 ("Parlatore Decl."), ECF No. 74. Additionally, Kerik shifts any blame for shortfalls in his production of responsive records and an adequate privilege log to the putative privilege holders—the presidential campaign for Donald J. Trump and defendant Giuliani—as the persons responsible for deciding "whether a claim of

4

privilege is to be waived[,]" since Kerik is "a non-attorney investigator on the legal team[.]" *Id.* ¶ 5.

For the reasons outlined below, Kerik's justifications for failing to respond to plaintiffs' motion are incorrect as a matter of law and, given the apparent inadequacy of his discovery compliance, plaintiffs' motion to compel is granted in part and reserved in part.

**I.  BACKGROUND**

Summarized below is factual and procedural background relevant to resolving plaintiffs' motion.

Kerik has a long-term close association with Giuliani and worked with Giuliani, at the latter's request, "to 'come back and assist him' in efforts to challenge the results of the 2020 presidential election." Pls.' Mot. at 1 (quoting Decl. of M. Annie Houghton-Larsen in Supp. Pls.' Mot. to Compel ("Houghton-Larsen Decl."), Ex. 3, Excerpts from Dec. 7, 2022, Testimony of Bernard Kerik before the District of Columbia Court of Appeals Board on Professional Responsibility, in *In re Giuliani*, No. 22-BD-027 ("Kerik DCCA Tr.") at 821:14–822:3, ECF No. 63-4). Kerik, as plaintiffs say, "answered that call and became, in his own words, 'the primary investigator and coordinator' for Defendant Giuliani's post-2020 election efforts," and "was 'one of the main people funneling information' to Defendant Giuliani[.]" *Id.* (quoting Kerik DCCA Tr. at 824:6–7, 825:2–7). As noted, in the wake of the 2020 election, Kerik also "publish[ed] false accusations about [plaintiffs] similar to those . . . published by Defendant Giuliani." Pls.' Mot. at 2–3; *see, e.g., id.* at 2 (screenshot of Kerik's Tweet on December 3, 2020, in which Kerik wrote, "Democratic poll workers waited until the coast was clear, before pulling out containers of ballots and counting them without republican monitors.  #Evidence of a #crime").

Given Kerik's admitted and public role in assisting Giuliani in the misinformation campaign about the results of the 2020 presidential election that allegedly involved publication of alleged defamatory information about plaintiffs, he is plainly an important source of relevant information to them. For this reason, plaintiffs made over a dozen attempts over four months to serve Kerik with a Rule 45 subpoena, dated August 3, 2022 ("First Kerik Subpoena"). While that service effort was underway and Kerik's counsel refused to accept service, Parlatore, "as a courtesy," on August 5, 2022, "reactivated" a public link to a collection of the 53 documents, including a privilege log ("Kerik Privilege Log"), that Kerik had provided to the House of Representatives Select Committee to Investigate the January 6th Attack on the U.S. Capitol. *See* Houghton-Larsen Decl., ¶¶ 3, 5 ECF No. 63-1. This effort was too little to do much and, a week later, plaintiffs advised Parlatore that "the 53 documents were insufficient to fulfill Mr. Kerik's discovery obligations" in response to the document requests made specifically in this litigation, *id*., and, to demonstrate this point, showed Parlatore "examples of emails produced during discovery that were sent to Mr. Kerik but were not present in his production to the Select Committee." *Id*. ¶¶ 5, 6.

Over three months after Parlatore agreed, on November 14, 2022, to accept service of the First Kerik Subpoena, Parlatore alerted plaintiffs' counsel, on February 24, 2023, that acceptance of service was actually only on condition that any deposition take place virtually. *Id*. ¶ 8. Rejecting this new condition, plaintiffs proceeded to serve Kerik personally, on March 5, 2023, with a second subpoena for records and deposition testimony ("Second Kerik Subpoena"), with the deposition noticed for March 20, 2023, in New York, N.Y. *Id*. ¶ 8. Notably, at Parlatore's request that the deposition take place in Washington, D.C., *id*. ¶ 9, a third subpoena, dated March 15, 2023, was issued to Kerik for documents and his deposition, on the same date set out in the Second Kerik

