UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUBY FREEMAN, *et al.*, | |
| Plaintiffs, | Civil Action No. 21-3354 (BAH) |
| v. | Judge Beryl A. Howell |
| RUDOLPH W. GIULIANI, | |
| Defendants. | |

### RESPONSE TO PLAINTIFFS' MOTION FOR SANCTIONS

In their Motion for Sanctions [Doc. 81] ("Motion"), Plaintiffs Ruby Freeman ("Freeman") and Wandrea Moss ("Moss" and, together with Freeman, the "Plaintiffs") seek "death penalty" sanctions or, in the alternative, sanctions regarding liability as to Giuliani. For the reasons discussed below, Giuliani has not spoliated or failed to preserve any evidence and stipulates by concession any pertinent facts for which discovery from him would be needed. Therefore, the Motion should be denied.

### SUMMARY OF RESPONSE

Plaintiffs seeks sanctions against Giuliani for alleged failure to preserve electronic evidence. As discussed below, Giuliani did not fail to preserve or destroy any electronic evidence because all pertinent documents were seized by the government and were in their possession, custody, or control. Furthermore, Giuliani stipulates to all pertinent facts Plaintiffs would need from him to establish liability, making discovery sanctions and further discovery from him unnecessary. Accordingly, the Motion should be denied.

### RESPONSE

### A. The TrustPoint Documents.

Robert J. Costello ("Costello") was Giuliani's counsel in connection with the DOJ seizure of his electronic devices. Costello Decl. at ¶¶ 1-3. Giuliani was subject to a criminal investigation run by the Southern District of New York ("SDNY") which was resolved in Giuliani's favor. *Id.* at ¶ 5. The Federal Government, be it the FBI or the U. S. Attorney's Office for the SDNY reviewed 26 years' worth of electronic data, the SDNY, issued an unusual public statement declaring that it was not charging Giuliani with any violation of federal law. *Id.* at Ex. A.

The search warrants in question, which involved a search of Giuliani's home and office and called for the seizure of all electronic devices, called for electronic materials between the dates of August 1, 2018, to December 31, 2019, an eighteen-month period. *Id.* at ¶¶ 6-7, Ex. B. The resulting search produced electronic records, according to the Government's electronic discovery vendor "PAE," from February 24, 1995 to the end of April 2021- twenty-six years of electronic records. *Id*. Because of the enormity of the records seized and the necessity to review all those records for attorney client privileged materials, Costello objected to this broad general search and sought to limit the inquiry to the actual time requested by the Government in the search warrant applications, which amounted to 18 months. *Id.* at ¶ 8, Ex. B.

In the Motion, Plaintiffs claim that Giuliani's "counsel requested that the New York court order the Government to suppress and destroy the majority of records contained in the TrustPoint database and limit any remaining records to a time period between 2018 and 2019." Plaintiffs misleadingly suggest Giuliani was attempting to destroy records to the detriment of Plaintiffs, but this is not the case. Costello Decl. at ¶¶ 9-10. The electronic records that Plaintiffs complain of, have not been in the possession of Giuliani since their seizure in April 2021. *Id*. Neither Giuliani

2

nor his counsel have not exercised any control or custody of those records since the date they were seized in April 2021.  *Id.*

After the seizure of the electronic devices in April 2021, the FBI turned those devices over to their electronic discovery provider, PAE.  *Id.* at ¶ 12.  The United States Attorney's Office for the SDNY applied for and was granted a Special Master, Hon. Barbara Jones, a retired U. S. District Court Judge from the SDNY, to review all the documents seized for claims of privilege. *Id*.  PAE performed the extraction of the electronic material from the devices and maintained that material on their relativity platform.  *Id.* at 13.  PAE would then provide that material to the Special Master, who had her own Relativity platform at her law firm, Bracewell, LLC.  *Id*.  Judge Jones would then contact Costello and inform him that she wanted him to review whatever portion of the electronic material that she would provide and make preliminary claims of privilege for any electronic document provided.  *Id.* at ¶ 14.  That electronic material would be provided directly from the Special Master to the designated electronic discovery vendor, TrustPoint.  *Id*.  Giuliani and his counsel never had control or custody of the material.  *Id*.

Trustpoint would then send Costello sections of the electronic material, so that he could designate whatever communications he believed were covered by attorney client, work product or executive  privilege.  *Id.* at ¶ 15.  Those identified communications would then be sent to Judge Jones for her ruling.  *Id*.  If there was a dispute between Judge Jones and Giuliani, the matter would be referred to Judge J. Paul Oetken, the sitting SDNY Judge who had authorized the search warrants.  *Id*.  Giuliani never needed to have Judge Oetken resolve a dispute.  *Id*.

