**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
-----------------------------------------------x
RUBY FREEMAN, et al.,                          )
                                               )
                       Plaintiffs,             )        Case No. 1:21-cv-03354 (BAH)
                                               )
          v.                                   )        Judge Beryl A. Howell
                                               )
RUDOLPH W. GIULIANI,                           )        AFFIDAVIT OF
                                               )        ROBERT J. COSTELLO
                                               )
                       Defendant.              )
-----------------------------------------------x
```

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )

ROBERT J. COSTELLO, being duly sworn deposes and says:

1. I am a member of the firm of Davidoff Hutcher & Citron, LLP, located at 605 Third Avenue, New York, New York. I am admitted to practice law for fifty years in the State of New York as well as the Supreme Court of the United States; the United States Court of Appeals for the Second and Third Circuits; and the Southern and Eastern Districts of New York. I have been admitted  pro haec vice in a number of other federal courts including the District of Columbia.

2. Since late 2019, I have been the personal attorney to Rudolph W. Giuliani.  By way of background, I was formerly Deputy Chief of the Criminal Division of the United States Attorney's Office for the Southern District of New York, ("SDNY"). I have not represented Mr. Giuliani in this matter, as Joseph Sibley from Texas has been his counsel.  In light of the recent sanctions imposed by this Court and the most recent request for sanctions coming from Michael Gottlieb, a partner at Willkie Farr & Gallagher, I became acquainted with the Plaintiffs claims, which I believe I can show are without merit and motivated by allegiances other than to the listed Plaintiffs.

3. I represented Mr. Giuliani before his electronic devices were seized pursuant to search warrants for his home and office in late April 2021. I have continued to represent him since that time.  I am intimately familiar with the devices that were seized and the electronic data subsequently provided to us to review for attorney client privilege reasons.

4. I am submitting this affidavit because I have reviewed a declaration by Michael J. Gottlieb, Esq. of Willkie Farr and Gallagher in support of an application for sanctions that I can demonstrate is misleading at best.

5. In his Affirmation, Mr. Gottlieb referenced a criminal investigation run by the SDNY involving Mr. Giuliani, but conveniently failed to mention that it was resolved in Mr. Giuliani's favor. That is not the only significant omission in Mr. Gottlieb's sworn statement as the rest of this affidavit will reveal. First, let me state that after the Government, be it the FBI or the U. S. Attorney's Office for the Southern District of New York ("SDNY") reviewed 26 years' worth of electronic data, the SDNY, issued an unusual public statement declaring that it was not charging Mr. Giuliani with any violation of federal law. (See, Exhibit A).

6. The search warrants in question, which involved a search of Mr. Giuliani's home and Office called for the seizure of all electronic devices, containing electronic evidence between the dates of August 1, 2018, to December 31, 2019, an eighteen-month period. (See, Exhibit B).

7. The resulting search produced electronic records, according to the Government's electronic discovery vendor "PAE," from February 24, 1995 to the end of April 2021- twenty six years of electronic records.( Exhibit B).

8. Because of the enormity of the records seized and the necessity to review all those records for attorney client privileged materials, we objected to this broad general search and sought to limit the inquiry to the actual time requested by the Government in the search warrant applications, which amounted to 18 months. That application to the issuing Court is attached.(Exhibit B).

9. Mr. Gottlieb writes in his sworn statement that " defense counsel requested that the New York court order the Government to suppress and destroy the majority of records contained in the Trustpoint database and limit any remaining records to a time period between 2018 and 2019." Mr. Gottlieb is clearly misleading this Court into believing that Mr. Giuliani was attempting to destroy records to the detriment of his two clients. The actual request by me, found on page 10 of Exhibit B was : "The Government should only be provided with the non-privileged material for the time period August 1, 2018 to December 31, 2019 and the Government or its vendor, PAE, should be directed to return or destroy the materials outside the parameters of the search warrants." (Exhibit B, p.10).

10. The electronic records that Mr. Gottlieb complains of, have not been in the possession of Mr. Giuliani since their seizure in April 2021. Mr. Giuliani and his counsel have not exercised any control or custody of those records since the date they were seized in April 2021.

11. Allow me to explain how Trustpoint One ("Trustpoint"), Giuliani's electronic records vendor, came to possess the electronic materials they possess.

982074 v 1

12. After the seizure of the electronic devices in April 2021, the FBI turned those devices over to their electronic discovery provider, PAE. The United States Attorney's Office for the Southern District of New York , applied for and was granted a Special Master, Hon. Barbara Jones, a retired U. S. District Court Judge from the SDNY, to review all the documents seized for claims of privilege.

13. PAE performed the extraction of the electronic material from the devices and maintained that material on their Relativity platform. PAE would then provide that material to the Special Master, who had her own Relativity platform at her law firm, Bracewell, LLC.

14. Judge Jones would then contact me and inform me that she wanted us to review whatever portion of the electronic material that she would provide and make preliminary claims of privilege for any electronic document provided. That electronic material would be provided directly from the Special Master to our designated electronic discovery vendor, Trustpoint. Mr. Giuliani and his counsel never had control or custody of the material.

15. Trustpoint would then send me sections of the electronic material, so that I could designate whatever communications I believed were covered by attorney client, work product or executive privilege. Those identified communications would then be sent to Judge Jones for her ruling. If there was a dispute between Judge Jones and myself, the matter would be referred to Judge J. Paul Oetken, the sitting SDNY Judge who had authorized the search warrants. We never needed to have Judge Oetken resolve a dispute.

16. I personally reviewed more than 95 percent of the electronic materials that were provided to the Special Master and then to me to evaluate. Although my memory is not infallible, I do not recall any mention of either Plaintiff in all of the materials that I reviewed.

17. In reviewing the materials, I encountered numerous non-user generated files and what I referred to as computer gibberish. In addition, there were many emails that contained the header with the sender and recipient addresses, but no text in the body of the email. With respect to this material, in September and October of 2021, I made inquiries of the Special Master's electronic discovery people, and they informed me that this was exactly how they received the electronic materials. The Special Master's lawyers informed me that they had made similar inquiries to the Government and that the Government reported that any errors in the production of the electronic data, would have occurred when PAE, the Government vendor, performed their extraction procedure. I have attached some of the contemporaneous communications with the Special Master's office in September and October of 2021. See Exhibit C attached.

18. As a result of that information, you can see that the allegations made by Mr. Gottlieb are false and not based upon any factual material. Mr. Giuliani has not spoliated any electronic evidence. What has been produced is what Mr. Giuliani received from the United States Government. Mr. Giuliani has never possessed the electronic materials since they were seized in April 2021. It was, and is, physically impossible for Mr. Giuliani to have spoliated any of this evidence as Mr. Gottlieb claims.

982074 v 1

19. After the SDNY announced publicly that they were not bringing any charges against Mr. Giuliani following the Government's review of 26 years' worth of electronic evidence (See Exhibit A attached), the FBI returned the devices that they had seized. A review of those devices found that they had been wiped clean by the vendor for the Government.

20. The fact that Mr. Gottlieb may be able to produce third party emails that involve Mr. Giuliani, does not prove that Mr. Giuliani has had any access to those same materials. Mr. Giuliani's electronic discovery vendor Trustpoint, has the material the Government provided to them. That is the only material that Mr. Giuliani could possibly produce.

