**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RUBY FREEMAN, *et al.*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>RUDOLPH W. GIULIANI,<br><br>                    Defendant. | Case No. 1:21-cv-03354 (BAH)<br><br>Judge Beryl A. Howell |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DISCOVERY SANCTIONS
AGAINST DEFENDANT GIULIANI FOR FAILURE TO PRESERVE
<u>ELECTRONIC EVIDENCE</u>**

## TABLE OF CONTENTS

RELEVANT FACTUAL BACKGROUND.....................................................................................2

ARGUMENT .......................................................................................................................5

    I.      Defendant Giuliani's Stipulation Confirms That the Court Should Order Default Judgment As To Liability. ..........................................................................5

    II.     Leaving Aside His Stipulation, Defendant Giuliani's Response Confirms That The Court Should Grant Plaintiffs' Motion.....................................................10

          A.     Defendant Giuliani Concedes Each Of The Factors .................................10

                1.     Defendant Giuliani was obligated to preserve the Electronic Evidence.........................................................................10

                2.     Defendant Giuliani did not take reasonable steps to preserve the Electronic Evidence.....................................11

                3.     Evidence is lost, and irretrievable...................................14

          B.     Defendant Giuliani's Response Confirms That Severe Sanctions Are Warranted............................................................................................15

    III.    The Court Should Award Plaintiffs' Fees and Costs. ...........................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adkins v. Teseo*,
    180 F. Supp. 2d 15 (D.D.C.2001) ............................................................................6

*Al-Quraan v. 4115 8th St. NW, LLC*,
    123 F. Supp. 3d 1 (D.D.C. 2015) ...........................................................................6

*Beck v. Test Masters Educ. Servs.*,
    289 F.R.D. 374 (D.D.C. 2013) .............................................................................12

*Doe v. District of Columbia*,
    No. 19-CV-01173 (CJN), 2023 WL 3558038 (D.D.C. Feb. 14, 2023) .................16

*Fields v. Wash. Metro. Area Transit Auth.*,
    743 F.2d 890 (D.C. Cir. 1984) ...............................................................................6

*Friends for All Child., Inc. v. Lockheed Aircraft Corp.*,
    746 F.2d 816 (D.C. Cir. 1984) ...............................................................................6

*Hamilton v. Geithner*,
    616 F. Supp. 2d 49 (D.D.C. 2009) .........................................................................8

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries*,
    238 F. Supp. 2d 174 (D.D.C. 2002) ..........................................................10, 11, 14

*Jankovic v. Int'l Crisis Grp.*,
    494 F.3d 1080 (D.C. Cir. 2007) .............................................................................9

*Sloan ex rel. Juergens v. Urb. Title Servs., Inc.*,
    652 F. Supp. 2d 40 (D.D.C. 2009) .........................................................................6

*LaShawn A. v. Barry*,
    87 F.3d 1389 (D.C. Cir. 1996) ...............................................................................8

*Mannina v. District of Columbia*,
    437 F. Supp. 3d 1 (D.D.C. 2020) .........................................................................12

*Metro-N. Commuter R.R. Co. v. Buckley*,
    521 U.S. 424 (1997) ...............................................................................................6

*Moldea v. N.Y. Times Co.*,
    15 F.3d 1137 (D.C. Cir. 1994) ...............................................................................8

*Nader v. Democratic Nat'l Comm.*,
  567 F.3d 692 (D.C. Cir. 2009) ..................................................................................9

*North Carolina v. Alford*,
  400 U.S. 25 (1970) ....................................................................................................7

*Saunders v. Nemati*,
  580 A.2d 660 (D.C. 1990) .........................................................................................9

*U.S. Sec. & Exch. Comm'n v. China Infrastructure Inv. Corp.*,
  189 F. Supp. 3d 118 (D.D.C. 2016) ...........................................................................6

*Vasser v. Shulkin*,
  No. 14-CV-0185 (RC), 2017 WL 5634860 (D.D.C. Nov. 22, 2017) .......................12

*Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*,
  776 F.3d 1 (D.C. Cir. 2015) .....................................................................................16

*Williams v. Red Coats, Inc.*,
  No. 1:20-CV-00571 (CJN), 2021 WL 4476770 (D.D.C. Sept. 30, 2021) ................6

*Zhi Chen v. District of Columbia*,
  839 F. Supp. 2d 7 (D.D.C. 2011) .............................................................................17

**Statutes**

D.C. Code Ann. § 12-301(a)(4) ......................................................................................9

D.C. Code Ann. § 12-301(a)(8) ......................................................................................9

**Other Authorities**

57 Am. Jur. *Trials* 395 § 65 ..........................................................................................6

Fed. R. Civ. P. 37(e)(2) .................................................................................................12

