UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUBY FREEMAN<br><br>*and*<br><br>WANDREA MOSS,<br><br>          *Plaintiffs*,<br><br>     v.<br><br>RUDOLPH W. GIULIANI,<br><br>          *Defendant*. | Civil Action No. 21-3354 (BAH)<br><br>Judge Beryl A. Howell |

**PLAINTIFFS' SUBMISSION REGARDING ADDITIONAL SANCTIONS FOR DEFENDANT GIULIANI'S FAILURE TO COMPLY WITH THE COURT'S <u>AUGUST 30, 2023 ORDER</u>**

Plaintiffs Ruby Freeman and Wandrea' ArShaye Moss ("Plaintiffs") offer this submission following the Court's September 22, 2023 minute order directing Plaintiffs to specify by this date any additional requested sanctions against Defendant Giuliani, under Federal Rule of Civil Procedure 37(b)(2)(A) and this Court's inherent power, for his failure to comply with the August 30, 2023 Order (the "Sanctions Order"). Plaintiffs respectfully submit that the Court should: order additional sanctions against Defendant Giuliani, including adverse inferences and preclusive orders regarding evidence relating to his finances, the Giuliani Businesses' finances, and viewer metrics and social media reach; enter final judgments on the Court's order on attorneys' fees in connection with Plaintiffs' motion to compel Defendant Giuliani ("MTC Fees Order"), the Court's order on attorneys' fees in connection with Plaintiffs' motion to compel the Giuliani Businesses, ("Giuliani Businesses Fees Order") and the Court's order on attorneys' fees in connection with the

motion for sanctions ("Sanctions Fees Order"); and enter an order permitting Plaintiffs to register the MTC Fees Order, the Giuliani Businesses Fees Order, and the Sanctions Fees Order (together, the "Fees Orders") in other judicial districts of the United States.

**RELEVANT FACTUAL BACKGROUND[1]**

I.   **Defendant Giuliani Has Refused To Comply With Numerous Orders Of This Court.**

Plaintiffs first filed suit against Defendant Rudolph W. Giuliani ("Defendant Giuliani") on December 23, 2021, bringing claims for defamation, intentional infliction of emotional distress, and civil conspiracy. Plaintiffs amended their complaint on May 10, 2022.

After nearly a year of discovery and a discovery hearing before this court, Plaintiffs moved to compel Defendant Giuliani to comply with his basic discovery obligations, including his failure to search relevant repositories of potentially responsive information, and his refusal to search for and produce financial documents ("Motion to Compel"). ECF No. 44 at 16–19. Following comprehensive briefing and another discovery hearing, the Court granted the Motion to Compel and denied Defendant Giuliani's Motion for Reconsideration. *See* May 19 Minute Order (May 19, 2023 Minute Order); May 31 Minute Order (May 31, 2023 Minute Order); June 22 Minute Order (June 22, 2023 Minute Order); June 23 Minute Order (June 23, 2023 Minute Order). On July 13, 2023, the Court awarded Plaintiffs' attorneys' fees in the sum of $89,172.50 and directed Defendant Giuliani to reimburse Plaintiffs by July 25, 2023. July 13 Minute Order (July 13, 2023 Minute Order). As of the date of this filing, Defendant Giuliani has not paid Plaintiffs the fees due in connection with the Motion to Compel (Gottlieb Decl. ¶ 3).

---

[1] Plaintiffs assume familiarity with the previous discovery disputes and filings, and incorporate by reference herein Plaintiffs' previous discussion regarding the lengthy history of Defendant Giuliani's discovery violations in this case. *See* ECF 44, 56, 70, 81, 86, 88, 92, 100.

During briefing on the Motion to Compel, Defendant Giuliani claimed he was unable to comply with his discovery obligations in part because he had been unable to satisfy an arrearage of approximately $320,000 owed to a vendor, TrustPoint. ECF No. 51. After the Court ordered Defendant Giuliani to produce his financial information in order to assess his claim of poverty, May 19 Minute Order, Defendant Giuliani "obtained the funding to pay the arrearage," ECF No. 61 at 1, apparently from third parties, and never substantiated to this Court (or otherwise) his inability to comply with his discovery obligations.

