## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUBY FREEMAN | Civil Action No. 21-3354 (BAH) |
| *and* | |
| WANDREA MOSS, | Judge Beryl A. Howell |
|     *Plaintiffs*, | |
|   v. | |
| RUDOLPH W. GIULIANI, | |
|     *Defendant*. | |

### JOINT PRE TRIAL SUBMISSION

## I.  JOINT STATEMENT OF THE CASE

    This is a civil case. The Plaintiffs, Ruby Freeman and Wandrea' ArShaye ("Shaye") Moss, claim that Defendant Rudolph W. Giuliani defamed them, intentionally inflicted emotional distress on them, and engaged in a conspiracy with others to do the same. Plaintiffs served as election workers at the State Farm Arena in Fulton County, Georgia during the 2020 presidential election. Defendant Giuliani is the former mayor of New York City, an attorney who has practiced law for decades, and a current media personality with his own radio shows and podcasts. Defendant Giuliani served as a surrogate for former President Donald J. Trump during his unsuccessful bid for re-election in 2020, including as part of the campaign to undermine the legitimacy of that election in battleground states like Georgia. Defendant Giuliani publicly accused Plaintiffs of committing various acts of election fraud. Those acts included: illegally excluding poll watchers under false pretenses; sneaking in and hiding illegal ballots in suitcases

under tables; illegally counting ballots multiple times; and passing a USB drive with the intent of changing the vote count in the voting tabulation devices.  Ms. Freeman and Ms. Moss allege that Defendant Giuliani's actions have caused them to suffer and continue to suffer extensive emotional and reputational harm, including as manifested in profane and vile threats.  The Court has already determined that Defendant Giuliani is liable for defamation *per se*, intentional infliction of emotional distress, and conspiracy, and that Ms. Freeman and Ms. Moss are entitled to receive compensation, including in the form of punitive damages, for Defendant Giuliani's willful conduct.  The only issue remaining in this trial will be for a jury to determine how much Defendant Giuliani owes to Plaintiffs for the damage his conduct caused.

## II.     ESTIMATED LENGTH OF THE EVIDENTIARY PORTION OF TRIAL

The estimated length of trial is 4 days.

**Plaintiffs**: 2-3 days

**Defendant:** Defendant does not expect to present a separate case in chief and agrees with Plaintiffs' estimate of time.

## III.    STATEMENT OF CLAIMS

**Plaintiffs:**

Plaintiffs filed this lawsuit against Defendant Giuliani for defamation *per se*, intentional infliction of emotional distress ("IIED"), and civil conspiracy.

As to Plaintiffs' claim for defamation *per se*, Plaintiffs pleaded, and the Court found in its August 30, 2023 order, that: (1) Defendant Giuliani made false and defamatory statements about Plaintiffs; (2) without privilege to third parties; (3) and with actual malice; and (4) which caused Plaintiffs harm; and (5) which constitute defamation *per se* in that they damaged them in their trade, office, or profession by claiming that they participated in criminal activity.  *See* Am. Compl. ¶¶ 4-13, 57-135, 162-177; ECF No. 31 (Order Denying Motion to Dismiss) at 12-22; ECF No. 94

(Default Judgment Order) at 41-47.  The only unresolved issue for trial regarding Plaintiffs' claim of defamation is the amount of damages Defendant Giuliani owes for defaming Plaintiffs.  ECF No. 94 at 6, 56.

As to Plaintiffs' claim for IIED, Plaintiffs pleaded, and the Court found in its August 30, 2023 order, that Defendant Giuliani's (1) conduct was extreme and outrageous and (2) intentionally (3) caused Plaintiffs severe emotional distress.  *See* Am. Compl. ¶¶ 14-17, 136-162, 178-186; ECF No. 31 at 22-23; ECF No. 94 at 41-47.  The only unresolved issue for trial regarding Plaintiffs' claim of IIED is the amount of damages Defendant Giuliani owes Plaintiffs.   ECF No. 94 at 6, 56.

As to Plaintiffs' claim for civil conspiracy, Plaintiffs pleaded, and the Court found in its August 30, 2023 order, that Defendant Giuliani: (1) entered into an agreement with at least two others (2) to defame and inflict emotional distress on Plaintiffs, who (3) suffered injury as a result of actions performed by the parties in furtherance of the conspiracy.  *See* Am. Compl. ¶¶ 37-39, 57-64, 187-191; ECF No. 31 at 23-25; ECF No. 94 at 41-47.  The only unresolved issue for trial regarding Plaintiffs' claim of civil conspiracy is the amount of damages Defendant Giuliani owes Plaintiffs.  ECF No. 94 at 6, 56.

Defendant Giuliani does not contest the Court's personal jurisdiction over him or that the Court has subject matter jurisdiction over this action.  *See* Am. Compl. ¶ 25; Answer to Am. Compl. ¶¶ 22-25.  The Court has jurisdiction over this action and Defendant Giuliani pursuant to 28 U.S.C. § 1332(a)(1), as the amount in controversy exceeds $75,000 exclusive of interests and costs, and because this action is between citizens of different states.  *See* Am. Compl. ¶ 22; Answer to Am. Compl. ¶ 22.  The Court has personal jurisdiction over Defendant Giuliani pursuant to §

13-423 of the District of Columbia Code because Defendant transacted business within the District of Columbia; was licensed to practice law within the District of Columbia; caused tortious injury to Plaintiffs within the District of Columbia; and caused tortious injury by conduct that occurred outside of the District of Columbia, but resulted in business and substantial revenue from services rendered within the District of Columbia.  *See* Am. Compl. ¶ 23; Answer to Am. Compl. ¶ 23. Additionally, the Court has personal jurisdiction over Defendant Giuliani because he made defamatory statements about Plaintiffs and published them within the District.  *See* Am. Compl. ¶ 24; Answer to Am. Compl. ¶ 24.   Accordingly, venue is also proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to this action occurred in the District of Columbia.  *See* Am. Compl. ¶ 26; Answer to Am. Compl. ¶ 26.

## IV.   STATEMENT OF DEFENSES

The Court has stricken Giuliani's affirmative defenses in the Court's sanctions orders. However, Giuliani will argue that Plaintiffs cannot show more than a de minimis relationship between their alleged harm and Giuliani's conduct and disputes the weight of the evidence as advanced                                           by                                           Plaintiffs.[1]

---

[1] Giuliani participates in this Joint Submission pursuant to the Court's prior Orders, but does not, hereby waive any appellate rights to challenge the propriety of the Court's prior Orders or that the Court clarify or reconsider prior Orders.  Giuliani contends, for example, that the Court erred in holding that Plaintiffs' properly pleaded their conspiracy claim.  Plaintiffs do not concede that Defendant Giuliani appropriately preserved any argument, including with respect to the conspiracy claim.

