UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUBY FREEMAN<br><br>and<br><br>WANDREA MOSS,<br><br>           Plaintiffs,<br><br>    v.<br><br>RUDOLPH W. GIULIANI,<br><br>           Defendant. | Civil Action No. 21-3354 (BAH) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S OBJECTION TO JURY TRIAL**

## <u>TABLE OF CONTENTS</u>

Table of Contents ..................................................................................................................... i

Table of Authorities .................................................................................................................. ii

Introduction ............................................................................................................................... 1

Background ................................................................................................................................ 2

Argument ................................................................................................................................... 4

   I.    Defendant Giuliani's Objection to a Jury Trial Is Waived. .............................................. 4

   II.   As Defendant Giuliani's Own Cases Recognize, This Court Has Discretion
       to Hold a Jury Trial in These Circumstances ........................................................... 8

   III.  Defendant Giuliani's Willful Litigation Misconduct Cannot Abrogate
       Plaintiffs' Right to a Jury Trial Under the Seventh Amendment or the
       Federal Rules of Civil Procedure ............................................................................. 9

   IV.  In the Alternative, the Court Should Exercise Its Discretion to Treat The
       Jury as Advisory Under Rule 39(c)(1) ................................................................... 16

Conclusion ................................................................................................................................. 19

Certificate of Service ................................................................................................................. 20

## **TABLE OF AUTHORITIES**

**Cases**                                                                                         **Page(s)**

*3D Glob. Sols., Inc. v. MVM, Inc.,*
  754 F.3d 1053 (D.C. Cir. 2014) ....................................................................................14

*Adams v. Falcon Drilling Co.,*
  No. 97-CV-1143, 1998 WL 195981 (E.D. La. Apr. 20, 1998) ...................................6

*Adriana Int'l Corp. v. Thoeren,*
  913 F.2d 1406 (9th Cir. 1990) ...................................................................................12

*Barber v. Turberville,*
  218 F.2d 34 (D.C. Cir. 1954) ..............................................................................8, 9, 10

*Birnbaum v. United States,*
  436 F. Supp. 967 (E.D.N.Y. 1977) ............................................................................17

*Burton v. Gen. Motors Corp.,*
  No. 1:95-CV-1054, 2008 WL 3853329 (S.D. Ind. Aug. 15, 2008) ...............4, 7, 16

*Cantiere DiPortovenere Piesse S.p.A. v. Kerwin,*
  739 F. Supp. 231 (E.D. Pa. 1990) ...............................................................................6

*Coleman v. Ballentine,*
  101 F.R.D. 541 (N.D. Ill. 1984) .................................................................................13

*Coleman v. Smith,*
  814 F.2d 1142 (7th Cir. 1987) ................................................................................9, 13

*Curtis v. Loether,*
  415 U.S. 189 (1974) ....................................................................................................10

*In re Dierschke,*
  975 F.2d 181 (5th Cir. 1992) ......................................................................................12

*Eisler v. Stritzler,*
  535 F.2d 148 (1st Cir. 1976) ...................................................................................9, 12

*Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.,*
  982 F.2d 686 (1st Cir. 1993) .......................................................................................12

*Henry v. Sneiders,*
  490 F.2d 315 (9th Cir. 1974) ......................................................................................12

*Jacob v. City of New York,*
  315 U.S. 752 (1942) ....................................................................................................10

*Jones v. United Parcel Serv., Inc.*,
   674 F.3d 1187 (10th Cir. 2012) .................................................................... 13

*KD v. Douglas County School District No. 001*,
   1 F.4th 591 (8th Cir. 2021) ........................................................................... 15

*Mwani v. Bin Laden*,
   417 F.3d 1 (D.C. Cir. 2005) ......................................................................... 15

*Mwani v. Bin Ladin*,
   244 F.R.D. 20 (D.D.C. 2007) ............................................................ 8, 11, 15

*NAACP v. Acusport Corp.*,
   226 F. Supp. 2d 391 (E.D.N.Y. 2002) ......................................................... 17

*Olcott v. Delaware Flood Co.*,
   327 F.3d 1115 (10th Cir. 2003) .................................................................... 12

*Ollman v. Evans*,
   750 F.2d 970 (D.C. Cir. 1984) (en banc) ...................................................... 9

*Parsons v. Bedford, Breedlove & Robeson*,
   28 U.S. (3 Pet.) 433 (1830) .......................................................................... 10

*Rodenbur v. Kaufmann*,
   320 F.2d 679 (D.C. Cir. 1963) ..................................................................... 13

*Ross v. Bernhard*,
   396 U.S. 531 (1970) ..................................................................................... 10

*In re Zweibon*,
   565 F.2d 742 (D.C. Cir. 1977) ..................................................................... 13

**Statutory Provisions and Rules**

28 U.S.C. § 2072 ................................................................................................ 10

Fed. R. Civ. P.

