UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUBY FREEMAN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RUDOLPH W. GIULIANI, <br><br> Defendants. | Civil Action No. 21-3354 (BAH) <br><br> Chief Judge Beryl A. Howell |

**MEMORANDUM IN RESPONSE TO MINUTE ORDER DATED NOVEMBER 21, 2023**

Giuliani responds to the issue raised in the Court's November 21, 2023 Minute Order ("Minute Order") as follows:

**i.     The "preservation" of Giuliani's challenge to the adequacy of Plaintiffs' pleadings (Minute Order (1)(d)).**

First, and as discussed in detail below, whether Giuliani "preserved" the adequacy of Plaintiffs' pleading as to civil conspiracy is immaterial because the Court is duty-bound to ensure that Plaintiffs' allegations are adequately and plausibly pleaded before granting any default judgment to assess the adequacy of the pleadings irrespective of whether a defendant has challenged the pleadings by Rule 12 or other motion practice.

Second, Giuliani clearly challenged the adequacy of the conspiracy pleadings in his Motion to Dismiss filed on June 6, 2022 [Doc. 26]. For example, as clearly argued in the Memorandum in Support:

> Giuliani's participation in any conspiracy with other parties is implausible and inadequately pleaded. First, Plaintiffs have not pleaded the particularization of an agreement between Giuliani and the alleged co-conspirators as he [sic] is required to do. In fact, Plaintiffs do not even identify who the

> alleged co-conspirators are. See Complaint at ¶¶ 187-91. Plaintiff has pleaded no specific facts that would give rise to an inference that Giuliani and some unknown third parties had a meeting of the minds on the far-sweeping plot that Plaintiffs allege in their Complaint – namely to engage a public disparagement campaign to harm Plaintiffs by making false claim about them.
>
> […]
>
> Plaintiffs have not, and cannot, allege the particulars of any meeting between Giuliani and any other conspirators wherein they came to a meeting of minds to engage in an elaborate plot to defame and injure Plaintiffs. Further, there are no allegations in the Complaint of the time, place, and manner of how Giuliani and others came to a meeting of the minds and reached an agreement on the course of action Plaintiffs complain of. Because Plaintiffs were required to—but did not—plausibly alleged the "who, what, where, when" of the supposed meeting of the minds and agreement of the conspirators, the claim must be dismissed. *See United States ex rel. PCA Integrity Assocs., LLP v. NCO Fin. Sys., Inc.*, No. CV 15-750 (RC), 2020 WL 686009, at *30 (D.D.C. Feb. 11, 2020) (dismissing conspiracy claim where plaintiff only alleged a shared conspiratorial objective or "plan").
>
> Accordingly, all claims based on Statement 6 and the civil conspiracy claim must be dismissed.

See Doc. 26-2 at pp. 12-14.

Defendant, therefore, properly preserved any objection to the adequacy of Plaintiffs' pleading as to civil conspiracy, to the extent he was even required to do so.

### ii. The FRCP and the Court's orders only deem Plaintiffs' allegations in the Complaint as true – not unpleaded theories of liability and misconduct (Minute Order (1)(b)(i), (ii), (iii), and (v)).

The next issue involves the scope of what Giuliani has been "defaulted" into. Plaintiffs appear to take the position that they can supplement their Complaint—after it was defaulted—with export reports and whatever other whimsical "incorporations by reference" they now pretend were made in their Amended Complaint (Doc. 22) ("Complaint"). Tellingly, Plaintiffs were unable to identify by name the alleged co-conspirators in their Complaint when it was filed, but now can readily point to specific statements by specific conspirators supposedly "referred to" by the Complaint.

