## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUBY FREEMAN | |
| and | Civil Action No. 21-3354 (BAH) |
| WANDREA MOSS, | |
| Plaintiffs, | |
| v. | |
| RUDOLPH W. GIULIANI, | |
| Defendant. | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MEMORANDUM IN RESPONSE TO THE COURT'S NOVEMBER 21, 2023 MINUTE ORDER (ECF No. 110)**

## TABLE OF CONTENTS

Table of Contents ........................................................................................................... i

Table of Authorities ...................................................................................................... ii

Relevant Background ......................................................................................................1

   A.  The Court Held That Plaintiffs' Amended Complaint Adequately Pleaded
       All Causes of Action In Denying Defendant Giuliani's Motion To
       Dismiss..............................................................................................................1

   B.  The Court Found That Defendant Giuliani's Willful Discovery Violations
       Prejudiced Plaintiffs' Ability to Fully Develop The Record As To All
       Causes of Action. .............................................................................................5

   C.  The Court Orders Briefing On The Issues Defendant Giuliani Raised In
       The Joint Pre-Trial Statement ("JPS").............................................................8

Argument ........................................................................................................................9

   I.  The Default Judgment Order Resolved "All Elements" of Defendant
      Giuliani's Liability, Including the Facts of Harm and Causation........................9

   II.  The Default Judgment Order Establishes All the Elements of Civil
      Conspiracy, Including that Defendant Giuliani Conspired with the Trump
      Campaign and the Trump Legal Team. ............................................................14

   III. Plaintiffs' Quantification of Damages at Trial Should Not Be Artificially
      Limited to the Twelve Statements Listed in Giuliani's Memorandum.............17

   IV. In the Alternative, the Court Should Permit Plaintiffs to Amend the
      Complaint to Conform to the Evidence. ..........................................................22

   V.  Defendant Giuliani's Objections to the Proposed Jury Instructions are
      Meritless...........................................................................................................23

Conclusion ...................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                              **Page(s)**

*Appleton Elec. Co. v. Graves Truck Line, Inc.*,
    635 F.2d 603 (7th Cir. 1980) .........................................................................................20, 21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................................9

*Bahlul v. United States*,
    77 F.4th 918 (D.C. Cir. 2023)........................................................................................9

*BCS Servs., Inc. v. Heartwood 88, LLC*,
    637 F.3d 750 (7th Cir. 2011) .......................................................................................13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................................9

*Bigelow v. RKO Radio Pictures, Inc.*,
    327 U.S. 251 (1946)......................................................................................................13

*Carey v. Piphus*,
    435 U.S. 247 (1978)................................................................................................10, 25

*Doe v. Bernabei & Wachtel, PLLC*,
    116 A.3d 1262 (D.C. 2015) .........................................................................................10

*Finkel v. Romanowicz*,
    577 F.3d 79 (2d Cir. 2009)............................................................................................9

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*,
    973 F.2d 155 (2d Cir. 1992).........................................................................................13

*Griffith v. Barnes*,
    560 F. Supp. 2d 29 (D.D.C. 2008) ..............................................................................24

*Hurd v. District of Columbia*,
    864 F.3d 671 (D.C. Cir. 2017).......................................................................................9

*Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*,
    239 F. Supp. 2d 26 (D.D.C. 2002) ................................................................................9

*Maxwell v. Gallagher*,
    709 A.2d 100 (D.C. 1998) ...........................................................................................24

*Mey v. Phillips*,
    71 F.4th 203 (4th Cir. 2023) ..................................................................................19, 20

*Oparaugo v. Watts*,
884 A.2d 63 (D.C. 2005) ..........................................................................................10

*Pleznac v. Equity Residential Mgmt., L.L.C.*,
320 F. Supp. 3d 99 (D.D.C. 2018) ...........................................................................17

*Rodriguez v. New Generation Hardware Store Corp.*,
No. 22-CV-4422 (LJL), 2023 WL 1516908 (S.D.N.Y. Feb. 3, 2023)........................9

*Rosden v. Leuthold*,
274 F.2d 747 (D.C. Cir. 1960) ..................................................................................23

*Safex Found., Inc. v. Safeth, Ltd.*,
531 F. Supp. 3d 285 (D.D.C. 2021) ..........................................................................10

*Sarlie v. E.L. Bruce Co.*,
265 F. Supp. 371 (S.D.N.Y. 1967) ............................................................................23

*Simon v. Republic of Hungary*,
77 F.4th 1077 (D.C. Cir. 2023) .................................................................................16

*Swierkiewicz v. Sorema N. A.*,
534 U.S. 506 (2002) ..................................................................................................14

*Szymkowicz v. Frisch*,
No. CV 19-3329 (BAH), 2020 WL 4432240 (D.D.C. July 31, 2020).......................25

*Trans World Airlines, Inc. v. Hughes*,
449 F.2d 51 (2d Cir. 1971)..................................................................................12, 21

*United States Sec. & Exch. Comm'n v. China Infrastructure Inv. Corp.*,
189 F. Supp. 3d 118 (D.D.C. 2016) ............................................................................9

*Wehrs v. Wells*,
688 F.3d 886 (7th Cir. 2012) ....................................................................................13

*Wye Oak Tech., Inc. v. Republic of Iraq*,
24 F.4th 686 (D.C. Cir. 2022) .....................................................................................9

**Other Authorities**

6A Wright & Miller, Fed. Prac. & Proc. (3d ed. 2023)
§ 1491.........................................................................................................................22
§ 1495.........................................................................................................................22

Plaintiffs Ruby Freeman and Wandrea' ArShaye "Shaye" Moss ("Plaintiffs") respectfully file this response to Defendant Rudolph Giuliani's November 27, 2023 Memorandum in Response to the Court's November 21, 2023 Minute Order. ECF No. 110 ("Memorandum" or "Giuliani Mem."). This response first addresses the background relevant to the issues raised in Defendant Giuliani's Memorandum. It then addresses Defendant Giuliani's arguments in turn.

## RELEVANT BACKGROUND[1]

**A.    The Court Held That Plaintiffs' Amended Complaint Adequately Pleaded All Causes of Action In Denying Defendant Giuliani's Motion To Dismiss.**

The Amended Complaint alleged that Defendant Giuliani defamed and intentionally inflicted emotional distress on Plaintiffs, and did so in conspiracy with others. As the Amended Complaint details in its opening pages, Defendant Giuliani "orchestrated a sustained smear campaign, repeatedly accusing Ms. Freeman and Ms. Moss, by name, on television and on the Internet and social media networks of committing election fraud," and "published, caused to be publish, and foreseeably led others to publish false accusations" about Plaintiffs. ECF No. 22 ("Am. Compl."), ¶ 4. Defendant Giuliani acted to advance this campaign "in conversations with incumbent candidate Trump and other Trump campaign members, and on the Internet, when it was at least reasonably foreseeable that others would repeat these claims as truth." *Id.* ¶ 5. The Complaint details how these efforts started on December 3, 2020, when Defendant Giuliani and the Trump campaign collectively published "an excerpted clip from State Farm Arena security camera video showing grainy images of Ms. Freeman and Ms. Moss," *id.* ¶ 6, and continued to publicize these images and false allegations through December despite repeated public refutations from Georgia state election officials. *Id.* ¶¶ 7–8.

