**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

RUBY FREEMAN, *et al.*,

                Plaintiffs,

                v.

RUDOLPH W. GIULIANI,

                Defendant.

Civil Action No. 21-3354 (BAH)

Judge Beryl A. Howell

---

**MEMORANDUM OPINION AND ORDER**

On the eve of the jury trial on damages scheduled to begin December 11, 2023, nearly two years after plaintiffs first made a proper jury demand, *see* Compl., ECF No. 1, and three months after this Court directed the entry of default judgment against defendant Rudolph W. Giuliani as a sanction for "the willful shirking of his discovery obligations in anticipation of and during this litigation, *Freeman v. Giuliani*, No. 21-cv-3354 (BAH), 2023 WL 5600316, at *2 (D.D.C. Aug. 30, 2023) ("Default Judgment Decision"); Default Judgment Order, ECF No. 93, Giuliani now moves to contest the holding of a jury trial on the quantification of damages, despite simultaneously disputing, as a factual matter, that plaintiffs are owed any more than nominal damages, Parties' Joint Pretrial Submission ("JPTS"), App. E, Def.'s Obj. Pls.' Proposed Jury Instr. at 3, ECF No. 105-5 (indicating defendant's position that plaintiffs are not "entitled to anymore [sic] than per se nominal damages"). In a short one-and-a-half page "Trial Brief," Giuliani argues that "a jury trial is inappropriate on the issue of damages when a Court has issued a default judgment as a sanction" and contends "this case should be converted into a hearing/bench trial." Def.'s Trial Brief on Propriety of Jury Trial and Obj. to Jury Trial ("Def.'s Trial Brief") at 1, ECF

No. 107; *see also* Def.'s Reply Brief in Supp. of Trial Brief on Propriety of Jury Trial and Obj. to Jury Trial ("Def.'s Reply"), ECF No. 111.

Giuliani's position that the long-standing jury demand in this case was extinguished when he was found liable on plaintiffs' claims by default, is wrong as a matter of law.  Regardless of whether federal procedural rules and the civil jury right under the Seventh Amendment to the U.S. Constitution so require, a jury may properly hear the damages component of plaintiffs' case.  This is particularly true under the circumstances here, where the amount of damages owed is contested and the types of such contested damages are "peculiarly within the province of the jury," *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 409 (2009) (quoting *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353 (1998)), and where approving Giuliani's belated objection to plaintiffs' jury demand, less than two weeks before the start of trial, would, in this context, unfairly abrogate plaintiffs' jury trial rights "by virtue of his own misconduct," Pls.' Opp'n to Def.'s Trial Brief ("Pls.' Opp'n") at 10, ECF No. 109.  Giuliani's objection to a jury determination of damages is therefore rejected for reasons explained more fully below.

## I.    BACKGROUND

The factual background of this case has been detailed previously in prior decisions.  *See* Default Judgment Decision, 2023 WL 5600316, at *3–12, 26 (directing the entry of default judgment against Giuliani on liability); *Freeman v. Giuliani*, No. 21-cv-3354 (BAH), 2023 WL 4750552, at *3–6, 10 (D.D.C. July 13, 2023) (granting in part plaintiffs' motion to compel discovery from non-party witness Bernard Kerik); *Freeman v. Giuliani*, No. 21-cv-3354 (BAH), 2023 WL 5282593, at *1–2 (D.D.C. June 23, 2023) (granting plaintiffs' attorneys' fees and costs for successful motion to compel); *Freeman v. Giuliani*, No. 21-cv-3354 (BAH), 2022 WL 16551323, at *1–5, 11 (D.D.C. Oct. 31, 2022) ("Dismissal Denial Decision") (denying Giuliani's

motion to dismiss plaintiffs' Amended Complaint).  Only the factual and procedural history pertinent to resolving Giuliani's pending jury trial objection is summarized below.

Plaintiffs filed the instant lawsuit with a jury demand nearly two years ago, on December 23, 2021, and reiterated that demand in their amended complaint, filed May 10, 2022.  *See* Compl.; Am. Compl., ECF No. 22.  As the case advanced to discovery, Giuliani repeatedly flouted basic preservation and production duties, frustrating plaintiffs' procedural rights to obtain any meaningful discovery in this case, *see* Default Judgment Decision, 2023 WL 5600316, at *3–12, necessitating the entry of default judgment against Giuliani on liability as a discovery sanction, pursuant to Federal Rule of Civil Procedure 37(b) and (e), *id.* at *26 (citing FED. R. CIV. P. 37(b)(2)(A)(vi) and (e)(2)(C)).  The Court instructed that "[b]efore final judgment may be entered reflecting the amount of compensatory and punitive damages, if any, to be awarded to plaintiffs, a trial on such damages is required[.]"  *Id.* (citing FED. RULE CIV. PROC. 55(b)(2)(B) (authorizing, following entry of default judgment, "[t]he court may conduct hearings or make referrals— preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to . . . determine the amount of damages")).  To effectuate the judgment, the Court directed that certain adverse evidentiary inferences against Giuliani would be read to the jury at the forthcoming damages trial, *id.*, and directed the parties to submit "a proposed schedule . . . for trial," Default Judgment Order at 1–2.

