**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RUBY FREEMAN, *et al.*, | |
| Plaintiffs, | Civil Action No. 21-3354 (BAH) |
| v. | Judge Beryl A. Howell |
| RUDOLPH W. GIULIANI, | |
| Defendant. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The parties' Joint Pretrial Submission ("JPTS"), ECF No. 105; First Am. JPTS, ECF No. 115, contained scattershot objections raised by defendant Rudolph W. Giuliani to jury instructions, arguments and evidence plaintiffs seek to introduce to prove their damages.  The trial is scheduled to begin next week, on December 11, 2023, on the amount of compensatory and punitive damages owed by Giuliani to plaintiffs Ruby Freeman and Wandrea ArShaye Moss, after Giuliani was held in default on their three claims for defamation, intentional infliction of emotional distress ("IIED"), and civil conspiracy to commit those torts.  *See Freeman v. Giuliani*, No. 21-cv-3354 (BAH), 2023 WL 5600316, at *26 (D.D.C. Aug. 30, 2023) ("Default Judgment Decision"); Order (August 30, 2023), ECF No. 93 ("Default Judgment Order").  Addressing Giuliani's objections would have been an easier task had these objections been articulated and explained in pretrial motions, as the pretrial scheduling order contemplated with deadlines for the filing of such motions, *see* Minute Order (Sept. 20, 2023) (directing parties to "file any pretrial motions" by October 16, 2023), but Giuliani opted to forfeit this opportunity.  Nevertheless, to ensure the fair and expeditious presentation of evidence at the trial and to minimize interruptions for legal arguments that may be resolved in advance of trial, Giuliani's various objections, as distilled into the three below, are

1

resolved as follows, upon consideration of the parties' expited briefing, in response to the

Court's Minute Order dated November 21, 2023, *see* Def.'s Mem. Resp., ECF No. 110; Pls.' Resp.

Def.'s Mem., ECF No. 112, and Def.'s Reply, ECF No. 114, and after the parties were provided

an opportunity to present additional arguments at the Pretrial Conference on December 5, 2023.

I.   **Defendant's objection that plaintiffs have not "established all elements of any of their claims" because "these allegations are not well pleaded, particularly the conspiracy claim, and therefore cannot support a default judgment," Def.'s Mem. Resp. at 3;** *see* **JPTS at 27–28; First. Am. JPTS at 26, is OVERRULED.**

Giuliani "disputes that Plaintiffs have established all elements of any of their claims

because he contends these allegations are not well pleaded, particularly the conspiracy claim, and

therefore cannot support a default judgment." Def.'s Mem. Resp. at 3; *see also* JPTS at 4; First

Am. JPTS at 4, Def.'s Statement of Defenses (defendant will argue that plaintiffs "cannot show

more than a de minimis relationship between their alleged harm and Giuliani's conduct and

disputes the weight of the evidence"). He seemingly is arguing that plaintiffs are not entitled to

any damages because of the insufficiency of the pleading of the claims on which he has been found

liable by default in a transparent effort to relitigate his previously unsuccessful motion to dismiss

the Amended Complaint. Indeed, he actually "hereby incorporates by reference and reargues his

Motion to Dismiss . . . in support of this argument." Def.'s Mem. Resp. at 3 (citing Def.'s Mem.

Supp. Mot. to Dismiss ("Def.'s Dismiss Mem."), ECF No. 26-2). This attempt falls flat for several

reasons.

First, the law is well-settled that "[a] default judgment establishes a defendant's liability

for every well-pleaded allegation in the complaint," and "it remains for the court to consider

whether the unchallenged facts constitute a legitimate cause of action." *Cong. Hunger Ctr. v.*

*Gurey*, 308 F. Supp. 3d 223, 227–28 (D.D.C. 2018) (quoting *Carpenters Lab.-Mgmt. Pension*

*Fund v. Freeman-Carder LLC*, 498 F. Supp. 2d 237, 240 (D.D.C. 2007), and citing 10A Charles

