# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUBY FREEMAN, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> RUDOLPH W. GIULIANI, <br><br> Defendant. | Civil Action No. 21-3354 (BAH) <br><br> Judge Beryl A. Howell |

## ORDER REGARDING TRIAL PROCEDURES

The following rules supplement the provisions of the **Standing Order for Civil Cases**, **ECF No. 4**, already entered in this matter.

1. **Schedule and Required Presence of Parties and their Counsel**.  The trial will begin **at 9:00 a.m. in Courtroom 26A on December 11, 2023. The presence of both counsel and parties in the courtroom is required**.  Unless the parties are otherwise notified, the Court will convene the evidentiary portion of the trial from **9:15 a.m. to 12:30 p.m.** and **1:30 p.m. to 5:00 p.m.**, **Monday through Friday**, with a brief mid-morning and mid-afternoon recess.  Counsel should be prepared to deliver their opening statements promptly after the jury has been selected, sworn-in, and preliminary instructions have been delivered by the Court.

    a. Opening statements shall not exceed 45 minutes per side.  Any exhibits, charts, or summaries to be used in opening statements must be cleared with counsel for the other side prior to the opening statements, and if any party objects, such objections must be submitted to the Court for resolution by noon on **Friday, December 8, 2023**.

    b. Immediately after opening statements, plaintiffs must be prepared to call their first witness.

    c. Unless otherwise instructed by the Court, counsel should be present in the courtroom each morning at least fifteen minutes before trial begins to address any preliminary matters.  Trial before the jury will convene promptly at the designated time on each trial day to avoid keeping the jury waiting.

2. **General Courtroom Rules**.  In addition to exercising civility, counsel shall, unless leave is otherwise granted:
    a. examine witnesses from the lectern and refer to all individual parties and witnesses, over the age of 18, as "Mr." or "Ms." rather than by a first name or nickname;
    b. request permission before approaching a testifying witness;
    c. stand when raising objections;
    d. remain seated when the jury is entering or leaving the courtroom; and
    e. direct all statements for the record to the Court rather than to the opposing party.

3. **Jury Selection Process**.  An outline of the jury selection process to be used in this civil matter is set forth in **Attachment A** to this Order.

4. **Technical Equipment**.  Counsel needing technical assistance with courtroom equipment (*e.g.,* overhead projectors, video display monitors) must contact the Courtroom Technology Administrator of the Clerk's office at (202) 354-3019.

5. **Statement of the Case**.  The Court intends to describe the case to the venire panel as follows:

> This is a civil case.  Plaintiffs, Ruby Freeman and Wandrea ArShaye ("Shaye") Moss, claim that Defendant Rudolph W. Giuliani defamed them, intentionally inflicted emotional distress on them, and engaged in a conspiracy with others to do the same.
>
> Plaintiffs served as election workers at the State Farm Arena in Fulton County, Georgia during the 2020 presidential election.  Mr. Giuliani is the former mayor of New York City, an attorney who has practiced law for decades, and a current media personality with his own radio shows and podcasts. Mr. Giuliani headed the Trump Campaign legal team during former President Donald J. Trump's unsuccessful bid for re-election in 2020, and was part of the campaign to undermine the legitimacy of that election in battleground states like Georgia.
>
> Mr. Giuliani publicly and falsely accused plaintiffs of committing various acts of election fraud, including: illegally excluding poll watchers under false pretenses; sneaking in and hiding illegal ballots in suitcases under tables; illegally counting ballots multiple times; and passing a USB drive with the intent of changing the vote count in the voting tabulation devices. Ms. Freeman and Ms. Moss allege that Mr. Giuliani's actions have caused them to suffer and continue to suffer extensive emotional and reputational harm, including because Mr. Giuliani's actions made them targets for profane and vile threats.
>
> The Court has already determined that Mr. Giuliani is liable for defamation *per se*, intentional infliction of emotional distress, and civil conspiracy, and that Ms. Freeman and Ms. Moss are entitled to receive compensation, including in the form of punitive damages, for Mr. Giuliani's willful conduct.  The only issue remaining in this trial is for the jury to determine any amount of damages Mr. Giuliani owes to Plaintiffs for the damage caused by his conduct.

