```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA

  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
RUBY FREEMAN, et al.,              )  Civil Action
               Plaintiffs,         )  No. 21-3354
vs.                                )
                                   )
RUDOLPH GIULIANI,                  )  December 5, 2023
                                   )  10:08 a.m.
               Defendant.          )  Washington, D.C.
  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF PRETRIAL CONFERENCE**
**BEFORE THE HONORABLE BERYL A. HOWELL,**
**UNITED STATES DISTRICT COURT JUDGE**

<u>**APPEARANCES**</u>:


FOR PLAINTIFFS:     MICHAEL GOTTLIEB
                    MERYL CONANT GOVERNSKI
                    ANNIE HOUGHTON-LARSEN
                    AARON NATHAN
                    Willkie Farr & Gallagher LLP
                    1875 K Street, Suite 100
                    Washington, DC 20006
                    (202) 303-1016
                    Email: mgovernski@willkie.com


                    VON A. DuBOSE
                    DuBose Miller
                    75 14th Street NE
                    Atlanta, GA 30309
                    (404) 720-8111
                    Email:  miller@dubosemiller.com


                    JOHN LANGFORD
                    Protect Democracy
                    555 W. 5th Street
                    Los Angeles, CA 90013
                    (919) 619-9819
                    Email: john.langford@protectdemocracy.org


                    *(Appearances Continued)*

<u>APPEARANCES</u>:   (Continued)


FOR DEFENSE:    JOSEPH D. SIBLEY, IV
                Camara & Sibley LLP
                1108 Lavaca Street
                Suite 110263
                Austin, TX 78701
                (713) 966-6789
                Email: sibley@camarasibley.com



ALSO PRESENT:  Ruby Freeman
               Wandrea Moss



Court Reporter: Elizabeth Saint-Loth, RPR, FCRR
                Official Court Reporter
                Washington, D.C.  20001


        Proceedings reported by machine shorthand.
     Transcript produced by computer-aided transcription.

**P R O C E E D I N G**

1          THE COURTROOM DEPUTY:  Your Honor, this is Civil

Action 21-3354, Ruby Freeman, et al. versus Rudolph

Giuliani.

          Will the parties please come forward to the

lectern, identify yourselves for the record.  We'll start

with plaintiffs' counsel first this morning.

          MR. GOTTLIEB:  Good morning, Your Honor.

Mike Gottlieb from Willkie Farr & Gallagher on behalf of the

plaintiffs.

          THE COURT:  You have a crowd with you here today.

          MR. GOTTLIEB:  We do, Your Honor.  I am prepared

to introduce them.

          With us at counsel table are the plaintiffs,

Ms. Freeman and Ms. Moss --

          THE COURT:  Good morning.

          MR. GOTTLIEB:  -- along with Miller Governski,

Aaron Nathan, and Annie Houghton-Larsen from Willkie Farr &

Gallagher; Von DuBose from DuBose Miller; and John Langford

from Protect Democracy.

          THE COURT:  Thank you.  Good morning.

          MR. SIBLEY:  Good morning, Your Honor.

Joe Sibley on behalf of the defendant.

          THE COURT:  Mr. Sibley, where is Mr. Giuliani this

morning?

```
 1                    MR. SIBLEY:  He is in New York, I presume, Your

 2       Honor.

 3                    THE COURT:  I'm sorry.  But my standing order and

 4       the order setting up this pretrial conference made it clear

 5       that not just counsel, but parties were supposed to be

 6       present at the pretrial conference; that is my practice.

 7                    The standing order makes pretty clear -- it's been

 8       the standing order since the date it was docketed; and it's

 9       docketed at ECF 4, so it's pretty early in this case.

10                    It says, paragraph 11:  Pretrial conference.

11       Attendance:  In addition to parties' counsel, all parties or

12       party representatives must be present at the pretrial

13       conference.

14                    How could you have missed that?  Or did you miss

15       it?

16                    MR. SIBLEY:  Well, Your Honor -- I did.

17                    I read the order setting this case for pretrial

18       and trial.  And based on that order, it was very clear that

19       the parties were to be here for trial for the duration --

20                    THE COURT:  Oh.  No, no, no, no.

21                    The parties -- the minute order says:  The parties

22       are directed to appear in Courtroom 26(a) for a pretrial

23       conference in this matter on December 5.

24                    It was not at all unclear.

25                    MR. SIBLEY:  I apologize, Your Honor.  It's my
```

1    mistake.

2              THE COURT:  Well, that sets the tone, doesn't it,

3    for this whole case?

4              MR. SIBLEY:  My apologies, Your Honor.  I missed

5    that.

6              THE COURT:  You are just falling on your sword?

7              MR. SIBLEY:  I am not, actually.  It is my fault.

8         I did not inform the client that he needed to be

9    here for the pretrial conference.  I have never -- I have

10   never had to have a client present for a pretrial

11   conference.

12        I read that minute order as -- obviously, it says

13   "the parties," but that's usually through counsel.  There

14   was obviously specifically -- there is the in-person

15   language for the trial portion.

16        I know you have requested specifically for

17   Mr. Giuliani to be here for other hearings, when -- either

18   for Zoom conferences or in-person hearings and, of course,

19   he was here.  But I was not aware of that.  I should have

20   been aware.  It's my fault, Your Honor.

21             THE COURT:  When was the last time you read the

22   standing order in this case?

23             MR. SIBLEY:  It's probably been since the

24   beginning of the case, Your Honor.

25             THE COURT:  Really?  Because it lays out all of

1    the details for what has to be in the joint pretrial

2    statement in preparation for a pretrial conference.

3              So, typically, one would think, when you are

4    preparing for trial, you would want to know what the

5    standing order in a case says so that you are prepared for

6    trial.

7              Are you prepared for trial, Mr. Sibley?

8              MR. SIBLEY:  With respect to the pretrial --

9              THE COURT:  I am not getting a lot of confidence

10   based on what's happening here right now.

11             MR. SIBLEY:  Well, with respect to the pretrial

12   materials, Your Honor, yes, of course.  We reviewed that in

13   conjunction with opposing counsel.

14             THE COURT:  Of course.

15             MR. SIBLEY:  But with respect to the entire order,

16   I can't say that I have reviewed it very recently.  This

17   case has been around for a little while --

18             THE COURT:  So you reviewed the standing order

19   when it came to what happened to be in the contents of the

20   joint pretrial statement, which was in compliance with my

21   standing order and with the local rules of this court.  But

22   you just skipped over the part that said, in paragraph 11 --

23   right after the contents of what had to be in the joint

24   pretrial statement:  Pretrial conference.

25             Attendance:  In addition to parties' counsel, all

1   parties or party representatives must be present at the

2   pretrial conference.

3           You just skipped over that part?

4           MR. SIBLEY:  I wouldn't say I skipped it, Your

5   Honor.  I didn't reread it.  There have been many orders in

6   this case.  I know there were some where you specifically

7   requested Mr. Giuliani be here.  And I just -- I will take

8   responsibility for it, Your Honor.  It's my fault.

9           THE COURT:  All right.  Well, this is not a good

10  start to the trial that we're about to begin.

11          All right.  Mr. Sibley, please be seated.

12          I am going to review what I want to cover today at

13  the pretrial conference.  If the parties have anything else

14  they would like to add, you can just let me know.

15          I am going to talk about certain logistical

16  matters, and just confirm what the parties are expecting to

17  be the length of the trial and the schedule.

18          I want to review the statement of the case, which

19  I use both during voir dire and also in the preliminary

20  instructions to the jury.  I am going to discuss the voir

21  dire questions the parties have proposed.

22          I want to talk a little bit about the exhibit

23  lists or list -- because I think the defense doesn't have

24  any exhibits; it's just the plaintiffs that have submitted

25  an exhibit list.

1          Briefly touch on the stipulations and, then, I

2     want to address some of the various issues that were raised,

3     in terms of defense objections, in the joint pretrial

4     statement.  That includes some of the damages-related

5     issues, which I see in the amended joint pretrial statement

6     that the plaintiffs filed yesterday evening; that you have

7     changed some of your damages claims, so I want to review

8     some of that, what those changes are specifically.

9          I also want to talk about the declaratory and

10    injunctive relief that the plaintiffs have requested, both

11    in the amended complaint and the joint pretrial statement.

12    I see some differences.  I just want to make sure I am

13    understanding what you are requesting, and whether there are

14    any defense objections.

15          I then want to talk about some of the issues and

16    objections raised by the defense in the joint pretrial

17    statement to the extent that I have already resolved, which

18    I wanted to get done as quickly as possible for planning

19    purposes, the defense motion to convert the jury trial into

20    a bench trial.  And that's been resolved.

21          All right.  Do the plaintiffs have anything else

22    they would like to add to the agenda?

23          MR. GOTTLIEB:  I don't think so, Your Honor.

24          I would -- one request would be -- as Your Honor

25    pointed out, we have a number of counsel present here

1    today -- to give some opportunities to people to argue some

2    issues.  We have divided up a set of those issues --

3            THE COURT:  You will just -- whoever needs to pop

4    up will pop up.

5            MR. GOTTLIEB:  Thank you, Your Honor.

6            THE COURT:  Mr. Sibley, do you have anything else

7    to add to the agenda?

8            MR. SIBLEY:  Your Honor, I don't have anything to

9    add.  However, I do think if the Court disposes of some of

10   the issues that have been raised in the briefing that we

11   have recently done, I think that probably resolves most if

12   not all of the objections.

13           THE COURT:  Well, that's my plan.

14           When I get the jury in the box, and I have

15   citizens from the District of Columbia taking time out of

16   their busy schedule to serve -- do their civic duty and

17   serve on a jury, I really like the evidence to be moving in

18   very smoothly and not to have to take up too much of the

19   jury's time -- sometimes it's unavoidable, but to take up

20   too much of their time with legal discussion.  That's part

21   of the reason I like to have most of the issues resolved at

22   the pretrial conference.  That is my plan, Mr. Sibley.

23           MR. SIBLEY:  Thank you, Your Honor.

24           THE COURT:  Let me just say I know both sides have

25   been working on expedited briefing schedules since the

1    issues that needed resolution before we could proceed to

2    trial were only raised in the joint pretrial statement, so

3    that's usually the purpose of a pretrial motion schedule.

4    It can be done so we're not all having a fire drill

5    addressing the legal issues the week before trial and you

6    can focus on your final preparations; but that's not what

7    happened here.

8              All right.  So let's start with logistical matters.

9              I understand that the parties still think that the

10   evidentiary portion of the trial will last about four days.

11             The plaintiffs plan to call four witnesses.  Each

12   of the plaintiffs in the case, Dr. Ashlee Humphreys [sic],

13   and Regina Scott.

14             Is that correct, from the plaintiffs' perspective?

15             MR. GOTTLIEB:  Yes, Your Honor.

16             Those would be the live witnesses.  And then, of

17   course, we have the designated deposition testimony.

18             THE COURT:  Okay.  I am going to talk about the

19   deposition designations in just a minute.

20             I see that the defendant will call himself to

21   testify.

22             So Mr. Giuliani plans to testify; is that what you

23   are saying, Mr. Sibley?

24             MR. SIBLEY:  That's correct, Your Honor.

25             I think our witnesses -- I am not sure plaintiffs

1    will call Mr. Giuliani.  If they do, then I don't believe

2    we'll have any case in chief; and that will be the case.  He

3    is the only witness that we will call.

4              THE COURT:  The plaintiffs have designated him as

5    "may call."

6              If the plaintiffs don't call Mr. Giuliani, you are

7    planning to call Mr. Giuliani?

8              MR. SIBLEY:  That's correct, Your Honor.

9              THE COURT:  Okay.  We can take this up before he

10   testifies.  But given the fact that other witnesses who

11   testified in deposition testimony asserted their Fifth

12   Amendment hundreds of time -- I mean, I think Jenna Ellis

13   asserted the Fifth Amendment 448 times; and Ray Smith, III,

14   309 times.

15             So if Mr. Giuliani is called to testify, is he

16   going to be asserting his Fifth [sic]?

17             MR. SIBLEY:  Well, I certainly wouldn't call him

18   if that's his intention, Your Honor.

19             As of now, I don't believe it's his intention.

20   Obviously, he gave a deposition in this case.

21             THE COURT:  Well, if he were here we could find

22   out.

23             MR. SIBLEY:  I think it's going to be more of a

24   trial strategy issue, Your Honor.

25             THE COURT:  Well, you are pretty definitive, in

```
 1    your joint pretrial statement, that you will call him.

 2            MR. SIBLEY:  That is the plan as of now, Your

 3    Honor.  If that changes -- I will inform plaintiffs' counsel

 4    by the end of the week whether or not we will have this

 5    issue that Her Honor raises with respect to the Fifth

 6    Amendment.

 7            THE COURT:  All right.  Just so you know, on

 8    Friday I have a number of criminal matters.  Friday morning,

 9    if the jury is not at that point deliberating, we're going

10    to start a little bit later on Friday.  So for your witness

11    scheduling purposes, you should just be aware of that.

12            You may sit down, Mr. Sibley.

13            MR. SIBLEY:  I'm sorry, Your Honor.  On Friday?

14            THE COURT:  Friday morning, December 15.

15            MR. SIBLEY:  Of the following week.  I see.

16    Thank you.

17            THE COURT:  Right.

18            Let me just talk to you about the deposition

19    designations.

20            You have listed deposition designations for eight

21    witnesses:  Mr. Kerik, Mr. Smith, Ms. Ellis, Braun -- I

22    don't know if that is a man or woman; Ms. Bobb; Pick.

23            Is Ms. Pick a woman?

24            MR. GOTTLIEB:  Sorry?

25            THE COURT:  Pick is a woman?
```

1          Watson and Branton.

2          MR. GOTTLIEB:  Yes.

3          THE COURT:  So are you planning to present these

4     depositions by videotape?  Are they videotaped depositions?

5          MR. GOTTLIEB:  Yes, Your Honor, they are all

6     videotaped.

7          THE COURT:  So you are just going to play portions

8     of the videotape?

9          MR. GOTTLIEB:  That is correct.

10          THE COURT:  Are you planning on playing parts

11     where Jenna Ellis and Ray Smith are asserting their Fifth?

12     Or are you just going to be presenting parts of the

13     videotaped depositions where there is substantive

14     information being related?

15          MR. GOTTLIEB:  The designations that we have for

16     those witnesses do include assertions of the Fifth because

17     that's, effectively, all they did.  We have obviously tried

18     to narrow those down to very, very small portions of those

19     depositions to cover only the questions that we believe are

20     relevant to the damages quantification issues for the jury.

21     So we have narrowed those considerably, as you can see in

22     the amended pretrial order.  But that is our plan.

23          THE COURT:  Okay.  I just noted someplace in the

24     joint pretrial statement, I guess, that those two witnesses

25     asserted the Fifth.  What about some of the other witnesses

 1    who you have designated to play parts of their depositions?

 2              MR. GOTTLIEB:  I don't believe there are other

 3    assertions of the Fifth apart from those two witnesses.  I

 4    believe that is correct.

 5              THE COURT:  So, Mr. Sibley, are you objecting to

 6    use of any of the deposition designations that the

 7    plaintiffs have put forward in their joint pretrial

 8    statement?

 9              There appear to be no objections noted.

10              You were pretty free with noting an objection when

11    you had one, but I don't want to just assume without

12    clarification.

13              MR. SIBLEY:  We don't, Your Honor, because I

14    think -- I mean, our argument is that the causal

15    relationship between any damages has to be with respect to

16    the conduct complained of in the four corners of the

17    complaint, and so we don't have an objection to them using

18    that testimony.

19              They took the depositions.  I don't think it's

20    particularly helpful to their damages case.  But I just

21    don't think at this point it's worth the Court's time

22    resolving these objections -- any objections that we might

23    have, other than that objection about what the scope of the

24    damages are.

25              THE COURT:  Okay.  We're going to get to that.

1       You have no hearsay objection to their

2   unavailability.  You have got no other objection?

3       I just want to be totally clear because, once they

4   start playing their deposition designations, I want to be

5   clear that I am not going to have to excuse the jury and

6   take up objections that you could pose right now.

7              MR. SIBLEY:  We don't, Your Honor.

8              THE COURT:  Okay.  Good.

9       You are going to communicate that to your client,

10  who is not here when he was supposed to be, so we can be

11  assured that your client is in accord with that decision of

12  yours.

13             MR. SIBLEY:  Yes, Your Honor.

14             THE COURT:  Okay.  Well, you can submit a notice

15  to the Court and to plaintiffs' counsel by noon tomorrow

16  after you confer with your client to make sure that that is

17  correct.  Just keep a running list because, since he is not

18  here as he was supposed to be under court order, you're

19  going to have to confer, and we need that in writing.

20        Okay.  So let me just tell you-all, since none of

21  you have tried a case in front of me before, jury selection

22  will begin at 9.  You can take notes; but I am going to be

23  issuing a final trial order later this week which sets forth

24  the schedule as I am telling you now.

25        I am telling you now.  But that also means:  If

1   you want to react or you have an objection, you have a

2   request, you need to tell me now.

3            I start the jury selection at 9 a.m. on Monday

4   morning.

5            I, generally, have fairly long trial days.  We sit

6   from 9 until 5, 5:15, 5:30, so I don't have to interrupt a

7   witness who is on the stand if it's possible to get the

8   witness off the stand.  We take a short break at about 11 in

9   the morning.  We take a break for lunch at about 12:30; we

10  come back at 1:30, I am quite punctual.  We take a break at

11  about 3 or 2:30, depending on how the afternoon doldrums are

12  sitting with the jury and, then, we'll conclude at about 5,

13  5:30.

14           For lunches -- we have a lot of trials going on in

15  the courthouse, and it was one of our pandemic innovations

16  that we have kept.  You can do online ordering from the

17  cafeteria so that your lunch is waiting for you, rather than

18  you standing in line to have your lunch made, paid for, and

19  so on.  If you want to eat lunch, rather than stand in line

20  at the cafeteria, I would get yourself accounts at the

21  cafeteria.  You can place your orders so it will be ready

22  for pickup by the time you are ready to eat it, and we're

23  ready to take a lunch break.

24           I plan to sit a jury of 8, not 12, and not 6.

25           My final trial order will also lay out how I

1       conduct a voir dire.  I use a version of the struck method.

2       Each side will, of course, receive three peremptory

3       challenges.  I like to do for-cause challenges immediately

4       after the individual voir dire of each juror so that they

5       can then leave the courtroom and proceed with their days.

6              We'll qualify a venire panel of 14, and those 14

7       jurors will be the panel against whom you exercise your

8       peremptories.

9              Any questions about jury selection method?

10             Plaintiffs?

11             Defense?

12             Okay.  For the record, both sides just shook their

13      heads no.

14             All right.  How much time do the plaintiffs need

15      for opening statement?

16             MR. GOTTLIEB:  Your Honor, we'd like to request 45

17      minutes for opening.

18             THE COURT:  And, Mr. Sibley?

19             MR. SIBLEY:  Your Honor, I don't expect we would

20      need quite that long.  I would say 15 to 20 minutes.

21             THE COURT:  All right.  I will give each side 45;

22      I like to be fair that way.

23             Okay.  I do like to caution people so that they're

24      not surprised.  But our court's local Civil Rule 47.1

25      provides that:  If a case settles after potential jurors

1    have been called to the courthouse, the parties will bear

2    the juror costs.  So you should just be aware of that.

3          Now let's turn to the statement of the case.  I

4    always appreciate it when the parties have conferred and

5    have come up with a joint statement of the case.  Thank you,

6    all, for that.

7          Let me just -- I have some questions about it.

8          I think that the statement of the case that the

9    parties proposed uses some words that are a little bit

10   vague, a little bit overly complicated, like "surrogate" and

11   "manifested," I mean.

12         It also puzzled me that it doesn't ever say in the

13   statement of the case that -- when the defendant publicly

14   accused plaintiffs of committing various acts of election

15   fraud, that those accusations were false.  I wondered

16   whether that was on purpose or whether you have an objection

17   to adding a word about that.  Just a thought.

18         MR. GOTTLIEB:  Your Honor, that's an oversight.

19   We certainly would not object to adding the word "false" in

20   the particular sentence that you have identified.

21         THE COURT:  Okay.  So the sentence that the

22   parties proposed, which said:  "Defendant Giuliani publicly

23   accused plaintiffs of committing various acts of election

24   fraud," I will add in "falsely."

25         Okay.  So one sentence reads:  "Defendant Giuliani

1    is the former mayor of New York City and an attorney who has

2    practiced law for decades and a current media personality

3    with his own radio shows and podcasts.

4         "Defendant Giuliani served as a surrogate for

5    former President Donald J. Trump during his unsuccessful bid

6    for reelection in 2020 including, as part of the campaign,

7    to undermine the legitimacy of that election in battleground

8    states, like Georgia."

9         Having just, in the sentence before that, talked

10   about how he was an attorney and a long-time practicing

11   attorney, it struck me as a little bit puzzling to call him

12   a "surrogate" as opposed to what I would suggest, which is

13   to change that "surrogate" sentence -- I am not sure what a

14   surrogate is.  I mean, I know what the definition is.  But

15   in this context I am not sure what that's supposed to mean.

16   We have to be very precise.

17        I would suggest that we change that sentence to

18   read:  "Mr. Giuliani headed the Trump campaign legal team

19   during former President Donald J. Trump's unsuccessful bid

20   for reelection in 2020, and was part of that campaign to

21   undermine the legitimacy of that election in battleground

22   states, like Georgia."

23        So the last clause is what the parties proposed,

24   but I would propose changing it to take out the whole

25   "surrogate" implication and just say what he did.

```
 1              MR. GOTTLIEB:  Your Honor, we don't have any

 2     objection to the way you formulated it.

 3              Just to explain why we used the word "surrogate" --

 4              THE COURT:  You don't have to.

 5              MR. GOTTLIEB:  Okay.

 6              THE COURT:  Mr. Sibley, any objection to changing

 7     the language?

 8              MR. SIBLEY:  No, Your Honor.

 9              THE COURT:  And to adding the word "falsely."

10              MR. SIBLEY:  No objection to that, Your Honor.

11              THE COURT:  Okay.  My last puzzlement was the line

12     that the parties proposed:  "Ms. Freeman and Ms. Moss

13     alleged that Defendant Giuliani's actions have caused them

14     to suffer and continue to suffer extensive emotional

15     reputational harm, including as manifested in profane and

16     vile threats."

17              Okay.  That -- I thought that was a little bit of

18     a strange formulation.

19              So I was going to suggest the following:

20     "Ms. Freeman and Ms. Moss allege that Mr. Giuliani's actions

21     have caused them to suffer and continue to suffer extensive

22     emotional and reputational harm, including because

23     Mr. Giuliani's actions made them targets for profane and

24     vile threats."

25              MR. GOTTLIEB:  Sorry.  I missed the first --
```

1          THE COURT:  "Because Mr. Giuliani's actions made

2     them targets for profane and vile threats."

3          MR. GOTTLIEB:  That's fine.  No objection to that,

4     Your Honor.

5          THE COURT:  Did I capture what you were trying to

6     get at with "manifested"?

7          MR. GOTTLIEB:  You have, Your Honor.  Yes.

8          THE COURT:  Okay.  Mr. Sibley, do you prefer

9     "manifested"?

10          MR. SIBLEY:  I agree with Your Honor's recitation

11     that that is what the plaintiffs are alleging --

12          THE COURT:  Okay.  Then the last sentence that the

13     parties propose states:  "The only issue remaining in this

14     trial will be for a jury to determine how much Defendant

15     Giuliani owes to plaintiffs for the damage his conduct

16     caused."

17          I was going to just change that a little bit

18     simpler to say:  "The only remaining issue in this trial is

19     for the jury to determine any amount of damages Mr. Giuliani

20     owes to plaintiffs for the damage caused by his conduct."

21          Any objection to that from the plaintiffs?

22          MR. GOTTLIEB:  No objection, Your Honor.

23          THE COURT:  Mr. Sibley?

24          MR. SIBLEY:  No objection, Your Honor.

25          THE COURT:  Okay.  Good.  I think, then, with

1    those changes -- I am not going to read this whole

2    statement.  But you will see it in the final trial order as

3    laid out, unless you would like me just to read what it will

4    sound like right now?

5              MR. GOTTLIEB:  We're fine with the way Your

6    Honor --

7              MR. SIBLEY:  That's fine.

8              THE COURT:  All right.  Voir dire.  Again, I

9    always appreciate it when the parties are able to reach

10   agreement on the voir dire questions.

11             Just so you know, when the whole venire panel

12   comes in, I will ask all of the questions collectively to

13   the panel.  They will mark where they have an affirmative

14   answer on the piece of paper; and that's where my focus will

15   be, on the individual follow-up voir dire.  So all of the

16   questions have to be posed in a yes/no responsive format,

17   which most of your questions did do that.

18             A number of the questions I am going to combine so

19   that I can go through this fairly quickly.

20             The parties have proposed 32 questions.  Frankly,

21   I have gotten it down to about 22 so that the collective

22   questions will move along fairly quickly.  I am going to ask

23   about the plaintiffs; I am going to ask about the defendant.

24   But then when it comes to all of the counsel, I am going to

25   ask them all together.

1           Some of the questions that you have asked or

2     proposed I really wanted to hear your reasoning for why you

3     thought it was important in this case.

4           Question 9, which the parties proposed:  Based on

5     the information I have given you about this case, have you

6     heard or read about this case before coming to court today

7     or do you believe you know anything about the facts and

8     circumstances of this case?

9           Now, this is a Washington, D.C. group of citizens.

10    People -- I mean, in my experience, they're generally

11    reading the newspaper -- that will say -- anybody who has

12    ever heard anything about this case -- even though if you

13    drill down, they're not going to know the specifics -- it's

14    just something that they might have heard and not focused

15    on.

16          So I am going to suggest that that question be

17    revised to be more narrowly framed so that I can make sure

18    that anything that they know about the facts or

19    circumstances is not going to, you know, affect their

20    ability to be fair and impartial.

21          Any objection to that?

22          MR. GOTTLIEB:  No objection, Your Honor.  It's

23    fine with us.

24          THE COURT:  Mr. Sibley?

25          MR. SIBLEY:  No, Your Honor.

```
1              THE COURT:  I mean, Mr. Giuliani has been in the

2    public sphere for a very long time.  And I am a little bit

3    concerned with Question 5:  Do you know or have you heard of

4    Mr. Giuliani, because the jurors are going to be as up front

5    and honest as they can be.

6              They're going to say:  I know of him.

7              Is that a no?

8              My experience is that the prospective jurors are

9    not shy about raising their hand and saying:  What about

10   this?

11             Do you have a suggestion to combat that?

12             I could say:  Do you personally know Mr. Giuliani?

13             MR. SIBLEY:  Maybe one suggestion, Your Honor,

14   would be:  Is there anyone here who hasn't heard of

15   Mr. Giuliani?

16             That would probably be a very small group.

17             THE COURT:  That is the source of my concern.

18             MR. GOTTLIEB:  Your Honor, I think "personally

19   know" probably solves this problem.  And the other questions

20   are going to capture, I think, the other concerns we might

21   have.

22             THE COURT:  I think so, too.

23             Mr. Sibley, any objection to putting in

24   "personally"?

