UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUBY FREEMAN, *et al.*, | |
| Plaintiffs, | Civil Action No. 21-3354 (BAH) |
| v. | Judge Beryl A. Howell |
| RUDOLPH W. GIULIANI, | |
| Defendant. | |

## INSTRUCTIONS TO THE JURY

The attached instructions were read to the jury in the trial of the captioned case on December 14, 2023, and given to the jury for deliberations on December 14, 2023.

Date: December 18, 2023

_____
**BERYL A. HOWELL**
United States District Judge

FINAL JURY INSTRUCTIONS — *Freeman, et al. v. Giuliani*, No. 21-cv-3354

Members of the jury, at this time, it is now my duty and responsibility as the trial judge to give you final instructions as to the law that applies in this case and to the evidence that has been presented. It is your sworn duty to base your verdict upon the law given in these instructions and upon the evidence that has been admitted in this trial.

My instructions will be roughly divided into four parts.

> First, I will instruct you on the general principles of law that apply here.

> Second, I will instruct you on evaluating the evidence.

> Third, I will instruct you on the law that applies to determining the amount of any damages owed to plaintiffs **Ruby Freeman and Wandrea ArShaye ("Shaye") Moss** by defendant **Rudolph W. Giuliani**. As I have explained, your duty in this case is limited to determining the amount of any money damages to award plaintiffs.

> Finally, I will provide some instructions about logistics and how you are to conduct your deliberations.

I will provide you with written copies of these instructions for your use during deliberations, with enough copies for each of you to have one, so there is no need for you to take notes now. I have allowed you to take notes during the trial if you wished to do so. Recall that those notes are only for your personal use and are only to be used as an aid to your memory. Your notes are not evidence in the case, and they should not replace your memory of the evidence. Those of you who have chosen not to take notes should rely on your own memory of the evidence. During your deliberations, you may, if you want, refer to these instructions. While you may refer to any particular portion of the instructions, you are to consider the instructions as a whole and you may not follow some and ignore others. If you have any questions about the instructions, you should feel free to send me a note, and I will give you instructions later about how to send me a note. These instructions will be returned to me when your verdict is rendered.

### *General Instructions*

As I told you at the beginning of the trial, the function of the judge is to conduct the trial of the case in an orderly, fair, and efficient manner. The judge also must rule upon questions of law arising during the trial and must tell you the law that applies to this case. It is your duty to accept the law as I state it to you without questioning the wisdom of these instructions. In other words, even if you disagree or do not understand the reasons for any of the instructions, you are bound to follow them.

If an attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you follow.

Your function as jurors is to decide the facts. You are the exclusive judges of the facts. You alone determine the weight, the effect, and the value of the evidence, and the believability of the witnesses. You should decide the facts only from a fair evaluation of all the evidence, without prejudice, sympathy, fear, or favor.

During the course of the trial, you have heard references to the terms "plaintiff" and "defendant." Simply put, the plaintiff is the person who starts a lawsuit and the defendant is the person who is sued by the plaintiff. During your deliberations, however, you must not attach any significance in weighing the evidence to the terms "plaintiff" and "defendant." In other words, the fact that the plaintiffs have filed a lawsuit against the defendant does not mean that the plaintiffs are entitled to your verdict or that their evidence is entitled to greater weight than the defendant's evidence.

As I mentioned, you must treat and consider all of these instructions as a whole. All of the instructions are important. You must not disregard, ignore, or give special attention to any single instruction or part of an instruction differently than the other instructions, nor may you question the correctness of any rule I may state to

you. That is, you must not substitute or follow your own notion or opinion as to what the law is or what it ought to be. It is your duty to apply the law as I give it to you, regardless of the consequences.

Remember that you are not advocates in this matter. You are neutral judges of the facts. The final test of the quality of your service will lie in the verdict that you return to this courtroom. You will make an important contribution to the cause of justice if you arrive at a just and proper verdict in this case. Therefore, during your deliberations in the jury room, your purpose should not be to support your own opinion but to determine the facts.

During the course of the trial, I may have asked questions of a witness, to obtain information or to bring out or clarify facts. You should not take my questions to witnesses as any indication of my opinion about how you should determine the facts.