6

Subpoena of March 20, 2023, in the district Kerik and Parlatore requested, here in Washington, D.C. *Id.* ¶ 20; *id.*, Ex. 8 ("Third Kerik Subpoena"), ECF No. 63-9. Parlatore accepted service of the Third Kerik Subpoena, that was issued at Parlatore's request, on behalf of his client. Pls.' Mot. at 7 (explaining that plaintiffs "served Mr. Kerik via email to his counsel[] with" the Third Kerik Subpoena); Houghton-Larsen Decl., Ex. 7 at 5 (March 15, 2023 Email from Parlatore to Plaintiffs' Counsel stating, "I do accept service [on behalf of Mr. Kerik]," referring to the Third Kerik Subpoena), ECF No. 63-8. Plaintiffs' pending motion to compel seeks Kerik's compliance with the Third Kerik Subpoena for responsive records and deposition testimony.

Kerik sat for his deposition, on March 20, 2023, in Washington, D.C., but even by that late date, had still produced no documents in response to the specific discovery requests in this case nor did he do so at his deposition, beyond those 53 records produced to the Select Committee. This is not because he had no documents to produce. To the contrary, Kerik testified at his deposition that he maintains an electronic folder of documents related to his investigation into election issues and that he reviewed that folder in preparation for his deposition to refresh his recollection. Houghton-Larsen Decl., Ex. 2, Excerpts from March 20, 2023 Deposition of Bernard Kerik ("Kerik Dep. Tr.") at 13 (Kerik testifying that in preparation for the deposition he "[b]asically just looked over some notes that I have. . . . I have a file, a file that has a bunch of material from the election of 2020 . . . It's an electronic file . . . They're documents that were collected throughout the investigation, subsequent to the investigation."), ECF No. 63-3; *accord id.* at Ex. 10, March 27, 2023 Letter from Plaintiffs' Counsel to Parlatore at 1 (making the same observation), ECF No. 63-11.

According to plaintiffs, Kerik is "withholding documents and testimony based on purported privilege grounds," Pls.' Mot. at 5 (capitalization omitted), and "has never produced a

7

privilege log that complies with [Federal] Rule [of Civil Procedure] 26, or even one that is addressed to the documents responsive to Plaintiffs' requests." *Id.* at 12.  After attempting to confer repeatedly with Parlatore, regarding, in plaintiffs' view, Kerik's document production deficiencies, lack of a detailed privilege log, and improperly withheld deposition testimony, plaintiffs filed their pending Motion, on June 9, 2023, seeking to compel Kerik's compliance with his discovery obligations.  *See generally id.*  At the time plaintiffs filed their instant motion, Kerik had produced only "the 53 [publicly] available documents produced to the Select Committee," Houghton-Larsen Decl. ¶ 10, and the privilege log produced to the Select Committee, *id.*, Ex. 6 (Kerik Privilege Log), ECF No. 63-7.

Aside from attorneys' fees and costs for filing the motion, plaintiffs seek three forms of relief.  First, plaintiffs seek a detailed compliant privilege log from Kerik.  *See* Pls.' Mot. at 1.  The Kerik Privilege Log produced to the Select Committee and then passed along to plaintiffs lists 302 records withheld on a categorical basis, rather than a document-by-document, basis, without specifying for each document any precise dates, specific names of recipients or authors, or the type, subject, title, or length of the withheld document or communication that would enable assessment of the privilege asserted.

Second, plaintiffs request that Kerik be ordered to produce 43 documents reflected on the Kerik Privilege Log as being withheld on attorney work product privilege grounds, and generally described as "37 'internal communications related to external messaging,' five 'internal emails about legislature meetings' and 'packets of evidence that accompany affidavits[.]'" Pls.' Mot. at 14 (quoting Kerik Privilege Log).  The Kerik Privilege Log is murky as to the basis for withholding the 43 withheld records under the work product privilege, instead baldly asserting that these records were, for example, "communications made by the election investigation legal team in