Costello personally reviewed more than 95 percent of the electronic materials that were provided to the Special Master to evaluate.  *Id.* at ¶ 16.  In reviewing the materials, he encountered numerous non-user generated files and what Costello referred to as "computer gibberish".  In

addition, there were many emails that contained the header with the sender and recipient addresses, but no text in the body of the email. *Id.* at ¶ 17. With respect to this material, in 2021, Costello made inquiries of the Special Master's electronic discovery people and they informed him that this was exactly how they received the electronic materials. *Id.* The Special Master's lawyers informed Costello that they had made similar inquiries to the Government and that the Government reported that any errors in the production of the electronic data, would have occurred when PAE, the Government vendor, performed their extraction procedure. *Id.*

The above information and communications with the Special Master make clear that the suggestions made by Plaintiffs that Giuliani has spoliated evidence are false and not based upon any factual material. *Id.* at ¶ 18. What has been produced is what Mr. Giuliani received from the United States Government. *Id.* Giuliani has never possessed the electronic materials since they were seized in April 2021. *Id.* It was, and is, physically impossible for Giuliani to have spoliated any of this evidence as Plaintiffs suggest. *Id.* After the SDNY announced publicly that they were not bringing any charges against Giuliani following the Government's review of 26 years' worth of electronic evidence, the FBI returned the devices that they had seized. *Id.* at ¶ 19. A review of those devices found that they had been wiped clean by the vendor for the Government. *Id.*

There was never any attempt to spoliate or destroy evidence from Mr. Giuliani's electronic instruments. *Id.* at ¶ 22. The application that Costello made to Judge Oetken in August of 2021 was designed to limit the Government's inquiry to the time period that they had specified in their application for the search warrants, simply to avoid the incredibly expensive review of twenty-six years' worth of electronic communications to vet them for attorney client privilege claims. *Id.* Based on Costello's experience, it is standard in these situations to request that the Government **either** return **or** destroy the material that they should not be permitted to review, similar to a

"snapback" situation with privilege. *Id*. There was no way for Giuliani or his counsel to know that the Government had apparently corrupted some of the files as they were extracting the data or to have prevented this. *Id*. Likewise, there was no way for Mr. Giuliani or his counsel to know, that when the devices were returned by the FBI—after concluding there would be no charges forthcoming—that the actual devices would be wiped clean. *Id*.

### B. The Third-Party Document Productions.

The fact that Plaintiffs may be able to produce third party emails that involve Giuliani, does not prove Giuliani had any access to those same materials and lost or destroyed them. Giuliani's electronic discovery vendor, TrustPoint, has the material the Government provided to them. Costello Decl. at ¶ 18. That is the only material that Mr. Giuliani could have possibly produce from his seized devices. *Id*. For example, Plaintiffs point to the fact that Christina Bobb produced communications with Giuliani that he did not produce. *Id*. at 23. Therefore, Plaintiffs leap to the conclusion that Giuliani must have concealed or spoliated evidence. *Id*. But this evidence does not support that conclusion. As per above supported by the Costello Declaration, the evidence indicates that the non-production of this communication stems from the fact that the government seized files, some of which were corrupted, and then wiped from the devices.

Similarly, Plaintiffs claim that they obtained a December 13, 2020, email from Giuliani to Boris Epsteyn that wherein he supposedly "reiterates Defendant's false claims about Plaintiffs" by stating "Georgia has video evidence of 30,000 illegal ballots cast after the observers were removed." *Id.* at ¶ 24. First, the Plaintiffs were not specifically mentioned in the email and, second, when one reviews the citation for this email (ECF-56-7), there is a later email from Jason Miller that reports: "Statement on hold until further notice, pending Rudy's talk with the President." *See* ECF-56-7. Therefore, this was not a statement "published to third parties" for

5

which a defamation action could lie. Moreover, it adds nothing to the evidence in this case because Giuliani has already admitted multiple times that the video evidence was the basis of his statements.

In sum, the fact that Giuliani emails were produced by third parties that were not produced by him does not prove that he lost or destroyed the documents through a failure to preserve or other spoliating act, but rather the result of third-party action by the government beyond his control.

### C. The Court Should Deny Any Attorneys' Fees Or Other Sanctions.

As discussed above, Giuliani has not engaged in any conduct that constitutes spoliation. However, out of abundance of caution, and to avoid any potential controversy, Giuliani has agreed to stipulate to the factual aspects of liability as to Plaintiffs claims, except damages, as such discovery or information would be solely in possession of the Plaintiffs. *See* Giuliani Stipulation attached. While Giuliani does not admit to Plaintiffs' allegations, he—for purposes of this litigation only—does not contest the factual allegations. *See id.* Thus, Plaintiffs do not need any additional discovery or sanctions regarding striking Giuliani's answer based on his concession of facts establishing liability.

## CONCLUSION

For all of the reasons discussed herein, the Court should deny the Motion.

Date: July 25, 2023

Respectfully submitted,

By: */s/ Joseph D. Sibley IV*

6

CAMARA & SIBLEY L.L.P.

Joseph D. Sibley IV
DC Bar ID: TX0202
1108 Lavaca St.
Suite 110263
Austin, TX 78701

Telephone: (713) 966-6789
Fax: (713) 583-1131
Email: sibley@camarasibley.com

**ATTORNEYS FOR RUDOLPH GIULIANI**

### CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of July, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which I understand to have caused service on all counsel of record.

*/s/ Joseph D. Sibley IV*
Joseph D. Sibley IV