21. It seems clear that the claims made in this application are a reckless attempt to make headlines with these baseless allegations. It is not surprising, that shortly after the electronic filing for sanctions that CNN published a story claiming far more than the facts alleged in Mr. Gottlieb's affirmation. Someone has been feeding CNN allegations negative to Mr. Giuliani and it certainly has not been Giuliani' s counsel.

22. There was never any attempt to spoliate or destroy evidence from Mr. Giuliani's electronic instruments. In fact, it was physically impossible, because the evidence has always been in the custody of the SDNY and the FBI. The application that I made to Judge Oetken in August of 2021, was designed to limit the Government's inquiry to the time period that they had specified in their application for the search warrants, simply to avoid the incredibly expensive review of twenty-six years' worth of electronic communications to vet them for attorney client privilege claims. That application is attached as Exhibit B. It is standard in these situations to request that the Government EITHER, return or destroy the material that they should not review. There was no way for Mr. Giuliani or I, to know that the Government had apparently corrupted some of the files as they were extracting the data. Likewise, there was no way for Mr. Giuliani or I, to know, that when the devices were returned by the FBI, AFTER they concluded there would be no charges forthcoming, that the actual devices would be wiped clean.

23. In paragraph 3 of Mr. Gottlieb's affirmation, he states that  that Ms. Bobb produced communications with Mr. Giuliani that Mr. Giuliani didn't produce. Therefore, Gottlieb leaps to the conclusion that Giuliani must have concealed or spoliated evidence. He simply has no facts to support that wild conclusion. It is ironic in a case that Mr. Gottlieb claims is based upon the defendant making allegations for which Mr. Gottlieb claims he had no evidence, that Mr. Gottlieb is now exposed for doing that which he complains of. In light of the explanation provided above, this Court can see that Mr. Gottlieb's claim is not based on facts, rather it is rank speculation and does not hold up in light of the evidence that the Government's vendor caused the omissions.

24. In paragraph 4 of Mr. Gottlieb's affirmation,  he states that they obtained a December 13, 2020, email from Defendant Giuliani to Boris Epsteyn which: " reiterates Defendant's false claims about Plaintiffs that: " Georgia has video evidence of 30,000 illegal ballots cast after the observers were removed." "   Note first, that the Plaintiffs in this case were not mentioned, but further note, that when one reviews the citation for this email (ECF-56-7), there is a later email in that same exhibit from Jason Miller that reports: "Statement on hold

until further notice, pending Rudy's talk with the President." In the spirit of lack of candor, Mr. Gottlieb failed to mention that email.

25. In short, there is simply no factual basis for Mr. Gottlieb's allegations of spoliation. It was physically impossible for Rudy Giuliani to do what Mr. Gottlieb swears to.

.

Robert J. Costello

Sworn to before me this 25th day of July, 2023.

Notary Public

OI SI LO
Notary Public, State of New York
No. 01LO5034923
Qualified in Kings County
Commission Expires October 24, 20 26

982074 v 1

EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 14, 2022

**BY ECF**
The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

      Re:    <u>In re Search Warrants dated April 21, 2021, and April 28, 2021</u>, 21-MC-425(JPO)

Dear Judge Oetken:

      The Government writes to notify the Court that the grand jury investigation that led to the issuance of the above-referenced warrants has concluded, and that based on information currently available to the Government, criminal charges are not forthcoming. Accordingly, the Government respectfully requests that the Court terminate the appointment of the Special Master, the Hon. Barbara S. Jones.

                          Respectfully submitted,

                          DAMIAN WILLIAMS
                          United States Attorney for the
                          Southern District of New York

                By:_____/s/_____
                          Rebekah Donaleski
                          Aline R. Flodr
                          Nicolas Roos
                          Hagan Scotten
                          Assistant United States Attorneys
                          (212) 637-2423

Cc: Robert Costello, Esq. / Barry Kamins, Esq. / John M. Leventhal, Esq. / Arthur Aidala, Esq.
    (counsel for Rudolph Giuliani)
    Michael Bowe, Esq./ E. Patrick Gilman, Esq. (counsel for Victoria Toensing)

EXHIBIT B

**DAVIDOFF HUTCHER & CITRON LLP**

ATTORNEYS AT LAW

605 THIRD AVENUE
NEW YORK, NEW YORK 10158

TEL: (212) 557-7200
FAX: (212) 286-1884
WWW.DHCLEGAL.COM

FIRM OFFICES

WHITE PLAINS
ATTORNEYS AT LAW
120 BLOOMINGDALE ROAD
WHITE PLAINS, NY 10605
(914) 381-7400

WEST PALM BEACH
ATTORNEYS AT LAW
1107 NORTH OLIVE AVENUE
WEST PALM BEACH, FL 33401
(561) 567-8488

FIRM OFFICES

ALBANY
ATTORNEYS AT LAW
150 STATE STREET
ALBANY, NY 12207
(518) 465-8230

WASHINGTON, D.C.
ATTORNEYS AT LAW
201 MASSACHUSETTS AVENUE N.E.
WASHINGTON, D.C. 20002
(202) 347-1117

August 27, 2021

WRITER'S DIRECT: (646) 428-3238
E-MAIL: rjc@dhclegal.com

**_VIA EMAIL_**
The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

**CONFIDENTIAL AND FILED
UNDER SEAL**

Re:   <u>In re Search Warrant dated April 21, 2021, 21 Mag. 4335</u>

Dear Judge Oetken:

The massive amount of data that has been turned over to the Special Master and counsel for Giuliani contains twenty-six years' worth of data from February 24, 1995 to July 23, 2021. The temporal limits of the search warrants is the eighteen-month period from August 1, 2018 to December 31, 2019. The Government has informed us that following the privilege review, it intends to review everything contained on the Giuliani devices, i.e. for the twenty-six years from February 24, 1995 to July 23, 2021. We believe that the Government is not authorized to conduct a general search of 26 years' worth of data, which if allowed, will necessitate that the Special Master and counsel for Giuliani will review that enormous amount of

930717.v2

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 2

data for attorney client privilege documents that have nothing to do with the investigation of a FARA violation in 2018 and 2019, that the Government claims to be conducting. It will also result in a tremendous unnecessary cost to Giuliani which can only be viewed as a strategy to bankrupt Giuliani even if they ultimately charge him with anything.

This letter memorandum is submitted in support of Rudolph Giuliani's request that this Court direct the Special Master and counsel for Giuliani to conduct their review of privilege materials only for the period specified in the search warrants, August 1, 2018 to December 31, 2019, and that the Special Master should turn over all non-privileged materials from that time period only, to the United States Attorney for the Southern District of New York. Pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Government's vendor, PAE, who has extracted all of the materials contained on Giuliani's electronic devices, should be directed to return or destroy all materials that predate August 1, 2018 and that post-date December 31, 2019.

This issue arises because the U.S. Attorney's Office has informed counsel for Giuliani that it intends to have its Investigative Team examine everything that was found on the electronic devices that was not deemed privileged or otherwise protected by the Special Master and this Court. The Government has made clear that

930717.v2

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 3

it does not believe it is constrained by the temporal limitations set forth in the search

warrants, August 1, 2018 to December 31, 2019.