24 Moore's Federal Practice -- Criminal Procedure § 611.02 (2023) ............................7

Defendant Rudolph Giuliani's response to Plaintiffs' Motion for Discovery Sanctions Against Defendant Rudolph Giuliani For Failure to Preserve Electronic Evidence, ECF No. 81 ("Sanctions Motion"), is simultaneously confounding and clarifying.  Defendant Giuliani, still, after months of delay, motions, and briefing regarding his non-compliance with his most basic discovery obligations, refuses to take clear positions on what he has done to locate, preserve, and produce the electronic evidence he plainly possessed at some point in time.  For all its bluster, the belated declaration offered by Defendant Giuliani's criminal defense counsel myopically focuses on the *physical devices* the Government seized, while saying *nothing* about Defendant Giuliani's efforts (or lack thereof) to retrieve data, at any time, from his personal phones, emails, messaging applications, or social media accounts.  Nonetheless, recognizing the inevitable sanctions that flow from his refusal to do the basic discovery work required by the Federal Rules of Civil Procedure, Defendant Giuliani has effectively admitted that the entry of at least partial judgment against him is an appropriate remedy, and the arguments he purports to reserve have already been resolved by the Court or are devoid of merit on their face.  Thus, this Court's task is now straightforward: with both parties in agreement that (at least) partial judgment should be entered for Plaintiffs, and absent any real arguments on liability, this Court should enter judgment on liability for all of Plaintiffs' claims and move expeditiously toward resolving the only outstanding issue—quantification of damages.

Defendant Giuliani's response does not oppose Plaintiffs' Sanctions Motion in any meaningful sense—instead, it effectively concedes that the Court should enter default judgment as to liability.  ECF No. 84 at 1 ("Response").  The Response (mainly via arguments made in an attorney declaration) halfheartedly claims that Defendant Giuliani did not spoliate evidence, but the main event is Defendant's position that the Court should not order him to produce any further

- 1 -

evidence (or engage in any other discovery) because he "has agreed to stipulate to the factual aspects of liability as to Plaintiffs claims," *id.* at 6, in signed (but unsworn) stipulation, ECF No. 84-2 ("Stipulation"). Plaintiffs have clarified with counsel for Defendant Giuliani that through this Stipulation, Defendant Giuliani has agreed not to contest almost any aspect of Plaintiffs' claims. Specifically, Plaintiffs understand that Defendant Giuliani's Stipulation was intended to concede, *inter alia*: (1) that Defendant Giuliani published his statements with actual malice—i.e., that he knew his statements about Plaintiffs were false when he published them and/or that he otherwise recklessly disregarded the truth; and (2) that there was a meeting of the minds on or before December 3, 2020, with Donald Trump and others and that Defendant Giuliani published his claims about Plaintiffs pursuant to that agreement.

Plaintiffs respectfully submit that this Court should grant Plaintiffs' Sanctions Motion and enter judgment against Defendant Giuliani as to liability on all claims. *Infra* § I. Doing so would leave only the quantification of harm for either the Court or a jury. Further, Defendant Giuliani's Stipulation does not obviate the need for this Court to impose the requested relief as a form of sanctions to remedy his misconduct. None of the arguments advanced in Defendant Giuliani's Response rebut any of Plaintiffs' bases for sanctions—to the contrary, if anything, his Response only strengthens the reasons why sanctions are warranted. *Infra* § II. Finally, this Court should award Plaintiffs the fees and costs incurred in connection with this motion. *Infra* § III.

## RELEVANT FACTUAL BACKGROUND

Plaintiffs incorporate by reference the factual background set forth in the Sanctions Motion, and address herein the relevant events that have occurred since that filing on July 11, 2023.[1]

---

[1] All capitalized terms not defined herein shall have the meaning assigned to them in the Sanctions Motion.

On July 25, Defendant Giuliani filed the Response and Stipulation.  In the days that followed, Defendant Giuliani and his agents made (or caused to be made) numerous public statements characterizing Defendant Giuliani's intent in submitting the Stipulation.  For example, on July 26, 2023, Defendant Giuliani tweeted a video of himself claiming that "The Fake News says I admitted to lying in an overnight court filing.  I didn't.  We are simply moving to a point in the case where we can file a motion to dismiss."  (Ex. 1.)  The same day a "spokesman" for Defendant Giuliani, Ted Goodman, said that Defendant Giuliani did not acknowledge falsity of his claims, but instead "did not contest it in order to move on to the portion of the case that will permit a motion to dismiss."  (Ex. 2.)  On July 27, 2023, Defendant Giuliani appeared on *The Rubin Report* for a 45 minute-long interview in which he stated:

> It's a stipulation where you don't admit or deny so that you don't have to fight over this part of the case.  Even though you think you might win, it might take you so long and cost you so much money when you can win on this part of the case much faster and much cheaper.