On June 22, 2023, Plaintiffs filed a motion to compel the Giuliani Businesses to comply with their discovery obligations after they failed to respond, in any way, to Plaintiffs' properly-served document and deposition subpoenas—in sum, the Giuliani Businesses failed to produce any documents, designate a corporate representative, or sit for a deposition. *See* ECF No. 70. Plaintiffs also demonstrated, based on Defendant Giuliani's deposition testimony, that Defendant Giuliani controls the Giuliani Businesses, *id*. at 2–3, and neither the Giuliani Businesses nor Defendant Giuliani have ever contested that fact. After the Giuliani Businesses failed even to respond to the motion, and Defendant Giuliani confirmed that he did not oppose the Court's show cause order regarding the motion, the Court subsequently granted Plaintiffs' motion and awarded attorneys' fees. *See* July 26 Minute Order (July 26, 2023, Minute Order); ECF No. 93.

On July 11, 2023, Plaintiffs filed a motion for sanctions for Defendant Giuliani's failure to preserve electronic evidence ("Sanctions Motion") and sought related attorneys' fees. ECF No. 81. On July 25, 2023, Defendant Giuliani filed a response, including a "Nolo Contendre [sic] Stipulation" and a week later, on August 1, Plaintiffs filed a reply. ECF Nos. 84, 86. In a minute order dated August 4, 2023, the Court directed Defendant Giuliani to clarify his "Nolo Contendre [sic] Stipulation," which he did on August 8. ECF No. 90.

On August 30, 2023, the Court granted the Sanctions Motion and ordered, *inter alia*, "that default judgment will be entered against defendant Rudolph W. Giuliani on his liability for plaintiffs' defamation, intentional infliction of emotional distress, civil conspiracy, and punitive damage claims, pursuant to Federal Rules of Civil Procedure 37(e)(2)(C) and 37(b)(2)(A)(vi)." ECF No. 93 at 1. The Sanctions Order also awarded Plaintiffs attorneys' fees for the Sanctions Motion and ordered attorneys' fees for the Giuliani Businesses motion to compel in the amount of $43,684. *Id*. at 2–3. The Court ordered that, as a further sanction for Defendant Giuliani's failure to reimburse Plaintiffs in connection with the Motion to Compel, "the jury will be instructed that they must, when determining an appropriate sum of punitive damages, infer that he is intentionally trying to hide relevant discovery about his financial assets for the purpose of artificially deflating his net worth, unless he produces fulsome responses to plaintiffs' RFP Numbers 40 and 41 by September 20, 2023, in which case, the mandatory instruction may be converted to a permissive one." *Id*. at 3.

On September 22, 2023, the Court awarded fees in the amount of $104,256.50 in connection with the Sanctions Motion and directed Defendant Giuliani to reimburse Plaintiffs by October 6, 2023. September 22 Minute Order (September 22, 2023 Minute Order).

The Sanctions Order further ordered that by September 20, 2023, Defendant Giuliani must, *inter alia*:

- produce complete responses to Plaintiffs' Requests for Production ("RFP") Numbers 40 and 41;

- ensure that Giuliani Communications LLC and Giuliani Partners LLC (collectively, the "Giuliani Businesses") produce complete responses to Plaintiffs' requests for financial documents and viewership metrics, including RFP Numbers 19 and 35 and designate one or more corporate representatives to sit for depositions on behalf of the Giuliani Businesses;

- reimburse Plaintiffs for the attorneys' fees and costs associated with their successful first motion to compel discovery in the amount totaling $89,172.50, with interest on that amount to accrue from July 25, 2023; and

- ensure that the Giuliani Businesses reimburse Plaintiffs for the attorneys' fees associated with their successful motion to compel discovery from those Businesses in the amount totaling $43,684, with interest on that amount to accrue from September 20, 2023 against defendant Rudolph W. Giuliani personally if his Businesses fail to timely comply.