## V.     LIST OF WITNESSES

### A.     Plaintiffs' List of Witnesses[2]

| Witness | Witness Address | Description of Testimony | Est. Time on Direct | Will/ May Call | Objections |
|---|---|---|---|---|---|
| Ruby Freeman (live) | % Counsel | Ms. Freeman will testify about: her personal and professional background; her service as an election worker for the 2020 Presidential Election; Defendant Giuliani, and his co-conspirators', defamation and IIED of her and the threats, harassment, and harm she and her family experienced and continues to experience as a result. | 1.75 hrs. | Will call | |
| Wandrea' "Shaye" Moss (live) | % Counsel | Ms. Moss will testify about: her personal and professional background; her service at the Fulton County Board of Elections, including during the 2020 Presidential Election; Defendant Giuliani, and his co-conspirators', defamation and IIED of her and the threats, harassment, and harm she and her family experienced and continues to experience as a result. | 3 hrs. | Will call | |
| Dr. Ashlee Humphreys* (live) | 1870 Campus Drive, MTC 3-109, Evanston, IL 60208 | Dr. Humphreys will testify about: her professional background; Defendant Giuliani's statements regarding Plaintiffs since December 3, 2020; her expert analysis of the reach of Defendant Giuliani and his co-conspirators' statements regarding Plaintiffs; the reputational impact of those statements on Plaintiffs; and the estimated cost to repair Plaintiffs' reputations. | 4 hrs. | Will call | |
| Regina Scott, Jensen Hughes Representative (live) | 10 S. Wacker Drive Suite 1300 Chicago, Il 60606 | Ms. Scott will testify regarding her professional background and the results of social media monitoring for threats and negative commentary about Plaintiffs posted between November 21, 2022 to present. | 15 minutes | Will call | |

---

[2] Plaintiffs reserve the right to call any witness included on Defendant's list.

| Witness | Witness Address | Description of Testimony | Est. Time on Direct | Will/ May Call | Objections |
|---|---|---|---|---|---|
| Rudolph W. Giuliani (live) | % JOSEPH D SIBLEY IV 1108 Lavaca St Austin, TX 78701 | Defendant Giuliani may testify regarding: the defamatory statements the made regarding Ms. Moss and Ms. Freeman; his and his team's efforts to overturn the results of the 2020 Presidential election in Georgia; and his conduct during the above-captioned litigation. | 1 hr. | May call | |
| Bernard Kerik (via deposition designation) | N/A | Bernard Kerik may testify about working with Defendant Giuliani to overturn the 2020 Presidential election and the allegations against Plaintiffs at issue in this litigation. | 15 minutes | May call | See footnote 1. |
| Ray S. Smith, III (via deposition designation) | N/A | Ray S. Smith, III may testify about the allegations against Plaintiffs at issue in this litigation and the State Farm Arena video depicting Plaintiffs working the 2020 election. | 15 minutes | May call | See footnote 1. |
| Jenna Lynn Ellis (via deposition designation) | N/A | Jenna Lynn Ellis may testify regarding Defendant Giuliani's efforts and strategy to overturn the 2020 Presidential election, and regarding the State Farm Arena video depicting Plaintiffs working the 2020 election. | 15 minutes | May call | See footnote 1. |
| Frank Paul Braun, III (via deposition designation) | N/A | Frank Paul Braun, III may testify regarding: his background, the allegations against Plaintiffs at issue in this litigation; and the Georgia Secretary of State's investigation taken to investigate these allegations and the related findings. | 30 minutes | May call | See footnote 1. |
| Christina Bobb (via deposition designation) | N/A | Christina Bobb may testify about working with Defendant Giuliani to overturn the 2020 Presidential election and the allegations against Plaintiffs at issue in this litigation. | 15 minutes | May call | See footnote 1. |
| Jacki Pick (via deposition designation) | N/A | Jacki Pick may testify about the circumstances surrounding and presenting portions of the State Farm Arena video on December 3, 2020. | 15 minutes | May call | See footnote 1. |

| Witness | Witness Address | Description of Testimony | Est. Time on Direct | Will/ May Call | Objections |
|---|---|---|---|---|---|
| Frances Watson (via deposition designation) | N/A | Frances Watson may testify about: her background, the allegations against Plaintiffs at issue in this litigation; and the Georgia Secretary of State's investigation taken to investigate these allegations and the related findings. | 30 minutes | May call | See footnote 1. |
| Pamela Michelle Branton (via deposition designation) | N/A | Ms. Branton may testify about her experience at State Farm Arena during the 2020 Presidential election. | 15 minutes | May call | See footnote 1. |

**B.       Defendant's List of Witnesses[3]**

| Witness | Description of Testimony | Est. Time on Cross/Direct | Will/ May Call | Objections |
|---|---|---|---|---|
| Ruby Freeman (live) | Ms. Freeman will be cross-examined on her alleged damages resulting from Giuliani's conduct. | 1 hr. | Will call | |
| Wandrea' "Shaye" Moss (live) | Ms. Moss will be cross-examined on her alleged damages resulting from Giuliani's conduct. | 1 hr. | Will call | |
| Dr. Ashlee Humphreys (live) | Dr. Humphreys will be cross-examined on her opinions regarding the alleged damages resulting from Giuliani's conduct as well as her underlying assumptions, methodology, and reliability of same. | 2 hrs. | Will call | |
| Regina Scott, Jensen Hughes Representative (live) | Ms. Scott may be cross-examined on her opinions regarding the alleged damages resulting from Giuliani's conduct as well as her underlying assumptions, methodology, and reliability of same. | 30 minutes | Will call | |

---

[3] Defendant reserves the right to call any witness included on Plaintiffs' list.

| Witness | Description of Testimony | Est. Time on Cross/Direct | Will/ May Call | Objections |
|---|---|---|---|---|
| Rudolph W. Giuliani (live) | Defendant Giuliani may testify regarding: the statements he made regarding Ms. Moss and Ms. Freeman; and the circumstances surrounding those statements.[4] | 1 hr. | Will call | |

## VI.    EXHIBIT LIST

### A.    Plaintiffs' Exhibit List

Attached at Appendix A.

### B.    Defendant's Exhibit List

None.

## VII.   DEPOSITION DESIGNATIONS

### A.    Plaintiffs' Deposition Designations[5]

**BERNARD KERIK**
7:11–13
10:4–13
18:15–19:1
19:20–22
20:3–21:3–12
35:9–18
37:18–40:9
59:18–63:9
63:6–65:22
66:11–18
67:3–7
77:3–17
80:13–16
82:8–22
83:17–22
84:8–13

---

[4] Plaintiffs object to any testimony that runs contrary to the Plaintiffs' Consent Motion *in Limine*.

[5] Plaintiffs note that they are designating portions of deposition transcripts for current purposes and reserve the right not to play all of, or any of, the designations provided at trial.

85:6–87:17
99:17–100:5
102:6–103:4
104:20–105:7
124:13–19
125:9–15
130:12–133:2
162:2–20
163:2–166:19
167:10–169:2
172:17–173:18

**RAY S. SMITH, III**
15:3–7
18:4–9
24:5–21
26:15–27:6
28:18–29:23
36:16–37:24
40:3–21
47:4–9
49:2–17
57:16–58:9
63:24–68:24
72:18–74:15
134:17–138:10

**JENNA LYNN ELLIS**
6:24–7:5
8:10–20
17:22–18:8
18:19–25:9
27:8–29:5
31:21–32:22
35:4–39:25
43:12–15
43:19–44:6
47:14–48:5
50:16–58:6
59:16–21
60:16–61:2
61:15–62:5
64:19–67:3
71:19–72:5
74:22–75:1
73:15–74:2

75:17–76:19
84:4–23
85:13–86:8
86:16–87:17
88:6–91:6
93:9–97:2
99:5–18
102:9–105:11
106:2–20
108:15–109:5
112:8–115:24
116:24–124:16
133:5–137:21
138:4–142:25
143:6–151:8
151:24–158:23
159:2–160:10
164:8–166:12
166:17–175:3
175:4–14
177:6–178:7
178:22–182:13

**FRANK PAUL BRAUN, III**
6:9–11
9:13–11:23
14:1–16:20
17:13–15
18:16–19:12
43:19–44:1
44:15–46:04
54:14–24
58:24–59:21
61:2–18
62:5–63:5
65:5–72:7
75:8–76:16
77:15–78:3
78:8–19
79:9–80:6
82:3–85:4
87:19–90:18
91:11–92:16
93:7–95:17
98:23–99:20
102:13–103:3