   38(a) ....................................................................................................... 10, 11

   38(d) ............................................................................................................. 11

   39(a)(1) ......................................................................................................... 11

   39(c)(1) ......................................................................................................... 17

Local Civil Rule 7(m) .......................................................................................... 5

iii

**Miscellaneous**

8 Moore's Federal Practice - Civil (2023)

    § 38.30[1][c] ...................................................................................................................10

    § 38.34[5] .........................................................................................................................8

9 Wright & Miller, Fed. Prac. & Proc. (4th ed. 2023)

    § 2321............................................................................................................................13

    § 2335............................................................................................................................17

10A Wright & Miller, Fed. Prac. & Proc. § 2688 (4th ed. 2023) ....................................................8

Plaintiffs Ruby Freeman and Wandrea' ArShaye "Shaye" Moss ("Plaintiffs") respectfully submit this response in opposition to Defendant Giuliani's request that the Court hold a bench trial rather than a jury trial in this matter. ECF No. 107 ("Giuliani Trial Brief").

## **INTRODUCTION**

Plaintiffs filed this lawsuit with a jury demand nearly two years ago. The Court entered default judgment against Defendant Giuliani three months ago, finding liability against him on all of Plaintiffs' claims and ordering a trial solely on the quantification of damages. Plaintiffs and Defendant Giuliani jointly submitted dates for that trial, which explicitly contemplated time for voir dire, and Plaintiffs in good faith began to prepare for a trial by jury. It was not until November 1, 2023 that Defendants' counsel first raised the prospect with Plaintiffs' counsel that he *might* request a bench trial. And it was only on November 20 that, for the first time, Defendant Giuliani even attempted to argue to the Court that a jury trial would be inappropriate given his default. With trial fewer than three weeks away, and after the Court and Plaintiffs have expended significant resources preparing for a jury trial, Defendant Giuliani's objection is untimely, and the Court should reject it on that basis alone.

Defendant Giuliani's objection to a jury trial is meritless in any event. First, even if this Court were to find the authorities cited by Defendant Giuliani apposite, which they are not, the same cases hold that this Court has the *discretion* to hold a jury trial under these circumstances. The Court should exercise that discretion given the equities here, and it need go no further.

Second, Plaintiffs *are* entitled to a jury trial on their claims under the Seventh Amendment and the Federal Rules of Civil Procedure. Contrary to Defendant Giuliani's latest theory, Plaintiffs did not somehow waive or forfeit that constitutional right by virtue of Defendant Giuliani's own misconduct, which resulted in the imposition of severe sanctions. In sum, Defendant Giuliani's

argument boils down to the notion that a defendant can abrogate a plaintiff's constitutional right to a jury trial by engaging in willful discovery misconduct and then stipulating to a partial default judgment to cure that misconduct. That argument finds no support in any of the cases Defendant Giuliani cites, all of which involve the inapposite fact pattern in which a defaulting defendant requests a jury trial despite having defaulted. None of Defendant Giuliani's cases explain why a defendant's default should abrogate a *plaintiff's* jury trial right. Here, unlike those cases, the Court entered a partial default as to liability based on Defendant's misconduct, but expressly left Plaintiffs' claims for damages to be quantified at trial. Plaintiffs are legally entitled to a jury trial on the issues that were unresolved by the partial default judgment. A remedy necessitated by Defendant Giuliani's misconduct should not be permitted to abrogate that right.

Finally, even if this Court finds merit in any of Defendant Giuliani's contentions regarding a jury trial, it would be unfair and prejudicial to Plaintiffs to resolve those concerns by ordering a bench trial, which would require substantial last-minute preparations in fewer than two weeks. Instead, Plaintiffs respectfully submit that the better approach would be for the Court to exercise its discretion under Rule 39(c)(1) to seat an advisory jury to assist in the quantification of damages, which has traditionally been a task committed to juries in cases involving defamation and emotional distress.

## **BACKGROUND**

In this case, Plaintiffs seek compensatory and punitive damages for defamation and intentional infliction of emotional distress. Plaintiffs filed their initial complaint, including a demand for a jury trial on all issues, on December 23, 2021. ECF No. 1. Plaintiffs then filed an amended complaint on May 10, 2022, reiterating their jury demand. ECF No. 22. Defendant

Giuliani moved to dismiss the amended complaint and, after the motion to dismiss was denied, filed an answer. *See* ECF Nos. 26, 30, 31, 33.

This case proceeded to discovery, and as the Court is aware, Defendant Giuliani then proceeded to commit serious discovery violations and ignore Court orders to correct those violations. *See* ECF No. 81 at 7–18; ECF No. 94 at 7–23. On July 11, 2023, Plaintiffs moved for sanctions based upon that discovery misconduct. ECF No. 81. On July 25, 2023, Defendant Giuliani responded to that motion by attempting to stipulate to his liability while purporting to reserve certain defenses for appeal. ECF No. 84.

On August 30, 2023, the Court ordered that default judgment be entered against Defendant Giuliani as a sanction for his discovery misconduct. ECF Nos. 93, 94. In its Order and accompanying Opinion, the Court specifically mandated an adverse inference that would be read to the jury at the trial on damages. ECF No. 93 at 3; ECF No. 94 at 50–51. On September 20, 2023, the parties jointly proposed schedules for the trial on damages, including proposed deadlines for pretrial motions in limine, and a start date for trial "including voir dire." ECF No. 99 at 2. That same day, the Court entered a scheduling order adopting certain deadlines, including that "the parties shall file any pretrial motions, including any motions in limine," by October 16, 2023, and that "on December 11, 2023, at 9:00 AM, the parties are directed to appear in Courtroom 26A for jury selection for a trial in this matter." Sept. 20, 2023 Minute Order.