But this is not the law. Because "a default is not an absolute confession by the defendant of his liability and of the plaintiff's right to recover, but is instead merely an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Natures Way Marine, LLC v. North American Materials, Inc.*, Civil Action No. 08–0005–WS–B, 2008 WL 801702, *2 (S.D. Ala. Mar. 24, 2008) (internal quotation marks and citations omitted); *accord Jackson v. Corr. Corp. of Am.*, 564 F. Supp. 2d 22, 26–27 (D.D.C. 2008) (citing *id.*). First, "the defendants' default notwithstanding, the plaintiff is entitled to a default judgment **only if the complaint states a claim for relief**." *Descent v. Kolitsidas*, 396 F.Supp.2d 1315, 1316 (M.D.Fla.2005) (emphasis added). In other words, "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir.1997).

Therefore, as an initial matter, Giuliani disputes that Plaintiffs have established all elements of any of their claims because he contends these allegations are not well pleaded, particularly the conspiracy claim, and therefore cannot support a default judgment. Giuliani hereby incorporates by reference and reargues his Motion to Dismiss (see Doc. 26 and attachments thereto) in support of this argument.

However, to the extent the Court still determines that the Complaint is properly pleaded, Plaintiffs are limited to the specific conduct alleged in the Complaint (*Jackson,* 564 F. Supp. 2d at 26–27) (holding that defaulting party is only "deemed to have admitted the well-pleaded factual allegations in the complaint"), which are as follows:[1]

**Statement 1**

---

[1] Plaintiffs identify multiple statements that Plaintiffs attribute to Giuliani as the basis for Plaintiffs' claims, referring to them as the "Actionable Defamatory Statements". Complaint at ¶¶ 27, 57-101.

First, Plaintiffs point to a document entitled "STRATEGIC COMMUNICATIONS PLAN GIULIANI PRESIDENTIAL LEGAL DEFENSE TEAM" ("**Statement 1**"). *See id.* at ¶ 57, n.42 According to the Complaint, Statement 1 was generated by "authors" who were seeking to advance the Trump Campaign's "private political goals". Complaint at ¶ 57. Statement 1 did not become public until January 2022 and there is no allegation it was ever communicated to anyone beyond members of the Trump Campaign legal team. *Id.*

**Statement 2**

Second, Plaintiffs complain of the following statement on Giuliani's podcast on December 23, 2020 ("**Statement 2**"):

> There's a video recording in Fulton County, Georgia, of what is obviously, without any doubt, the theft of votes. You have to be a naive child or a completely dishonest partisan not to realize that the observers are being thrown out of the room. A phony excuse of a water main break was used. They still were thrown out of the room, didn't want to leave. Once they were all left and a last check was done around the hall, the workers for Atlanta—for Fulton County—the five or six, one of whom has a history of voter fraud participation, Ruby Freeman, uh, they scurry under these desks. Hardly where you would keep ballots, right? And they start taking ballots out and then put them on a wheelbarrow sort of thing and wheel them around. And you can see the ballots don't really look like, like absentee ballots that are in envelopes; they look more like pristine pieces of paper. And then they're given out and very quickly are being counted, counted, counted, counted, there are times in which it appears that they were being counted more than one time—three, four, five, six, seven times, eight times. . . . [I]t's quite clear no matter who they're doing it for, they're cheating. It looks like a bank heist.

Complaint at ¶ 66.

**Statement 3**

The third statement complained of is a statement made on Giuliani's December 25, 2020 podcast ("**Statement 3**"):

> Live from Fulton County, let's watch the Democrats steal the election! And there you see it. Ruby Freeman and her crew getting everybody out of the center, creating a false story that there was a— that there was a water main break. No water main break. They get everybody out. They wait, they wait, they wait. They check, they check, they check, like they're gonna do a heist, and all of a sudden the crooks sprang into action. They go under a desk covered like a casket, and they start pulling ballots out. Tremendous numbers of ballots. And they bring them over to one counting stand, all the way over here, another counting stand, another—and they keep looking around to make sure there's nobody in the room! . . . Every once in a while, you look closely, you can them doing this—one ballot [gestures scanning a ballot multiple times]. You know what that does? That takes

> Biden and multiplies it by 5. […] [J]ust look at the tape. That accounts for anywhere from 40 to 80,000 votes. The number then when we look at it on, was like 138,000 for Biden and 2,000 for Trump. Take those out of their numbers—Trump won Georgia honestly. We want honest votes here.