---

[1] The Court is well versed in the facts and procedural history of this case. Plaintiffs herein only recite those facts necessary for purposes of responding to Defendant Giuliani's Memorandum.

The efforts that Defendant Giuliani launched in early December were memorialized that month into a "Strategic Communications Plan." As the Amended Complaint describes, "working closely with President Trump and his campaign" and other "key team members," Defendant Giuliani launched and executed a nationwide "Strategic Communications Plan" bearing his name ("Giuliani Strategic Plan") to "educate the public on the fraud numbers, and inspire citizens to call upon legislators and Members of Congress to disregard the fraudulent vote count and certify the duly-elected President Trump." *Id.* ¶¶ 9–13, 57–64.[2] The Giuliani Strategic Plan identified Plaintiffs by name, including by referring to: a "Video of Ruby and Shay [*sic*] at midnight"; "Election Official Ruby Freeman is seen surreptitiously & illegally handing off hard-drives ON CAMERA in the Georgia counting facility"; "Suitcase Gate – Video of 'ballot stuff'"; and "Ruby Freeman (woman in purple shirt on video) now under arrest . . . ." *Id.* ¶¶ 58-63. The Giuliani Strategic Plan identifies "KEY TEAM MEMBERS" to execute the plan, including by various initials, "Rudy Giuliani," Trump advisor "Peter Navarro Team," and "Local Legal Teams" in various states, including Georgia. *Id.* ¶64 & n.47; ECF No. 26-3 at 7–8 (identifying key members by initials, including "BK" and "KF"). The Amended Complaint alleges that Giuliani Strategic Plan aimed to disseminate these lies as far and wide as possible through "more than a dozen 'CHANNELS TO DISSEMINATE MESSAGING,' which included 'Presidential Tweets.'" Am. Compl. ¶ 11. The Amended Complaint alleges how Defendant Giuliani executed the plan, including by publishing defamatory claims about Plaintiffs "directly to Donald Trump, members of the Trump Campaign, and other individuals in Washington, D.C.," and further alleges that

---

[2] Defendant Giuliani attached the Giuliani Strategic Plan to his Motion to Dismiss the Amended Complaint. *See* ECF No. 26-3.

Defendant caused President Trump to then spread those defamatory claims. Am. Compl. ¶¶ 77–86.

The limited discovery Plaintiffs were able to obtain provided further insight to the nature of the conspiracy.[3] Defendant Giuliani quickly assembled and commanded a large team to challenge the 2020 presidential election results on behalf of President Trump and the Trump Campaign. *See* Exhibit 1, Deposition Transcript of Rudolph W. Giuliani at 93:16-99:16; Exhibit 2, Deposition Transcript of Bernard Kerik ("Kerik Tr.") at 37:18-39:10; 65:14-22. Discovery revealed the specific identities of many of Defendant Giuliani's co-conspirators, including the "key members" referenced in the Giuliani Strategic Plan as Bernard Kerik (BK), Katherine Friess (KF), Boris Epshteyn (BE), and Phil Waldron (PW). Kerik Tr. at 92:6-94:8. During her deposition, Christina Bobb testified that she was a member of "Rudy's legal team" helping Defendant Giuliani in his representation of then-President Trump and the Trump Campaign, and further identified members to include Jenna Ellis, Mr. Epshteyn, Mr. Kerik, Ms. Friess, Mr. Waldron, Christianne Allen, Mirna Tarraf, Maria Ryan, and John Eastman. Exhibit 3, Deposition Transcript of Christina Bobb at 16:11-19:18, 22:23-23:6; 31:4-8; 32:7-14; 32:21-33:2; 34:16-20; 37:12-17. Deposition testimony established that Georgia-based attorney Ray S. Smith III spearheaded the "Local Legal

---

[3] As the Court has noted: "In addition to Giuliani's recalcitrant discovery conduct, plaintiffs have also faced challenges in obtaining relevant information from his associates, who were part of the effort by Giuliani, and others, to sow doubt in the fairness and legitimacy of the 2020 presidential election, further necessitating judicial intervention." ECF No. 94 at 3 n.1 (citing Dec. 20, 2022 Minute Order (authorizing plaintiffs to serve Katherine Friess with a subpoena, issued pursuant to Federal Rule of Civil Procedure 45 ('Rule 45 Subpoena'), via alternate means, after plaintiffs spent considerable resources to serve Freiss "ten times over four months at six different addresses in three different states"); May 10, 2023 Minute Order (authorizing plaintiffs to serve Jenna Ellis with Rule 45 Subpoena, via alternate means, after plaintiffs spent considerable resources to 'serve her three times at an address where she is believed to have recently resided and where her mother currently resides'); ECF No. 82 (detailing Bernard Kerik's failure to comply with a Rule 45 Subpoena and granting, in part, plaintiffs' motion to compel compliance)).

Team" in Georgia, and that he coordinated with the Trump Campaign and Defendant Giuliani, including to discuss the State Farm Arena video of Plaintiffs with Defendant Giuliani in advance of the December 3, 2020 hearing during which the video was presented to the public at Mr. Smith's direction. *Id.* at 38:11-40:15; Exhibit 4, Deposition Transcript of Jacki Pick at 44:3-44:7, 47:10-19, 105:25-107:12; Kerik Tr. at 83:17-86:8, 203:17-204:1. Testimony also revealed that Defendant Giuliani and his co-conspirators were working on the core objectives of the Strategic Plan (even if not the precise details of the Plan as it was ultimately memorialized) for many weeks dating back to November. See Kerik Tr. 95:7-100:5. Further, they communicated directly with the White House regarding Defendant Giuliani's plan, including sending the Giuliani Strategic Plan to Mr. Trump's chief of staff, Mark Meadows, on December 28, 2020—just 5 days before the Mr. Trump's January 2, 2021 phone call with Georgia Secretary of State Brad Raffensperger that is one of the actionable statements. Am. Compl. ¶¶ 77–86; ECF No. 63-5 (Kerik email to Meadows re Giuliani Strategic Plan); ECF No. 81-12 (text chain re best examples of fraud). Discovery also revealed that Defendant Giuliani reviewed and approved advertisements for the Trump Campaign, including ones that played the State Farm Arena video of Plaintiffs in order to claim fraud in Georgia. Exhibit 5, Email from Jason Miller to Defendant Giuliani and Christina Bobb; Exhibit 6, email chain between Larry Weitzner, Jason Miller, and others.

Defendant Giuliani filed a motion to dismiss the Amended Complaint, which the Court denied in full, holding that Plaintiffs had sufficiently pleaded all claims (defamation *per se*, intentional infliction of emotional distress ("IIED"), and civil conspiracy). ECF No. 31, at 22-23, 25. The Court rejected Defendant Giuliani's arguments regarding the sufficiency of Plaintiffs' civil conspiracy claim, holding that the Giuliani "Strategic Plan and other conduct provide ample circumstantial evidence of a civil conspiracy between Giuliani and members of the Trump

Campaign." *Id.* at 24. The Court explained that the Giuliani Strategic Plan listed a stated goal, actions to support that goal, and key team members for accomplishing the goal, and that the Amended Complaint pleaded that President Trump's call with Georgia Secretary of State Brad Raffensperger was an act in furtherance of that goal. *Id.* at 24-25. Therefore, the Court held that a "reasonable jury could accordingly infer that (1) Giuliani, Trump, and the '[k]ey [t]eam [m]embers' listed in the Strategic Plan (2) created a plan to sow doubt in the outcome of the 2020 election by (3) launching a misinformation campaign, which included accusing Freeman, Moss, and others of participating in schemes of electoral fraud, and (4) injuring plaintiffs in the process." *Id.* at 25.