In compliance with the Default Judgment Decision and Order, the parties jointly proposed a schedule that included deadlines for the submission of pretrial motions *in limine* and the start of trial, "including voir dire."  Parties' Joint Proposed Pretrial and Trial Schedule at 2–3, ECF No. 99.  The Court's subsequent scheduling order, which generally adopted the parties' jointly suggested deadlines designed to effectuate the advancement of a jury case, set out deadlines for

the "fil[ing] [of] any pretrial motions" and for the parties' appearance for "jury selection for a trial in this matter."  Minute Order (Sept. 20, 2023).  After Giuliani chose not to comply with plaintiffs' document requests for his financial-related information and records, as required in the Default Judgment Decision and Order, additional sanctions were imposed against him, including four additional adverse inferences on which the "jury [would] be instructed," and an order that Giuliani was precluded from introducing any argument based on evidence "that ha[d] not been disclosed or produced during discovery"; that Giuliani had "received no financial benefits, or . . . only immaterial or insubstantial financial benefits, from the statements he made about Plaintiffs"; or that Giuliani was "insolvent, bankrupt, judgment proof, or otherwise unable to defend himself, comply with this Court's orders, or satisfy an eventual judgment."  Additional Sanctions Order at 4–5, ECF No. 102.

Over the course of this litigation, Giuliani raised no objection to plaintiffs' jury demand.

On November 14, 2023, less than one month before trial was scheduled to begin, the parties jointly filed a pretrial submission providing, in accordance with the Standing Order ¶ 10, ECF No. 4, items necessary for the jury trial on damages, including proposed voir dire questions, a joint proposed jury verdict form, and a competing set of proposed jury instructions.  *See generally* JPTS; *id*., App. C, Joint Proposed Voir Dire, ECF No. 105-3; *id*., App. F, Joint Proposed Verdict Form, ECF No. 105-6; *id*., App. E, Def.'s Obj. Pls.' Proposed Jury Instr., ECF No. 105-5.  A footnote in that submission noted, for the first time, that Giuliani intended to "file a [] trial brief that will argue a jury trial is inappropriate."  *Id*. at 21 n.9.  On November 20, 2023, over a month past the deadline ordered by this Court to file "any pretrial motions," Minute Order (Sept. 20, 2023), Giuliani submitted his "Trial Brief" contesting in a single paragraph of "Argument and Authorities," "a

jury trial on the remaining issues of damages." Def.'s Trial Brief at 1–2.[1]  With the filing of plaintiffs' opposition and Giuliani's Reply on an expedited briefing schedule, this issue became ripe for resolution at 2:00 p.m. on November 30, 2023.  *See* Minute Order (Nov. 21, 2023).

## II.   DISCUSSION

Plaintiffs contend that they "*are* entitled to a jury trial on their claims under the Seventh Amendment and the Federal Rules of Civil Procedure."  Pls.' Opp'n at 1 (emphasis in original). Giuliani does not dispute that their pending three claims for defamation, intentional infliction of emotional distress, and civil conspiracy to commit those torts "are among the 'proceedings' that are 'unmistakably actions at law triable to a jury,' and therefore within the Seventh Amendment's guarantee[.]"  *Id*. at 10 (quoting *Ross v. Bernhard*, 396 U.S. 531, 533 (1970), and citing *Curtis v. Loether*, 415 U.S. 189, 195–96 & n.10 (1974) ("[T]he relief sought here—actual and punitive damages—is the traditional form of relief offered in the courts of law."))); *see generally* Def.'s Trial Br. and Def.'s Reply.  Further, as plaintiffs point out, the federal procedural rules expressly provide, in Rule 38(a), that "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate," *id*. at 10 (quoting FED. R. CIV. P. 38(a)), and, in Rule 39(a), that the "trial on all issues so demanded *must be by jury* unless . . . the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record," *id*. at 11 (emphasis in original) (quoting FED. R. CIV. P. 39(a)(1)).  No such stipulation for a nonjury trial has been entered here, with the result, in plaintiffs' view, that their properly asserted jury demand remains intact and "should be the end of the analysis." *Id*.

---

[1] Perhaps Giuliani's submission is titled a "*Trial Brief*," rather than a motion seeking to convert the scheduled jury trial to a hearing, in a fairly blatant effort to avoid being called out for filing an untimely pretrial *motion*.  No matter how styled, however, a request for the Court to act is a motion, *see* FED. R. CIV. P. 7(b)(1) ("A request for a court order must be made by motion."), and plaintiffs correctly point out that Giuliani's motion is untimely, Pls.' Opp'n at 4–7.  Nevertheless, the merits of this request are addressed for clarity of the Court's reasoning should this issue be raised on any appeal.