Alan Wright et al., FED. PRAC. & PROC. § 2688.1 (4th ed. 2023)); *see also Philadelphia Indem. Ins. Co. v. Speake*, No. 21-cv-443 (ZMF), 2022 WL 17662392, at *2 (D.D.C. Dec. 14, 2022) ("[U]nless the complaint states a claim upon which relief may be granted as to the defendants who have defaulted, default judgment is not justified." (quoting *Harris v. U.S. Dep't of Just.*, 600 F. Supp. 2d 129, 136–37 (D.D.C. 2009))). "The legal sufficiency of a non-defaulting party's claims 'is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor.'" *Rodriguez v. New Generation Hardware Store Corp.*, No. 22-cv-4422 (LJL), 2023 WL 1516908, at *2 (S.D.N.Y. Feb. 3, 2023) (quoting *WowWee Group Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019)); *accord Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) ("[I]n the context of a motion for default judgment, whether a factual allegation is well-pleaded arguably follows the familiar analysis used to evaluate motions to dismiss under Rule 12(b)(6)." (internal quotation marks and citation omitted)); *U.S. v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, No. 17-cv-01166 (KBJ) (GMH), 2018 WL 3949962, at *3–4 (D.D.C. June 29, 2018), *Report & Recommendation adopted*, 324 F. Supp. 3d 38 (D.D.C. 2018) ("[C]onceptually, . . . a motion for default judgment is like a reverse motion to dismiss for failure to state a claim. . . . [A] plaintiff must plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (quotation marks and citations omitted)).

Review of the sufficiency of plaintiffs' pleading of their claims had already been accomplished at the time default judgment was entered against Giuliani and required no repetition in the Default Judgment Decision. Specifically, nearly one year before entry of default, this Court exhaustively reviewed plaintiffs' pleading of their three claims when considering Giuliani's

motion to dismiss plaintiffs' Amended Complaint, for which motion the parties had ample opportunity for full briefing, though, notably, Giuliani chose not to file any reply, thereby forfeiting his opportunity to address plaintiffs' vigorous opposition to dismissal. *See Freeman v. Giuliani*, No. 21-cv-3354 (BAH), 2022 WL 16551323, at *5 (D.D.C. Oct. 31, 2022) ("Dismissal Denial Decision").   Giuliani's challenges to the sufficiency of plaintiffs' pleaded claims for defamation/defamation *per se*, IIED, and civil conspiracy as to both torts were rejected and his motion to dismiss denied. *Id*. at *5–11; Order (Oct. 31, 2022), ECF No. 30 ("Dismissal Denial Order").   As to plaintiffs' civil conspiracy claim in particular, the Dismissal Denial Decision specifically addressed and rejected Giuliani's challenge to the sufficiency of plaintiffs' claim, *see* Dismissal Denial Decision, 2022 WL 16551323, at *10–11 & n.6, explaining that plaintiffs were not required to "identify *all* of the alleged co-conspirators by name in the Amended Complaint," *id.* at 11 n.6 (emphasis in original) (finding pleading sufficient such that "[a] reasonable jury could [] infer that (1) Giuliani, Trump, and the '[k]ey [t]eam [m]embers' listed in the Strategic Plan (2) created a plan to sow doubt in the outcome of the 2020 election by (3) launching a misinformation campaign, which included accusing Freeman, Moss, and others of participating in schemes of electoral fraud, and (4) injuring plaintiffs in the process") (citing *McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77, 98 (D.D.C. 2016)).

The subsequently entered Default Judgment Decision and Order directing the entry of default judgment against Giuliani established Giuliani's "liability for every well-pleaded allegation in [plaintiffs' amended] complaint." *Cong. Hunger Ctr.*, 308 F. Supp. 3d at 227–28 (citations omitted); *see* Default Judgment Decision, 2023 WL 5600316, at *26; Default Judgment Order at 1–3.   The consequence of default due to Giuliani's "failure to preserve and produce his communications with others," Default Judgment Decision, 2023 WL 5600316, at *17, which

precluded plaintiffs from fully developing their civil conspiracy claim, is that the well-pled allegations in the complaint and all inferences that may reasonably be drawn from those allegations are deemed to be true, *see id.* at *26; Charles Alan Wright et al., 10A FED. PRAC. & PROC. – CIV. § 2688.1 (4th ed. 2023 ) ("If the court determines that defendant is in default, the factual allegations of the complaint . . . will be taken as true."); *see Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." (quoting *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981)); *Bennett v. Am. Med. Response, Inc.*, 226 F. App'x 725, 727 (9th Cir. 2007) ("Upon default 'the general rule is that well-pled allegations in the complaint regarding liability are deemed true.'" (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002)); *Yang v. Hardin*, 37 F.3d 282, 286 (7th Cir. 1994) ("In the context of a default judgment, the district court is obliged to accept as true all facts alleged by the plaintiff and all reasonable inferences contained therein." (citing *Black v. Lane,* 22 F.3d 1395, 1399, 1403 (7th Cir. 1994)).