6. ***Voir Dire* Questions**.  The *voir dire* questions that the Court intends to pose to the venire panel collectively are listed in **Attachment B** to this order.

7. **Motions or Objections During Trial**.
   a. **No evidentiary objections shall be argued in the presence of the jury.**  Counsel must state clearly and succinctly the legal basis for any objection in a word or short phrase.  To protect the record for appellate review, counsel may explain or amplify any objections on the record outside the hearing of the jury or after the jury has been excused.  If counsel plans to engage in a line of inquiry that requires judicial pre-approval, counsel may request a bench conference.

   b. **Bench Conferences should be requested only when necessary** because counsel intends to refer to issues requiring pre-clearance (*e.g.*, anticipated questions or testimony may refer to a missing witness or potentially inflammatory subject matter).  Counsel should not expect requests for a bench conference to be routinely granted and should, instead, consider

whether the issue counsel wishes to address at the bench can wait until the jury is excused for a recess.

8. **Witness Examination**.
   a. A party calling a witness must arrange for the witness's presence until cross-examination is completed. Failure to have a witness present for cross-examination is grounds for striking the witness's testimony. Except in extraordinary circumstances, the Court will not recess the trial due to the unavailability of a witness.

   b. With the exception of the parties, all witnesses must remain outside the courtroom except when testifying. *See* FED. R. EVID. 615.

   c. After a witness has been tendered for cross-examination and until the witness has been tendered back for redirect, counsel calling that witness to testify must have no further discussions with that witness concerning any aspect of the testimony already given or anticipated.

9. **Jury Instructions**. If events during trial necessitate an immediate jury instruction, counsel requesting the instruction must provide the Court with the text of the proposed instruction; otherwise, the Court will consider the request waived. If a party would like the instruction included in the Court's final instructions to the jury, that party bears the responsibility of providing the text requested prior to the charging conference for discussion at the charging conference.

10. **Juror Confidentiality**. The names and personal information of prospective and sitting jurors in any trial of this matter shall be kept confidential and not disclosed outside of open court, except upon order of the Court. *See* D.D.C. JURY SELECTION PLAN ¶ 18.1 (updated May 2022), https://www.dcd.uscourts.gov/sites/dcd/files/D.D.C.JurySelectionPlan-20220517.pdf. Counsel and parties are cautioned that violation of this directive may result in contempt proceedings.


DATED:  December 7, 2023

**BERYL A. HOWELL**
United States District Judge

**ATTACHMENT A TO TRIAL ORDER**

**Jury Selection Process**

1. <u>Number of Jurors Seated</u>.  Rule 48 of the Federal Rules of Civil Procedure requires that a unanimous civil verdict be returned by a jury of at least 6 members and that the jury begin with no more than 12 members.  *See* FED. R. CIV. P. 48.  Accordingly, to provide prudently for the sickness or disability of any juror, a jury of 8 will be selected.  Consistent with the Federal Rules of Civil Procedure, no alternates will be selected.  *See* FED. R. CIV. P. 48(a); *see also* FED. R. CIV. P. 47, Advisory Comm. Note, 1991 Amdt.

2. <u>Venire Panel</u>.  The number of panelists is computed by totaling the following: the number of jurors to be selected (8) and the number of preemptory challenges (3 per party, or 6 total).  *See* FED. R. CIV. P. 47(b); 28 U.S.C. § 1870.  Thus, in this case, Judge Howell will *voir dire* a sufficient number of prospective jurors for a venire panel, after excusing panelists for cause, of 14 panelists.

3. <u>Location</u>.  The prospective jurors will be seated in Courtroom 26A by the courtroom deputy clerk in the order in which their names appear on the venire list.  The seating arrangement will start with the first-listed prospective juror being placed in the first row of seats located on the left side of the Courtroom 26A as viewed from the bench looking toward the rear of the courtroom.  Prospective jurors will be seated in the order listed on the venire list in sequential order from the left wall to the center aisle and then from the right wall to the center aisle.

4. <u>Venire List</u>.  When the prospective jurors arrive in Courtroom 26A from the Jury Office, counsel will be provided with the written list of the venire panel ("venire list").