25             MR. SIBLEY:  That's fine.
```

1          THE COURT:  Okay.  Good.

2          Then Questions 25 and 26.

3          25, the parties have proposed -- I will go a

4     little bit more in order.

5          You ask case-specific questions, 18 and 19, about

6     whether the prospective jurors earned a college degree or

7     has any children or have any experience working in the

8     communications field including but not limited to working

9     for any social media entity.

10          Why do you need to know that information?

11          What does having a college degree or kids have

12     anything to do with whether they can be a fair and impartial

13     juror?

14          MR. GOTTLIEB:  Your Honor, we don't feel strongly

15     about these questions.

16          THE COURT:  Good.

17          Mr. Sibley?

18          MR. SIBLEY:  I agree with Mr. Gottlieb.

19          THE COURT:  Okay.  I am not going to ask those

20     questions.

21          Experience working in the communications field,

22     including but not limited to working for any social media

23     entity.

24          MR. GOTTLIEB:  Again, Your Honor, depending on how

25     the remaining questions are addressed, we are trying to get

1   at something with that question which is, essentially, a

2   juror's potential involvement and experience with certain

3   types of media that sort of traffic in the conspiracy

4   theories base.  If these other questions are in, I don't

5   think we have any strong view about Question 20.

6            THE COURT:  Okay.  I am not asking that.

7            Mr. Sibley, I should hear from you before I tell

8   you, but --

9            MR. SIBLEY:  That's fine.

10            THE COURT:  -- particularly since -- I will get a

11   yes answer to, certainly, people of a demographic age; they

12   all feel like everything they are doing in work environments

13   has something to do with communications and social media.  I

14   just think that that is not going to get us anywhere in the

15   goal of picking a fair and impartial jury.

16            Question 23 asks:  Do you have any connection with

17   Donald Trump's 2016 or 2020 presidential campaigns?

18            Why do you need to ask that question?

19            MR. GOTTLIEB:  Particularly -- well, I think we

20   feel stronger about the 2020 one than the 2016 one.

21            The reason to ask the connection with the 2020

22   presidential campaign is because the Trump campaign is

23   listed as a coconspirator of the defendant's in this case

24   and, in our view, has been found to be a coconspirator of

25   the defendant's in this case.

1          So to the extent we have people acting on behalf

2     of the campaign, that would be information we would need to

3     know.

4          THE COURT:  Mr. Sibley?

5          MR. SIBLEY:  Your Honor, as I'm thinking about it,

6     it probably makes sense to ask the question:  Was anyone

7     here involved with the 2020 election at all -- probably is a

8     better way to ask the question, as far as like a poll worker

9     or something like that.  That was my understanding --

10          THE COURT:  Well, if I ask that to a D.C. jury

11    everybody is going to check it because they voted.  I mean,

12    I am telling you, they really try and -- you know, they are

13    so careful about trying to be as honest and transparent as

14    possible.

15          So I think I will ask:  Do you have any connection

16    with Donald Trump's 2020 presidential campaign?

17          MR. SIBLEY:  I don't expect that will be too many

18    jurors in this district, Your Honor, so --

19          THE COURT:  Actually, there are a number of jurors

20    who will come forward most likely, particularly if you

21    say -- well, I will ask that.  We'll see what happens.

22          MR. SIBLEY:  I am taking that question as actually

23    involved with the campaign, I mean.  But --

24          THE COURT:  Okay.  Well, then can we narrow it?

25          Instead of:  "Do you have any connection with

1    Donald Trump's 2020 presidential campaign" -- I am going to

2    find out whether they contributed.

3            Do we need to know whether they contributed?  No.

4            How would you narrow that? -- if I am going to ask

5    it at all?

6            MR. GOTTLIEB:  I can suggest, Your Honor -- we're

7    not looking for people who have donated.

8            I would suggest it can be reworded to:  "Were you

9    an employee for, a volunteer for" -- I am trying to think of

10   how to word it.

11           "Employee of, a volunteer for, or otherwise worked

12   in support of Donald Trump's 2020 presidential campaign?"

13           THE COURT:  Well, why don't I just -- "Were you an

14   employee or a volunteer" -- "employee of or a volunteer with

15   Donald Trump's 2020 presidential campaign?"  And I will

16   leave it at that.

17           MR. GOTTLIEB:  Okay, Your Honor.

18           THE COURT:  Is that okay, Mr. Sibley?

19           MR. SIBLEY:  That's fine, Your Honor.

20           THE COURT:  Then 25 and 26 ask -- 25 asks:  Do you

21   rely upon any of the following sources for news:  Fox News,

22   OAN, Newsmax, Gateway Pundit, or the Epoch Times?

23           What are we supposed to be getting at there?

24           MR. GOTTLIEB:  Your Honor, we're trying to

25   identify news sources that trafficked in, essentially, the

1    conspiracy theories that are at the heart of the allegations

2    about the plaintiffs in this case.

3            We have listed those out based on our

4    understanding of those facts as they were developed in

5    discovery in the case.  That's what we're trying to get with

6    Question 25.

7            THE COURT:  But I think we're going to get to -- I

8    don't feel particularly comfortable asking jurors where

9    they're getting their news from because, ultimately, the

10   question is whatever they know about this case or heard

11   about this case can they be fair and impartial.

12           Whether they get their news from any of these

13   places isn't -- to me, just isn't particularly probative of

14   that.  There are so many other questions that are going to

15   flesh out whether they can be fair and impartial.  Let's

16   just focus on the broader issue rather than asking jurors

17   where they get their news --

18           MR. GOTTLIEB:  I understand.

19           THE COURT:  -- and how much -- I mean, do they

20   listen to Fox News, once a week, twice a week, three times a

21   week?

22           They are all going to say:  I have seen Fox News,

23   I just watched a debate between two politicians governors

24   from different states.

25           I am going to get everybody checking that, and

1    it's going to be -- and we're going to sit during voir dire

2    and listen to their recounting of how often, what they last

3    watched, really --

4         MR. GOTTLIEB:  I understand the point, Your Honor.

5         THE COURT:  -- it's going to get to be absurd.

6         MR. GOTTLIEB:  I can suggest one way that we might

7    ask to narrow it that I think would address that concern,

8    which is -- it tailors the questions to the case, which is

9    that OAN, One America News, was originally a defendant in

10   this case.

11        Mr. Sibley has agreed that they're

12   co-conspirators, one of the entities that he says is a

13   coconspirator in the case.  I do think it would be fair to

14   ask if a juror regularly gets their news or regularly

15   watches or consumes news from One America News; that would

16   be relevant information for the jury panel in the case.

17        THE COURT:  Mr. Sibley.

18        MR. SIBLEY:  I agree with that, Your Honor.

19        THE COURT:  I will add a question about OAN.  OAN

20   is not called "OAN" in the general vernacular, right?

21        MR. GOTTLIEB:  They're called One America News or

22   OAN.  They refer to that -- when you see the logo on some of

23   the exhibits in the case, it says "OAN."

24        THE COURT:  I will frame the question as "One

25   America News" or OAN.  Okay.

```
1              Then Question 26 about whether the prospective

2     jurors have ever listened or viewed any of these various

3     podcasts:  Common Sense, Uncovering the Truth, Rudy Giuliani

4     Show, America's Mayor Live, America's Mayor Confidential,

5     The Benny Show, The Joe Pags Show, Steve Bannon's War Room,

6     The Greg Kelly Show or the Andrew Giuliani Show?

7              The purpose of that, if you can just explain to me.

8              MR. GOTTLIEB:  Sure.  These are some of the

9     podcasts or shows that played or replayed some of the

10    defamatory content in the case.  I think we can probably

11    narrow it -- narrow this list a bit down to -- I think, at

12    minimum, we need to ask if jurors are listening to -- I know

13    it's hard to define, if it's ever or with some frequency.

14             What we're trying to get at in the question is:

15    Do you listen to Mr. Giuliani's podcasts or the podcasts

16    that were sort of repeating the false allegations about the

17    plaintiffs during the relevant period of time?

18             THE COURT:  Well, you are asking the question:  Do

19    you have or have you ever followed Mr. Giuliani on social

20    media, including the Twitter/X handle @RudyGiuliani?

21             So why don't I just add to that question some of

22    the things about his podcasts or shows?

23             MR. GOTTLIEB:  I think that would be fine, if the

24    podcasts and radio shows were included in that.

25             THE COURT:  All right.
```

```
 1                    Mr. Sibley?

 2                    MR. SIBLEY:  I am fine with that, Your Honor.

 3                    THE COURT:  And then Questions 27 and 28 ask --

 4      27:  Have you ever used or are you familiar with the phrase

 5      "Let's Go Brandon?"

 6                    What's the purpose of that?

 7                    Isn't everybody familiar with that phrase by now?

 8                    Where are we going with that?

 9                    MR. GOTTLIEB:  I am not sure everyone is.

10                    Your Honor, I am happy to address 27 and 28

11      together because I see your question is the same as to both

12      of them.

13                    THE COURT:  Yes.

14                    MR. GOTTLIEB:  These are designed to get at,

15      essentially, a particular type of language or vernacular

16      that is used by people -- tends to be used by people who

17      traffic in conspiracy theories, including hashtags that are

18      typically applied to some of the threats that have been

19      leveled against our clients in the case.

20                    THE COURT:  What you want to say is:  Do you use

21      the phrase, "Let's Go Brandon?"  Or do you use the phrase

22      from QAnon theory "WWG1WGA"?

23                    But that's not what you are asking.

24                    You are asking:  Do you use or are you familiar

25      with -- a lot of people are familiar with it?
```

```
1              MR. GOTTLIEB:  We would have no objection to

2       taking out the familiarity pieces of the questions.

3              THE COURT:  You still want to know if they have

4       used them?

5              MR. GOTTLIEB:  We would like to know that, Your

6       Honor.

7              THE COURT:  Mr. Sibley, do you want to know that

8       too?

9              MR. SIBLEY:  I don't particularly, Your Honor.  I

10      understand Mr. Gottlieb's concern about trying to identify

11      people who may be predisposed to believing the statements

12      that are at issue here.  I don't have a strong objection to

13      his suggestion to modify that, Your Honor.

14             THE COURT:  All right.

15             So what you want to ask is:  Have you used in your

16      own -- have you ever used the phrase "Let's Go Brandon" or

17      the hashtag -- the term or hashtag "WWG1WGA"?

18             MR. GOTTLIEB:  That would be fine with us, Your

19      Honor, yes.

20             THE COURT:  Okay.

21             No objection to that, Mr. Sibley, just to make

22      sure?

23             MR. SIBLEY:  I have no objection to identifying

24      those two...

25             THE COURT:  Okay.  If a juror raises his or her
```

1  hand -- prospective juror -- and says:  What are those?  I

2  am going to call on one of you to explain it.

3          Question 29 asks:  You have previously been read a

4  list of witnesses to be called in this case.  Do you feel

5  that a witness's status as a current or former public figure

6  or elected official would affect how much or how little you

7  credit their testimony?

8          I have a couple of issues with that question.

9          I will have jurors saying -- asking me:  What's

10  the difference between an elected official and a public

11  figure; is there a difference?

12          I don't really want to get in during voir dire a

13  legal explanation of "public figure" in the context of a

14  defamation case.  So that's one issue with it.  I can go on.

15          Let me just tell you my own proposal, which is:

16          You previously heard the names of people who may

17  testify or about whom you may hear testimony.  Would an

18  individual's status as a current or former elected official

19  make it difficult for you to give the same fair

20  consideration to that individual's testimony as you would to

21  any other individual?

22          MR. GOTTLIEB:  No objection to that, Your Honor.

23          THE COURT:  Mr. Sibley?

24          MR. SIBLEY:  I have no objection to that, Your

25  Honor.

 1            THE COURT:  Okay.  Good.

 2            Okay.  Voir dire, done.  I think we'll be down to

 3    about 22 questions; it will go fairly quickly.

 4            Next, on the preliminary instructions -- just so

 5    you know, the parties I think proposed this.  But my

 6    standard preliminary instructions to a civil jury, I will

 7    actually talk to them about taking notes, the meaning of

 8    certain terms that will be used:  "Sustained," "overruled,"

 9    the names of the parties.

10            I will read to them the statement of the case that

11    we have discussed.  I will talk to them about the burden of

12    proof, the preponderance of the evidence, the different

13    parts of the trial, of the necessity of a unanimous verdict,

14    and there are no alternates.  Since jurors in D.C., between

15    superior court and this court, sit on a number of criminal

16    trials.  I am going to explain that.

17            I am going to talk about the functions of the

18    judge and the jury, the importance of not talking about the

19    case or researching, and so forth.  You all do not have to

20    take up time during your opening statements talking about

21    those general rules.  I will do that in the preliminary

22    instructions.

23            Now, with respect to the preliminary instructions,

24    the defendant has raised three objections to three of the

25    proposed instructions on certain matters already decided,

1    defamation and civil conspiracy; that's as I read the

2    defendant's objections to the proposed preliminary

3    instructions.

4          Mr. Sibley, are those all of your objections to

5    the preliminary instructions or do you have others?

6          MR. SIBLEY:  Yes, Your Honor.

7          The only real objection we have is with respect to

8    the conspiracy issue, the scope of the conspiracy that we

9    have outlined for you.  I don't believe there is going to be

10   any other substantive objection --

11         THE COURT:  Let's just turn to the objections.

12   Let's see if we can get those resolved.

13         Starting with certain matters already decided.

14         As I have looked at your redline version docketed

15   at ECF 105-5, Mr. Sibley --

16         MR. SIBLEY:  Yes, Your Honor.

17         THE COURT:  -- I see that, on certain matters

18   already decided, you object to a single line which reads:

19   It also has been decided that Defendant Giuliani's conduct

20   was willful and that, as a result, plaintiffs also are

21   entitled to punitive damages in addition to compensatory

22   damages.  And you want to strike out, "in addition to

23   compensatory damages."

24         So do you want to explain that objection?

25         MR. SIBLEY:  Well, Your Honor, I think --

```
1              THE COURT:  You want them just to focus on

2      punitives here?

3              MR. SIBLEY:  I think our position was that -- and

4      the Court may have already disposed of this issue, I

5      believe.

6              Our position was that the default judgment

7      basically creates -- if it's defamation per se, it's

8      presumed damages.  So if there is evidence of causation as

9      to some harm entitling them to at least nominal damages.

10              With respect to the IIED, I believe that there has

11     been a causation finding of harm.  So I guess what we're

12     trying to do there is just -- it's not clear that -- it's

13     not clear that the default judgment would entitle them to

14     compensatory damages of any particular amount because that's

15     what nominal damages are for.  So it's really more of a

16     technical --

17              THE COURT:  Right.  But you are not disputing

18     that -- I mean, I think you are going to argue that the only

19     damages the jury should award are nominal damages.  That's

20     what you are going to argue, right?

21              MR. SIBLEY:  With respect to defamation I think --

22              THE COURT:  Right.

23              MR. SIBLEY:  -- that's our argument with respect

24     to --

25              THE COURT:  So nominal damages are some
```

1    compensatory damages, they're just nominal.

2              I didn't really follow how your striking of the

3    "in addition to compensatory damages" was even consistent

4    with your own position.

5              MR. SIBLEY:  I think technically nominal damages

6    are different.  I actually -- I think it's probably okay if

7    we just leave that in there.

8              THE COURT:  Good.

9              So you are withdrawing your objection to "certain

10   matters already decided," so the record is absolutely clear,

11   Mr. Sibley?

12             MR. SIBLEY:  Yes, Your Honor.

13             THE COURT:  Please put that in your notice due

14   tomorrow, that your client has agreed with that so I don't

15   get any backpedaling on that issue.

16             Then to the defamation instruction.  As I

17   understand it, Mr. Sibley, you've raised an objection again

18   to a single line which reads:  The Court's finding that

19   Defendant Giuliani caused harm to Ms. Freeman and Ms. Moss

20   means that they suffered harm as a result of the defamation.

21             You want that to read -- means that you should

22   presume that they suffered some harm as a result of the

23   defamation.

24             So you have two different parts there.  You want

25   to add in, "you should presume that" and you also want to

```
1     add in "some."

2             You want to make it a lot more wordy, and I am not

3     sure what you get for all of those extra words.

4             Why do you need "some"?

5             MR. SIBLEY:  Well, Your Honor --

6             THE COURT:  Is it your intent to try and impress

7     upon them that "some" is a little bit?

8             MR. SIBLEY:  Well, that is what defamation per se

9     does.  There is a presumption of at least some harm, which

10    is why you at least get nominal damages.

11            I am just tracking my understanding of what the

12    law is of defamation per se.  I think that's a better way to

13    word it, given what default judgment --

14            THE COURT:  It's more wordy because you are saying

15    that means that they suffered harm as a result of the

16    defamation without providing an adjective as to the amount

17    or how much.

18            MR. SIBLEY:  That's right.

19            THE COURT:  It's just simpler and less wordy.

20            Now, for all I know, plaintiffs may like to add in

21    the phrase, "you should presume" because that's a really

22    clear direction to the jury that they have got to presume

23    that harm was caused here.  But I don't know.  I will hear

24    from the plaintiffs.  That was your proposal.

25            MR. SIBLEY:  I mean, I think in this context -- in
```

1    the default context that sort of already happened.

2         The Court has already ordered that there is a

3    presumption of harm irrespective of defamation per se.  It's

4    probably -- I think we can withdraw the objection, Your

5    Honor.

6         THE COURT:  Withdraw the objection?

7         MR. SIBLEY:  Yes, Your Honor.

8         THE COURT:  Okay.  So plaintiffs aren't, on second

9    look, wanting to add the phrase, "You should presume they

10   suffered harm," are you?

11        MR. NATHAN:  No, Your Honor.

12        THE COURT:  Okay.  Good.  So that objection is

13   withdrawn.

14        Now we get to the conspiracy instruction where the

15   proposed instruction -- the preliminary part of the trial is

16   only three sentences, as proposed by the plaintiffs.

17        I understand that Mr. Giuliani has objected to one

18   line in the proposed preliminary conspiracy instruction.

19   That line is the first line which reads:  As proposed, the

20   Court has also found that Defendant Giuliani engaged in a

21   civil conspiracy with Donald Trump, Donald Trump's

22   presidential campaign and Donald Trump's legal team to

23   commit the torts of defamation and intentional infliction of

24   emotional distress on or before December 3, 2020.

25        Just so you know, I am going to be calling

1   Mr. Giuliani "Mister," not "defendant" throughout, so

2   you-all are not surprised by that.

3          It's only to that line that you are objecting; is

4   that correct, Mr. Sibley?

5          MR. SIBLEY:  Yes, Your Honor.

6          I mean, the other line in here that says:  All the

7   harm caused by the actions that his coconspirators took in

8   furtherance of the same conspiracy -- I mean, that's

9   technically fine with the way the complaint is worded

10  because there is one actionable statement where they're

11  complaining about former President Trump talking to

12  Secretary Raffensperger.

13         However, again, the real issue here is, A, who are

14  the coconspirators in the complaint, did they adequately --

15  if Giuliani never showed up, would the Court be able to

16  surmise that just on the four corners of the complaint.

17         Regardless of who is in the conspiracy -- maybe

18  they want conspiracy to allow admissions by party opponents,

19  or whatever --

20         THE COURT:  Well, as I understand, you are

21  proposing on behalf of Mr. Giuliani that the coconspirators

22  be listed as:  Donald J. Trump, Christina Bobb, Herring

23  Networks, doing business as One America News Network, OAN,

24  Robert Herring, Charles Herring, and Chanel Rion -- or

25  Rion -- however you say that person's name.

1          So if this line -- instead of doing a little bit

2     more general, as it is in the proposal, have what you think

3     should be listed, you would be fine with it?

4          MR. SIBLEY:  Well, again, it's not -- I wouldn't

5     say we propose that, that's their -- I am trying to reach a

6     sort of compromise.

7          I'm looking at who they complained of specifically

8     in the complaint.  They complained about OAN, they

9     complained about Giuliani making statements on OAN.  So

10    besides President Trump, the other people there are all

11    reporters for OAN.

12         I don't think it really matters at the end of the

13    day, other than maybe admissions by party opponents,

14    et cetera, because the only overt acts that I think they're

15    entitled to recover on are those actionable statements, all

16    of which were made by either Giuliani or Giuliani on OAN

17    and, in one case, President Trump.  I am not sure they

18    really --

19         THE COURT:  Well, you and Mr. Giuliani consented

20    in the motion in limine to define the conspiracy as

21    including former President Trump, his 2020 presidential

22    campaign and members thereof, Herring networks and its

23    owners and employees, and any other members of the

24    conspiracy named in the complaint.

25         MR. SIBLEY:  So that is not true.  We did not --

1     that was not consented to.

2           We consented that whoever are members of the

3     conspiracy, Giuliani can't get up and say:  Well, they're

4     more responsible than me.

5           I guess we should take this opportunity -- I

6     wanted a footnote that made it clear that we're reserving

7     our right to challenge whoever the members of the conspiracy

8     are.  The motion wound up being filed without that.  We had

9     some discussions about it.  I think plaintiffs have agreed

10    they are not going to use that is as some sort of admission

11    that we have agreed about who the coconspirators are.

12          I didn't feel like it needed to be discussed

13    because it's just a limine point.  I don't disagree with the

14    proposition of law that you can't point to other

15    coconspirators and say they're more responsible, whoever the

16    Court winds up deciding who that is; but we are not

17    conceding that all of those people are members of the

18    conspiracy.

19          THE COURT:  So with respect to the line that is in

20    this proposal which names Donald Trump, you don't disagree

21    with that?

22          No objection to putting Donald Trump in here?

23          MR. SIBLEY:  Not -- based on the pleading, I agree

24    that's appropriate.

25          THE COURT:  And you object to Donald Trump's

```
 1    presidential campaign; is that right?

 2              MR. SIBLEY:  Yes.

 3              THE COURT:  And you object to Donald Trump's legal

 4    team?

 5              MR. SIBLEY:  Yes.

 6              THE COURT:  Even though the defendant admits that

 7    he headed the Trump campaign legal team and he was making

 8    these statements in connection with his work on that

 9    campaign and on the legal team?

10              MR. SIBLEY:  That's correct, Your Honor.  However,

11    I am tying the conspiracy to the pleaded overt acts.

12              THE COURT:  Okay.  Well, let's tie it to that

13    because the amended complaint spends a lot of time talking

14    about the strategic communications plan that was generated

15    by the Trump campaign legal team.  In fact, it's styled --

16    it's authored by the presidential legal defense team.  So

17    that's tied to the complaint, if you are going to tie it to

18    the complaint.

19              So why doesn't that do it? -- to add in the

20    Trump -- Donald Trump's legal team?

21              And since that legal team was doing work on behalf

22    of Donald Trump's campaign, why doesn't that make it clear

23    from the amended complaint that it was about Donald Trump's

24    presidential campaign?