Similarly, you should not take any rulings I have made during the trial or anything I have said or done during this case, including giving these instructions, as indicating what facts you should find or what your verdict should be based on those facts. You are the sole and exclusive judges of the facts.

The lawyers in this case sometimes objected when the other side asked a question, made an argument, or offered evidence that the objecting lawyer believed was not proper. Objections are not evidence. You must not hold such objections against the lawyer who made them or the party he or she represents. It is the lawyer's responsibility to object to evidence that she or he believes is not admissible.

Our system of justice requires that you decide the facts of this case in an impartial manner. You must not be influenced by bias, sympathy, prejudice, or public opinion. It is a violation of your sworn duty to base your verdict upon anything other than the evidence in this case. In reaching a just verdict, you must consider and decide this case as an action between persons of equal standing in the community and of equal worth. All persons stand equal before the law and must be treated as equals in this court.

### *Evaluating the Evidence*

Now I'm going to talk about evaluating the evidence. You may consider only the evidence admitted in the case. The evidence consists of the sworn testimony of witnesses, exhibits admitted into evidence, and facts undisputed by the parties. You may consider any facts to which the parties have agreed to be undisputed.

If, during the course of the trial, I sustained an objection to a lawyer's question or any evidence, then you should ignore the question and you must not guess about what the answer would have been. Similarly, if I sustained an objection to an exhibit, then you should ignore the exhibit and it should play no part in your deliberations.

Statements and arguments of the lawyers are not evidence in the case, unless made as an admission or undisputed fact. They are intended only to help you to understand the evidence. Similarly, the questions of the lawyers are not evidence.

If anyone describes the evidence that you heard differently from the way you remember it, it is your memory that should control during your deliberations. You must rely on your own recollection of the testimony and not on any notes you may have taken during the trial.

In a videotaped deposition presented to you, a witness asserted her right under the Fifth Amendment of the U.S. Constitution and refused to answer a series of questions on the ground that doing so may tend to incriminate her. You may infer from such a refusal that the witness's answers would have been adverse to her interest, but you are not required to make such inference and may choose, instead, to disregard the evidence of the assertion of the Fifth Amendment. You should consider any inference you may or may not choose to draw from any such refusal to testify together with all the other evidence in the case.

You should consider all the evidence bearing on each claim, regardless of who produced it. A party is entitled to benefit from all evidence that favors that party, whether that party or the adversary produced it. You should not give more or less weight to evidence just because it happened to be produced by one side or the other.

There are two types of evidence from which you may determine what the facts are in this case—direct evidence and circumstantial evidence. When a witness, such as an eyewitness, asserts actual knowledge of a fact, that witness's testimony is direct evidence. On the other hand, evidence of facts from which reasonable conclusions may be drawn is circumstantial evidence.

I'm going to give you an example. Assume a person looked out a window and saw that snow was falling. If he later testified in court about what he had seen, his testimony would be direct evidence that snow was falling at the time he saw it happen. Assume, however, that he looked out a window and saw no snow on the ground, and then went to sleep and saw snow on the ground after he woke up. His testimony about what he had seen would be circumstantial evidence that it had snowed while he was asleep.

The law says that both circumstantial and direct evidence are acceptable as a means of proving a fact. The law does not favor one form of evidence over another. It is for you to decide how much weight to give to any particular evidence, whether it is direct or circumstantial. You are permitted to give equal weight to both. In reaching a verdict in this case, you should consider all of the evidence presented, both direct and circumstantial.

You are to consider only the evidence in the case. But in your consideration of the evidence, you are not limited to the statements of the witnesses. In other words, you are not limited solely to what you see and hear as the witnesses testified. You may draw from the facts that you find have been proved, such reasonable inferences or conclusions as you feel are justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in this case.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is not a suspicion or a guess. An inference is a reasoned, logical deduction or conclusion which you, the jury, are permitted to draw—but not required to draw—from the facts which have been established by either circumstantial or direct evidence based on your common sense. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiff asks you to draw one set of inferences, while the defendant asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

I have said that you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate. In deciding what the facts are, you must weigh the testimony of all the witnesses who have appeared before you. You are the sole judges of the "credibility" or "believability" of the witnesses and the weight to be given to his or her testimony. In other words, you alone determine whether to believe any witness and to what extent any witness should be believed. Judging a witness's credibility means evaluating whether the witness has testified truthfully and also whether the witness accurately observed, recalled, and described the matters about which the witness testified.