8

anticipation of litigation," with no additional explanation or specification of the litigation anticipated. *See, e.g.*, Kerik Privilege Log at 1. Based on these vague descriptions in the Kerik Privilege Log of these 43 withheld documents, plaintiffs argue that documents "created for purposes of '*external messaging*' and '*legislature meetings*' do not constitute legal work product," because the work product doctrine "protects only documents created 'for the purpose of assisting an attorney in preparing for litigation, and not for some other reason.'" Pls.' Mot. at 15 (italics in original) (quoting *Alexander v. FBI*, 192 F.R.D. 42, 46 (D.D.C. 2000)). With respect to the documents described as "*packets of evidence that accompany affidavits*," plaintiffs argue that these documents cannot be privileged because "factual matter in a document only warrants work product protection if it reflects an attorney's mental processes—there is no reason to believe that the packets of evidence reflect any attorney mental processes." *Id.* at 17 (italics in original) (citing *See United States v. All Assets Held at Bank Julius Baer & Co.*, 315 F.R.D. 103, 109 (D.D.C. 2016)).

Finally, plaintiffs request that Kerik be required to provide testimony that he withheld during his deposition. *Id.* at 1. Plaintiffs explain that "Parlatore instructed Mr. Kerik not to answer four categories of questions based on work product privilege that related to: (1) The purpose of the Giuliani Team's efforts[;] (2) [t]he work [Kerik] performed in six swing states, including Georgia[;] (3) [t]he methods of communication used by the Giuliani Team[;] and (4) [t]he members and roles of the Giuliani team[.]" Pls.' Mot. at 7–8 (citations omitted) (together, the "Withheld Topics").[2] Parlatore directed Kerik not to respond to questions regarding these topics because they touch on the Giuliani Team's "investigations in anticipation of litigation." *See, e.g.*,

---

[2] Plaintiffs define "The Giuliani Team" as "Kerik, together with the other individuals assisting Mr. Giuliani with his post-2020 Presidential election efforts." Pls.' Mot. at 2.

9

Kerik Dep. Tr. at 43:5-10 (Parlatore stating, "Do you not hear what I was just saying? . . . To the extent that they are doing investigations in anticipation of litigation, that is work product.").

As already noted, the deadline for response to plaintiffs' pending motion passed without a peep from Kerik or his counsel.  Only after the Court issued an order to show cause why this motion should not be granted did Parlatore, in response to that OTSC, submit his brief seven-paragraph declaration opposing plaintiffs' motion.  *See* Parlatore Decl.  On June 28, 2023, the same day this declaration was filed, Parlatore also produced to plaintiffs 19 of the 43 withheld documents, which plaintiffs disputed as plainly not subject to privilege or work product protection—leaving 24 of the original 43 documents still withheld—and a revised privilege log, showing the withholding of, by the Court's estimation, 400 documents.  Pls.' Resp. to Parlatore Decl. ("Pls.' Resp."), at 8, ECF No. 79; *see* Declaration of M. Annie Houghton-Larsen Supp. Pls.' Resp. to Timothy Parlatore's Decl. ("2nd Houghton-Larsen Decl."), Ex. 3 at 1, June 28, 2023 Email from Parlatore to plaintiffs' counsel (providing an updated privilege log and "documents that [defendant and Kerik] are not asserting privilege over"), ECF No. 79-4; *id.*, Ex. 4, Revised Kerik Privilege Log by Bernard Kerik ("Revised Kerik Privilege Log"), ECF No. 79-5.[3]  While Kerik is now asserting privilege claims "on an individual basis," plaintiffs point out that the Revised Kerik Privilege Log remains inadequate by "not provid[ing] sufficient information to allow Plaintiffs or the Court to assess the claims of privilege" because "[i]n the column 'Nature and Basis of Privilege Claim,' Mr. Kerik repeats just 14 improperly vague 'descriptions'—*three*

---

[3]  Upon direction of the Court, *see* Minute Order (June 29, 2023) (as amended, Minute Order (June 30, 2023)), plaintiffs submitted their response to the Parlatore Declaration, *see* Pls.' Resp.