Our position is that the provision in the search warrants, ("if necessary"

provision), which would allow the Government to review all of the ESI, only applies

to the 18-month time period specified in the search warrants. That provision allows

the Government to determine all responsive documents within the time period

specified by the warrants and it is not a carte blanche invitation to review everything

captured in that 26 year period. We believe that the Government's erroneous

interpretation would, in its application, turn these search warrants into general

warrants prohibited by the Fourth Amendment to the U. S. Constitution. The

Government's confusion results from their treating the electronic devices themselves

as the evidence, rather than the temporally limited subset of data that is contained on

the electronic devices, which actually constitutes the evidence.

This application is not a challenge to the search warrants issued. We attempted

to resolve this dispute without the Court's intervention, but the Government has

refused to abide by the temporal limitations of the search warrants.[1] We need a Court

---

[1] On June 22, 2021, A.U.S.A. Nicolas Roos responded to counsel for Giuliani's request for a clarification
of the Government's position:

"Bob,

930717.v2

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 4

direction to the Special Master and counsel for Giuliani to only engage in a review
of the 18-month period specified in the warrants for privileged material and that
there is no need to review the 23 plus years of material outside the search warrant
dates for issues of privilege.

Following the privilege review, the only material or data that should be
released to the Government is that data within the search warrant dates. The
Government is entitled to review all of that material for responsiveness. By our
request for direction to the Special Master and counsel, we are not seeking to block
Government access to relevant materials. After the Government reviews the material
within the dates of the search warrants, if they believe that there is a need for
additional inquiry, the Government can: (1.) seek an additional search warrant; (2.)

---

Thanks very much for running this by us, and we appreciate your efforts to resolve this question without
litigation. As it seems we can't come to an agreement on this, we agree that the appropriate course is for
you to make an application to Judge Oetken.

The Government's position is that the Special Master has been appointed for the limited purpose of
reviewing the seized materials for privilege, and anything determined not to be privileged should be
released to the investigative team of AUSAs and FBI agents. Federal Rule of Criminal Procedure 41 and
the search warrants authorize the Government to review all the materials released by the Special Master
and then mark "responsive" the subset of materials that is covered by the warrant. The temporal limitation
is part of that responsiveness review. In other words, The Government is not "constrained" by the temporal
limitation from reviewing the materials seized pursuant to the warrants, but is "constrained" by the terms
of the warrant from marking items "responsive" if they fall outside the time-limited period or are not
covered in the items listed in the warrant rider. The Government's view is informed by Rule 41, which
permits such a review, and case law rejecting attempts at ex ante limitations on the scope of review. We
also believe that, as a result of technical issues relating to how the data are time-stamped, imposing a
temporal limitation without any review will result in technical errors such as potentially responsive data not
being included."

930717.v2

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 5

issue a grand jury subpoena duces tecum or (3.) simply request counsel for Giuliani

to voluntarily produce that which they seek.[2]

The investigation being conducted by the Government is alleged by them to

be in search of a possible FARA violation involving Ukrainian individuals,

Ambassador Maria Yovanovitch and the office of the U.S. Ambassador to the

Ukraine; a trip by Giuliani to Poland in 2019 and issues involving Franklin

Templeton and funds misappropriated from the Ukraine. Simply stated nothing

relating to those individuals and events occurred prior to August 1, 2018, which is

why the Government put that date in the search warrants and presumably supported

that date selection in the affidavit or affidavits in support of that search warrant

application. The absurdity of the Government's position is best illustrated by noting

that Rudy Giuliani was Mayor of the City of New York from 1994 to 2001. Does

the Government really believe that it is entitled to review records of then Mayor

Giuliani to see if there was a violation of FARA in 2018 or 2019?[3]

---

[2] Our request seeks to avoid prohibitively expensive search for privileged matters well outside the relevant dates  specified in the search warrants.  Surely no Court would authorize a search for 23 plus years of irrelevant information as the Government would now have us do.

[3] To put this into perspective so this Court can see the absurdity of the Government's entitlement belief, we share some statistical evidence provided to us by Trustpoint. While, Trustpoint, is still loading the enormous amount of data delivered to them by the Government's vendor, PAE, covering everything discovered on the devices without regard to any time limitations, they report that they have seen email data from as early as February 24, 1995 and as late as July 23, 2021. Recognizing that Trustpoint has not yet completed loading all of the data received, they report that they have processed and loaded 285,076 files of which only 527

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 6

The warrants in question involve searches of the home and office of the then personal attorney to the President of the United States; the former Mayor of the City of New York and the United States Attorney for the Southern District of New York. Since these are searches of a lawyer's home and office, care must be taken to avoid intruding upon the attorney client and work product privileges of clients who shall remain nameless, in addition to the attorney client privilege, work product privilege and executive privilege of the President of the United States, Donald Trump.

Both the Special Master and counsel for Giuliani need guidance as to what materials they need to review for the purpose of claiming privilege. Are we to review the less than one percent of the data that relates to the time period specified in the search warrants or must we wade through the 99% of the data that has no conceivable relevance to the investigation just to ethically protect the attorney client privilege of unnamed clients. .[4]

---

are within the date range specified in the search warrants. That means only .00184 percent of the files are from the relevant time period. Basically, two tenths of one percent of the data being dumped on the Special Master and counsel for Giuliani concern the date limitations in the search warrants, yet the Government seeks to mandate that the Special Master and counsel for Giuliani are required to search that none relevant 99.9% of the data for privilege issues.

[4] Our expert, Trustpoint.One ("Trustpoint"), has made it clear that segregating the data from that time period contained in the warrants is a relatively easy task. Trustpoint has also informed us that 99.9 % of the data provided relates to time periods outside of the 18-month period specified in the search warrants. Specifically, they advised that of the 285,076 files they have loaded, only 527 are within the 18-month period specified in the search warrants. That is .00184 percent.

930717.v2

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 7

The Special Master and counsel for Giuliani are faced with a data dump for 23 years before the start date in the subpoenas and 19 months after the end of the subpoenas. Without this Court's direction, we will be forced to expend countless hours and enormous expense reviewing records outside the scope of the warrants to protect attorney client privileges and work product privileges for clients who have nothing to do with this investigation. That procedure, which the Government admits it is going to deploy, will result in turning the particularized search warrants into prohibited general search warrants.

It is not a legitimate tactic of Government to put Giuliani and his counsel through this very expensive and time- consuming search to satisfy Giuliani's ethical obligation to protect the rights of unnamed clients. Those unnamed clients have nothing to do with anything legitimately being investigated. As demonstrated in the affidavit of Trustpoint, it is an easy process for the experts to segregate all of the material found on the devices between the dates initially selected by the U.S. Attorney and then approved by this Court in the probable cause determination made when the warrants were authorized. Absent a mandate from this Court, the Government will treat this as a general search warrant and literally rummage through everything on Rudy Giuliani's devices for the past twenty-six years.