(Ex. 3 at 4:10–17.)  The same day, on his WABC77 radio show, Defendant Giuliani stated:

> That is a stipulation that you do very often in a case when you don't want to litigate a certain part of a case and you want to litigate the other part. So that means I am not saying that what I said was untrue. I'm not admitting that. I'm just not contesting it because I don't want to have a big, long trial over it.

> I believe if we had a trial, I could put in a very good defense. I think in front of a Washington jury it would be useless. I would lose because I do not believe that the 98 percent Washington jurors would give me a fair trial any more than they've given anyone else a fair trial. And then, I have better defenses that I can make to the court, including the appellate court, that will win the case. So given the fact that they have cost me millions of dollars in legal fees, maybe if I had unlimited amount of money, I'd fight them on that. I made that stipulation.

> And the stipulation is exactly what it says it is. It's not an admission that I lied; it's not an admission that I defamed them, nor is it -- it is a -- basically, we're putting it aside so we can get to the part of the case where I have a much better defense because I don't have the money to litigate both parts of the case.

(Ex. 4 at 3:24-4:25.)

In light of some of the comments above, on July 27, 2023, counsel for Plaintiffs contacted counsel for Defendant Giuliani seeking clarification.  In that email, Plaintiffs requested that Defendant Giuliani confirm their understanding that he was "reserving his right to raise the legal defenses of constitutionally protected opinion and statute of limitations and to contest the amount of damages, but that otherwise Mr. Giuliani is admitting to all the elements of liability for all the claims in Plaintiffs' amended complaint."  (Ex. 5 at 3.)  Specifically, Plaintiffs' counsel explained their understanding that, "other than any opinion and statute of limitations defenses and the issue of the amount of damages," Defendant Giuliani had now stipulated to:

- All elements of Plaintiffs' defamation and defamation *per se* claims, including that he published his statements with actual malice;

- All elements of Plaintiffs intentional infliction of emotional distress claim, including that he intentionally and recklessly engaged in such conduct; and

- All elements of Plaintiffs' civil conspiracy claim, including that there was a meeting of the minds on or before December 3, 2020, with Donald Trump and others and that Mr. Giuliani participated in overt acts pursuant to or in furtherance thereof.

(*Id*. at 3–4.)  Plaintiffs explained that they also understood the Stipulation to mean that Defendant Giuliani would not "contest willfulness for purposes of punitive damages, should the Court hold him liable."  (*Id*.)

On July 28, counsel for Defendant Giuliani responded by stating:

Since you all are taking the position that actual malice is not required, I think the easier path is to stipulate that actual malice is not the required standard of fault, thereby negating any need for a finding of actual malice.  We are also not stipulating that the statements made were statements of fact. . . . I do not believe this is actually an affirmative defense.  I believe it is plaintiffs' burden to show statements of fact were made (although this is a pure question of law for the court as I understand it).

(*Id.*)  Counsel for Defendant Giuliani also explained that in "addition to not stipulating on the amount of damages (including offsets or settlement credits) we also do not stipulate as to any causal relationship between the conduct/statements and the alleged damages." (*Id.*)  Defendant Giuliani otherwise confirmed Plaintiffs' understanding.  (*Id.*)

Counsel for Plaintiffs replied, declining to engage in negotiations regarding the intent of Defendant Giuliani's Stipulation, and explaining that Defendant Giuliani's Stipulation, on its face, appeared to have conceded the issue of actual malice.  (Ex. 5 at 2)  In response, Defendant Giuliani's counsel clarified: "yes—he is stipulating to the malice element (to the extent it is necessary) as he would have to for punitive damages, which I acknowledged below." (*Id.*)  He further explained that his original email was intended only to recognize that Plaintiffs had alleged being private figures.  (*Id.*)

## ARGUMENT

The parties now appear to agree that this Court should enter, at minimum, a partial judgment as to liability as a remedy for Defendant Giuliani's failure to comply with his discovery obligations.  The only questions are how broad that judgment should be, and what sanctions should accompany the entry of judgment.  As explained below, Defendant Giuliani's Stipulation supports the Court's entry of default judgment as to liability.  *Infra* § I.  And none of the arguments raised in the Response obviates the need for this Court to impose sanctions on Defendant Giuliani, including the entry of default judgment as to liability because he engaged in spoliation (*infra* § II), and associated fees and costs (*infra* § III).