On September 20, 2023, Defendant Giuliani failed to comply with the Sanctions Order—Plaintiffs received no productions or payments from either Defendant Giuliani or the Giuliani Businesses. (Gottlieb Decl. ¶¶ 3–4.) On September 21, Plaintiffs provided this Court with notice of Defendant Giuliani's failure to comply with the Default Judgment. ECF No. 100. The next day, the Court directed Plaintiffs to provide briefing regarding sanctions for Defendant Giuliani's failure to comply with the Sanctions Order. September 22 Minute Order (September 22, 2023 Minute Order).

## II. Defendant Giuliani Appears To Have Assets, But Not Within This District.

Publicly available information suggests that Defendant Giuliani has the capacity to comply with the Fees Orders to pay Plaintiffs the money he currently owes. Defendant Giuliani has never substantiated his claim of "poverty" before this Court—instead, when previously faced with the opportunity to do so, Defendant Giuliani demurred following receipt of funds allowing him to retire a $320,000 arrearage owed to TrustPoint. *See* ECF No. 61. Defendant Giuliani has never explained why he cannot access similar (or other) sources of funds to comply with the Fees Orders. There is good cause to believe that Defendant Giuliani could indeed do so if he so desired. As the Court already noted, "Giuliani is reported to have flown on a private plane," when he recently traveled to the Fulton County Jail in Atlanta, Georgia, in connection with criminal proceedings against him. *Freeman v. Giuliani*, No. CV 21-3354 (BAH), 2023 WL 5600316, at *23 (D.D.C. Aug. 30, 2023) (internal citations omitted). Moreover, Defendant has been engaged in active

fundraising to support his various litigation matters. According to public sources, Defendant Giuliani and former-President Trump hosted a fundraiser to support Defendant Giuliani's legal defense at a price tag of $100,000 per person. (Ex. 1 at 1.) Defendant Giuliani's son, Andrew Giuliani, commented that the event was expected to "raise more than $1 million for his father and that Trump had committed to hosting a second event at Mar-A-Lago club in Palm Beach, Florida, later in the fall or early winter." (*Id.*) One article reports that, to "generate cash" Defendant Giuliani has "hawked autographed 9/11 shirts and pitched sandals sold by election denier Mike Lindell, the CEO of MyPillow. He's also joined Cameo, a service through which celebrities record short videos for profit." (*Id.*) At the same time, Defendant Giuliani has registered a Political Action Committee, "Giuliani Defense" with the Federal Election Commission, Ex. 2, and appears to be soliciting donations to "Rudy Giuliani Freedom Fund"[2] and "Rudy Giuliani Legal Defense Fund,"[3] whether separately or in connection with his PAC. (Exs. 1, 3.) Defendant Giuliani has appeared repeatedly on a variety of media programs seeking public contributions to his legal defense, including some in which he continued to defame Plaintiffs (and Plaintiffs' counsel) by name. (*See, e.g.*, Exs. 3, 4; Gottlieb Decl. ¶ 5.) Defendant Giuliani also derives income from his podcast, *Common Sense*, and two radio shows on WABC Radio in New York.[4] *See* ECF No. 70-7 at 30:10–31:11. According to Defendant Giuliani's testimony, the *Common Sense* podcast is broadcast based on a distribution agreement, and Defendant Giuliani derives compensation based on advertising on a "per-view" basis. *Id.* at 32:10–33:25. Defendant Giuliani also testified that

---

[2] Rudy Giuliani Freedom Fund, https://rudygiulianifreedomfund.com/.

[3] Support Rudy Giuliani Legal Defense Fund, https://w3.newsmax.com/General/Misc/Rudy-Fund?dkt_nbr=010102eb4pi6.

[4] Many of Defendant Giuliani's defamatory statements about Plaintiffs were published on Common Sense. *See generally* ECF No. 22.

that *Common Sense* reaches "over a million people" at times, and, while he could not confirm how much revenue he has derived, there would be records to reflect the amount. *Id*. at 30:10–34:9.