112:18–21
119:23–120:1
121:25–123:2
129:15–138:13
140:2–142:8
143:2–144:18
152:1–13
153:5–155:21
167:10–168:13
168:14–173:7

**CHRISTINA BOBB**
6:13–15
13:2–19
16:11–18:10
18:17–19:3
21:10–23:14
24:7–26:17
29:2–11
32:7–33:24
34:16–35:9
38:11–22
39:13–41:21
44:4–25
48:6–49:5
51:25–54:6
56:4–57:24
58:25–59:16
59:21–60:2
63:10–19
63:23–64:9
65:16–66:2
70:13–71:18
72:5–8
75:9–79:18
80:3–19
80:20–83:7
83:14–84:2
85:14–22
86:25–87:11
87:16–88:2
88:18–23
89:17–90:5
90:22–91:19
93:3–12
93:13–15

93:20–94:6
95:7–15
97:23–100:12
105:9–25
107:1–4
108:17–109:1
110:15–111:10
120:6–19
124:23–125:14
127:9–21
128:23–129:11
132:19–133:9
134:5–24
134:25–135:14
137:12–138:11
142:16–23
144:21–145:7

**FRANCES WATSON**
9:5–7
10:3–8
12:4–17:25
17:17–18:6
19:1–20:21
24:7–12
35:2–19
37:13–24
57:18–59:14
63:21–69:13
71:5–16
71:21–75:10
80:2–81:11
84:23–86:8
86:25–88:14
102:5–106:6
107:19–108:5
115:11–15
115:23–119:14
119:19–122:17
124:22–125:8
127:21–131:13
133:23–134:14
136:5–144:8
145:10–21
166:2–167:21

**JACKI PICK**
8:10–12
10:5–10
38:2–11
42:23–43:6
43:24–44:3
47:17–19
51:6–14
100:22–101:1
101:19–22
103:2–12
104:1–15
106:1–14
109:10–14
124:25–125:2
145:11–147:5
147:23–148:17
149:1–150:4
258:19–259:8
270:14–271:18
290:14–291:2

**PAMELA MICHELLE BRANTON**
6:9–17
7:5–8
13:4–13:19
14:2–15:19
19:18–21:4
22:16–22:23
23:15–23:17
25:2–25:13

       **B.**      **Defendant's Deposition Designations[6]**

Defendant does not designate any deposition testimony.

**VIII.**   **ITEMIZATION OF DAMAGES**

       **A.**      **Nominal Damages**

Plaintiffs will ask the jury to award nominal damages of at least two dollars.

       **B.**      **Compensatory Damages**

---

[6] See also, footnote 1.

1.      <u>Defamation *Per Se* / Reputational Damages</u>

Plaintiffs are entitled to compensatory damages for all actionable statements attributable to

Defendant Giuliani based on theories of direct and indirect liability.  Plaintiffs will seek a sum

ranging from $15.5 million to $43 million, inclusive of special damages,[7] in connection with the

following actionable statements:

| DEFAMATORY STATEMENT |
|---|
| **Direct Liability** |
| Giuliani Presidential Legal Defense Team, Strategic Communications Plan (Dec. 27, 2020), https://perma.cc/VP2S-CJMR (on or after December 23, 2020)**[8]** |
| "**MASSIVE CORRUPTION IN THE ELECTION PROCESS LED TO A VOTE TALLY THAT IS FRAUDULENT** . . . **Fraudulent Ballots** . . . Fulton County, GA, video of suitcases of fraudulent ballots." |
| "Election Official Ruby Freeman is seen surreptitiously & illegally handing off hard-drives ON CAMERA in the Georgia counting facility." |

[7] Special damages include costs related to Ms. Freeman's need to secure and relocate from her home, and Ms. Moss' loss of employment, which amount to out-of-pocket costs on or around $1,000,000 to $1,500,000.

[8] The actionable statements were published and re-published in multiple places, this column provides only one source, and is not meant to provide an exhaustive list of the most relevant locations.  Defendant contends that Plaintiffs are limited to only those statements and/or co-conspirators specifically alleged in the Amended Complaint.  Plaintiffs disagree.  The Court entered default judgment in part because Defendant Giuliani's discovery violations in this case prevented Plaintiffs from developing evidence relating to liability for *all* of the conduct relating to the alleged conspiracy, which includes not just the particular statements highlighted in the Amended Complaint, but all of the statements to which the complaint refers or incorporates by reference, which collectively includes all of the statements listed herein.  Dr. Ashlee Humphreys disclosed her opinions relating to those statements before the default judgment order, meaning that Defendant Giuliani had notice of Plaintiffs' intent to prove damages relating to those statements at the time that he attempted to stipulate to liability.  (Opening report served on July 28; supplement served on October 6).  It is Plaintiffs' position that they are entitled to prove damages based upon all of the statements included or relied upon by Dr. Humphreys.  Plaintiffs respectfully request that the Court clarify the scope of the default judgment to confirm it applies to all of the statements disclosed in Dr. Humphreys' reports, or if it is not inclined to do so, Plaintiffs respectfully suggest that the appropriate remedy would be to amend that Order and/or to permit Plaintiffs to amend the pleadings to conform to the evidence produced in discovery or adduced at trial, see Fed. R. Civ. P. 15(a)(2), 15(b)(1).  If the Court believes further briefing on the matter would be useful, Plaintiffs are prepared to submit the same.

| | |
|---|---|
| | "**YOU CANNOT LET AMERICA ITSELF BE STOLEN BY CRIMINALS – YOU MUST TAKE A STAND AND YOU MUST TAKE IT TODAY.**" |
| | "Video of Ruby and Shay [sic] at midnight . . . That is the time of the 200,000 vote bump . . . No Watermain Break – a lie to get the Republican observers and media to leave at 10:30pm." |
| | "'**Suitcase Gate**' - Video of 'ballot stuffing' when 'suitcases' (container type) filled with ballots (approximately 6,000 in each container) were rolled out from under table at GA arena and placed in tabulation machines (one batch repeatedly tabulated at least 3 times) by [X number] of poll workers who remained AFTER all Poll Watchers (GOP and the like), press and all third parties were required to leave the premises per announcement at or about [AM] until [AM] in violation of election laws enacted by GA state legislature." |
| | "Ruby Freeman (woman in purple shirt on video), now under arrest and providing evidence against GA SOS Stacey Abrams and DNC on advanced coordinated effort to commit voter / election fraud [*need confirmation of arrest and evidence*]." |

| | |
|---|---|
| *Rudy Giuliani, Christmas Is Not Canceled, It's Vital This Year* | Rudy Giuliani | Ep. 96, RudyGiulianics.com (Dec. 23, 2020), https://perma.cc/FY6G-EEJD. | |
| | "There's a video recording in Fulton County, Georgia, of what is obviously, without any doubt, the theft of votes. You have to be a naïve child or a completely dishonest partisan not to realize that the observers are being thrown out of the room. A phony excuse of a water main break was used. They still were thrown out of the room, didn't want to leave. Once they were all left and a last check was done around the hall, the workers for Atlanta—for Fulton County—the five or six, one of whom has a history of voter fraud participation, Ruby Freeman, uh, they scurry under these desks. Hardly where you would keep ballots, right? And they start taking ballots out and then put them on a wheelbarrow sort of thing and wheel them around. And you can see the ballots don't really look like, like absentee ballots that are in envelopes; they look more like pristine pieces of paper. And then they're given out and very quickly are being counted, counted, counted, counted, there are times in which it appears that they were being counted more than one time—three, four, five, six, seven times, eight times. . . . [I]t's quite clear no matter who they're doing it for, they're cheating. It looks like a bank heist." |