On October 13, 2023, the Court entered an additional sanctions order mandating four more adverse inferences on which "[t]he jury will be instructed," and precluding Defendant Giuliani from making certain arguments that would prejudice Plaintiffs before a jury. ECF No. 102 at 4–5.

The parties then proceeded to meet and confer regarding the pretrial submission, and on November 14, 2023, submitted joint proposed voir dire questions, a joint proposed jury verdict

form, competing sets of jury instructions, and a Plaintiffs' exhibit list noting objections that had been raised and discussed on the premise that this case would be tried to a jury. ECF No. 105.

On November 1, 2023, Defendant Giuliani first communicated to Plaintiffs through counsel that he believed the Court was required to hold a bench trial rather than a jury trial, but did not indicate when he would make such a request to this Court. On November 20, 2023—the deadline to file a "any trial briefs," but nearly a month after the October 16, 2023 deadline to file "any pretrial motions"—Defendant Giuliani filed this objection to a jury trial. ECF No. 107.

## ARGUMENT

### I.   DEFENDANT GIULIANI'S OBJECTION TO A JURY TRIAL IS WAIVED.

This Court need not even consider the merits of Defendant Giuliani's objection to a jury trial because he waived his right to assert it. While "[p]arties have a great deal of latitude on the timing of motions to strike a jury demand," this Court has "discretion to decide whether a motion to strike a jury demand is timely or too late." *Burton v. Gen. Motors Corp.*, No. 1:95-CV-1054, 2008 WL 3853329, at *7 (S.D. Ind. Aug. 15, 2008) (Hamilton, C.J.) (citation and internal quotation marks omitted). "In making its decision, the court should consider issues such as judicial economy and whether the opposing party will be prejudiced by trying her case to a court instead of a jury." *Id.* Here, the Court should deem Defendant Giuliani's objection untimely, and waived, given that Defendant Giuliani could have filed his objection at any time since the entry of a default judgment on liability nearly three months ago, and instead inexcusably delayed the motion—with full knowledge of, and while participating in, the extensive preparations that the parties and the Court have undertaken for the jury trial that is scheduled to occur just two weeks from today.

As an initial matter, Defendant Giuliani's trial brief, which "prays" for relief in the form of a bench trial, is an improper attempt to file a pretrial *motion* more than one month after the

Court-ordered deadline to do so. *See* Sept. 20, 2023 Minute Order. Construed as a motion, Defendant Giuliani's submission is untimely.[1]

To the extent that the Court is willing to entertain such a request for relief in a "Trial Brief," Defendant Giuliani's objection is still inexcusably late. When, on August 30, 2023, the Court entered a default judgment on liability and ordered a trial on damages, Defendant Giuliani was aware that Plaintiffs had served a jury demand as to all issues in this case. His objection to a jury trial was fully ripe no later than the entry of default judgment on August 30, 2023. That is particularly so given that the Court's entry of default came with significant advance warning—indeed, Defendant Giuliani attempted to stipulate to liability following Plaintiffs' request for a default judgment, after which this Court ordered Defendant to clarify his intent with respect to his proposed stipulation, and in doing so referenced the prospect of a default. ECF No. 84-2; Aug. 4, 2023 Minute Order. In response, Defendant Giuliani filed an additional stipulation, acknowledging that few (if any) liability issues would remain in the case, but saying nothing about the propriety of a jury trial. ECF No. 90. From that time through November 20, Defendant Giuliani proceeded to confer with Plaintiffs in preparation for a jury trial, including by jointly proposing jury-related deadlines on September 20, 2023, and submitting an extensive joint pretrial statement containing the necessary jury-related materials on November 14, 2023.[2] In the meantime, Defendant Giuliani filed *nothing* in advance of the court-ordered deadline of October 16, 2023, for "any pretrial motions." Sept. 20, 2023 Minute Order. Only on November 20, 2023—three weeks before the start of trial—did Defendant Giuliani first raise this objection with the Court.

---

[1] Nor does it comply with the Local Rules or this Court's Standing Order governing nondispositive motions. *See* Local Civil Rule 7(m); ECF No. 4 at 3 (Local Civil Rule 7(m) "will be strictly enforced," and failure to comply "may result in the motion being stricken").

[2] Plaintiffs have devoted considerable time and resources to the jury-related aspects of the pre-trial submission, with Defendant Giuliani offering his comments and edits a few days prior to its filing.

Entertaining Defendant Giuliani's objection despite that inexcusable delay would result in an avoidable waste of judicial and party resources, and would prejudice Plaintiffs. After the Court entered default judgment on Defendant Giuliani's liability, the Court entered a scheduling order "fashioned specifically to effectuate the advancement of a jury case." *Cantiere DiPortovenere Piesse S.p.A. v. Kerwin*, 739 F. Supp. 231, 235 (E.D. Pa. 1990); *see* Sept. 20, 2023 Minute Order. It is likely that the Court's "management of the case would have been conducted in a wholly different manner had a jury trial not originally been demanded," and "converting the action to a nonjury case on the eve of trial" would upend the process contemplated by the Court, including by requiring entirely different, additional, pre and post-trial submissions. *Kerwin*, 739 F. Supp at 235; *compare* Standing Order § 10(c) (standing requirements for jury trials), *with id.* § 10(d) (standing requirements for non-jury trials). "[T]o require the parties to file on the eve of trial findings of fact and conclusions of law, after jury charges and suggested voir dire questions were filed would not be in the interest of judicial economy." *Adams v. Falcon Drilling Co.*, No. 97-CV-1143, 1998 WL 195981, at *2 (E.D. La. Apr. 20, 1998). Indeed, judicial economy strongly weighs against granting motions to strike a jury demand that are filed after the parties have completed substantial preparations for a jury trial. *See also Kerwin*, 739 F. Supp. at 235 ("[I]t would be more expeditious at that stage of the case to proceed with a jury trial."); *see infra* at 17–19.