Complaint at ¶ 69.

**Statement 4**

The fourth statement complained of is a statement made by Giuliani during an OAN interview on December 30, 2020 ("*Statement 4*"):

> There are five or six states that can make the difference here and that have the evidence already have the evidence that shows that the Biden people stole the election, and not only that, they have the evidence that shows that Trump actually had more votes. Georgia is maybe the easiest to demonstrate because it's on video. During that videotape, that we can all see right in front of our eyes, we can see them stealing the votes. We can see them throwing out the people. We can see them counting it four and five times. We also have the statistics during that period of time, 120,000 votes for Biden, couple hundred votes for Trump, no observers, makes it totally illegal. That alone changes the election. That alone means that if you get rid of those illegal votes, Trump wins Georgia by 40 or 50 thousand votes. . . . Georgia has the one video tape, I consider it like the Zapruder film was to the Kennedy assassination, this film will live for a hundred years. For a hundred years, this film will show that the, the 2020 presidential election, there was an attempt to steal it.
>
> […]
>
> I've heard Democratic senators get on television and say it's espionage to say that it was fraud. You're not gonna tell me that. I see, I can see the fraud, it's in front of my eyes. What am I supposed to do, close my eyes and make believe that in Fulton County, Georgia, when they closed the doors, and they got rid of the public, and they started triple counting ballots and it ends up being 120,000 for, for Biden and 3,000 for Trump? They weren't cheating? Am I stupid?

Complaint at ¶¶ 71-72.

**Statement 5**

The fifth statement complained of is a statement made during a Giuliani podcast on December 30, 2020 ("*Statement 5*"):

> [T]he Fulton County vote counting [videotape], which in and of itself proves that Georgia was stolen by, uh, Joe Biden and by the Democrats. That one video proves it.
>
> [. . .]

> [T]he first thing that the election workers do . . . is they, um, move out the observers. . . . [T]hey make sure there's no one around, they make sure the doors are locked so nobody else can come in, and then at a certain point they look around again, and they go under a table covered by a black, like a black blanket, and they start pulling out ballots. Now we begin with, why are ballots under a table? And then they start distributing those ballots for counting to three or four different areas where there are counting machines. And you can see it's done very hurriedly; it's done in a way suggesting that they are nervous about what they're doing, and by the way, even if these ballots were legitimate ballots, which I doubt they are, this would be entirely illegal. And every one of those ballots would be declared null and void because each one of these ballots is being counted in violation of the law of Georgia that in fact there must be the public present when ballots are being counted. . . . [I]t looks an awful lot like a bank heist, doesn't it?

Complaint at ¶ 74.

**Statement 6**

The sixth statement complained of is actually not a statement of Giuliani, but rather of former President Trump's statements to Georgia Secretary of State Raffensperger and others during a call on January 2, 2021. Complaint at ¶¶ 77-86 ("*Statement 6*"). Plaintiffs allege on "information and belief" that Trump was "republishing" Giuliani's statements during this call and that Giuliani "encouraged" Trump to make the call. Complaint at ¶ 79.

**Statement 7**

The seventh statement complained of Giuliani made at the January 6, 2021 rally at the White House Ellipse ("*Statement 7*"):

> In Fulton County, Republican poll watchers were ejected, in some cases, physically from the room under the false pretense of a pipe burst. Water main burst, everybody leave. Which we now know was a total lie. Then election officials pull boxes, Democrats, and suitcases of ballots out from under a table. You all saw it on television, totally fraudulent. And illegally scanned them for nearly two hours, totally unsupervised. Tens of thousands of votes. This act coincided with a mysterious vote dump of up to 100,000 votes for Joe Biden, almost none for Trump. Oh, that sounds fair. That was at 1:34 AM.