**B.**   **The Court Found That Defendant Giuliani's Willful Discovery Violations Prejudiced Plaintiffs' Ability to Fully Develop The Record As To All Causes of Action.**

For more than a year, Plaintiffs engaged in discovery efforts in this case in good faith. Defendant Giuliani has never disputed that Plaintiffs produced all relevant and required discovery material and deposition notices in a timely manner. In contrast, Defendant Giuliani consistently failed to comply with his basic discovery obligations. After exhausting efforts to secure documents and discovery materials from Defendant Giuliani—including seeking judicial intervention via various motions to compel, ECF Nos. 44, 65, 70, and only after the Court entered orders compelling him to produce certain materials, *see* May 19, 2023 Minute Order; May 31, 2023 Minute Order; June 22, 2023 Minute Order—Plaintiffs moved the Court to sanction Defendant Giuliani for his failure to preserve electronic evidence in violation of Rule 37(e), requesting, *inter alia*, default judgment on liability. ECF No. 81 (the "Sanctions Motion"). In response, Defendant Giuliani argued that sanctions were unnecessary because he was willing to stipulate to liability as to all of Plaintiffs' claims, ECF No. 84, at 1, 6, and filed two "Nolo Contendre [sic]" stipulations to this effect. ECF No. 84-2 (First Stipulation); ECF No. 90 (Superseding Stipulation)

("conced[ing], for the purposes of this litigation only, that liability on Plaintiffs' causes of action should be treated as though there is default liability"). In communication with Plaintiffs' counsel, Defendant Giuliani's attorney explained that the intent was to stipulate "to all the elements of Plaintiffs' civil conspiracy claim, including that there was a meeting of the minds on or before December 3, 2020, with Donald Trump and others and that Mr. Giuliani participated in overt acts pursuant to or in furtherance thereof." ECF No. 86-6, at 4.

The Court granted the Sanctions Motion and ordered, *inter alia*, "that default judgment will be entered against defendant Rudolph W. Giuliani on his liability for plaintiffs' defamation, intentional infliction of emotional distress, civil conspiracy, and punitive damage claims." ECF Nos. 93, 94 (collectively, the "Default Judgment Order"); *see also* ECF No. 95. The Court found that Defendant Giuliani's failure to preserve electronic evidence prejudiced Plaintiffs' ability to prove its various claims, and explained that "plaintiffs have been denied access to discovery from Giuliani and his associates both to support their claims and to defeat any defenses proffered at a trial on the merits." ECF No. 84 at 3 n.1. As to Plaintiffs' claim for defamation *per se*, Plaintiffs pleaded, and the Court found in its August 30, 2023 Default Judgment Order, that: (1) Defendant Giuliani made false and defamatory statements about Plaintiffs; (2) without privilege to third parties; (3) and with actual malice; and (4) which caused Plaintiffs harm; and (5) which constitute defamation *per se* in that they damaged them in their trade, office, or profession by claiming that they participated in criminal activity. *See* Am. Compl. ¶¶ 4-13, 57-135, 162-177; ECF No. 31 (Order Denying Motion to Dismiss) at 12-22; ECF No. 94 at 41-47. As to Plaintiffs' claim for IIED, Plaintiffs pleaded, and the Court found in its August 30, 2023 order, that Defendant Giuliani's (1) conduct was extreme and outrageous and (2) intentionally (3) caused Plaintiffs severe emotional distress. *See* Am. Compl. ¶¶ 14-17, 136-162, 178-186; ECF No. 31 at 22-23;

ECF No. 94 at 41-47. With respect to conspiracy—which, the Court explained, requires proving "1) an agreement between two or more persons (2) to participate in an unlawful act," ECF No. 94 at 36 (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000))—the Default Judgment Order explained that such "proof rests on evidence that Giuliani worked with others to defame and inflict emotional distress on plaintiffs, but, due to Giuliani's failure to preserve and produce his communications with others concerning plaintiffs and the surrounding context, plaintiffs are, again, severely hampered in establishing this claim." *See* ECF No. 94 at 36, 44.

The Court's Default Judgment Order did not rely "on Giuliani's stipulations" but rather entered judgment "as a straight-up sanction for his discovery failures." ECF No. 94 at 46. The Court refused to permit Defendant Giuliani to "bypass his discovery obligations now with stipulations that would leave him, somehow, free to raise his affirmative defenses to plaintiffs' claims on appeal, with a record predicated on deficient discovery." *Id*. Still, the Court explained that "[b]oth . . . stipulations make crystal clear his choice not to provide further discovery." *Id*. at 26.

In the Default Judgment Order, the Court concluded:

> "For the above reasons, plaintiffs' motion for sanctions for failure to preserve ESI is granted, and default judgment against Giuliani on plaintiffs' claims is imposed, as a sanction under both Federal Rules of Civil Procedure 37(e)(2)(C) and 37(b)(2)(A)(vi). Before final judgment may be entered reflecting the amount of compensatory and punitive damages, if any, to be awarded to plaintiffs, a trial on such damages is required, *see* FED. R. CIV. P. 55(b)(2)(B), and the parties will be directed to confer and propose three dates for the damages trial by early 2024."

*Id*. at 56. The Court explained that in light of the Default Judgment Order, discovery unrelated to damages was moot. ECF No. 94 at 3 n.1. For example, it denied as moot Plaintiffs' outstanding motion regarding Mr. Kerik's refusal to produce improperly withheld materials as well as his refusal to answer questions about the members of Defendant Giuliani's team. *Id.* In sum, "given

resolution of the instant motion by entry of default judgment on liability against Giuliani," there

is no reason to find that "such documents would be relevant to the quantification of damages." *Id.*

at 3 n.1; ECF No. 63 ("Kerik Motion").