Giuliani sweeps these arguments aside to argue that "where a party has been defaulted as a sanction, a jury trial is improper."  Def.'s Reply at 3.  Neither side's position reflects the majority view of applicable law.

At the outset, the D.C. Circuit has not addressed the precise issue presented here, namely: whether a plaintiff's constitutional and procedural right to a jury trial on damages survives the entry of default as to liability against a defendant, who has appeared but been sanctioned with default for repeated failure to comply with discovery obligations and orders.  *See* FED. R. CIV. P. 37(b)(2)(A)(vi) (authorizing sanctions if a party "fails to obey an order to provide or permit discovery . . . [that] may include . . . rendering a default judgment against the disobedient party"); *id*., 37(e)(2)(C) (authorizing, "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it . . . the court . . . may . . . enter a default judgment" "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation").

In a different procedural posture, where default was entered against a defendant for failure to appear and plaintiff unilaterally withdrew the jury trial demand, the D.C. Circuit, in *dicta*, has suggested that the defendant's own right to a jury trial on damages is entitled to protection.  In *Barber v. Turberville*, 218 F.2d 34 (D.C. Cir. 1954), after vacating the default judgment entered when defendant failed to appear or file an answer due to the defense attorney's "excusable neglect," the Court went on to say, though "unnecessary for us to pass upon the point," *id*. at 35–36, "[i]t may well seem that even after default, the issue as to damages should have been submitted to the jury in accordance with the provisions of Rule 55(b), Federal Rules of Civil Procedure, at least to determine the amount of damages," *id*. at 37 (internal quotation marks and citation omitted).  Recognizing that even with default as to liability, a defendant is entitled to contest the

amount of the damages, the Court stated, "[s]urely, in a case such as this, it is the better practice, if not actually compelled, that the issue as to damages be submitted to the jury," *id.*, and directed that, on remand, "[u]nless the parties shall consent to waive a jury trial, a new trial before a jury will be had on all issues," *id.* (citations omitted).[2]  *Barber* has limited usefulness here, however, both because the Court's consideration of the effect of a defendant's default on the jury trial right is merely *dicta*—which seemingly underscored the Court's view of the defendant's unfair treatment due to attorney negligence, a consideration also animating the vacatur of default—and because, in direct contrast to the parties' positions in this case, the *Barber* plaintiff withdrew the jury demand without defendant's consent, prompting the defendant to claim a Seventh Amendment violation.  Of course, the parties' positions are reversed here: plaintiffs continue to assert their jury demand and Giuliani seeks a bench trial on damages.

Whatever the precedential value of *Barber* on the issue of default's impact on the jury trial right in the circumstances presented in this case, the overwhelming weight of authority, albeit from outside this circuit, supports two inter-related guiding principles.  First, by failing to appear to answer a summons, a non-appearing defaulted defendant waives any right to a jury trial the defendant may otherwise hold.  *Sells v. Berry*, 24 F. App'x 568, 571–72 (7th Cir. 2001) (holding that non-appearing defaulted defendant was not entitled to jury trial on issue of damages or liability); *Matter of Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) ("Assuming that [defaulted defendant] had the right to a jury trial he waived that right when he purposefully chose not to answer the suit and timely request such a trial."); *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406,

---

[2] This was not the unanimous view of the panel, since the dissenting judge added his views to this *dicta*, explaining that "I think that the right to jury trial which a defendant would have in a civil action does not survive his failure to appear in any manner in the action . . . . His failure to respond to the summons ought to be construed as a waiver of whatever procedural rights he has; it ought not to be treated as an impregnable insistence upon such rights." *Barber*, 218 F.2d at 38–39 (Prettyman, J., dissenting). As discussed, *infra*, this dissenting view has emerged in the nearly seventy years since *Barber* was decided to accord with the majority view.

1414 (9th Cir. 1990) (counter-defendant against whom default judgment was entered as discovery sanction "has no right to jury trial" on damages); *Teri Woods Publ'g, L.L.C. v. Williams*, No. 12-cv-4854, 2013 WL 6179182, at \*4 (E.D. Pa. Nov. 25, 2013) ("hold[ing] that Defendants' right to a jury trial as to damages has been abrogated by Defendants' total neglection resulting in default judgment in the matter before this Court"); *Lumbermen's Mut. Cas. Co. v. Holiday Vehicle Leasing Inc.*, No. 02-cv-137 (LAK) (MHD), 2003 WL 1797888, at \*1 (S.D.N.Y. Apr. 4, 2003) ("[A] default based on inaction by the defendant deprives that party of any preexisting right to a jury[.]" (citations omitted)).   Plaintiffs acknowledge this principle that "[a] defaulting or non-appearing defendant can be understood to have waived his Seventh Amendment right to a jury trial," but contend that "the actions of such a defendant cannot abrogate the right of a *plaintiff* who has made a proper jury demand."   Pls.' Opp'n at 13 (emphasis in original).   As plaintiffs posit, "it would be perverse to reward Defendant Giuliani's willful misconduct by stripping *Plaintiffs* of a jury trial right that they have consistently sought to vindicate." *Id.* at 14 (emphasis in original).