Second, the Default Judgment and Dismissal Denial Decisions are now the law of the case. *See Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 697 (D.C. Cir. 2022) ("The '[l]aw-of-the-case doctrine refers to . . . the general concept that a court involved in later phases of a lawsuit should not re-open questions decided . . . by that court or a higher one in earlier phases.'" (quoting *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995))).  Giuliani has not identified "an intervening change of law" or any other basis for concluding that these prior decisions were "clearly erroneous," *id.* at 698 (citations omitted), to merit departing from this doctrine, and Giuliani accordingly will not be permitted to "reargu[e] his Motion to Dismiss . . . in support of this argument," Def.'s Mem. Resp. at 3; *accord Sec. & Exch. Comm'n v. Shaohua Yin*, No. 17-cv-

972 (JPO), 2020 WL 6801915, at *3 (S.D.N.Y. Nov. 19, 2020) ("[T]his Court has already addressed and rejected each of [defendant's] challenges to the sufficiency of the SEC's complaint at the motion to dismiss stage, and that decision is the law of the case. . . . Having already decided that the complaint sufficiently states an insider trading claim, the Court need not rehash its previous analysis [in considering entry of default judgment].").

Finally, to the extent Giuliani challenges the sufficiency of plaintiffs' pleading of proximate cause, contending that plaintiffs must "prove the extent that Giuliani's conduct proximately caused them" harm, Def.'s Mem. Resp. at 9, he has already lost this argument in the Dismissal Denial Decision.  Giuliani muddles the "categorical distinction between the element 'proximate cause,' as it pertains to the assignment of liability in the first instance, and 'proximate cause' as it relates to the ministerial calculation of damages in the context of a default judgment." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992).  "Where it is properly alleged in a complaint, proximate cause—going to liability—is completely and irrefutably established upon the defendant's default."  *Id.* (citations omitted).  The Dismissal Denial Decision found that plaintiffs had plausibly pleaded each element of their claims for defamation *per se* and IIED, of which causation is an element of each, and the Default Judgment Decision found Giuliani "civilly liable on plaintiffs' defamation [and] intentional infliction of emotional distress" claims.  Dismissal Denial Decision, 2022 WL 16551323, at *5–11; Default Judgment Decision, 2023 WL 5600316, at *2.  Consequently, Giuliani appropriately "agree[d]," in plaintiffs' consent motion *in limine*, "that the Court's Default Judgment Order resolves all of the elements of Plaintiffs' claims for purposes of Defendant Giuliani's liability, *including the fact of causation*[,]"  Pls.' Consent Mot. *In Limine* at 3 n.3, ECF No. 103 (emphasis supplied), and has also conceded that plaintiffs may recover for "specific conduct [by Giuliani] alleged in the

Complaint" that caused plaintiffs' injuries, *see* Def.'s Mem. Resp. at 3–8.  In short, given the undisputed applicability of the law of the case doctrine here, as well as Giuliani's agreements and concessions, proximate causation with respect to Giuliani's liability on plaintiffs' claims has been established and is no longer an issue in this case, and "the plaintiff[s] [are] entitled to recover some damages." *Barber v. Turberville*, 218 F.2d 34, 37 (D.C. Cir. 1954).