5. <u>Juror Seating Order</u>.  The prospective jurors will be seated on the left side of the courtroom (as viewed from the bench looking toward the rear of the courtroom) by the courtroom deputy clerk in the sequential order their names appear on the venire list, starting with the first row, from the left wall to the center aisle.  The same seating arrangement will be employed on the right side of the courtroom if that space is needed to seat the entire venire panel.

6. <u>Administration of Oath and Preliminary Matters</u>.  After the prospective jurors are seated, Judge Howell will give a brief introduction, explaining the importance of jury service and the selection process, and the oath will be administered to all prospective jurors.

7. <u>General *Voir Dire* Questions Asked Simultaneously to All Prospective Jurors</u>.  Judge Howell will decide what *voir dire* questions will be asked after consideration of the proposed *voir dire* questions submitted by the parties as part of the Joint Pretrial Statement and any supplemental argument at the pretrial conference.  The prospective jurors will be collectively asked the *voir dire* questions.  The jurors will be instructed to mark on the paper provided by the courtroom deputy clerk the number of any question to which the juror has an affirmative answer to facilitate any follow-up questions.  *See* FED. R. CIV. P. 47(a).

8. <u>Individual Responses to Questioning</u>.  After the collective *voir dire* questions have been asked, prospective jurors will be reseated outside the courtroom.  The venire panel will be instructed not

4

to discuss the case or the *voir dire* questions.  Each prospective juror will then be escorted individually by the courtroom deputy clerk to Courtroom 26A in the order listed on the venire list.  Each prospective juror will be asked follow-up questions about any affirmative response indicated on the paper.  Counsel will have the opportunity to request that Judge Howell ask additional pertinent follow-up questions of individual jurors at this time.

9. <u>Strikes for Cause</u>.  Strikes for cause should be made immediately after the individual questioning of the prospective juror and will be ruled on promptly.  Any juror struck for cause will be excused from the courtroom.  When 14 prospective jurors have been qualified, following individual *voir dire* and resolution of strikes for cause, the selection process will proceed immediately to the exercise of preemptory challenges.

10. <u>Peremptory Challenges</u>.  Each side will have three peremptory challenges.  *See* FED. R. CIV. P. 47(b); 28 U.S.C. § 1870.  The 14 qualified prospective jurors will be placed in the jury box in the order in which their names appear on the venire list.  The courtroom deputy clerk will provide the parties with a document upon which they should record their respective peremptory strikes.

    Peremptory challenges are exercised in **three rounds**: in **each round**, plaintiffs exercise one challenge and defendant exercises one challenge, for a total of three challenges for plaintiffs and defendant each.  In each round, plaintiffs will exercise their challenge first.  A pass by any side counts as a strike.  If plaintiffs fail to exercise a challenge on a round, and defendant also fails to exercise a challenge on that same round, the peremptory challenge process for the eight-person jury will be deemed completed.  The qualified prospective jurors, who have not been stricken, in the order their names appear on the venire list, will be the jury.

11. <u>Swearing-In Jury</u>.  Following the exercise of any peremptory challenges, the courtroom deputy clerk will ask the eight qualified prospective jurors remaining to be reseated in the jury box in the order their names appear on the venire list.  The jury will then be sworn-in.

12. *Batson* Challenges.  Prospective jurors who were stricken on a peremptory challenge will not be excused from the courtroom until the entire selection process has been completed, including the resolution of any challenges pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986).  Counsel are forewarned that should a *Batson* challenge be found to be meritorious, the remedy may be to impanel the improperly stricken juror on the jury and preclude the party who improperly exercised the strike from excluding that juror.  Other remedies to address *Batson* violations are also available, including the imposition of monetary sanctions.  Counsel should therefore be mindful of the obligation not to exercise peremptory challenges that seek to exclude jurors based on race or gender.

## ATTACHMENT B TO TRIAL ORDER
### *Voir Dire* Questions

1. The plaintiffs in this case are **Ruby Freeman** and **Wandrea ArShaye "Shaye" Moss**. PLEASE STAND. Do you know or have you had any contact with Ms. Freeman or Ms. Moss?