25              I mean, I don't even understand -- even accepting,
```

1    to a certain extent, what your objection is that it has to

2    be tied to the amended complaint, I just don't get it.  It

3    is tied to the amended complaint, both Donald Trump's

4    conversation, the Georgia Secretary of State, which is in

5    the amended complaint.

6           And you concede that does it; that Donald Trump's

7    legal team, which is the author of the strategic plan that

8    the amended complaint spends a number of paragraphs talking

9    about, and Mr. Giuliani admits he was head of that legal

10   team.  And then it's clear from the entire amended complaint

11   that this was an effort as part of the Donald Trump 2020

12   presidential campaign.  So that is replete through the

13   amended complaint.

14          So to the extent that you are posing an objection

15   about any reference as to membership in the civil conspiracy

16   being tied to the amended complaint, I just don't understand

17   what the basis is for your objection to this.

18          MR. SIBLEY:  My reading of the pleading is that

19   that strategic communication plan is somehow some evidence

20   of a conspiracy.  I don't believe they're actually

21   complaining about that document and the dissemination of

22   that document because that document was internal to people

23   in the Trump campaign.

24          How is that -- what's the defamation damages or

25   intentional infliction of emotional distress there,

1    right? -- because that never came out until a long time

2    after it was circulated.

3          It might be evidence of a conspiracy but the

4    conspiracy -- Giuliani can only be held liable for the overt

5    acts of the conspiracy.  And there is no overt act that they

6    pointed to by anyone other than Donald Trump or OAN, or

7    Giuliani.  That's why I think we have to reign that in with

8    respect to the jury instruction.

9          THE COURT:  The strategic plan mentions one of the

10   plaintiffs by name as to how they were going to use that as

11   a communication strategy to undermine the electorates'

12   confidence in our -- the validity of the 2020 presidential

13   election.

14          This is going into weirdness land, Mr. Sibley, in

15   terms of what you are expecting because you certainly aren't

16   expecting, in the preliminary instruction, for me to add in

17   all the names of every single person who was on Giuliani's

18   presidential legal team, are you?

19          MR. SIBLEY:  I am not.  I mean, I don't think the

20   complaint actually adequately pleads conspiracy.

21          THE COURT:  Yes.  You want to relitigate your

22   motion to dismiss.  That's not happening; I am telling you

23   right now.

24          MR. SIBLEY:  I understand that.

25          I am simply saying that those particular

1      individuals I think -- I am trying to -- this is a matter of

2      compromise.

3              Even the strategic communication plan, Your

4      Honor -- what is tortious about that?

5              What is independently tortious about disseminating

6      a document that says "We think this is evidence of election

7      fraud, we should use it"?

8              THE COURT:  You may sit down, Mr. Sibley.

9              I will hear from the plaintiffs.

10             MR. GOTTLIEB:  Thank you, Your Honor.

11             I think Your Honor has identified many of the

12     points that I would make in response to this, a few that I

13     would add.

14             The first is that the Court's motion to dismiss

15     decision, at page 7, expressly defined the conspiracy to --

16     as adequately pleaded and alleged in the complaint to

17     include Giuliani and members of the Trump campaign.  That

18     was based off of allegations in the complaint that clearly

19     discussed the Trump campaign and members of the Trump

20     campaign as being integrated with the Giuliani legal team

21     and working in concert with the Giuliani legal team.

22             Those were not just assertions, bald assertions.

23     We made factual allegations based on documents including

24     factual allegations about how Giuliani was not an employee

25     of the White House.  He was an attorney -- he was working on

1    behalf of the campaign to further its objectives.

2         We alleged in the complaint that those efforts

3    began as early as December 3rd and potentially before.

4    Discovery actually showed us it was in the works long before

5    that.  But those allegations include things that appear

6    throughout the strategic communications plan.

7         And I think the strategic communications plan does

8    two things.  One, it is itself defamatory because it was

9    published to a third party without privilege, and it

10   contains false information that we have alleged satisfy the

11   actual malice standard.  Your Honor has already --

12        THE COURT:  It was published to which third party?

13        MR. GOTTLIEB:  It was sent to the White House and

14   it was sent through an entire network of people that were --

15   to execute it.  We actually will present evidence at trial

16   of when specifically it was sent to Chief of Staff Mark

17   Meadows, at the White House, on two consecutive days; first

18   by Mr. Giuliani, second by Mr. Kerik.  And that is

19   evidence that we will present --

20        THE COURT:  Was it also sent to members of

21   Congress?

22        MR. GOTTLIEB:  I don't think we have specific

23   evidence about whether this plan was sent to members of

24   Congress.  But what we do know is that -- we also alleged

25   that the factual allegations, the sort of substantive

1    allegations about our clients in the complaint were

2    disseminated widely; they were designed to be disseminated

3    widely.

4              That -- for example, I think it's page 10 of the

5    strategic communications plan talks about how they're going

6    to disseminate their messaging through presidential tweets,

7    Giuliani team tweets, talk radio, conservative bloggers,

8    YouTube influencers, social media influencers, et cetera,

9    et cetera, Trump campaign volunteers, lawyers for Trump,

10   members, and the like.

11             What we are proposing to present through the

12   disclosed report of Dr. Humphreys is a quantification of the

13   dissemination of those precise statements, the bullet points

14   that appear about our clients in the strategic

15   communications plan.  The bullet points --

16             THE COURT:  Let's turn to Dr. Humphreys' report

17   because I haven't seen it.  So I actually just know based on

18   the descriptions, different documents -- there's been a lot

19   of documents floating back and forth in connection with this

20   case -- that Dr. Humphreys is some kind of expert which

21   we'll get to in a second; and that this report is to support

22   the plaintiff's claim for damages?  Is that right?

23             MR. GOTTLIEB:  That is correct, Your Honor.

24             THE COURT:  And so in her report is she

25   documenting people who distributed defamatory statements

1    other than Rudy Giuliani?

2         MR. GOTTLIEB:  Yes.  I will explain to you what

3    Dr. Humphreys does.

4         Dr. Humphreys takes the actionable statements in

5    the complaint and, then, she also looks at what we call

6    emotional distress statements in the case.

7         We concede defamation in this case can't go before

8    December 23rd; that's the statute of limitations date.  But

9    we have always argued from the start that intentional

10   infliction of emotional distress has a different statute of

11   limitations; started as early as December 3rd.

12        Dr. Humphreys is quantifying damages appropriate

13   for what the standard for determining what emotional

14   distress is and determining factors for punitive damages and

15   presumed damages for two sort of different categories of

16   time.  She has a quantification for both the actionable --

17   what we call the "actionable statements" that are listed --

18        THE COURT:  Do the plaintiffs agree with the 12

19   actionable statements that Mr. Sibley summarized in his

20   response to one of my minute orders?

21        MR. GOTTLIEB:  We agree that there are 12

22   statements called "actionable statements" listed in the

23   complaint.  We disagree that those are the only statements

24   that the plaintiffs are entitled to recover damages based

25   on.  And I'm happy to go into why we disagree with that.

1          THE COURT:  You are talking about the --

2    specifically, the December 9th and 10th statements?

3          MR. GOTTLIEB:  No.

4          THE COURT:  Are you excluding those from both the

5    claim of damages for IIED and defamation?

6          MR. GOTTLIEB:  No.  Statements prior to

7    December 23rd, we believe we are entitled to claim damages

8    under an IIED theory.  We believe that that theory is the

9    course of conduct that Defendant Giuliani engaged in to

10   target -- to dox, to make our clients notorious and infamous

11   throughout that period of time.  That does not require each

12   element of proof of defamation for each specific statement.

13   We're able to demonstrate what is a reasonably foreseeable

14   outcome of the conduct in which Defendant Giuliani gave for

15   which this Court has already found the element of causation

16   satisfied.

17          Dr. Humphreys quantifies statements during that

18   period of time by quantifying the number of impressions, so

19   how the information is spread across traditional and social

20   media channels, and providing an estimate of how many

21   impressions were caused by this sort of core of false,

22   malicious statements about our clients during that period of

23   time.  For the --

24          THE COURT:  Well, I mean, this debate that spills

25   over into other issues and objections that Mr. Giuliani has

1      raised is not just about who is the member of the

2      conspiracy.  I am trying to figure out why are you fighting

3      over that so much?

4              I mean, you have got 12 actionable statements.

5      Those 12 actionable statements that are listed in the

6      amended complaint got disseminated all over the place

7      according to my understanding of what Dr. Humphreys' report

8      is going to say.  So why do you care who else is in the

9      civil conspiracy other than OAN or the legal team?

10             And the only reason I can puzzle over for why you

11     care so much or why you are disputing this is because

12     Dr. Humphreys' report is looking at other members, specific

13     named members of this legal team.  And I think in the

14     deposition it talks about Christina Bobb, Ellis, Toensing,

15     diGenova, Epshteyn, Sidney Powell, Phil Waldron -- all of

16     these other people who were part of Giuliani's legal team

17     during this time -- and I am presuming, assuming, or

18     thinking that perhaps Dr. Humphreys' report is looking at

19     the dissemination of these actionable statements by all of

20     these other people.

21             Is that why you care so much or not?

22             Because if that's not what Dr. Humphreys' report

23     says, why are we having this big debate over who is a member

24     of the civil conspiracy?

25             MR. GOTTLIEB:  So, Your Honor, I don't think that

1    is the reason.

2            One of the points we made in our briefing was that

3    we don't understand precisely what it is that Mr. Giuliani

4    is objecting to that Dr. Humphreys proposes to testify about

5    that is somehow outside of the pleadings or goes too far

6    beyond it.  He has not identified specifically what those

7    things are.

8            We do, in the pretrial statement, list out what --

9    the statements that we intend to rely upon, and those

10    include the 12 that Mr. Sibley has identified.  Then there

11    are additional statements; this is at pages 18 through 19.

12            THE COURT:  I have it.  But I haven't gone through

13    to say:  This is in the amended complaint, this is not in

14    the amended complaint.  And I don't think your listing tells

15    me which are and which are not in the amended complaint

16    among those 12.

17            MR. SIBLEY:  Right.  So the two -- at page 18, the

18    two first statements listed under "conspiracy liability" are

19    not specifically pleaded --

20            THE COURT:  This is on page 18?

21            MR. GOTTLIEB:  Yes.

22            THE COURT:  One is the December 23, 2020, Rudy

23    Giuliani, "Christmas is not canceled."  That is one of the

24    statements in the amended complaint; isn't it?

25            I think it is.

```
 1                  MR. GOTTLIEB:  I'm sorry.  I am on page --

 2                  THE COURT:  I am looking at your most recent

 3        filing from last evening.

 4                  Catch up with yourself, Mr. Gottlieb.

 5                  MR. GOTTLIEB:  I apologize, Your Honor.  I will

 6        get there if you give me one moment.

 7                  THE COURT:  It's still pages 18, 19 of, now,

 8        115-3.

 9                  MR. GOTTLIEB:  So the pages have changed.  I am

10        looking at page 21.

11                  I apologize for that, Your Honor.

12                  THE COURT:  That's all right.

13                  MR. GOTTLIEB:  So the two first statements that

14        are listed under "conspiracy liability" are Team Trump

15        advertisements.

16                  These are not specifically listed in the amended

17        complaint as what the 12 actionable statements -- they were

18        disclosed in Dr. Humphreys' opening expert report that was

19        served in July to Defendant Giuliani as statements on which

20        we would be seeking damages.

21                  They are also plainly quantification of the reach

22        of the actual statements that were in the strategic

23        communications plan.  In other words, the strategic

24        communications plan says:  We need to say these things about

25        Ruby Freeman and Shaye Moss in Georgia, and we need to do
```

1    that through Trump Team tweets and presidential tweets.

2    These are Trump Team tweets.  And Dr. Humphreys' report also

3    quantifies President Trump retweeting these same tweets.  So

4    our argument is that all of these statements are

5    quantifications of the defamatory content that exists within

6    the strategic communications plan.

7              THE COURT:  Okay.  Other than those two tweets, is

8    everything else in the amended complaint?

9              MR. GOTTLIEB:  Everything else in the pretrial?

10             I believe so, Your Honor.

11             There are two additional tweets that are in

12   Dr. Humphreys' report that go into her quantification of

13   defamation damages that are Mr. Giuliani's tweets that

14   weren't originally -- individually listed out in the amended

15   complaint, again, disclosed to Mr. Sibley in that July

16   report.

17             THE COURT:  When you say "July," we're talking

18   July 2022?

19             MR. GOTTLIEB:  July of this year.

20             THE COURT:  July of 2023.

21             MR. GOTTLIEB:  Yes.  Our opening expert report was

22   disclosed to Mr. Giuliani.

23             THE COURT:  I know you have turned over two

24   Humphreys' reports; one was in July of 2023.  When was the

25   other one?

```
 1                    MR. GOTTLIEB:  There are actually three, Your

 2      Honor.

 3                    THE COURT:  Three.

 4                    MR. GOTTLIEB:  A supplemental report was delivered

 5      in October.  That report --

 6                    THE COURT:  Of 2023?

 7                    MR. GOTTLIEB:  Yes, Your Honor.

 8                    THE COURT:  I mean, because there are some

 9      references to Dr. Humphreys' reports and, quite frankly, it

10      didn't give me the year.  I had no idea.  Are we talking

11      2022?  Are we talking 2023?

12                    MR. GOTTLIEB:  I apologize for that.

13                    THE COURT:  All you said was the reports were

14      turned over before the August 30, 2023, default judgment

15      decision.

16                    MR. GOTTLIEB:  The first one was, Your Honor.  The

17      first one was.

18                    And that's really our main point, is that -- we

19      think that what Mr. Sibley is objecting to are these two

20      Team Trump tweets because they are quantified in

21      Dr. Humphreys' reports; we don't know for sure.

22                    Our response to that is -- first of all, these

23      were disclosed to you prior to your default.  So when you

24      made the decision to default you had notice, which is the

25      touchstone for all of the case law on these default judgment
```

1    cases.  You had notice of what our damages claim was with

2    specificity -- the precise tweets, the precise

3    quantifications of the number of people who saw them, and

4    the exact dollar amount that we would be claiming in

5    defamations attributable to those statements.

6          Even if you disagreed with us on that, our

7    argument is these can be viewed as actionable statements

8    that can be viewed as quantification of the statements that

9    are in the strategic communications plan.

10         Even if you disagreed with us on all of that, we

11   are entitled to presumed damages in this case.  Presumed

12   damages has a relaxed standard.  One of the things that the

13   jury is supposed to consider, as laid out in the proposed

14   jury instruction, is the extent of the reach of the

15   statements.

16         Everything Dr. Humphreys is doing is very clearly

17   measuring the extent of the reach of the defamatory

18   statements.  And, sure, we have a burden --

19         THE COURT:  And Dr. Humphreys relies on these two

20   Team Trump tweets and also two additional Giuliani tweets.

21   When were those Giuliani tweets?

22         MR. GOTTLIEB:  Those were -- if you give me a

23   minute, I can find precise dates.

24         It may take me a minute to find them, Your Honor.

25         THE COURT:  On your exhibit list?

 1              MR. GOTTLIEB:  Yes.  They are on our exhibit list.

 2              THE COURT:  Well, why don't we get the exhibit

 3     numbers because I don't think there is any objection made by

 4     Mr. Sibley to any of the Rudy Giuliani tweets on the exhibit

 5     list.

 6              MR. GOTTLIEB:  If you will give us a minute we

 7     will track it down, Your Honor.

 8              THE COURT:  Okay.  If you are done, let me just

 9     hear from Mr. Sibley while you are doing that.

10              Mr. Sibley, is this basically it?  You are

11     objecting to four different tweets that Dr Humphreys relied

12     on in her report, these two Team Trumps and these two

13     additional Giuliani tweets?

14              MR. SIBLEY:  Sure.  So what she did was she went

15     out and found tweets and statements that she could find a

16     higher hit rate on and, then, wanted to tie those to

17     Mr. Giuliani.  But, Your Honor, this isn't default on

18     disclosed expert opinions; this is default on the pleadings.

19              They should have asked for leave to amend

20     timely -- the Court made it clear that pretrial motions were

21     to be filed, I believe, in September.  So that should have

22     been done.

23              We can't be defaulted on things that were not in

24     the pleadings that they intend to prove at trial because,

25     quite frankly, we would have objected to that.  If they had

1     amended the pleading, we would have been allowed to

2     challenge it by Rule 12 motion, et cetera, et cetera.

3             So, yes, the reason why the members of the

4     conspiracy are important -- it's, actually, not that

5     important.  What is really important is what are the overt

6     acts of the conspiracy that are being complained of?

7     Because, even if these people were members of the

8     conspiracy, the only thing Giuliani can be liable for are

9     the overt acts that are identified in the complaint.

10            No, we didn't object to various tweets that

11    Mr. Giuliani may have issued that may not have been

12    specifically complained of because those would be relevant

13    to the plaintiff's argument for punitive damages, right? --

14    the volume of tweets, and things like that, would be

15    relevant to the damages issue, but not liability.

16            There can't be evidence at this point of

17    liability, right? -- because liability is established by the

18    four corners of the complaint.  That's our position, Your

19    Honor.

20            MR. GOTTLIEB:  Your Honor, I am still searching

21    for the exhibit numbers.  I have the dates of the tweets.

22            The dates of the tweets are December 30th, 2020,

23    and January 4th, 2021.  These two tweets are on the exhibit

24    list -- not the two Giuliani tweets, but the Team Trump

25    tweets are Plaintiff's Exhibits 336 and 337.

1          Like I said, our argument -- and I think this is

2     fully disclosed in the Humphreys' report to Mr. Giuliani --

3     is that they're merely a quantification of the damages of

4     the injuries that were established by the complaint.  We

5     established causation for certain injuries.

6          One of those injuries that was established in the

7     case was that Defendant Giuliani spread this information

8     around to millions and millions of people.  And what we have

9     to do now is quantify the damages of that spreading around

10    to millions and millions of people; and that is precisely

11    what Dr. Humphreys' report does with these tweets.

12          THE COURT:  All right.  I am going to return to

13    this issue shortly.  But, for now, as to what that first

14    line of the civil conspiracy charge is going to be, I am

15    going to think about that as I go through the rest of the

16    questions that I have for you-all.

17          With respect to stipulations, I appreciate that

18    you-all have reached a number of stipulations.

19          Are you still discussing stipulations or have you

20    pretty much reached the end of stipulations?

21          MS. HOUGHTON-LARSEN:  Good morning, Your Honor.

22          THE COURT:  Just state your name for the record.

23          MS. HOUGHTON-LARSEN:  Annie Houghton-Larsen.

24          So, as you know, our goal was to have the

25    presentation be as efficient and streamlined as possible.

1    So as particular items and issues arise we are still

2    conferring.  You saw the additional stipulations in the

3    amended filing last night.

4           So there could be more than.  But our hope is that

5    the stipulations that we have reached thus far will cover

6    everything.

7           THE COURT:  All right.  Let me just tell you how I

8    like to deal with stipulations with a jury.

9           I do like to have them sort of -- stipulations

10   separately marked -- not a paragraph; but you can group them

11   as you like.

12          I would like to have them admitted into evidence

13   so that the jury can take them back into the jury room

14   during deliberations.

15          MS. HOUGHTON-LARSEN:  The stipulations themselves?

16          THE COURT:  The stipulations themselves as pieces

17   of evidence.

18          MS. HOUGHTON-LARSEN:  Yes.

19          THE COURT:  Because, otherwise, I will have my

20   jurors sitting there trying to write down everything you are

21   saying.

22          I like to say:  Listen, you are going to have this

23   on a piece of paper with you during your deliberations, so

24   you can relax without trying to write down everything that's

25   being read, usually too quickly, by the lawyer when they're

1    putting the stipulation into evidence.

2            I mean, things like stipulations as to

3    authenticity, of course not, but substantive stipulations,

4    if you could just make sure they're in a separate document.

5    Although your exhibit list is very long already -- but a few

6    more numbers, I think, will nonetheless be very helpful to

7    the jury to have these pieces of paper with them during

8    deliberations.

9            MS. HOUGHTON-LARSEN:  Absolutely, Your Honor.

10            And if now is an appropriate time to ask one other

11    question about admission of exhibits.  We previously

12    discussed with opposing counsel being able to batch exhibits

13    at the beginning of each trial day, exhibits that are not

14    objected to and are otherwise agreed to be admissible; and,

15    then, to just be able to present them -- publish them to the

16    jury; speak to the witnesses about them, if that would be

17    all right with Your Honor.

18            THE COURT:  That sounds great.

19            MS. HOUGHTON-LARSEN:  Wonderful, thank you.

20            THE COURT:  Okay.  So I think I am getting towards

21    the end.  I want to talk now about exhibits.

22            Some of the exhibits on the plaintiffs' exhibit

23    list include Court's orders and memoranda opinions.  What

24    exactly are you planning on doing with those, because you

25    are not putting those in front of the jury, right.

1          MS. HOUGHTON-LARSEN:  Your Honor, we did reach a

2     stipulation that we would be able to present anything on the

3     docket as demonstrative evidence.  The idea being that

4     because of the unique posture of this case and the findings

5     that have already been held, and the fact that one of the

6     punitive damages figures is the time and expense of

7     litigation, that certain contexts surrounding previous Court

8     orders would be appropriate for the jury's consideration.

9          But we won't -- I don't believe we will be seeking

10    to actually introduce anything into evidence -- any of that

11    into evidence, beyond showing it as demonstratives.

12          THE COURT:  Okay.  Well, that would be a first.

13          Mr. Sibley.

14          MR. SIBLEY:  Your Honor, the reason why we -- the

15    reason for that is that it's not clear to me -- I mean,

16    there is no playbook on how to deal with this situation that

17    I am aware of.  This is a very uncommon situation.

18          I am going to have a client that is not able to

19    contradict what the Court's orders say.  I don't know quite

20    how else -- I just don't know -- part of the reason why we

21    felt like a jury trial might not be appropriate here,

22    because it's not clear to me how we should do this.  I feel

23    like there has to be some instruction from the Court about

24    this.

25          THE COURT:  I plan to instruct the jury and give

 1   them instructions.

 2          MR. SIBLEY:  I guess the question is:  Does it

 3   need to include the reasons why the Court is instructing the

 4   jury in the sense of --

 5          THE COURT:  No.  I am going to instruct them that

 6   they can't think about anything but what they're instructed

 7   to do, and their task before them.

 8          MR. SIBLEY:  Then I think -- my understanding is

 9   that the Court was going to -- part of the instructions

10   would be -- well, it's not clear to me because I have never

11   been in a situation like this before.

12          I would ask that we limit that, then, to only the

13   basis for the Court's instructions or that the Court has

14   instructed.  The Court has made certain rulings, but not --

15   I am thinking back to our conversations about the

16   stipulation.

17          I think -- well, this was the issue, I think.  On

18   the punitive issue, punitive damages issue -- I guess my

19   question is how will we deal with that situation because the

20   Court is going to instruct as, sort of, sanction,

21   spoliation, or whatever -- I guess I am just not clear how

22   we should proceed in that respect.

23          I understand that it has to be done; but I think

24   we should try to do that as minimally as possible to

25   accomplish what the Court has ruled without unduly

1    prejudicing the client.

2            I am fine with disseminating the Court's rulings

3    to the jury in a way that is not unduly prejudicial.  I

4    think that is, more or less, why we had agreed that we could

5    allow that to come in.  Otherwise, I didn't know how the

6    Court --

7            THE COURT:  Those are the key words, "Rule 403"

8    and "unduly prejudicial," which is why I was surprised to

9    see my court orders and my entire memoranda opinions and my

10   findings on the plaintiff's exhibit list.

11           If you are raising a 403 objection, I get it.

12           I would think that the instructions to the jury

13   about the adverse inferences and the instructions that I am

14   going to give them will do the trick without going into the

15   underlying reasons and excruciating detail as to why I made

16   those findings.

17           MR. SIBLEY:  That was what we did --

18           THE COURT:  But I can't -- Mr. Sibley, you can

19   do -- you can stipulate to what you think is appropriate.  I

20   am not here to protect you from yourself or Mr. Giuliani

21   from himself.

22           You-all have proposed final instructions.  And

23   those instructions, to me, appear to do the trick without

24   putting before the jury 50-plus page memorandum opinions of

25   decisions in excruciating detail which has nothing to do

1    with their task in front of them.

2              MR. SIBLEY:  I want to confer -- if I may confer

3    with counsel after this hearing because we --

4              THE COURT:  Of course.  I love conferral between

5    counsel.  Please proceed to do that.

6              All right.  That was a little bit longer than I

7    had planned to spend on why my Court's order and memorandum

8    opinions were -- Plaintiff's Exhibits 3350 and 51.  A little

9    bit of a surprise answer there.  Perhaps this has given

10   counsel food for thought as to how they are going to deal

11   with those and not put them before the jury.

12             All right.  So there is also the question of the

13   Georgia state reports.  I know that since Mr. Giuliani has

14   been found liable for defamation -- I saw some of these

15   Georgia reports as exhibits, Plaintiff's Exhibit 505,

16   Plaintiff's Exhibit 426.  And I just wondered what the

17   plaintiffs were going to do, if anything, about introducing

18   any evidence of the falsity of Mr. Giuliani's statements.

19             MS. HOUGHTON-LARSEN:  Your Honor, both of the

20   specific exhibits that you asked about were deposition

21   exhibits that were used in the depositions of Frank

22   Braun [sic] --

23             THE COURT:  Exhibit 505?

24             MS. HOUGHTON-LARSEN:  505.

25             THE COURT:  And 426?

```
 1                  MS. HOUGHTON-LARSEN:  Yes.

 2                  THE COURT:  Okay.  Because I have -- Plaintiff's

 3      Exhibit 505 was a Georgia Secretary of State website?

 4                  MS. HOUGHTON-LARSEN:  That's correct.  It's a

 5      printout of a website that was -- a screen grab of a

 6      website.  And it was shown to Frank Braun who is an

 7      investigator for the Secretary of State's office.

 8                  THE COURT:  It was an exhibit at a deposition?

 9                  MS. HOUGHTON-LARSEN:  Correct.

10                  THE COURT:  I see.

11                  MS. HOUGHTON-LARSEN:  So in an effort to be

12      complete -- and perhaps overly complete -- there are the

13      deposition exhibits of those who we are offering

14      designations.

15                  THE COURT:  I see.

16                  MS. HOUGHTON-LARSEN:  Although because we have

17      significantly reduced those, many of these will fall off of

18      the list of what ultimately can be presented, Your Honor.