You may consider anything that in your judgment affects the credibility of any witness. For example, you may consider the witness's age, demeanor, capacity to observe and recollect facts, the opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness's memory; the witness's appearance and manner while testifying; the witness's interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness's testimony; the reasonableness of the witness's testimony in light of all the evidence, and any other facts and circumstances bearing on credibility. You may consider whether the witness has any motive for not telling the truth, any interest in the outcome of the case, or any friendship, animosity, or cooperation toward other persons involved in the case, or similarly, evidence of hostility or affection which the witness may have towards one of the parties. You may consider the plausibility

or implausibility of the testimony of a witness. You may also consider whether the witness's testimony has been contradicted or supported by other evidence. It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.

In sum, you may believe everything a witness says, part of it, or none of it. After making your own judgment or assessment concerning the believability of a witness, you can then give that testimony the importance or weight that you feel it deserves.

The weight of the evidence does not necessarily depend upon the number of witnesses who testify. The relative weight of the evidence on a particular issue is not determined by the number of witnesses testifying for either side or the number of exhibits on either side—it depends on the quality, and not the quantity, of the evidence. It is up to you to decide whether to credit the testimony of a smaller number of witnesses or a small number of exhibits on one side or the testimony of a greater number of witnesses or a greater number of exhibits on the other side.

A deposition is the testimony of a person taken before trial. The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions. A court reporter is present and records the questions and answers. During the trial, you heard deposition testimony that was shown by video. Deposition testimony may be accepted by you, subject to the same instructions that apply to witnesses testifying in person in open court.

You should give deposition testimony the same fair and impartial consideration you give any other testimony. You should not give more weight or less weight to deposition testimony just because the witness did not testify in court.

The parties may agree to certain facts. When the lawyers on both sides agree to the existence of a fact, you must, unless otherwise instructed, accept the fact as evidence, and regard that fact as proved and to be undisputed evidence. The parties may also agree to the testimony a particular witness would have given if he or she had testified in this case.

If a party failed to produce relevant evidence or failed to call a witness that could have given relevant testimony at trial, and that evidence or witness was particularly available to that party, and that party did not sufficiently explain why the evidence or witness was not produced, then you are permitted to infer that the evidence or witness would have been unfavorable to the party who failed to produce the evidence or witness.

### *Certain Matters Already Decided*

As I explained at the beginning of the trial, in the preliminary instructions, certain matters have already been decided in this case. I am going to explain what has already been decided in this case, and what you, the jury, will have to decide. You are not being asked to, and you must not, reconsider any of the issues that have already been decided in this case. Before I give you instructions about what has been decided, I will tell you the reason.

In a federal civil action like this case, parties are entitled to the disclosure of all relevant, non-privileged evidence in the other party's possession or control during a process called "discovery." That evidence can include relevant documents and electronically stored information, such as a defendant's computer files, emails, text messages, online chats, social media accounts, and call logs.

Since each party is entitled to obtain the other side's records, all parties to a lawsuit must preserve their records. The Federal Rules require parties to preserve and produce their records so that there will be a level playing field when plaintiffs try to prove their claims and defendants try to prove any defenses to those claims.

In this case, the Court found that Mr. Giuliani willfully refused to comply with his discovery obligations, including by failing to preserve all relevant records and failing to provide plaintiffs with all relevant records. Those records include relevant communications and documents, whether stored in a filing cabinet or on a computer or phone.

The Court also found that Mr. Giuliani's willful refusal to comply with his discovery obligations caused the plaintiffs "prejudice," which means that it harmed their ability to prove their claims.

To address the unfairness to the plaintiffs caused by Mr. Giuliani's misconduct in complying with the rules for fair discovery in a federal civil action, the Court has issued certain orders that Mr. Giuliani is liable to plaintiffs on their three claims against him—without the plaintiffs having to produce any more evidence than they already have, given his failure to produce relevant records. Also, under these orders, certain facts must be assumed in this case. As I will explain again shortly, that means that you will be required to assume certain facts in calculating the amount, if any, of awards of compensatory and punitive damages.