10

of which only reflect that the document is being reviewed by counsel and provide no other description as to why the document is being withheld." Pls.' Resp. at 9 (emphasis in original).[4]

In sum, after Kerik's belated disclosures *after* the pending motion to compel had already been filed, plaintiffs now seek immediate production of 24 of the 400 withheld documents as improperly withheld as attorney work product ("the Withheld Records"), a rule-compliant privilege log that provides sufficient description as to why each document is being withheld to assess the basis for assertion of privilege or work product protection, since the fourteen repeated descriptions provided in the Revised Kerik Privilege Log remain inadequate, and Kerik to provide testimony on the Withheld Topics.

Plaintiffs' motion to compel is now ripe to resolve.

**II.    DISCUSSION**

Parlatore's belated response to plaintiffs' motion to compel Kerik to comply with his discovery obligations raises little contest as to plaintiffs' critiques regarding the insufficiency of Kerik's document production to date and in response to the Third Kerik Subpoena, nor the inadequacy of the Kerik Privilege Log. Indeed, the same day Parlatore filed his response to the OTSC, he also "forwarded" additional documents and the Revised Kerik Privilege Log to plaintiffs.  Parlatore Decl. ¶ 6.  Instead, this response raises two purely procedural bogeymen, both of which prove chimerical, and one substantive objection, which falls flat on close inspection. Parlatore's Declaration turns out to be a paradigm of selective omission that has worked only to delay further Kerik's compliance with his Rule 45 discovery obligations.  Given the documented

---

[4] Since the Kerik Privilege Log described the basis for withholding on a categorical basis for groups of documents, and the Revised Kerik Privilege Log does so on a document-by-document basis but without cross-referencing the categories used in the Kerik Privilege Log, correlating any of the documents listed in the Revised Kerik Privilege log to the grouped entries on the Kerik Privilege Log is virtually impossible, as is identifying which documents on the Revised Privilege Log are the Withheld Records.

record as set out by plaintiffs, with attached exhibits in the Houghton-Larsen Declarations, Kerik and Parlatore's procedural and substantive objections to the pending motion are without merit and are rejected.

First, Parlatore states in his declaration that plaintiffs' motion was improperly filed in the District of Columbia, because motions to compel compliance with discovery obligations must be filed in "'the district where compliance is required for an order compelling production or inspection'—in this case, the District of New Jersey," because "Kerik is a resident of New Jersey." Parlatore Decl. ¶ 4 (quoting Federal Rule of Civil Procedure 45(d)(2)(B)(i)). He therefore counsels that "Plaintiff [sic] should file any motion to compel in the District of New Jersey, if they still deem such a motion necessary." *Id*. ¶ 7. This is incorrect and plaintiffs' motion to compel is not "filed in the wrong Court," as Parlatore posits. Parlatore Decl. ¶ 4. Parlatore even concedes, *id.*, that a motion to compel enforcement of a subpoena must be filed in "the district where compliance is required." FED. R. CIV. P. 45(d)(2)(B)(i); *see also id.* (advisory committee's Notes to 1991 amendment) (explaining that litigation concerning subpoena compliance must "be presented to the court for the district in which the deposition would occur"). Consistently, Federal Rule of Civil Procedure 37(a)(2) provides that a motion to compel a nonparty "must be made in the court where the discovery is or will be taken."

In this case, compliance with the Third Kerik Subpoena is in the District of Columbia rather than where Kerik resides in New Jersey—and this is so ***at Parlatore's request***. Plaintiffs have supplied the illuminating email correspondence their counsel exchanged with Parlatore, who requested that the deposition of Kerik take place in Washington, D.C., a request to which plaintiffs acceded. *See* Houghton-Larsen Decl., Ex. 7 at 6 (March 15, 2023 Email at 4:51 PM from Parlatore to plaintiffs' counsel, stating, "We can do Monday next week, if you want to just shift it to DC."),

ECF No. 63-8.  In accord with Parlatore's request, plaintiffs issued the Third Kerik Subpoena to Kerik to sit for his deposition in Washington, D.C.  *See* Third Kerik Subpoena at 2 (providing that Kerik's deposition is to occur at "1875 K St NW # 100, Washington, DC 20006" and that Kerik or his representatives must bring responsive documents and ESI with them to the deposition). Given that Kerik's deposition took place in this District, and not New Jersey, the place of compliance for the purposes of Rule 45(d)(2)(b)(i) is the District of Columbia.  *See United States v. Preston*, No. CV 13-00265 (RC), 2015 WL 13708609, at *2 (D.D.C. Aug. 24, 2015) (finding the proper district to bring a motion to compel a non-party's compliance with a subpoena was the district where the deposition was taken).