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 8

## THE GOVERNMENT'S INVESTIGATION

In April of 2021, the Government sought search warrants for the electronic devices of Rudolph Giuliani to obtain the same records they had sought in a covert warrant eighteen months earlier. The records sought were communications between Giuliani and 12 identified individuals during the period August 1, 2018 to December 31, 2019 seeking evidence that would establish a violation of the Foreign Agents Registration Act ("FARA"). This was essentially the same time period of communications sought in the first "covert" search warrant. The Government simply moved the starting date from May 1 to August 1, 2018 and extended the end date to the end of the year, December 31, 2019. The information the Government sought was essentially the same as it had previously sought in the "covert" warrant whose existence was kept from Giuliani, his counsel and President Trump for over 18 months, and only revealed after the execution of the current overt search warrants at the end of April 2021.

In this proceeding, we are not concerned with the "covert" warrant, only the overt warrants issued and executed on Rudolph Giuliani's apartment, office and personally.

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 9

## PRIVILEGE REVIEW BY THE SPECIAL MASTER

This Court, at the urging of both the Government and counsel for Giuliani, appointed a Special Master, Hon. Barbara Jones (Ret.), to make initial rulings on issues of attorney client privilege, work product privilege and executive privilege, as Giuliani was, during the time period specified in the search warrants, an attorney at law in the State of New York, who represented and advised private citizen clients as well as Donald Trump, the then President of the United States.

Search warrants for lawyers' offices and residences are frowned upon, even by the Justice Department Manual. Special permission must be sought and granted by Main Justice before a United States Attorney is authorized to seek Court approval of a search warrant for the offices or home of an attorney. Even then, the Government is advised to use the least intrusive means possible to obtain the information in question. These safeguards are necessary to protect the attorney client privileges of clients who have nothing to do with the matter that is under investigation.[5] If caution and limitations were ever to be required, this is the case. If limitations were placed upon the conduct of the Government in executing the search warrants issued, this is

---

[5] In this instance, the attorney in quest, Rudolph W. Giuliani, was the former Associate Attorney General of the United States of America; the United States attorney for the Southern District of New York; the former Mayor of the City of New York and the then personal lawyer to the President of the United States.

930717.v2

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 10

the case in which they should  be scrupulously adhered to.

The Government's stated intention that it intends to rummage through everything that they have extracted from the devices without any limitation requires a Court response to direct what the Special Master and counsel for Giuliani are expected to do before the Government gains access to the data. The Government's stated intention  would convert the search warrants into general warrants prohibited by the Fourth Amendment.  The Government should only be provided with the non-privileged material for the time period August 1, 2018 to December 31, 2019 and the Government and or its vendor, PAE, should be directed to return or destroy the material outside the parameters of the search warrants.

**THE APRIL 2021 WARRANTS**

On April 21, 2021, this Court (U.S.D.J., J.Paul Oetken) issued search warrants for the premises of Rudolph W. Giuliani , located at 45 East 66th Street, Unit 10 W, New York New York, as well as the Office of Rudolph W. Giuliani located at 445 Park Avenue, New York New York and the person of Rudolph Giuliani. The warrants sought evidence, located on Giuliani's electronic devices, during the time period from August 1, 2018 to December 31, 2019 relating to an alleged violation of the Foreign Agents Registration Act ("FARA") statute, 22 U.S.C. Sections 612

930717.v2

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 11

and 618; attempting to and causing a violation of those statutes, 18 U.S.C., Section

2; and Conspiracy to violate the foregoing statutes, 18.U.S.C. Section 371. This

Court found probable cause to search and seize the person or property for any and

all electronic devices and then following the seizure of those devices, the warrants

authorized the Government or its agents "and outside technical experts … are

authorized to review the ESI" (Electronically Stored Information) "for evidence and

instrumentalities of (the crimes specified above) FOR THE TIME PERIOD

AUGUST 1, 2018, UP TO AND INCLUDING DECEMBER 31, 2019" (emphasis

added) for: (1.) evidence, including but not limited to communications with or

regarding 12 identified individuals; or (2.) evidence relating to Marie Yovanovitch

and the position of U.S. Ambassador to Ukraine, including but not limited to any

communications with any U.S. Government officials or employee regarding

Yovanovitch or the position of U.S. Ambassador to Ukraine, (3.) retainer agreements

with any Ukrainian governmental entity official or national including but not limited

to Lutsenko or (4.) evidence of any work or potential work concerning Franklin

Templeton or the recovery of assets stolen from the Ukraine; (5.) evidence relating

to a trip by Rudolph Giuliani to Poland in February 2019 or (6.) any evidence of

knowledge of the FARA laws or lobbying including, but not limited, to knowledge

of the requirement to register as an agent of a foreign principal, or of the prohibition

930717.v2

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 12

of acting on behalf of, lobbying for, or making contributions on behalf of a foreign

principal.

The search warrants "authorized the review of the ESI contained therein that

was sent, received, posted, created, or otherwise accessed, established, modified, or

deleted BETWEEN THE TIME PERIOD AUGUST 1, 2018 AND DECEMBER 31,

2019 for information responsive to the warrant." (emphasis added).

Additionally, the warrant provided: "Law enforcement personnel will make

reasonable efforts to search only for files, documents, or other electronically stored

information WITHIN THE CATEGORIES IDENTIFIED IN SECTION III B OF

THIS ATTACHMENT. However, law enforcement personnel are authorized to

conduct a complete review of all the ESI from seized devices or storage media IF

NECESSARY TO EVALUATE ITS CONTENTS AND TO LOCATE ALL DATA

RESPONSIVE TO THE WARRANT." (Emphasis added).

The Government has made it clear in emails to counsel for Giuliani that,

relying on the last ("IF NECESSARY") phrase contained above, it does not believe

it is under any limitations as to what it may review after the privilege issues are

decided following the Special Master's review and determination of privilege issues

raised by counsel for Giuliani. Necessarily, this means counsel for Giuliani and the

930717.v2

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 13

Special Master must review everything pre and post the temporal limitations in the warrant.

The Government will claim that this general search of the ESI that they propose to conduct, is necessary to evaluate its contents and locate all data responsive to the warrant. This argument is sophistry designed to allow the Government to search everything when the search warrants are clear that the Government can only search the ESI found between the dates of August 1, 2018 and December 31, 2019. The Government is entitled seize all the ESI between those dates in the search warrant, but to determine 'responsiveness" the "if necessary "clause allows the Government to review all ESI within the time period to establish responsiveness. Any other interpretation would render the date limitations meaningless and would convert these search warrants into prohibited general search warrants. The "if necessary" clause  is not an excuse to simply ignore the temporal limitations that the Government themselves proposed  and this Court accepted, for the search warrants. s. The Government could have chosen any other dates that they could supply probable cause for, but these are the dates they selected, and this is the data they should be limited to reviewing.

Counsel for Giuliani has no problem with or objection to the Government reviewing everything within those time periods and if they discover evidence that

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 14

establishes probable cause to believe there may be additional relevant documents outside that time period they will be free to seek a search warrant or simply serve a subpoena duces tecum for that material.