## I.    DEFENDANT GIULIANI'S STIPULATION CONFIRMS THAT THE COURT SHOULD ORDER DEFAULT JUDGMENT AS TO LIABILITY.

This Court should enter default judgment as to liability against Defendant Giuliani because, *inter alia,* he has effectively stipulated to it.  The effect of a default judgment is that a "defaulting

defendant is deemed to admit every well-pleaded allegation in the complaint" and leaves only the quantification of damages to be decided. *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17–18 (D.D.C.2001) (entering default judgment and finding that plaintiffs "satisfied each element" of the pleaded cause of action); *see also U.S. Sec. & Exch. Comm'n v. China Infrastructure Inv. Corp.*, 189 F. Supp. 3d 118, 128 (D.D.C. 2016) (Howell, J.) (noting that "[a] defaulting defendant concedes all well-pleaded factual allegations as to liability, though the court may require additional evidence concerning damages") (quoting *Al-Quraan v. 4115 8th St. NW, LLC*, 123 F. Supp. 3d 1, 1 (D.D.C. 2015)).  Notwithstanding the title of his Stipulation, Defendant Giuliani's Response states that he "has agreed to stipulate to the factual aspects of liability as to Plaintiffs claims," i.e., defamation, intentional infliction of emotional distress ("IIED"), and conspiracy claims.  Response at 6; *see also* Response at 1 ("Giuliani stipulates to all pertinent facts Plaintiffs would need from him to establish liability").  Because Defendant Giuliani has now conceded all "facts establishing liability," the Court can and should hold that he is "deemed to admit every well-pleaded allegation" in the Amended Complaint. *Adkins*, 180 F. Supp. 2d at 17.[2]

Defendant Giuliani's explanation that his Stipulation obviates the need for additional discovery demonstrates why default judgment is appropriate.  *See* Response at 1 (Stipulation to

---

[2] Courts routinely credit stipulations of factual elements. *See, e.g.*, 57 Am. Jur. *Trials* 395 § 65 (stipulations serve as a "useful case management device to settle issues of fact and law"); *Metro-N. Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 447 (1997) (Ginsburg, J., concurring in part) (discussing defendant's stipulation conceding negligence for exposing plaintiff to asbestos); *Fields v. Wash. Metro. Area Transit Auth.*, 743 F.2d 890, 892–95 (D.C. Cir. 1984) (upholding jury verdicts to plaintiffs in personal injury case where defendants admitted liability by stipulation); *Friends for All Child., Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 820 (D.C. Cir. 1984) (explaining that stipulation of defendant's liability for injuries caused by aviation accident would "save time and expenses") (internal quotation marks and citations omitted); *Williams v. Red Coats, Inc.*, No. 1:20-CV-00571 (CJN), 2021 WL 4476770, at *5 (D.D.C. Sept. 30, 2021) ("[S]tipulations reduce costs of discovery and litigation."); *Sloan ex rel. Juergens v. Urb. Title Servs., Inc.*, 652 F. Supp. 2d 40, 47 (D.D.C. 2009) (defendant's stipulation of liability as to plaintiff's conversion claim moots plaintiff's motion for summary judgment on that claim).

"all pertinent facts" makes "further discovery from him unnecessary"). The only result that obviates Plaintiffs' "need [for] additional discovery" as to liability is one in which Plaintiffs' factual allegations are deemed to be true. By contrast, reserving any factual disputes would require discovery from Defendant Giuliani with respect to those allegations. Thus, for example, even if this Court were to permit Defendant Giuliani to litigate the legal defenses of opinion and statute of limitations at summary judgment, he should not be permitted to deny or re-litigate factual allegations that his discovery violations have distorted. To the extent that Defendant Giuliani's reserved legal arguments involve any mixed questions of law and fact, Defendant Giuliani must be required to take as a given, and not contest, the facts in the Amended Complaint.

Counsel for Plaintiffs have met and conferred with counsel for Defendant Giuliani regarding Defendant Giuliani's intentions with respect to his "nolo contendere [sic]"[3] Stipulation. *See supra,* at 3–4. As has happened previously in this matter, Defendant Giuliani's public statements seem to depart from his filings before this Court. In any event, while Plaintiffs cannot speak for Defendant Giuliani, it is Plaintiffs' understanding, based on the representations of his counsel, that the Stipulation was intended to reserve only the following issues for resolution by the Court (and, if necessary, a jury): the opinion doctrine, statute of limitations, causation, and the quantification of damages.

---

[3] Plaintiffs do not understand what Defendant Giuliani intended to convey with his "nolo contendre [sic]" label—nolo contendere is a procedure in criminal law, rather than civil litigation, and if it were translated literally in this context would seem to imply that Defendant Giuliani is not, in fact, stipulating to the material facts in Plaintiffs' amended complaint. *See North Carolina v. Alford,* 400 U.S. 25, 35–36 n. 8 (1970) (a "nolo contendere" plea in the criminal context means a defendant is accepting punishment but is neither accepting nor denying guilt as to the charged crime); 24 Moore's Federal Practice -- Criminal Procedure § 611.02 (2023). The Stipulation also is not signed subject to penalty of perjury, which is contrary to the Local Rules. LCvR 5.1(f).