To date, Defendant Giuliani has only produced two documents related to his finances: his 2018 tax returns (federal and New York), and the stipulation of settlement in *Giuliani v. Giuliani*, 350019/2018 (N.Y. Sup. Ct. Dec. 10, 2019) (together, Giuliani's Financial Documents"). (Gottlieb Decl. ¶ 4.) Giuliani's Financial Documents do not identify any assets that Defendant Giuliani possesses[5] in the District of Columbia. (*Id*.) Yet Giuliani's Financial Documents demonstrate that Defendant Giuliani does possess meaningful assets in other jurisdictions, including but not limited to the Southern District of New York. (*Id*.)

There is also reason to believe that the Giuliani Businesses have income and assets because the Giuliani Businesses own the *Common Sense* podcast, ECF No. 70-7 at 30:21–34:24, which, as discussed above, generates revenue through advertisements. To date, the Giuliani Businesses have not produced a single financial record, advertising contract, or document regarding viewership metrics.

Defendant Giuliani may be preparing to dissipate his existing assets. According to publicly-available information, on or about August 7, 2023, Defendant Giuliani listed his Upper East Side condominium for sale at a list price of $6.5 million. (Gottlieb Decl. ¶ 6.)[6] Further, Defendant Giuliani is currently involved in numerous litigation matters, both civil and criminal.

---

[5] Because of the dearth of Defendant Giuliani's productions, Plaintiffs are only aware of Defendant Giuliani's financial status as reflected in Giuliani's Financial Documents from the 2018–2019 time period. Plaintiffs assume for the purpose of this submission, and because Defendant Giuliani has refused to provide any further information regarding his financial condition, that Defendant Giuliani currently possesses all the assets reflected in Giuliani's Financial Documents.

[6] On August 30, 2023, after learning that Defendant Giuliani had put his condominium on the market, counsel for Plaintiffs sent counsel for Defendant Giuliani a letter demanding that Defendant Giuliani cease and desist any fraudulent transfer of assets. (Gottlieb Decl. ¶ 6.) Counsel for Defendant Giuliani confirmed that he would deliver the letter to Defendant Giuliani. (*Id*.)

*See, e.g.,* ECF. No. 81-8 at 22:6–12.  Defendant Giuliani's attorneys have publicly commented that the cost of these litigation matters is mounting and burdensome.  (Ex. 5.)  Most recently, Defendant Giuliani was sued for $1.3 million in unpaid attorneys' fees by the firm of his long-time attorney, Robert Costello.  (Ex. 6.)

**LEGAL STANDARD**

A court's power to sanction a party for failure to obey a discovery order comes both from the plain text of Rule 37 and the court's inherent power.  *Parsi v. Daioleslam*, 778 F.3d 116, 130 (D.C. Cir. 2015); *see also* Fed. R. Civ. P. 37(b).  Courts "have discretion to determine a fitting sanction for conduct that abuses judicial proceedings" and to "protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments."  *Parsi*, 778 F.3d at 130–31.

Courts can impose penal and issue-related sanctions.  To order penal sanctions, such as "dismissals and default judgments, as well as contempt orders, awards of attorneys' fees, and the imposition of fines," the court must find "clear and convincing evidence of the predicate misconduct."  *Id.* at 131.  (internal citations omitted).  To order issue-related sanctions, such as "barring admission of evidence or considering an issue established for the purpose of the action," the court need only find misconduct based on a preponderance of the evidence.  *Id.* (internal citations omitted).

Federal Rule 69 provides that a "money judgment is enforced by a writ of execution, unless the court directs otherwise."  Fed. R. Civ. P. 69.  When a party's assets are located in a different district than where the judgment was entered, 28 U.S.C. § 1963 provides that a party may register a judgment in another judicial district "when the judgment has become final by appeal or expiration of the time for appeal ***or when ordered by the court that entered the judgment for good cause***

*shown*" to initiate a writ of execution.  (emphasis added).  "Good cause can be established by an absence of assets in the judgment forum, coupled with the presence of substantial assets in the registration forum."  *Non-Dietary Exposure Task Force v. Tagros Chems. India, Ltd.*, 309 F.R.D. 66, 69 (D.D.C. 2015) (internal quotations omitted); *see also Mwila v. Islamic Republic of Iran*, No. CV 08-1377 (JDB), 2019 WL 13134796, at *1 (D.D.C. May 15, 2019) (internal citations omitted).  Courts in this District favor permitting registration in any or all other jurisdictions to avoid a shell-game in which the defendant repeatedly evades judgment by moving its mobile assets.  *See Chevron Corp. v. Republic of Ecuador*, 987 F. Supp. 2d 82, 85 (D.D.C. 2013).