| | |
|---|---|
| Rudy Giuliani, *Who Will Be Our President? The Current State of Our Country* | Rudy Giuliani | Ep. 97, RudyGiulianics.com (Dec. 25, 2020), https://perma.cc/8XLB-SS62. | |
| | "Live from Fulton County, let's watch the Democrats steal the election! And there you see it. Ruby Freeman and her crew getting everybody out of the center, creating a false story that there was a—that there was a water main break. No water main break. They get everybody out. They wait, they wait, they wait. They check, they check, they check, like they're gonna do a heist, and all of a sudden the crooks sprang into action. They go under a desk covered like a casket, and they start pulling ballots out. Tremendous numbers of ballots. And they bring them over to one counting stand, all the way over here, another counting stand, another—and they keep looking around to make sure there's nobody in the room! . . . Every once in a while, you look closely, you can them doing this—one ballot [gestures scanning a ballot multiple times]. You know what that does? That takes Biden and multiplies it by 5." |
| | "[J]ust look at the tape. That accounts for anywhere from 40 to 80,000 votes. The number then when we look at it on, was like 138,000 for Biden and 2,000 for Trump. |

| | Take those out of their numbers— Trump won Georgia honestly.  We want honest votes here." |
|---|---|
| OAN, *EXCLUSIVE: OAN's Chanel Rion talks election fight with Rudy Giuliani*, OAN (Dec. 30, 2020),    https://rumble.com/vcahxx-exclusive-oans-chanel-rion-talks-election-fight-with-rudy-giuliani.html. | |
| | "There are five or six states that can make the difference here and that have the evidence already have the evidence that shows that the Biden people stole the election, and not only that, they have the evidence that shows that Trump actually had more votes.  Georgia is maybe the easiest to demonstrate because it's on video.  During that videotape, that we can all see right in front of our eyes, we can see them stealing the votes.  We can see them throwing out the people.  We can see them counting them four and five times.  We also have the statistics during that period of time, 120,000 votes for Biden, couple hundred votes for Trump, no observers, makes it totally illegal.  That alone changes the election.  That alone means that if you get rid of those illegal votes, Trump wins Georgia by 40 or 50 thousand votes. . . . Georgia has the one video tape, I consider it like the Zapruder film was to the Kennedy assassination, this film will live for a hundred years.  For a hundred years, this film will show that the the, the 2020 presidential election, there was an attempt to steal it." |
| | "I've heard Democratic senators get on television and say it's espionage to say that it was fraud.  You're not gonna tell me that.  I see, I can see the fraud, it's in front of my eyes.  What am I supposed to do, close my eyes and make believe that in Fulton County, Georgia, when they closed the doors, and they got rid of the public, and they started triple counting ballots and it ends up being 120,000 for, for Biden and 3,000 for Trump?  They weren't cheating?  Am I stupid?" |
| Rudy W. Giuliani, *I Can't Say This on National Television* | Rudy giuliani | Ep. 98, YouTube (Dec. 30, 2020), https://web.archive.org/web/20210223225629/https://www.youtube.com/watch?v=7vRckA6PqGA. | |
| | "[T]he Fulton County vote counting [videotape], which in and of itself proves that Georgia was stolen by, uh, Joe Biden and by the Democrats.  That one video proves it." |
| | "[T]he first thing that the election workers do . . . is they, um, move out the observers. . . . [T]hey make sure there's no one around, they make sure the doors are locked so nobody else can come in, and then at a certain point they look around again, and they go under a table covered by a black, like a black blanket, and they start pulling out ballots.  Now we begin with, why are ballots under a table?  And then they start distributing those ballots for counting to three or four different areas where there are counting machines.  And you can see it's done very hurriedly; it's done in a way suggesting that they are nervous about what they're doing, and by the way, even if these ballots were legitimate ballots, which I doubt they are, this would be entirely illegal.  And every one of those ballots would be declared null and void because each one of these ballots is being counted in violation of the law of Georgia that in fact there must be the public present when ballots are being counted . . . . [I]t looks an awful lot like a bank heist, doesn't it?" |
| OAN, 1/18/2021 - Rudy Giuliani, Rep. Marjorie Taylor Greene, Brandon Tatum, Anna Paulina Luna & Peter Roff, Spotify (Jan. 19, 2021), https://perma.cc/HZ6F-WQ5Z. | |
| | "I get banned from any of the big tech things when I say that not only was there voter fraud, I have evidence of it, I've seen it, I have a motion picture of it.  I can show you |

| | the voter fraud in living color. It was done in Fulton County, Georgia, it was well over 30,000 ballots were stolen. They were attributed to Biden instead of Trump.  Had they been caught and held to account for it, Trump would have won Georgia." |
|---|---|
| OAN, *The Real Story - OAN Uncovering the Crime of the Century with Rudy Giuliani*, Rumble (June 14, 2021), https://perma.cc/6KZB-EBT3. | |
| | "But for sure there was fraud, you can't say there wasn't fraud. . . . The law of Georgia is that the ballots have to be counted in public.  They deliberately threw people out and counted the ballots in private, and there's videotape of it.  That wasn't enough.  I don't know what you've got to do to prove it.  They committed the crimes on video. You can see them do it.  They lied about it.  Then you can see these same people handing off flash drives to each other." |
| | "Well, I think Georgia is, uh, in terms of proof, the clearest proof . . . but, uh, in terms of proof, Georgia has every kind of proof you could possibly imagine."  . |
| | "I mean, the explanation for that videotape is absurd because you can see them—you can see them throw the people out.  And the law specifically says you can't count in private, so they threw the people out. They used this phony excuse that there was going to be some kind of a water main break.  It was not. There was no water main break, and then after the people were out—and you can just watch the way they're doing it.  I mean, I've watched bank robberies. I mean, this, this looked like a bank robbery.  They were doing it surreptitiously. And, uh, handing 'em off, and doing it quickly, and occasionally you can see them multiple count a vote.  Now you take the two women who ran that, there are other tapes of them earlier in the day, handing off—handing off small, hard drives and flash drives, those flash drives were used to put in the machines—the machines that supposedly weren't, uh, accessible by internet, all of which were accessible by internet.  So these women have gotten away scot-free." |
| | "No one's even questioned them.  I mean, you have to look at that videotape and say, as least there should be an investigation, and they should be put under oath as to what they were doing. . . . Republicans, Democrats, reporters, and everyone else.  You see them unceremoniously ushered out.  And then you see the woman check out the whole place to make sure there's nobody there and that's when they get the ballots from under the table, and that's when they start counting the ballots under the table." |
| | "Another thing your listeners should understand, Natalie, is they did this in crooked Democratic cities.  Not everywhere.  This was a very, very well planned, executed, fraud." |
| *The Real Story – Exposing Disinformation with Rudy Giuliani*, Rumble (July 23, 2021), https://perma.cc/EC3V-TGDH. | |
| | "How about the videotape that I have where they're shoving the thing into the machine three and four times so they can be recounted by the same two women that earlier in the day were passing around hard drives or flash drives that supposedly can't be used in Dominion machines, but can." |
| | "I have the truth." |
| OAN, T*he Real Story - OAN Pennsylvania Shenanigans with Rudy Giuliani*, Rumble (Dec. 11, 2021), https://perma.cc/NJE9-BYGY. | |
| | "The situation in Georgia, uh, that videotape is about as clear evidence of stealing votes as I've ever seen.  And it was mischaracterized by the Secretary of State, the crooked |