For similar reasons, it would prejudice Plaintiffs to convert this case to a bench trial at this late stage. Defendant Giuliani's delay in raising this objection has ensured that the Court will not rule on his request until fewer than two weeks before trial, and only then after the Court ordered accelerated briefing. Meanwhile, in the three months since the Court entered the default judgment order, Plaintiffs have expended considerable resources researching and assembling the jury instructions and voir dire questionnaire, preparing opening and closing presentations, researching

evidentiary rules and precedents applicable to jury trials, and preparing witness examinations designed for a jury presentation. *See Burton*, 2008 WL 3853329, at *7 ("The parties conducted discovery and prepared for trial with the understanding that all claims would be tried to a jury."). Switching gears at the eleventh hour would afford Plaintiffs fewer than two weeks to assemble all of the materials that are unique to a bench trial and to adapt their trial plan accordingly. Plaintiffs would be disproportionally affected by this burden. Defendant Giuliani has indicated in the pre-trial submission that he does not intend to present an affirmative case and, to date, has relied heavily on Plaintiffs' submissions rather than preparing his own. Defendant Giuliani's litigation conduct already has resulted in significant prejudice to Plaintiffs, which has forced Plaintiffs to expend resources on motions practice resulting in serious sanctions. The Court should not permit Defendant Giuliani's delay to inflict additional costs on Plaintiffs that were entirely avoidable had Defendant exercised reasonable diligence, particularly given Defendant Giuliani's refusal to compensate Plaintiffs for costs awarded by previous orders of this Court.

Furthermore, Defendant Giuliani nowhere explains how *he* would be prejudiced from holding a jury trial in this case. Nor could he. Like Plaintiffs, Defendant Giuliani has had nearly two years to prepare for a jury trial, and he affirmatively proposed stipulating to liability following his own discovery misconduct. Nor has Defendant Giuliani offered any excuse for his extensive delay in raising this objection. Indeed, given Defendant Giuliani's previous public statements regarding this Court,[3] it seems likely (if not inevitable) that he would use the *absence* of a jury to wage a public relations campaign to delegitimize any verdict. There is simply no basis to dispose of a jury in these circumstances.

---

[3] *See, e.g.*, ECF No. 103-2 at 10; ("You can't possibly describe this judge as anything other than an over-the-top Biden acolyte."); *id.* at 18 ("I'm not stupid enough to think I'm gonna get a fair trial in front of her.").

II.     **AS DEFENDANT GIULIANI'S OWN CASES RECOGNIZE, THIS COURT HAS DISCRETION TO HOLD A JURY TRIAL IN THESE CIRCUMSTANCES.**

Even if this Court were to forgive Defendant Giuliani's waiver and conclude that his arguments were otherwise persuasive—which, as explained below, they are not—it would still retain discretion to hold a jury trial on damages in these circumstances, as Defendant Giuliani's own cases recognize. In *Mwani v. Bin Ladin*, the court concluded that the decision to hold a jury trial after a default judgment "is a discretionary determination to be made by the Court" even in the absence of a federal statutory right to a jury trial (which is not the case here, as discussed below). 244 F.R.D. 20, 26 (D.D.C. 2007)[4]; *see* 8 Moore's Federal Practice - Civil § 38.34[5] (2023) (noting that some cases have held that there is no constitutional right to a jury trial after default, but also noting that "several courts have held that it is within the discretion of the trial court to grant a jury trial as to damages after a default judgment on the merits"); 10A Wright & Miller, Fed. Prac. & Proc. Civ. § 2688 (4th ed. 2023) (same, and explaining that "the court may order a jury trial as to damages in a default situation if it seems to be the best means of assessing damages"). The D.C. Circuit not only has embraced this discretion, it also has commented that "it is the better practice, if not actually compelled, that the issue as to damages be submitted to the jury." *Barber v. Turberville*, 218 F.2d 34, 37 (D.C. Cir. 1954). Defendant Giuliani has not offered any reason why this Court should depart from the "better practice" recognized by the D.C. Circuit, and there is none. Indeed, the issues remaining in this case are quintessential jury questions, such