Complaint at ¶ 88.

**Statement 8**

The eighth statement complained of was made by Giuliani made during an OAN interview on January 18, 2021 ("*Statement 8*"):

> I mean, they pretty much censored it while it was going on, so they would love to turn the page on it. I mean, I get banned from any of the big tech things when I say that not only was there voter fraud, I have evidence of it, I've seen it, I have a motion picture of it. I can show you the voter fraud in living color. It was done in Fulton County, Georgia, it was well over 30,000 ballots were stolen. They were attributed to Biden instead of Trump. Had they been caught and held to account for it, Trump would have won Georgia.

Complaint at ¶ 89.

**Statement 9**

The ninth statement complained of was made by Giuliani made during an OAN interview on June 14, 2021 ("*Statement 9*"). Complaint at ¶¶ 90-93.

**Statement 10**

The tenth statement complained of was made by Giuliani made during an OAN interview on July 23, 2021 ("*Statement 10*"):

> Giuliani: How about the videotape that I have where they're shoving the thing into the machine three and four times so they can be recounted by the same two women that earlier in the day were passing around hard drives or flash drives that supposedly can't be used in Dominion machines, but can.
>
> OAN reporter: Right. We have this proof.
>
> Giuliani: I know we've lost the spin war, but we haven't lost the truth war. I have the truth.

Complaint at ¶ 94.

**Statement 11**

The tenth statement complained of was made by Giuliani made during an OAN interview on December 10, 2021 ("*Statement 11*"):

> The situation in Georgia, uh, that videotape is about as clear evidence of stealing votes as I've ever seen. And it was mischaracterized by the Secretary of State, the crooked Governor Kemp, uh, the Democrats—I mean, they're all in league together… In any event, you've got a tape in, in, in Georgia that's crystal clear, it looks like a, it looks like a bank robbery, my goodness. And, uh this [Pennsylvania tape] is very, very clear. There are about ten others. There's no doubt that people stole votes in that election for Biden, and the numbers are—I would say—way beyond what was necessary to switch the vote in about four states. But they certainly are extremely significant and

>can't be ignored. When people cheat in elections on some kind of substantial scale, how do you know in advance without investigating whether it affects the election or not? Right?

Complaint at ¶ 96.

**Statement 12**

The twelfth and final statement complained of was made by Giuliani made during a January 12, 2022 podcast as he interviewed investigative reporter John Solomon ("***Statement 12***" and, collectively, the "***Statements***"). Complaint at ¶¶ 98-101.

So these "Actionable Statements" are the only "Actionable Conduct" that Plaintiffs can seek damages from. As discussed above, Giuliani contends that the Complaint fails to adequately plead the conspiracy claim, even failing to name the alleged co-conspirators. Therefore, the Court's default simply places Giuliani in a conspiracy with John Does. However, Giuliani will stipulate that Trump, OAN, and its reporters can be included in the "default conspiracy" because they were specifically named in the Complaint. However, this is much ado about nothing because conspiracy liability only occurs if there is an overt tortious act by a member of the conspiracy. The elements of civil conspiracy consist of: (1) an agreement between two or more persons; (2) **to participate in an unlawful act, or a lawful act in an unlawful manner**; (3) a**n injury caused by an unlawful overt act performed by one of the parties to the agreement;** (4) **which overt act was done pursuant to and in furtherance of the common scheme**. *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). A plaintiff must also allege a causal connection between the overt act(s) taken in furtherance of the conspiracy and the alleged injury. *See Graves v. United States*, 961 F. Supp. 314, 321 (D.D.C. 1997).

Here, the only overt actions pleaded in the Complaint involve Giuliani, Trump, and OAN (see Actionable Statements above). So, the only relevant conspirators are those involved in the overt acts (the Actionable Statements).