**C.    The Court Orders Briefing On The Issues Defendant Giuliani Raised In The Joint Pre-Trial Statement ("JPS").**

In its November 21, 2023 Minute Order, the Court ordered Defendant Giuliani to "submit

briefing fully explaining, with citations to applicable law:

> "i. why the [93] August 30, 2023, Order directing the entry of default judgment against defendant ('Default Judgment Order') does not resolve 'all elements of [defendant's] liability, including the fact of harm and causation, JPS at 27 (§ XII);
>
> ii. why 'all of the elements of civil conspiracy' have not been satisfied in light of the Default Judgment Order, id. at 28 (§ XII);
>
> iii. why the members of the conspiracy include not only persons specifically listed in the [22] Amended Complaint and those individuals the parties agree to stipulate were members, see JPS at 29-30 ('[T]he parties are in agreement that the following individuals or entities were members of the conspiracy: Donald J. Trump, Christina Bobb, and Herring Networks, Inc.... ('OAN'); Robert Herring; Charles Herring; and Chanel Rion.'), but defendant contests that the following individuals are members of the conspiracy: 'the Trump Campaign, including anyone who caused [] statements to [be] publish[ed] [] about Plaintiffs or participated in such publications; members of President Trump's legal team, including Ray S. Smith III, Jenna Lynn Ellis, Jackie Pick, Bernard Kerik, and any other lawyers or individuals who the evidence shows worked alongside Defendant Giuliani in support of the Trump Campaign and/or Trump Legal Team,' id. at 30;
>
> iv. defendant's objection to plaintiffs' proposed jury instruction on civil conspiracy, *id*. at 28;
>
> v. why plaintiffs should be limited to prove damages regarding plaintiffs' Defamation/Defamation Per Se claim (Claim 1) and Civil Conspiracy claim (Claim 3) based only on 'those statements and/or co-conspirators specifically alleged in the Amended Complaint,' *id*. at 14 n.8, rather than 'all of the statements to which the [Amended Complaint] refers or incorporates by reference,' *id*., when 'Dr. Ashlee Humphreys disclosed her opinions relating to those statements before the default judgment order' in reports served on defendant on July 28 and October 6, 2023, thereby putting defendant on notice of 'Plaintiffs' intent to prove damages relating to those statements at the time that [defendant] attempted to stipulate to liability,' *id*."

November 21, 2023 Minute Order. The Court also required Defendant Giuliani to submit any "briefing on his objections to the parties' proposed jury instructions, as contemplated in the parties' JPS, *see id.* at 31, or consider such objections waived" and to substantiate his claim that "'the Court erred in holding that Plaintiffs[] properly pleaded their conspiracy claim.'" *Id.*

## ARGUMENT

## I.   THE DEFAULT JUDGMENT ORDER RESOLVED "ALL ELEMENTS" OF DEFENDANT GIULIANI'S LIABILITY, INCLUDING THE FACTS OF HARM AND CAUSATION.

As a matter of law, a "defaulting defendant concedes all well-pleaded factual allegations as to liability," and thus "default judgment establishes the defaulting party's liability for every well-pleaded allegation in the complaint." *United States Sec. & Exch. Comm'n v. China Infrastructure Inv. Corp.*, 189 F. Supp. 3d 118, 128 (D.D.C. 2016) (citations and internal quotation marks omitted).[4] This Court already has determined that Plaintiffs' factual allegations in the Amended Complaint were legally sufficient with respect to "the entirety of plaintiffs' claims." MTD Opinion at 25. Both that conclusion and the supporting analyses in the Motion to Dismiss Order are law of the case, and Defendant Giuliani has not identified any basis for reconsidering them. *See Bahlul v. United States*, 77 F.4th 918, 925 (D.C. Cir. 2023) ("Under the law-of-the case doctrine, a court should not reopen issues that it decided earlier."); *Wye Oak Tech., Inc. v. Republic*

---

[4] The "legal sufficiency of a non-defaulting party's claims is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the [non-defaulting party's] favor." *Rodriguez v. New Generation Hardware Store Corp.*, No. 22-CV-4422 (LJL), 2023 WL 1516908, at *2 (S.D.N.Y. Feb. 3, 2023) (cleaned up); *see Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("a court is required to accept all of the" non-defaulting party's "factual allegations as true and draw all reasonable inferences in its favor"); *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002). When evaluating the sufficiency of a complaint, a court is not limited to the complaint's allegations but may also consider materials "attached to or incorporated in the complaint and matters of which the court may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (cleaned up).

*of Iraq*, 24 F.4th 686, 697–98 (D.C. Cir. 2022) (enumerating limited exceptions to the law-of-the-case doctrine). Because the Court has already held that all of the allegations in the Amended Complaint sufficiently state a claim for all three of its claims—defamation *per se*, IIED, and conspiracy—the Court's Default Judgment Order establishes Defendant Giuliani's liability for all of the Amended Complaint's allegations.

Defendant Giuliani nevertheless indicates that he intends to argue to the jury (even though he has offered no jury instruction on this point) that Plaintiffs "must prove the extent that Giuliani's conduct proximately caused" the harm that resulted from the injuries alleged in the Amended Complaint. *See* Giuliani Mem. 9. But that part of the case is over. By entering default judgment against Defendant Giuliani on his liability for defamation and IIED, the Court already has found that Defendant Giuliani's conduct caused Plaintiffs injuries. Causation is an element of both torts. *See Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005) (the fourth element of defamation requires "either that the statement was actionable as a matter of law irrespective of special harm or that its publication ***caused the plaintiff special harm***" (citations omitted) (emphasis added)); *Doe v. Bernabei & Wachtel, PLLC*, 116 A.3d 1262, 1269 (D.C. 2015) (the third element of IIED requires that the conduct "(3) causes the plaintiff to suffer severe emotional distress" (cleaned up)). Moreover, and as Defendant Giuliani acknowledges, the Court has found that Defendant Giuliani's defamation statements constituted defamation *per se*, for which harm is presumed as a matter of law without any necessary proof. *Safex Found., Inc. v. Safeth, Ltd.*, 531 F. Supp. 3d 285, 306 (D.D.C. 2021) (Howell, C.J.) (applying D.C. law and noting that in defamation per se, "proof of harm is not required to recover compensation" (quotation omitted); *see generally Carey v. Piphus*, 435 U.S. 247, 262 (1978) (explaining that because "those forms of defamation that are actionable

per se are virtually certain to cause serious injury to reputation, and that this kind of injury is extremely difficult to prove," proof of harm is not required to seek compensatory damages).[5]

Defendant Giuliani knowingly and voluntarily *conceded* the sufficiency of "all factual allegations in Plaintiff's Amended Complaint as to his liability" on "Plaintiffs' defamation, intentional infliction of emotional distress, and civil conspiracy claims, and his liability as to Plaintiffs' claim for punitive damages." ECF No. 90, at 2. And Plaintiffs' motion *in limine*—in which Defendant Giuliani consented—stated: "Regarding causation, the parties have conferred and agree that the Court's Default Judgment Order resolves all of the elements of Plaintiffs' claims for purposes of Defendant Giuliani's liability, including the fact of causation." ECF No. 103 at 3 n.3. Defendant makes similar concessions in his latest Memorandum, including by stating that Plaintiffs are entitled to recover for the injuries pleaded in the Amended Complaint. ECF No. 110 at 9. The Amended Complaint specifically pleads injuries that Defendant Giuliani's conduct caused, including:

- Defendant Giuliani "amplified his defamatory statements by publishing them on a variety of channels" and "encouraged those listening to watch and spread the defamatory clips repeatedly," and, "[a]s intended, numerous third-party publishers republished Giuliani's false accusations to millions of viewers and readers. . . ." Am. Compl. ¶ 12.

- "Defendant Giuliani is directly responsible for the reputational harm that [Plaintiffs] experienced," because he "launched and executed a Strategic Plan that specifically included naming [Plaintiffs] and widely disseminating statements accusing them of committing crimes." Am. Compl. ¶ 136.