"Perverse," maybe, but the second guiding principle to emerge from the caselaw, is that the majority of courts have concluded the jury trial right is extinguished for a plaintiff, too, whether default was entered due to the defendant's failure to appear and answer, or for some other reason. *See* 10A Charles Alan Wright, et al., Fᴇᴅ. Pʀᴀᴄᴛɪᴄᴇ & Pʀᴏᴄᴇᴅᴜʀᴇ § 2688 (4th ed. 2023) (collecting cases holding that following default, "neither side has a right to a jury trial on damages"); 8 Mᴏᴏʀᴇ's Fᴇᴅᴇʀᴀʟ Pʀᴀᴄᴛɪᴄᴇ – Cɪᴠɪʟ § 38.34 (2023) ("[T]he courts have held that there is no constitutional right to jury trial on the assessment of damages after a default.").   As the Fifth Circuit stated, in a case involving a non-appearing defaulted defendant, "in a default case neither the plaintiff nor the defendant has a constitutional right to a jury trial on the issue of damages." *Matter of Dierschke*, 975 F.2d at 185 (citing 5 Mᴏᴏʀᴇ's Fᴇᴅᴇʀᴀʟ Pʀᴀᴄᴛɪᴄᴇ – Cɪᴠɪʟ §

38.19[3] (1992)); *see also Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) ("Following the entry of default [for discovery violations] under [Federal Rule of Civil Procedure] 37(b)(2), a party does not have a right to a jury trial[.]" (citation omitted)); *Graham v. Malone Freight Lines, Inc.*, 314 F.3d 7, 16 (1st Cir. 1999) (holding plaintiff was "not entitled to a jury trial on damages" in case of non-appearing defaulted defendants).

As support for this second principle that, post-default, no party to the suit has a right to a jury trial on any claim nor on damages, some courts have relied on an interpretation of the federal procedural rules.  Specifically, while Rule 38(a) preserves "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute," Rule 55(b)(2)(B) provides, in pertinent part, as to default judgments that, "[t]he Court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate a judgment, it needs to . . . determine the amount of damages[.]"  Read together, the majority of courts have concluded that, post-default on liability, Rule 55(b) requires a jury trial on damages when a federal statute provides this right, but not otherwise.  *See* 10A Charles Alan Wright, et al., FED. PRACTICE & PROCEDURE § 2688 (4th ed. 2023) ("Rule 55(b)(2) . . . provides that the court must preserve any federal statutory right of trial by jury[,]" but "neither side has a right to a jury trial on damages." (citations omitted)); 8 MOORE'S FEDERAL PRACTICE – CIVIL § 38.34 (2023) ("Rule 55 requires jury trial on the amount of damages after default when there is a statutory right to jury trial.  However, the Rule does not preserve the right to jury trial after default."); *see also Adriana Int'l Corp.*, 913 F.2d at 1414 ("[A]fter a default judgment has been entered under Fed. R. Civ. P. 37(b)(2), a party has no right to jury trial under either Fed. R. Civ. P. 55(b)(2), which authorizes a district court to hold an evidentiary hearing to determine the amount of damages, or the Seventh Amendment." (citing *Henry v. Sneiders*, 490 F.2d 315 (9th

Cir. 1974))); *Oppenheimer v. Johnson*, No. 1:19-cv-00240 (MR), 2020 WL 4227472, at *5–6 (W.D.N.C. July 23, 2020) (in case involving non-appearing defaulted defendant, concluding "that the Plaintiff has no constitutional or statutory right to a jury trial here," and denying plaintiff's request to exercise discretion to impanel a jury to assess his damages); *Armeni v. Transunion LLC, Inc.*, No. 3:15-cv-00066, 2016 WL 7046839, at *3 (W.D. Va. Dec. 2, 2016) ("As for any statutory right that Rule 38(a) might protect, Plaintiff has identified neither a provision of the [Fair Credit Reporting Act] that guarantees a jury trial nor a case so holding."); *Frankart Distribs., Inc. v. Levitz*, 796 F. Supp. 75, 76 (E.D.N.Y. 1992) ("By referring to a right to a jury trial as required by 'any statute,' Rule 55 presupposes that a default judgment extinguishes the constitutional right to a jury trial.").[3]

Given this authority in construing Rule 55(b), plaintiffs strain to fit within this Rule's embedded clause "preserving any federal statutory right to a jury trial," by contending that "[b]ecause the Federal Rules are promulgated pursuant to the Rules Enabling Act, 28 U.S.C. § 2072," Rule 38(a) itself "constitutes a statutory entitlement to a jury trial for purposes of Rule