Giuliani relies on the Second Circuit's decision in *Trans World Airlines, Inc. v. Hughes* to argue that plaintiffs must relitigate the issue of proximate cause as to liability at trial, *see* Def.'s Mem. Resp. at 9–10 (citing *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 70 (2d Cir. 1971), *rev'd sub nom. Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363 (1973)), but that case is fully consistent with the determination here that the only role for proximate cause at this stage is as it "relates to the ministerial calculation of damages in the context of a default judgment," *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 159 (citing *Hughes*, 449 F.2d at 70). Indeed, in *Greyhound*, the Second Circuit clarified that in *Hughes*, "the application of proximate cause presume[d] that liability ha[d] been established, and require[d] only that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Id.* (citing *Hughes*, 449 F.2d at 70).  As in *Hughes*, the Default Judgment and Dismissal Denial Decisions established proximate cause as to Giuliani's liability, leaving only "the issue of causation to the extent it limits the scope of damages," 10 MOORE'S FED. PRAC. – CIVIL § 55.32 (2023); *see also Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) ("If proximate cause is properly alleged in the complaint, it is admitted upon default. . . . Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled." (citing *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 159; *Wu v. Ip*, No. 93-cv-4467 (FMS), 1996 WL 428342, at *1 (N.D. Cal. 1996)).

7

For all of these reasons, Giuliani's first objection is overruled.

II. **Defendant's objection that plaintiffs must precisely define the members of the civil conspiracy, and that such members include only those specifically identified in the Amended Complaint and to which the parties stipulated were members,** *see* **JPTS at 28–30; First Am. JPTS at 27–29; Def.'s Mem. Resp. at 8, is OVERRULED IN PART and GRANTED IN PART.**

Next, Giuliani objects that plaintiffs have not precisely defined the members comprising the civil conspiracy and such definition is a prerequisite to recover damages on this claim, due to the insufficient pleading of this claim, as addressed (and rejected), *supra*, in Part I, and to support plaintiffs' evidentiary burden in proving causation as to the extent of damages owed to them from Giuliani's conduct. *See* JPTS, App. D, Pls.' Proposed Jury Instr. at 7, ECF No. 105-4 (proposing that jurors be instructed to find Giuliani "liable in this case not just for the harm caused by his own actions, but also for all of the harm caused by the actions that his co-conspirators took in furtherance of the same conspiracy"). The parties agree that the conspiracy includes "Donald J. Trump, Christina Bobb, and Herring Networks, Inc., d/b/a One America News Network ("OAN"), Robert Herring, Charles Herring, and Chanel Rion." JPTS at 29–30; First. Am. JPTS at 28. Giuliani contends that membership is limited to this list by the four corners of plaintiffs' Amended Complaint, defining the "relevant conspirators" as those "involved in the overt acts" alleged in the Amended Complaint—specifically, "Giuliani, Trump, and OAN." Def.'s Mem. Resp. at 8. Inexplicably, Giuliani excludes Trump's "2020 presidential campaign and members thereof," which was included in the parties' consent motion *in limine*, to which requested relief Giuliani "consent[ed]," identifying the following as co-conspirators: "former President Trump; his 2020 ***presidential campaign and members thereof***; Herring Networks, Inc. (d/b/a One America News Network), and its owners and employees; and any other members of the conspiracy named in the complaint." Pls.' Consent Mot. *In Limine* at 11–12 (emphasis supplied); *see also* Order Granting

Pls.' Consent Motion *In Limine*, ECF No. 108.  Plaintiffs, for their part, assert that the conspiracy includes those "who caused statements to be published about Plaintiffs or participated in such publications," namely, "Donald Trump, the Trump Campaign, the Trump Legal team, and others referred to in the Giuliani Strategic Plan," Pls.' Resp. Def.'s Mem. at 14–15, and further represent that they need not "provide any additional specificity" as to membership, JPTS at 29; First Am. JPTS at 28.

The Dismissal Denial Decision found that plaintiffs had plausibly pled a conspiracy involving, in addition to Giuliani and Trump, "the '[k]ey [t]eam [m]embers' listed in the Strategic Plan," Dismissal Denial Decision, 2022 WL 16551323, at *11, which included individuals identified by initials or otherwise falling within the categories named in the Strategic Plan, including "Local Legal Teams in AZ, GA, MI, NV, PA, WI," *see* Def.'s Dismiss Mem., Ex. A, Giuliani Presidential Legal Defense Team, *Strategic Communications Plan* 6–7 (Dec. 17, 2020) ("Strategic Plan"), https://perma.cc/VP2S-CJMR, ECF No. 26-3 (cited in Am. Compl. ¶ 57 n.42, ECF No. 22).  As explained in the Default Judgment Decision, however, "Giuliani's failure to preserve and produce his communications with others concerning plaintiffs and the surrounding context" "severely hampered [plaintiffs] in establishing" their civil conspiracy claim, including the precise members of the conspiracy.  Default Judgment Decision, 2023 WL 5600316, at *17. This circumstance counsels against limiting the members of the conspiracy to those expressly named in plaintiffs' Amended Complaint.[1]  Otherwise, default judgment sanctions to ensure