2. The plaintiffs are represented by **Michael Gottlieb** and **Meryl Governski** from the law firm **Willkie Farr & Gallagher LLP**; by **John Langford** from the organization **Protect Democracy**; and **Von DuBose** of the law firm **DuBose Miller LLC**. **Mr. Gottlieb, Ms. Governski, Mr. Langford, and Mr. DuBose**, PLEASE STAND. Do you know or have you had any contact with **Michael Gottlieb**, **Meryl Governski**, **John Langford**, or **Von DuBose**; the law firms **Willkie Farr & Gallagher LLP** or **DuBose Miller LLC**; or the organization **Protect Democracy**?

3. The defendant in this case is **Rudy Giuliani**. PLEASE STAND. Have you had any contact with **Mr. Giuliani** or do you know him personally?

4. **Mr. Giuliani** is represented by **Joseph Sibley** from the law firm **Camara & Sibley LLP**. PLEASE STAND. Do you know or have you had any contact with **Mr. Sibley** or the law firm **Camara & Sibley LLP**?

5. Please look around you. Do you know any other member of the prospective jury panel, the courtroom staff, or me?

6. You may hear testimony from <u>or</u> about a number of people. The attorneys will now identify for you the names of people who may testify or about whom you may hear testimony. Listen carefully and, if you know or have had contact with any of the people named, please mark your paper beside number 6. Plaintiffs' counsel may go first, then counsel for defendant.

7. Based on the information I have given you about this case, have you received, heard, or seen information, from any source, before coming to court today about the facts and circumstances of this matter that would make it difficult for you to serve fairly and impartially as a juror in this trial?

8. The lawyers predict that the presentation of evidence in this trial should last this week, but it could run longer. The jury will sit Monday through Friday, generally from about 9:00 a.m. to 5:00 p.m., although the starting and ending times may vary. The length of the jury deliberations following the presentation of evidence at trial will be determined by the jury itself. Do you have an urgent or extremely important matter to attend to the next two weeks, such that you would be faced with a hardship if selected for the jury in this case?

9. Do you have any vision or hearing problems, or any other physical or medical problems, or any difficulty understanding or reading English, that might interfere with your ability to hear or understand what the witnesses say in this case or to give your full attention to this trial?

10. Have you ever been involved as a plaintiff or defendant or as a witness in a case, whether civil, criminal, or administrative?

11. If you have served before as a juror in a civil or criminal case, is there anything about that experience that might affect your ability to serve fairly and impartially as a jury in this trial?

12. Have you, any close family member, or close friend ever worked as a lawyer, received legal training, or been employed by a lawyer?

13. Do you have any moral, religious, philosophical, or other beliefs that might affect your ability to render a judgment in this case based solely upon the evidence presented during trial?

14. The jury in this case will resolve the amount of damages on claims of defamation and intentional infliction of emotional distress.  Do you have such strong feelings about either type of claim that would make it difficult for you to serve fairly and impartially as a juror in this trial?

15. Do you have such strong feelings about the use of punitive damages to punish or deter wrongful behavior proven in a court of law that those strong feelings would make it difficult for you to serve fairly and impartially as a juror in this trial?

16. Were you employed by, or did you work as a volunteer for, Donald Trump's 2020 presidential campaign?

17. Do you believe that Joseph R. Biden's election as president of the United States in 2020 was illegitimate?

18. Do you or have you ever followed **Mr. Giuliani** on social media, including the Twitter/X handle @Rudy Giuliani, podcasts, radio shows or television shows?

19. Have you ever used the phrase "Let's Go Brandon" or the term or hashtag "WWG1WGA"?

20. You previously heard the names of people who may testify or about whom you may hear testimony.  Do you have such strong views about an individual's status as a current or former elected official that it would be difficult for you to give the same fair consideration to that individual's testimony as you would to any other individual?

21. If selected, each juror must hear the evidence in this case and apply the law that I give you, without being influenced in your decision by passion or prejudice for or against the plaintiffs or the defendant.  Will you have any difficulty following this instruction?

22. Is there anything else about the nature of this case or about the plaintiffs or defendant involved that would make it difficult for you to remain fair and impartial and to render a decision based solely upon the evidence presented?

23. Do you know of any reason, or has anything occurred to you during this questioning, that might in any way prevent you from following my instructions on the law and being completely fair and impartial as a juror in this case?