19                  THE COURT:  I see.  And that's the same with

20      Exhibit 426, which is the Gilbert Hughes' report of

21      investigation --

22                  MS. HOUGHTON-LARSEN:  That's correct, Your Honor.

23      It may be Frances Watson, who is also from the Secretary of

24      State's office.  I'd have to confirm, but it is one of the

25      two of them.
```

1          THE COURT:  Okay.  So what -- those are

2     depositions.  What, if anything, are you going to do to show

3     that the statements were false that Mr. Giuliani made?

4          MS. HOUGHTON-LARSEN:  Well, Your Honor, as we have

5     been discussing, liability has already been decided.

6     However, it's our position, without revealing too much, that

7     the falsity and the knowable falsity in real time does go to

8     the outrageousness of the conduct, which is a punitive

9     damages factor.  I expect there to be very little trial

10    presentation on truth or falsity; but to the extent that

11    there is, it will be for that purpose.

12         THE COURT:  Okay.  And then for Professor

13    Humphreys, I understand that for Professor Humphreys you are

14    going to want her to be certified as an expert under

15    Rule 702 so that she can offer opinion testimony.  Am I

16    correct on that?

17         MR. GOTTLIEB:  Yes, Your Honor.

18         THE COURT:  Let me just interrupt you.  You don't

19    have to move.

20         Mr. Sibley, you are not going to object to her

21    being able to testify as an expert under 702?

22         MR. SIBLEY:  Your Honor, I don't dispute that she

23    is an expert in the field that she's proffered in.

24         THE COURT:  Okay.  Fine.  I just wanted to make

25    that clear since I haven't seen a report.  I don't really

1    know anything about her.  I was, like, where are we going

2    with this Dr. Humphreys?

3              Okay.  I think that's about it.

4              Do you want to say anything else about

5    Dr. Humphreys?  What is her area of specialty?

6              MR. GOTTLIEB:  Dr. Humphreys, she is an expert in

7    the, sort of, intersection of social media and economics.

8    She studies the spread of social media online, how it's

9    quantified, how it's addressed, how reputation can be both

10   changed and remedied when reputations are harmed.

11             THE COURT:  Interesting.  Okay.

12             MR. GOTTLIEB:  I did have, Your Honor, the exhibit

13   numbers for you, if you still want them.

14             THE COURT:  For which?

15             MR. GOTTLIEB:  I'm sorry.  For the two tweets --

16             THE COURT:  Okay.  Fine.

17             MR. GOTTLIEB:  -- the two Giuliani tweets.

18             The December 30th tweet is Plaintiff's

19   Exhibit 349, and the January 4th tweet -- I guess it's a

20   Facebook post, not a tweet, is Plaintiff's Exhibit 368.

21             THE COURT:  Okay.

22             MR. GOTTLIEB:  And then, Your Honor, we did just

23   have one follow-up from before on the jury instructions,

24   which is that to the extent that the Court is going to issue

25   a burden instruction, we would love the opportunity to be

1    able to see and comment on that, if possible.

2            THE COURT:  Well, for -- in your proposed

3    instructions you didn't include a burden instruction.

4            MR. GOTTLIEB:  I don't think we have a separate

5    burden instruction.  I think each -- we thought we were

6    incorporating, I think, burdens within different -- within

7    the different substantive instructions.

8            THE COURT:  Well, by noon tomorrow, why don't you

9    submit a burden instruction?

10            MR. GOTTLIEB:  We will do that, Your Honor.

11            THE COURT:  I mean, generally, for compensatory

12    damages it's preponderance of the evidence.  It's nothing --

13    I mean, if you disagree with that I will be interested to

14    see why.

15            MR. GOTTLIEB:  We will submit --

16            THE COURT:  That's what I was planning.

17            MR. GOTTLIEB:  We will submit --

18            THE COURT:  Mr. Sibley, do you have a view on

19    that?

20            MR. SIBLEY:  We agree, it's preponderance, Your

21    Honor.

22            THE COURT:  Maybe I'm wrong.  I mean, I will look

23    at whatever you want to provide to me about that, but that

24    was what I understood.

25            Okay.  Now let's turn to some of the issues that

1    were raised in the joint pretrial statement to the extent

2    that we haven't already gone over those.  Let me start

3    with --

4                MR. GOTTLIEB:  Your Honor, I apologize.  Would it

5    be possible to have a quick break?

6                THE COURT:  Yes.  My court reporter usually lets

7    me know because I can keep talking --

8                MR. GOTTLIEB:  Thank you.

9                THE COURT:  -- and keep you all here.

10               We'll take a ten-minute break.

11               MR. GOTTLIEB:  Thank you.

12               THE COURT:  Thank you for that, Mr. Gottlieb.

13               (Whereupon, a recess was taken.)

14               THE COURT:  Okay.  So let me just talk for a

15    second about the declaratory and injunctive relief damages,

16    which are on the list in the joint pretrial statement in

17    terms of the outline of the relief plaintiffs are seeking.

18               The joint pretrial statement lists plaintiffs'

19    request for permanent injunctive relief prohibiting

20    Defendant Giuliani and his coconspirators from publishing

21    further defamatory statements concerning Ms. Freeman and

22    Ms. Moss, which is a request that raises some issues that

23    ties into Mr. Sibley's objection about who are all of those

24    coconspirators.

25               If you are asking me to issue an injunction order

1    on penalty of contempt of court as to who isn't allowed to

2    spread these defamatory statements, Mr. Giuliani would be a

3    clear person.  But who are all of the other coconspirators?

4          I sort of need names.  Which goes to Mr. Sibley's

5    point of:  Who is in the civil conspiracy?

6          But, in any event, this was not the type of

7    injunctive relief that was listed in plaintiffs' amended

8    complaint.  Although, that amended complaint does make this

9    umbrella request for such other and further relief that this

10   Court deems just and appropriate.

11         So I really just wanted to have -- not an

12   extensive, but a brief conversation about that request for

13   permanent injunctive relief.

14         I mean, we have got litigation over gag orders

15   going on involving the former President.  I mean, are you

16   trying to have me issue an injunction here about what he can

17   and cannot say?

18         I am a little -- who is talking about this?

19         What are you asking me about here that you didn't

20   have in your amended complaint?

21         MR. GOTTLIEB:  I think to the extent that the

22   request and the statement differs from the prayer for

23   relief, it is simply, essentially, restating the Rule 65C

24   standard, which is:  Other persons who are in active concert

25   or participation with anyone described in Rule 65(d)(2)(A).

1    So we're trying to capture that.

2          I acknowledge that the principal person we are

3    trying to bind by this request is the defendant.  I think

4    that we could define the coconspirators as the Court is

5    defining them or has defined them either in the motion to

6    dismiss standard or elsewhere in the jury instructions, to

7    the extent we are clarifying in those instructions that it

8    includes Defendant Giuliani acting in concert with President

9    Trump, the Trump campaign, officials or --

10          THE COURT:  The Trump campaign from 2020 or 2024?

11          MR. GOTTLIEB:  I don't think we would have a basis

12    for requesting that, Your Honor -- for a 2024 campaign that

13    doesn't have a legal existence.

14          THE COURT:  Well, part of the reason that I wanted

15    to hold off on deciding the first line of the preliminary

16    instruction on civil conspiracy and who is there is because

17    it sort of ties into some of the other issues including this

18    one, on the injunctive relief you are requesting.  And

19    usually with such injunctive relief it's clearly

20    Mr. Giuliani.  But is it anybody else?

21          MR. GOTTLIEB:  Your Honor, I recognize --

22          THE COURT:  Is it everybody who was on his legal

23    team?  Is it the former President?

24          MR. GOTTLIEB:  Your Honor, I recognize the problem

25    that you are zeroing in on.  I think we would be fine --

1      first of all, we had contemplated submitting a proposed

2      order and supporting papers on this following trial.  In

3      doing so --

4                THE COURT:  I appreciate that, and I know that

5      this is not a matter for this jury to decide.  This is a

6      matter -- it's a matter of equitable remedy, it's a matter

7      for the Court to decide.  But in some ways it does tie in to

8      some of the other discussions we have been having about

9      instructions.

10               So I really -- part of my question was really to

11     highlight, you know, some of what Mr. Sibley has been

12     raising as an objection, as to how broad is the civil

13     conspiracy and how well defined is it and who is it that

14     statements -- damages from defamatory statements being made

15     by these other persons are going to be attributed to

16     Mr. Giuliani.

17               In my default judgment decision, I may very well

18     have talked in fairly general terms about the Trump

19     campaign, and so on.  But his point is well taken because it

20     has downstream repercussions for some of the other relief

21     that plaintiffs are asking for.

22               MR. GOTTLIEB:  Your Honor, I think the baseline --

23     so I recognize injunctive relief poses a different set of

24     considerations for this than the trial presentation does.

25               What I would say with respect to the injunctive

1    relief is:  We will happily take this matter under

2    advisement and think about a tailored relief that we would

3    request in our briefing on the matter.

4         For purposes of resolving the issues for trial, I

5    think it's a different question.  And I think, with respect

6    to that, we all agree that, to the extent there are

7    allegations that were well-pleaded allegations in the

8    complaint, they have been deemed as true.  We have

9    identified in those allegations specific members -- specific

10   individuals and entities that were acting in concert with

11   Defendant Giuliani, and that includes the Trump campaign and

12   members of the Trump campaign.  It includes the Giuliani

13   legal team and the individuals that were listed and

14   identified in the strategic communications plan.

15        Outside of that, we don't understand who

16   Mr. Sibley believes --

17        THE COURT:  So those legal team members being the

18   people that both Mr. Giuliani, Mr. Kerik, and Christina Bobb

19   all identified.  And among those names were some -- and I

20   guess, also, Jacki Pick, people associated with --

21        MR. GOTTLIEB:  Yes.

22        THE COURT:  -- the Georgia counsel.

23        MR. GOTTLIEB:  And we identified Ms. Pick in the

24   amended complaint.  We don't think you need to go to

25   discovery to find that she was -- our well-pleaded

1    allegations cover her.

2          We are not sure how the other individuals are

3    relevant for purposes of the presentation of damages at

4    trial in the sense that we don't believe there is anything

5    that Dr. Humphreys is proposing to quantify that is a

6    statement of some individual, like a Christina Bobb tweet or

7    a Jacki Pick radio show, like none of that is being

8    quantified in --

9          THE COURT:  Well, that was part of what I was

10   curious about as we're arguing about this -- or you-all are

11   arguing about it.

12         And there are -- in terms of the dates that you

13   mentioned before, I did have a question about -- I haven't

14   gone through the exhibit list to look at all of the dates.

15   But one of the documents that you provided to the Court -- I

16   think it was an attachment to the plaintiff's consent motion

17   in limine that had an attachment listing a whole bunch of

18   continuing defamatory statements made by Mr. Giuliani from

19   July 25 through October 2 of 2023, to support the statement

20   that you made in that motion that:  "Defendant Giuliani

21   persisted in his long-running campaign even after plaintiffs

22   filed their initial complaint in this case," which is also

23   in the amended complaint, and "even knowing all of the harm

24   he has already caused plaintiffs, he persists to this day."

25         What I don't understand is:  Are those statements

1      that he has made between the period of July 25 through

2      October 2, 2023, that was in that attachment -- are those

3      statements that you are going to be presenting to the jury,

4      number one?

5              And number two, are those statements that

6      Dr. Humphreys has relied on in her expert report to

7      calculate damages?

8              MR. GOTTLIEB:  So to answer your second question

9      first, the answer is no.  Dr. Humphreys has not relied on

10     those statements in calculating damages.

11             To answer your first question, to the extent

12     Mr. Giuliani is testifying, then we believe those statements

13     could be presented to the jury in cross-examination, and

14     they would be directly relevant to the jury's consideration

15     of the punitive damages factors as well as the emotional

16     distress factors, to the extent that the defendant is

17     continuing to publish these statements well after being

18     advised of and informed of their falsity, including after

19     finding -- stipulating to, and a finding of the Court that

20     the statements are false.  To the extent that he's

21     continuing to say these things in public, it goes to both

22     the IIED and punitive damages factors.

23             THE COURT:  Right.  I mean, Mr. Giuliani admitted

24     in his answer that a number of the actionable statements

25     remain on his website, so they are still available today.

1           Is that part of one of your stipulations?  Or are

2    you going to put in his answer to the complaint?

3           How are you going to present that evidence that

4    they are, the statements -- defamatory statements, even

5    those actionable ones in the amended complaint are still

6    available?  And he admitted to that.

7           MR. GOTTLIEB:  Sure.  So as to the statements in

8    the complaint, the parties have a stipulation, I believe,

9    that the allegations from the complaint can be read to the

10   jury, taken as true facts in the case.

11          Any time we have the ability to do that, we will,

12   of course, do that as it streamlines things considerably.

13   There are statements of Mr. Giuliani that the parties have

14   stipulated to the authenticity and admissibility of, that we

15   have put on the exhibit list.  Those we would play.  The

16   ones that are in video form, we would play.

17          With respect to the more recent statements, I

18   believe that those are on the exhibit list.  They are on the

19   exhibit list.  To the extent Mr. Giuliani testifies, there

20   may be video of those statements that we would play and

21   cross-examine him on.

22          THE COURT:  All right.

23          MR. GOTTLIEB:  I apologize, Your Honor.

24          The witness from Jensen Hughes that did the social

25   media threat monitoring also may present some of Defendant

1    Giuliani's continuing statements because part of what they

2    have done is quantify the continuing harm and continuing

3    threats that our clients have faced.  So it's relevant to

4    that presentation.

5             THE COURT:  All right.

6             Mr. Sibley, you don't have to say anything about

7    the injunctive relief that's been requested.  But if you

8    want -- since I have asked plaintiffs about it, if you want

9    to say something about that you are welcome to say whatever

10   you would like now.

11            MR. SIBLEY:  I agree with many of the Court's

12   concerns about it.  I think it's probably most appropriate

13   for posttrial motion or briefing; the same thing with

14   declaratory relief.  I mean, that would be:  Let's see where

15   we are after trial and then -- but that's really all I have

16   to say about that.

17            THE COURT:  Okay.  With respect -- to go back to

18   the definition of conspiracy and who is involved -- I mean,

19   I will say that I viscerally appreciate your comments that

20   we need a definition here so that it's not sort of anybody

21   who might have worked in some role on the 2020 presidential

22   campaign for Donald Trump who may get tagged as a member of

23   the conspiracy in a broadly fashioned way.  So definition is

24   always better when you are defining a conspiracy.

25            But the real problem we have here in this posture

1     is:  We have a defendant who didn't comply with his

2     discovery obligations.  So it's a little bit -- so your

3     position that only people specifically named in the amended

4     complaint can be now pointed to as a member of the civil

5     conspiracy is troubling because -- putting aside the fact

6     that looking at the amended complaint -- Donald Trump's

7     presidential campaign and his legal team might very well

8     meet your qualification that they be named in the amended

9     complaint -- you may dispute that, but I may very well find

10    otherwise.

11          But your general position that they have to be

12    named in this amended complaint and they're stuck with that

13    even for a defendant who completely defaulted on his

14    discovery obligations and preservation of evidence even --

15    like not even production, but preservation as well -- isn't

16    that an open invitation to defendants in any kind of case,

17    not just defamation, just to stop the discovery, hold

18    plaintiffs totally -- only to what they have got in their

19    amended complaint before they have had a full, complete

20    discovery, and limit them to what they can ask for for

21    damages on their claim?

22          MR. GOTTLIEB:  So I would pose that question

23    differently.

24          THE COURT:  I mean, it's a broader -- your

25    position raises some fairly difficult policy arguments

1    that -- whether you want to or not -- make your position --

2    no matter how viscerally attractive, they may be quite

3    problematic.

4          MR. SIBLEY:  I understand the Court's concern

5    about that.  But I would flip it and say:  Why should a

6    defendant who answered and showed up and gave his definition

7    and participated in discovery, not to the Court's standards

8    and the rules of procedure standards -- why should that

9    defendant be placed in a worse position than a defendant

10   that never showed up?

11         Because if he never answered the lawsuit they

12   never would have obtained the evidence that they have that

13   they now claim supports the conspiracy.

14         So what we have is a situation where it's the

15   worst of both worlds.  He has been defaulted on the amended

16   complaint, but now they are claiming -- and the default was

17   because they supposedly had their discovery attempts

18   thwarted.  But apparently not that much because they now

19   claim they have all of this evidence of a conspiracy, all of

20   these other coconspirators that they could have sued, right?

21         Like, why didn't they sue these people who made

22   statements about their client and add them to the lawsuit?

23   They could have done that.

24         What is not fair is defaulting Giuliani --

25         THE COURT:  Well, they did add OAN to the lawsuit;

1    that party settled out, along with the owners and reporters.

2         MR. SIBLEY:  And I have agreed that, for purposes

3    of the conspiracy, they're in.

4         But we can't go out and find everyone who ever

5    said anything about the plaintiffs and had some connection

6    to Giuliani or the Trump legal team, and pin all of that on