I will first explain plaintiffs' three claims for which Mr. Giuliani is liable and then instruct you on the facts that must be assumed in this case, as you make your determination of any damages owed by Mr. Giuliani to plaintiffs.

The Court already decided that Mr. Giuliani is liable to plaintiffs for defamation, intentional infliction of emotional distress, and civil conspiracy. That means plaintiffs have met their burden of demonstrating all of the factual elements of each of their claims. The Court has also determined that plaintiffs are entitled to seek punitive damages.

You are not being asked to and are not permitted to reconsider these matters. Your only role is to determine the amount of any money Mr. Giuliani owes to plaintiffs, as compensatory damages and an additional amount as punitive damages. You are to decide this issue as to the amount of any money damages based on the evidence that you have heard and the instructions you have received.

I will begin by reviewing each of plaintiffs' three claims and then instruct you in more detail on the legal standards for how to determine the amount of any damages owed.

## CLAIM ONE FOR DEFAMATION

As explained in the preliminary instructions, it already has been decided that Mr. Giuliani is liable to plaintiffs for defamation. That means that you must accept, for purposes of this trial, that Mr. Giuliani defamed Ms. Freeman and Ms. Moss by publishing certain false and defamatory statements about them, that Mr. Giuliani published these statements with actual malice and without privilege to a third party, and that those defamatory statements caused harm to Ms. Freeman and Ms. Moss.

Those defamatory statements are what you will hear referred to as the "Actionable Statements." These are the sixteen defamatory statements made after December 23, 2020, by Mr. Giuliani and his co-conspirators.

The conclusion that Mr. Giuliani published his statements about Ms. Freeman and Ms. Moss means that he personally communicated statements about Ms. Freeman and Ms. Moss to third parties, or that he caused other people to communicate the Actionable Statements to third parties.

The conclusion that the Actionable Statements were false means that they were not true.

In this case, the Court has already decided that the Actionable Statements were defamatory.

A defamatory statement is one that would tend to injure plaintiffs in their trade, profession or community standing, or lower them in the estimation of the community. In particular, the Court has concluded that the Actionable Statements falsely accused Ms. Freeman and Ms. Moss of committing crimes. This is a serious type of defamation known as defamation *per se*.

When a defendant commits defamation *per se*, the plaintiffs need not prove that they were actually injured by the statements. Instead, the law presumes that plaintiffs were injured. In this case, you may presume that the Actionable Statements injured Ms. Freeman and Ms. Moss in their trade, profession, or community standing, and lowered them in the estimation of the community.

The conclusion that Mr. Giuliani made the Actionable Statements "**without privilege to a third party**" means that he did not have a separate legal right to make them.

The conclusion that Mr. Giuliani published the Actionable Statements with **"actual malice"** means that Mr. Giuliani knew his statements about Ms. Freeman and Ms. Moss were false or recklessly disregarded whether they were true at the time that he published those statements. In other words, the Court has found that Mr. Giuliani acted at least with a high degree of awareness that the statements were probably false.

The Court's finding that Mr. Giuliani caused harm to Ms. Freeman and Ms. Moss means they are presumed to have suffered harm as a result of the defamation.

## CLAIM TWO FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The Court has already found Mr. Giuliani liable to plaintiffs for intentional infliction of emotional distress. That means that you are to accept, for purposes of this trial, that Mr. Giuliani intentionally inflicted emotional distress on plaintiffs by engaging in extreme and outrageous conduct that intentionally or recklessly caused Ms. Freeman and Ms. Moss to suffer severe emotional distress.

## CLAIM THREE FOR CIVIL CONSPIRACY

The Court has already found that Mr. Giuliani engaged in a civil conspiracy to commit the torts of defamation and intentional infliction of emotional distress on or before December 3, 2020, with Donald J. Trump, members of the Trump 2020 Presidential Campaign, including members of the Trump Legal team headed by Mr. Giuliani, who caused statements to be published about plaintiffs or participated in such publications, One America News Network ("OAN"), OAN's owners, and certain OAN reporters.