Second, Parlatore's assertion in his declaration that Kerik was not properly served with plaintiffs' motion to compel, Parlatore Decl. ¶¶ 2-4, 7, and therefore that Kerik has not missed the two-week deadline to respond, *id.* ¶¶ 2-3, is also incorrect.[5]  Plaintiffs properly served Kerik with their pending motion "via a first class mailing to the business address of his attorney, Mr. Parlatore, as permitted by Rule 5."  Pls.' Resp. at 1.  To be sure, Federal Rule of Civil Procedure 45 generally

---

[5] Kerik raises no challenge to service of the Third Kerik Subpoena, but only to service of the pending motion to compel, and therefore any challenge to the former is waived. *See Ansur Am. Ins. Co. v. Borland*, No. 321CV00059SMYMAB, 2022 WL 1605338, at *2 (S.D. Ill. May 20, 2022) ("By agreeing to accept service of the subpoena via email and agreeing to coordinate compliance, Signature Hardware has waived any objection to service."); *Rosales v. The Placers, Ltd.*, 2011 WL 846082, at *2 (N.D. Ill. March 8, 2011) (refusing to quash a non-party subpoena on the grounds that it required compliance beyond a 100-mile radius because attorney for the non-party "agreed to accept service of the [ ] subpoena without raising any objection to the 100–mile limitation"); *Atlantic Inv. Mgmt., LLC v. Millennium Fund I, Ltd.*, 212 F.R.D. 395, 397 (N.D. Ill. 2002) (refusing to quash a subpoena on grounds that it was unsigned by the issuing attorney because the attorney for the non-party "responded in writing to the subpoena, [ ] did not object to this deficiency, . . . [and] stated that the subpoena was accepted"); *accord Cardinali v. Plusfour*, Inc., No. 216CV02046JADNJK, 2019 WL 3456630, at *6 (D. Nev. June 20, 2019) (finding objection that non-party was not personally served with Rule 45 subpoena to be "baseless" the "subpoena was also served on the attorney who represented" non-party); *accord* W. Schwarzer, A. Tashima, and W. Wagstaffe, *Rutter Group Practice Guide: Fed. Civ. Proc. Before Trial*, National Edition, § 5:89 (2023) (noting "the common practice of attorneys agreeing to accept service of process on behalf of a client-defendant," which "is deemed served on the client"); *cf. Thanh Vong Hoai v. Sun Ref. & Mktg. Co.*, No. 87-2456 (LFO/PJA), 1989 U.S. Dist. LEXIS 6866, at *2–3 (D.D.C. June 19, 1989) ("In the absence of proof of service on the person named therein, i.e., the person whose presence is required, it would be inappropriate to require *that* person to show cause why he should not be held in contempt for failure to comply with a subpoena not personally served on him since service on the witness' attorney was a nullity," where the lawyer only represented the non-party in other matters) (emphasis in original).

requires personal service of a subpoena on the non-party required to comply, *see* FED. R. CIV. P. 45(b)(1), not on that person's counsel, unless counsel is authorized to accept service, *see supra* n. 5. The requirement of personal service of a Rule 45 subpoena does not apply to subsequent filings to enforce that subpoena, including service of a motion to compel a non-party's compliance.