This argument expected to be made by the Government in light of A.U.S.A. Nicolas Roos' email is sophistry designed to allow the Government to review everything that it seized, which in this case means reviewing 23 1/3 years of private and privileged information that is protected from general search warrants by the United States Constitution.

## ARGUMENT

## POINT I

### The Government Should Not Be Permitted to Access Data Outside the Temporal Limitations Contained in the Search Warrants

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. see *United States v. Grubbs*, 547 U.S. 90, 97 (2006). As this Court noted in *United States v. Zemlyansky,* 945 F.Supp.2d 438 (S.D.N.Y ., 2013) (Oetken, J.): "this requirement traces directly back to the Framers' experience of tyranny before this Nation's founding".

930717.v2

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 15

The Fourth Amendment to the Constitution was a direct result of the opposition to the English Crown's use of general warrants. The particularity requirement of the Fourth Amendment "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison,* 480 U.S. 79, 84, (1987). The idea behind the "particularity" requirement was to prevent "general searches, preventing the seizure of objects upon the mistaken assumption that they fall within the magistrate's authorization…" *United States v. Young,* 745 F.2d 733,759 (2d Cir. 1984). In the Second Circuit, to be sufficiently particular, a warrant must satisfy three elements. First, "a warrant must identify the specific offense for which the police have established probable cause." *United States v. Galpin*, 720 F.3d 436,445 (2d Cir. 2013). Second, "a warrant must describe the place to be searched." Third, the warrant must specify the items to be seized by their relation to the designated crimes. *Id.*at 446. Describing with particularity the "things to be seized" has two distinct elements. See *United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999). First, the warrant must describe the things to be seized with sufficiently precise language so that it tells the officers how to separate the items properly subject to seizure from irrelevant items. This requirement prevents a "general, exploratory rummaging in a person's belongings," *Coolidge v. New*

930717.v2

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 16

*Hampshire,* 403 U.S. 443, 467, (1971) and it "makes general searches ... impossible

and prevents the seizure of one thing under a warrant describing another. With regard

"to what is be taken, nothing is left to the discretion of the officer executing the

warrant." *Stanford v. Texas*, 379 U.S. 476,485 (1965); *Marron v. United States*, 275

U.S. 192, 296 (1927) . Second, the description of the things to be seized should be

limited to the scope of the probable cause established in the warrant. See *In re Grand*

*Jury Investigation Concerning Solid State Devices, Inc.,* 130 F.3d 853, 857 (9th Cir.

1997). Many courts "have found warrants for the seizure of [business] records

constitutionally deficient where they imposed too wide a time frame or failed to

include one altogether. *United States v. Cohan*, 628 F.Supp.2d 355,365-66

(E.D.N.Y. 2009). *See also, United States v. Levy,* 2013 WL 664712 (S.D.N.Y. 2013)

("Several courts in this Circuit have recognized the constitutional questions that are

raised by the lack of a specific date range in a warrant for documentary records and

warned the Government to include one when possible."). Likewise, in *United States*

*v. Hernandez*, 2010 WL 26544 (S.D.N.Y. 2010), the court stated that "a failure to

indicate a time frame could render a warrant constitutionally overbroad because it

could allow the seizure of records dating back arbitrarily far and untethered to the

scope of the affidavit which ostensibly provided probable cause." In *Zemlyansky,*

*id.* this very court recognized the importance of temporal or date limitations because

930717.v2

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 17

it found that the absence of such limitations reinforced the court's conclusion that

the [warrant] functioned as a general warrant. *Id.* at 459-60.

　　This particular warrant, authorized by this court, did indeed specify the crimes

being investigated and the temporal limits of the search warrant. This request for

intervention and direction to the Special Master and counsel for Giuliani is

necessitated because the Government announced its intention to disregard the

temporal limits and treat them as if they were not there. That decision by the

Government will effectively turn this into a prohibited general warrant. All of the

previously cited cases, considered together, forbid agents from obtaining "general

warrants" and instead require agents to conduct narrow seizures that attempt to

"minimize[] unwarranted intrusions upon privacy." *Andresen v. Maryland*, 427 U.S.

463, 482 n.11 (1976). Here the warrants were sought in compliance with the law,

but the Government intends in effectuating the seizures to disregard the temporal

restrictions, therefore requiring counsel for Giuliani and the Special Master to sort

through 23 years of irrelevant data in order to protect attorney client privileges of

old clients.

　　In this case, the agents were authorized to seize data (that was contained in

Giuliani's electronic devices) that was defined as existing between the dates of

August 1, 2018 and December 31, 2019 and which data fit into certain categories

930717.v2

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 18

specified in the warrants, namely communications concerning a possible FARA violation between Giuliani and twelve specified individuals; communications involving retainer agreements between Giuliani and Ukrainian citizens; communications regarding Ambassador Yovanovitch or the office of the U.S. Ambassador to the Ukraine; a Giuliani trip to Poland in 2019; or dealings with Franklin Templeton seeking the return of assets from the Ukraine.

The data and information sought was believed to be contained in various electronic devices (computers and cell phones) in the possession of Rudolph Giuliani or in his home or office. The computer is "evidence" only to the extent that some of the data it stores is evidence. See *United States v. Giberson*, 527 F.3d 882, 887 (9th Cir. 2008) ("Computers, like briefcases and cassette tapes, can be repositories for documents and records."). When probable cause to search relates in whole or in part to information stored on the computer, rather than to the computer itself, the warrant should identify that information with particularity, focusing on the content of the relevant files rather than on the storage devices which may happen to contain them. See, e.g., *United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009) (stating that the ability of a computer to store "a huge array" of information "makes the particularity requirement that much more important"); *United States v. Vilar*, 2007 WL 1075041, at *36 (S.D.N.Y. 2007) ("underlying information must be identified

930717.v2

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 19

with particularity and its seizure independently supported by probable cause");

*United States v. Carey*, 172 F.3d 1268, 1275 (10th Cir. 1999) (stating that a warrant

to seize evidence stored on a computer should specify "which type of files are

sought"). Failure to focus on the relevant files may lead to a Fourth Amendment

violation. For example, in *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir.

2005), which involved an investigation into harassing phone calls, the court held that

a warrant authorizing seizure of all storage media and "not limited to any particular

files" violated the Fourth Amendment. Agents should be particularly careful when

seeking authority to seize a broad class of information. This sometimes occurs when

agents plan to search computers at a business. See, e.g. *United States v. Leary and

F.L. Kleinberg & Co.*, 846 F.2d 592, 600-04 (10th Cir. 1988). Agents cannot simply

request permission to seize "all records" from an operating business unless agents

have probable cause to believe that the criminal activity under investigation pervades

the entire business. See *United States v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999)

(citing cases); *In re Grand Jury Investigation Concerning Solid State Devices, Inc.*,

130 F.3d 853, 857 (9th Cir. 1997). A similarly dangerous phrase, "any and all data,

including but not limited to" a list of items, has been held to turn a computer search

warrant into an unconstitutional general warrant. *United States v. Fleet Management

Ltd.*, 521 F. Supp. 2d 436, 443-44 (E.D. Pa. 2007); see also *Otero*, 563 F.3d at 1132

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 20

(warrant authorizing seizure of "any and all information and/or data" fails the particularity requirement). Instead, the description of the files to be seized should be limited. As the Second Circuit noted in *United States v. George*, 975 F.2d 72, 74 (2d Cir. 1992): "Because everyone has some kind of secret or other, most people are anxious that their personal privacy be respected. For that very human reason the general warrant, permitting police to ransack one's personal belongings, has long been considered abhorrent to fundamental notions of privacy and liberty." In this case, the agents were authorized to seize certain specified data from a specific time period that was contained on the devices in question. The authorization was for specific data from a specific time period. The fact that the data authorized was contained on devices which held data for an additional 23 plus years does not authorize the agents to review that private data. To claim otherwise, as the Government seemingly does here, is the same as claiming that the search warrants issued are general search warrants which allow the Government to rummage through everything contained in the electronic devices. Certainly, this is not what this Court authorized. Courts impose these particularity requirements so as to not "leave to the unguided discretion of the officers executing  the warrant the decision as to what items may be seized." *United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990).