As for Defendant Giuliani's opinion defense, the Court has already addressed and rejected that argument.  ECF No. 31 at 17–19.  As the Court explained when it denied Defendant Giuliani's motion to dismiss, whether a statement is non-actionable opinion rather than a defamatory statement of fact is a "a question of law for the court to determine as a threshold matter."  *Id*. at 18 (quoting *Moldea v. N.Y. Times Co.*, 15 F.3d 1137, 1144 (D.C. Cir. 1994)).  And the Court did resolve that question of law—against Defendant Giuliani.  ECF No. 31 at 17–19.  Absent some showing of (1) unique special circumstances, such as where the Court "patently" misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or when a controlling or significant change in the law has occurred, *and* (2) that "some sort of 'injustice' will result if reconsideration is refused," a party cannot re-raise a purely legal argument resolved by the Court on a motion to dismiss.  *See Hamilton v. Geithner*, 616 F. Supp. 2d 49, 54 (D.D.C. 2009); *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (explaining that the law of the case doctrine is premised on the obvious proposition that "the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*").  Defendant Giuliani does not attempt to explain how there are unique circumstances here necessitating a repeat adjudication of his opinion doctrine arguments.  Nor could he, because the only injustice that could plausibly arise would be requiring Plaintiffs to re-litigate the same meritless defense.

As for statute of limitations and causation, both are meritless on their face.  All of the actionable statements in Plaintiffs' Complaint are statements for which Plaintiffs sued within the 1-year statute of limitations for defamation under D.C. law.  *See* ECF No. 22 ¶¶ 57–133; ECF No. 1 (complaint filed on December 23, 2021); ECF No. 33 at 13 ("The statute of limitations for

defamation claims is one year under D.C. law."); D.C. Code Ann. § 12-301(a)(4).[4]  As for Plaintiffs' IIED and civil conspiracy claims, the statute of limitations for intentional infliction of emotional distress in D.C. is three years, D.C. Code Ann. § 12-301(a)(8); *Saunders v. Nemati*, 580 A.2d 660, 661 (D.C. 1990), and the statute of limitations for civil conspiracy is tied to the underlying tort, meaning that it, too, reaches back at least three years from Plaintiffs' filing date of December 23, 2021, *see Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009).

As for causation, any attempt to argue that Defendant Giuliani's statements did not cause Plaintiffs *any* injury is inconsistent with his conceding to all "factual aspects of liability as to Plaintiffs claims."  Response at 6.  Moreover, such a defense would be frivolous given that Defendant Giuliani otherwise concedes that he and his team started the lies about Plaintiffs and continued to publish them for more than a year.

Accordingly, Plaintiffs respectfully submit that the Court need not accept Defendant Giuliani's reservations, and is not bound by the four corners of Defendant Giuliani's Stipulation. Instead, this Court should enter an order granting Plaintiffs' Sanctions Motion and ordering additional relief for the reasons described below.

Finally, Defendant Giuliani's Stipulation does not relieve him of his obligations to complete his production of documents relating to damages.  The Court has previously held that Defendant Giuliani's financial records are relevant both to Defendant Giuliani's motives and to

---

[4] Nor is there any plausible argument that Defendant Giuliani's and his co-conspirators' *different* statements in *different* fora on *different* dates (spanning *more than a year*) to *different* audiences are subject to the single-publication rule he references in his Answer to Plaintiffs' amended complaint—indeed, even identical statements are not subject to the single-publication rule when published in new editions of print media, and Defendant Giuliani's publications are not even identical statements.  *See* ECF No. 33 ¶ 194 (referencing the single-publication rule); *e.g.*, *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1087 (D.C. Cir. 2007) (noting that "copies of the original are still part of the single publication but republication in a new edition creates a new publication on the rationale that the intent is to reach a new audience").

punitive damages and ordered Defendant Giuliani to produce his financial information.  *See* May 19 Minute Order (May 19, 2023) (directing Defendant Giuliani to produce "full and complete responses to plaintiffs' requests for financial information in RFP Nos. 40 and 41"); June 22 Minute Order (June 22, 2023) (denying Defendant's motion for reconsideration and explaining that "here, defendant's financial condition is relevant to both liability and punitive damages").  To date, Defendant Giuliani has only produced two financial documents—a Court filing from his divorce dated December 10, 2019 and his 2018 tax return.  (Gottlieb Decl. ¶ 3.)  Because the question of damages is still live, Defendant Giuliani must comply with the previous Court order requiring him to produce his financial documents, and if he continues to refuse, then this Court should award additional sanctions addressing the factual issues relevant to damages.

## II.   LEAVING ASIDE HIS STIPULATION, DEFENDANT GIULIANI'S RESPONSE CONFIRMS THAT THE COURT SHOULD GRANT PLAINTIFFS' MOTION.

Regardless of what Defendant Giuliani intended with his Stipulation, his Response confirms that he has deprived Plaintiffs of their right to discoverable evidence, thereby warranting the imposition of sanctions.