## ARGUMENT

### I.   Defendant Giuliani Failed To Comply With The Sanctions Order.

It is plain that Defendant Giuliani has failed to comply with the Sanctions Order.  That Order required Defendant Giuliani to produce, or cause his businesses to produce, documents and to comply with the Court's fee award by paying Plaintiffs by September 20, 2023.  Defendant Giuliani failed to do so—he did not produce any responses to Plaintiffs' RFPs 19 and 35 (let alone "complete responses"); he did not cause the Giuliani Businesses to produce any responses to RFPs 19 and 35 (let alone "complete responses"); he did not cause the Giuliani Businesses to designate a corporate representative to sit for a deposition; he did not reimburse Plaintiffs' attorneys' fees in the amount totaling $89,172.50; and he did not cause the Giuliani Businesses to reimburse Plaintiffs' attorneys' fees in the amount totaling $43,684.  Defendant Giuliani had full notice of the Sanctions Order.  Not only is he an attorney with over 50 years of experience who understands that he was required to comply with court orders, but he has demonstrated that he is aware of the Sanctions Order via his ongoing public commentary regarding this litigation, including commentary following the Sanctions Order itself.  (*See* Ex. 3; Gottlieb Decl.  ¶ 5.)

## II. The Court Should Impose Additional Sanctions On Defendant Giuliani For His Failure To Comply With The Sanctions Order.

Defendant Giuliani has *again* violated an order of the Court, without explanation or excuse of any kind, and accordingly, the Court should impose additional sanctions. This Court possesses significant discretion pursuant to its inherent power to fashion sanctions that provide appropriate relief tailored to the violations. *See, e.g.*, *Parsi*, 778 F.3d at 131.

### a. The Court Should Order Additional[7] Adverse Inferences Against Defendant Giuliani.

Defendant Giuliani failed to produce and failed to cause the Giuliani Businesses to produce documents related to finances, viewership metrics, and social media reach that Plaintiffs have sought in order to prove their damages case at trial. Because of Defendant Giuliani's flagrant violation of this Court's orders, Plaintiffs have been deprived of the sources of information that would allow Plaintiffs to determine the past and present assets, revenues, income, and viewership metrics of Defendant Giuliani and his businesses. And, unlike with respect to data that is contained in TrustPoint, where Defendant Giuliani at least *attempted* to provide an explanation as to his lack of compliance with this Court's Orders, here Defendant Giuliani has not offered a single explanation or argument as to why he has refused to produce the evidence he controls and possesses relating to the Giuliani Businesses, those businesses' financial and operational conditions, and his own finances. Instead of engaging in the straightforward task of locating and producing those rudimentary records, Defendant Giuliani has taken to the airwaves, and launched a renewed assault on Plaintiffs, their counsel, and this Court in order to raise money for his legal defense fund. (*See* Exs. 3, 4; Gottlieb Decl. ¶¶ 4, 5.) It would be difficult to find a clearer example

---

[7] The Court has already awarded Plaintiffs' an adverse inference against Defendant Giuliani for his failure to timely pay Plaintiffs' attorneys fees in violation of the Court's order. ECF No. 93 at 3.

of an informed, sophisticated, and well represented party openly flouting orders of a federal court. Accordingly, severe sanctions are both warranted and necessary. *See generally Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995) ("As old as the judiciary itself, the inherent power enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments.").