| | |
|---|---|
| | Governor Kemp, uh, the Democrats—I mean, they're all in league together. . . . In any event, you've got a tape in, in, in Georgia that's crystal clear, it looks like a, it looks like a bank robbery, my goodness. And, uh this [Pennsylvania tape] is very, very clear. There are about ten others. There's no doubt that people stole votes in that election for Biden, and the numbers are—I would say—way beyond what was necessary to switch the vote in about four states. But they certainly are extremely significant and can't be ignored. When people cheat in elections on some kind of substantial scale, how do you know in advance without investigating whether it affects the election or not? Right?" Am. Compl. ¶ 96. |
| | Rudy Giuliani's Common Sense, *Listen to What John Solomon Found Out About the Presidential Election!* | Rudy Giuliani | Ep. 204, Rumble (Jan. 12, 2022), https://perma.cc/9HRD-2SGN. |
| | "So you remember, remember the, the very famous video of the whole day of the, there was a, uh, the arena had a, had a, had a security camera that was unknown to the participants. So several days, if not weeks, after the election the, the, uh, company came forward with tapes of this very suspicious activity where the people were thrown out of the arena, the observers. All the doors were locked—." |
| **Conspiracy Liability** | |
| Team Trump (@TeamTrump), Twitter (Dec. 23, 2020, 10:02 AM), https://twitter.com/TeamTrump/status/1341760977470062597. | |
| | While the State Farm Arena Video is displayed on screen, a voiceover states: "Ballots miraculously appeared, Biden Ballots added in the middle of the night." |
| Team Trump (@TeamTrump), Twitter (Dec. 23, 2020, 2:18 PM), https://twitter.com/TeamTrump/status/1341825401371430913 | |
| | While the State Farm Arena Video is displayed, a voiceover states: "Election observers in Georgia thought they were done counting for the night. But when they went home, security footage shows poll workers pulling out trunks containing ballots from overwhelmingly Democrat precincts. The media won't admit it, but it's on video." |
| *Transcript: President Trump's Phone Call With Georgia Election Officials*, N.Y. Times (Jan. 3, 2021), https://perma.cc/G7JW-AKQ8. | |
| | "We had at least 18,000 that's on tape – we had them counted very painstakingly – 18,000 voters having to do with Ruby Freeman. She's a vote scammer, a professional vote scammer and hustler, Ruby Freeman." |
| | "[T]hey said very clearly and it's been reported that they said there was a major water main break. Everybody fled the area. And then they came back – Ruby Freeman, her daughter, and a few people. There were no Republican poll watchers." |
| | "Late in the morning, they went – early in the morning, they went to the table with the black robe – the black shield and they pulled out the votes. Those votes were put there a number of hours before. The table was put there – I think it was – Brad, you would know. It was probably eight hours or seven hours before, and then it was stuffed with votes. They weren't in an official voter box. They were in what looked to be suitcases or trunks – suitcases, but they weren't in voter boxes." |
| | "But it had slow motion and it was magnified many times over, and the minimum it was was 18,000 ballots, all for Biden." |

| |
|---|
| "[W]e're so far ahead of these numbers, even the phony ballots of Ruby Freeman – known scammer." |
| "That was – the minimum number is 18,000 for Ruby, but they think it's probably about 56,000.  But the minimum number is 18,000 on the Ruby Freeman night where she ran back in there when everybody was gone and stuffed – she stuffed the ballot boxes.  Let's face it, Brad.  I mean, they did it in slow-motion replay magnified, right?  She stuffed the ballot boxes.  They were stuffed like nobody's ever seen them stuffed before." |
| "She stuffed the ballot – each ballot went three times.  They were showing here's ballot number one, here it is a second, third time, next ballot." |
| "We have a new tape that we're going to release.  It's devastating.  And by the way, that one event, that one event is much more than the 11,000 votes that we're talking about.  It's, you know, that one event was a disaster.  And it's just, you know, but it was, it was something, it can't be disputed.  And again, we have a version that you haven't seen, but it's magnified.  It's magnified, and you can see everything.  For some reason, they put it in three times, each ballot, and I don't know why.  I don't know why three times.  Why not five times, right?" |
| "[W]hy did they put the votes in three times?  You know, they put them in three times." |
| "And the minimum – there were 18,000 ballots but they used them three times.  So that's, you know, a lot of votes.  And that one event – and they were all to Biden, by the way; that's the other thing we didn't say.  You know, Ruby Freeman, one thing I forgot to say which was the most important.  Do you know that every single ballot she did went to Biden?  You know that, right?  Do you know that, by the way, Brad?  Every single ballot that she did through the machines at early – early in the morning went to Biden.  Did you know that, Ryan?" |
| "No, they were 100 percent for Biden.  One hundred percent.  There wasn't a Trump vote in the whole group." |
| "We're way over that number, and just if you took just Ruby Freeman we're over that number by five or six times when you multiply it out times three, and every single ballot went to Biden." |
| Brian Naylor, Read Trump's Jan. 6 Speech, a Key Part of Impeachment Trial, NPR (Feb. 10, 2021), https://perma.cc/ECA7-UE86. |
| "In Fulton County, Republican poll watchers were ejected, in some cases, physically from the room under the false pretense of a pipe burst.  Water main burst, everybody leave.  Which we now know was a total lie." |
| "Then election officials pull boxes, Democrats, and suitcases of ballots out from under a table.  You all saw it on television, totally fraudulent.  And illegally scanned them for nearly two hours, totally unsupervised.  Tens of thousands of votes. This act coincided with a mysterious vote dump of up to 100,000 votes for Joe Biden, almost none for Trump.  Oh, that sounds fair.  That was at 1:34 AM." |

2.   IIED / Emotional Distress Damages

Plaintiffs will ask the jury to award compensatory damages for the severe emotional distress caused by Defendant Giuliani and his co-conspirators between 2020 through present in an amount to be determined by the jury, including based on Plaintiffs' mental pain and suffering, fear, inconvenience, nervousness, indignity, insult, humiliation, or embarrassment that Plaintiffs suffered directly because of Defendant Giuliani and his co-conspirators' conduct.  In support of Plaintiffs' IIED damages claim, Plaintiffs will present evidence of the reach of all statements by Defendant Giuliani and his co-conspirators in furtherance of the conspiracy, as well as the cost estimated to remediate or repair the harm caused by those statements as disclosed in the reports of Dr. Humphreys.

### C.      Punitive Damages

The Court has already determined that Plaintiffs are entitled to seek punitive damages. ECF No. 93 at 1, 3.  Plaintiffs will ask the jury to award punitive damages against Defendant Giuliani as a punishment for his outrageous conduct and to deter him and others from engaging in that kind of conduct, in an amount to be determined by the jury, including based on the relevant legal factors and adverse inferences entered in this case.

### D.      Attorneys' Fees and Costs

The Court has already determined that Plaintiffs are entitled to attorneys' fees and costs in connection with Plaintiffs' fees and costs incurred as a result of their successful Motion for Discovery Sanctions.  ECF No. 93 at 1, 3.  Plaintiffs reserve the right to seek additional costs from Defendant Giuliani pursuant to Federal Rule of Civil Procedure 54(d)(1).

### E.      Pre-Judgment And Post-Judgment Interest

The Court has already determined that Plaintiffs are entitled to pre-judgment interest as part of its award of attorneys' fees and costs in connection with Plaintiffs' successful Motion for

Discovery Sanctions.  ECF No. 93 at 2.  Plaintiffs further reserve the right to seek post-judgment interest on any post-judgment award pursuant to 28 U.S.C. § 1961(a).