---

[4] In a footnote, Defendant Giuliani mischaracterizes this statement, suggesting that the *Mwani* court recognized this discretion only in "hypothetical situations where a cause of action based in statute creates a right to trial by jury on damages, thereby giving discretion to the trial court to allow it." Giuliani Trial Brief at 2 n.1. But the *Mwani* court was clear that this discretion exists, as in that case, where *no* federal statute confers a jury trial right. 244 F.R.D. at 26. Recognizing this discretion, the *Mwani* court denied the plaintiff's request for a jury trial without prejudice to further consideration as the district court learned more about the issues proposed to be tried and the practicality of trying a case with numerous plaintiffs to a jury. *Id.*

as quantifying an amount of damages to redress emotional and reputational harm, and an additional

amount of punitive damages, each of which requires making factual findings that traditionally have

been the province of the jury. *E.g.*, *Ollman v. Evans*, 750 F.2d 970, 1015 (D.C. Cir. 1984) (en

banc) (MacKinnon, J., concurring) (describing "the traditional trust the law of libel places in the

jury to make determinations about such matters as a plaintiff's reputation").[5]

Thus, even if Defendant Giuliani's entire motion were taken as correct, his own cases hold

that the Court has discretion to proceed with a jury trial on damages, and he has offered no

argument as to why this Court should not exercise that discretion to avoid a significant disruption

to these proceedings occasioned by Defendant Giuliani's delay. For that reason, and the reasons

discussed above relating to judicial economy and prejudice to Plaintiffs, *supra* at 4–7, this Court

should exercise its discretion to hold a jury trial even if it finds that Defendant Giuliani's motion

is timely, his arguments are not waived or forfeited, and his position correct as to Plaintiffs'

constitutional entitlements.

## III.   DEFENDANT GIULIANI'S WILLFUL LITIGATION MISCONDUCT CANNOT ABROGATE PLAINTIFFS' RIGHT TO A JURY TRIAL UNDER THE SEVENTH AMENDMENT OR THE FEDERAL RULES OF CIVIL PROCEDURE.

Plaintiffs have a right to a jury trial on damages notwithstanding the Court's partial default

judgment on liability. Defendant Giuliani does not dispute that Plaintiffs have—just as they had

when they first filed their Complaint in this case—a Seventh Amendment right to a jury trial on

their claims. "The right of jury trial in civil cases at common law is a basic and fundamental feature

---

[5] Perhaps for this reason, the D.C. Circuit and other circuits have explicitly or implicitly distinguished cases involving unliquidated damages. *Eisler v. Stritzler*, 535 F.2d 148, 153 (1st Cir. 1976) (holding that a jury was not required *both* because the defendant was absent *and* because "plaintiffs' claims were not for unliquidated damages"); *Barber*, 218 F.2d at 37 (noting that a jury was appropriate in a case that involved "unliquidated damages"); *see Coleman v. Smith*, 814 F.2d 1142, 1145 (7th Cir. 1987) (upholding jury award following default judgment where the plaintiff sought and obtained compensatory damages for mental and emotional injury).

of our system of federal jurisprudence . . . . A right so fundamental and sacred to the citizen, whether guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts." *Jacob v. City of New York*, 315 U.S. 752, 752–53 (1942); *see Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. (3 Pet.) 433, 446 (1830) (Story, J.) ("The trial by jury is justly dear to the American people."). And libel and slander are among the "proceedings" that are "unmistakably actions at law triable to a jury" and therefore within the Seventh Amendment's guarantee, *Ross v. Bernhard*, 396 U.S. 531, 533 (1970); *see* 8 Moore's Federal Practice - Civil § 38.30[1][c] (2023), as is intentional infliction of emotional distress, *see Curtis v. Loether*, 415 U.S. 189, 195 n.10 (1974) ("[T]he relief sought here—actual and punitive damages—is the traditional form of relief offered in the courts of law.").

Rather than dispute that Plaintiffs have a constitutional right to a jury trial, Defendant Giuliani's objection boils down to the argument that Plaintiffs' jury trial right has been abrogated by virtue of his own misconduct. In sum, Defendant Giuliani's position appears to be that because he engaged in discovery misconduct so egregious that it warranted a default judgment on liability as a sanction, Plaintiffs no longer have any right to a jury trial. But that argument is wrong—both as a matter of first principles and under the Federal Rules of Civil Procedure—and none of Defendant Giuliani's cited cases requires a different result.

Under the Federal Rules of Civil Procedure, the "right of trial by jury as declared by the Seventh Amendment to the Constitution . . . is preserved to the parties inviolate." Fed. R. Civ. P. 38(a).[6] As is undisputed, Plaintiffs have such a right on all their underlying claims, and made a

---

[6] Because the Federal Rules are promulgated pursuant to the Rules Enabling Act, 28 U.S.C. § 2072, this statement constitutes a statutory entitlement to a jury trial for purposes of Rule 55(b)(2) in all cases where a jury trial is constitutionally required. *See Barber v. Turberville*, 218 F.2d 34, 37 n.1 (D.C. Cir. 1954) (the Rules "have the effect of statutes").

proper jury demand when they served both their initial and amended complaints. *Supra* at 2–4. That being so, the Federal Rules require that the "trial on all issues so demanded *must be by jury* unless . . . the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record." Fed. R. Civ. P. 39(a)(1) (emphasis added); *see* Fed. R. Civ. P. 38(d) ("A proper demand may be withdrawn only if the parties consent."). Here, the "parties" have not stipulated to a nonjury trial, and Plaintiffs have not "consent[ed]" to the withdrawal of their jury demand. That should be the end of the analysis: under the Federal Rules of Civil Procedure, Plaintiffs have a clear right to a jury trial "on all issues so demanded," which includes the issues remaining for decision in this case. Fed. R. Civ. P. 39(a)(1).