### iii.   The damages issues (Minute Order (1)(b)(iii)).

In a defamation per se case, such as here, damages are presumed. Therefore, Defendant does not contest that Plaintiffs—based on the Court's prior Orders with which Defendant disagrees—are entitled to at least nominal damages. Defendant also believes that the default orders establish that the acts complained of in the Complaint caused injuries. However, Plaintiffs are limited only to the specific acts that they pleaded and injuries they pleaded that resulted therefore and must prove the extent that Giuliani's conduct proximately caused them.

A default judgment does not give the plaintiff "a blank check to recover from [the defaulting defendant] any losses it had ever suffered from whatever source." *TWA v. Hughes*, 449 F.2d 51, 70 (2d Cir.1971), *rev'd on other grounds sub nom Hughes Tool Co. v. TWA*, 409 U.S. 363, 93 S. Ct. 647, 34 L.Ed.2d 577 (1973). Rather, "[t]he outer bounds of recovery allowable are ... measured by the principle of proximate cause." *Id.* In this case, the Plaintiffs can "only recover those damages arising from **the acts and injuries pleaded**". *Id.* Therefore, Plaintiffs are limited at hearing or trial to only evidence that demonstrate the well-pleaded acts caused the well-pleaded injuries. This would involve only the Actionable Statements and to what extent they caused the injuries Plaintiffs complain of in the Complaint. This cannot include any other matters outside the pleadings. *See id.*

Therefore, Plaintiffs are limited to proving damages to co-conspirators involved in the overt actions (the Actionable Statements) described above. To the extent Plaintiffs' experts included overt actions outside the Complaint in their opinions, Defendant will object to such testimony at the time of hearing/trial.

### iv.     The jury charge issues (Minute Order (1)(b)(iv), (c)).

First, the Court's Opinion on Sanctions (Doc. 94), makes clear that the jury (and Defendant objects to a jury trial for the reasons discussed in his Trial Brief) is to decide the amount of damages "if any". Doc. 94 at p. 56. Therefore, Defendant understands that all jury instructions presuming compensatory of punitive damages to exist (as opposed to nominal damages) is inappropriate. This would cover objections to the Proposed Jury Instructions on "Preliminary Matters Already Decided" on pages 3-5 and "Proposed Post Trial Instructions" on pages 19, 21-22, and 26-27. Moreover, Plaintiff is required to prove a proximate causal connection between the conduct pleaded in the Complaint and the damages pleaded in the Complaint to be awarded any damages. *Hughes*, 449 F.2d at 70. Finally, punitive damages can be awarded only if there is a "basis for actual damages." *Maxwell v. Gallagher*, 709 A.2d 100, 104 (D.C. 1998). Therefore, Plaintiffs cannot be presumed to receive punitive damages unless they demonstrate a proximately caused actual injury in dollars and cents.

Finally, Defendant's objections to the proposed jury instructions on conspiracy (pages 7 and 24) are supported by all of the argument and authorities above at Sections i, ii, and iii. For the reasons stated in those Sections, the conspiracy claim is inadequately pleaded, it fails to identify specific co-conspirators, and it is limited to the overt acts complained of in the Complaint committed by the specific individuals named in the Complaint. Therefore, it is inappropriate to allow the jury (or for this Court) to consider conduct outside the pleadings committed by persons not named in the pleadings in determining Plaintiffs' injuries.

Date: <u>November 27, 2023</u>

                                                                Respectfully submitted,

                                                                By: */s/ Joseph D. Sibley IV*

CAMARA & SIBLEY L.L.P.

Joseph D. Sibley IV
DC Bar ID: TX0202
1108 Lavaca St.
Suite 110263
Austin, TX 78701

Telephone: (713) 966-6789
Fax: (713) 583-1131
Email: sibley@camarasibley.com

**ATTORNEYS FOR RUDOLPH GIULIANI**

## CERTIFICATE OF SERVICE

     I hereby certify that on this 27th day of November, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which I understand to have caused service on all counsel of record.

                                                      */s/ Joseph D. Sibley IV*
                                                      Joseph D. Sibley I