- Those statements, "and those published *as a result of* his Strategic Plan, reached millions of people." *Id.* ¶ 137 (emphasis added).

---

[5] Defendant Giuliani implies that Plaintiffs are limited to seeking presumed damages. That is untrue. For the reasons discussed below, Plaintiffs are entitled to ask the jury to presume damages, but they do not intend to rely solely on presumed damages and will provide evidence of actual damages, including harm to reputation and monetary costs.

- That conduct "directly contributed to [Plaintiffs] receiving—almost immediately—an onslaught of extremely violent and graphic threats and dangerous harassment." *Id.* ¶ 139.

- "The onslaught of threats that Plaintiffs have experienced and the necessary measures they have been forced to take to protect themselves are the direct result of Defendant's defamatory conduct. Plaintiffs have and will continue to experience serious and severe emotional distress as a result, The harm Defendant has caused to Plaintiffs' reputations, privacy, safety, and earnings, and other pecuniary loss, is immense." *Id.* ¶ 162.

Thus, there can be no serious dispute that this Court's Default Judgment Order has already found that Defendant Giuliani's conduct proximately caused the harm alleged in the Complaint. The only remaining question for the jury should be to quantify that harm, as a matter of dollars and cents owed to Plaintiffs.

None of the cases Defendant Giuliani cites in his Memorandum warrants imposing a heightened burden on Plaintiffs to prove proximate cause after default judgment. Defendant Giuliani relies on a Second Circuit decision in *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds sub nom. Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363 (1973), to suggest that Plaintiffs are required to re-litigate proximate causation at a damages trial. But that misunderstands *Hughes*, as the Second Circuit has subsequently explained:

> "There is a categorical distinction between the element 'proximate cause,' as it pertains to the assignment of liability in the first instance, and 'proximate cause' as it relates to the ministerial calculation of damages in the context of a default judgment. With regard to liability, the concept of proximate cause supplies the legal nexus between act and injury, and provides a necessary basis for awarding compensation. ***Where it is properly alleged in a complaint, proximate cause—going to liability—is completely and irrefutably established upon the defendant's default.*** However, as employed in *Hughes,* the concept of proximate cause was merely used to set the limits of recovery according to the injuries that were conceded by default. Thus, ***in the Hughes context, the application of proximate cause presumes that liability has been established, and requires only that the compensation sought relate to the damages that naturally flow from the injuries pleaded***."

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992) (emphases added). Here, proximate cause has been "irrefutably established" by the default judgment. *Id.* The only further role for causation is to ensure that "the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Id.*; *accord Wehrs v. Wells*, 688 F.3d 886, 893 (7th Cir. 2012). That standard accords with the normal rule distinguishing between "proof of cause and proof of damages"—namely, "[o]nce the plaintiff proves injury, broad latitude is allowed in quantifying damages, *especially when the defendant's own conduct impedes quantification*." *BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 759 (7th Cir. 2011) (Posner, J.) (emphasis added). "Even speculation has its place in estimating damages, and doubts should be resolved against the wrongdoer. . . . Otherwise 'the more grievous the wrong done, the less likelihood there would be of a recovery.'" *Id.* (quoting *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946)); *see Bigelow*, 327 U.S. at 265 ("The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.").

    In sum, the sole remaining role for the concept of proximate cause in this case is set forth in *Greyhound*: Plaintiffs' damages evidence must only "relate to the damages that naturally flow from the injuries pleaded," with Defendant Giuliani, not Plaintiffs, bearing the risk of imprecision created by Giuliani's willful misconduct. 973 F.2d at 159. The "injuries pleaded" in the Amended Complaint include threats, harassment, fear, anxiety, and other manifestations of the harm to reputation and emotional distress that Defendant Giuliani caused Plaintiffs. The evidence Plaintiffs have proposed to present at trial—including the disclosed opinions of Dr. Humphreys—easily satisfies *Greyhound*'s standard.

II.   **THE DEFAULT JUDGMENT ORDER ESTABLISHES ALL THE ELEMENTS OF
CIVIL CONSPIRACY, INCLUDING THAT DEFENDANT GIULIANI
CONSPIRED WITH THE TRUMP CAMPAIGN AND THE TRUMP LEGAL
TEAM.**

Defendant Giuliani in his Memorandum does not, as the Court asked, squarely address
"why 'all of the elements of civil conspiracy' have not been satisfied in light of the Default
Judgment Order." Nov. 21 Minute Order. Nor does Defendant Giuliani explain, as the Court
ordered him to do, why the members of the conspiracy should not also include anyone who caused
statements to be published about Plaintiffs or participated in such publications, including members
of President Trump's legal team such as Mr. Smith, Ms. Ellis, Mr. Kerik, or any other lawyers or
individuals who the evidence shows worked alongside Defendant Giuliani in support of the Trump
Campaign and/or Trump Legal Team. Besides the fact that these individuals were either explicitly
or implicitly referred to in the Complaint, as discussed above, Defendant Giuliani does not and
cannot provide any explanation for why individuals whom discovery has indicated were part of
the conspiracy should not be deemed part of it. Instead, Defendant Giuliani argues that (1) "the
only overt actions pleaded in the Complaint involve Giuliani, Trump, and OAN," "the only
relevant conspirators are those involved in the overt acts," Giuliani Mem. 8; and (2) Plaintiffs must
allege the specific individuals who are part of the conspiracy, *id.* at 10. Both arguments are wrong
as a matter of fact and law.

The Court's Motion to Dismiss Order held that the Amended Complaint sufficiently
alleged a civil conspiracy notwithstanding Giuliani's argument that Plaintiffs were required to
allege every specific member of the conspiracy at the pleading stage.[6] Defendant Giuliani does not

---

[6] The Court's motion to dismiss order was correct. As Plaintiffs argued at the time, Defendant
Giuliani's objections—which effectively seek to impose Rule 9(b)'s heightened pleading standard
on conspiracy allegations—are meritless. *See* ECF No. 27, at 50–51; *Swierkiewicz v. Sorema N.
A.*, 534 U.S. 506, 513 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions,"

dispute that the Court has already considered and rejected his arguments. Defendant Giuliani has offered no valid reason why the Court should reconsider the law of the case. *Supra*, at 9–10. Nor could he, including because he knowingly and voluntarily *conceded* the sufficiency of Plaintiffs' allegations in his stipulation, and represented to Plaintiffs' counsel that he intended to stipulate "to all the elements of Plaintiffs' civil conspiracy claim, including that there was a meeting of the minds on or before December 3, 2020, with Donald Trump and others and that Mr. Giuliani participated in overt acts pursuant to or in furtherance thereof." ECF No. 86-6, at 4. Defendant Giuliani contended that the effect of his stipulation to liability was that "Plaintiffs do not need any additional discovery." ECF No. 84, at 6. Accordingly, the effect of the default judgment is to establish as fact the Amended Complaint's allegations of conspiracy among Donald Trump, the Trump Campaign, the Trump Legal team, and others referred to in the Giuliani Strategic Plan. *Supra* at 9–10. Those allegations are sufficient to establish the membership of each of the contested co-conspirators. *Supra* at 9–10 & n.4