---

[3] In reply, Giuliani argues that "[a]ll known authority holds that, where a party has been defaulted as a sanction, a jury trial is improper," Def.'s Reply at 3, and that a court retains discretion to hold a jury trial on damages "only in situations of a 'no answer' default — not where the default was issued under FRCP 37 as a sanction," *id.* at 2–3 (emphasis omitted) (citing *Mwani*, 244 F.R.D. 20, and *Barber*, 218 F.2d 34). This is incorrect and not supported by the cases he cites. Contrary to Giuliani's observation, some courts have, in fact, concluded that, notwithstanding Rule 55(b)(2)'s requirements for a determination of damages, Rule 38(d), which states that a jury demand may be withdrawn only if the parties consent, extends to an appearing defendant after an entry of default, including as a sanction. *See, e.g., Zero Down Supply Chain Solutions, Inc. v. Global Transp. Solutions, Inc.*, 282 F.R.D. 604, 605–07 (D. Utah 2012) (jury required to determine damages because plaintiff may not unilaterally withdraw demand for a jury after defendants found in default for "fail[ure] to comply with discovery requests or to participate in the litigation of the case in any meaningful way"); *see also Kormes v. Weis, Voisin & Co., Inc.*, 61 F.R.D. 608, 610 (E.D. Pa. 1974) ("apply[ing] the consent requirement of Rule 38(d) to the default situation of Rule 55(b)(2)," and "exercise[ing] [] discretion to grant a jury trial" to appearing defaulted defendant limited to the issue of damages). Moreover, the *Mwani* Court recognized, without qualification, a district court's "discretionary determination" to decide "whether a jury or bench trial should be held" in a case involving non-appearing defaulted defendants. 244 F.R.D. at 26. Likewise, the *Barber* Court, in *dicta*, rejected a plaintiff's unilateral withdrawal of a jury demand, without the belated appearing, defaulted defendant's consent. 218 F.2d at 37. Contrary to Giuliani's contention, an appearing defaulted defendant, who contests issues relevant to a damages determination, is precisely the circumstance where a hearing or jury determination would be helpful, as Rule 55(b)(2) contemplates.

55(b)(2) in all cases where a jury trial is constitutionally required." Pls.'s Opp'n at 10 n.6. Yet, plaintiffs "point to no *specific* statute (as referenced in the text of Rule 38(a)) that guarantees the Parties in this case the right to a trial by jury," and the weight of authority "reject[s] Plaintiffs' claim that the Federal Rules of Civil Procedure and the Seventh Amendment trigger a right to a jury determination of damages with respect to a Rule 55(b) evidentiary motion." *Mwani v. Bin Ladin*, 244 F.R.D. 20, 23–24 (D.D.C. 2007) (emphasis in original) (citations omitted); *see also Armeni*, 2016 WL 7046839, at \*3 ("[C]ourts have interpreted the language of Rule 55 as preserving a right to a jury trial only in the atypical situation where a statute specifically preserves the jury trial right even after a default," which "is not implicated here." (quoting *Manno v. Tenn. Prod. Ctr., Inc.*, 657 F. Supp. 2d 425, 429–30 (S.D.N.Y. 2009))).

Given the lack of clear binding precedent in this Circuit, this Court assumes without deciding that plaintiffs may have no absolute right, under the Seventh Amendment or by statute, to a jury trial on damages after entry of default on liability as a sanction for Giuliani's willful failure to comply with his discovery obligations, but that this Court retains discretion to "order a jury trial as to damages in a default situation if it seems," as is the case here, "the best means of assessing damages." 10A Charles Alan Wright, et al., FED. PRACTICE & PROCEDURE § 2688 (4th ed. 2023); *see also Bonilla v. Trebol Motors Corp.*, 150 F.3d 77, 82 (1st Cir. 1998) ("[A] defaulting defendant is not entitled to a jury trial on damages, although the court may choose to afford one." (citation omitted)); *Mwani*, 244 F.R.D. at 26 (recognizing that "the question of whether a jury or bench trial should be held on the issue of damages is a discretionary determination to be made by the Court"); *KD v. Robeson*, No. 8:17-cv-285, 2020 WL 836738, at \*3 (D. Neb. Feb. 20, 2020), *aff'd sub nom. KD v. Douglas Cnty. Sch. Dist. No. 001*, 1 F.4th 591 (8th Cir. 2021) (recognizing courts' "discretion to order a jury trial as to damages after default judgment if it appears to be the

best way to assess damages" (citations omitted)); *Armeni*, 2016 WL 7046839, at *3–4 (exercising discretion to empanel a jury given "considerations of fairness," the fact that the "types of damages [sought by plaintiff] are particularly within the province of a jury," and that "[d]efendant does not argue that it would suffer prejudice"); *Crowley v. Chait*, No. 85-cv-2441 (HAA), 2006 WL 8445672, at *8 (D.N.J. Mar. 7, 2006) (permitting jury to determine damages as to a defaulting defendant, noting that the Third Circuit "has countenanced the practice" (citing *Hutton v. Fisher*, 359 F.2d 913, 916 (3d Cir. 1966))); *Kormes v. Weis, Voisin & Co.*, 61 F.R.D. 608, 610 (E.D. Pa. 1974) ("Under the facts of the present case, we will . . . in the exercise of our discretion grant a jury trial to [defaulted] defendant [] limited to the issue of damages.").