---

[1] Despite Giuliani's discovery misconduct, plaintiffs made great efforts to identify members of the civil conspiracy, including the "'key team members' listed in the Strategic Plan."  Dismissal Denial Decision, 2022 WL 16551323, at *11 (brackets omitted) (citing Strategic Plan).  Plaintiffs obtained, in deposition testimony from at least four individuals, the identities of individuals who were part of the Trump Campaign Legal team that Giuliani admits heading, *see* Def.'s Answer Am. Compl. ¶ 87, ECF No. 33, and whose names do not appear in the Amended Complaint, *see generally* Am. Compl.; *see also* Pls.' Resp. Def.'s Mem., Decl. of Michael J. Gottlieb, Ex. 1, Rudolph W. Giuliani Dep. Tr. at 93:2–15, 96:24–98:17, ECF No. 112-2 (identifying the legal team he assembled as including "[him]self, Jenna Ellis, Victoria Toensing, Joe DiGenova, Boris Epshteyn . . . Christina [Bobb]," and "Sidney

compliance with discovery procedural rules would instead provide an incentive for defendants to ignore their discovery obligations as a tactic to limit plaintiffs to what they know at the time of filing their complaint, before any discovery has been had, to prove the extent of damages. Such scheming defendants may calculate that engaging in discovery may only help plaintiffs on the damages front, so better to cut off meaningful discovery as a damages mitigation tactic.

At the same time, Giuliani has a point. For example, the universe of every individual member of Trump's 2020 presidential campaign, no matter the role played, would be insufficiently cabined for purposes of proving damages on plaintiffs' civil conspiracy claim. Yet, that is not what plaintiffs seek here. As explained during the pretrial conference, plaintiffs seek to prove damages for defamation and IIED on a conspiracy theory of liability based on publications analyzed in plaintiffs' expert reports, which were first disclosed to Giuliani in July 2023, *i.e.*, prior to the entry of default judgment on August 30, 2023, *see* JPTS at 14–20 & n.8; First Am. JPTS at 12–18 & n.8. The publications relied upon in the expert's reports include (i) the "12 precise publications detailed in the Amended Complaint," Pls.' Resp. Def.'s Mem. at 20, which Giuliani has conceded may be used to prove damages on plaintiffs' defamation claim, *see* Def.'s Mem. Resp. at 3–8; (ii) one Twitter and one Facebook post by defendant Giuliani, dated December 30, 2020, and January 30, 2021, respectively, *see* First Am. JPTS, App. A-1, Pls.' Exhibit List at 22–23, ECF No. 115-2 (PTX-349, PTX-368); and (iii) two Twitter posts by "@TeamTrump," *see* JPTS at 18; First Am. JPTS at 16, a team that participated in the "[n]ationwide communications

---

Powell"); *id.*, Ex. 2, Bernard Kerik Dep. Tr. at 92:8–94:8, ECF No. 112-3 (identifying "key team members" referenced in Strategic Plan as including Katherine Friess ("KF"), Boris Epshteyn ("BE"), and Phil Waldron ("PW")); *id.*, Ex. 3, Christina Bobb Dep. Tr. at 16:16–18:10, 22:11–23:6, 31:4–12, 32:7–14, 32:21–22, 34:16–20, 37:12–17, ECF No. 112-4 (identifying on the "Giuliani legal team" for the Trump campaign: herself, Ellis, Epshteyn, Friess, Waldron, Christianne Allen, Mirna Tarraf, Maria Ryan, and John Eastman); *id.*, Ex. 4, Jacki Pick Dep. Tr. at 43:3–44:24, 47:10–19, 105:25–107:12, ECF No. 112-5 (identifying Trump Campaign Legal team in Georgia led by Ray S. Smith III as including Emilie Denmark and others "associated with the Smith Liss law firm").

outreach campaign" launched by Giuliani to overturn the results of the 2020 presidential election, *see* Am. Compl. ¶¶ 9, 58, 136 (quoting Strategic Plan at 1).