7    him because he was defaulted -- Giuliani was defaulted under

8    a theory of recovery that doesn't include those persons'

9    overt acts.  That's the problem.  That's the problem that's

10   outlined in the case that we cited from Delaware.  It cites

11   a Supreme Court case.  I think it's Justice Ginsberg that

12   authored that Supreme Court case where she said:  Look, you

13   can't amend a judgment in a complaint where somebody is

14   automatically liable.  That's a problem.

15        So what we have here is we're amending the

16   complaint based on evidence that they're submitting which

17   would be -- that would be a good argument for why we ought

18   to be able to amend our complaint, right? -- reopen the

19   pleadings and amend the complaint.

20        Although, I think there was some issue with:  Why

21   did they wait so long?  Because they did have this evidence

22   quite some time ago, they could have amended it.

23        Apparently, when Dr. Humphreys authored her

24   report, they could have done it then.  Why not then, right?

25        The Court would have addressed these issues in

1    turn.  We would have filed our responsive pleading and the

2    Court would have made rulings about -- for example, some of

3    these statements that they're complaining of, are they

4    opinion?

5          Are they coconspirators' protected opinion?  Are

6    those even actionable -- we haven't even gotten to whether

7    they're independently liable because they were never

8    pleaded.

9          So I understand the Court's concern about this.

10   But I think the worst concern is pleading -- filing a

11   pleading --

12         THE COURT:  Well, I mean, you're talking very

13   broadly.  We're actually just talking about four tweets; two

14   of them by Rudy Giuliani and two of them by Team Trump,

15   which I presume is the campaign, the 2020 presidential

16   campaign.

17         So we're not talking about, like, a huge volume of

18   other people's statements, we're talking about four

19   additional tweets that were not listed specifically and

20   expressly in the amended complaint.

21         MR. SIBLEY:  That's true.  But I think there was

22   also a lot of -- that's for defamation, reputational injury;

23   that's my understanding of what those are tied to.

24         Now they have this theory of IIED, which is the

25   broader campaign of dissemination of information, Giuliani

1     is, sort of, the patient zero that spread all of this to

2     everyone.

3               THE COURT:  He wasn't, wasn't he?

4               MR. SIBLEY:  I don't know that that is necessarily

5     true.  I mean, Jacki Pick, which is one of the persons

6     mentioned, she is the one who made the presentation for the

7     Georgia Senate, or she was involved in that.  I mean, they

8     didn't sue over that because I think that's probably

9     protected before the Georgia Senate.

10              THE COURT:  She was not involved in a strategic

11    communications plan headed by Rudy Giuliani and signed off

12    on by his presidential legal defense team to use this as a

13    way to undermine people's belief in the legitimacy of the

14    2020 presidential election.  So that is -- whoever testified

15    before the Georgia State committees or bodies is different

16    from the plan.

17              MR. SIBLEY:  I believe Mr. Giuliani testified in

18    his deposition actually that he had never approved that to

19    go to the White House.  I think someone wanted to take that

20    to the White House and get some money to make this thing

21    happen.  It never did.

22              Again, we're beyond the evidence at this point.

23    We are where we are.  The field has been laid based on the

24    pleadings.  I just don't think it's appropriate for the

25    Court to allow any tortious conduct complained of or beyond

1    the complaint to be included as the causal relationship

2    between whatever damages they're claiming and our default

3    position.

4            I think the Court -- I suppose the Court could

5    grant leave to amend and allow them to amend the complaint

6    to add all of this up, but then I think we're back to a

7    nondefault situation if that happens.

8            THE COURT:  All right.  I am going to take that

9    under advisement, in addition with the first line of the

10   preliminary instruction on civil conspiracy, which will also

11   have an impact, I guess, on the final instructions.  But I

12   will decide that as promptly as possible.

13           I am completed with my questions and things that I

14   wanted to review.  Does anybody else want to raise anything

15   before you are all excused?

16           MR. GOTTLIEB:  Your Honor, if I could just say one

17   more point about the discussion you just had with

18   Mr. Sibley.

19           The allegation that there are just these sort of

20   freewheeling statements out there that Dr. Humphreys relies

21   on, it's just not an accurate reflection of her report.

22           THE COURT:  I wouldn't know, I haven't seen her

23   report.

24           MR. GOTTLIEB:  I understand, Your Honor.

25           For the record, I will say in the supplemental

 1   report, which is the report in which Dr. Humphreys

 2   quantifies the pre-December 23rd emotional --

 3            THE COURT:  And the supplemental report was

 4   submitted --

 5            MR. GOTTLIEB:  I believe it was October 6th.

 6            THE COURT:  2023?

 7            MR. GOTTLIEB:  2023.  In that report, Appendix SA

 8   details each and every one of the pre-December 23rd

 9   emotional harm statements.

10            If you go through the list, it's tweet from Rudy

11   Giuliani; tweet from Rudy Giuliani; tweet from Rudy

12   Giuliani; tweet from Rudy Giuliani; tweet from Rudy

13   Giuliani.  There are some tweets from Donald Trump; there

14   are some Facebook posts.

15            I am at Statement 27 now in the chart.  It's all

16   Donald Trump and Rudy Giuliani; statement 29; 31 it still

17   holds.  It's only if you get to the very end of the chart,

18   where there are two or three examples of a news broadcast

19   that was replaying the defamatory content that came from

20   Mr. Giuliani; other examples of the public speeches or

21   public appearances where Mr. Giuliani were present that are

22   specifically mentioned in the amended complaint.

23            So our point is that Mr. Sibley is raising this

24   objection but he is not actually pointing to anything that

25   our witnesses are trying to do or quantify.

1          Of course, he will have the opportunity to

2     cross-examine Dr. Humphreys.  If he believes there is

3     something that she relied upon that isn't -- it doesn't flow

4     naturally from the injuries that are established by the

5     complaint, he will have an opportunity to make that argument

6     in closing.

7          THE COURT:  All right.

8          Mr. Sibley, anything else you want to add?

9          MR. SIBLEY:  Nothing further, Your Honor.

10         THE COURT:  Okay.  I will look forward to your

11    filing tomorrow and from the plaintiffs on the burden of

12    proof.

13         You are all excused.  Thank you.

14         (Whereupon, the proceeding concludes, 12:13 p.m.)

15                      *  *  *  *  *

16                       **CERTIFICATE**

17         I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
      certify that the foregoing constitutes a true and accurate
18    transcript of my stenographic notes, and is a full, true,
      and complete transcript of the proceedings to the best of my
19    ability.

20         This certificate shall be considered null and void
      if the transcript is disassembled and/or photocopied in any
21    manner by any party without authorization of the signatory
      below.

22
          Dated this 8th day of December, 2023.
23
          /s/ Elizabeth Saint-Loth, RPR, FCRR
24        Official Court Reporter

25

1

## /

**/s** [1] - 87:23

## 1

**10** [1] - 49:4
**100** [1] - 1:14
**105-5** [1] - 36:15
**10:08** [1] - 1:5
**10th** [1] - 51:2
**11** [3] - 4:10, 6:22, 16:8
**110263** [1] - 2:4
**1108** [1] - 2:4
**115-3** [1] - 54:8
**12** [9] - 16:24, 50:18, 50:21, 52:4, 52:5, 53:10, 53:16, 54:17, 59:2
**12:13** [1] - 87:14
**12:30** [1] - 16:9
**14** [2] - 17:6
**14th** [1] - 1:18
**15** [2] - 12:14, 17:20
**18** [5] - 25:5, 53:11, 53:17, 53:20, 54:7
**1875** [1] - 1:14
**19** [3] - 25:5, 53:11, 54:7
**1:30** [1] - 16:10

## 2

**2** [2] - 76:19, 77:2
**20** [2] - 17:20, 26:5
**20001** [1] - 2:11
**20006** [1] - 1:14
**2016** [2] - 26:17, 26:20
**202** [1] - 1:15
**2020** [20] - 19:6, 19:20, 26:17, 26:20, 26:21, 27:7, 27:16, 28:1, 28:12, 28:15, 40:24, 42:21, 45:11, 46:12, 53:22, 59:22, 73:10, 79:21, 83:15, 84:14
**2021** [1] - 59:23
**2022** [2] - 55:18, 56:11
**2023** [11] - 1:5, 55:20, 55:24, 56:6, 56:11, 56:14, 76:19, 77:2, 86:6, 86:7, 87:22
**2024** [2] - 73:10, 73:12
**21** [1] - 54:10
**21-3354** [2] - 1:3, 3:3
**22** [2] - 22:21, 35:3
**23** [2] - 26:16, 53:22
**23rd** [4] - 50:8, 51:7, 86:2, 86:8

**25** [7] - 25:2, 25:3, 28:20, 29:6, 76:19, 77:1
**26** [3] - 25:2, 28:20, 31:1
**26(a** [1] - 4:22
**27** [4] - 32:3, 32:4, 32:10, 86:15
**28** [2] - 32:3, 32:10
**29** [2] - 34:3, 86:16
**2:30** [1] - 16:11

## 3

**3** [2] - 16:11, 40:24
**30** [1] - 56:14
**303-1016** [1] - 1:15
**30309** [1] - 1:18
**309** [1] - 11:14
**30th** [2] - 59:22, 69:18
**31** [1] - 86:16
**32** [1] - 22:20
**3350** [1] - 66:8
**336** [1] - 59:25
**337** [1] - 59:25
**349** [1] - 69:19
**368** [1] - 69:20
**3rd** [2] - 48:3, 50:11

## 4

**4** [1] - 4:9
**403** [2] - 65:7, 65:11
**404** [1] - 1:19
**426** [3] - 66:16, 66:25, 67:20
**448** [1] - 11:13
**45** [2] - 17:16, 17:21
**47.1** [1] - 17:24
**4th** [2] - 59:23, 69:19

## 5

**5** [5] - 1:5, 4:23, 16:6, 16:12, 24:3
**50-plus** [1] - 65:24
**505** [4] - 66:15, 66:23, 66:24, 67:3
**51** [1] - 66:8
**555** [1] - 1:22
**5:15** [1] - 16:6
**5:30** [2] - 16:6, 16:13
**5th** [1] - 1:22

## 6

**6** [1] - 16:24
**619-9819** [1] - 1:23
**65(d)(2)(A)** [1] - 72:25
**65C** [1] - 72:23

**6th** [1] - 86:5

## 7

**7** [1] - 47:15
**702** [2] - 68:15, 68:21
**713** [1] - 2:5
**720-8111** [1] - 1:19
**75** [1] - 1:18
**78701** [1] - 2:5

## 8

**8** [1] - 16:24
**8th** [1] - 87:22

## 9

**9** [4] - 15:22, 16:3, 16:6, 23:4
**90013** [1] - 1:22
**919** [1] - 1:23
**966-6789** [1] - 2:5
**9th** [1] - 51:2

## A

**a.m** [2] - 1:5, 16:3
**Aaron** [1] - 3:18
**AARON** [1] - 1:13
**ability** [3] - 23:20, 78:11, 87:19
**able** [10] - 22:9, 41:15, 51:13, 62:12, 62:15, 63:2, 63:18, 68:21, 70:1, 82:18
**absolutely** [2] - 38:10, 62:9
**absurd** [1] - 30:5
**accepting** [1] - 44:25
**accomplish** [1] - 64:25
**accord** [1] - 15:11
**according** [1] - 52:7
**accounts** [1] - 16:20
**accurate** [2] - 85:21, 87:17
**accusations** [1] - 18:15
**accused** [2] - 18:14, 18:23
**acknowledge** [1] - 73:2
**act** [1] - 46:5
**acting** [3] - 27:1, 73:8, 75:10
**Action** [2] - 1:3, 3:3
**actionable** [15] - 41:10, 42:15, 50:4, 50:16, 50:17, 50:19,

50:22, 52:4, 52:5, 52:19, 54:17, 57:7, 77:24, 78:5, 83:6
**actions** [5] - 20:13, 20:20, 20:23, 21:1, 41:7
**active** [1] - 72:24
**acts** [8] - 18:14, 18:23, 42:14, 44:11, 46:5, 59:6, 59:9, 82:9
**actual** [2] - 48:11, 54:22
**add** [18] - 7:14, 8:22, 9:7, 9:9, 18:24, 30:19, 31:21, 38:25, 39:1, 39:20, 40:9, 44:19, 46:16, 47:13, 81:22, 81:25, 85:6, 87:8
**adding** [3] - 18:17, 18:19, 20:9
**addition** [6] - 4:11, 6:25, 36:21, 36:22, 38:3, 85:9
**additional** [6] - 53:11, 55:11, 57:20, 58:13, 61:2, 83:19
**address** [3] - 8:2, 30:7, 32:10
**addressed** [3] - 25:25, 69:9, 82:25
**addressing** [1] - 10:5
**adequately** [3] - 41:14, 46:20, 47:16
**adjective** [1] - 39:16
**admissibility** [1] - 78:14
**admissible** [1] - 62:14
**admission** [2] - 43:10, 62:11
**admissions** [2] - 41:18, 42:13
**admits** [2] - 44:6, 45:9
**admitted** [3] - 61:12, 77:23, 78:6
**adverse** [1] - 65:13
**advertisements** [1] - 54:15
**advised** [1] - 77:18
**advisement** [2] - 75:2, 85:9
**affect** [2] - 23:19, 34:6
**afternoon** [1] - 16:11
**age** [1] - 26:11
**agenda** [2] - 8:22, 9:7
**ago** [1] - 82:22
**agree** [9] - 21:10, 25:18, 30:18, 43:23, 50:18, 50:21, 70:20, 75:6, 79:11

**agreed** [7] - 30:11, 38:14, 43:9, 43:11, 62:14, 65:4, 82:2
**agreement** [1] - 22:10
**aided** [1] - 2:14
**al** [2] - 1:3, 3:3
**allegation** [1] - 85:19
**allegations** [13] - 29:1, 31:16, 47:18, 47:23, 47:24, 48:5, 48:25, 49:1, 75:7, 75:9, 76:1, 78:9
**allege** [1] - 20:20
**alleged** [5] - 20:13, 47:16, 48:2, 48:10, 48:24
**alleging** [1] - 21:11
**allow** [4] - 41:18, 65:5, 84:25, 85:5
**allowed** [2] - 59:1, 72:1
**ALSO** [1] - 2:8
**alternates** [1] - 35:14
**amend** [6] - 58:19, 82:13, 82:18, 82:19, 85:5
**amended** [37] - 8:5, 8:11, 13:22, 44:13, 44:23, 45:2, 45:3, 45:5, 45:8, 45:10, 45:13, 45:16, 52:6, 53:13, 53:14, 53:15, 53:24, 54:16, 55:8, 55:14, 59:1, 61:3, 72:7, 72:8, 72:20, 75:24, 76:23, 78:5, 80:3, 80:6, 80:8, 80:12, 80:19, 81:15, 82:22, 83:20, 86:22
**amending** [1] - 82:15
**Amendment** [3] - 11:12, 11:13, 12:6
**America** [5] - 30:9, 30:15, 30:21, 30:25, 41:23
**America's** [1] - 31:4
**amount** [4] - 21:19, 37:14, 39:16, 57:4
**Andrew** [1] - 31:6
**Angeles** [1] - 1:22
**Annie** [2] - 3:18, 60:23
**ANNIE** [1] - 1:12
**answer** [8] - 22:14, 26:11, 66:9, 77:8, 77:9, 77:11, 77:24, 78:2
**answered** [2] - 81:6, 81:11
**apart** [1] - 14:3
**apologies** [1] - 5:4

**apologize** [6] - 4:25, 54:5, 54:11, 56:12, 71:4, 78:23
**appear** [5] - 4:22, 14:9, 48:5, 49:14, 65:23
**Appearances** [1] - 1:25
**appearances** [1] - 86:21
**APPEARANCES** [2] - 1:10, 2:1
**Appendix** [1] - 86:7
**applied** [1] - 32:18
**appreciate** [5] - 18:4, 22:9, 60:17, 74:4, 79:19
**appropriate** [9] - 43:24, 50:12, 62:10, 63:8, 63:21, 65:19, 72:10, 79:12, 84:24
**approved** [1] - 84:18
**area** [1] - 69:5
**argue** [3] - 9:1, 37:18, 37:20
**argued** [1] - 50:9
**arguing** [2] - 76:10, 76:11
**argument** [8] - 14:14, 37:23, 55:4, 57:7, 59:13, 60:1, 82:17, 87:5
**arguments** [1] - 80:25
**arise** [1] - 61:1
**Ashlee** [1] - 10:12
**aside** [1] - 80:5
**asserted** [3] - 11:11, 11:13, 13:25
**asserting** [2] - 11:11, 13:11
**assertions** [4] - 13:16, 14:3, 47:22
**associated** [1] - 75:20
**assume** [1] - 14:11
**assuming** [1] - 52:17
**assured** [1] - 15:11
**Atlanta** [1] - 1:18
**attachment** [3] - 76:16, 76:17, 77:2
**attempts** [1] - 81:17
**attendance** [2] - 4:11, 6:25
**attorney** [4] - 19:1, 19:10, 19:11, 47:25
**attractive** [1] - 81:2
**attributable** [1] - 57:5
**attributed** [1] - 74:15
**August** [1] - 56:14
**Austin** [1] - 2:5
**authenticity** [2] - 62:3,

78:14
**author** [1] - 45:7
**authored** [3] - 44:16, 82:12, 82:23
**authorization** [1] - 87:21
**automatically** [1] - 82:14
**available** [2] - 77:25, 78:6
**award** [1] - 37:19
**aware** [5] - 5:19, 5:20, 12:11, 18:2, 63:17

**B**

**backpedaling** [1] - 38:15
**bald** [1] - 47:22
**Bannon's** [1] - 31:5
**base** [1] - 26:4
**based** [11] - 4:18, 6:10, 23:4, 29:3, 43:23, 47:18, 47:23, 49:17, 50:24, 82:16, 84:23
**baseline** [1] - 74:22
**basis** [3] - 45:17, 64:13, 73:11
**batch** [1] - 62:12
**battleground** [2] - 19:7, 19:21
**bear** [1] - 18:1
**BEFORE** [1] - 1:8
**began** [1] - 48:3
**begin** [2] - 7:10, 15:22
**beginning** [2] - 5:24, 62:13
**behalf** [6] - 3:9, 3:23, 27:1, 41:21, 44:21, 48:1
**belief** [1] - 84:13
**believes** [2] - 75:16, 87:2
**below** [1] - 87:21
**bench** [1] - 8:20
**Benny** [1] - 31:5
**BERYL** [1] - 1:8
**best** [1] - 87:18
**better** [3] - 27:8, 39:12, 79:24
**between** [7] - 14:15, 29:23, 34:10, 35:14, 66:4, 77:1, 85:2
**beyond** [4] - 53:6, 63:11, 84:22, 84:25
**bid** [2] - 19:5, 19:19
**big** [1] - 52:23
**bind** [1] - 73:3
**bit** [15] - 7:22, 12:10,

18:9, 18:10, 19:11, 20:17, 21:17, 24:2, 25:4, 31:11, 39:7, 42:1, 66:6, 66:9, 80:2
**bloggers** [1] - 49:7
**Bobb** [5] - 12:22, 41:22, 52:14, 75:18, 76:6
**bodies** [1] - 84:15
**box** [1] - 9:14
**Brandon** [3] - 32:5, 32:21, 33:16
**Branton** [1] - 13:1
**Braun** [3] - 12:21, 66:22, 67:6
**break** [6] - 16:8, 16:9, 16:10, 16:23, 71:5, 71:10
**brief** [1] - 72:12
**briefing** [5] - 9:10, 9:25, 53:2, 75:3, 79:13
**briefly** [1] - 8:1
**broad** [1] - 74:12
**broadcast** [1] - 86:18
**broader** [3] - 29:16, 80:24, 83:25
**broadly** [2] - 79:23, 83:13
**bullet** [2] - 49:13, 49:15
**bunch** [1] - 76:17
**burden** [7] - 35:11, 57:18, 69:25, 70:3, 70:5, 70:9, 87:11
**burdens** [1] - 70:6
**business** [1] - 41:23
**busy** [1] - 9:16

**C**

**CA** [1] - 1:22
**cafeteria** [3] - 16:17, 16:20, 16:21
**calculate** [1] - 77:7
**calculating** [1] - 77:10
**Camara** [1] - 2:3
**campaign** [38] - 19:6, 19:18, 19:20, 26:22, 27:2, 27:16, 27:23, 28:1, 28:12, 28:15, 40:22, 42:22, 44:1, 44:7, 44:9, 44:15, 44:22, 44:24, 45:12, 45:23, 47:17, 47:19, 47:20, 48:1, 49:9, 73:9, 73:10, 73:12, 74:19, 75:11, 75:12, 76:21, 79:22, 80:7,

83:15, 83:16, 83:25
**campaigns** [1] - 26:17
**canceled** [1] - 53:23
**cannot** [1] - 72:17
**capture** [3] - 21:5, 24:20, 73:1
**care** [3] - 52:8, 52:11, 52:21
**careful** [1] - 27:13
**case** [57] - 4:9, 4:17, 5:3, 5:22, 5:24, 6:5, 6:17, 7:6, 7:18, 10:12, 11:2, 11:20, 14:20, 15:21, 17:25, 18:3, 18:5, 18:8, 18:13, 23:3, 23:5, 23:6, 23:8, 23:12, 25:5, 26:23, 26:25, 29:2, 29:5, 29:10, 29:11, 30:8, 30:10, 30:13, 30:16, 30:23, 31:10, 32:19, 34:4, 34:14, 35:10, 35:19, 42:17, 49:20, 50:6, 50:7, 56:25, 57:11, 60:7, 63:4, 76:22, 78:10, 80:16, 82:10, 82:11, 82:12
**case-specific** [1] - 25:5
**cases** [1] - 57:1
**catch** [1] - 54:4
**categories** [1] - 50:15
**causal** [2] - 14:14, 85:1
**causation** [4] - 37:8, 37:11, 51:15, 60:5
**caused** [9] - 20:13, 20:21, 21:16, 21:20, 38:19, 39:23, 41:7, 51:21, 76:24
**caution** [1] - 17:23
**certain** [7] - 7:15, 26:2, 35:8, 35:25, 36:13, 36:17, 38:9, 45:1, 60:5, 63:7, 64:14
**certainly** [4] - 11:17, 18:19, 26:11, 46:15
**CERTIFICATE** [1] - 87:16
**certificate** [1] - 87:20
**certified** [1] - 68:14
**certify** [1] - 87:17
**cetera** [5] - 42:14, 49:8, 49:9, 59:2
**challenge** [2] - 43:7, 59:2
**challenges** [2] - 17:3
**Chanel** [1] - 41:24

**change** [3] - 19:13, 19:17, 21:17
**changed** [3] - 8:7, 54:9, 69:10
**changes** [3] - 8:8, 12:3, 22:1
**changing** [2] - 19:24, 20:6
**channels** [1] - 51:20
**charge** [1] - 60:14
**Charles** [1] - 41:24
**chart** [2] - 86:15, 86:17
**check** [1] - 27:11
**checking** [1] - 29:25
**Chief** [1] - 48:16
**chief** [1] - 11:2
**children** [1] - 25:7
**Christina** [4] - 41:22, 52:14, 75:18, 76:6
**Christmas** [1] - 53:23
**circulated** [1] - 46:2
**circumstances** [2] - 23:8, 23:19
**cited** [1] - 82:10
**cites** [1] - 82:10
**citizens** [2] - 9:15, 23:9
**City** [1] - 19:1
**civic** [1] - 9:16
**civil** [12] - 35:6, 36:1, 40:21, 45:15, 52:9, 52:24, 60:14, 72:5, 73:16, 74:12, 80:4, 85:10
**Civil** [3] - 1:3, 3:2, 17:24
**claim** [7] - 49:22, 51:5, 51:7, 57:1, 80:21, 81:13, 81:19
**claiming** [3] - 57:4, 81:16, 85:2
**claims** [1] - 8:7
**clarification** [1] - 14:12
**clarifying** [1] - 73:7
**clause** [1] - 19:23
**clear** [19] - 4:4, 4:7, 4:18, 15:3, 15:5, 37:12, 37:13, 38:10, 39:22, 43:6, 44:22, 45:10, 58:20, 63:15, 63:22, 64:10, 64:21, 68:25, 72:3
**clearly** [3] - 47:18, 57:16, 73:19
**client** [9] - 5:8, 5:10, 15:9, 15:11, 15:16, 38:14, 63:18, 65:1, 81:22

**clients** [6] - 32:19, 49:1, 49:14, 51:10, 51:22, 79:3
**closing** [1] - 87:6
**co** [1] - 30:12
**co-conspirators** [1] - 30:12
**coconspirator** [3] - 26:23, 26:24, 30:13
**coconspirators** [10] - 41:7, 41:14, 41:21, 43:11, 43:15, 71:20, 71:24, 72:3, 73:4, 81:20
**coconspirators'** [1] - 83:5
**collective** [1] - 22:21
**collectively** [1] - 22:12
**college** [2] - 25:6, 25:11
**COLUMBIA** [1] - 1:1
**Columbia** [1] - 9:15
**combat** [1] - 24:11
**combine** [1] - 22:18
**comfortable** [1] - 29:8
**coming** [1] - 23:6
**comment** [1] - 70:1
**comments** [1] - 79:19
**commit** [1] - 40:23
**committees** [1] - 84:15
**committing** [2] - 18:14, 18:23
**Common** [1] - 31:3
**communicate** [1] - 15:9
**communication** [3] - 45:19, 46:11, 47:3
**communications** [14] - 25:8, 25:21, 26:13, 44:14, 48:6, 48:7, 49:5, 49:15, 54:23, 54:24, 55:6, 57:9, 75:14, 84:11
**compensatory** [6] - 36:21, 36:23, 37:14, 38:1, 38:3, 70:11
**complained** [7] - 14:16, 42:7, 42:8, 42:9, 59:6, 59:12, 84:25
**complaining** [3] - 41:11, 45:21, 83:3
**complaint** [62] - 8:11, 14:17, 41:9, 41:14, 41:16, 42:8, 42:24, 44:13, 44:17, 44:18, 44:23, 45:2, 45:3, 45:5, 45:8, 45:10, 45:13, 45:16, 46:20,

47:16, 47:18, 48:2, 49:1, 50:5, 50:23, 52:6, 53:13, 53:14, 53:15, 53:24, 54:17, 55:8, 55:15, 59:9, 59:18, 60:4, 72:8, 72:20, 75:8, 75:24, 76:22, 76:23, 78:2, 78:5, 78:8, 78:9, 80:4, 80:6, 80:9, 80:12, 80:19, 81:16, 82:13, 82:16, 82:18, 82:19, 83:20, 85:1, 85:5, 86:22, 87:5