That means that Mr. Giuliani agreed with his co-conspirators to commit defamation and intentional infliction of emotional distress, and took certain acts in furtherance of that agreement.

As a result of this finding, Mr. Giuliani is liable in this case not just for the harm caused by his own actions, but also for all of the harm caused by the actions that his co-conspirators took in furtherance of the same conspiracy.

### *Damages*

Now I'm going to talk about damages. The amount of money awarded to a party in a civil suit is called "damages." The Court has already determined that plaintiffs are entitled to an award of two forms of damages: compensatory and punitive.

You should not consider the fact that I am giving you this instruction as suggesting any view of mine as to whether I think you should award any particular amount of any damages. That decision is entirely for you to make. As I have explained, your duty in this case is limited to determining any amount of money damages to award plaintiffs on their claims against Mr. Giuliani.

Compensatory damages are the amount of money that will fairly and reasonably compensate plaintiffs for the harm they have suffered. As I will explain in greater detail, in this case harm is not limited to physical or economic harm, but also may include things like reputational harm, emotional harm, and mental harm.

Punitive damages are damages awarded to a plaintiff above and beyond the amount of compensatory damages. Punitive damages are not intended to compensate a plaintiff for the harm that the plaintiff has suffered. Rather, the law permits a jury in a civil case to award a plaintiff punitive damages against a defendant as a punishment for outrageous conduct, and to deter others from engaging in similar conduct in the future.

### *Compensatory Damages for Defamation*

By finding Mr. Giuliani liable for plaintiffs' claim for defamation, the Court already has determined that his statements harmed plaintiffs. Your job is to quantify that harm.

Compensatory damages for defamation should reflect the amount of money that you decide will fairly and reasonably compensate each plaintiff for the damages that naturally flow from the publication and republication

of the Actionable Statements made by Mr. Giuliani and his co-conspirators. Such harm may include harassment and threats to plaintiffs or their relatives, pain and mental suffering, lowered professional or personal standing, expenses to remedy the defamation, and lost profits.

You should not award compensatory damages for defamation for any conduct of Mr. Giuliani or his co-conspirators that occurred prior to December 23, 2020. In other words, you should not award any compensatory damages for defamation in connection with any statements made prior to December 23, 2020.

In this case, as I mentioned, it has already been decided that the Actionable Statements were defamatory "per se." These kinds of statements that Mr. Giuliani made are so likely to injure someone that the law presumes those statements harmed plaintiffs in their trade, profession or community standing. Because of this, plaintiffs were not required to prove that they suffered any particular amount of economic harm in order for you to award compensatory damages for Mr. Giuliani's defamatory statements.

Instead, you may presume that plaintiffs suffered harm as a result of the Actionable Statements, and you have substantial latitude to award an amount that you decide, using your good judgment and common sense, fairly compensates the plaintiffs for the harm caused by the Actionable Statements.

Damages to reputation cannot be proved with mathematical accuracy, and you are not required to attempt to do so. You should award an amount that you decide, in the exercise of your good judgment and common sense, is fair and just compensation for the injury to plaintiffs' reputations that the Actionable Statements caused. You should consider the plaintiffs' standing in the community, the nature of the Actionable Statements, the extent to which the Actionable Statements were circulated, the seriousness of the defamatory charge, the tendency of the Actionable Statements to injure a person such as the plaintiffs, the extent to which the communication was actually believed, and all of the other facts and circumstances in the case. Fair compensation may vary, ranging from one dollar, if you decide the injury was nominal, to a substantial sum if you decide that the injury was substantial.

In making this determination, you must assume the following five adverse assumptions:

(1) Mr. Giuliani was intentionally trying to hide relevant discovery about the finances of his businesses, Giuliani Communications LLC and Giuliani Partners LLC, for the purpose of shielding his assets from discovery and artificially deflating his net worth.

(2) Mr. Giuliani was intentionally trying to hide relevant discovery about the viewership of *Common Sense* and his social media reach for the purpose of artificially deflating the reach of his defamatory statements.

(3) Mr. Giuliani received substantial financial benefits from his defamation of Ms. Freeman and Ms. Moss.