In this case, plaintiffs served both Kerik and his counsel with a copy of the pending motion and its accompanying exhibits, on June 9, 2023, by first class mailing to the former's last known residential address and the latter's place of business. Pls.' Resp. at 3; *see* 2nd Houghton-Larsen, Ex. 1, Affidavit of Ann Staron ¶¶ 4-5, ECF No. 79-2. Rule 5 provides that "[i]f a party is represented by an attorney, service under this rule *must* be made on the attorney unless the court orders service on the party," FED. R. CIV. P. 5(b)(1) (emphasis added), by means including "mailing it to the person's last known address—in which event service is complete upon mailing[,]" FED. R. CIV. P. 5(b)(2)(C); *see also, e.g., Muhammad v. United States*, No. CV 16-1079 (TJK), 2019 WL 652400, at *5 (D.D.C. Feb. 15, 2019) (holding that filing was properly served under Rule 5(b)(2)(C) when it was mailed to last known address and calculating deadlines under the Federal Rules of Civil Procedure from date of mailing), *aff'd*, No. 19-5109, 2020 WL 873514 (D.C. Cir. Feb. 13, 2020); *Kruger v. Cogent Commc'ns, Inc.*, No. CV 14-1744 (EGS), 2016 WL 11121058, *3 (D.D.C. Oct. 24, 2016) (service completed when the attorney was mailed a copy of the discovery requests via first class mail); *United States v. Kennedy*, 133 F.3d 53, 59 (D.C. Cir. 1998) (explaining that "[s]ervice is deemed complete at the instant the document[]" is properly posted and deposited for mailing). This is precisely what plaintiffs did here by mailing the motion to compel to Parlatore. Plaintiffs also took the additional step of mailing Kerik a copy of the pending motion, but Rule 5 did not so require them to do so. Service under Rule 5 was thus satisfied by mailing the motion to Parlatore.

Parlatore baldly suggests in his declaration, without citation, that "the motion to compel has never been served on Mr. Kerik," Parlatore Decl. ¶ 2, but neither Rule 5 nor Rule 45 demands personal service on a non-party witness of motion papers filed in court to enforce a subpoena. To be sure, Rule 45 requires that "notice" be given to the non-party when an order is sought to compel "the commanded person" to comply with a subpoena. *See* Fed. R. Civ. P. 45(d)(2)(B)(i). "Notice" means just that, and not personal service, and courts have found that the notice requirement of Rule 45 is satisfied by mailing a copy of the motion to the party. *See, e.g.*, *Schumacher v. Cap. Advance Sols., LLC*, No. 4:18-CV-0436, 2021 WL 391416, at *1 (S.D. Tex. Feb. 4, 2021) ("Plaintiff filed the pending Motion to Compel and for Contempt on December 10, 2020, serving it on Betta by certified mail."); *Abante Rooter & Plumbing, Inc. v. Poundteam Inc.*, No. 8:20-MC-110-T-30SPF, 2021 WL 2430768, at *1 (M.D. Fla. Jan. 21, 2021) (observing that non-party was notified of a motion to compel response to a Rule 45 subpoena via mail); *Golden Krust Franchising, Inc. v. Clayborne*, No. 8:20-MC-104-T-33SPF, 2020 WL 7260774, at *1 (M.D. Fla. Dec. 10, 2020) (same). No authority supports Parlatore's position that personal service on a non-party of a motion to compel compliance with a Rule 45 subpoena is required under governing procedural rules. As plaintiffs correctly point out, "[t]he rule contemplates notice, not going through the wasteful process of effectuating *personal service* of a motion on a party that has already been served." Pls.' Resp. at 5 (emphasis in original).

Not only was Parlatore on notice when plaintiffs mailed the pending motion to him due to prior communications with plaintiffs' counsel, but he apparently confirmed his knowledge of the motion to a reporter, telling the reporter that he did not "really have time to waste on [this] case[.]" Josh Kovensky & Hunter Walker, *Bernie Kerik Pitched Mark Meadows on '$5 to $8' Million Plan To Reverse Trump 2020 Loss*, TPM (June 15, 2023), available at https://perma.cc/UW6M-SCRJ.