930717.v2

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 21

As part of the particularization requirement for search warrants, courts have said that the time frame of the records involved should be listed when known. See, e.g., *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (invalidating warrant for failure to name the crime or limit seizure to documents authored during time frame under investigation); *United States v. Ford*, 184 F.3d 566, 576 (Failure to limit broad descriptive terms by relevant dates, when such dates are available, will render a warrant overbroad) citing *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir.1982); *United States v. Abrams*, 615 F.2d 541, 545 (1st Cir.1980)("A time frame should also have been incorporated into the warrant").

That is not the case here, this Court issued these warrants based upon affidavits and evidence presented by the Government, which authorized a search for data between certain dates. The problem here is that the Government now wants to ignore those dates  and leave it to their investigative agents to review whatever they want from the devices they seized. Physical possession of the Giuliani devices does not give the Government license to search everything on those devices. The evidence is not the devices, it is the data, and the search warrants place restrictions on what data can be seized and reviewed by the government. Under these circumstances, if the Government had left out the dates in their application to this Court, as they want to do now in the execution of the warrants, those warrants would be struck down as

930717.v2

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 22

unconstitutional and the evidence suppressed. It is particularly important in the current situation, where we are dealing with the private and business records of the attorney for the then sitting President of the United States, that the limitations imposed by the search warrants have meaning. This is not the occasion to excuse a planned rummaging of an attorney's records. Nor is it even remotely proper for the Government to impose this enormous expense on Giuliani to prevent the Government from rummaging through the records of clients over a 26-year period, who have nothing remotely to do with this purported FARA investigation.

### <u>Conclusion</u>

Although a temporal limitation is not always a necessity, here, the Government acknowledged the need for temporal particularity, and limited the warrant accordingly. Therefore, it is obvious that the Government's request to search the seized devices for documents outside of the time requested should be denied. The Government sought emails and texts seized from devices during a specific time period during which this Court found there to be probable cause to believe that evidence of certain crimes might be contained therein. The Government now wishes to search, look at and inspect emails and texts that antedate August 1, 2018 and postdate December 31, 2019. This should not be permitted. This runs counter to the particularity and constitutional requirement presently contained within the search

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
August 27, 2021
Page 23

warrant. The Government is seeking to search and inspect every email and text in

the devices seized contrary to the dictates of their application and what the search

warrant provides. The Government improperly seeks to convert an otherwise

purportedly proper search warrant into an unconstitutional general and overbroad

search of items beyond the scope of the warrant, and in fact, beyond the scope of the

time period that the Government requested.

Respectfully submitted,

DAVIDOFF HUTCHER & CITRON LLP

/s/ Robert J. Costello
Robert J. Costello (RC-8301)
*Counsel for Rudolph Giuliani*
605 Third Avenue
New York , New York 10158
Tel: (212) 557-7200

AIDALA, BERTUNA &KAMINS, PC
Hon. John M. Leventhal (Ret.)
Michael Jaccarino

*Co-Counsel for Rudolph Giuliani*
545 Fifth Avenue
New York, New York 10036
Tel: (212) 486-0011

cc: AUSA Rebekah Doneleski
    AUSA Nicolas Roos
    AUSA Aline Flodr

930717.v2

EXHIBIT C

**Costello, Robert J.**

| | |
|---|---|
| **From:** | Costello, Robert J. |
| **Sent:** | Wednesday, July 12, 2023 3:07 PM |
| **To:** | Costello, Robert J. |
| **Subject:** | FW: First 7 Giuliani devices |

-----Original Message-----
From: Judge Barry Kamins <judgekamins@aidalalaw.com>
Sent: Thursday, September 30, 2021 2:57 PM
To: Costello, Robert J. <rjc@dhclegal.com>
Cc: Rudy Giuliani <TruthandJustice4U@protonmail.com>; John Leventhal
<judgeleventhal@aidalalaw.com>; Arthur Aidala <arthur@aidalalaw.com>; Michael Jaccarino
<jaccarino@aidalalaw.com>
Subject: Re: First 7 Giuliani devices

CAUTION: EXTERNAL MAIL. DO NOT CLICK ON LINKS OR OPEN ATTACHMENTS
YOU DO NOT TRUST

Thanks very much

> On Sep 30, 2021, at 2:48 PM, Costello, Robert J. <rjc@dhclegal.com> wrote:
>
>     We had our Zoom conference this morning with Judge Jones, David Shargel, the Special
Master's expert and our Trustpoint Team ( Anand DaHarry, Warren Parrino and Jaclyn
Schoen).
>     It went very well for us. Shargel did most of the speaking for the Special Master's team and
admitted that their expert was coming up with the same info.  The bottom line of which is that
there is virtually No User Created Info on the first seven devices.  The screen shots of data we
observed was non- readable non user created data which is clearly non- responsive and so we
shouldn't raise any objections to it being turned over to the Government.
>     Additionally we are getting the Special Master to go to the Government and its vendor to
see if they can eliminate all of the non- user created data from the 9 remaining devices to make
our future work more manageable.  The Special Master's office will contact me later today or
tomorrow with an update after they speak to the SDNY.
>                    Bob Costello
>
> Sent from my iPhone
>
>
> IMPORTANT NOTICE: Beware of Cyber Fraud. You should NEVER wire money

1

**Costello, Robert J.**

| | |
|---|---|
| **From:** | Costello, Robert J. |
| **Sent:** | Wednesday, July 12, 2023 3:06 PM |
| **To:** | Costello, Robert J. |
| **Subject:** | FW: Giuliani Devices Update |

**From:** Costello, Robert J.
**Sent:** Friday, October 1, 2021 6:26 PM
**To:** John Leventhal <judgeleventhal@aidalalaw.com>; Judge Barry Kamins <judgekamins@aidalalaw.com>; Arthur Aidala <arthur@aidalalaw.com>; Michael Jaccarino <jaccarino@aidalalaw.com>
**Subject:** Fwd: Giuliani Devices Update

FYI

Sent from my iPhone

Begin forwarded message:

> **From:** "Shargel, David" <david.shargel@bracewell.com>
> **Date:** October 1, 2021 at 4:18:42 PM EDT
> **To:** "Costello, Robert J." <rjc@dhclegal.com>, Anand.DaHarry@trustpoint.one, warren.parrino@trustpoint.one, Jaclyn.Schoen@trustpoint.one
> **Cc:** "Jones, Barbara" <barbara.jones@bracewell.com>, "Maxwell, Rita" <rita.maxwell@bracewell.com>, Katie Peloquin <kpeloquin@cdslegal.com>
> **Subject: Giuliani Devices Update**
>
> CAUTION: EXTERNAL MAIL. DO NOT CLICK ON LINKS OR OPEN ATTACHMENTS YOU DO NOT TRUST
>
> All,
>
> To follow up on our video conference, we've spoken with the government about the issues you raised. They are going to investigate the .jpeg files that cannot be viewed, and are looking into the missing email/text body issue. We are also looking at ways to better segregate the unreadable "computer files" on the larger devices. We will get back to you with more information, but in the meantime ask that you continue with the review of the first seven devices, setting aside for now the .jpegs on 1B07.