### A.   Defendant Giuliani Concedes Each Of The Factors.

Defendant Giuliani concedes, expressly or implicitly, each of the factors that courts consider when determining spoliation of evidence: that (1) the Electronic Evidence should have been preserved in anticipation or conduct of litigation; (2) he failed to take reasonable steps to preserve it; (3) which resulted in its loss; (4) and cannot be restored or replaced by additional discovery.  *See* Sanctions Motion at 15.

1.   <u>Defendant Giuliani was obligated to preserve the Electronic Evidence</u>.

Defendant Giuliani does not dispute that the Electronic Evidence should have been preserved in anticipation of this litigation.  *See generally* ECF No. 84; *see, e.g., Hopkins v.*

*Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (explaining that a court may treat as conceded arguments that opposition failed to address).  Nor could he because, as explained in the Sanctions Motion, he already admitted to the Court that he understood he had an obligation to preserve materials relevant to the topic of this lawsuit before Plaintiffs even filed it.  *See* ECF No. 44 at 21 (Motion to Compel).

> ### 2.    Defendant Giuliani did not take reasonable steps to preserve the Electronic Evidence.

Defendant Giuliani concedes that he failed to take reasonable steps to preserve the Electronic Evidence.  His Response once again declines to address, and therefore admits, that he has not taken *any* steps to preserve the Electronic Evidence contained in his: three personal email accounts (Gmail, iCloud, and Protonmail); iCloud account; three phone numbers that he used to send messages via text and messaging application; three messaging applications (Signal, WhatsApp, Telegram); five social media handles; and two of his devices that were not seized by the FBI.  *Compare* Sanctions Motion at 10–11, 16–17 *with* Response at 2–6; *see also Hopkins*, 238 F. Supp. 2d at 178 (concession by omission).  Nothing in the declaration offered by Defendant Giuliani's criminal attorney, Robert Costello, speaks to what efforts (if any) Defendant Giuliani took with respect to those accounts and applications, whether before, during, or after the time that the Government seized his devices.

Defendant Giuliani's Response implies that he satisfied his preservation obligations by virtue of whatever steps the Government took with respect to the Seized Devices, specifically by the materials located in TrustPoint.  *See* Response at 2–6.  By so doing, the Response confirms, rather than disputes, that Defendant Giuliani failed to engage in any reasonable steps to preserve any of the materials located in his Seized Devices.

The declaration submitted by Mr. Costello asserts that the materials located in TrustPoint included "gibberish" and useless communications as a result of an error by the Government in *extracting* materials from the Seized Devices.  ECF No. 84-1 ("Costello Declaration") ¶ 17.  In other words, Defendant Giuliani's attorney has confirmed that the materials in TrustPoint are corrupted and that the corruption was a result of extraction, not based on the way materials existed on the Seized Devices.  Mr. Costello confirms that Defendant Giuliani knew—no later than September 2021, *before* Plaintiffs filed this lawsuit—that the materials in TrustPoint were corrupted.  *Id*.  Yet neither Mr. Costello nor Defendant Giuliani explain any affirmative steps that they took thereafter *even to attempt* to recover and/or preserve the materials on the Seized Devices.  Mr. Costello does not say, for example, whether he ever asked the Government to re-extract the materials or return the Seized Devices to Defendant Giuliani for purposes of preserving their contents.  Nor does he explain whether he or his client ever took any steps to otherwise preserve or recover this evidence *outside of* the Seized Devices, including, but not limited to, by: downloading the entire contents of his accounts (email, text messaging, messaging applications, or social media) via the cloud; logging into his iCloud account to determine whether the lost evidence had been backed up; or engaging an expert to otherwise preserve all of the materials that then existed other than on the physical devices.  *See generally* ECF No. 84.  The absence of any effort to do so, at a minimum, suggests that Defendant Giuliani had no interest in preserving his records.  This is textbook spoliation.  *See, e.g.*, Fed. R. Civ. P. 37(e)(2); *Mannina v. District of Columbia*, 437 F. Supp. 3d 1, 14  (D.D.C. 2020); *Beck v. Test Masters Educ. Servs.*, 289 F.R.D. 374, 378 (D.D.C. 2013); *Vasser v. Shulkin*, No. 14-CV-0185 (RC), 2017 WL 5634860, at *5–6 (D.D.C. Nov. 22, 2017).

Neither Defendant Giuliani nor Mr. Costello seem to grasp that the Government's seizure of Defendant Giuliani's devices did not grant him a free pass with respect to his phones, emails, messaging applications, and social media accounts.  But even limiting the inquiry to the TrustPoint data raises more questions than answers.  For example, Mr. Costello states that the search warrant that led to the April 2021 seizure was limited to materials in "the eighteen-month period from August 1, 2018 to December 31, 2019," which was nearly a year *before* the relevant time period alleged in Plaintiffs' Amended Complaint.  Costello Decl. ¶ 6.  Moreover, the Costello Declaration seems to confirm that the entirety of the records extracted from the Seized Devices were located in a database managed by another discovery provider (PAE), such that TrustPoint only ever had a *portion* of discovery materials, that which the Special Master in the criminal case asked Mr. Costello to review.  Costello Decl. ¶ 14.  Indeed, after multiple declarations and many months of litigation, it remains entirely unclear what materials were ever held in the TrustPoint repositories.  This could explain why certain records produced to Plaintiffs by third parties were not produced by Defendant Giuliani, a fact he does not contest.  *See* Response at 5–6.