For his failure to produce these documents, in spite of the Court's order, the Court should order the following adverse inferences, and instruct the jury regarding the same:

- The jury will be instructed that it must, when determining an appropriate sum of compensatory, presumed, and punitive damages, infer that Defendant Giuliani was intentionally trying to hide relevant discovery about the Giuliani Businesses' finances for the purpose of shielding his assets from discovery and artificially deflating his net worth.

- The jury will be instructed that it must, when determining an appropriate sum of compensatory, presumed, and punitive damages, infer that Defendant Giuliani was intentionally trying to hide relevant discovery about the viewership of *Common Sense* and his social media reach for the purpose of artificially deflating the reach of his defamatory statements.

- The jury will be instructed that it must, when determining an appropriate sum of compensatory, presumed, and punitive damages, infer that Defendant Giuliani received substantial financial benefits from Defendant Giuliani's defamation of Plaintiffs.

- The jury will be instructed that it must, when determining an appropriate sum of compensatory, presumed, and punitive damages, infer that the Giuliani Businesses continue to generate advertising revenue and other income from their operations.

Further, this Court should enter an order precluding Defendant Giuliani from advancing arguments, and introducing evidence, at trial that relies upon any evidence (whether documentary or testimonial) that Defendant Giuliani refused to produce in discovery. Specifically:

- Defendant Giuliani and his counsel will be precluded from introducing any evidence, whether through a document, witness, or other testimony, that has not been disclosed or produced during discovery.

- Defendant Giuliani and his counsel will be precluded from making any argument, or introducing any evidence, stating or suggesting that he received no financial benefits, or

that he received only immaterial or insubstantial financial benefits, from the statements he made about Plaintiffs as identified in Plaintiffs' Amended Complaint.

- Defendant Giuliani and his counsel will be precluded from making any argument, or introducing any evidence, stating or suggesting that he is insolvent, bankrupt, judgment proof, or otherwise unable to defend himself, comply with this Court's orders, or satisfy an eventual judgment.

Plaintiffs reserve the right to seek additional relief through Motions in Limine, which Plaintiffs will file as contemplated by the Court's Scheduling Order, Sept. 20, 2023 Min. Order, or otherwise via properly presented motions at trial.

### b. The Court Should Enter Judgments And Orders To Enable Plaintiffs To Seek Enforcement Outside The District Of Columbia.

Defendant Giuliani's conduct to date demonstrates that he will continue to flout this Court's orders to pay (or cause the Giuliani Businesses to pay) Plaintiffs the Court-awarded attorneys' fees. Plaintiffs are properly owed these monies, and given Defendant Giuliani's unwavering refusal to comply with this Court's Orders, the Court should take additional procedural steps to permit the Plaintiffs to seek full payment of these fees through execution against Defendant Giuliani's assets outside of the District of Columbia.

### i. The Court Should Enter Final Judgments On The Fees Orders.

To allow Plaintiffs to enforce the Court-awarded attorneys' fees in jurisdictions outside of the District of Columbia, the Court should enter final judgments on the MTC Fees Order, the Giuliani Businesses Fees Order, and the Sanctions Fees Order. This will perfect the Court-awarded attorneys' fees orders into procedurally proper vehicles by which Plaintiffs can register those orders in other judicial districts in the United States under 28 U.S.C. § 1963 and then enforce through a writ of execution under Federal Rule of Civil Procedure ("FRCP") 69. *See Northern Mariana Islands v. Millard*, 845 F.Supp.2d 579, 580-82 (S.D.N.Y. 2012) (affirming use motion under FRCP 69(a) to enforce an out-of-state judgment registered in S.D.N.Y. under 28 U.S.C. §

1963); *Big Top Koolers, Inc. v. Circus-Man Snacks, Inc.*, No. 10-MC-257 (RRM), 2010 WL 4852468, at *3 (E.D.N.Y. Nov. 22, 2010) (finding proper plaintiffs' registration out-of-state judgment under 28 U.S.C. § 1963 and subsequent enforcement through writ of execution under FRCP 69(a)).

### ii. The Court Should Enter An Order Permitting Plaintiffs To Register The Fees Orders In Other Judicial Districts Of The United States.