## IX.    DESCRIPTION OF OTHER RELIEF SOUGHT

Plaintiffs are seeking monetary damages, as itemized above.  In addition, Plaintiffs seek permanent injunctive relief prohibiting Defendant Giuliani and his co-conspirators from publishing further defamatory statements concerning Ms. Freeman and Ms. Moss and injunctive relief ordering retraction of all prior defamatory statements concerning Ms. Freeman and Ms. Moss.

## X.    STIPULATIONS

### A.    Undisputed Facts To Which The Parties Agree, Which Can Be Referenced During Trial And Read Into The Record By The Court. [9]

- The Court has sanctioned Defendant Giuliani for misconduct relating to his failure to comply with the Court's Orders and his discovery obligations in this case, and as a result of those sanctions, has ordered Defendant Giuliani to reimburse Plaintiffs for at least $237,113 in legal fees they incurred in litigating three discovery motions, which he has not yet paid;

- The Court has determined that three discovery motions, which it determined were made necessary by Defendant Giuliani's misconduct, caused Plaintiffs to incur at least $237,113 in legal fees;

- Defendant Giuliani served as the former Mayor of New York City, has been a barred attorney for over 50 years, and has worked extensively as an attorney, including by serving as the United States Attorney for the Southern District of New York from 1983 to 1989;

- During her deposition in this action, Jenna Lynn Ellis invoked her Fifth Amendment right and refused to answer Plaintiffs' counsel's questions 448 times;

- During his deposition in this action, Ray S. Smith III invoked his Fifth Amendment right and refused to answer Plaintiffs' counsel's questions 309 times;

---

[9] Defendant will file a forthcoming trial brief that will argue a jury trial is inappropriate the remaining issues will be tried to the bench.  Plaintiffs propose to respond to that argument, and any others raised in Defendant's trial brief, pursuant to the briefing schedule proposed below.

- Defendant Giuliani has reached an agreement to become the host of a show on Newsmax2, Newsmax's newly-announced streaming channel, called America's Mayor Live w/ Rudy Giuliani, which will be aired every weeknights at 8 pm EST.

**B.    The Parties Agree That They May Reference Court Findings And Certain Factual Allegations In Their Trial Presentation.**

- The parties may reference and/or publish to the jury all of the previous findings and adverse inferences entered by the Court; and

- The parties may reference and/or publish to the jury all factual allegations in the Amended Complaint to be treated as true as a result of the Court's Default Judgment Order.

**C.    Exhibits To Which The Parties Have Stipulated As To Authenticity.**

- Documents produced to a party to this action by another party or a third party in response to compulsory process ( e.g., subpoena), a document request served upon a party pursuant to Fed. R. Civ. P. 34, or otherwise in connection with this litigation shall be deemed authentic for the purposes of this lawsuit only, absent good cause. Good cause would include issues relating to the completeness of the document (e.g., missing or incomplete pages) or any conditions in the actual document or the manner in which it was produced that raises a good-faith question of whether the document was actually generated by the relevant party or third-party;

- All posts, reposts, shares, and other user-generated content on social media platforms including Twitter and Facebook shall be deemed authentic for the purposes of this lawsuit only, absent good cause. Good cause would include issues relating to the completeness of the document ( e.g., missing or incomplete pages) or any conditions in the actual document that raises a good-faith question of whether the document was actually generated by the relevant party or third-party;

- All exhibits on the parties' exhibit lists absent good cause. Good cause would include issues relating to the completeness of the document (e.g., missing or incomplete pages) or any conditions in the actual document or the manner in which it was produced that raises a good-faith question of whether the document was actually generated by the relevant party or third-party;

- All documents admitted as exhibits during depositions, including, **PTX 1, 3, 5, 9, 13, 18, 25, 27-29, 180-81, 183-87, 189-91, 195, 196, 199, 201, 203, 204, 206-08, 211, 212, 217, 218, 221, 223, 224, 229, 230, 240, 244-46, 248, 252, 256, 257, 259-262, 272, 274, 276, 279, 285, 287, 288, 292, 293, 296, 302, 305-07, 309, 313, 319-26, 328-30, 342, 343, 345-48, 351, 362, 369-71, 378, 396, 399, 401-03, 405-12, 414, 425-27, 506, 507, 515, 517.**  The parties agree that where a party seeks to

introduce one of these such exhibits, they need not play the testimony of the deposition in which the exhibit was introduced; and

- Duplicates of the documents to which these stipulations apply are admissible to the same extent as their originals under Rule 1003 of the Federal Rules of Evidence.

**D.** **Exhibits To Which The Parties Have Stipulated As To Authenticity And Admissibility.**

- All written discovery from the above-captioned action; **[PTX-28-31; PTX-34-49]**

- Defendant Giuliani's Nolo Contendere Stipulations (Dkt. 84-2, 90); **[PTX 512; PTX 513]**

- All of the following exhibits, which are the transcripts and/or videos of the actionable statements identified above, many of which Giuliani already confirmed that he published, *see* RFAs 3-6, 9-13, and/or confirmed the accuracy of the transcriptions. *See* RFAs 92-99 **[PTX-37]**.

  o December 2020 Giuliani Strategic Plan v.1 **[PTX 2]**;
  o December 2020 Giuliani Strategic Plan v.2 **[PTX 1]**;
  o December 23, 2020 Christmas Is Not Cancelled, It's Vital This Year, Common Sense Episode Transcript **[PTX 3]**;
  o December 23, 2020 Christmas Is Not Cancelled, It's Vital This Year Common Sense Episode Video **[PTX 4]**;
  o December 25, 2020 Who Will Be Our President? The Current State of Our Country, Common Sense Episode Transcript **[PTX 5]**;
  o December 25, 2020 Who Will Be Our President? The Current State of Our Country, Common Sense Episode Video **[PTX 6]**;
  o December 30, 2020 OAN Interview by Chanel Rion Transcript **[PTX 8]**;
  o December 30, 2020 OAN Interview by Chanel Rion Video **[PTX 7]**;
  o December 30, 2020 I Can't Say This on National Television, Episode of Common Sense Transcript **[PTX 9]**;
  o December 30, 2020 I Can't Say This on National Television, Episode of Common Sense Video **[PTX 10]**;
  o January 2, 2021 call between Trump and Raffensperger Transcript **[PTX 11]**;
  o January 6, 2021 Trump Speech Transcript **[PTX 14]**;
  o January 6, 2021 Trump Speech Video **[PTX 15]**;
  o January 18, 2021 OAN with Stephanie Hamill Transcript **[PTX 17]**;
  o January 18, 2021 OAN with Stephanie Hamill OAN Audio **[PTX 16]**;
  o June 14, 2021 OAN with Natalie Harp Transcript **[PTX 18]**;
  o June 14, 2021 OAN with Natalie Harp Video **[PTX 19]**;
  o July 23, 2021 OAN with Natalie Harp Transcript **[PTX 20]**;
  o July 23, 2021 OAN with Natalie Harp OAN Video **[PTX 21]**;
  o December 11, 2021 OAN with Natalie Harp Transcript **[PTX 23]**;
  o December 11, 2021 OAN with Natalie Harp Video **[PTX 22]**;

- o January 12, 2022 Listen to What John Solomon Found Out about the Presidential Election! Common Sense Episode Transcript **[PTX 25]**;
- o January 12, 2022 Listen to What John Solomon Found Out about the Presidential Election!, Common Sense Episode Video **[PTX 24]**;
- o Team Trump (@TeamTrump), Twitter (Dec. 23, 2020, 14:18:00) **[PTX-338]**
- o Team Trump (@TeamTrump), Twitter (Dec. 23, 2020, 14:18:00) **[PTX-337]**
- o Team Trump (@TeamTrump), Twitter (Dec. 23, 2020, 10:02:00) **[PTX-335]**
- o Team Trump (@TeamTrump), Twitter (Dec. 23, 2020, 10:02:00) **[PTX-336]**