The fact that this Court has entered a partial default judgment, and that Plaintiff requested such relief as to liability, does nothing to change the analysis above. Nothing about the fact of a *defendant*'s default changes the principle that only the plaintiff can waive her own jury trial right. That Rule 37 sanctions were entered and a Rule 55 hearing has become necessary to quantify damages cannot possibly deprive Plaintiffs of a preexisting constitutional right to a jury trial because, in the clearest possible terms, the Rules themselves "preserve[] to the parties" their constitutional jury trial rights "inviolate." Fed. R. Civ. P. 38(a).

Defendant Giuliani relies on case law seeming to stand for the broad proposition that there is no constitutional jury trial right following a default judgment. *See Mwani v. Bin Ladin*, 244 F.R.D. 20, 24 (D.D.C. 2007) (collecting cases). Even if those precedents were binding authority in this Court, which they are not, they would not control the situation here for several reasons.

First, every single court-of-appeals case cited by Defendant Giuliani—and the vast majority of which Plaintiffs are aware—addresses the scenario in which a *defendant* seeks a jury trial after *that defendant's* default. Those cases stand only for the proposition that "*[d]efendants*

-11-

do not have a constitutional right to a jury trial following entry of default." *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (emphasis added); *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982 F.2d 686, 692 n.15 (1st Cir. 1993) (rejecting a defaulted defendant's objection to a nonjury trial on damages); *In re Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) (rejecting a defaulted defendant's objection to a nonjury trial on damages because, "[a]ssuming that [the defendant] had the right to a jury trial he waived that right when he purposefully chose not to answer the suit and timely request such a trial"); *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990) (holding that a counterclaim defendant had no right to a jury trial on damages after entry of a default judgment as a discovery sanction against that defendant); *Eisler*, 535 F.2d 148, 153 (1st Cir. 1976) (vacating and remanding, after the defaulted defendant appealed, for a hearing on damages but commenting that a jury trial would not be necessary).

Every one of the cases cited above relied on the Ninth Circuit's decision in *Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974), either directly or through citation to a treatise. *Henry* is notable because, like each of the cases cited above, it dealt with a situation where a default judgment was entered against the defendant as a result of the defendant's discovery violations. *Id.* at 316. The *defendant* nonetheless demanded a jury trial on damages, and appealed from the denial of that request. *Id.* at 318. The Ninth Circuit affirmed, holding that the defendant-appellant did not "have a constitutional right to a jury trial under these circumstances." *Id.* The Ninth Circuit supported that conclusion by explaining, in dictum, that "the Seventh Amendment right to trial by jury does not survive a default judgment." *Id.* But even *Henry* did not extend that reasoning to a *plaintiff*'s jury trial right following a *defendant*'s default. Like all of the cases cited above that have cited it, *Henry* did not acknowledge, let alone analyze, the distinction between a defaulted

defendant's demand for a jury trial on damages, and a plaintiff's continued insistence on a jury trial after a defendant's default. Indeed, in the only out-of-circuit appellate precedent with facts similar to those here of which Plaintiffs are aware—*i.e.*, where a court entered default judgment on liability as a sanction for a defendant's recalcitrant behavior and a *plaintiff* insisted on a jury trial—a jury trial *was* held on damages and the award upheld on appeal. *Coleman v. Smith*, 814 F.2d 1142, 1145–50 (7th Cir. 1987); *see Coleman v. Ballentine*, 101 F.R.D. 541 (N.D. Ill. 1984). In addition, at least one Circuit has held that the Seventh Amendment guarantees a right to have a jury determine the amount of any punitive damages. *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1202–06 (10th Cir. 2012).

The cases denying a defaulted *defendant* a jury trial right are best understood as applying fundamental waiver principles: A defaulting or non-appearing defendant can be understood to have waived his Seventh Amendment right to a jury trial. But the actions of such a defendant cannot abrogate the right of a *plaintiff* who has made a proper jury demand. Although a party can sometimes waive its *own* jury trial right through its *own* affirmative conduct, or even in some circumstances through inaction or inadvertence, *see Rodenbur v. Kaufmann*, 320 F.2d 679, 683–84 (D.C. Cir. 1963), a "waiver by one party cannot bind other parties because the jury trial right is the right of every party. . . . Once a timely demand has been made by one party, it cannot be withdrawn without the consent of all parties," 9 Wright & Miller, Fed. Prac. & Proc. § 2321 (4th ed. 2023). It is one thing to interpret Rule 37, in combination with traditional principles of waiver, as stripping a defaulted defendant's constitutional right to a jury trial. It would turn those principles upside down to interpret Rule 37, in combination with Rule 55, to eliminate a *plaintiff*'s otherwise valid jury trial right without notice or consent. *See In re Zweibon*, 565 F.2d 742, 746 (D.C. Cir. 1977) (the federal rules "are not intended to diminish [the jury trial] right, and should be

interpreted, where possible, to avoid giving effect to dubious waivers of rights"). And it would be perverse to reward Defendant Giuliani's willful litigation misconduct by stripping *Plaintiffs* of a jury trial right that they have consistently sought to vindicate.