Despite the ink spilled on this issue, it remains unclear precisely what damages Defendant Giuliani believes are solely attributable to non-members of the conspiracy, and thus not attributable to Defendant Giuliani through his membership in that conspiracy. Even if Defendant Giuliani were to come forward with a particularized argument, however, it would be highly inequitable to permit him to hold Plaintiffs to the state of their knowledge at the time they filed the Amended Complaint after Giuliani's own willful discovery misconduct, and third-party recalcitrance, deprived Plaintiffs of the opportunity to establish the full extent of the conspiracy. ECF No. 94, at 6. For example, Plaintiffs moved to compel Mr. Kerik (Defendant Giuliani's right-

---

and the Supreme Court "has declined to extend" Rule 9(b)'s exceptions beyond "fraud or mistake").

hand man and lead investigator) to, *inter alia*, produce documents and testimony improperly
withheld as privileged. ECF No. 63. As detailed in the Kerik Motion, the documents and testimony
withheld by Mr. Kerik directly relate to the members of and coordination among Defendant
Giuliani's conspiracy, including "internal communications related to external messaging" and
"internal emails about legislature meetings," *id*. at 5-6, and the "members and roles of the Giuliani
team." *Id*. at 7-8. After the Court granted Plaintiffs' motion to compel Mr. Kerik, ECF No. 82,
Plaintiffs and Mr. Kerik filed a joint stipulation in which they agreed that Mr. Kerik would sit for
an additional deposition covering the topics objected to during his first deposition and that Mr.
Kerik would not oppose Plaintiffs' seeking in camera review of his withheld documents, which
Plaintiffs sought (ECF Nos. 83, 87). The Court deferred decision on that motion until after
resolving Plaintiffs' Motion for Sanctions against Defendant Giuliani, in which it explained:

> As to Kerik, plaintiffs recently advised that they contest Kerik's
> withholding of responsive records as privileged, and request in
> camera review, of 318 withheld documents, [], but given resolution
> of the instant motion by entry of default judgment on liability
> against Giuliani, plaintiffs' request for *in camera* review is denied
> as moot since plaintiffs have provided no information to suggest that
> such documents would be relevant to the quantification of damages.
> **As a result, plaintiffs have been denied access to discovery from
> Giuliani and his associates both to support their claims and to
> defeat any defenses proffered at a trial on the merits.**

ECF No. 94 at 3 n. 1 (emphasis added).

   Having procured an order from the Court deeming Plaintiffs' continued efforts to identify
*all* of Defendant Giuliani's co-conspirators to be moot, Defendant Giuliani should not be heard to
argue that Plaintiffs' damages case must be limited to the individual co-conspirators that Plaintiffs
were aware of *without* the aid of that discovery. Indeed, he is judicially estopped from doing so.
*See, e.g.*, *Simon v. Republic of Hungary*, 77 F.4th 1077, 1100 (D.C. Cir. 2023) ("Judicial estoppel

prevents a party from obtaining an unfair advantage by prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.").

## III.   PLAINTIFFS' QUANTIFICATION OF DAMAGES AT TRIAL SHOULD NOT BE ARTIFICIALLY LIMITED TO THE TWELVE STATEMENTS LISTED IN GIULIANI'S MEMORANDUM.

Defendant Giuliani faults Plaintiffs for relying on "unpleaded theories of liability and misconduct," and argues that Plaintiffs' damages must be "limited to the specific conduct alleged in the Complaint," which he arbitrarily limits to twelve specific statements listed in the Amended Complaint. Giuliani Mem. 2–8. But Defendant Giuliani has failed to identify any actual "unpleaded theories of liability and misconduct" that Plaintiffs are proposing to raise at the forthcoming damages trial. Plaintiffs are seeking damages for defamation and IIED, both directly and on a conspiracy theory of liability, based on a series of false allegations that Defendant Giuliani and his co-conspirators made about Plaintiffs.

Defendant Giuliani's argument appears to rest on the false premise that Plaintiffs may only claim damages for defamation, and therefore cannot claim damages for anything but the expressly listed actionable statements in the Amended Complaint. But, of course, Defendant Giuliani also defaulted on Plaintiffs' separate IIED claim, which is not, and has never been, co-extensive with their claim for defamation. The heart of an IIED claim is whether a defendant engaged in "extreme and outrageous conduct," not whether a defendant publishes specific statements that are false. ECF No. 31 at 22–23. And unlike defamation, Plaintiffs' IIED claim here arises because Defendant's "*course of conduct* cause[d Plaintiffs] extreme mental distress," *Pleznac v. Equity Residential Mgmt., L.L.C.*, 320 F. Supp. 3d 99, 109 (D.D.C. 2018) (emphasis added). Here, Plaintiffs' Amended Complaint exhaustively detailed Defendant Giuliani's central role as a "a key figure in *orchestrating* and disseminating the conspiracy theory that the 2020 election was 'stolen' from

Trump by now-President Joseph R. Biden, Jr. through coordinated large-scale election fraud across key swing states, including Georgia." Am. Compl. ¶ 5 (emphasis added).

Defendant Giuliani and his co-conspirators made the concerted decision, in advancing their claims of fraud in Georgia, to identify and target Plaintiffs by name and image, and to do so across a variety of media with a variety of voices. *Id.* ¶¶ 4-6, 12 38-39, 46 n.31, 53 n.38, 57. In the course of their campaign, Defendant Giuliani and his co-conspirator Mr. Trump also repeatedly called Plaintiffs criminals who warranted investigation or worse, *id.* ¶¶ 84, 91–92, and Plaintiffs were in fact investigated as a result of Defendant Giuliani's claims, *id.* ¶ 40. Defendant Giuliani persisted in his long-running campaign even after Plaintiffs filed their initial complaint in this case, ¶¶ 98–101, and—*even knowing all of the harm he has already caused Plaintiffs*—he persists to this day, ECF No. 103–2. While Plaintiffs' defamation claim properly focuses on Defendant Giuliani's "statements," Am. Compl. ¶¶ 173–77, it is Defendant Giuliani's orchestration and execution of this now years-long smear campaign that constitutes the "wrongful conduct" on which their IIED claim is based, *id.* ¶¶ 178–86. That campaign includes all of the conduct described above, which are separate and distinct from the twelve defamatory statements on which Defendant Giuliani fixates,[7] and any other statements that fall within that course of conduct.

Defendant Giuliani and his co-conspirators' IIED caused an immediate—i.e., pre-December 23, 2020—impact on Plaintiffs. They were subjected to an "almost immediate . . . onslaught of extremely violent and graphic threats and dangerous harassment." *Id.* ¶ 139. Prior to December 23, Ms. Freeman started receiving "harassing calls," was doxed, and had to seek police

---

[7] In moving to dismiss, Defendant Giuliani argued that Plaintiffs IIED claim "rises or falls with their defamation claim" because both of Plaintiffs' "claims rely on the same facts." ECF No. 19. The Court rightly rejected the argument, holding that Plaintiffs IIED claim is not "duplicative of their defamation claim." ECF No. 31 at 22.

intervention. *Id.* ¶¶ 140, 142. Beginning on December 4, Ms. Moss' fourteen-year-old son "was bombarded with racial slurs and threats of violence." *Id.* ¶ 151. And Ms. Moss "received dozens of messages through Facebook, LinkedIn, and Pinterest, many of which threatened violence." *Id.* ¶ 153. While that impact persisted beyond December 23, 2020, and persists to this day, the emotional distress wrought by Defendant Giuliani took off the moment the campaign he orchestrated began on December 3.