Judicial authority to respect a plaintiff's jury demand and conduct a jury trial on damages after entry of default against a defendant on liability derives from the Court's exercise of inherent authority, as sanctioned in the federal procedural rules.  Indeed, Rule 55(b)(2) provides that the Court, following the entry of default judgment, may "conduct hearings or make referrals . . . [to] determine the amount of damages," FED. R. CIV. P. 55(b)(2), and Federal Rule 39(c)(1) authorizes the Court to "try any issue with an advisory jury" in any action "not triable of right by a jury," FED. R. CIV. P. 39(c)(1); *accord Hamm v. Nasatka Barriers Inc.*, 166 F.R.D. 1, 3 (D.D.C. 1996) ("find[ing] in [the Court's] discretion that the rendering of an advisory verdict by a jury would be both helpful and appropriate in this [Federal Tort Claims Act] case").

Here, several considerations favor use of a jury to determine the sole remaining issue as to the quantification of compensatory and punitive damages.  First, plaintiffs have demanded a jury trial since the filing of their complaint and, absent Giuliani's willful discovery misconduct warranting the sanction of default, plaintiffs' jury trial right would be fully protected under the Seventh Amendment.  For a plaintiff to lose that protected jury right in these circumstances seems

patently unfair and may be a reason, though not articulated in the advisory notes to the procedural rules, that courts are granted leeway to conduct "hearings or make referrals" as needs require. FED. R. CIV. P. 55(b)(2).

Second, as the D.C. Circuit has opined, "[a] default by a defendant does not concede the amount of damages[,] but only that the plaintiff is entitled to recover some damages," *Barber*, 218 F.2d at 37, leaving the defaulting defendant "entitled to contest the amount of the damages," *id.*; *see also United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989) ("Although upon default, the well-pleaded allegations of a complaint relating to liability are taken as true, allegations in a complaint relating to the amount of damages suffered ordinarily are not." (citations omitted)); *U.S. Sec. & Exch. Comm'n v. China Infrastructure Inv. Corp.*, 189 F. Supp. 3d 118, 128 (D.D.C. 2016) (Howell, C.J.) (noting that "[a]lthough default judgment establishes the defaulting party's liability for every well-pleaded allegation in the complaint, it does not automatically establish liability in the amount claimed by the plaintiff" (quoting *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 12 (D.D.C. 2013))). Giuliani most certainly contests the amount of damages he owes to plaintiffs in this case. *See* JPTS, App. E, Def.'s Obj. Pls.' Proposed Jury Instructions at 3 ("Defendant objects . . . because [the Default Judgment Decision] does not determine, as a matter of law, that Plaintiffs are entitled to anymore [sic] than per se nominal damages."). Moreover, he plans to raise factual challenges to the scope and extent of damages owed and to cross examine plaintiffs and their experts about any claimed harm. *See* JPTS at 7 (plaintiffs "will be cross-examined on the alleged damages resulting from Giuliani's conduct"); *id.* ("plaintiffs' expert "will be cross-examined on her opinions regarding the alleged damages resulting from Giuliani's conduct"); *id.*, App. E, Def.'s Obj. Pls.' Jury Instr. at 3 (objecting to plaintiffs' proposed jury instruction because Default Judgment Decision "does not determine, as a matter of law, that Plaintiffs are entitled to anymore

[sic] than per se nominal damages"). Quantification of damages, particularly where, as here, such calculation will require resolution of factual disputes and credibility assessments, falls within the traditional province of a jury. *See Carter v. Duncan-Huggins, Ltd.*, 727 F.2d 1225, 1234 (D.C. Cir. 1984) ("an evaluation of witness credibility is the exclusive function of the jury"); *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 162 (2d Cir. 2014) ("The 'calculation of damages is the province of the jury[.]'" (quoting *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990))); *Alkire v. Marriott Int'l, Inc.*, No. 03-cv-1087, 2007 WL 1041660, at *9 (D.D.C. Apr. 5, 2007) ("[t]ranslating legal damage into money damages—especially in cases which involve few significant items of measurable economic loss—is a matter purely within a jury's ken" (quoting *Ruiz v. Gonzalez Caraballo*, 929 F.2d 31, 34 (1st Cir. 1991))); *Byrd v. Admiral Moving & Storage, Inc.*, No. 04-cv-1420 (AK), 2006 WL 8460326, at *4 (D.D.C. Mar. 30, 2006) (same); *H.S.A. v. Bragg*, No. 1:21-cv-00054, 2021 WL 3545065, at 3 & n.2 (M.D. Pa. Aug. 11, 2021) (exercising discretion to hold one-day jury trial to make a damages determination against non-appearing defaulted defendant to "permit Plaintiff to provide medical testimony and other information in support of her allegations of serious harm and emotional distress, and in support of her request for punitive damages," noting that "[d]amages of this nature are particularly within the province of a jury" (internal quotation marks and citation omitted)); *Armeni*, 2016 WL 7046839, at *4 (exercising discretion to hold jury trial on damages against defaulting defendant, noting that "Plaintiff seeks actual damages in the form of emotional, mental, and physical distress" and "[t]hese types of damages are particularly within the province of a jury" (collecting cases)).