Drawing all inferences in plaintiffs' favor, where Giuliani's own discovery violations deprived plaintiffs of evidence to establish their civil conspiracy claim, *see* Default Judgment Decision, 2023 WL 5600316, at *17, the scope of individuals or entities that published or caused to be published the twelve statements highlighted in the Amended Complaint, and the four additional Twitter and Facebook posts by Giuliani and "@TeamTrump," on which plaintiffs intend to prove civil conspiracy damages, is fully consistent with Giuliani's own benchmark, that the conspiracy membership be limited by the Amended Complaint, *see* Def.'s Mem. Resp. at 8. Based on this benchmark, the conspiracy plainly includes individuals and entities that engaged in the "communications outreach campaign" "orchestrated by Defendant Giuliani," Am. Compl. ¶¶ 57–58, including Donald J. Trump himself, on whose behalf Giuliani headed this effort, *see id.* ¶¶ 77–86; Pls.' Resp. Def.'s Mem., Decl. of Michael J. Gottlieb, Ex. 1, Rudolph W. Giuliani Dep. Tr. at 93:16–99:16, ECF No. 112-2; and the Trump Campaign team, which includes the Trump Legal team that approved the Strategic Plan, which "specifically included naming [plaintiffs] and widely disseminating statements accusing them of committing crimes," Am. Compl. at ¶¶ 9–12, 57–64, 136.

Plaintiffs are correct that the precise contours of the civil conspiracy need not be defined, *see* JPTS at 29; First Am. JPTS at 28, particularly where, as a result of Giuliani's "failure to comply with his basic preservation and production discovery obligations," plaintiffs "have been denied access to discovery . . . to support their claims," Default Judgment Decision, 2023 WL 5600316, at *1 n.1, 3. For purposes of the damages trial scheduled to begin in less than one week, on December 11, 2023, the civil conspiracy is comprised of persons whom the parties have stipulated

are conspiracy members, namely, Donald J. Trump, Christina Bobb, and Herring Networks, Inc.,

d/b/a OAN, Robert Herring, Charles Herring, and Chanel Rion, *see* JPTS at 29–30; First. Am.

JPTS at 28; and members of the Trump 2020 Presidential Campaign, including members of the

Trump Legal team headed by Giuliani, "who caused statements to be published about Plaintiffs or

participated in such publications," Pls.' Resp. Def.'s Mem. at 14, as identified in plaintiffs'

Amended Complaint, through deposition testimony, or expert reports disclosed to Giuliani prior

to the entry of default judgment on August 30, 2023.[2]

Accordingly, Giuliani's objection as to the identities of co-conspirators is overruled in part

and sustained in part.

**III.    Defendant's objection that plaintiffs should be limited to proving damages based only on "those statements and/or co-conspirators specifically alleged in the Amended Complaint," JPTS at 14 n.8; First Am. JPTS at 12 n.8, is OVERRULED.**

Finally, related to the objection addressed, *supra*, in Part II, Giuliani contends that plaintiffs

are limited to proving damages on all claims based only on twelve defamatory statements

identified in plaintiffs' Amended Complaint.  *See* Def.'s Mem. Resp. at 3–8.  This misrepresents

the scope of allegations pleaded in plaintiffs' Amended Complaint, which expressly

"incorporate[d] and re-allege[d]" the statements alleged in "all preceding paragraphs" for

plaintiffs' defamation/defamation *per se* Count One and IIED Count Two, Am. Compl. ¶¶ 163,

---

[2] Based on this ruling, Giuliani's objection to the first two lines in the proposed preliminary instruction on "Civil Conspiracy," *see* JPTS, App. E, Def.'s Obj. Pls.' Proposed Jury Instr. at 7, ECF No. 105-5, is overruled in part and sustained in part.  The jury will be instructed as follows: "The Court has also found that Mr. Giuliani engaged in a civil conspiracy to commit the torts of defamation and intentional infliction of emotional distress on or before December 3, 2020, with DONALD J. TRUMP, the TRUMP 2020 PRESIDENTIAL CAMPAIGN's LEGAL TEAM headed by Mr. Giuliani, the ONE AMERICA NEWS NETWORK ("OAN"), OAN REPORTERS, and others."