**complete** [4] - 67:12, 80:19, 87:18
**completed** [1] - 85:13
**completely** [1] - 80:13
**compliance** [1] - 6:20
**complicated** [1] - 18:10
**comply** [1] - 80:1
**compromise** [2] - 42:6, 47:2
**computer** [1] - 2:14
**computer-aided** [1] - 2:14
**CONANT** [1] - 1:12
**concede** [2] - 45:6, 50:7
**conceding** [1] - 43:17
**concern** [6] - 24:17, 30:7, 33:10, 81:4, 83:9, 83:10
**concerned** [1] - 24:3
**concerning** [1] - 71:21
**concerns** [2] - 24:20, 79:12
**concert** [4] - 47:21, 72:24, 73:8, 75:10
**conclude** [1] - 16:12
**concludes** [1] - 87:14
**conduct** [9] - 14:16, 17:1, 21:15, 21:20, 36:19, 51:9, 51:14, 68:8, 84:25
**confer** [4] - 15:16, 15:19, 66:2
**conference** [12] - 4:4, 4:6, 4:10, 4:13, 4:23, 5:9, 5:11, 6:2, 6:24, 7:2, 7:13, 9:22
**CONFERENCE** [1] - 1:8
**conferences** [1] - 5:18
**conferral** [1] - 66:4
**conferred** [1] - 18:4
**conferring** [1] - 61:2
**confidence** [2] - 6:9, 46:12

**Confidential** [1] - 31:4
**confirm** [2] - 7:16, 67:24
**Congress** [2] - 48:21, 48:24
**conjunction** [1] - 6:13
**connection** [7] - 26:16, 26:21, 27:15, 27:25, 44:8, 49:19, 82:5
**consecutive** [1] - 48:17
**consent** [1] - 76:16
**consented** [3] - 42:19, 43:1, 43:2
**conservative** [1] - 49:7
**consider** [1] - 57:13
**considerably** [2] - 13:21, 78:12
**consideration** [3] - 34:20, 63:8, 77:14
**considerations** [1] - 74:24
**considered** [1] - 87:20
**consistent** [1] - 38:3
**conspiracy** [45] - 26:3, 29:1, 32:17, 36:1, 36:8, 40:14, 40:18, 40:21, 41:8, 41:17, 41:18, 42:20, 42:24, 43:3, 43:7, 43:18, 44:11, 45:15, 45:20, 46:3, 46:4, 46:5, 46:20, 47:15, 52:2, 52:9, 52:24, 53:18, 54:14, 59:4, 59:6, 59:8, 60:14, 72:5, 73:16, 74:13, 79:18, 79:23, 79:24, 80:5, 81:13, 81:19, 82:3, 85:10
**conspirators** [1] - 30:12
**constitutes** [1] - 87:17
**consumes** [1] - 30:15
**contains** [1] - 48:10
**contemplated** [1] - 74:1
**contempt** [1] - 72:1
**content** [3] - 31:10, 55:5, 86:19
**contents** [2] - 6:19, 6:23
**context** [4] - 19:15, 34:13, 39:25, 40:1
**contexts** [1] - 63:7
**continue** [2] - 20:14, 20:21
**Continued** [1] - 1:25

**continued** [1] - 2:1
**continuing** [6] - 76:18, 77:17, 77:21, 79:1, 79:2
**contradict** [1] - 63:19
**contributed** [2] - 28:2, 28:3
**conversation** [2] - 45:4, 72:12
**conversations** [1] - 64:15
**convert** [1] - 8:19
**core** [1] - 51:21
**corners** [3] - 14:16, 41:16, 59:18
**correct** [13] - 10:14, 10:24, 11:8, 13:9, 14:4, 15:17, 41:4, 44:10, 49:23, 67:4, 67:9, 67:22, 68:16
**costs** [1] - 18:2
**counsel** [16] - 3:7, 3:14, 4:5, 4:11, 5:13, 6:13, 6:25, 8:25, 12:3, 15:15, 22:24, 62:12, 66:3, 66:5, 66:10, 75:22
**couple** [1] - 34:8
**course** [10] - 5:18, 6:12, 6:14, 10:17, 17:2, 51:9, 62:3, 66:4, 78:12, 87:1
**COURT** [195] - 1:1, 1:9, 3:11, 3:16, 3:21, 3:24, 4:3, 4:20, 5:2, 5:6, 5:21, 5:25, 6:9, 6:14, 6:18, 7:9, 9:3, 9:6, 9:13, 9:24, 10:18, 11:4, 11:9, 11:21, 11:25, 12:7, 12:14, 12:17, 12:25, 13:3, 13:7, 13:10, 13:23, 14:5, 14:25, 15:8, 15:14, 17:18, 17:21, 18:21, 20:4, 20:6, 20:9, 20:11, 21:1, 21:5, 21:8, 21:12, 21:23, 21:25, 22:8, 23:24, 24:1, 24:17, 24:22, 25:1, 25:16, 25:19, 26:6, 26:10, 27:4, 27:10, 27:19, 27:24, 28:13, 28:18, 28:20, 29:7, 29:19, 30:5, 30:17, 30:19, 30:24, 31:18, 31:25, 32:3, 32:13, 32:20, 33:3, 33:7, 33:14, 33:20, 33:25, 34:23, 35:1, 36:11,

36:17, 37:1, 37:17, 37:22, 37:25, 38:8, 38:13, 39:6, 39:14, 39:19, 40:6, 40:8, 40:12, 41:20, 42:19, 43:19, 43:25, 44:3, 44:6, 44:12, 46:9, 46:21, 47:8, 48:12, 48:20, 49:16, 49:24, 50:18, 51:1, 51:4, 51:24, 53:12, 53:20, 53:22, 54:2, 54:7, 54:12, 55:7, 55:17, 55:20, 55:23, 56:3, 56:6, 56:8, 56:13, 57:19, 57:25, 58:2, 58:8, 60:12, 60:22, 61:7, 61:16, 61:19, 62:18, 62:20, 63:12, 63:25, 64:5, 65:7, 65:18, 66:4, 66:23, 66:25, 67:2, 67:8, 67:10, 67:15, 67:19, 68:1, 68:12, 68:18, 68:24, 69:11, 69:14, 69:16, 69:21, 70:2, 70:8, 70:11, 70:16, 70:18, 70:22, 71:6, 71:9, 71:12, 71:14, 73:10, 73:14, 73:22, 74:4, 75:17, 75:22, 76:9, 77:23, 78:22, 79:5, 79:17, 80:24, 81:25, 83:12, 84:3, 84:10, 85:8, 85:22, 86:3, 86:6, 87:7, 87:10
**court** [8] - 6:21, 15:18, 23:6, 35:15, 65:9, 71:6, 72:1
**Court** [34] - 2:10, 2:11, 9:9, 15:15, 37:4, 40:2, 40:20, 41:15, 43:16, 51:15, 58:20, 63:7, 63:23, 64:3, 64:9, 64:13, 64:14, 64:20, 64:25, 65:6, 69:24, 72:10, 73:4, 74:7, 76:15, 77:19, 82:11, 82:12, 82:25, 83:2, 84:25, 85:4, 87:24
**Court's** [12] - 14:21, 38:18, 47:14, 62:23, 63:19, 64:13, 65:2, 66:7, 79:11, 81:4, 81:7, 83:9
**court's** [1] - 17:24
**courthouse** [2] - 16:15, 18:1

**Courtroom** [1] - 4:22
**courtroom** [1] - 17:5
**COURTROOM** [1] - 3:2
**cover** [4] - 7:12, 13:19, 61:5, 76:1
**creates** [1] - 37:7
**credit** [1] - 34:7
**criminal** [2] - 12:8, 35:15
**cross** [3] - 77:13, 78:21, 87:2
**cross-examination** [1] - 77:13
**cross-examine** [2] - 78:21, 87:2
**crowd** [1] - 3:11
**curious** [1] - 76:10
**current** [3] - 19:2, 34:5, 34:18

# D

**D.C** [5] - 1:6, 2:11, 23:9, 27:10, 35:14
**damage** [2] - 21:15, 21:20
**damages** [51] - 8:4, 8:7, 13:20, 14:15, 14:20, 14:24, 21:19, 36:21, 36:22, 36:23, 37:8, 37:9, 37:14, 37:15, 37:19, 37:25, 38:1, 38:3, 38:5, 39:10, 45:24, 49:22, 50:12, 50:14, 50:15, 50:24, 51:5, 51:7, 54:20, 55:13, 57:1, 57:11, 57:12, 59:13, 59:15, 60:3, 60:9, 63:6, 64:18, 68:9, 70:12, 71:15, 74:14, 76:3, 77:7, 77:10, 77:15, 77:22, 80:21, 85:2
**damages-related** [1] - 8:4
**date** [2] - 4:8, 50:8
**Dated** [1] - 87:22
**dates** [5] - 57:23, 59:21, 59:22, 76:12, 76:14
**days** [4] - 10:10, 16:5, 17:5, 48:17
**DC** [1] - 1:14
**deal** [4] - 61:8, 63:16, 64:19, 66:10
**debate** [3] - 29:23, 51:24, 52:23
**decades** [1] - 19:2

**December** [15] - 1:5, 4:23, 12:14, 40:24, 48:3, 50:8, 50:11, 51:2, 51:7, 53:22, 59:22, 69:18, 86:2, 86:8, 87:22
**decide** [3] - 74:5, 74:7, 85:12
**decided** [6] - 35:25, 36:13, 36:18, 36:19, 38:10, 68:5
**deciding** [2] - 43:16, 73:15
**decision** [5] - 15:11, 47:15, 56:15, 56:24, 74:17
**decisions** [1] - 65:25
**declaratory** [3] - 8:9, 71:15, 79:14
**deemed** [1] - 75:8
**deems** [1] - 72:10
**defamation** [20] - 34:14, 36:1, 37:7, 37:21, 38:16, 38:20, 38:23, 39:8, 39:12, 39:16, 40:3, 40:23, 45:24, 50:7, 51:5, 51:12, 55:13, 66:14, 80:17, 83:22
**defamations** [1] - 57:5
**defamatory** [11] - 31:10, 48:8, 49:25, 55:5, 57:17, 71:21, 72:2, 74:14, 76:18, 78:4, 86:19
**default** [13] - 37:6, 37:13, 39:13, 40:1, 56:14, 56:23, 56:24, 56:25, 58:17, 58:18, 74:17, 81:16, 85:2
**defaulted** [5] - 58:23, 80:13, 81:15, 82:7
**defaulting** [1] - 81:24
**Defendant** [16] - 1:6, 18:25, 20:13, 21:14, 36:19, 38:19, 40:20, 51:9, 51:14, 54:19, 60:7, 71:20, 73:8, 75:11, 76:20, 78:25
**defendant** [17] - 3:23, 10:20, 18:13, 18:22, 19:4, 22:23, 30:9, 35:24, 41:1, 44:6, 73:3, 77:16, 80:1, 80:13, 81:6, 81:9
**defendant's** [3] - 26:23, 26:25, 36:2
**defendants** [1] - 80:16
**DEFENSE** [1] - 2:3
**defense** [8] - 7:23,

8:3, 8:14, 8:16, 8:19, 17:11, 44:16, 84:12
**define** [3] - 31:13, 42:20, 73:4
**defined** [3] - 47:15, 73:5, 74:13
**defining** [2] - 73:5, 79:24
**definition** [5] - 19:14, 79:18, 79:20, 79:23, 81:6
**definitive** [1] - 11:25
**degree** [2] - 25:6, 25:11
**Delaware** [1] - 82:10
**deliberating** [1] - 12:9
**deliberations** [3] - 61:14, 61:23, 62:8
**delivered** [1] - 56:4
**Democracy** [2] - 1:21, 3:20
**demographic** [1] - 26:11
**demonstrate** [1] - 51:13
**demonstrative** [1] - 63:3
**demonstratives** [1] - 63:11
**deposition** [13] - 10:17, 10:19, 11:11, 11:20, 12:18, 12:20, 14:6, 15:4, 52:14, 66:20, 67:8, 67:13, 84:18
**depositions** [8] - 13:4, 13:13, 13:19, 14:1, 14:19, 66:21, 68:2
**DEPUTY** [1] - 3:2
**described** [1] - 72:25
**descriptions** [1] - 49:18
**designated** [3] - 10:17, 11:4, 14:1
**designations** [7] - 10:19, 12:19, 12:20, 13:15, 14:6, 15:4, 67:14
**designed** [2] - 32:14, 49:2
**detail** [2] - 65:15, 65:25
**details** [2] - 6:1, 86:8
**determine** [2] - 21:14, 21:19
**determining** [2] - 50:13, 50:14
**developed** [1] - 29:4
**difference** [2] - 34:10, 34:11

**differences** [1] - 8:12
**different** [13] - 29:24, 35:12, 38:6, 38:24, 49:18, 50:10, 50:15, 58:11, 70:6, 70:7, 74:23, 75:5, 84:15
**differently** [1] - 80:23
**differs** [1] - 72:22
**difficult** [2] - 34:19, 80:25
**diGenova** [1] - 52:15
**dire** [10] - 7:19, 7:21, 17:1, 17:4, 22:8, 22:10, 22:15, 30:1, 34:12, 35:2
**directed** [1] - 4:22
**direction** [1] - 39:22
**directly** [1] - 77:14
**disagree** [5] - 43:13, 43:20, 50:23, 50:25, 70:13
**disagreed** [2] - 57:6, 57:10
**disassembled** [1] - 87:20
**disclosed** [7] - 49:12, 54:18, 55:15, 55:22, 56:23, 58:18, 60:2
**discovery** [9] - 29:5, 48:4, 75:25, 80:2, 80:14, 80:17, 80:20, 81:7, 81:17
**discuss** [1] - 7:20
**discussed** [4] - 35:11, 43:12, 47:19, 62:12
**discussing** [2] - 60:19, 68:5
**discussion** [2] - 9:20, 85:17
**discussions** [2] - 43:9, 74:8
**dismiss** [3] - 46:22, 47:14, 73:6
**disposed** [1] - 37:4
**disposes** [1] - 9:9
**dispute** [2] - 68:22, 80:9
**disputing** [2] - 37:17, 52:11
**disseminate** [1] - 49:6
**disseminated** [3] - 49:2, 52:6
**disseminating** [2] - 47:5, 65:2
**dissemination** [4] - 45:21, 49:13, 52:19, 83:25
**distress** [6] - 40:24, 45:25, 50:6, 50:10, 50:14, 77:16

**distributed** [1] - 49:25
**district** [1] - 27:18
**DISTRICT** [3] - 1:1, 1:1, 1:9
**District** [1] - 9:15
**divided** [1] - 9:2
**docket** [1] - 63:3
**docketed** [3] - 4:8, 4:9, 36:14
**document** [5] - 45:21, 45:22, 47:6, 62:4
**documenting** [1] - 49:25
**documents** [4] - 47:23, 49:18, 49:19, 76:15
**doldrums** [1] - 16:11
**dollar** [1] - 57:4
**Donald** [26] - 19:5, 19:19, 26:17, 27:16, 28:1, 28:12, 28:15, 40:21, 40:22, 41:22, 43:20, 43:22, 43:25, 44:3, 44:20, 44:22, 44:23, 45:3, 45:6, 45:11, 46:6, 79:22, 80:6, 86:13, 86:16
**donated** [1] - 28:7
**done** [10] - 8:18, 9:11, 10:4, 35:2, 58:8, 58:22, 64:23, 79:2, 81:23, 82:24
**down** [10] - 12:12, 13:18, 22:21, 23:13, 31:11, 35:2, 47:8, 58:7, 61:20, 61:24
**downstream** [1] - 74:20
**dox** [1] - 51:10
**Dr** [32] - 10:12, 49:12, 49:16, 49:20, 50:3, 50:4, 50:12, 51:17, 52:7, 52:12, 52:18, 52:22, 53:4, 54:18, 55:2, 55:12, 56:9, 56:21, 57:16, 57:19, 58:11, 60:11, 69:2, 69:5, 69:6, 76:5, 77:6, 77:9, 82:23, 85:20, 86:1, 87:2
**drill** [2] - 10:4, 23:13
**DuBose** [4] - 1:17, 1:17, 3:19
**due** [1] - 38:13
**duration** [1] - 4:19
**during** [13] - 7:19, 19:5, 19:19, 30:1, 31:17, 34:12, 35:20, 51:17, 51:22, 52:17, 61:14, 61:23, 62:7

**duty** [1] - 9:16

# E

**early** [3] - 4:9, 48:3, 50:11
**earned** [1] - 25:6
**eat** [2] - 16:19, 16:22
**ECF** [2] - 4:9, 36:15
**economics** [1] - 69:7
**effectively** [1] - 13:17
**efficient** [1] - 60:25
**effort** [2] - 45:11, 67:11
**efforts** [1] - 48:2
**eight** [1] - 12:20
**either** [3] - 5:17, 42:16, 73:5
**elected** [3] - 34:6, 34:10, 34:18
**election** [8] - 18:14, 18:23, 19:7, 19:21, 27:7, 46:13, 47:6, 84:14
**electorates'** [1] - 46:11
**element** [2] - 51:12, 51:15
**Elizabeth** [2] - 2:10, 87:23
**ELIZABETH** [1] - 87:17
**Ellis** [4] - 11:12, 12:21, 13:11, 52:14
**elsewhere** [1] - 73:6
**Email** [4] - 1:15, 1:19, 1:23, 2:6
**emotional** [10] - 20:14, 20:22, 40:24, 45:25, 50:6, 50:10, 50:13, 77:15, 86:2, 86:9
**employee** [5] - 28:9, 28:11, 28:14, 47:24
**employees** [1] - 42:23
**end** [5] - 12:4, 42:12, 60:20, 62:21, 86:17
**engaged** [2] - 40:20, 51:9
**entire** [4] - 6:15, 45:10, 48:14, 65:9
**entities** [2] - 30:12, 75:10
**entitle** [1] - 37:13
**entitled** [5] - 36:21, 42:15, 50:24, 51:7, 57:11
**entitling** [1] - 37:9
**entity** [2] - 25:9, 25:23
**environments** [1] - 26:12

**Epoch** [1] - 28:22
**Epshteyn** [1] - 52:15
**equitable** [1] - 74:6
**essentially** [4] - 26:1, 28:25, 32:15, 72:23
**established** [5] - 59:17, 60:4, 60:5, 60:6, 87:4
**estimate** [1] - 51:20
**et** [7] - 1:3, 3:3, 42:14, 49:8, 49:9, 59:2
**evening** [2] - 8:6, 54:3
**event** [1] - 72:6
**evidence** [25] - 9:17, 35:12, 37:8, 45:19, 46:3, 47:6, 48:15, 48:19, 48:23, 59:16, 61:12, 61:17, 62:1, 63:3, 63:10, 63:11, 66:18, 70:12, 78:3, 80:14, 81:12, 81:19, 82:16, 82:21, 84:22
**evidentiary** [1] - 10:10
**exact** [1] - 57:4
**exactly** [1] - 62:24
**examination** [1] - 77:13
**examine** [2] - 78:21, 87:2
**example** [2] - 49:4, 83:2
**examples** [2] - 86:18, 86:20
**excluding** [1] - 51:4
**excruciating** [2] - 65:15, 65:25
**excuse** [1] - 15:5
**excused** [2] - 85:15, 87:13
**execute** [1] - 48:15
**exercise** [1] - 17:7
**Exhibit** [7] - 66:15, 66:16, 66:23, 67:3, 67:20, 69:19, 69:20
**exhibit** [17] - 7:22, 7:25, 57:25, 58:1, 58:2, 58:4, 59:21, 59:23, 62:5, 62:22, 65:10, 67:8, 69:12, 76:14, 78:15, 78:18, 78:19
**Exhibits** [2] - 59:25, 66:8
**exhibits** [11] - 7:24, 30:23, 62:11, 62:12, 62:13, 62:21, 62:22, 66:15, 66:20, 66:21, 67:13
**existence** [1] - 73:13
**exists** [1] - 55:5

**expect** [3] - 17:19, 27:17, 68:9
**expecting** [3] - 7:16, 46:15, 46:16
**expedited** [1] - 9:25
**expense** [1] - 63:6
**experience** [5] - 23:10, 24:8, 25:7, 25:21, 26:2
**expert** [9] - 49:20, 54:18, 55:21, 58:18, 68:14, 68:21, 68:23, 69:6, 77:6
**explain** [6] - 20:3, 31:7, 34:2, 35:16, 36:24, 50:2
**explanation** [1] - 34:13
**expressly** [2] - 47:15, 83:20
**extensive** [3] - 20:14, 20:21, 72:12
**extent** [16] - 8:17, 27:1, 45:1, 45:14, 57:14, 57:17, 68:10, 69:24, 71:1, 72:21, 73:7, 75:6, 77:11, 77:16, 77:20, 78:19
**extra** [1] - 39:3

# F

**Facebook** [2] - 69:20, 86:14
**faced** [1] - 79:3
**fact** [4] - 11:10, 44:15, 63:5, 80:5
**factor** [1] - 68:9
**factors** [4] - 50:14, 77:15, 77:16, 77:22
**facts** [4] - 23:7, 23:18, 29:4, 78:10
**factual** [4] - 47:23, 47:24, 48:25
**fair** [9] - 17:22, 23:20, 25:12, 26:15, 29:11, 29:15, 30:13, 34:19, 81:24
**fairly** [6] - 16:5, 22:19, 22:22, 35:3, 74:18, 80:25
**fall** [1] - 67:17
**falling** [1] - 5:6
**false** [7] - 18:15, 18:19, 31:16, 48:10, 51:21, 68:3, 77:20
**falsely** [2] - 18:24, 20:9
**falsity** [5] - 66:18, 68:7, 68:10, 77:18

**familiar** [4] - 32:4, 32:7, 32:24, 32:25
**familiarity** [1] - 33:2
**far** [3] - 27:8, 53:5, 61:5
**Farr** [3] - 1:13, 3:9, 3:18
**fashioned** [1] - 79:23
**fault** [3] - 5:7, 5:20, 7:8
**FCRR** [2] - 2:10, 87:17, 87:23
**felt** [1] - 63:21
**few** [2] - 47:12, 62:5
**field** [4] - 25:8, 25:21, 68:23, 84:23
**Fifth** [8] - 11:11, 11:13, 11:16, 12:5, 13:11, 13:16, 13:25, 14:3
**fighting** [1] - 52:2
**figure** [4] - 34:5, 34:11, 34:13, 52:2
**figures** [1] - 63:6
**filed** [5] - 8:6, 43:8, 58:21, 76:22, 83:1
**filing** [4] - 54:3, 61:3, 83:10, 87:11
**final** [6] - 10:6, 15:23, 16:25, 22:2, 65:22, 85:11
**findings** [2] - 63:4, 65:10, 65:16
**fine** [16] - 21:3, 22:5, 22:7, 23:23, 24:25, 26:9, 28:19, 31:23, 32:2, 33:18, 41:9, 42:3, 65:2, 68:24, 69:16, 73:25
**fire** [1] - 10:4
**first** [17] - 3:7, 20:25, 40:19, 47:14, 48:17, 53:18, 54:13, 56:16, 56:17, 56:22, 60:13, 63:12, 73:15, 74:1, 77:9, 77:11, 85:9
**flesh** [1] - 29:15
**flip** [1] - 81:5
**floating** [1] - 49:19
**flow** [1] - 87:3
**focus** [3] - 10:6, 22:14, 29:16, 37:1
**focused** [1] - 23:14
**follow** [3] - 22:15, 38:2, 69:23
**follow-up** [2] - 22:15, 69:23
**followed** [1] - 31:19
**following** [4] - 12:15, 20:19, 28:21, 74:2

**food** [1] - 66:10
**footnote** [1] - 43:6
**FOR** [3] - 1:1, 1:11, 2:3
**for-cause** [1] - 17:3
**foregoing** [1] - 87:17
**foreseeable** [1] - 51:13
**form** [1] - 78:16
**format** [1] - 22:16
**former** [9] - 19:1, 19:5, 19:19, 34:5, 34:18, 41:11, 42:21, 72:15, 73:23
**formulated** [1] - 20:2
**formulation** [1] - 20:18
**forth** [3] - 15:23, 35:19, 49:19
**forward** [4] - 3:5, 14:7, 27:20, 87:10
**four** [8] - 10:10, 10:11, 14:16, 41:16, 58:11, 59:18, 83:13, 83:18
**Fox** [3] - 28:21, 29:20, 29:22
**frame** [1] - 30:24
**framed** [1] - 23:17
**Frances** [1] - 67:23
**Frank** [2] - 66:21, 67:6
**frankly** [3] - 22:20, 56:9, 58:25
**fraud** [3] - 18:15, 18:24, 47:7
**free** [1] - 14:10
**Freeman** [8] - 2:8, 3:3, 3:15, 20:12, 20:20, 38:19, 54:25, 71:21
**FREEMAN** [1] - 1:3
**freewheeling** [1] - 85:20
**frequency** [1] - 31:13
**Friday** [5] - 12:8, 12:10, 12:13, 12:14
**front** [4] - 15:21, 24:4, 62:25, 66:1
**full** [2] - 80:19, 87:18
**fully** [1] - 60:2
**functions** [1] - 35:17
**furtherance** [1] - 41:8

# G

**GA** [1] - 1:18
**gag** [1] - 72:14
**Gallagher** [3] - 1:13, 3:9, 3:19
**Gateway** [1] - 28:22
**general** [5] - 30:20, 35:21, 42:2, 74:18,

6

80:11
**generally** [3] - 16:5, 23:10, 70:11
**generated** [1] - 44:14
**Georgia** [11] - 19:8, 19:22, 45:4, 54:25, 66:13, 66:15, 67:3, 75:22, 84:7, 84:9, 84:15
**Gilbert** [1] - 67:20
**Ginsberg** [1] - 82:11
**Giuliani** [93] - 3:4, 3:24, 5:17, 7:7, 10:22, 11:1, 11:6, 11:7, 11:15, 18:22, 18:25, 19:4, 19:18, 21:15, 21:19, 24:1, 24:4, 24:12, 24:15, 31:3, 31:6, 31:19, 38:19, 40:17, 40:20, 41:1, 41:15, 41:21, 42:9, 42:16, 42:19, 43:3, 45:9, 46:4, 46:7, 47:17, 47:20, 47:21, 47:24, 48:18, 49:7, 50:1, 51:9, 51:14, 51:25, 53:3, 53:23, 54:19, 55:22, 57:20, 57:21, 58:4, 58:13, 58:17, 59:8, 59:11, 59:24, 60:2, 60:7, 65:20, 66:13, 68:3, 69:17, 71:20, 72:2, 73:8, 73:20, 74:16, 75:11, 75:12, 75:18, 76:18, 76:20, 77:12, 77:23, 78:13, 78:19, 81:24, 82:6, 82:7, 83:14, 83:25, 84:11, 84:17, 86:11, 86:12, 86:13, 86:16, 86:20, 86:21
**GIULIANI** [1] - 1:5
**Giuliani's** [11] - 20:13, 20:20, 20:23, 21:1, 31:15, 36:19, 46:17, 52:16, 55:13, 66:18, 79:1
**given** [4] - 11:10, 23:5, 39:13, 66:9
**goal** [2] - 26:15, 60:24
**Gottlieb** [4] - 3:9, 25:18, 54:4, 71:12
**GOTTLIEB** [96] - 1:11, 3:8, 3:12, 3:17, 8:23, 9:5, 10:15, 12:24, 13:2, 13:5, 13:9, 13:15, 14:2, 17:16, 18:18, 20:1, 20:5, 20:25, 21:3, 21:7,

21:22, 22:5, 23:22, 24:18, 25:14, 25:24, 26:19, 28:6, 28:17, 28:24, 29:18, 30:4, 30:6, 30:21, 31:8, 31:23, 32:9, 32:14, 33:1, 33:5, 33:18, 34:22, 47:10, 48:13, 48:22, 49:23, 50:2, 50:21, 51:3, 51:6, 52:25, 53:21, 54:1, 54:5, 54:9, 54:13, 55:9, 55:19, 55:21, 56:1, 56:4, 56:7, 56:12, 56:16, 57:22, 58:1, 58:6, 59:20, 68:17, 69:6, 69:12, 69:15, 69:17, 69:22, 70:4, 70:10, 70:15, 70:17, 71:4, 71:8, 71:11, 72:21, 73:11, 73:21, 73:24, 74:22, 75:21, 75:23, 77:8, 78:7, 78:23, 80:22, 85:16, 85:24, 86:5, 86:7
**Gottlieb's** [1] - 33:10
**governors** [1] - 29:23
**Governski** [1] - 3:17
**GOVERNSKI** [1] - 1:12
**grab** [1] - 67:5
**grant** [1] - 85:5
**great** [1] - 62:18
**Greg** [1] - 31:6
**group** [3] - 23:9, 24:16, 61:10
**guess** [9] - 13:24, 37:11, 43:5, 64:2, 64:18, 64:21, 69:19, 75:20, 85:11

## H

**hand** [2] - 24:9, 34:1
**handle** [1] - 31:20
**happily** [1] - 75:1
**happy** [2] - 32:10, 50:25
**hard** [1] - 31:13
**harm** [16] - 20:15, 20:22, 37:9, 37:11, 38:19, 38:20, 38:22, 39:9, 39:15, 39:23, 40:3, 40:10, 41:7, 76:23, 79:2, 86:9
**harmed** [1] - 69:10
**hashtag** [1] - 33:17
**hashtags** [1] - 32:17
**head** [1] - 45:9

**headed** [3] - 19:18, 44:7, 84:11
**heads** [1] - 17:13
**hear** [6] - 23:2, 26:7, 34:17, 39:23, 47:9, 58:9
**heard** [7] - 23:6, 23:12, 23:14, 24:3, 24:14, 29:10, 34:16
**hearing** [1] - 66:3
**hearings** [2] - 5:17, 5:18
**hearsay** [1] - 15:1
**heart** [1] - 29:1
**held** [2] - 46:4, 63:5
**helpful** [2] - 14:20, 62:6
**hereby** [1] - 87:17
**Herring** [4] - 41:22, 41:24, 42:22
**higher** [1] - 58:16
**highlight** [1] - 74:11
**himself** [2] - 10:20, 65:21
**hit** [1] - 58:16
**hold** [2] - 73:15, 80:17
**holds** [1] - 86:17
**honest** [2] - 24:5, 27:13
**Honor** [114] - 3:2, 3:8, 3:12, 3:22, 4:2, 4:16, 4:25, 5:4, 5:20, 5:24, 6:12, 7:5, 7:8, 8:23, 8:24, 9:5, 9:8, 9:23, 10:15, 10:24, 11:8, 11:18, 11:24, 12:3, 12:5, 12:13, 13:5, 14:13, 15:7, 15:13, 17:16, 17:19, 18:18, 20:1, 20:8, 20:10, 21:4, 21:7, 21:22, 21:24, 22:6, 23:22, 23:25, 24:13, 24:18, 25:14, 25:24, 27:5, 27:18, 28:6, 28:17, 28:19, 28:24, 30:4, 30:18, 32:2, 32:10, 33:6, 33:9, 33:13, 33:19, 34:22, 34:25, 36:6, 36:16, 36:25, 38:12, 39:5, 40:5, 40:7, 40:11, 41:5, 44:10, 47:4, 47:10, 47:11, 48:11, 49:23, 52:25, 54:5, 54:11, 55:10, 56:2, 56:7, 56:16, 57:24, 58:7, 58:17, 59:19, 59:20, 60:21, 62:9, 62:17, 63:1, 63:14, 66:19,

67:18, 67:22, 68:4, 68:17, 68:22, 69:12, 69:22, 70:10, 70:21, 71:4, 73:12, 73:21, 73:24, 74:22, 78:23, 85:16, 85:24, 87:9
**Honor's** [1] - 21:10
**HONORABLE** [1] - 1:8
**hope** [1] - 61:4
**Houghton** [2] - 3:18, 60:23
**HOUGHTON** [17] - 1:12, 60:21, 60:23, 61:15, 61:18, 62:9, 62:19, 63:1, 66:19, 66:24, 67:1, 67:4, 67:9, 67:11, 67:16, 67:22, 68:4
**Houghton-Larsen** [2] - 3:18, 60:23
**HOUGHTON-LARSEN** [17] - 1:12, 60:21, 60:23, 61:15, 61:18, 62:9, 62:19, 63:1, 66:19, 66:24, 67:1, 67:4, 67:9, 67:11, 67:16, 67:22, 68:4
**House** [5] - 47:25, 48:13, 48:17, 84:19, 84:20
**HOWELL** [1] - 1:8
**huge** [1] - 83:17
**Hughes** [1] - 78:24
**Hughes'** [1] - 67:20
**Humphreys** [23] - 10:12, 49:12, 49:20, 50:3, 50:4, 50:12, 51:17, 53:4, 57:16, 57:19, 58:11, 68:13, 69:2, 69:5, 69:6, 76:5, 77:6, 77:9, 82:23, 85:20, 86:1, 87:2
**Humphreys'** [13] - 49:16, 52:7, 52:12, 52:18, 52:22, 54:18, 55:2, 55:12, 55:24, 56:9, 56:21, 60:2, 60:11
**hundreds** [1] - 11:12

## I

**idea** [2] - 56:10, 63:3
**identified** [9] - 18:20, 47:11, 53:6, 53:10, 59:9, 75:9, 75:14, 75:19, 75:23
**identify** [3] - 3:6,

28:25, 33:10