(4) Mr. Giuliani's businesses Giuliani Communications LLC and Giuliani Partners LLC continue to generate advertising revenue and other income from their operations.

(5) Mr. Giuliani was intentionally trying to hide evidence about his financial assets for the purpose of artificially deflating his net worth.

Although plaintiffs are not required to present evidence of the harm they have suffered as a result of the Actionable Statements for you to award damages to compensate for that harm, you are entitled to consider any such evidence that was presented. Plaintiffs' burden in presenting such evidence is only to provide a reasonable basis from which you can estimate the harm to their reputation. While you may not engage in speculation or guesswork, you are entitled to approximate plaintiffs' damages based upon the evidence they have presented. Furthermore, if you decide that the evidence does not fully capture the harm that plaintiffs suffered as a result of the damage to their reputations, you may award an additional amount that, using your good judgment and common sense, you decide

is necessary to fully compensate the plaintiffs for the harm caused to their reputations by the Actionable Statements.

The plaintiffs do not have to show that there is an absolute certainty that the injury or loss will continue into the future. You may, however, award damages to compensate Ms. Freeman and Ms. Moss for injury and losses that you determine, by a preponderance of the evidence, will continue.

After you have determined the amount that will adequately compensate each plaintiff for the harm caused by the Actionable Statements, you should enter that amount for each plaintiff on the verdict form.

### *Compensatory Damages for Intentional Infliction of Emotional Distress*

By finding Mr. Giuliani liable for plaintiffs' claim for intentional infliction of emotional distress, the Court already has determined that his actions caused each plaintiff to suffer severe emotional distress. Your job is to quantify that harm.

Plaintiffs' burden is to provide a reasonable basis from which you can estimate their compensatory damages. While you may not engage in speculation or guesswork, you are entitled to approximate plaintiffs' damages based upon the evidence they have presented. There is no exact standard or mathematical formula for deciding the compensation to be awarded for this type of harm. Nor is the testimony of any witness required about the amount of compensation.

To decide the amount that would fairly and reasonably compensate plaintiffs for emotional distress, you should consider the facts of this case in the light of your own experience and common sense. To compensate plaintiffs for intentional infliction of emotional distress, you may consider: any mental pain and suffering, fear, inconvenience, nervousness, indignity, insult, humiliation, or embarrassment that each plaintiff suffered because of Mr. Giuliani and his co-conspirators' conduct.

When determining the amount of damages to award for this claim of intentional emotional distress, you must not consider any of the reputational harm for which you have already awarded compensatory damages for defamation. In considering damages for intentional infliction of emotional distress, you may consider harm caused by Mr. Giuliani and his co-conspirators that occurred any time after December 3, 2020.

Plaintiffs do not need to show that there is an absolute certainty that the injury or loss will continue into the future. But you may award damages to compensate Ms. Freeman and Ms. Moss for injury and losses that you determine, by a preponderance of the evidence, will continue.

In making this determination, you must assume the same five adverse assumptions summarized above.

After you have determined the amount that will adequately compensate each plaintiff for the harm caused by Mr. Giuliani and his co-conspirators' intentional infliction of emotional distress, you should enter that amount on the verdict form.

As I instructed you, for the subset of damages plaintiffs seek for future losses, plaintiffs must establish those damages by a preponderance of the evidence. To establish a fact by a preponderance of the evidence is to prove that it is more likely so than not so. In other words, a preponderance of the evidence means that the evidence produces in your mind the belief that the thing in question is more likely true than not true.

The fact that plaintiffs have filed a lawsuit against Mr. Giuliani does not mean that plaintiffs' evidence is entitled to greater weight than any evidence that the defendant may put before you. If, after considering all of the evidence, the evidence favoring the plaintiffs' side of an issue is more convincing to you, and causes you to believe that the probability of truth favors the plaintiffs on that issue, then the plaintiffs will have succeeded in carrying the burden of proof on that issue.

The term "preponderance of the evidence" does not mean that the proof must produce absolute or mathematical certainty. For example, it does not mean proof beyond a reasonable doubt as is required in criminal cases. Those of you who have sat as a juror on a criminal case will have heard of proof beyond a reasonable doubt. That requirement does not apply in a civil case. Therefore, you should put it out of your mind. Whether there is a preponderance of the evidence depends on the quality, and not the quantity, of evidence.