Meanwhile, as plaintiffs point out, during the time period "when plaintiffs were attempting to confer with Mr. Parlatore regarding Mr. Kerik's expansive privilege assertions, Mr. Parlatore found time to sit for eleven media interviews addressing his other—apparently more important—legal work[.]" Pls.' Resp. at 5 n.2; (citing 2nd Houghton-Larsen Decl., Ex. 2 (Pls.' Chart of Timothy C. Parlatore's Public Appearances and Statements for the Month of June 2023), ECF No. 69-3).

Finally, Parlatore offers one substantive argument to defend Kerik's failure to comply fully with the Rule 45 subpoena, stating that "Kerik is not the privilege holder" of the withheld documents and thus "[t]he decision of whether a claim of privilege is to be waived is not up to Mr. Kerik, a non-attorney investigator on the legal team, but rather the attorney and, ultimately, the client[,]" with the "attorney" being defendant Giuliani, and "client" the "Trump Campaign." Parlatore Decl. ¶¶ 5-6. Yet, Kerik and the privilege holders cannot withhold responsive records in discovery indefinitely, using a fig leaf cover in the form of an inadequate privilege log. The rules are designed to combat such a subversion of the discovery process by requiring putative privilege holders to "bear[] the burden of proving the communications are protected," *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998), by describing "the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." FED. R. CIV. P. 45(e)(2)(A)(ii).

The Kerik Privilege Log, on which Kerik rested his discovery compliance for ten months, was wholly inadequate and non-compliant and, as plaintiffs observe, the Revised Kerik Privilege Log merely parrots fourteen vague descriptions of why each of the 400 withheld documents is privileged. For example, the Revised Kerik Privilege Log describes 117 documents as "[c]onfidential document prepared at the direction of counsel for use in litigation," without

providing any information about the author, sender or recipient or identifying the litigation for which the document to be used. *See* Pls. Resp. at 9 (quoting Revised Kerik Privilege Log). As another example, 176 documents are described as "[c]onfidential communication discussing legal strategy," without explaining for what litigation or potential litigation the communication was made. *See id.* (quoting Revised Kerik Privilege Log). Thus, Kerik has failed to provide sufficient detailed explanations of the nature and basis of the privilege claims for each of the documents in the Revised Kerik Privilege Log to withstand challenge. *See In re Veiga*, 746 F. Supp. 2d 27, 34 (D.D.C. 2010) ("[T]he proponent of the privilege must offer more than just conclusory statements, generalized assertions, and unsworn averments of its counsel."); *Chevron Corp. v. Weinberg Grp.*, 286 F.R.D. 95, 98 (D.D.C. 2012) ("From the entry itself the opposing party and ultimately the judge should be able to tell that the information not being disclosed is properly claimed as privileged.") (brackets omitted); *see also Nat'l Sec. Couns. v. CIA*, 960 F. Supp. 2d 101, 193–95 (D.D.C. 2013) (Howell, J.) (finding the CIA's privilege descriptions were insufficient for the court to determine that the documents were sent for the purpose of securing an opinion on law, legal services, or assistance in some legal proceeding).

Failure to provide an adequate privilege log results in waiver of any otherwise asserted privilege and work product protection. *See In re Grand Jury Subpoena*, 274 F.3d 563, 575–76 (1st Cir. 2001) ("The operative language [of Rule 45(e)(2) ] is mandatory. . . . A party that fails to submit a privilege log is deemed to waive the underlying privilege claim."); *Senate Permanent Subcomm. on Investigations v. Ferrer*, No. MC 16-621 (RMC), 2016 WL 11681577, at *1 (D.D.C. Sept. 30, 2016) (collecting cases that demonstrate that when a party fails to file "a sufficiently detailed privilege log to avoid the arbitrary withholding of subpoenaed information" the privilege holder may "waive[] the claimed attorney-client and work product privileges"). Let there be no

mistaken understanding: privilege waiver is the real risk that Kerik and the putative privilege holders face here. As plaintiffs have detailed, the Revised Kerik Privilege Log still fails to provide plaintiffs (and this Court) sufficient information to assess the validity of any basis for withholding, so absent prompt submission of an adequate privilege log, any privilege claim to the 400 documents in the Revised Kerik Privilege Log—including the Withheld Records, wherever they may fall on that Log—will be deemed waived.