>
> Thanks,
> Dave
>
>
> **DAVID A. SHARGEL**
> Partner
> david.shargel@bracewell.com | download v-card
> T: +1.212.508.6154 | F: +1.800.404.3970 | M: +1.917.346.4049
>
> **BRACEWELL LLP**

**Costello, Robert J.**

| | |
|---|---|
| **From:** | Costello, Robert J. |
| **Sent:** | Wednesday, July 12, 2023 2:45 PM |
| **To:** | Costello, Robert J. |
| **Subject:** | FW: In re Search Warrants Executed on April 28, 2021 (21-mc-425) |

**From:** Costello, Robert J.
**Sent:** Wednesday, September 15, 2021 2:48 PM
**To:** 'Anand DaHarry' <Anand.DaHarry@trustpoint.one>
**Subject:** FW: In re Search Warrants Executed on April 28, 2021 (21-mc-425)

Anand,

The first full paragraph of Judge Jones letter identifies the problem; 25,000 of 64,000 emails, texts, chats and voicemails all contain the same July 23, 2021 date which is almost three months after the devices were seized on April 30, 2021. That means that 39.1 % have the wrong metadata date, they likely have the "last modified "date which means that the Government Vendor PAE improperly accessed the data thereby giving it the last modified date.

I need a statement from Trustpoint that the error of providing a last modified date was committed by the Government's vendor. It would be nice if we can say that we can use other means to identify the date range of the data so that we can limit the search to the dates contained in the search warrants. We should also add that the Government Agent's screw up should not be used as an excuse by the Government to expand their search beyond the 18 month period specified in the search warrants. We need a statement like that to combat the last two sentences in the first full paragraph that begin with "A cursory review…."

Bo

b

**From:** Costello, Robert J.
**Sent:** Thursday, September 2, 2021 11:30 AM
**To:** 'Anand.DaHarry@trustpoint.one' <Anand.DaHarry@trustpoint.one>
**Subject:** FW: In re Search Warrants Executed on April 28, 2021 (21-mc-425)

Anand,

PLEASE FORWARD THIS TO YOUR TEAM. I need information to respond.

Bob Costello

**From:** Jones, Barbara <barbara.jones@bracewell.com>
**Sent:** Thursday, September 2, 2021 11:19 AM
**To:** Roos, Nicolas (USANYS) <Nicolas.Roos@usdoj.gov>; Flodr, Aline (USANYS) <Aline.Flodr@usdoj.gov>; Hagan.Scotten@usdoj.gov; Costello, Robert J. <rjc@dhclegal.com>; judgeleventhal@aidalalaw.com; aidalaesq@aidalalaw.com; jaccarino@aidalalaw.com; Bowe, Michael J <MBowe@brownrudnick.com>; Gilman, E. Patrick

1

<PGilman@brownrudnick.com>
**Cc:** Kokalas, Tom <thomas.kokalas@bracewell.com>; Shargel, David <david.shargel@bracewell.com>; Maxwell, Rita <rita.maxwell@bracewell.com>
**Subject:** In re Search Warrants Executed on April 28, 2021 (21-mc-425)

**CAUTION: EXTERNAL MAIL. DO NOT CLICK ON LINKS OR OPEN ATTACHMENTS YOU DO NOT TRUST**

Dear Counsel:

I write to provide the parties with additional information concerning the issues raised by Mr. Costello's letter to Judge Oetken, dated August 27, 2021, regarding the temporal limits of the Special Master review.

I understand Mr. Costello's letter to propose a date range limitation created with metadata fields.  As explained below, I do not believe that is a workable plan.

While I have not yet conducted any review of the substance of the seized materials, we have analyzed date information for documents contained on Mr. Giuliani's two iPhones, several iPads, and an iMac desktop computer. There are approximately 64,000 emails, text messages, chats, and voicemails on these devices.  Our analysis shows that for more than 25,000 of these 64,000 documents, the metadata date is July 2021. This metadata date cannot accurately reflect the actual date of the communication, because the metadata date is after the date the devices were seized by the Government.  These documents appear to have been assigned a "last modified" date, likely based on the date they were extracted by the Government's vendor. A cursory review of a small sample of these 25,000 documents showed that some of these documents were sent or received within the warrant period. We believe that a metadata date range limitation would exclude these documents and others like them.

I also wish to provide a more general update on the status of the documents.  There are more than 3.2 million documents contained on the devices listed above.   I believe that the vast majority of the documents are system files, not user-created files. As noted above, only 64,000 are emails, text messages, chats and voicemails.  Though our vendor is continuing to load data from additional devices received from the government, our initial analysis confirms Mr. Costello's assertion that the emails and chats contained within the dataset are dated between 1995 and July of 2021. I note, however, that there are only approximately 100 emails and chats between 1995 and 2003, and that the bulk of the data is dated 2010 and later.

If after receiving this information, the parties would like to have a conference to discuss these issues, please let me know.

Best,
Barbara Jones

**HON. BARBARA JONES (RET.)**
Partner
barbara.jones@bracewell.com | download v-card
T: +1.212.508.6105 | F: +1.800.404.3970 | M: +1.917.273.2292

**BRACEWELL LLP**

1251 Avenue of the Americas, 49th Floor | New York, NY | 10020-1100
bracewell.com | profile | LinkedIn | Twitter

CONFIDENTIALITY STATEMENT
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**Costello, Robert J.**

---

| | |
|---|---|
| **From:** | Costello, Robert J. |
| **Sent:** | Wednesday, July 12, 2023 3:02 PM |
| **To:** | Costello, Robert J. |
| **Subject:** | FW: In re Search Warrants Executed on April 28, 2021 (21-mc-425): Continuing Review |

**From:** Costello, Robert J.
**Sent:** Tuesday, October 19, 2021 6:03 PM
**To:** Rudy Giuliani <TruthandJustice4U@protonmail.com>
**Subject:** Fwd: In re Search Warrants Executed on April 28, 2021 (21-mc-425): Continuing Review

    The next device to be reviewed is 1B 05A
which is your iPhone 11. Barbara Jones says
There are 25,481 items within the time frame
Of January 1,2018 to April 28, 2021.