It is also worth highlighting that Mr. Costello's declaration includes significant details regarding the TrustPoint database that were previously undisclosed to Plaintiffs and the Court.  The Costello Declaration comes months after the Court ordered Defendant Giuliani to provide specific information regarding TrustPoint in March and May of this year.  *See* March 21 Minute Order (March, 21, 2023); May 19 Minute Order (May 19, 2023).  Defendant Giuliani and Mr. Costello had an obligation to provide this information months ago, and had they done so in good faith, they could have saved the Court and the parties significant time and expense.

Finally, the Costello Declaration makes a variety of hyperbolic accusations, including several asserting that the declaration submitted by undersigned counsel is "misleading," ECF No.

84-1 ¶¶ 4, 9, and "false," *id*. ¶ 18.   Of course, neither Plaintiffs nor their counsel have ever had access to the full TrustPoint data or for that matter access to complete answers from Defendant Giuliani and his counsel about that data.   As a result, Plaintiffs have been forced to interpret cryptic and incomplete information about what information from Defendant Giuliani was stored on TrustPoint and what Defendant Giuliani's various counsel had done at various stages with respect to that data.   In any event, Plaintiffs respectfully submit that the Costello Declaration reinforces the accuracy of Plaintiffs' representations, including in all of the materials attached to the Sanctions Motion.   It is worth asking, if Mr. Costello's submission reflected sincerely held factual and legal positions, why Defendant Giuliani has stipulated to liability.   Ultimately, the lengthy narrative contained in Mr. Costello's Declaration is irrelevant, both because it does not address anything other than TrustPoint, and because Defendant Giuliani has effectively conceded Plaintiffs' Sanctions Motion by stipulating to liability.   Beyond that, Plaintiffs' decision not to engage with all of Mr. Costello's accusations does not reflect Plaintiffs' agreement with them, but rather a reluctance to further burden this Court with trivial issues.

### 3.   Evidence is lost and irretrievable.

The Response does not dispute that the non-TrustPoint repositories and the evidence contained therein are lost and irretrievable.   *See generally* ECF No. 84; *Hopkins*, 238 F. Supp. 2d at 178.   And, as Plaintiffs' Sanctions Motion explains, Defendant Giuliani has already told the Court that he lost access to iCloud and certain materials in his email accounts.   *See* Sanctions Motion at 10–11.   Thus, this Court should find that all of the materials on his non-TrustPoint repositories are lost and irretrievable.

As far as the TrustPoint materials, and as already discussed, Defendant Giuliani (via Mr. Costello) confirms that the materials located in TrustPoint are corrupted.   And that the Seized Devices on which those materials lived (in un-corrupted form) have been wiped.   In combination,

there is no dispute that any materials from the Seized Devices are lost and irretrievable.  *See* Response at 5 (materials produced by third parties "stems from the fact that the government seized files, some of which were corrupted, and then wiped from the devices").

*   *   *

For the reasons articulated in the Sanctions Motion, and on the face of the Response by Defendant Giuliani, Plaintiffs have more than met their burden to demonstrate spoliation and justify the entry of the relief sought in the Motion.  If the Court still has remaining questions about TrustPoint and the Seized Devices, including Defendant Giuliani's prior representations regarding them to this Court, Plaintiffs respectfully submit that the Court should hold a hearing during which Plaintiffs, Mr. Costello, and Defendant Giuliani can address in full the issues raised herein.

**B.**   **Defendant Giuliani's Response Confirms That Severe Sanctions Are Warranted.**

Defendant Giuliani does not (and cannot) dispute that Plaintiffs will suffer prejudice as a result of his preservation failures.  *See* Response at 2–6.  For all the many (now undisputed) reasons discussed in the Sanctions Motion, Plaintiffs have been severely prejudiced by Defendant Giuliani's failure to preserve Electronic Evidence.  *See* Sanctions Motion at 25–33.

Leaving aside that Defendant Giuliani is effectively asking for a default judgment (as discussed above), his Response does not address any of the specific types of sanctions that Plaintiffs seek.  Specifically, Plaintiffs' Sanctions Motion asked the Court to enter the following adverse inferences beyond those that go to liability:

> 1. Defendant Giuliani spoliated significant relevant evidence contained on his personal and professional devices and personal and professional accounts.