The Court should also enter an order permitting Plaintiffs to register the Fees Orders in other judicial districts in the United States, including the Southern District of New York.

Good cause exists to allow Plaintiffs to register the Fees Orders in other judicial districts in the United States pursuant to 28 U.S.C. § 1963. Giuliani's Financial Documents reflect that Defendant Giuliani does not have any assets in the District of Columbia, but maintains significant assets in other judicial districts, including but not limited to the Southern District of New York. (Gottlieb Decl. ¶ 6.) No greater showing is needed to demonstrate good cause. *See e.g., Non-Dietary Exposure Task Force*, 309 F.R.D. at 69.

Two additional facts confirm the urgency of Plaintiffs' instant motion and provide additional support that good cause exists. First, Defendant Giuliani faces numerous other, costly litigation matters, and appears to be facing creditor actions already, including one by his attorney, Robert Costello. Second, given Defendant Giuliani's months-long failure to pay Plaintiffs' Motion to Compel Fees, which is likely to be far less than the damages award Plaintiffs will seek in this matter, there is good cause to believe that Defendant Giuliani intends to evade payment of the fees awarded with the Giuliani Businesses motion to compel and the Sanctions Motion, as well as any eventual jury award, indefinitely.

    **c. The Court Should Award Plaintiffs' Attorneys' Fees Associated with the Cost of this Submission.**

As it has already now done three times before, the Court should award Plaintiffs' attorneys' fees for this submission. *See Parsi*, 778 F.3d at 130. Plaintiffs will, following an order by this Court, submit documentation regarding the fees and costs associated with this submission.

## CONCLUSION

For the foregoing reasons, Plaintiffs' request that the Court order the sanctions detailed in the above submission.

DATED: September 29, 2023

| | |
|---|---|
| */s/ Michael J. Gottlieb*<br>**WILLKIE FARR & GALLAGHER LLP**<br>Michael J. Gottlieb (974960)<br>Meryl C. Governski (1023549)<br>J. Tyler Knoblett (1672514)<br>Timothy P. Ryan (1719055)<br>1875 K Street NW<br>Washington, DC 20006<br>Tel: (202) 303-1000<br>Fax: (202) 303-2000<br>mgottlieb@willkie.com<br>mgovernski@willkie.com<br>jknoblett@willkie.com<br><br>**WILLKIE FARR & GALLAGHER LLP**<br>M. Annie Houghton-Larsen*<br>787 7th Avenue<br>New York, New York<br>Tel: (212) 728-8164<br>Fax: (212) 728-9164<br>mhoughton-larsen@willkie.com | **UNITED TO PROTECT DEMOCRACY**<br>John Langford*<br>Rachel Goodman*<br>82 Nassau Street, #601<br>New York, NY 10038<br>Tel: (202) 579-4582<br>john.langford@protectdemocracy.org<br>rachel.goodman@protectdemocracy.org<br><br>**DUBOSE MILLER LLC**<br>Von A. DuBose*<br>75 14th Street NE<br>Suite 2110<br>Atlanta, GA 30309<br>Tel: (404) 720-8111<br>dubose@dubosemiller.com<br><br>**UNITED TO PROTECT DEMOCRACY**<br>Christine Kwon*<br>555 W. 5th St.<br>Los Angeles, CA 90013<br>Tel: (919) 619-9819<br>Christine.kwon@protectdemocracy.org<br><br>**UNITED TO PROTECT DEMOCRACY**<br>Sara Chimene-Weiss*<br>7000 N 16th Street Ste. 120, #430<br>Phoenix, AZ 85020<br>Tel: (202) 579-4582<br>sara.chimene-weiss@protectdemocracy.org |

- 15 -

**UNITED TO PROTECT DEMOCRACY**
Brittany Marie Williams*
15 Main St., Suite 312
Watertown, MA 02472
Tel: (202) 579-4582
brittany.williams@protectdemocracy.org

**Admitted pro hac vice*

***Attorneys for Plaintiffs Ruby Freeman and Wandrea' Moss***