- All tweets posted on Defendant Giuliani's personal X/Twitter account (@RudyGiuliani);

- All statements and materials on Defendant Giuliani's social media accounts and business pages, including Rudy Giuliani's *Common Sense*;

- All publications cited in Plaintiffs' Amended Complaint which Defendant Giuliani admitted the fact of publication and accuracy of the quotation in his Answer to the Amended Complaint;

- All Jensen Hughes reports and spreadsheets, including:

  - o Jensen Hughes Spreadsheet November 2020 to June 2021 **[PTX 455], [PTX 456]**;
  - o May 2023 Threat Intelligence and Monitoring Report **[PTX 428]**;
  - o August 2023 Threat Intelligence and Monitoring Report **[PTX 466]**;

- All materials relied upon by Dr. Ashlee Humphreys as identified in her expert and supplemental reports. **[PTX-226 – 228; PTX-231; PTX-233 – 235; PTX-241; PTX-242; PTX-312; PTX-314 – 317; PTX-335–338; PTX-430 – 451; PTX-454; PTX-488  – 497]**;

- All documents produced by Defendant Giuliani after the close of fact discovery and to which he has not lodged any objections in the attached exhibit list, including **PTX-179]**; and

- Any portion of the State Farm Arena Video, including **[PTX-187-202]**.

## E.    **Additional Stipulations**

- Where a deposition exhibit or trial exhibit is a portion of the 48-hours State Farm Arena Video depicting four frames and requiring the use of specialized software to view, the parties agree that they may instead treat as an original, and as interchangeable a replica of that deposition exhibit that is viewable without specialized software; and

- The parties have agreed that they may use any and all orders of this Court and the full docket **[PTX-514]** in the above-captioned action as demonstratives during trial.

### F.      Process To Which The Parties Agree

- The parties request that should a party file a pretrial brief on November 20, 2023, that the Court enter the following briefing schedule: opposition – November 27, 2023; reply – December 1, 2023;

- The parties will disclose the identities of the witnesses they intend to call the next day by 12 pm EST the day before;

- The parties will exchange demonstratives they intend to use, including opening and closing presentations, by 6 pm EST the day before their intended use; and

- The parties will provide opposing counsel with a good-faith listing of the intended exhibits to be introduced on direct with a witness by 8 pm the night before the witness's expected testimony.

## XI.     DESCRIPTION OF EACH SPECIFIC ITEM OF DEMONSTRATIVE EVIDENCE, PHYSICAL EVIDENCE, OR VIDEOTAPED EVIDENCE.[10]

### A.      Plaintiffs' Description

1.      Demonstratives

- Opening and closing;

- Dr. Humphreys' examination.

2.      Video Footage

- State Farm Arena surveillance footage, as excerpted (itemized on exhibit list);

- Video footage depicting Ms. Freeman passing Ms. Moss a ginger mint (itemized on exhibit list);

- Video footage of the presentation before the Georgia State Senate on December 3, 2020 (itemized on exhibit list);

- Video footage of the press conference by Brad Raffensperger and Gabriel Sterling on December 7, 2020 (itemized on exhibit list);

---

[10] The list herein is a best faith effort to collect all items, and the parties reserve the right to supplement the list with the Court's permission.

- Video footage of the presentation before the Georgia State Senate on December 10, 2020 (itemized on exhibit list);

- Video footage of the actionable statements, described above (itemized on exhibit list).

3.   Audio Recordings

- Recordings from 911 calls (itemized on exhibit list);

- Voicemail recordings received by Ms. Freeman and Ms. Moss (itemized on exhibit list);

- Audio recording of the actionable statements, described above (itemized on exhibit list).

4.   Physical

- Ginger mint;

- Book, Stealing Your Vote; The Inside Story of the 2020 Election and What it Means for 2024, Christina Bobb;

- Book, Leadership, Rudy Giuliani.

## B.   Defendant's Description

Giuliani reserves the right to use any materials utilized by Plaintiff, which the Court permits to be used and/or is admitted into evidence.

## XII.   LIST OF PENDING MOTIONS *IN LIMINE*

The only pending motion *in limine* is Plaintiffs' Consent Motion *in Limine* to Exclude Certain Evidence and Argument at Trial. *See* ECF No. 103.

In its August 30, 2023 order, the Court entered default judgment against Defendant Giuliani "holding him civilly liable on [P]laintiffs' defamation, intentional infliction of emotional distress, civil conspiracy, and punitive damage claims." August 30, 2023 Memorandum Opinion at 5. Plaintiffs' position is that the default judgment accordingly established all of the elements of their claims as a matter of law, *including* that Plaintiffs did, in fact, suffer harm and that Defendant

Giuliani's conduct (including but not limited to his publication of defamatory statements) caused Plaintiffs to suffer that harm. Furthermore, it is Plaintiffs' position that the Court's default judgment recognized Defendant Giuliani's statements to be defamatory *per se* because they accused Plaintiffs of committing crimes, which relieves Plaintiffs of any burden to demonstrate harm. *See* Proposed Jury Instructions at 4. Accordingly, and consistent with the Court's order, it is Plaintiffs' position that the jury's only task is "to determine any damages due on [P]laintiffs' claims," August 30, 2023 Memorandum Opinion at 6: that is, to quantify the harm that Plaintiffs suffered, not to revisit the factual determinations that Plaintiffs suffered harm and that Defendant Giuliani's conduct caused that harm.

Plaintiffs had understood that Defendant Giuliani agreed with that position. In ECF No. 103 (Plaintiffs' consent motion *in limine*), Plaintiffs represented based on conferral with counsel for Defendant Giuliani: "Regarding causation, the parties have conferred and agree that the Court's Default Judgment Order resolves all of the elements of Plaintiffs' claims for purposes of Defendant Giuliani's liability, including the fact of causation. Plaintiffs understand, however, that Defendant Giuliani intends to present argument and evidence about the extent to which Defendant Giuliani caused Plaintiffs harm. Plaintiffs reserve the right to challenge those attempts, including based on Rules 401, 402, 403, and 408." Contrary to that, Defendant Giuliani now appears to be contesting the Court's determination that Plaintiffs has satisfied all elements of liability, including the fact of harm and causation. For example, in his "statement of defenses," Defendant Giuliani stated that he will argue that Plaintiffs "cannot show more than a de minimis relationship between their alleged harm and Giuliani's conduct and disputes the weight of the evidence." And Defendant Giuliani plans to cross examine Plaintiffs about their "alleged damages resulting from Giuliani's conduct" and Plaintiffs' expert on "the alleged damages resulting from Giuliani's

conduct."  Plaintiffs respectfully request that the Court reaffirm the effect of its default judgment order on Defendant Giuliani's ability to question the fact that Plaintiffs suffered harm or that Defendant Giuliani's conduct caused that harm, and, when ruling on Plaintiffs' Consent Motion *in Limine*, limit Defendant Giuliani's defense to the quantification of harm suffered.