Nor does it matter that Plaintiffs requested the entry of default judgment on liability. Plaintiffs are entitled to demand a jury trial on all, some, or no claims, and they never withdrew their demand of a jury trial on their damages claims in seeking sanctions against Defendant Giuliani's misconduct. To the contrary, in Plaintiffs' papers supporting the entry of default judgment, Plaintiffs limited their request to a default judgment on liability. ECF No. 81 at 3. Similarly, when this Court entered default, it expressly contemplated that a jury trial on damages would follow. *See* ECF No. 94 at 49 (holding that Defendant Giuliani's obligation to respond to certain requests for production was "not obviated by an entry of default because discovery on defendant's net worth remains relevant in *the jury's* assessment of the amount" of punitive damages, and that Plaintiffs are entitled to "make their own analysis [of Giuliani's net worth] *for presentation to a jury at trial*" (emphases added); *id.* at 50–51 (holding that because of Defendant Giuliani's violation of that obligation "*the jury* will be instructed that they *must*, when determining an appropriate sum of punitive damages, infer that Giuliani is intentionally trying to hide relevant discovery about his financial assets for the purpose of artificially deflating his net worth") (first emphasis added). Plaintiffs can, and often do, voluntarily dismiss or settle certain claims while preserving others, and it would be absurd to argue that in doing so, those plaintiffs had waived their jury trial demand as to their remaining claims. So too here. It is well established that "[c]ourts will 'indulge every reasonable presumption against waiver' of a jury trial." *3D Glob. Sols., Inc. v. MVM, Inc.*, 754 F.3d 1053, 1056 (D.C. Cir. 2014) (quoting *Rodenbur*, 320 F.2d at 683). Here, that presumption precludes a finding that Plaintiffs gave up their jury demand based upon partial relief

they requested to level the playing field following Defendant Giuliani's repeated and willful discovery violations.

Plaintiffs are aware of two cases that have found a defendant's default to have abrogated a plaintiff's otherwise valid constitutional right to a jury trial, but neither case is applicable here. In *KD v. Douglas County School District No. 001*, following a defendant's default for failing to answer the complaint or otherwise appear, the Eighth Circuit held that the plaintiff did not have a right to a jury trial for purposes of a Rule 55(b)(2) hearing on damages. 1 F.4th 591, 597-98 (8th Cir. 2021). And *Mwani v. Bin Ladin*, a district court case from this District cited by Defendant Giuliani, reached a similar result where the defendant defaulted by failing to appear. 244 F.R.D. 20; *see Mwani v. Bin Laden*, 417 F.3d 1, 5 (D.C. Cir. 2005).

In each of *Mwani* and *KD* the defendant's default (caused by a failure to appear in the litigation) was *complete*, and neither defendant proposed to appear at trial (or any hearing) for purposes of contesting an award of damages. Defendant Giuliani, by contrast, intends to do just that here. Moreover, Defendant Giuliani initially responded to the complaint, failed to contest the jury demand, and only after imposing considerable costs and delay on Plaintiffs' case by litigating a Rule 12 motion and engaging in repeated delay tactics in discovery did Defendant decide to cease complying with this Court's orders and his discovery obligations. It was that pattern of egregious misconduct—which included repeated refusals to follow this Court's orders—that this Court entered a *partial* default judgment. The notion that a plaintiff may forfeit her jury trial right as to all issues when a defendant fails to appear entirely does not suggest, let alone compel, the same

result where an appearing (and competently represented) defendant's discovery misconduct results in a *partial* default judgment.[7]

Even if this Court did not agree with the analysis above, it should decline to follow *Mwani* and *KD* because they are unpersuasive. *Supra*, at 11–15. Both relied on the same misapplication of the broad dicta from the Ninth Circuit's decision in *Henry*, which concerned a defaulting *defendant's* unsuccessful request for a jury trial after the defendant's own default. Neither *Mwani* nor *KD* offers a persuasive justification for applying that reasoning to the very different situation where a defendant's default is accompanied by a *plaintiff*'s continued insistence on his or her constitutional right to a jury trial. For the reasons stated above, *supra* at 11–15, those cases were wrong to the extent they held that the innocent plaintiffs lost their jury trial right because of the defendant's unilateral conduct, and this Court should not follow them.

## IV.   IN THE ALTERNATIVE, THE COURT SHOULD EXERCISE ITS DISCRETION TO TREAT THE JURY AS ADVISORY UNDER RULE 39(C)(1).

Finally, and in the alternative, the Court should exercise its discretion to empanel an advisory jury under Rule 39(c)(1) rather than upend the existing schedule and the substantial preparations already undertaken by the Parties. First, if the Court has any doubt about the timeliness or merits of Defendant Giuliani's motion, it could defer consideration of the motion while proceeding with the jury trial as planned, and then, if it later determines that Defendant Giuliani's motion "was not too late and had merit," it may consider whether to "treat the jury verdict[] . . . as advisory," as Judge Hamilton did in in *Burton*. *See* 2008 WL 3853329, at *8.

---

[7] Further, unlike in either of the two cases cited above, here Plaintiffs did nothing to alter their jury demand *at the time they moved for the entry of default judgment*, Defendant Giuliani stipulated to liability without a single word devoted to that stipulation's effect on Plaintiffs' jury demand, and this Court never suggested that it was rejecting Plaintiffs' demand. *Supra*, at 3, 5–6.