Even as to Plaintiffs' defamation claims, Defendant Giuliani mischaracterizes the Amended Complaint, which refers to and incorporates by reference numerous statements beyond the twelve that Giuliani lists in his memorandum. Am. Compl. ¶ 163 (incorporating all preceding allegations into their defamation claim). Those allegations include that "Defendant Giuliani published, caused to be published, and foreseeably led others to publish" a series of defamatory claims about Ms. Freeman and Ms. Moss, including "as a result of his Strategic Plan, and "spread these lies in numerous meetings, on television, in conversations with incumbent candidate Trump and other Trump campaign members, and on the Internet, when it was at least reasonably foreseeable that others would repeat these claims as truth." *Id.* ¶¶ 4-5, 17. Those allegations have also established that the defamatory campaign is "ongoing" and that "even after Plaintiffs initiated this action, Defendant Giuliani has relentlessly, repeatedly, and publicly accused Plaintiffs of engaging in the illegal act of election fraud, among other baseless smears." *Id.* ¶¶ 4-5, 12, 137.

The law does not limit Plaintiffs to recovering damages from *only* the 12 specific publications that appeared as examples in their Amended Complaint. The Fourth Circuit recently rejected a similar argument in *Mey v. Phillips*, in which a defendant subject to a Rule 37 default judgment sanction tried to limit its damages exposure under the TCPA by arguing that "any damages award must be limited to the 25 phone calls [the plaintiff] explicitly pled in her

[complaint]." 71 F.4th 203, 223 (4th Cir. 2023). The Fourth Circuit reasoned that the additional calls for which the plaintiff sought damages—including those that had occurred *after* the operative complaint was filed—had been "disclosed and litigated as part of [the] case," including through discovery that put the defendants on notice of the plaintiff's additional evidence prior to the default judgment. *Id.* at 224. So too here. Plaintiffs are entitled to the damages that "flow naturally" from the *injuries* alleged in the Amended Complaint, and here, Defendant Giuliani has been on notice since before the Default Judgment Order—by virtue of the disclosed report of Dr. Humphreys— that Plaintiffs are seeking damages not just from the 12 precise publications detailed in the Amended Complaint, but from numerous additional publications and re-publications (by Defendant Giuliani and his co-conspirators) of the same false statements that the Amended Complaint alleged to be defamatory.

Importantly, this is not a case in which Defendant Giuliani defaulted by failing to appear. In such a case, the restrictions on the damages that a plaintiff may claim after default judgment are grounded in principles of fair notice and due process, which still protect an absent defendant who may have been served with the complaint but nothing more. *See, e.g.*, *Appleton Elec. Co. v. Graves Truck Line, Inc.*, 635 F.2d 603, 611 (7th Cir. 1980). Those concerns are not implicated here because Defendant Giuliani has had ample notice and a full opportunity to contest the damages evidence that Plaintiffs intend to present at trial. Indeed, Defendant Giuliani had full notice of Plaintiffs' damages evidence—principally in the form of the disclosed expert testimony of Dr. Humphreys—*prior to the entry of default judgment*. Defendant Giuliani had a full and fair opportunity to contest that evidence—including by deposing Dr. Humphreys or filing a *Daubert* motion—but instead made the strategic decision to default, even attempting to stipulate to liability.

-20-

As in *Mey*, there is no basis to deny Plaintiffs the benefit of evidence that Giuliani knew about at the time of his default.

That conclusion is further supported by the very case on which Defendant Giuliani relies most heavily: *TWA v. Hughes*. In that case, the defendant—also subject to a Rule 37 default judgment—objected that the plaintiff should not be permitted to claim damages beyond those specifically demanded in the pleadings. The Second Circuit rejected that argument, noting how perverse it would be to reward the defaulting defendant for his own discovery violations:

> [T]here is no sound basis for restricting TWA to the precise damages originally sought in a case where damages alleged were unliquidated, and where defendant did not default by non-appearance, but rather because of non-compliance with discovery procedures, and indeed was granted a full trial on the question of damages actually caused by the allegations established by its default.

*Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 78 (2d Cir. 1971), *rev'd on other grounds sub nom. Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363 (1973). Furthermore, the plaintiff had "announced its intention" to seek a larger amount of damages "prior to [the defaulting defendant's] nonappearance," eliminating any problems of notice. *Id.* at 79.

Similarly, in *Appleton Elec. Co. v. Graves Truck Line, Inc.*, the Seventh Circuit rejected a defaulted defendant's argument that damages should have been limited to the four corners of the plaintiff's complaint. 635 F.2d 603 (7th Cir. 1980). In that case, the court explained, the plaintiff obtained a default judgment on liability for overpayments made on an unspecified number of shipments, and then served on the defendant a "proposed default order" that *did* specify the number of shipments and included a formula that would be used to calculate damages based upon those shipments. *Id.* at 610–11. The defendant objected that all of this information should have been alleged in the complaint. *Id.* The Seventh Circuit rejected that position, holding that in light of the

notice to the defendant, "the proposed default order . . . amounted to an amendment of the plaintiffs' prayer for relief." *Id.* at 611.

In sum, Plaintiffs properly alleged their causes of action, this Court properly granted default judgment on those causes of action following Defendant Giuliani's attempt to stipulate to liability on all three, and Plaintiffs should be permitted to present evidence of the damages that flow naturally and logically from the *injuries* alleged in the Amended Complaint. There is accordingly no merit to Defendant Giuliani's position.

## IV.   IN THE ALTERNATIVE, THE COURT SHOULD PERMIT PLAINTIFFS TO AMEND THE COMPLAINT TO CONFORM TO THE EVIDENCE.

Plaintiffs respectfully submit that the Court should overrule all of Defendant Giuliani's objections in full. However, if the Court finds any merit in Defendant Giuliani's arguments, the remedy is not to exclude the evidence adduced since the Amended Complaint, but rather to permit an amendment of the pleadings under Federal Rule of Civil Procedure 15(b)(1) and amend its default judgment order accordingly. *See* Rule 15(b)(1) ("If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits."); 6A Wright & Miller, Fed. Prac. & Proc. §§ 1491, 1495 (3d ed. 2023) ("courts should interpret [Rule 15(b)] liberally and permit an amendment whenever doing so will effectuate the underlying purpose of the rule" and is inappropriate only if "the party opposing the amendment [would] be seriously prejudiced"). Defendant Giuliani cannot possibly claim prejudice in these circumstances, where, in advance of his default, he had full notice of everything Plaintiffs disclosed and requested in discovery, received relevant productions, including the Humphreys report, retained the right to attend all depositions (and receive transcripts thereof), and was afforded

more than a fair opportunity to contest Plaintiffs' allegations through discovery and trial. Moreover, Plaintiffs are only in this position to begin with because Defendant Giuliani's own conduct inflicted extreme prejudice on their ability to prove their case. *See* ECF No. 94 at 34-39.[8] Accordingly, if this Court has any concerns regarding the adequacy of the allegations in the Amended Complaint, the proper remedy to redress those concerns would be to permit a conforming amendment. *See Sarlie v. E.L. Bruce Co.*, 265 F. Supp. 371, 377 (S.D.N.Y. 1967) (distinguishing between a default for non-appearance from one imposed for rule violations, and permitting a post-default amendment in the latter circumstance because "the damages originally asserted were unliquidated," the non-defaulting party was "entitled to recover for whatever damage it can show it suffered" and permitting otherwise would give the defaulting party a windfall to which in business morals and good conscience, he is not entitled.").