This case, then, presents circumstances wholly different from cases involving non-appearing or "no answer" defaulted defendants, who by not appearing indicated no intent to defend against the quantification of damages. In such cases, courts have generally declined to exercise

14

discretion to empanel a jury to determine damages since "[w]hen only one side is presented, the underlying function of the jury (in civil cases) is largely absent[,] [and] [t]herefore, the Court is better suited to determine what damages have been proven where there has been a default." *Oppenheimer*, 2020 WL 4227472, at *6; *see also Robeson*, 2020 WL 836738, at 3–4 & n.1 (declining to exercise discretion to hold jury damages trial where defaulting defendant "has shown no intention of defending against Plaintiffs' claims for damages"); *Teri Woods Publ'g, L.L.C.*, 2013 WL 6179182, at *5 (acknowledging judicial discretion to hold jury damages trial against defaulted defendants, but "[i]n light of Defendants' complete lack of participation in this litigation, we do not believe a hearing would be prudent").

Third, in addition to compensatory damages on their claims of defamation, intentional infliction of emotional distress and civil conspiracy to commit those torts, plaintiffs seek punitive damages. Any award of punitive damages is generally "determined by a jury," subject only to "review[] by trial and appellate courts to ensure that it is reasonable." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 495 (2008) (quoting *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 15 (1991)).

Finally, the untimeliness of Giuliani's objection to a jury trial on damages, if approved, would force plaintiffs to change course in how they are presenting their case shortly before trial. This would just compound the procedural unfairness to which plaintiffs have already been subjected by Giuliani's willful failure to comply with his discovery obligations. This counsels in favor of this Court exercising its discretion to empanel a jury to determine plaintiffs' damages. *Accord Burton v. Gen. Motors Corp.*, No. 1:95-cv-1054 (DFH) (TAB), 2008 WL 3853329, at *7 (S.D. Ind. Aug. 15, 2008) (recognizing the court's "discretion to decide whether a motion to strike a jury demand is timely or too late," "consider[ing] issues such as judicial economy and whether the opposing party will be prejudiced by trying her case to a court instead of a jury") (citations

omitted).   Indeed, Giuliani had been on notice of the post-default jury trial on damages since August 30, 2023, and only raised concern less than one month before the scheduled start of trial, all while conferring with plaintiffs in preparation for a jury trial, including regarding proposed deadlines for a jury trial, *see* Parties' Joint Proposed Pretrial and Trial Schedule at 2–3, and joining the parties' joint pretrial submission containing jury-related materials, including joint proposed voir dire questions, a joint proposed jury verdict form, and a competing set of proposed jury instructions, *see* JPTS, App. C, Joint Proposed Voir Dire; *id*., App. F, Joint Proposed Verdict Form; *id*., App. E, Def.'s Obj. Pls.' Proposed Jury Instr.

While accepting as the explanation for the delay that defense counsel "did not discover the applicable case law until he began preparing for the pre-trial submission," Def.'s Reply at 1, and appreciating defense counsel's prompt communication thereafter in a two-sentence email to plaintiffs' counsel about this issue, *id.,* Ex. A, Defense Counsel's Nov. 1, 2023 Email, the fact remains that the filing of defendant's "Trial Brief" on November 20, 2023, was significantly tardy, more than one month beyond the October 16 pretrial motions deadline proposed by the parties and ordered by the Court, *see* Minute Order (Sept. 20, 2023).   Meanwhile, plaintiffs "have expended considerable resources researching and assembling the jury instructions and voir dire questionnaire, preparing opening and closing presentations, researching evidentiary rules and precedents applicable to jury trials, and preparing witness examinations designed for a jury presentation." Pls.' Opp. at 6–7.[4]   Converting the damages jury trial to a bench trial would

---

[4] Giuliani attempts to shift blame onto plaintiffs for any prejudice resulting from a potential conversion from a jury to a bench trial, contending that "[p]laintiffs had the opportunity to forego any of the pretrial work to prepare for a jury trial" once Giuliani's counsel emailed plaintiffs' counsel on November 1, 2023.   Def.'s Reply at 2.   This is simply nonsense.   Giuliani's counsel's two-sentence email cited three out-of-circuit, non-binding cases, dated between thirty and nearly fifty years ago, without any express statement that Giuliani planned to seek a bench trial or that he would do so in reliance on this cited authority.   *Id.*, Ex. A, Defense Counsel's Nov. 1, 2023 Email (quoting, without any other discussion, *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982 F.2d 686, 692 (1st Cir. 1993), and citing *Adriana Int'l Corp.*, 913 F.2d at 1414, and *Eisler* v. *Stritzler*, 535 F.2d 148, 153 (1st Cir. 1976)).

prejudice plaintiffs not only, as already noted, by making them change course so close to trial, but also by making them incur expense and expend resources unnecessarily due to the tardy filing. *See Burton*, 2008 WL 3853329, at *7 ("The parties conducted discovery and prepared for trial with the understanding that all claims would be tried to a jury.").