At the pretrial conference and by filing dated December 6, 2023, Giuliani withdrew his two other objections to plaintiffs' proposed preliminary instructions on "Certain Matters Already Decided" and "Defamation," previously asserted in the parties' joint pretrial submission, *see* JPTS, App. E, Def.'s Obj. Pls.' Proposed Jury Instr. at 3–4; Def.'s Resp. Dec. 5, 2023 Minute Order, ECF No. 116 ("Giuliani's counsel confirms that Giuliani concurs in counsel's representations at the pretrial conference that . . . defendant withdraws his objections, raised in the parties' initial JPTS . . . to plaintiffs' proposed jury instructions regarding 'Certain Matters Already Decided' and 'Defamation.'").

178, and throughout, alleged that the defamatory statements extended "over a period of more than 18 months and continu[ed] even after Plaintiffs initiated this action." *Id.* ¶ 5; *id.* ¶ 12 (alleging that "Defendant Giuliani continued to repeat and republish the false and defamatory statements throughout 2021 and into 2022, including after Plaintiffs initiated this action"); *id.* ¶ 17 (alleging that "[a]s a result of Defendant's ongoing campaign, the Plaintiffs can no longer live normal lives"); *id.* ¶ 137 (alleging that "Defendant Giuliani's statements, and those published as a result of his Strategic Plan, reached millions of people[,]" and Giuliani "was a frequent guest on OAN, which claimed to have had 35 million subscribers and that its total viewers at any given time could range from 'about 150,000 to upwards of half a million'" (citation omitted)).   Giuliani himself admits, in his Answer to plaintiffs' Amended Complaint, that various defamatory statements remain available for public access and viewing, even after the filing of plaintiffs' claims.  *See* Def.'s Answer Am. Compl. ¶ 39, ECF No. 33 (admitting that "[o]n December 3 and 4, Defendant Giuliani repeatedly broadcast the [Trump Edited Video] on his own Twitter account"); *id.* ¶ 68 (admitting that the December 23, 2020 episode of *Common Sense* "remains available on Giuliani's website"); *id.* ¶ 76 (admitting that the December 30, 2020 episode of *Common Sense* "remains available on Giuliani's website"); *id*. ¶ 101 (admitting that the January 12, 2022 episode of *Common Sense* "remains available on Defendant Giuliani's channels today").

To be sure, Federal Rule of Civil Procedure 54(c)—which is cited by neither side here—instructs that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c).   "The theory of this provision is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action." Charles Allen Wright et al., 10 FED. PRAC. & PROC. – CIV. § 2663 (4th ed. 2023); *see also Appleton Elec. Co. v.*

*Graves Truck Line, Inc.* 635 F.2d 603, 611 (7th Cir. 1980) ("The apparent purpose of limiting default judgments to the amount prayed for is to protect defendants who choose to default, relying on the damage ceilings contained in plaintiffs' prayers.").

For several reasons, however, this case is not one implicating the concerns about fair notice underlying Rule 54.  First, plaintiffs' Amended Complaint does not plead a specific "amount" of damages, nor do plaintiffs now seek at the jury trial a type of award different from the relief sought in their complaint.  *Compare* Am. Compl. at 59 (seeking, *inter alia*, nominal damages, compensatory damages, punitive damages), *with* Am. JPTS § VIII; First Am. JPTS § VIII, Itemization of Damages (itemizing plaintiffs' requests for the same forms of monetary damages).

Second, Giuliani has been on notice since the filing of plaintiffs' Amended Complaint in May 2022, of plaintiffs' allegations regarding Giuliani's ongoing defamatory statements, which "continu[ed] even after Plaintiffs initiated this action."  Am. Compl. ¶ 5.  Giuliani has further had the opportunity to contest plaintiffs' damages evidence well before the entry of default judgment, having been put on notice of plaintiffs' intent to prove damages relating to statements included in reports by plaintiffs' expert, Dr. Ashlee Humphreys, whose first report was served on Giuliani on July 28, 2023, *see* JPTS at 14 n.8; First Am. JPTS at 12 n.8—*i.e.*, before Giuliani attempted to stipulate to liability for a second time on August 8, 2023, *see* Superseding Stipulation, ECF No. 90, and prior to the Court's entry of default judgment against Giuliani on liability on August 30, 2023, *see* Default Judgment Decision.  As plaintiffs correctly point out, *See* Pls.' Resp. Def.'s Mem. at 20, during any of this intervening time prior to his attempted stipulation and entry of default, Giuliani could have contested that evidence through deposition testimony or the filing of a *Daubert* motion, but he did not.