**identifying** [1] - 33:23
**IIED** [5] - 37:10, 51:5, 51:8, 77:22, 83:24
**III** [1] - 11:13
**immediately** [1] - 17:3
**impact** [1] - 85:11
**impartial** [5] - 23:20, 25:12, 26:15, 29:11, 29:15
**implication** [1] - 19:25
**importance** [1] - 35:18
**important** [4] - 23:3, 59:4, 59:5
**impress** [1] - 39:6
**impressions** [2] - 51:18, 51:21
**in-person** [2] - 5:14, 5:18
**include** [8] - 13:16, 47:17, 48:5, 53:10, 62:23, 64:3, 70:3, 82:8
**included** [2] - 31:24, 85:1
**includes** [4] - 8:4, 73:8, 75:11, 75:12
**including** [11] - 19:6, 20:15, 20:22, 25:8, 25:22, 31:20, 32:17, 42:21, 47:23, 73:17, 77:18
**incorporating** [1] - 70:6
**independently** [2] - 47:5, 83:7
**individual** [4] - 17:4, 22:15, 34:21, 76:6
**individual's** [2] - 34:18, 34:20
**individually** [1] - 55:14
**individuals** [4] - 47:1, 75:10, 75:13, 76:2
**infamous** [1] - 51:10
**inferences** [1] - 65:13
**infliction** [3] - 40:23, 45:25, 50:10
**influencers** [1] - 49:8
**inform** [2] - 5:8, 12:3
**information** [9] - 13:14, 23:5, 25:10, 27:2, 30:16, 48:10, 51:19, 60:7, 83:25
**informed** [1] - 77:18
**initial** [1] - 76:22
**injunction** [2] - 71:25, 72:16
**injunctive** [10] - 8:10, 71:15, 71:19, 72:7,

72:13, 73:18, 73:19, 74:23, 74:25, 79:7
**injuries** [4] - 60:4, 60:5, 60:6, 87:4
**injury** [1] - 83:22
**innovations** [1] - 16:15
**instead** [2] - 27:25, 42:1
**instruct** [3] - 63:25, 64:5, 64:20
**instructed** [2] - 64:6, 64:14
**instructing** [1] - 64:3
**instruction** [14] - 38:16, 40:14, 40:15, 40:18, 46:8, 46:16, 57:14, 63:23, 69:25, 70:3, 70:5, 70:9, 73:16, 85:10
**instructions** [22] - 7:20, 35:4, 35:6, 35:22, 35:23, 35:25, 36:3, 36:5, 64:1, 64:9, 64:13, 65:12, 65:13, 65:22, 65:23, 69:23, 70:3, 70:7, 73:6, 73:7, 74:9, 85:11
**integrated** [1] - 47:20
**intend** [2] - 53:9, 58:24
**intent** [1] - 39:6
**intention** [2] - 11:18, 11:19
**intentional** [3] - 40:23, 45:25, 50:9
**interested** [2] - 70:13
**interesting** [1] - 69:11
**internal** [1] - 45:22
**interrupt** [2] - 16:6, 68:18
**intersection** [1] - 69:7
**introduce** [2] - 3:13, 63:10
**introducing** [1] - 66:17
**investigation** [1] - 67:21
**investigator** [1] - 67:7
**invitation** [1] - 80:16
**involved** [5] - 27:7, 27:23, 79:18, 84:7, 84:10
**involvement** [1] - 26:2
**involving** [1] - 72:15
**irrespective** [1] - 40:3
**issue** [20] - 11:24, 12:5, 21:13, 21:18, 29:16, 33:12, 34:14,

36:8, 37:4, 38:15, 41:13, 59:15, 60:13, 64:17, 64:18, 69:24, 71:25, 72:16, 82:20
**issued** [1] - 59:11
**issues** [18] - 8:2, 8:5, 8:15, 9:2, 9:10, 9:21, 10:1, 10:5, 13:20, 34:8, 51:25, 61:1, 70:25, 71:22, 73:17, 75:4, 82:25
**issuing** [1] - 15:23
**items** [1] - 61:1
**itself** [1] - 48:8
**IV** [1] - 2:3

## J

**Jacki** [3] - 75:20, 76:7, 84:5
**January** [2] - 59:23, 69:19
**Jenna** [2] - 11:12, 13:11
**Jensen** [1] - 78:24
**Joe** [2] - 3:23, 31:5
**JOHN** [1] - 1:21
**John** [1] - 3:19
**john.langford@ protectdemocracy. org** [1] - 1:23
**joint** [15] - 6:1, 6:20, 6:23, 8:3, 8:5, 8:11, 8:16, 10:2, 12:1, 13:24, 14:7, 18:5, 71:1, 71:16, 71:18
**JOSEPH** [1] - 2:3
**judge** [1] - 35:18
**JUDGE** [1] - 1:9
**judgment** [7] - 37:6, 37:13, 39:13, 56:14, 56:25, 74:17, 82:13
**July** [9] - 54:19, 55:15, 55:17, 55:18, 55:19, 55:20, 55:24, 76:19, 77:1
**juror** [6] - 17:4, 18:2, 25:13, 30:14, 33:25, 34:1
**juror's** [1] - 26:2
**jurors** [14] - 17:7, 17:25, 24:4, 24:8, 25:6, 27:18, 27:19, 29:8, 29:16, 31:2, 31:12, 34:9, 35:14, 61:20
**jury** [43] - 7:20, 8:19, 9:14, 9:17, 12:9, 13:20, 15:5, 15:21, 16:3, 16:12, 16:24,

17:9, 21:14, 21:19, 26:15, 27:10, 30:16, 35:6, 35:18, 37:19, 39:22, 46:8, 57:13, 57:14, 61:8, 61:13, 62:7, 62:16, 62:25, 63:21, 63:25, 64:4, 65:3, 65:12, 65:24, 66:11, 69:23, 73:6, 74:5, 77:3, 77:13, 78:10
**jury's** [3] - 9:19, 63:8, 77:14
**Justice** [1] - 82:11

## K

**keep** [3] - 15:17, 71:7, 71:9
**Kelly** [1] - 31:6
**kept** [1] - 16:16
**Kerik** [3] - 12:21, 48:18, 75:18
**key** [1] - 65:7
**kids** [1] - 25:11
**kind** [2] - 49:20, 80:16
**knowable** [1] - 68:7
**knowing** [1] - 76:23

## L

**laid** [3] - 22:3, 57:13, 84:23
**land** [1] - 46:14
**Langford** [1] - 3:19
**LANGFORD** [1] - 1:21
**language** [3] - 5:15, 20:7, 32:15
**LARSEN** [17] - 1:12, 60:21, 60:23, 61:15, 61:18, 62:9, 62:19, 63:1, 66:19, 66:24, 67:1, 67:4, 67:9, 67:11, 67:16, 67:22, 68:4
**Larsen** [3] - 3:18, 60:23
**last** [8] - 5:21, 10:10, 19:23, 20:11, 21:12, 30:2, 54:3, 61:3
**Lavaca** [1] - 2:4
**law** [4] - 19:2, 39:12, 43:14, 56:25
**lawsuit** [3] - 81:11, 81:22, 81:25
**lawyer** [1] - 61:25
**lawyers** [1] - 49:9
**lay** [1] - 16:25
**lays** [1] - 5:25
**least** [3] - 37:9, 39:9,

39:10
**leave** [5] - 17:5, 28:16, 38:7, 58:19, 85:5
**lectern** [1] - 3:6
**legal** [27] - 9:20, 10:5, 19:18, 34:13, 40:22, 44:3, 44:7, 44:9, 44:15, 44:16, 44:20, 44:21, 45:7, 45:9, 46:18, 47:20, 47:21, 52:9, 52:13, 52:16, 73:13, 73:22, 75:13, 75:17, 80:7, 82:6, 84:12
**legitimacy** [3] - 19:7, 19:21, 84:13
**length** [1] - 7:17
**less** [2] - 39:19, 65:4
**leveled** [1] - 32:19
**liability** [6] - 53:18, 54:14, 59:15, 59:17, 68:5
**liable** [5] - 46:4, 59:8, 66:14, 82:14, 83:7
**likely** [1] - 27:20
**limine** [2] - 42:20, 43:13, 76:17
**limit** [2] - 64:12, 80:20
**limitations** [2] - 50:8, 50:11
**limited** [2] - 25:8, 25:22
**line** [15] - 16:18, 16:19, 20:11, 36:18, 38:18, 40:18, 40:19, 41:3, 41:6, 42:1, 43:19, 60:14, 73:15, 85:9
**list** [20] - 7:23, 7:25, 15:17, 31:11, 34:4, 53:8, 57:25, 58:1, 58:5, 59:24, 62:5, 62:23, 65:10, 67:18, 71:16, 76:14, 78:15, 78:18, 78:19, 86:10
**listed** [15] - 12:20, 26:23, 29:3, 41:22, 42:3, 50:17, 50:22, 52:5, 53:18, 54:14, 54:16, 55:14, 72:7, 75:13, 83:19
**listen** [4] - 29:20, 30:2, 31:15, 61:22
**listened** [1] - 31:2
**listening** [1] - 31:12
**listing** [2] - 53:14, 76:17
**lists** [2] - 7:23, 71:18
**litigation** [2] - 63:7, 72:14

**live** [1] - 10:16
**Live** [1] - 31:4
**LLP** [2] - 1:13, 2:3
**local** [2] - 6:21, 17:24
**logistical** [2] - 7:15, 10:8
**logo** [1] - 30:22
**long-running** [1] - 76:21
**long-time** [1] - 19:10
**look** [5] - 40:9, 70:22, 76:14, 82:12, 87:10
**looked** [1] - 36:14
**looking** [7] - 28:7, 42:7, 52:12, 52:18, 54:2, 54:10, 80:6
**looks** [1] - 50:5
**Los** [1] - 1:22
**LOTH** [1] - 87:17
**Loth** [2] - 2:10, 87:23
**love** [2] - 66:4, 69:25
**lunch** [5] - 16:9, 16:17, 16:18, 16:19, 16:23
**lunches** [1] - 16:14

## M

**machine** [1] - 2:13
**main** [1] - 56:18
**malice** [1] - 48:11
**malicious** [1] - 51:22
**man** [1] - 12:22
**manifested** [4] - 18:11, 20:15, 21:6, 21:9
**manner** [1] - 87:21
**Mark** [1] - 48:16
**mark** [1] - 22:13
**marked** [1] - 61:10
**materials** [1] - 6:12
**matter** [9] - 4:23, 47:1, 74:5, 74:6, 75:1, 75:3, 81:2
**matters** [8] - 7:16, 10:8, 12:8, 35:25, 36:13, 36:17, 38:10, 42:12
**mayor** [1] - 19:1
**Mayor** [2] - 31:4
**Meadows** [1] - 48:17
**mean** [33] - 11:12, 14:14, 18:11, 19:14, 19:15, 23:10, 24:1, 27:11, 27:23, 29:19, 37:18, 39:25, 41:6, 41:8, 44:25, 46:19, 51:24, 52:4, 56:8, 62:2, 63:15, 70:11, 70:13, 70:22, 72:14,

72:15, 77:23, 79:14, 79:18, 80:24, 83:12, 84:5, 84:7
**meaning** [1] - 35:7
**means** [4] - 15:25, 38:20, 38:21, 39:15
**measuring** [1] - 57:17
**media** [11] - 19:2, 25:9, 25:22, 26:3, 26:13, 31:20, 49:8, 51:20, 69:7, 69:8, 78:25
**meet** [1] - 80:8
**member** [4] - 52:1, 52:23, 79:22, 80:4
**members** [17] - 42:22, 42:23, 43:2, 43:7, 43:17, 47:17, 47:19, 48:20, 48:23, 49:10, 52:12, 52:13, 59:3, 59:7, 75:9, 75:12, 75:17
**membership** [1] - 45:15
**memoranda** [2] - 62:23, 65:9
**memorandum** [2] - 65:24, 66:7
**mentioned** [3] - 76:13, 84:6, 86:22
**mentions** [1] - 46:9
**merely** [1] - 60:3
**MERYL** [1] - 1:12
**messaging** [1] - 49:6
**method** [2] - 17:1, 17:9
mgovernski@willkie .com [1] - 1:15
**MICHAEL** [1] - 1:11
**might** [8] - 14:22, 23:14, 24:20, 30:6, 46:3, 63:21, 79:21, 80:7
**Mike** [1] - 3:9
**Miller** [3] - 1:17, 3:17, 3:19
miller@ dubosemiller.com [1] - 1:19
**millions** [4] - 60:8, 60:10
**minimally** [1] - 64:24
**minimum** [1] - 31:12
**minute** [8] - 4:21, 5:12, 10:19, 50:20, 57:23, 57:24, 58:6, 71:10
**minutes** [2] - 17:17, 17:20
**miss** [1] - 4:14

**missed** [3] - 4:14, 5:4, 20:25
**mistake** [1] - 5:1
**Mister** [1] - 41:1
**modify** [1] - 33:13
**moment** [1] - 54:6
**Monday** [1] - 16:3
**money** [1] - 84:20
**monitoring** [1] - 78:25
**morning** [11] - 3:7, 3:8, 3:16, 3:21, 3:22, 3:25, 12:8, 12:14, 16:4, 16:9, 60:21
**Moss** [7] - 2:8, 3:15, 20:12, 20:20, 38:19, 54:25, 71:22
**most** [6] - 9:11, 9:21, 22:17, 27:20, 54:2, 79:12
**motion** [11] - 8:19, 10:3, 42:20, 43:8, 46:22, 47:14, 59:2, 73:5, 76:16, 76:20, 79:13
**motions** [1] - 58:20
**move** [2] - 22:22, 68:19
**moving** [1] - 9:17
**MR** [178] - 3:8, 3:12, 3:17, 3:22, 4:1, 4:16, 4:25, 5:4, 5:7, 5:23, 6:8, 6:11, 6:15, 7:4, 8:23, 9:5, 9:8, 9:23, 10:15, 10:24, 11:8, 11:17, 11:23, 12:2, 12:12, 12:15, 12:24, 13:2, 13:5, 13:9, 13:15, 14:2, 14:13, 15:7, 15:13, 17:16, 17:19, 18:18, 20:1, 20:5, 20:8, 20:10, 20:25, 21:3, 21:7, 21:10, 21:22, 21:24, 22:5, 22:7, 23:22, 23:25, 24:13, 24:18, 24:25, 25:14, 25:18, 25:24, 26:9, 26:19, 27:5, 27:17, 27:22, 28:6, 28:17, 28:19, 28:24, 29:18, 30:4, 30:6, 30:18, 30:21, 31:8, 31:23, 32:2, 32:9, 32:14, 33:1, 33:5, 33:9, 33:18, 33:23, 34:22, 34:24, 36:6, 36:16, 36:25, 37:3, 37:21, 37:23, 38:5, 38:12, 39:5, 39:8, 39:18, 39:25, 40:7, 40:11, 41:5,

42:4, 42:25, 43:23, 44:2, 44:5, 44:10, 45:18, 46:19, 46:24, 47:10, 48:13, 48:22, 49:23, 50:2, 50:21, 51:3, 51:6, 52:25, 53:17, 53:21, 54:1, 54:5, 54:9, 54:13, 55:9, 55:19, 55:21, 56:1, 56:4, 56:7, 56:12, 56:16, 57:22, 58:1, 58:6, 58:14, 59:20, 63:14, 64:2, 64:8, 65:17, 66:2, 68:17, 68:22, 69:6, 69:12, 69:15, 69:17, 69:22, 70:4, 70:10, 70:15, 70:17, 70:20, 71:4, 71:8, 71:11, 72:21, 73:11, 73:21, 73:24, 74:22, 75:21, 75:23, 77:8, 78:7, 78:23, 79:11, 80:22, 81:4, 82:2, 83:21, 84:4, 84:17, 85:16, 85:24, 86:5, 86:7, 87:9
**MS** [16] - 60:21, 60:23, 61:15, 61:18, 62:9, 62:19, 63:1, 66:19, 66:24, 67:1, 67:4, 67:9, 67:11, 67:16, 67:22, 68:4
**must** [2] - 4:12, 7:1

## N

**name** [3] - 41:25, 46:10, 60:22
**named** [5] - 42:24, 52:13, 80:3, 80:8, 80:12
**names** [6] - 34:16, 35:9, 43:20, 46:17, 72:4, 75:19
**narrow** [6] - 13:18, 27:24, 28:4, 30:7, 31:11
**narrowed** [1] - 13:21
**narrowly** [1] - 23:17
**Nathan** [1] - 3:18
**NATHAN** [2] - 1:13, 40:11
**naturally** [1] - 87:4
**NE** [1] - 1:18
**necessarily** [1] - 84:4
**necessity** [1] - 35:13
**need** [16] - 15:19, 16:2, 17:14, 17:20, 25:10, 26:18, 27:2,

28:3, 31:12, 39:4, 54:24, 54:25, 64:3, 72:4, 75:24, 79:20
**needed** [3] - 5:8, 10:1, 43:12
**needs** [1] - 9:3
**Network** [1] - 41:23
**network** [1] - 48:14
**networks** [1] - 42:22
**Networks** [1] - 41:23
**never** [11] - 5:9, 5:10, 41:15, 46:1, 64:10, 81:10, 81:11, 81:12, 83:7, 84:18, 84:21
**New** [2] - 4:1, 19:1
**news** [8] - 28:21, 28:25, 29:9, 29:12, 29:17, 30:14, 30:15, 86:18
**News** [8] - 28:21, 29:20, 29:22, 30:9, 30:15, 30:21, 30:25, 41:23
**Newsmax** [1] - 28:22
**newspaper** [1] - 23:11
**next** [1] - 35:4
**night** [1] - 61:3
**nominal** [7] - 37:9, 37:15, 37:19, 37:25, 38:1, 38:5, 39:10
**nondefault** [1] - 85:7
**none** [3] - 15:20, 76:7
**nonetheless** [1] - 62:6
**noon** [2] - 15:15, 70:8
**noted** [2] - 13:23, 14:9
**notes** [3] - 15:22, 35:7, 87:18
**nothing** [3] - 65:25, 70:12, 87:9
**notice** [4] - 15:14, 38:13, 56:24, 57:1
**noting** [1] - 14:10
**notorious** [1] - 51:10
**null** [1] - 87:20
**number** [12] - 8:25, 12:8, 22:18, 27:19, 35:15, 45:8, 51:18, 57:3, 60:18, 77:4, 77:5, 77:24
**numbers** [4] - 58:3, 59:21, 62:6, 69:13

## O

**OAN** [16] - 28:22, 30:9, 30:19, 30:20, 30:22, 30:23, 30:25, 41:23, 42:8, 42:9, 42:11, 42:16, 46:6, 52:9, 81:25

**object** [6] - 18:19, 36:18, 43:25, 44:3, 59:10, 68:20
**objected** [3] - 40:17, 58:25, 62:14
**objecting** [5] - 14:5, 41:3, 53:4, 56:19, 58:11
**objection** [40] - 14:10, 14:17, 14:23, 15:1, 15:2, 16:1, 18:16, 20:2, 20:6, 20:10, 21:3, 21:21, 21:22, 21:24, 23:21, 23:22, 24:23, 33:1, 33:12, 33:21, 33:23, 34:22, 34:24, 36:7, 36:10, 36:24, 38:9, 38:17, 40:4, 40:6, 40:12, 43:22, 45:1, 45:14, 45:17, 58:3, 65:11, 71:23, 74:12, 86:24
**objections** [13] - 8:3, 8:14, 8:16, 9:12, 14:9, 14:22, 15:6, 35:24, 36:2, 36:4, 36:11, 51:25
**objectives** [1] - 48:1
**obligations** [2] - 80:2, 80:14
**obtained** [1] - 81:12
**obviously** [4] - 5:12, 5:14, 11:20, 13:17
**October** [4] - 56:5, 76:19, 77:2, 86:5
**OF** [2] - 1:1, 1:8
**offer** [1] - 68:15
**offering** [1] - 67:13
**office** [2] - 67:7, 67:24
**Official** [1] - 2:11
**official** [4] - 34:6, 34:10, 34:18, 87:24
**officials** [1] - 73:9
**often** [1] - 30:2
**once** [2] - 15:3, 29:20
**one** [40] - 6:3, 8:24, 14:11, 16:15, 18:25, 24:13, 26:20, 30:6, 30:12, 34:2, 34:14, 40:17, 41:10, 42:17, 46:9, 48:8, 50:20, 53:2, 53:22, 53:23, 54:6, 55:24, 55:25, 56:16, 56:17, 57:12, 60:6, 62:10, 63:5, 67:24, 69:23, 73:18, 76:15, 77:4, 78:1, 84:5, 84:6, 85:16, 86:8
**One** [5] - 30:9, 30:15,

30:21, 30:24, 41:23
**ones** [2] - 78:5, 78:16
**online** [2] - 16:16, 69:8
**open** [1] - 80:16
**opening** [5] - 17:15, 17:17, 35:20, 54:18, 55:21
**opinion** [3] - 68:15, 83:4, 83:5
**opinions** [5] - 58:18, 62:23, 65:9, 65:24, 66:8
**opponents** [2] - 41:18, 42:13
**opportunities** [1] - 9:1
**opportunity** [4] - 43:5, 69:25, 87:1, 87:5
**opposed** [1] - 19:12
**opposing** [2] - 6:13, 62:12
**order** [22] - 4:3, 4:4, 4:7, 4:8, 4:17, 4:18, 4:21, 5:12, 5:22, 6:5, 6:15, 6:18, 6:21, 13:22, 15:18, 15:23, 16:25, 22:2, 25:4, 66:7, 71:25, 74:2
**ordered** [1] - 40:2
**ordering** [1] - 16:16
**orders** [8] - 7:5, 16:21, 50:20, 62:23, 63:8, 63:19, 65:9, 72:14
**originally** [2] - 30:9, 55:14
**otherwise** [5] - 28:11, 61:19, 62:14, 65:5, 80:10
**ought** [1] - 82:17
**outcome** [1] - 51:14
**outline** [1] - 71:17
**outlined** [2] - 36:9, 82:10
**outrageousness** [1] - 68:8
**outside** [2] - 53:5, 75:15
**overly** [2] - 18:10, 67:12
**overruled** [1] - 35:8
**oversight** [1] - 18:18
**overt** [7] - 42:14, 44:11, 46:4, 46:5, 59:5, 59:9, 82:9
**owes** [2] - 21:15, 21:20
**own** [4] - 19:3, 33:16, 34:15, 38:4
**owners** [2] - 42:23, 82:1

## P

**p.m** [1] - 87:14
**page** [7] - 47:15, 49:4, 53:17, 53:20, 54:1, 54:10, 65:24
**pages** [3] - 53:11, 54:7, 54:9
**Pags** [1] - 31:5
**paid** [1] - 16:18
**pandemic** [1] - 16:15
**panel** [5] - 17:6, 17:7, 22:11, 22:13, 30:16
**paper** [3] - 22:14, 61:23, 62:7
**papers** [1] - 74:2
**paragraph** [3] - 4:10, 6:22, 61:10
**paragraphs** [1] - 45:8
**part** [15] - 6:22, 7:3, 9:20, 19:6, 19:20, 40:15, 45:11, 52:16, 63:20, 64:9, 73:14, 74:10, 76:9, 78:1, 79:1
**participated** [1] - 81:7
**participation** [1] - 72:25
**particular** [5] - 18:20, 32:15, 37:14, 46:25, 61:1
**particularly** [7] - 14:20, 26:10, 26:19, 27:20, 29:8, 29:13, 33:9
**parties** [27] - 3:5, 4:5, 4:11, 4:19, 4:21, 5:13, 7:1, 7:13, 7:16, 7:21, 10:9, 18:1, 18:4, 18:9, 18:22, 19:23, 20:12, 21:13, 22:9, 22:20, 23:4, 25:3, 35:5, 35:9, 78:8, 78:13
**parties'** [2] - 4:11, 6:25
**parts** [5] - 13:10, 13:12, 14:1, 35:13, 38:24
**party** [8] - 4:12, 7:1, 41:18, 42:13, 48:9, 48:12, 82:1, 87:21
**patient** [1] - 84:1
**penalty** [1] - 72:1
**people** [26] - 9:1, 17:23, 23:10, 26:11, 27:1, 28:7, 32:16, 32:25, 33:11, 34:16, 42:10, 43:17, 45:22, 48:14, 49:25, 52:16,

52:20, 57:3, 59:7, 60:8, 60:10, 75:18, 75:20, 80:3, 81:21
**people's** [2] - 83:18, 84:13
**per** [4] - 37:7, 39:8, 39:12, 40:3
**peremptories** [1] - 17:8
**peremptory** [1] - 17:2
**perhaps** [3] - 52:18, 66:9, 67:12
**period** [5] - 31:17, 51:11, 51:18, 51:22, 77:1
**permanent** [2] - 71:19, 72:13
**persisted** [1] - 76:21
**persists** [1] - 76:24
**person** [5] - 5:14, 5:18, 46:17, 72:3, 73:2
**person's** [1] - 41:25
**personality** [1] - 19:2
**personally** [3] - 24:12, 24:18, 24:24
**persons** [3] - 72:24, 74:15, 84:5
**persons'** [1] - 82:8
**perspective** [1] - 10:14
**Phil** [1] - 52:15
**photocopied** [1] - 87:20
**phrase** [7] - 32:4, 32:7, 32:21, 33:16, 39:21, 40:9
**Pick** [6] - 12:22, 12:23, 75:20, 75:23, 76:7, 84:5
**pick** [1] - 12:25
**picking** [1] - 26:15
**pickup** [1] - 16:22
**piece** [2] - 22:14, 61:23
**pieces** [3] - 33:2, 61:16, 62:7
**pin** [1] - 82:6
**place** [2] - 16:21, 52:6
**placed** [1] - 81:9
**places** [1] - 29:13
**plainly** [1] - 54:21
**Plaintiff's** [7] - 59:25, 66:8, 66:15, 66:16, 67:2, 69:18, 69:20
**plaintiff's** [4] - 49:22, 59:13, 65:10, 76:16
**Plaintiffs** [1] - 1:3
**plaintiffs** [42] - 3:10, 3:14, 7:24, 8:6, 8:10,

8:21, 10:11, 10:12, 10:25, 11:4, 11:6, 14:7, 17:10, 17:14, 18:14, 18:23, 21:11, 21:15, 21:20, 21:21, 22:23, 29:2, 31:17, 36:20, 39:20, 39:24, 40:8, 40:16, 43:9, 46:10, 47:9, 50:18, 50:24, 66:17, 71:17, 74:21, 76:21, 76:24, 79:8, 80:18, 82:5, 87:11
**PLAINTIFFS** [1] - 1:11
**plaintiffs'** [7] - 3:7, 10:14, 12:3, 15:15, 62:22, 71:18, 72:7
**plan** [24] - 9:13, 9:22, 10:11, 12:2, 13:22, 16:24, 44:14, 45:7, 45:19, 46:9, 47:3, 48:6, 48:7, 48:23, 49:5, 49:15, 54:23, 54:24, 55:6, 57:9, 63:25, 75:14, 84:11, 84:16
**planned** [1] - 66:7
**planning** [6] - 8:18, 11:7, 13:3, 13:10, 62:24, 70:16
**plans** [1] - 10:22
**play** [5] - 13:7, 14:1, 78:15, 78:16, 78:20
**playbook** [1] - 63:16
**played** [1] - 31:9
**playing** [2] - 13:10, 15:4
**pleaded** [6] - 44:11, 47:16, 53:19, 75:7, 75:25, 83:8
**pleading** [6] - 43:23, 45:18, 59:1, 83:1, 83:10, 83:11
**pleadings** [5] - 53:5, 58:18, 58:24, 82:19, 84:24
**pleads** [1] - 46:20
**podcasts** [7] - 19:3, 31:3, 31:9, 31:15, 31:22, 31:24
**point** [12] - 12:9, 14:21, 30:4, 43:13, 43:14, 56:18, 59:16, 72:5, 74:19, 84:22, 85:17, 86:23
**pointed** [3] - 8:25, 46:6, 80:4
**pointing** [1] - 86:24
**points** [4] - 47:12, 49:13, 49:15, 53:2

**policy** [1] - 80:25
**politicians** [1] - 29:23
**poll** [1] - 27:8
**pop** [2] - 9:3, 9:4
**portion** [2] - 5:15, 10:10
**portions** [2] - 13:7, 13:18
**pose** [2] - 15:6, 80:22
**posed** [1] - 22:16
**poses** [1] - 74:23
**posing** [1] - 45:14
**position** [11] - 37:3, 37:6, 38:4, 59:18, 68:6, 80:3, 80:11, 80:25, 81:1, 81:9, 85:3
**possible** [8] - 8:18, 16:7, 27:14, 60:25, 64:24, 70:1, 71:5, 85:12
**post** [1] - 69:20
**posts** [1] - 86:14
**posttrial** [1] - 79:13
**posture** [2] - 63:4, 79:25
**potential** [2] - 17:25, 26:2
**potentially** [1] - 48:3
**Powell** [1] - 52:15
**practice** [1] - 4:6
**practiced** [1] - 19:2
**practicing** [1] - 19:10
**prayer** [1] - 72:22
**pre** [2] - 86:2, 86:8
**pre-December** [2] - 86:2, 86:8
**precise** [5] - 19:16, 49:13, 57:2, 57:23
**precisely** [2] - 53:3, 60:10
**predisposed** [1] - 33:11
**prefer** [1] - 21:8
**prejudicial** [2] - 65:3, 65:8
**prejudicing** [1] - 65:1
**preliminary** [12] - 7:19, 35:4, 35:6, 35:21, 35:23, 36:2, 36:5, 40:15, 40:18, 46:16, 73:15, 85:10
**preparation** [1] - 6:2
**preparations** [1] - 10:6
**prepared** [3] - 3:12, 6:5, 6:7
**preparing** [1] - 6:4
**preponderance** [3] - 35:12, 70:12, 70:20

**present** [14] - 4:6, 4:12, 5:10, 7:1, 8:25, 13:3, 48:15, 48:19, 49:11, 62:15, 63:2, 78:3, 78:25, 86:21
**PRESENT** [1] - 2:8
**presentation** [6] - 60:25, 68:10, 74:24, 76:3, 79:4, 84:6
**presented** [2] - 67:18, 77:13
**presenting** [2] - 13:12, 77:3
**preservation** [2] - 80:14, 80:15
**President** [10] - 19:5, 19:19, 41:11, 42:10, 42:17, 42:21, 55:3, 72:15, 73:8, 73:23
**presidential** [21] - 26:17, 26:22, 27:16, 28:1, 28:12, 28:15, 40:22, 42:21, 44:1, 44:16, 44:24, 45:12, 46:12, 46:18, 49:6, 55:1, 79:21, 80:7, 83:15, 84:12, 84:14
**presume** [7] - 4:1, 38:22, 38:25, 39:21, 39:22, 40:9, 83:15
**presumed** [4] - 37:8, 50:15, 57:11
**presuming** [1] - 52:17
**presumption** [2] - 39:9, 40:3
**pretrial** [34] - 4:4, 4:6, 4:10, 4:12, 4:17, 4:22, 5:9, 5:10, 6:1, 6:2, 6:8, 6:11, 6:20, 6:24, 7:2, 7:13, 8:3, 8:5, 8:11, 8:16, 9:22, 10:2, 10:3, 12:1, 13:22, 13:24, 14:7, 53:8, 55:9, 58:20, 71:1, 71:16, 71:18
**PRETRIAL** [1] - 1:8
**pretty** [5] - 4:7, 4:9, 11:25, 14:10, 60:20
**previous** [1] - 63:7
**previously** [3] - 34:3, 34:16, 62:11
**principal** [1] - 73:2
**printout** [1] - 67:5
**privilege** [1] - 48:9
**probative** [1] - 29:13
**problem** [6] - 24:19, 73:24, 79:25, 82:9, 82:14
**problematic** [1] - 81:3
**procedure** [1] - 81:8

**proceed** [4] - 10:1, 17:5, 64:22, 66:5
**proceeding** [1] - 87:14
**proceedings** [1] - 87:18
**Proceedings** [1] - 2:13
**produced** [1] - 2:14
**production** [1] - 80:15
**profane** [3] - 20:15, 20:23, 21:2
**Professor** [2] - 68:12, 68:13
**proffered** [1] - 68:23
**prohibiting** [1] - 71:19
**promptly** [1] - 85:12
**proof** [3] - 35:12, 51:12, 87:12
**proposal** [4] - 34:15, 39:24, 42:2, 43:20
**propose** [3] - 19:24, 21:13, 42:5
**proposed** [20] - 7:21, 18:9, 18:22, 19:23, 20:12, 22:20, 23:2, 23:4, 25:3, 35:5, 35:25, 36:2, 40:15, 40:16, 40:18, 40:19, 57:13, 65:22, 70:2, 74:1
**proposes** [1] - 53:4
**proposing** [3] - 41:21, 49:11, 76:5
**proposition** [1] - 43:14
**prospective** [4] - 24:8, 25:6, 31:1, 34:1
**Protect** [2] - 1:21, 3:20
**protect** [1] - 65:20
**protected** [2] - 83:5, 84:9
**prove** [1] - 58:24
**provide** [1] - 70:23
**provided** [1] - 76:15
**provides** [1] - 17:25
**providing** [2] - 39:16, 51:20
**public** [7] - 24:2, 34:5, 34:10, 34:13, 77:21, 86:20, 86:21
**publicly** [2] - 18:13, 18:22
**publish** [2] - 62:15, 77:17
**published** [2] - 48:9, 48:12
**publishing** [1] - 71:20
**punctual** [1] - 16:10
**Pundit** [1] - 28:22
**punitive** [9] - 36:21,

50:14, 59:13, 63:6, 64:18, 68:8, 77:15, 77:22