In other words, merely having a greater number of witnesses or documents bearing on a certain version of the facts does not necessarily constitute a preponderance of the evidence. If you believe that the evidence is evenly balanced on an issue that the plaintiffs had to prove, then the plaintiffs have not carried the burden of proof and your finding on that issue must be for the defendant.

### *Compensatory Damages for Civil Conspiracy*

As I have explained, the Court has already determined that Mr. Giuliani acted as part of a civil conspiracy to commit the torts of defamation and intentional infliction of emotional distress on or before December 3, 2020, with Donald J. Trump, members of the Trump 2020 Presidential Campaign, including members of the Trump Legal team headed by Mr. Giuliani, who caused statements to be published about plaintiffs or participated in such publications, One America News Network ("OAN"), OAN's owners, and certain OAN reporters.

That means, for purposes of this case, that it has already been decided that Mr. Giuliani is liable for the harm caused not just by his own actions, but also for the harm caused by actions of his co-conspirators taken in furtherance of the conspiracy.

Accordingly, in quantifying compensatory damages for defamation and intentional infliction of emotional distress, you must consider evidence of harm caused not just by Mr. Giuliani himself, but also harm caused by the actions of Mr. Giuliani's co-conspirators during the relevant period of time for each cause of action. In sum, you should award an amount of compensatory damages against Mr. Giuliani that you determine is necessary and sufficient to compensate plaintiffs for all of the harm inflicted on them by the entire conspiracy, not just by Mr. Giuliani's individual actions.

In making this determination, you must assume the same five adverse assumptions summarized above.

Finally, you heard testimony that there was a settlement with some of Mr. Giuliani's co-conspirators, including One America News Network, its owners, and certain of its reporters. Do not speculate as to whether there was a monetary recovery through that settlement, because even if there was such a recovery, it would be irrelevant to your determination of an appropriate amount of damages. As I just instructed you, Mr. Giuliani is fully liable for the harm caused by his co-conspirators.

### *No Duplicative Damages*

Any compensatory damages you award for harms the plaintiffs suffered as a result of Mr. Giuliani's liability for defamation or intentional infliction of emotional distress must not be duplicative. In other words, the amount of compensatory damages you award for defamation should only consider the amount to compensate plaintiffs for harm to their reputation and must not include any harm relating to the emotional distress plaintiffs suffered. The amount of compensatory damages for intentional infliction of emotional distress must compensate solely for emotional damages, and should not attempt to compensate plaintiffs for any harm for which you have already awarded compensation on plaintiffs' defamation claim.

### *Punitive Damages*

It has already been decided that plaintiffs are legally entitled to seek punitive damages, in addition to compensatory damages, because it has already been determined that Mr. Giuliani is liable for defamation *per se* and acted with actual malice. Your job is to decide the amount of any punitive damages award.

Punitive damages are damages above and beyond the amount of compensatory damages. Punitive damages are awarded to the plaintiffs to punish Mr. Giuliani for his conduct and to serve as an example to prevent others from acting in a similar way. You should not award punitive damages in an amount larger than necessary to achieve these goals. Unlike for compensatory damages, you should award punitive damages *only* for Mr. Giuliani's own conduct, not conduct of his co-conspirators.

The amount of punitive damages is left to your good judgment. In determining the appropriate amount of punitive damages, you may consider:

- The nature and reprehensibility of the wrong committed. That would include the character of the wrongdoing and Mr. Giuliani's awareness of what harm the conduct caused or was likely to cause. In considering the amount of punitive damages to award, you should weigh this factor heavily.
- The actual and potential harm created by Mr. Giuliani's conduct;
- Mr. Giuliani's financial condition at the time of trial and the impact your punitive damages award will have on the defendant;
- Any attorney's fees that plaintiffs have incurred in this case.

In making this determination, you must assume the same five adverse assumptions summarized above.