## III.    CONCLUSION

In sum, Kerik *and* his counsel were properly served with plaintiffs' pending motion to compel, and plaintiffs filed their motion in the proper venue because the place for compliance with the Third Kerik Subpoena is in the District. Furthermore, the mere fact that others, and not Kerik, are the putative privilege holders over records in Kerik's custody and control does not obviate Kerik's obligation to comply with the Third Kerik Subpoena by supplying an adequate privilege log that provides sufficient description and explanation to justify why each record is in fact privileged or protected attorney work product, bearing in mind that the burden is on the privilege proponent to provide sufficient information to permit other parties and the Court to test the merits of the privilege claim. For example, withholding records as protected work product without providing information about the status as an attorney of any author, sender or recipient of the record, plus the litigation pending or anticipated for which the record was prepared, may be insufficient to justify such a claim. Kerik must also fully explain, which he has not done, his failure to answer questions in his deposition on work product privilege grounds. Kerik's excuses for ignoring plaintiffs' motion to compel therefore fail.

Given that even with the additional time afforded by the Court beyond the otherwise applicable deadline for response, Kerik has articulated no viable procedural or substantive

objection to plaintiffs' motion, *see* Parlatore Decl., the entirety of plaintiffs' motion could be treated as conceded, *see* D.D.C. LCvR 7(b) (authorizing, if no timely opposition is filed to a motion, that "the Court may treat the motion as conceded").  Yet, giving Parlatore the benefit of the doubt that his declaration reflected merely a misunderstanding of the applicable law rather than an effort to delay further full compliance with his and his client's discovery obligations, Kerik and any putative privilege holders will be given a final opportunity to produce promptly responsive records or an adequate privilege log justifying withholding of all responsive records and explain, in particular, why the Withheld Records should not be immediately produced to plaintiffs, as they request, and Kerik should not be directed to sit for another deposition and be directed to respond to questions on the Withheld Topics.  *See* Pls.' Mot at 1 (outlining plaintiffs' requested relief).

Additionally, Kerik will be given an opportunity to explain and why he and Parlatore should not be required to pay plaintiffs for attorneys' fees and costs associated with the failure to respond to the plaintiffs' motion to compel.  *See* Pls.' Mot. at 20 (requesting costs and fees pursuant to Rule 37); *see also* FED. R. CIV. P. 37(a)(5)(A) ("If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the *party or attorney* advising that conduct, *or both* to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.") (emphasis added).  Until then, the remainder of plaintiffs' requested relief—requiring Kerik to produce the Withheld Records, sit for another deposition, and pay for attorneys' fees and costs for filing their motion—will be reserved.

## IV.     ORDER

Accordingly, for the foregoing reasons, it is—

**ORDERED** that Plaintiffs' Motion to Compel, ECF No. 63, is GRANTED IN PART and RESERVED IN PART; it is further

**ORDERED** that, by July 25, 2023, Bernard Kerik is DIRECTED to produce to plaintiffs, in consultation with any putative privilege holder, a document-by-document privilege log of any withheld record that provides sufficient information to "enable other parties to assess the claim" that "the information is privileged or subject to protection as trial preparation material," FED. R. CIV. P. 26(b)(5)A)(ii); it is further

**ORDERED** that, by July 25, 2023, Bernard Kerik is DIRECTED to SHOW CAUSE why, in consultation with any putative privilege holder, (1) any of the Withheld Records withheld under attorney-work product privilege grounds should not be produced immediately to plaintiffs; (2) why he should not be made available for a deposition to respond questions, and any follow up questions, that he was instructed not to answer during his March 20, 2023 deposition on attorney-work product protection grounds; and (3) why he and his counsel, Timothy C. Parlatore, should not be required to reimburse plaintiffs for the attorneys' fees and costs associated with the preparation and filing of their motion to compel; and it is further

**ORDERED** that the remainder of plaintiffs' requested relief in their Motion to Compel, ECF No. 63, is RESERVED.

**SO ORDERED.**

Date:  July 13, 2023

　　　　　　　　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　　　　　　　**BERYL A. HOWELL**
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Court Judge