Sent from my iPhone

Begin forwarded message:

> **From:** "Shargel, David" <david.shargel@bracewell.com>
> **Date:** October 18, 2021 at 5:12:02 PM EDT
> **To:** "Costello, Robert J." <rjc@dhclegal.com>
> **Cc:** "Jones, Barbara" <barbara.jones@bracewell.com>, "Maxwell, Rita" <rita.maxwell@bracewell.com>,
> "Kokalas, Tom" <thomas.kokalas@bracewell.com>, John Leventhal <judgeleventhal@aidalalaw.com>,
> aidalaesq@aidalalaw.com, Michael Jaccarino <jaccarino@aidalalaw.com>,
> Anand.DaHarry@trustpoint.one, Jaclyn.Schoen@trustpoint.one
> **Subject: In re Search Warrants Executed on April 28, 2021 (21-mc-425): Continuing Review**
>
> CAUTION: EXTERNAL MAIL. DO NOT CLICK ON LINKS OR OPEN ATTACHMENTS YOU DO NOT TRUST
>
> Dear Mr. Costello,
>
> I am writing on behalf of Judge Jones with instructions for your ongoing review of seized materials.
> While we continue to consider issues surrounding the large quantities of unreadable computer files,
> Judge Jones would like you to review the chats, messages and emails contained on Mr. Giuliani's iPhone
> device labeled 1B05. These total 25,481 items within the Court-ordered timeframe. Below you will find
> the search methodology that Trustpoint should use to locate these files. It is our expectation that these
> documents can be reviewed quickly, given that many are very short, and others – as you've pointed out
> previously – contain no "body" text. We have asked the Government why many messages do not
> contain bodies, and their understanding is that this is the way the iPhone stores backup data.
>
> Judge Jones asks that you complete the review of these materials no later than November 1, 2021.
>
> Please let us know if you have any questions.



**DAVID A. SHARGEL**
Partner
david.shargel@bracewell.com | download v-card
T: +1.212.508.6154 | F: +1.800.404.3970 | M: +1.917.346.4049

**BRACEWELL LLP**
1251 Avenue of the Americas, 49th Floor | New York, NY | 10020-1100
bracewell.com | profile | LinkedIn | Twitter

CONFIDENTIALITY STATEMENT
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**Costello, Robert J.**

---

**From:** Costello, Robert J.
**Sent:** Wednesday, July 12, 2023 3:01 PM
**To:** Costello, Robert J.
**Subject:** FW: Data Review

**From:** Costello, Robert J.
**Sent:** Thursday, October 21, 2021 11:12 AM
**To:** Jones, Barbara <barbara.jones@bracewell.com>; Shargel, David <david.shargel@bracewell.com>; Maxwell, Rita <rita.maxwell@bracewell.com>
**Cc:** judgeleventhal@aidalalaw.com; judgekamins@aidalalaw.com; jaccarino@aidalalaw.com
**Subject:** Data Review

Dear Judge Jones,

   In connection with your recent data review assignment to us, we held a zoom meeting with our forensic experts Trustpoint One.  Trustpoint reports to us that within the field of approximately 25,000 data items there are approximately 7500 "Whats App" entries.  The way the Government's expert presented this evidence  almost all of the Whats App entries consist of garbled words in English.  For example the phrase "In God we trust" would likely appear to us now as "God we trust in".  When it is a very short phrase such as that example, it is easy to rearrange the words, but most sentences are much longer and do not contain well know phrases like the one I used in the example.  Frankly we do not know how to deal with this, and we wanted to alert you to this latest glitch which will be found on more than 25 % of the items to be searched.

                                                                      Bob Costello

## Costello, Robert J.

**From:** Costello, Robert J.
**Sent:** Wednesday, July 12, 2023 3:01 PM
**To:** Costello, Robert J.
**Subject:** FW: Data Review

**From:** Shargel, David <david.shargel@bracewell.com>
**Sent:** Monday, October 25, 2021 10:52 AM
**To:** Costello, Robert J. <rjc@dhclegal.com>; Jones, Barbara <barbara.jones@bracewell.com>; Maxwell, Rita <rita.maxwell@bracewell.com>
**Cc:** judgeleventhal@aidalalaw.com; judgekamins@aidalalaw.com; jaccarino@aidalalaw.com
**Subject:** Re: Data Review

**CAUTION: EXTERNAL MAIL. DO NOT CLICK ON LINKS OR OPEN ATTACHMENTS YOU DO NOT TRUST**

Mr. Costello,

Thanks for your email. We are aware of this issue and hope to have a solution shortly.

**DAVID A. SHARGEL**
Partner
david.shargel@bracewell.com | download v-card
T: +1.212.508.6154 | F: +1.800.404.3970 | M: +1.917.346.4049

**BRACEWELL LLP**
1251 Avenue of the Americas, 49th Floor | New York, NY | 10020-1100
bracewell.com | profile | LinkedIn | Twitter

CONFIDENTIALITY STATEMENT
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**From:** Costello, Robert J. <rjc@dhclegal.com>
**Sent:** Thursday, October 21, 2021 11:12:01 AM
**To:** Jones, Barbara <barbara.jones@bracewell.com>; Shargel, David <david.shargel@bracewell.com>; Maxwell, Rita <rita.maxwell@bracewell.com>
**Cc:** judgeleventhal@aidalalaw.com <judgeleventhal@aidalalaw.com>; judgekamins@aidalalaw.com <judgekamins@aidalalaw.com>; jaccarino@aidalalaw.com <jaccarino@aidalalaw.com>
**Subject:** Data Review

Dear Judge Jones,

In connection with your recent data review assignment to us, we held a zoom meeting with our forensic experts Trustpoint One.  Trustpoint reports to us that within the field of

1

approximately 25,000 data items there are approximately 7500 "Whats App" entries.  The way the Government's expert presented this evidence  almost all of the Whats App entries consist of garbled words in English.  For example the phrase "In God we trust" would likely appear to us now as "God we trust in".  When it is a very short phrase such as that example, it is easy to rearrange the words, but most sentences are much longer and do not contain well know phrases like the one I used in the example.  Frankly we do not know how to deal with this, and we wanted to alert you to this latest glitch which will be found on more than 25 % of the items to be searched.

Bob Costello

**IMPORTANT NOTICE:**Beware of Cyber Fraud. You should <u>never</u> wire money to any bank account that our office provides to you via email without first speaking with our office. Further,<u>do not</u> accept emailed wiring instructions from anyone else without voice verification from a known employee of our office. Even if an email looks like it has come from this office or someone involved in your transaction. <u>Please call us first at a number you know to be correct for this office</u> to verify the information before wiring any money. Be particularly wary of any request to change wiring instructions you already received.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
STATEMENT OF CONFIDENTIALITY
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify us immediately by email reply to sender or by telephone to Davidoff Hutcher & Citron LLP at (800) 793-2843, ext. 3284, and destroy all copies of this message and any attachments.

IRS DISCLOSURE NOTICE
In accordance with Internal Revenue Service Circular 230, we inform you that any discussion of a federal tax issue contained in this communication (including any attachments) is not intended or written to be used, and it cannot be used, by any recipient for the purpose of (i) avoiding penalties that may be imposed on the recipient under United States federal tax laws, or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*