> 8. Before publishing the Defamatory Claims, Defendant Giuliani knew that each Defamatory Claim he made on his podcasts, his radio show, during interviews with One America News Network, on Twitter, and through other mediums, could potentially be heard by tens of millions of individuals, and intended his Defamatory Claims to be heard by as many people as possible.

- 15 -

Sanctions Motion at 34–35.  The Court should grant Plaintiffs' unchallenged requests.

Defendant Giuliani's failure to address this requested relief also warrants the Court entering default judgment as to liability as the appropriate remedy, for the reasons discussed in the Sanctions Motion.  *See, e.g.*, *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 4–8 (D.C. Cir. 2015) (affirming default judgment as sanction for discovery violation); *see also* Sanctions Motion at § I.F.1.

### III.    THE COURT SHOULD AWARD PLAINTIFFS' FEES AND COSTS.

The Court should award Plaintiffs' fees and costs associated with filing the Sanctions Motion and the negotiations between counsel regarding a potential stipulation.[5]  Defendant Giuliani offers two arguments, unsupported by any facts or law, for why the Court should not award Plaintiffs' attorneys' fees and costs.  First, Defendant Giuliani claims that he did not spoliate evidence, but as explained above, that argument fails in every respect.  Second, Defendant Giuliani argues that his Stipulation obviates the need to impose sanctions, but his belated offer was made only after Plaintiffs were forced to litigate this issue for months, including by incurring substantial fees and costs associated with filing the Sanctions Motion.  Plaintiffs have already expended considerable resources in discovery, which closed on May 22 after being extended six months because of Defendant Giuliani's recalcitrance.  Thus, Defendant Giuliani should be held responsible for the fees and costs of the Sanctions Motion.  *See Doe v. District of Columbia*, No. 19-CV-01173 (CJN), 2023 WL 3558038, at *16 (D.D.C. Feb. 14, 2023) (awarding attorneys' fees

---

[5] Plaintiffs note that Defendant Giuliani has yet to pay Plaintiffs' Attorneys' Fees awarded in connection with the Motion to Compel, as ordered to be paid by July 25, 2023.  July 13 Minute Order (July 13, 2023).  Plaintiffs will raise this failure to comply with the Court's order in the forthcoming Joint Status Report.  Plaintiffs now understand from public reporting that a Political Action Committee for former-President Trump paid Defendant Giuliani's TrustPoint arrearage, and is potentially covering legal fees for this matter.  (*See* Ex. 6.)

and costs for Rule 37(e) motion); *Zhi Chen v. District of Columbia*, 839 F. Supp. 2d 7, 16–17

(D.D.C. 2011) (same and explaining that an "award of fees and costs serves the remedial purpose

of compensating" the movant "for the reasonable costs it incurred in bringing" the motion for

sanctions) (internal quotation marks and citations omitted).

DATED:      August 1, 2023

**UNITED TO PROTECT DEMOCRACY**
John Langford
Rachel Goodman
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
john.langford@protectdemocracy.org
rachel.goodman@protectdemocracy.org

Christine Kwon*
555 W. 5th St.
Los Angeles, CA 90013
Tel: (919) 619-9819
Christine.kwon@protectdemocracy.org

Sara Chimene-Weiss*
7000 N. 16th St. Ste. 120, #430
Phoenix, AZ 85020
Tel: (202) 579-4582
Sara.chimene-weiss@protectdemocracy.org

Brittany Williams**
15 Main St., Suite 312
Watertown, MA 02472
Tel: (202) 579-4582
brittany.williams@protectdemocracy.org

*/s/ Michael J. Gottlieb*

**WILLKIE FARR & GALLAGHER LLP**
Michael J. Gottlieb (974960)
Meryl C. Governski (1023549)
Timothy P. Ryan (1719055)
J. Tyler Knoblett (1672514)
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com
mgovernski@willkie.com
tryan@willkie.com
jknoblett@willkie.com

M. Annie Houghton-Larsen
787 7th Avenue
New York, New York
Tel: (212) 728-8164
Fax: (212) 728-9164
mhoughton-larsen@willkie.com

**DuBOSE MILLER LLC**
Von A. DuBose
75 14th Street NE
Suite 2110
Atlanta, GA 30309
Tel: (404) 720-8111
dubose@dubosemiller.com

*   **Admitted** *pro hac vice*
**  ***Pro hac vice*** **application forthcoming**
*Attorneys for Plaintiffs Ruby Freeman and Wandrea' Moss*

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2023, the foregoing document was filed with the Clerk of the Court of the U.S. District Court for the District of Columbia by using the CM/ECF system, which will automatically generate and serve notices of this filing to all counsel of record.

Dated: August 1, 2023

*/s/ Michael J. Gottlieb*
**WILLKIE FARR & GALLAGHER LLP**
Michael J. Gottlieb (974960)
1875 K Street, #100
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com