It also is Plaintiffs' position that the Court's default order found all of the elements of civil conspiracy.  The Court in its default order explained that: "to prevail on their civil conspiracy claim, plaintiffs must prove, *inter alia*, '(1) an agreement between two or more persons (2) to participate in an unlawful act,' *id.* (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000)). Such proof rests on evidence that Giuliani worked with others to defame and inflict emotional distress on plaintiffs, but, due to Giuliani's failure to preserve and produce his communications with others concerning plaintiffs and the surrounding context, plaintiffs are, again, severely hampered in establishing this claim."  ECF No. 94 at 36.  As is consistent with that order, it is Plaintiffs' position that Defendant Giuliani, by his discovery misconduct, waived the opportunity to challenge the factual elements of the conspiracy, including but not limited to the members and scope of the conspiracy.  Accordingly—and as reflected in the allegations of the Amended Complaint, and the expert reports submitted in this case that disclose all of the conspiratorial statements related to which Plaintiffs are pursing damages—Plaintiffs have requested that the Court enter the following jury instruction on civil conspiracy:

> The Court has also found that Defendant Giuliani engaged in a civil conspiracy with Donald Trump, Donald Trump's presidential campaign, and Donald Trump's legal team to commit the torts of defamation and intentional infliction of emotional distress on or before December 3, 2020.  That means that Defendant Giuliani agreed with his co-conspirators to commit defamation and intentional infliction of emotional distress, and took certain acts in furtherance of that agreement.  Because of this finding, Defendant Giuliani is liable in this case not just for the harm caused by his own actions, but also for all of the harm caused by the actions that his co-conspirators took in furtherance of the same conspiracy.

*See* Proposed Jury Instructions at 7; *see also, e.g.* Am. Compl. ¶¶ 5-7 (describing formation of conspiracy "with incumbent candidate Trump and other Trump campaign members"); ¶¶ 38–39 (same as to conspiracy beginning on December 3, 2020); 57 (describing authors of the Giuliani Strategic Communications Plan as working "on behalf of the Trump Campaign and to further the Trump Campaigns' private political goals") *id*. § B ("defendant Giuliani and trump's Campaign Team Spread The Lie"); Expert Report of Dr. Ashlee Humphreys § II.C, n.27 (listing statements published in furtherance of the conspiracy and noting that counsel directed Dr. Humphreys to assume that such statements "were published . . . in furtherance of a conspiracy in which Mr. Giuliani was a participant.")

Notwithstanding the default judgment order and being on notice about all of the above, Defendant Giuliani has indicated that he intends to raise the issue of who is or is not a member of the conspiracy at trial.  It is Plaintiffs' understanding that Defendant Giuliani is estopped from doing so and that Plaintiffs' Consent Motion *in Limine*, if entered, would prohibit Defendant Giuliani from asserting any such defenses for the reasons discussed above.  Plaintiffs respectfully request that the Court clarify the impact of its default judgment order on Defendant Giuliani's ability to question who or who is not a member of the conspiracy, and, when ruling on Plaintiffs' Consent Motion *in Limine*, hold that it prohibits Defendant Giuliani from arguing otherwise.

Plaintiffs understand the current record to sufficiently establish that Defendant Giuliani conspired with Donald Trump, Donald Trump's presidential campaign and members thereof, and Donald Trump's legal team on or before December 3, 2020, and do not understand that they have any burden to provide any additional specificity on the members of the conspiracy.  But Defendant Giuliani has indicated that he intends to raise this issue and has attempted to negotiate a stipulation about the specific individuals in the conspiracy.  To the extent it would help the court's resolution

of this issue, the parties are in agreement that the following individuals or entities were members of the conspiracy: Donald J. Trump, Christina Bobb, and Herring Networks, Inc., d/b/a One America News Network ("OAN"); Robert Herring; Charles Herring; and Chanel Rion.

For the same reasons that the individuals listed above are part of the conspiracy, Plaintiff's position is that the following are also part of the conspiracy: the Trump Campaign, including anyone who caused to statements to publish statements about Plaintiffs or participated in such publications; members of President Trump's legal team, including Ray S. Smith III, Jenna Lynn Ellis, Jackie Pick, Bernard Kerik, and any other lawyers or individuals who the evidence shows worked alongside Defendant Giuliani in support of the Trump Campaign and/or Trump Legal Team. *See e.g.* ECF No. 22 at ¶¶5 –12, 37 –39, 57–64, 77–82, 87–88, 136–37, 187– 191. Defendant disagrees, and contends that Plaintiffs did not adequately plead a conspiracy, listing no specific persons as members of the alleged conspiracy except Donald Trump in the telephone conversation complained of in the Amended Complaint. *See Transcript: President Trump's Phone Call With Georgia Election Officials*, N.Y. Times (Jan. 3, 2021), https://perma.cc/G7JW-AKQ8. Defendant contends that the Court cannot read in allegations of specific members of the alleged conspiracy that were not pleaded by Plaintiffs. Plaintiffs contend that, such an argument is irrelevant for purposes of trial, especially in light of the default judgment and for the reasons discussed above, and if the Court believes that the existing Default Judgment Order is inadequate for the purpose of defining the conspiracy, the appropriate remedy would be to amend that Order and/or to permit Plaintiffs to amend the pleadings to conform to the evidence produced in discovery or adduced at trial, *see* Fed. R. Civ. P. 15(a)(2), 15(b)(1). If the Court believes further briefing on the matter would be useful, Plaintiffs are prepared to submit the same.

## XIII.   PROPOSED *VOIR DIRE* QUESTIONS

The parties' proposed *voir dire* questions are attached at Appendix C.  Given the high profile nature of this case, the parties respectfully request that the Court provide the parties with the list of prospective jurors by Friday December 8, 2023, at 12 pm EST.

## XIV.   PROPOSED JURY INSTRUCTIONS

The parties' proposed jury instructions are attached at Appendix D. The parties have reached significant agreement on the bulk of the instructions.  Defendant Giuliani has indicated an intent to assert limited objections, which he will submit to the Court in a separate filing.

## XV.   PROPOSED VERDICT FORM

The parties' proposed verdict form is attached at Appendix E.

DATED: November 14, 2023

/s/ Michael J. Gottlieb
**WILLKIE FARR & GALLAGHER LLP**
Michael J. Gottlieb (974960)
Meryl C. Governski (1023549)
J. Tyler Knoblett (1672514)
Timothy P. Ryan (1719055)
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com
mgovernski@willkie.com
jknoblett@willkie.com

**WILLKIE FARR & GALLAGHER LLP**
M. Annie Houghton-Larsen*
787 7th Avenue
New York, New York
Tel: (212) 728-8164
Fax: (212) 728-9164
mhoughton-larsen@willkie.com

**UNITED TO PROTECT DEMOCRACY**
John Langford*
Rachel Goodman*
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
john.langford@protectdemocracy.org
rachel.goodman@protectdemocracy.org

**DUBOSE MILLER LLC**
Von A. DuBose*
75 14th Street NE
Suite 2110
Atlanta, GA 30309
Tel: (404) 720-8111
dubose@dubosemiller.com

**UNITED TO PROTECT DEMOCRACY**
Christine Kwon*
555 W. 5th St.
Los Angeles, CA 90013
Tel: (919) 619-9819
Christine.kwon@protectdemocracy.org

/s/ Joseph D. Sibley IV
**CAMARA & SIBLEY L.L.P.**
Joseph D. Sibley IV
DC Bar ID: TX0202
1108 Lavaca St.
Suite 110263
Austin, TX 78701
Telephone: (713) 966-6789
Fax: (713) 583-1131
Email: sibley@camarasibley.com

***Counsel for Defendant***

**UNITED TO PROTECT DEMOCRACY**
Sara Chimene-Weiss*
7000 N 16th Street Ste. 120, #430
Phoenix, AZ 85020
Tel: (202) 579-4582
sara.chimene-weiss@protectdemocracy.org

**UNITED TO PROTECT DEMOCRACY**
Brittany Marie Williams*
15 Main St., Suite 312
Watertown, MA 02472
Tel: (202) 579-4582
brittany.williams@protectdemocracy.org

*Admitted pro hac vice*

***Attorneys for Plaintiffs Ruby Freeman and
Wandrea' Moss***