But even if the Court felt itself compelled to grant Defendant Giuliani's motion, it would still retain discretion to empanel an advisory jury in the first instance under Rule 39(c)(1). *See* Fed. R. Civ. P. 39(c)(1) ("In an action not triable of right by a jury, the court, on motion or on its own[,] may try any issue with an advisory jury.)" "[I]t is completely within the trial judge's discretion under Rule 39(c) whether or not to use an advisory jury." 9 Wright & Miller, Fed. Prac. & Proc. § 2335 (4th ed.). Advisory juries are particularly useful in cases in which "there are special factors . . . which suggest that a jury composed of members of the community would provide the Court valuable guidance in making its own findings and conclusions." *NAACP v. Acusport Corp.*, 226 F. Supp. 2d 391, 398 (E.D.N.Y. 2002) (citation and internal quotation marks omitted). "Because advisory juries permit community participation and may incorporate the public's views of morality and changing common law, their use is particularly appropriate in cases involving community-based standards." *Id.* In this respect, contemporary advisory juries continue to serve the historical discretionary right of the court to "have its 'conscience enlightened,'" *Id.* at 397 (quoting *(Am.) Lumbermens Mut. Cas. Co. of Ill. v. Timms & Howard*, 108 F.2d 497, 500 (2d Cir. 1939)). Courts often deploy advisory juries because it can be "instructive" that a "panel of average citizens— representing a broad range of economic, educational, social and political experience," nonetheless can reach a uniform conclusion as to a plaintiff's damages, particularly where the factfinder's task is to quantify harms like "emotional distress." *Birnbaum v. United States*, 436 F. Supp. 967, 988 (E.D.N.Y. 1977), *aff'd in relevant part, rev'd in part on other grounds*, 588 F.2d 319 (2d Cir. 1978); *see* 9 Wright & Miller § 2335 (advisory juries "allow[] the judge to get some appreciation for the common sense or standard of the community").

Here, given that preparation for a jury trial is substantially complete, there would be no loss of efficiency in empaneling an advisory jury. And, for the reasons discussed above, *supra* at

10, this is a case that calls upon the factfinder to exercise a type of discretion classically entrusted in our system to juries. While the Court could, of course, perform that function if called upon to do so, numerous factors in this case might benefit from the judgment of a jury drawn from a cross-section of the community, including (1) the degree of egregiousness of Defendant Giuliani's conduct, which is relevant to quantifying punitive damages, (2) the degree of reputational harm that Plaintiffs suffered as a result of the defamatory statements, which is relevant to quantifying compensatory damages, and (3) the degree of emotional harm that Plaintiffs suffered as a result of Defendant Giuliani and his co-conspirators' conduct, which is also relevant to quantifying compensatory damages. Therefore, should the Court find merit in Defendant Giuliani's motion and still have doubts about its discretion to empanel a non-advisory jury, it should exercise its unquestioned discretion to empanel an advisory jury—ensuring that this case will receive the benefits of the community's judgment, and that the parties' and the Court's extensive preparations for a jury trial will not go to waste because of Defendant Giuliani's inexcusable delay.

## **CONCLUSION**

To the extent it is construed as a motion to hold a bench trial on any issue, Defendant

Giuliani's motion should be denied. In the alternative, the Court should exercise its discretion to

empanel an advisory jury under Rule 39(c)(1).

Respectfully submitted.

*/s/ Michael J. Gottlieb*
**WILLKIE FARR & GALLAGHER LLP**
Michael J. Gottlieb (974960)
Meryl C. Governski (1023549)
Aaron E. Nathan (1047269)
J. Tyler Knoblett (1672514)
Timothy P. Ryan (1719055)
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com
mgovernski@willkie.com
anathan@willkie.com
jknoblett@willkie.com

**WILLKIE FARR & GALLAGHER LLP**
M. Annie Houghton-Larsen*
787 7th Avenue
New York, New York
Tel: (212) 728-8164
Fax: (212) 728-9164
mhoughton-larsen@willkie.com

**UNITED TO PROTECT DEMOCRACY**
John Langford*
Rachel Goodman*
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
john.langford@protectdemocracy.org
rachel.goodman@protectdemocracy.org

**DUBOSE MILLER LLC**
Von A. DuBose*
75 14th Street NE
Suite 2110
Atlanta, GA 30309
Tel: (404) 720-8111
dubose@dubosemiller.com

**UNITED TO PROTECT DEMOCRACY**
Christine Kwon*
555 W. 5th St.
Los Angeles, CA 90013
Tel: (919) 619-9819
Christine.kwon@protectdemocracy.org

**UNITED TO PROTECT DEMOCRACY**
Sara Chimene-Weiss*
7000 N 16th Street Ste. 120, #430
Phoenix, AZ 85020
Tel: (202) 579-4582
sara.chimene-weiss@protectdemocracy.org

*Admitted pro hac vice*

**Attorneys for Plaintiffs Ruby Freeman and
Wandrea' Moss**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 27, 2023, the foregoing was served on all parties through their counsel of record by filing it with the Court's CM/ECF system.

<i>s/ Michael J. Gottlieb</i>