## V.   DEFENDANT GIULIANI'S OBJECTIONS TO THE PROPOSED JURY INSTRUCTIONS ARE MERITLESS.

Defendant Giuliani's cursory objections to the jury instructions also lack merit. *See* Giuliani Mem. at 10. He makes various objections to the jury instruction relating to conspiracy liability that restate his arguments relating to proximate causation and damages, both of which are erroneous for the reasons stated above.

---

[8] Defendant Giuliani's argument seizes on a technicality: despite the advanced stage of the evidence at the time of his default, the operative pleading still reflected Plaintiffs' understanding of the facts before they had engaged in any discovery. But serving Defendant Giuliani with a Second Amended Complaint—solely for the purpose of conforming the Amended Complaint to the evidence obtained during discovery—would have been pointless. Defendant Giuliani cannot seriously contend that he would have decided, in the face of such an amendment, to accept his discovery obligations, produce documents, pay Plaintiffs the fees and costs he (still) owes them, and begin to participate actively in the litigation. Requiring a plaintiff to serve an amended complaint on a party who has already demonstrated an unwillingness to participate in litigation would be nothing more than an empty formality, and Rule 15 is designed "to avoid the tyranny of formalism." *Rosden v. Leuthold*, 274 F.2d 747, 750 (D.C. Cir. 1960).

Defendant Giuliani also objects to jury instructions relating to Plaintiffs' entitlement to compensatory and punitive damages. Giuliani Mem. 10. Defendant Giuliani is correct that the Court ordered a trial at which the jury must quantify the amounts of compensatory and punitive damages, "if any." Giuliani Mem. 10; *see* ECF No. 94 at 49, 56. But that is inapposite to the modifications he proposes in the jury instructions. It is law of the case, by virtue of the Default Judgment Order, that Plaintiffs are entitled to seek two types of damages from the jury: compensatory and punitive. That is all that Plaintiffs' proposed jury instructions seek to explain, and Plaintiffs do not understand the Court's use of "if any" to mean otherwise. It is the *amount* of compensatory and punitive damages that is left for the jury to decide, not whether Plaintiffs may seek both.

Defendant Giuliani also is wrong that punitive damages are allowed only if Plaintiffs first "demonstrate . . . [an] actual injury in dollars and cents." While it is true that, under D.C. law, "punitive damages can be awarded only if there is a basis for actual damages," "there does not need to be an *award* of actual damages, so long as there is 'at least a basis in the evidence for actual—*i.e.*, compensatory—damages before punitive damages may be awarded.'" *Griffith v. Barnes*, 560 F. Supp. 2d 29, 37–38 (D.D.C. 2008) (emphasis added) (quoting *Jemison v. Nat'l Baptist Convention, U.S.A. Inc.*, 720 A.2d 275, 284 n.7 (D.C. 1998)). Here, Plaintiffs have pleaded, and will prove at trial, actual harm in the form of reputational and financial injury. Furthermore, as Defendant Giuliani agrees, this is a defamation *per se* case in which damages may be presumed, meaning that Plaintiffs already "are entitled to at least nominal damages." Giuliani Mem. 9-10. Under D.C. law, where the amount of compensatory damages is "nominal, stemming from the difficulty of quantifying them," that suffices to support an award of punitive damages. *Maxwell v. Gallagher*, 709 A.2d 100, 104 (D.C. 1998). Even nominal presumed damages for defamation are

-24-

of that type. *See Carey v. Piphus*, 435 U.S. 247, 262 (1978) ("The doctrine [of presumed damages] has been defended on the grounds that those forms of defamation that are actionable per se are virtually certain to cause serious injury to reputation, and that this kind of injury is extremely difficult to prove."); *Szymkowicz v. Frisch*, No. CV 19-3329 (BAH), 2020 WL 4432240, at *7 (D.D.C. July 31, 2020) (presumed damages "serve a compensatory function" and "are a *substitute* for ordinary compensatory damages, not a supplement . . . .") (cleaned up).

Elsewhere, Defendant Giuliani concedes that "the conditions precedent to punitive damages are met." ECF No. 105-5, at 19.[9] Exactly so. Nothing more is needed for the jury to award punitive damages, except for them to hear and consider Plaintiffs' evidence going to the amount that should be awarded. For these reasons, Defendant Giuliani's proposed modification to the jury instruction on punitive damages should be rejected. *See* ECF No. 105-5, at 26–27. Similarly, his first proposed modification to the jury instruction concerning matters already decided should be rejected. ECF No. 105-5, at 19.

## <u>CONCLUSION</u>

The Court should overrule the objections raised in Defendant Giuliani's memorandum.

Respectfully submitted.

---

[9] Defendant Giuliani made the same concession in attempting to stipulate to liability, *supra* at 11.

*/s/ Michael J. Gottlieb*
**WILLKIE FARR & GALLAGHER LLP**
Michael J. Gottlieb (974960)
Meryl C. Governski (1023549)
Aaron E. Nathan (1047269)
J. Tyler Knoblett (1672514)
Timothy P. Ryan (1719055)
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com
mgovernski@willkie.com
jknoblett@willkie.com

**WILLKIE FARR & GALLAGHER LLP**
M. Annie Houghton-Larsen*
787 7th Avenue
New York, New York
Tel: (212) 728-8164
Fax: (212) 728-9164
mhoughton-larsen@willkie.com

**UNITED TO PROTECT DEMOCRACY**
John Langford*
Rachel Goodman*
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
john.langford@protectdemocracy.org
rachel.goodman@protectdemocracy.org

**DUBOSE MILLER LLC**
Von A. DuBose*
75 14th Street NE
Suite 2110
Atlanta, GA 30309
Tel: (404) 720-8111
dubose@dubosemiller.com

**UNITED TO PROTECT DEMOCRACY**
Christine Kwon*
555 W. 5th Street
Los Angeles, CA 90013
Tel: (202) 579-4582
christine.kwon@protectdemocracy.org

**UNITED TO PROTECT DEMOCRACY**
Sara Chimene-Weiss*
7000 N 16th Street Ste. 120, #430
Phoenix, AZ 85020
Tel: (202) 579-4582
sara.chimene-weiss@protectdemocracy.org

**UNITED TO PROTECT DEMOCRACY**
Brittany Williams*
15 Main Street, Ste. 312
Watertown, MA 02472
Tel: (202) 579-4582
brittany.williams@protectdemocracy.org

*Admitted pro hac vice*

**Attorneys for Plaintiffs Ruby Freeman and
Wandrea' Moss**