Giuliani switches gears in reply to assert for the first time that he would "be severely prejudiced" by a jury trial "because a default sanction is inherently prejudicial" and he would not "get a fair trial on damages with a jury who is being read the contents of the Court's Sanctions Orders[.]" Def.'s Reply at 2–4. The irony of this assertion must be highlighted, given the many opportunities Giuliani was afforded to comply with his discovery obligations but to no avail, and the further opportunities Giuliani was afforded to be heard on any adverse instructions to be given to the jury, but he consented to those instructions.[5] Giuliani's own discovery misconduct necessitated the entry of default judgment against him, and this Court will not reward him for conduct that has "already [] resulted in significant prejudice to Plaintiffs," Pls.' Opp. at 7, particularly where "Giuliani's delay [would] inflict additional costs on Plaintiffs that were entirely

---

This is a wholly insufficient communication or notice to expect plaintiffs to press pause on their preparations for the damages jury trial.

[5] Examples of these opportunities provided to Giuliani to comply with his discovery obligations and avoid or contest adverse instructions include: (1) granting the parties' motion for a six-month extension of discovery deadlines to facilitate resolution of "issues raised in [plaintiffs'] Deficiency letter" regarding Giuliani's deficient discovery responses, *see* Joint Mot. to Extend Discovery, ECF No. 28 at 3–4; Minute Order (Aug. 31, 2022); (2) affording Giuliani a two-week extension to comply with the Court's May 31, 2023 Minute Order compelling discovery, *see* Minute Order (June 16, 2023); (3) providing Giuliani an additional 35 days to comply with the May 31, 2023 Minute Order, *see* Minute Order (July 13, 2023); (4) affording Giuliani additional time to produce relevant financial records to avoid more stringent adverse instructions, Default Judgement Decision, 2023 WL 5600316, at *23, but he declined to make any further production, *see* Additional Sanctions Order at 2; (5) permitting Giuliani to "file any response to plaintiffs' request for additional sanctions" containing requests for adverse evidentiary inferences following Giuliani's failure to comply with the Court's Default Judgment Decision, *see* Minute Order (Sept. 22, 2023); and (6) Giuliani consented to plaintiffs' motion *in limine* requesting the exclusion of "any argument or evidence . . . that contradicts any of this Court's previous orders in this case, including . . . entered adverse inferences," Consent Motion *In Limine* at 1–2, ECF No. 103 ("[C]ounsel for Plaintiffs and Defendant Rudolph W. Giuliani . . . conferred, and defense counsel confirmed that he consents to the requested relief herein."); *see also* Order Granting Consent Motion *In Limine* at 3, ECF No. 108 (directing the exclusion at trial of "evidence or argument . . . that contradicts any of this Court's previous orders in this case, including . . . entered adverse inferences").

avoidable had [he] exercised reasonable diligence," *id.*; *see also Armeni*, 2016 WL 7046839, at *4 (exercising discretion to grant plaintiff's request for a jury trial where, "[a]s it is, Defendant's failure to defend has the effect of depriving Plaintiff of his jury right[,] [and] "refusing to grant a discretionary trial would punish Plaintiff for obtaining a default and reward Defendant for it").

In sum, having already scuttled plaintiffs' right to "obtain relevant evidence both to support their claims and rebut any defenses," Default Judgment Decision, 2023 WL 5600316, at *12, Giuliani will not now be rewarded with his effort to abrogate plaintiffs' properly pleaded demand for a jury trial on damages, particularly under the circumstances of the instant case, where the quantification of damages, an issue Giuliani contests, will require the evaluation of witness credibility and the resolution of factual disputes—matters within "the exclusive function of the jury," *Huggins, Ltd.*, 727 F.2d at 1234—and where sustaining Giuliani's tardy objection to a jury trial would compound the prejudice to plaintiffs. Pursuant to this Court's inherent authority, as contemplated by Federal Rules of Civil Procedure 55(b)(2)(B) and 39(c)(1), the jury trial scheduled to begin December 11, 2023, will proceed.

## III.  CONCLUSION

For the reasons set forth above, it is hereby:

**ORDERED** that defendant Rudolph W. Giuliani's Trial Brief on Propriety of Jury Trial and Objection to Jury Trial, ECF No. 107, which is construed as a motion to convert the scheduled jury trial to a bench trial, is **DENIED**.

**SO ORDERED**.

Date: December 3, 2023

_____
**BERYL A. HOWELL**
United States District Judge