Having been put on notice of plaintiffs' allegations regarding Giuliani's ongoing defamatory statements through plaintiffs' Amended Complaint and expert reports, and having himself admitted to the course of conduct continuing past the filing of plaintiffs' Amended Complaint, Giuliani's objection that plaintiffs are limited to proving damages on the defamation claim based only on the twelve "Actionable Statements" set out in the Amended Complaint, Def.'s Mem. Resp. at 8, is overruled, *see Mey v. Phillips*, 71 F.4th 203, 223 (4th Cir. 2023) (following entry of default judgment as discovery sanction, damages award not limited to 25 phone calls expressly pled in complaint, where complaint also alleged that defendants "continued to call [plaintiff] on other occasions throughout 2018 and during January 2019" and "while th[e] case was being actively litigated"); *Appleton Elec. Co.*, 635 F.2d at 610–611 (following defendant carrier's failure to appear and answer complaint for overcharges made on an unspecified number of shipments, plaintiffs' "proposed [default] order" served on defendant before he "[chose] to default" and "contain[ing] a formula by which [defendant] could calculate its maximum liability," "amounted to an amendment of the plaintiffs' prayer for relief," where "prior to its adoption by the district court, [defendant] received notice of the proposed order," and was thereby "protect[ed]," as contemplated by FED. R. CIV. P. 54(c).

Giuliani does not address plaintiffs' IIED claim, arguing only about limitations on plaintiffs' claimed damages for defamation and civil conspiracy. *See generally* Def.'s Mem. Resp.; Def.'s Reply. Yet, the Default Judgment Decision held Giuliani liable as to all of plaintiffs' claims, *see* Default Judgment Decision, 2023 WL 5600316, at *2, 26, and the Dismissal Denial Decision held that IIED is "a separate and distinct tort from defamation," Dismissal Denial Decision, 2022 WL 16551323, at *10. Plaintiffs pleaded their IIED claim based on the "course of conduct caus[ing] [Plaintiffs] 'extreme mental distress,'" *Pleznac v. Equity Residential Mgmt.,*

*L.L.C.*, 320 F. Supp. 3d 99, 109 (D.D.C. 2018) (citation omitted), which alleged conduct constitutes a separate tort from the defamation claim and rests on broader allegations than only the twelve defamatory statements Giuliani identifies.  Accordingly, plaintiffs may prove damages on their IIED claim based on statements pleaded or incorporated by reference in plaintiffs' Amended Complaint that were addressed and thereby disclosed to Giuliani in Dr. Humphreys's reports.

According, Giuliani's third objection is overruled.

## IV.    CONCLUSION

For the reasons set forth above, it is hereby:

**ORDERED** that defendant Giuliani's objection that plaintiffs have not "established all elements of any of their claims" because "these allegations are not well pleaded, particularly the conspiracy claim, and therefore cannot support a default judgment," Def.'s Mem. Resp. at 3; *see* JPTS at 27–28; First Am. JPTS at 26, is **OVERRULED**; it is further

**ORDERED** that defendant Giuliani's objection that plaintiffs must precisely define the members of the civil conspiracy, and that such members include only those specifically identified in the Amended Complaint and to which the parties stipulated were members, *see* JPTS at 28–30; First Am. JPTS at 27–29; Def.'s Mem. Resp. at 8, is **OVERRULED IN PART** and **GRANTED IN PART**; and it is further

**ORDERED** that defendant Giuliani's objection that plaintiffs should be limited to proving damages based only on "those statements and/or co-conspirators specifically alleged in the Amended Complaint," JPTS at 14 n.8; First Am. JPTS at 12 n.8, is **OVERRULED**.

**SO ORDERED**.

Date: December 7, 2023

_____

**BERYL A. HOWELL**
United States District Judge