**punitives** [1] - 37:2
**purpose** [5] - 10:3, 18:16, 31:7, 32:6, 68:11
**purposes** [5] - 8:19, 12:11, 75:4, 76:3, 82:2
**put** [5] - 14:7, 38:13, 66:11, 78:2, 78:15
**putting** [6] - 24:23, 43:22, 62:1, 62:25, 65:24, 80:5
**puzzle** [1] - 52:10
**puzzled** [1] - 18:12
**puzzlement** [1] - 20:11
**puzzling** [1] - 19:11

### Q

**QAnon** [1] - 32:22
**qualification** [1] - 80:8
**qualify** [1] - 17:6
**quantification** [7] - 13:20, 49:12, 50:16, 54:21, 55:12, 57:8, 60:3
**quantifications** [2] - 55:5, 57:3
**quantified** [3] - 56:20, 69:9, 76:8
**quantifies** [3] - 51:17, 55:3, 86:2
**quantify** [4] - 60:9, 76:5, 79:2, 86:25
**quantifying** [2] - 50:12, 51:18
**Questions** [2] - 25:2, 32:3
**questions** [24] - 7:21, 13:19, 17:9, 18:7, 22:10, 22:12, 22:16, 22:17, 22:18, 22:20, 22:22, 23:1, 24:19, 25:5, 25:15, 25:20, 25:25, 26:4, 29:14, 30:8, 33:2, 35:3, 60:16, 85:13
**quick** [1] - 71:5
**quickly** [5] - 8:18, 22:19, 22:22, 35:3, 61:25
**quite** [7] - 16:10, 17:20, 56:9, 58:25, 63:19, 81:2, 82:22

### R

**radio** [4] - 19:3, 31:24, 49:7, 76:7
**Raffensperger** [1] - 41:12
**raise** [1] - 85:14
**raised** [8] - 8:2, 8:16, 9:10, 10:2, 35:24, 38:17, 52:1, 71:1
**raises** [4] - 12:5, 33:25, 71:22, 80:25
**raising** [4] - 24:9, 65:11, 74:12, 86:23
**rate** [1] - 58:16
**rather** [3] - 16:17, 16:19, 29:16
**Ray** [2] - 11:13, 13:11
**reach** [6] - 22:9, 42:5, 54:21, 57:14, 57:17, 63:1
**reached** [3] - 60:18, 60:20, 61:5
**react** [1] - 16:1
**read** [13] - 4:17, 5:12, 5:21, 19:18, 22:1, 22:3, 23:6, 34:3, 35:10, 36:1, 38:21, 61:25, 78:9
**reading** [2] - 23:11, 45:18
**reads** [4] - 18:25, 36:18, 38:18, 40:19
**ready** [3] - 16:21, 16:22, 16:23
**real** [4] - 36:7, 41:13, 68:7, 79:25
**really** [18] - 5:25, 9:17, 23:2, 27:12, 30:3, 34:12, 37:15, 38:2, 39:21, 42:12, 42:18, 56:18, 59:5, 68:25, 72:11, 74:10, 79:15
**reason** [9] - 9:21, 26:21, 52:10, 53:1, 59:3, 63:14, 63:15, 63:20, 73:14
**reasonably** [1] - 51:13
**reasoning** [1] - 23:2
**reasons** [2] - 64:3, 65:15
**receive** [1] - 17:2
**recent** [2] - 54:2, 78:17
**recently** [2] - 6:16, 9:11
**recess** [1] - 71:13
**recitation** [1] - 21:10
**recognize** [3] - 73:21, 73:24, 74:23

**record** [5] - 3:6, 17:12, 38:10, 60:22, 85:25
**recounting** [1] - 30:2
**recover** [2] - 42:15, 50:24
**recovery** [1] - 82:8
**redline** [1] - 36:14
**reduced** [1] - 67:17
**reelection** [2] - 19:6, 19:20
**refer** [1] - 30:22
**reference** [1] - 45:15
**references** [1] - 56:9
**reflection** [1] - 85:21
**regardless** [1] - 41:17
**Regina** [1] - 10:13
**regularly** [1] - 30:14
**reign** [1] - 46:7
**related** [2] - 8:4, 13:14
**relationship** [2] - 14:15, 85:1
**relax** [1] - 61:24
**relaxed** [1] - 57:12
**relevant** [8] - 13:20, 30:16, 31:17, 59:12, 59:15, 76:3, 77:14, 79:3
**relied** [4] - 58:11, 77:6, 77:9, 87:3
**relief** [16] - 8:10, 71:15, 71:17, 71:19, 72:7, 72:9, 72:13, 72:23, 73:18, 73:19, 74:20, 74:23, 75:1, 75:2, 79:7, 79:14
**relies** [2] - 57:19, 85:20
**relitigate** [1] - 46:21
**rely** [2] - 28:21, 53:9
**remain** [1] - 77:25
**remaining** [3] - 21:13, 21:18, 25:25
**remedied** [1] - 69:10
**remedy** [1] - 74:6
**reopen** [1] - 82:18
**repeating** [1] - 31:16
**repercussions** [1] - 74:20
**replayed** [1] - 31:9
**replaying** [1] - 86:19
**replete** [1] - 45:12
**report** [28] - 49:12, 49:16, 49:21, 49:24, 52:7, 52:12, 52:18, 52:22, 54:18, 55:2, 55:12, 55:16, 55:21, 56:4, 56:5, 58:12, 60:2, 60:11, 67:20, 68:25, 77:6, 82:24, 85:21, 85:23, 86:1,

86:3, 86:7
**reported** [1] - 2:13
**reporter** [1] - 71:6
**Reporter** [3] - 2:10, 2:11, 87:24
**reporters** [2] - 42:11, 82:1
**reports** [6] - 55:24, 56:9, 56:13, 56:21, 66:13, 66:15
**representatives** [2] - 4:12, 7:1
**reputation** [1] - 69:9
**reputational** [3] - 20:15, 20:22, 83:22
**reputations** [1] - 69:10
**request** [10] - 8:24, 16:2, 17:16, 71:19, 71:22, 72:9, 72:12, 72:22, 73:3, 75:3
**requested** [4] - 5:16, 7:7, 8:10, 79:7
**requesting** [3] - 8:13, 73:12, 73:18
**require** [1] - 51:11
**reread** [1] - 7:5
**researching** [1] - 35:19
**reserving** [1] - 43:6
**resolution** [1] - 10:1
**resolved** [4] - 8:17, 8:20, 9:21, 36:12
**resolves** [1] - 9:11
**resolving** [2] - 14:22, 75:4
**respect** [18] - 6:8, 6:11, 6:15, 12:5, 14:15, 35:23, 36:7, 37:10, 37:21, 37:23, 43:19, 46:8, 60:17, 64:22, 74:25, 75:5, 78:17, 79:17
**response** [3] - 47:12, 50:20, 56:22
**responsibility** [1] - 7:8
**responsible** [2] - 43:4, 43:15
**responsive** [2] - 22:16, 83:1
**rest** [1] - 60:15
**restating** [1] - 72:23
**result** [4] - 36:20, 38:20, 38:22, 39:15
**return** [1] - 60:12
**retweeting** [1] - 55:3
**revealing** [1] - 68:6
**review** [4] - 7:12, 7:18, 8:7, 85:14
**reviewed** [3] - 6:12,

6:16, 6:18
**revised** [1] - 23:17
**reworded** [1] - 28:8
**Rion** [2] - 41:24, 41:25
**Robert** [1] - 41:24
**role** [1] - 79:21
**Room** [1] - 31:5
**room** [1] - 61:13
**RPR** [3] - 2:10, 87:17, 87:23
**RUBY** [1] - 1:3
**Ruby** [3] - 2:8, 3:3, 54:25
**Rudolph** [1] - 3:3
**RUDOLPH** [1] - 1:5
**Rudy** [12] - 31:3, 50:1, 53:22, 58:4, 83:14, 84:11, 86:10, 86:11, 86:12, 86:16
**RudyGiuliani** [1] - 31:20
**Rule** [6] - 17:24, 59:2, 65:7, 68:15, 72:23, 72:25
**ruled** [1] - 64:25
**rules** [3] - 6:21, 35:21, 81:8
**rulings** [3] - 64:14, 65:2, 83:2
**running** [2] - 15:17, 76:21

## S

**SA** [1] - 86:7
**Saint** [2] - 2:10, 87:23
**SAINT** [1] - 87:17
**Saint-Loth** [2] - 2:10, 87:23
**SAINT-LOTH** [1] - 87:17
**sanction** [1] - 64:20
**satisfied** [1] - 51:16
**satisfy** [1] - 48:10
**saw** [3] - 57:3, 61:2, 66:14
**schedule** [4] - 7:17, 9:16, 10:3, 15:24
**schedules** [1] - 9:25
**scheduling** [1] - 12:11
**scope** [2] - 14:23, 36:8
**Scott** [1] - 10:13
**screen** [1] - 67:5
**se** [4] - 37:7, 39:8, 39:12, 40:3
**searching** [1] - 59:20
**seated** [1] - 7:11
**second** [5] - 40:8, 48:18, 49:21, 71:15, 77:8

**Secretary** [5] - 41:12, 45:4, 67:3, 67:7, 67:23
**see** [18] - 8:5, 8:12, 10:20, 12:15, 13:21, 22:2, 27:21, 30:22, 32:11, 36:12, 36:17, 65:9, 67:10, 67:15, 67:19, 70:1, 70:14, 79:14
**seeking** [1] - 54:20, 63:9, 71:17
**selection** [1] - 15:21, 16:3, 17:9
**Senate** [2] - 84:7, 84:9
**sense** [3] - 27:6, 64:4, 76:4
**Sense** [1] - 31:3
**sent** [5] - 48:13, 48:14, 48:16, 48:20, 48:23
**sentence** [7] - 18:20, 18:21, 18:25, 19:9, 19:13, 19:17, 21:12
**sentences** [1] - 40:16
**separate** [2] - 62:4, 70:4
**separately** [1] - 61:10
**September** [1] - 58:21
**serve** [2] - 9:16, 9:17
**served** [2] - 19:4, 54:19
**set** [2] - 9:2, 74:23
**sets** [2] - 5:2, 15:23
**setting** [2] - 4:4, 4:17
**settled** [1] - 82:1
**settles** [1] - 17:25
**shall** [1] - 87:20
**Shaye** [1] - 54:25
**shook** [1] - 17:12
**short** [1] - 16:8
**shorthand** [1] - 87:15
**shortly** [1] - 60:13
**Show** [5] - 31:4, 31:5, 31:6
**show** [2] - 68:2, 76:7
**showed** [4] - 41:15, 48:4, 81:6, 81:10
**showing** [1] - 63:11
**shown** [1] - 67:6
**shows** [4] - 19:3, 31:9, 31:22, 31:24
**shy** [1] - 24:9
**SIBLEY** [83] - 2:3, 3:22, 4:1, 4:16, 4:25, 5:4, 5:7, 5:23, 6:8, 6:11, 6:15, 7:4, 9:8, 9:23, 10:24, 11:8, 11:17, 11:23, 12:2, 12:13, 12:15, 14:13, 15:7, 15:13, 17:19,

20:8, 20:10, 21:10, 21:24, 22:7, 23:25, 24:13, 24:25, 25:18, 26:9, 27:5, 27:17, 27:22, 28:19, 30:18, 32:2, 33:9, 33:23, 34:24, 36:6, 36:16, 36:25, 37:3, 37:21, 37:23, 38:5, 38:12, 39:5, 39:8, 39:18, 39:25, 40:7, 41:5, 42:4, 42:25, 43:23, 44:2, 44:5, 44:10, 45:18, 46:19, 46:24, 53:17, 58:14, 63:14, 64:2, 64:8, 65:17, 66:2, 68:22, 70:20, 79:11, 81:4, 82:2, 83:21, 84:4, 84:17, 87:9
**Sibley** [50] - 2:3, 3:23, 3:24, 6:7, 7:11, 9:6, 9:22, 10:23, 12:12, 14:5, 17:18, 20:6, 21:8, 21:23, 23:24, 24:23, 25:17, 26:7, 27:4, 28:18, 30:11, 30:17, 32:1, 33:7, 33:21, 34:23, 36:4, 36:15, 38:11, 38:17, 41:4, 46:14, 47:8, 50:19, 53:10, 55:15, 56:19, 58:4, 58:9, 58:10, 63:13, 65:18, 68:20, 70:18, 74:11, 75:16, 79:6, 85:18, 86:23, 87:8
**Sibley's** [2] - 71:23, 72:4
**sibley@ camarasibley.com** [1] - 2:6
**sic** [3] - 10:12, 11:16, 66:22
**side** [2] - 17:2, 17:21
**sides** [2] - 9:24, 17:12
**Sidney** [1] - 52:15
**signatory** [1] - 87:21
**signed** [1] - 84:11
**significantly** [1] - 67:17
**simpler** [2] - 21:18, 39:19
**simply** [2] - 46:25, 72:23
**single** [3] - 36:18, 38:18, 46:17
**sit** [6] - 12:12, 16:5, 16:24, 30:1, 35:15, 47:8

**sitting** [2] - 16:12, 61:20
**situation** [6] - 63:16, 63:17, 64:11, 64:19, 81:14, 85:7
**skipped** [3] - 6:22, 7:3, 7:4
**small** [2] - 13:18, 24:16
**Smith** [3] - 11:13, 12:21, 13:11
**smoothly** [1] - 9:18
**social** [9] - 25:9, 25:22, 26:13, 31:19, 49:8, 51:19, 69:7, 69:8, 78:24
**solves** [1] - 24:19
**someone** [1] - 84:19
**someplace** [1] - 13:23
**sometimes** [1] - 9:19
**sorry** [6] - 4:3, 12:13, 12:24, 20:25, 54:1, 69:15
**sort** [16] - 26:3, 31:16, 40:1, 42:6, 43:10, 48:25, 50:15, 51:21, 61:9, 64:20, 69:7, 72:4, 73:17, 79:20, 84:1, 85:19
**sound** [1] - 22:4
**sounds** [1] - 62:18
**source** [1] - 24:17
**sources** [2] - 28:21, 28:25
**specialty** [1] - 69:5
**specific** [7] - 25:5, 48:22, 51:12, 52:12, 66:20, 75:9
**specifically** [14] - 5:14, 5:16, 7:6, 8:8, 42:7, 48:16, 51:2, 53:6, 53:19, 54:16, 59:12, 80:3, 83:19, 86:22
**specificity** [1] - 57:2
**specifics** [1] - 23:13
**speeches** [1] - 86:20
**spend** [1] - 66:7
**spends** [2] - 44:13, 45:8
**sphere** [1] - 24:2
**spills** [1] - 51:24
**spoliation** [1] - 64:21
**spread** [5] - 51:19, 60:7, 69:8, 72:2, 84:1
**spreading** [1] - 60:9
**Staff** [1] - 48:16
**stand** [3] - 16:7, 16:8, 16:19

**standard** [6] - 35:6, 48:11, 50:13, 57:12, 72:24, 73:6

**standards** [2] - 81:7, 81:8

**standing** [8] - 4:3, 4:7, 4:8, 5:22, 6:5, 6:18, 6:21, 16:18

**start** [8] - 3:6, 7:10, 10:8, 12:10, 15:4, 16:3, 50:9, 71:2

**started** [1] - 50:11

**starting** [1] - 36:13

**state** [2] - 60:22, 66:13

**State** [3] - 45:4, 67:3, 84:15

**State's** [2] - 67:7, 67:24

**statement** [29] - 6:2, 6:20, 6:24, 7:18, 8:4, 8:5, 8:11, 8:17, 10:2, 12:1, 13:24, 14:8, 17:15, 18:3, 18:5, 18:8, 18:13, 22:2, 35:10, 41:10, 51:12, 53:8, 71:1, 71:16, 71:18, 72:22, 76:6, 76:19, 86:16

**Statement** [1] - 86:15

**statements** [63] - 33:11, 35:20, 42:9, 42:15, 44:8, 49:13, 49:25, 50:4, 50:6, 50:17, 50:19, 50:22, 50:23, 51:2, 51:6, 51:17, 51:22, 52:4, 52:5, 52:19, 53:9, 53:11, 53:18, 53:24, 54:13, 54:17, 54:19, 54:22, 55:4, 57:5, 57:7, 57:8, 57:15, 57:18, 58:15, 66:18, 68:3, 71:21, 72:2, 74:14, 76:18, 76:25, 77:3, 77:5, 77:10, 77:12, 77:17, 77:20, 77:24, 78:4, 78:7, 78:13, 78:17, 78:20, 79:1, 81:22, 83:3, 83:18, 85:20, 86:9

**states** [4] - 19:8, 19:22, 21:13, 29:24

**STATES** [2] - 1:1, 1:9

**status** [2] - 34:5, 34:18

**statute** [2] - 50:8, 50:10

**stenographic** [1] - 87:18

**Steve** [1] - 31:5

**still** [10] - 10:9, 33:3, 54:7, 59:20, 60:19, 61:1, 69:13, 77:25, 78:5, 86:16

**stipulate** [1] - 65:19

**stipulated** [1] - 78:14

**stipulating** [1] - 77:19

**stipulation** [4] - 62:1, 63:2, 64:16, 78:8

**stipulations** [14] - 8:1, 60:17, 60:18, 60:19, 60:20, 61:2, 61:5, 61:8, 61:9, 61:15, 61:16, 62:2, 62:3, 78:1

**stop** [1] - 80:17

**strange** [1] - 20:18

**strategic** [15] - 44:14, 45:7, 45:19, 46:9, 47:3, 48:6, 48:7, 49:5, 49:14, 54:22, 54:23, 55:6, 57:9, 75:14, 84:10

**strategy** [2] - 11:24, 46:11

**streamlined** [1] - 60:25

**streamlines** [1] - 78:12

**Street** [4] - 1:14, 1:18, 1:22, 2:4

**strike** [1] - 36:22

**striking** [1] - 38:2

**strong** [2] - 26:5, 33:12

**stronger** [1] - 26:20

**strongly** [1] - 25:14

**struck** [2] - 17:1, 19:11

**stuck** [1] - 80:12

**studies** [1] - 69:8

**styled** [1] - 44:15

**submit** [4] - 15:14, 70:9, 70:15, 70:17

**submitted** [2] - 7:24, 86:4

**submitting** [2] - 74:1, 82:16

**substantive** [5] - 13:13, 36:10, 48:25, 62:3, 70:7

**sue** [2] - 81:21, 84:8

**sued** [1] - 81:20

**suffer** [2] - 20:14, 20:21

**suffered** [4] - 38:20, 38:22, 39:15, 40:10

**suggest** [7] - 19:12, 19:17, 20:19, 23:16, 28:6, 28:8, 30:6

**suggestion** [3] - 24:11, 24:13, 33:13

**Suite** [2] - 1:14, 2:4

**summarized** [1] - 50:19

**superior** [1] - 35:15

**supplemental** [3] - 56:4, 85:25, 86:3

**support** [3] - 28:12, 49:21, 76:19

**supporting** [1] - 74:2

**supports** [1] - 81:13

**suppose** [1] - 85:4

**supposed** [6] - 4:5, 15:10, 15:18, 19:15, 28:23, 57:13

**supposedly** [1] - 81:17

**Supreme** [2] - 82:11, 82:12

**surmise** [1] - 41:16

**surprise** [1] - 66:9

**surprised** [3] - 17:24, 41:2, 65:8

**surrogate** [7] - 18:10, 19:4, 19:12, 19:13, 19:14, 19:25, 20:3

**surrounding** [1] - 63:7

**sustained** [1] - 35:8

**sword** [1] - 5:6

## T

**table** [1] - 3:14

**tagged** [1] - 79:22

**tailored** [1] - 75:2

**tailors** [1] - 30:8

**talks** [2] - 49:5, 52:14

**target** [1] - 51:10

**targets** [2] - 20:23, 21:2

**task** [2] - 64:7, 66:1

**team** [24] - 19:18, 40:22, 44:4, 44:7, 44:9, 44:15, 44:16, 44:20, 44:21, 45:7, 45:10, 46:18, 47:20, 47:21, 49:7, 52:9, 52:13, 52:16, 73:23, 75:13, 75:17, 80:7, 82:6, 84:12

**Team** [8] - 54:14, 55:1, 55:2, 56:20, 57:20, 58:12, 59:24, 83:14

**technical** [1] - 37:16

**technically** [2] - 38:5, 41:9

**ten** [1] - 71:10

**ten-minute** [1] - 71:10

**tends** [1] - 32:16

**term** [1] - 33:17

**terms** [6] - 8:3, 35:8, 46:15, 71:17, 74:18, 76:12

**testified** [3] - 11:11, 84:14, 84:17

**testifies** [2] - 11:10, 78:19

**testify** [6] - 10:21, 10:22, 11:15, 34:17, 53:4, 68:21

**testifying** [1] - 77:12

**testimony** [7] - 10:17, 11:11, 14:18, 34:7, 34:17, 34:20, 68:15

**THE** [196] - 1:1, 1:8, 3:2, 3:11, 3:16, 3:21, 3:24, 4:3, 4:20, 5:2, 5:6, 5:21, 5:25, 6:9, 6:14, 6:18, 7:9, 9:3, 9:6, 9:13, 9:24, 10:18, 11:4, 11:9, 11:21, 11:25, 12:7, 12:14, 12:17, 12:25, 13:3, 13:7, 13:10, 13:23, 14:5, 14:25, 15:8, 15:14, 17:18, 17:21, 18:21, 20:4, 20:6, 20:9, 20:11, 21:1, 21:5, 21:8, 21:12, 21:23, 21:25, 22:8, 23:24, 24:1, 24:17, 24:22, 25:1, 25:16, 25:19, 26:6, 26:10, 27:4, 27:10, 27:19, 27:24, 28:13, 28:18, 28:20, 29:7, 29:19, 30:5, 30:17, 30:19, 30:24, 31:18, 31:25, 32:3, 32:13, 32:20, 33:3, 33:7, 33:14, 33:20, 33:25, 34:23, 35:1, 36:11, 36:17, 37:1, 37:17, 37:22, 37:25, 38:8, 38:13, 39:6, 39:14, 39:19, 40:6, 40:8, 40:12, 41:20, 42:19, 43:19, 43:25, 44:3, 44:6, 44:12, 46:9, 46:21, 47:8, 48:12, 48:20, 49:16, 49:24, 50:18, 51:1, 51:4, 51:24, 53:12, 53:20, 53:22, 54:2, 54:7, 54:12, 55:7, 55:17, 55:20, 55:23, 56:3, 56:6, 56:8, 56:13, 57:19, 57:25, 58:2, 58:8, 60:12, 60:22, 61:7, 61:16, 61:19, 62:18, 62:20, 63:12, 63:25, 64:5, 65:7, 65:18, 66:4, 66:23, 66:25, 67:2, 67:8, 67:10, 67:15, 67:19, 68:1, 68:12, 68:18, 68:24, 69:11, 69:14, 69:16, 69:21, 70:2, 70:8, 70:11, 70:16, 70:18, 70:22, 71:6, 71:9, 71:12, 71:14, 73:10, 73:14, 73:22, 74:4, 75:17, 75:22, 76:9, 77:23, 78:22, 79:5, 79:17, 80:24, 81:25, 83:12, 84:3, 84:10, 85:8, 85:22, 86:3, 86:6, 87:7, 87:10

**themselves** [2] - 61:15, 61:16

**theories** [3] - 26:4, 29:1, 32:17

**theory** [5] - 32:22, 51:8, 82:8, 83:24

**thereof** [1] - 42:22

**thinking** [3] - 27:5, 52:18, 64:15

**third** [2] - 48:9, 48:12

**threat** [1] - 78:25

**threats** [5] - 20:16, 20:24, 21:2, 32:18, 79:3

**three** [8] - 17:2, 29:20, 35:24, 40:16, 56:1, 56:3, 86:18

**throughout** [3] - 41:1, 48:6, 51:11

**thwarted** [1] - 81:18

**tie** [4] - 44:12, 44:17, 58:16, 74:7

**tied** [5] - 44:17, 45:2, 45:3, 45:16, 83:23

**ties** [2] - 71:23, 73:17

**timely** [1] - 58:20

**today** [5] - 3:11, 7:12, 9:1, 23:6, 77:25

**Toensing** [1] - 52:14

**together** [2] - 22:25, 32:11

**tomorrow** [4] - 15:15, 38:14, 70:8, 87:11

**tone** [1] - 5:2

**took** [2] - 14:19, 41:7

**tortious** [3] - 47:4, 47:5, 84:25

**torts** [1] - 40:23

**totally** [2] - 15:3, 80:18

**touch** [1] - 8:1

**touchstone** [1] - 56:25
**towards** [1] - 62:20
**track** [1] - 58:7
**tracking** [1] - 39:11
**traditional** [1] - 51:19
**traffic** [2] - 26:3, 32:17
**trafficked** [1] - 28:25
**transcript** [3] - 87:18, 87:18, 87:20
**Transcript** [1] - 2:14
**TRANSCRIPT** [1] - 1:8
**transcription** [1] - 2:14
**transparent** [1] - 27:13
**trial** [32] - 4:18, 4:19, 5:15, 6:4, 6:6, 6:7, 7:10, 7:17, 8:19, 8:20, 10:2, 10:5, 10:10, 11:24, 15:23, 16:5, 16:25, 21:14, 21:18, 22:2, 35:13, 40:15, 48:15, 58:24, 62:13, 63:21, 68:9, 74:2, 74:24, 75:4, 76:4, 79:15
**trials** [2] - 16:14, 35:16
**trick** [2] - 65:14, 65:23
**tried** [2] - 13:17, 15:21
**troubling** [1] - 80:5
**true** [7] - 42:25, 75:8, 78:10, 83:21, 84:5, 87:17, 87:18
**Trump** [40] - 19:5, 19:18, 26:22, 40:21, 41:11, 41:22, 42:10, 42:17, 42:21, 43:20, 43:22, 44:7, 44:15, 44:20, 45:11, 45:23, 46:6, 47:17, 47:19, 49:9, 54:14, 55:1, 55:2, 55:3, 56:20, 57:20, 59:24, 73:9, 73:10, 74:18, 75:11, 75:12, 79:22, 82:6, 83:14, 86:13, 86:16
**Trump's** [16] - 19:19, 26:17, 27:16, 28:1, 28:12, 28:15, 40:21, 40:22, 43:25, 44:3, 44:20, 44:22, 44:23, 45:3, 45:6, 80:6
**Trumps** [1] - 58:12
**Truth** [1] - 31:3
**truth** [1] - 68:10
**try** [3] - 27:12, 39:6, 64:24
**trying** [18] - 21:5, 25:25, 27:13, 28:9,

28:24, 29:5, 31:14, 33:10, 37:12, 42:5, 47:1, 52:2, 61:20, 61:24, 72:16, 73:1, 73:3, 86:25
**turn** [5] - 18:3, 36:11, 49:16, 70:25, 83:1
**turned** [2] - 55:23, 56:14
**tweet** [2] - 69:18, 69:19, 69:20, 76:6, 86:10, 86:11, 86:12
**tweets** [31] - 49:6, 49:7, 55:1, 55:2, 55:3, 55:7, 55:11, 55:13, 56:20, 57:2, 57:20, 57:21, 58:4, 58:11, 58:13, 58:15, 59:10, 59:14, 59:21, 59:22, 59:23, 59:24, 59:25, 60:11, 69:15, 69:17, 83:13, 83:19, 86:13
**twice** [1] - 29:20
**Twitter/X** [1] - 31:20
**two** [27] - 13:24, 14:3, 29:23, 38:24, 48:8, 48:17, 50:15, 53:17, 53:18, 54:13, 55:7, 55:11, 55:23, 56:19, 57:19, 57:20, 58:12, 59:23, 59:24, 67:25, 69:15, 69:17, 77:5, 83:13, 83:14, 86:18
**two..** [1] - 33:24
**TX** [1] - 2:5
**tying** [1] - 44:11
**type** [2] - 32:15, 72:6
**types** [1] - 26:3
**typically** [2] - 6:3, 32:18

## U

**ultimately** [2] - 29:9, 67:18
**umbrella** [1] - 72:9
**unanimous** [1] - 35:13
**unavailability** [1] - 15:2
**unavoidable** [1] - 9:19
**unclear** [1] - 4:24
**uncommon** [1] - 63:17
**Uncovering** [1] - 31:3
**under** [9] - 15:18, 51:8, 53:18, 54:14, 68:14, 68:21, 75:1, 82:7, 85:9
**underlying** [1] - 65:15
**undermine** [4] - 19:7,

19:21, 46:11, 84:13
**understood** [1] - 70:24
**unduly** [3] - 64:25, 65:3, 65:8
**unique** [1] - 63:4
**UNITED** [2] - 1:1, 1:9
**unless** [1] - 22:3
**unsuccessful** [2] - 19:5, 19:19
**up** [21] - 4:4, 9:2, 9:4, 9:18, 9:19, 11:9, 15:6, 18:5, 22:15, 24:4, 35:20, 41:15, 43:3, 43:8, 43:16, 54:4, 69:23, 81:6, 81:10, 85:6
**uses** [1] - 18:9

## V

**vague** [1] - 18:10
**validity** [1] - 46:12
**various** [5] - 8:2, 18:14, 18:23, 31:2, 35:20
**venire** [2] - 17:6, 22:11
**verdict** [1] - 35:13
**vernacular** [2] - 30:20, 32:15
**version** [2] - 17:1, 36:14
**versus** [1] - 3:3
**video** [2] - 78:16, 78:20
**videotape** [2] - 13:4, 13:8
**videotaped** [3] - 13:4, 13:6, 13:13
**view** [3] - 26:5, 26:24, 70:18
**viewed** [3] - 31:2, 57:7, 57:8
**vile** [3] - 20:16, 20:24, 21:2
**viscerally** [2] - 79:19, 81:2
**void** [1] - 87:20
**voir** [10] - 7:19, 7:20, 17:1, 17:4, 22:8, 22:10, 22:15, 30:1, 34:12, 35:2
**volume** [2] - 59:14, 83:17
**volunteer** [4] - 28:9, 28:11, 28:14
**volunteers** [1] - 49:9
**VON** [1] - 1:17
**Von** [1] - 3:19
**voted** [1] - 27:11

**vs** [1] - 1:4

## W

**wait** [1] - 82:21
**waiting** [1] - 16:17
**Waldron** [2] - 52:15
**Wandrea** [1] - 2:8
**War** [1] - 31:5
**Washington** [4] - 1:6, 1:14, 2:11, 23:9
**watched** [2] - 29:23, 30:3
**watches** [1] - 30:15
**Watson** [2] - 13:1, 67:23
**ways** [1] - 74:7
**website** [4] - 67:3, 67:5, 67:6, 77:25
**week** [7] - 10:5, 12:4, 12:15, 15:23, 29:20, 29:21
**weirdness** [1] - 46:14
**welcome** [1] - 79:9
**well-pleaded** [2] - 75:7, 75:25
**White** [5] - 47:25, 48:13, 48:17, 84:19, 84:20
**whole** [5] - 5:3, 19:24, 22:1, 22:11, 76:17
**widely** [2] - 49:2, 49:3
**willful** [1] - 36:20
**Willkie** [3] - 1:13, 3:9, 3:18
**winds** [1] - 43:16
**withdraw** [2] - 40:4, 40:6
**withdrawing** [1] - 38:9
**withdrawn** [1] - 40:13
**witness** [5] - 11:3, 12:10, 16:7, 16:8, 78:24
**witness's** [1] - 34:5
**witnesses** [12] - 10:11, 10:16, 10:25, 11:10, 12:21, 13:16, 13:24, 13:25, 14:3, 34:4, 62:16, 86:25
**woman** [3] - 12:22, 12:23, 12:25
**wondered** [2] - 18:15, 66:16
**wonderful** [1] - 62:19
**word** [6] - 18:17, 18:19, 20:3, 20:9, 28:10, 39:13
**worded** [1] - 41:9
**words** [4] - 18:9, 39:3, 54:23, 65:7

**wordy** [3] - 39:2, 39:14, 39:19
**worker** [1] - 27:8
**works** [1] - 48:4
**worlds** [1] - 81:15
**worse** [1] - 81:9
**worst** [2] - 81:15, 83:10
**worth** [1] - 14:21
**wound** [1] - 43:8
**write** [2] - 61:20, 61:24
**writing** [1] - 15:19
**WWG1WGA** [2] - 32:22, 33:17

## Y

**year** [2] - 55:19, 56:10
**yes/no** [1] - 22:16
**yesterday** [1] - 8:6
**York** [2] - 4:1, 19:1
**you-all** [6] - 15:20, 41:2, 60:16, 60:18, 65:22, 76:10
**yourself** [3] - 16:20, 54:4, 65:20
**yourselves** [1] - 3:6
**YouTube** [1] - 49:8

## Z

**zero** [1] - 84:1
**zeroing** [1] - 73:25
**Zoom** [1] - 5:18