Although you should use your discretion to choose the appropriate amount of punitive damages, the law still requires that the amount be reasonable in proportion to the amount of compensatory damages that a plaintiff has suffered. Punitive damages that are more than ten times compensatory damages are almost never permissible. Usually, a permissible punitive damages award will not be more than four times compensatory damages. You should also take care not to award punitive damages that duplicate compensation that you have already awarded as compensatory damages.

After you have determined the amount of punitive damages that you find is appropriate in this case, you should enter that amount on the verdict form.

## *Logistical Matters*

Now, I am now going to turn to some logistical matters for when you begin your deliberations.

When you return to the jury room, you should first select a foreperson to preside over your deliberations and to be your spokesperson here in court. Consider selecting a foreperson who will encourage civility and mutual respect, who will invite each juror to speak up regarding his or her views about the evidence, and who will promote full and fair consideration of the evidence.

The verdict must represent the considered judgment of each juror. In order to return a verdict, your verdict must be unanimous—that is, each juror must agree to the verdict.

Each of you has a duty to consult with other jurors in an attempt to reach a unanimous verdict. You must decide the case for yourself, and you should not surrender your honest beliefs about the effect or weight of evidence merely to return a verdict or solely because of other jurors' opinions. However, you should seriously consider the views of your fellow jurors, just as you expect them seriously to consider your own views, and you should not hesitate to change an opinion if you are convinced by other jurors.

If it becomes necessary to communicate with me, you may send a note by giving it to a court security officer who will be sitting outside the jury room. The note must be signed by the foreperson or one or more members of the jury. No member of the jury should ever attempt to communicate with me by any means other than a signed writing. I will not communicate with any member of the jury on any subject touching on the merits of the case other than in writing, or orally here in open court. Likewise, the court security officer and all other persons are forbidden to communicate in any way or manner with any member of the jury on any subject touching on the

merits of the case.

Bear in mind also that you are never to reveal to any person—not even to me—how the jury stands on the questions before you, numerically or otherwise, until after you have reached a unanimous verdict.

I will be sending into the jury room with you the exhibits that have been admitted into evidence. You may examine any or all of them as you consider your verdict. Please keep in mind that any exhibit that was only used as a demonstrative or marked for identification but was not admitted into evidence will not be given to you to examine or to consider in reaching your verdict.

Throughout your deliberations, you may discuss with each other the evidence and the law that has been presented in this case, but you must not communicate with anyone else by any means about the case. You also cannot learn from outside sources about the case, the matters in the case, the legal issues in the case, or individuals or other entities involved in the case. This means you may not use any electronic device or media (such as a phone, computer, or tablet), the internet, or any text or instant messaging service, or any social media apps (such as Twitter/X, Facebook, Instagram, LinkedIn, YouTube, WhatsApp, Snapchat, and TikTok) to research or communicate about what you've seen and heard in this courtroom.

These restrictions continue during deliberations because it is essential that you decide this case based solely on the evidence and law presented in this courtroom. Information you find on the internet or through social media might be incomplete, misleading, or inaccurate. And, as I noted in my instructions at the very start of the trial, even using your smartphones, tablets, and computers—including the news and social media apps on those devices—may inadvertently expose you to certain notices, pop-ups or advertisements that could influence your consideration of the matters you've heard about in this courtroom.

You are permitted to discuss the case only with your fellow jurors during deliberations because they have seen and heard the same evidence and instructions on the law that you have, and it is important that you decide this case solely on the evidence presented during the trial, without undue influence by anything or anyone outside of the courtroom. For this reason, I expect you to inform me at the earliest opportunity, should you learn about or share any information about this case outside of this courtroom or the jury room, or learn that another juror has done so.

A verdict form has been prepared for your convenience. You will take this form to the jury room. The verdict form contains several questions. The answer to each question must be the unanimous answer of the jury. Your foreperson will write the unanimous answer of the jury in the space provided at the end of each question. The foreperson will then date and sign the verdict form as so completed when you have completed your deliberations. You will then notify the court security officer sitting outside the jury room with a note stating that you have reached a unanimous verdict. Do not show the court security officer the form or say anything about your verdict. The form will be given to me and read aloud by your foreperson when you return to the courtroom.

Thank you for your attention as I have given you these instructions. You may now retire to the jury room and begin your deliberations.