UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RUBY FREEMAN, *et al.*,

    Plaintiffs,

v.

RUDOLPH W. GIULIANI,

    Defendant.

Civil Action No. 21-3354 (BAH)

Judge Beryl A. Howell

**MEMORANDUM AND ORDER**

Following a jury trial on damages owed to plaintiffs Ruby Freeman and Wandrea' ArShaye "Shaye" Moss that concluded on December 15, 2023, and this Court's entry of final judgment on December 18, 2023, *see* Final Judgment, ECF No. 142, plaintiffs now seek an order of dissolution of the 30-day automatic stay for enforcement of judgment pending resolution of any appeal, under Federal Rule of Civil Procedure 62(a), and for permission to register their judgment immediately in "any other district," pursuant to 28 U.S.C. § 1963. Pls.' Mot. to Dissolve Stay of Execution and for Leave to Register Judgment in Any Other District ("Pls.' Mot."), ECF No. 139.[1] Defendant Rudolph W. Giuliani "does not contest that the final judgment can be registered in any other district," Def.'s Resp. Pls.' Mot. ("Def.'s Opp'n") at 1 n.1, ECF No. 143, and opposes only the part of plaintiffs' motion seeking to "abnormally shorten[] or dissolve[]" the stay of execution for thirty days provided by Rule 62(a), *id*. In circumstances such as those presented by the record in this case, there is nothing "abnormal" about plaintiffs' request. To the contrary, as discussed in more detail below, plaintiffs' request to dissolve the otherwise automatic 30-day stay of

---

[1]     Plaintiffs' motion and accompanying attachments in support of their motion are docketed three times, at ECF Nos. 139, 140, and 141, but, to simplify citation, only plaintiffs' motion docketed at ECF No. 139 is cited.

1

enforcement of the judgment is both appropriate and warranted. Plaintiffs' motion is therefore granted for the reasons explained in more detail below.

## I. BACKGROUND

On December 15, 2023, following the entry of default judgment against Giuliani on liability for plaintiffs' three claims of defamation, intentional infliction of emotional distress, and civil conspiracy to commit those torts, *see* Default Judgment Decision, *Freeman v. Giuliani*, No. 21-cv-3354 (BAH), 2023 WL 5600316, at *26 (D.D.C. Aug. 30, 2023); Default Judgment Order, ECF No. 93, and after presentation of evidence and argument during four days of trial on the amount of compensatory and punitive damages owed by Giuliani to plaintiffs, an eight-member jury returned a unanimous verdict, *see* Verdict Form, ECF No. 135. Based on the evidence presented of Giuliani's past and continuing—including up to and during trial—defamation of plaintiffs, and testimony by plaintiffs' damages expert, Dr. Ashlee Humphreys, regarding the monetary amount that would be necessary to counter and repair plaintiffs' reputation due to the false defamatory statements published and republished about plaintiffs by Giuliani and his co-conspirators over the last three years, the jury returned a unanimous verdict, awarding: (1) as compensatory damages for defamation by Giuliani and his co-conspirators, $16,171,000 to Freeman and $16,998,000 to Moss; (2) as compensatory damages for emotional distress inflicted by Giuliani and his co-conspirators, $20,000,000 to each plaintiff; and (3) as punitive damages for Giuliani's conduct, $75,000,000, to be divided between plaintiffs, for a total award of $148,169,000. *See* Verdict Form. The amount of compensatory damages for defamation awarded by the jury was nearly $10,000,000 *less* than the amount requested by plaintiffs for reputational harm, *see* Trial Tr., Morning Sess. at 73:8–10 (Dec. 14, 2023) (plaintiffs' counsel Michael J. Gottlieb requesting "at least $24 million in reputational damages for each plaintiff"); Joint Pretrial

Submission ("JPTS") at 14, ECF No. 105 ("[P]laintiffs will seek a sum ranging from $15.5 million to $43 million [on plaintiffs' defamation claim]."), and *less* than the low-end of the damages range identified by Dr. Humphreys, *see* Trial Tr., Morning Sess., at 137:23–138:4 (Dec. 13, 2023) (Dr. Humphreys testifying that a campaign "to repair this reputational harm" "would cost anywhere from $17.8 million to $47.4 million"). Plaintiffs made no recommendation to the jury concerning the monetary amount of compensatory damages for intentional infliction of emotional distress or regarding punitive damages. *See* Trial Tr., Morning Sess. at 77:14–16 (Dec. 14, 2023) (plaintiffs' counsel Michael J. Gottlieb stating that "we're not providing you with a number to assign to intentional infliction of emotional distress"). The punitive award of $75,000,000 was nearly equivalent to the total compensatory award of $73,169,000—*i.e.*, well below the multiplier jurors had been instructed was generally permissible. *See* Jury Instructions at 10, ECF No. 137 ("Punitive damages that are more than ten times compensatory damages are almost never permissible. Usually, a permissible punitive damages award will not be more than four times compensatory damages.").

The parties' Joint Stipulation Regarding Entry of Final Judgment agreed to reduce the compensatory damages award by more than $2,000,000, as "resolution of any setoff claim Defendant Giuliani may have arising from Plaintiffs' May 31, 2022 settlement agreement with the other defendants in this litigation," reducing the total amount to $145,969,000, plus post-judgment interest and costs. Joint Stip. Regarding Final Judgment at 1, ECF No. 138; *id.*, Proposed Order at 1, ECF No. 138-1.

On December 18, 2023, this Court entered Final Judgment, adopting the parties' Joint Stipulation, and ordering Giuliani to pay plaintiffs $145,969,000 in compensatory and punitive damages, as reflected in the jury damages award, and to reimburse plaintiffs $237,113 in attorney's

3

fees, plus post-judgment interest, for plaintiffs' three successful discovery motions against Giuliani, as ordered by this Court in July, August, and September 2023, with which orders Giuliani has failed to comply. Final Judgment at 1–2.[2] Indeed, Giuliani has simply ignored the orders directing reimbursement to plaintiffs of attorney's fees for discovery misconduct, without seeking extensions of time to make reimbursement, requesting any payment schedules or making any excuse for his nonpayment by the deadlines set in court orders.[3]

Plaintiffs' instant motion for expedited consideration of their request for an order directing dissolution of the automatic stay of execution of judgment under Federal Rule of Civil Procedure 62(a), and authority to register immediately their judgment in any other judicial district pursuant to 28 U.S.C. § 1963, may now be resolved, having heard Giuliani's opposition to the same.

---

[2] In accordance with the parties' Joint Stipulation, *see* Joint Stip. Regarding Final Judgment at 2–3, the following declaratory relief was also ordered with respect to plaintiffs' claims for defamation, intentional infliction of emotional distress, and civil conspiracy, declaring that (1) "the Actionable Statements set forth in the Amended Complaint, ECF No. 22, are false; that those statements are defamatory and defamatory *per se* . . . and that those statements caused plaintiffs harm"; (2) that "Giuliani engaged in extreme and outrageous conduct which intentionally and maliciously caused the plaintiffs to suffer severe emotional distress"; (3) that "Giuliani entered into an agreement on or before December 3, 2020 . . . to participate in defamation of and intentional infliction of emotional distress on plaintiffs, and that plaintiffs were injured by unlawful overt acts performed by parties to the agreement," and (4) that "defendant's conduct was intentional, malicious, wanton, and willful, such that plaintiffs are entitled to punitive damages," Final Judgment at 2–3.

[3] Specifically, Giuliani was directed to reimburse plaintiffs attorney's fees in the amount of (1) $89,172.50, for successfully litigating their Motion to Compel Discovery, *see* ECF No. 44; (2) $43,684 for successfully litigating their Motion to Compel Discovery from Giuliani's eponymous businesses, Giuliani Communications LLC and Giuliani Partners LLC, *see* ECF No. 70; and (3) $104,256.50 for successfully litigating their Motion for Sanctions, *see* ECF No. 81, plus interest. Subsequent orders were issued, after Giuliani was given ample opportunities to contest any attorney's fees requested, with deadlines for reimbursement payments, all of which deadlines have been entirely ignored by Giuliani, who has not paid a dime. *See* Minute Order (July 13, 2023) (directing Giuliani "by July 25, 2023, to reimburse plaintiffs $89,172.50 in attorneys' fees incurred in litigating their Motion to Compel Discovery," ECF No. 44); Default Judgment Decision, 2023 WL 5600316, at *3 (ordering Giuliani, by September 20, 2023, to "ensure the Giuliani Businesses reimburse plaintiffs' attorneys fees associated with their successful motion to compel discovery from the [Giuliani] Businesses, in the amount totaling $43,684"); Minute Order (Sept. 22, 2023) (directing Giuliani, by October 6, 2023, to "reimburse plaintiffs $104,256.50 in attorneys' fees incurred in the filing of plaintiffs' Motion for Sanctions," ECF No. 81); *see also* Am. JPTS at 19, ECF No. 115 (jointly stipulating that "[t]he Court . . . has ordered Defendant Giuliani to reimburse Plaintiffs for at least $237,113 in legal fees they incurred in litigating three discovery motions, which he has not yet paid").

## II.   DISCUSSION

Plaintiffs represent that dissolution of the automatic stay of judgment is necessary for several reasons, including that Giuliani "has demonstrated an unwillingness to comply with judicial process, including orders to pay attorney's fees and costs," and "appears to have no assets in the District of Columbia but substantial assets in—at least—both New York and Florida." Pls.' Mot. at 1.  Given that Giuliani his simply ignored several prior court orders to reimburse attorney's fees, plaintiffs posit that his conduct in this litigation presents "a substantial risk" that "Giuliani will find a way to dissipate those assets before Plaintiffs are able to recover," a concern compounded by the fact that "Giuliani is widely reported to have other, significant debts threatening his personal solvency." *Id.*

Giuliani dismisses plaintiffs' reasons for expedition in trying to collect on their compensatory and punitive damage award, cheekily responding that "[i]f Giuliani had intentions of absconding with or fraudulently transferring assets, he has had ample time to do it," and that plaintiffs "point to no evidence to demonstrate that what Giuliani could have done for years now, he will do in the next 30 days." Def.'s Opp'n at 2.  Giuliani's position thus appears to be that just as he has shielded his true financial status from examination by refusing to comply with discovery rules and court orders, he could have already effectively used that shield to hide his assets to avoid paying plaintiffs' judgment against him. Notably, though he regularly speaks publicly about this case, Giuliani has never denied that he has taken steps to hide his assets from judgment creditors, and has offered no affirmative pledge that he will take no steps to do so, including in the next 30 days.  Nevertheless, Giuliani urges that "the Court should allow [] ample time—including the thirty days under Fed. R. Civ. P. 62(a)—for [him] to file the appropriate motions in this Court and/or the Court of Appeals to stay enforcement of the judgment while this 'unusual' case is on appeal." *Id.*

at 4. Giuliani's response is not persuasive. Instead, his reasoning only bolsters the concerns animating plaintiffs' motion.

Federal Rule of Civil Procedure 62(a), as most recently amended in 2018, provides that "execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, *unless the court orders otherwise*." FED. R. CIV. P. 62(a) (emphasis supplied). The "[a]mended Rule 62(a) expressly recognizes the court's authority to dissolve the automatic stay," including if there is a "risk that the judgment debtor's assets will be dissipated." FED. R. CIV. P. 62(a), Adv. Comm. Note to 2018 Amend.; *see also* Charles Alan Wright et al., 11 FED. PRAC. & PROC. CIV. § 2902 (3d ed. 2023) ("As explained in the Committee Note, the court might decide to dissolve the stay if there is a risk that the judgment debtor's assets will be dissipated[.]"); 12 MOORE'S FEDERAL PRACTICE – CIVIL § 62.02 (2023) (same).

Courts have routinely exercised their discretion, codified in Rule 62(a), to dissolve the 30-day automatic stay as a means of precluding the judgment debtor from taking advantage of the standard "thirty-day window to conceal and dissipate [their] assets." *Mattel, Inc. v. wwwfisherpriceonline*, No. 21-cv-9608 (LJL), 2022 WL 2801022, at *15 (S.D.N.Y. July 18, 2022); *see also McGraw Hill LLC v. Doe 1*, No. 20-cv-0356 (LJL), 2022 WL 2979721, at *3, *8 (S.D.N.Y. July 26, 2022) (following default judgment on plaintiffs' copyright and trademark claims against non-appearing defendants, "grant[ing] Plaintiffs' request to dissolve the automatic stay" and "allow for the immediate enforcement of judgment pursuant to Federal Rule of Civil Procedure 62(a)"); *Mattel, Inc. v. Arming*, No. 18-cv-8824 (LAP), 2021 WL 3683871, at *9 (S.D.N.Y. Aug. 18, 2021) ("dissolv[ing] the automatic stay imposed by Rule 62 and allow[ing] for the immediate enforcement of the judgment"); *Allstar Mktg. Grp., LLC v. AFACAI*, No. 20-cv-8406 (JPC), 2021 WL 2555636, at *8 (S.D.N.Y. June 22, 2021) (explaining the Court's "power to

6

order the execution of a judgment to occur before the close of th[e] 30-day window" under Rule 62(a), and "dissolv[ing] the automatic 30-day stay" (citation omitted)); *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 385 (S.D.N.Y. 2020), *adhered to in part on reconsideration*, No. 18-cv-1774 (LJL), 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020) ("reliev[ing] Plaintiffs of the 30-day stay" where plaintiffs contend that such automatic stay "create[s] a 30-day window for Defaulting Defendants . . . to transfer, dispose of, or otherwise hide assets that may be necessary to support the judgment").[4]

Here, several considerations make clear the risk that Giuliani may attempt to "conceal and dissipate [his] assets" during the thirty-day period provided by Rule 62(a), *wwwfisherpriceonline*, 2022 WL 2801022, at *15, justifying this Court's exercise of discretion to order immediate dissolution of the automatic stay.

---

[4]  Giuliani attempts to distinguish certain cases cited by plaintiffs as "inapposite" because they "involve[ed] a pre-judgment freezing of assets under New York law" and "[t]here was no pre-judgment asset freeze in this case[.]" Def.'s Opp'n at 2 & n.2 (citing *wwwfisherpriceonline*, 2022 WL 2801022; *Arming*, 2021 WL 3683871; *Allstar Mktg. Grp., LLC*, 2021 WL 2555636; *Mattel, Inc. v. 1622758984*, No. 18-cv-8821 (AJN), 2020 WL 2832812 (S.D.N.Y. May 31, 2020)). This is an incorrect reading of these cases. Each of these courts recognized, without qualification or limitation to the prejudgment asset restraint context, their express authority under Rule 62(a) to dissipate the 30-day stay and allow immediate enforcement of judgment to avert the same concerns raised here regarding the risk of concealment or dissipation of assets. *See www.fisher-price.online*, 2022 WL 2801022, at *15 ("Plaintiff requests a continuance of the pre-judgment asset restraint because the automatic stay and absence of interim asset restraint provide Defendant a thirty-day window to conceal and dissipate its assets. . . . The Court may address these concerns by ordering immediate enforcement of the judgment pursuant to Federal Rule of Civil Procedure 62(a)." (citations omitted)); *Arming*, 2021 WL 3683871, at *9 (same); *Allstar Mktg. Grp., LLC*, 2021 WL 2555636, at *8 (addressing plaintiff's concern that the Rule 62 automatic stay will "giv[e] the Defaulting Defendants time to conceal their assets," and "dissolv[ing] the automatic 30-day stay imposed by Rule 62 to allow for immediate enforcement of the judgment"); *1622758984*, 2020 WL 2832812, at *7 ("Plaintiff asserts that, in light of this automatic stay and in the absence of an interim asset freeze, defaulting Defendants would have a 30-day window to conceal or dissipate their assets. Plaintiff's concerns may be addressed by allowing for immediate enforcement of the judgment in this case, which Rule 62 explicitly grants this Court authority to order." (citing FED. R. CIV. P. 62(a), Adv. Comm. Note to 2018 Amend.)). As other authorities make plain, Rule 62(a)'s express grant of discretion to dissolve the 30-day automatic stay is not limited to the prejudgment asset restraint context. *See, e.g.*, *McGraw Hill LLC*, 2022 WL 2979721, at *4–8 ("allow[ing] for the immediate enforcement of judgment pursuant to Federal Rule of Civil Procedure 62(a)" following award of statutory damages on plaintiffs' claims for copyright infringement and trademark counterfeiting); *see also* Charles Alan Wright et al., 11 FED. PRAC. & PROC. CIV. § 2902 (3d ed. 2023) ("As explained in the Committee Note, the court might decide to dissolve the stay if there is a risk that the judgment debtor's assets will be dissipated."); 12 MOORE'S FEDERAL PRACTICE – CIVIL § 62.02 (2023) (same).

First, as plaintiffs correctly explain, Giuliani has "proven himself to be an unwilling and uncooperative litigant," Pls.' Mot. at 3, whose repeated failures to comply with "basic preservation and production duties . . . necessitat[ed] the entry of default judgment against [him] on liability as a discovery sanction," Mem. Op. & Order Denying Def.'s Obj. Jury Trial, *Freeman v. Giuliani*, No. 21-3354 (BAH), 2023 WL 8360664, at *2 (D.D.C. Dec. 3, 2023) (citing Default Judgment Decision, 2023 WL 5600316, at *3–12, 26). Giuliani cannot and does not dispute that he has continued to disregard the Court's orders directing payment of plaintiffs' attorney's fees and costs in connection with plaintiffs' successful discovery motions. *See* Am. JPTS at 19, ECF No. 115 (jointly stipulating that "[t]he Court . . . has ordered Defendant Giuliani to reimburse Plaintiffs for at least $237,113 in legal fees they incurred in litigating three discovery motions, which he has not yet paid"); *see also* Default Judgment Order at 3 (directing entry of default judgment and ordering sanctions for "defendant's failure timely to reimburse plaintiffs' $89,172.50 in attorneys' fees" for plaintiffs' Motion to Compel Discovery, ECF No. 44); *id.* (directing Giuliani to "ensure that the Giuliani Businesses reimburse plaintiffs' attorneys fees associated with their successful motion to compel discovery from those Businesses . . . in the amount totaling $43,684"); Minute Order (Sept. 22, 2023) (directing Giuliani "to reimburse plaintiffs $104,256.50 in attorneys' fees incurred in the filing of plaintiffs' [] Motion for Sanctions," ECF No. 81"). Giuliani's failure to "satisfy even more modest monetary awards entered earlier in this case," Pls.' Mot. at 4 n.2, provides good cause to believe that he will seek to dissipate or conceal his assets during the 30-day period contemplated by Rule 62(a).

Second, as plaintiffs submit and as Giuliani does not contest, "Giuliani has numerous and mounting debts, including to his own attorneys and other litigants seeking to reduce their claims to judgment." Pls.' Mot. at 3. Plaintiffs attach two such complaints against Giuliani to their

motion, including a creditor action brought by Giuliani's counsel in criminal matters, Robert Costello, seeking "payment of an outstanding bill for legal services . . . in the amount of $1,360,196.10." Pls.' Mot., Decl. of Michael J. Gottlieb ("Gottlieb Decl."), Ex. 1, Complaint ¶ 1, *Davidoff Hutcher & Citron LLP et al. v. Giuliani*, No. 654558/2023, ECF No. 1 (N.Y. Sup. Ct. Sept. 18, 2023); *see also* Pls.' Mot., Gottlieb Decl., Ex. 2, Complaint, *Biden v. Giuliani et al.*, No. 23-cv-8032, ECF No. 1 (C.D. Cal. Sept. 26, 2023) (complaint brought by Robert Hunter Biden against Giuliani, Giuliani businesses, and others, seeking damages, injunctive relief, and equitable relief).  These potentially competing claims to Giuliani's assets raise the risk that Giuliani has even greater motivation to hide his financial assets from potential future judgments against him.

Giuliani feebly counters concerns about him hiding assets, stating that "there is no evidence in the record of any attempt by [him] to dissipate assets." Def.'s Opp'n at 2.  This statement simply ignores the ample record in this case of Giuliani's efforts to conceal or hide his assets by failing to comply with discovery requests, including "plaintiffs' requests for financial information." Default Judgment Decision, 2023 WL 5600316, at *22.  This precise discovery misconduct triggered the Court's imposition of sanctions in the form of not only default judgment on liability, but also more stringent adverse inference instructions to the jury than would have been given had Giuliani complied with discovery requests for financial records. *See id.* at *23 (ordering, "as a sanction for failing to comply with . . . the [Court's] Orders, the jury will be instructed that they *must*, when determining an appropriate sum of punitive damages, infer that Giuliani is intentionally trying to hide relevant discovery about his financial assets for the purpose of artificially deflating his net worth" (emphasis in original) (citation omitted)); Additional Sanctions Order, *Freeman v. Giuliani*, No. 21-cv-3354 (BAH), 2023 WL 8360653, at *2 (D.D.C. Oct. 13, 2023) (ordering four additional adverse inferences on which the "jury [would] be instructed . . . when determining an

9

appropriate sum of compensatory, presumed, and punitive damages" as a sanction for Giuliani's failure to comply with plaintiffs' document requests for Giuliani's financial-related information and records, as required in the Default Judgment Decision and Order).[5]

Nowhere in opposition does Giuliani promise not to hide assets from plaintiffs. Nor does he contend, let alone demonstrate with documentary or other proof, that he would be *unable* to satisfy the judgment, in whole or in part. *See generally* Def.'s Opp'n. To be sure, Giuliani's counsel argued to the jury at the damages trial that plaintiffs' requested damages award would amount to "the civil equivalent of the death penalty, because if [jurors] award the amount of damages they're asking for, it will be the end of Mr. Giuliani," Trial Tr., Afternoon Sess., at 59:5–9 (Dec. 11, 2023), and Giuliani has made similar representations during this litigation that "financial difficulties" hampered his ability to immediately pay plaintiffs' attorney's fees ordered by this Court, Default Judgment Decision, 2023 WL 5600316, at *23 (citation omitted). Yet, Giuliani's persistent refusal to respond to plaintiffs' discovery requests precluded plaintiffs from testing the veracity of Giuliani's claimed "financial difficulties," and this Court's ability to evaluate his resources to satisfy judgment such that then, as now, "Giuliani has failed to show that he cannot pay the [amount] he owes." *Id*. Such claims of Giuliani's "financial difficulties"—no matter how many times repeated or publicly disseminated and duly reported in the media—are difficult to square with the fact that Giuliani affords a spokesperson, who accompanied him daily to trial, *see* Trial Tr., Morning Sess., at 19:16–19 (Dec. 13, 2023) (plaintiffs' counsel Michael J. Gottlieb referencing "Giuliani and his spokesperson, who [he] believe[s] is sitting in the court

---

[5] Giuliani suggests that plaintiffs' request for dissolution of the 30-day stay of enforcement should be granted "only on condition that security be posted by the judgment creditor," Def.'s Opp'n at 3 (quoting FED. R. CIV. P. 62(a), Adv. Comm. Note to 2018 Amend.), but that "[p]laintiffs make no such offer of bond or security in their Motion," *id*. The bond condition suggested in the advisory notes is plainly discretionary, and Giuliani cites no authority—indeed this Court is aware of none—expressly conditioning dissolution of the 30-day stay on the creditor's posting of security.

10

today, Mr. [Ted] Goodman"); *see also* Alison Durkee, *Giuliani Must Pay $148 Million In Damages For Defaming Georgia Election Workers*, Forbes (Dec. 15, 2023), https://www.forbes.com/sites/alisondurkee/2023/12/15/giuliani-must-pay-148-million-in-damages-for-defaming-georgia-election-workers/?sh=41b200c4606f (noting "Giuliani's spokesperson Ted Goodman ha[d] not yet responded to a request for comment" following conclusion of trial on December 15, 2023), and plaintiffs' counsel's submission, based on "report[s] in the press and confirmed by [p]laintiffs' initial investigation," Pls.' Mot. at 5, and uncontested by Giuliani, *see generally* Def.'s Opp'n, that "Giuliani . . . does have significant assets in other jurisdictions, including residential properties located in the Southern District of New York and the Southern District of Florida," and "numerous accounts at financial institutions located in New York," Pls.' Mot., Gottlieb Decl. ¶¶ 3–4; *see also* Pls.' Mot. at 5.

Finally, Giuliani contends that "if the Court allows immediate execution of the final judgment, then Giuliani will have no chance to have the damages award reduced on remittitur or even seek a stay from the D.C. Circuit," which "will be presented with [issues]—some of them novel—that create a stronger likelihood that the final judgment may be, at minimum, altered in some way on appeal." Def.'s Opp'n at 3–4. While not pre-judging any remittitur arguments that may be made by Giuliani, the obvious fact that the jury's unanimous awards were conservative as to the plaintiffs' requested compensation for reputational harm due to Giuliani's defamation *per se*, based on the expert's calculation of the cost of repairing their reputations, and the jury's punitive damages award was nearly equivalent to compensatory damages, rather than multiplied by up to four times compensatory damages, reduction of the award on remittitur faces some challenges. Moreover, should this case be appealed, Giuliani can avoid any claimed prejudice and obtain a stay of enforcement "at any time by posting a full supersedeas bond pursuant to Federal

11

Rule of Procedure 62(b)." Pls.' Mot. at 4 n.2; *see* FED. R. CIV. P. 62(b) ("At any time after judgment is entered, a party may obtain a stay by providing a bond or other security."). Given that "the stay operates for the appellant's benefit and deprives the appellee of the immediate benefits of his judgment, a full supersedeas bond should be the requirement in normal circumstances[.]" *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980). "Although the court has discretion to depart from the usual requirement of a supersedeas bond for the full amount of judgment, the burden is 'on the moving party to objectively demonstrate the reasons for such a departure.'" *Howard Town Ctr. Dev., LLC v. Howard Univ.*, 288 F. Supp. 3d 11, 13 (D.D.C. 2017) (citation omitted). Thus, to obtain a stay of enforcement of the judgment pending any appeal beyond the 30-days of the automatic stay, Giuliani would have to comply with the usual requirement of a full supersedeas bond or demonstrate why that requirement should not apply—a showing difficult to make when there is more than "reasonable likelihood of the judgment debtor's inability or unwillingness to satisfy the judgment in full upon ultimate disposition of the case." *Fed. Prescription Serv., Inc.*, 636 F.2d at 760.

### III. CONCLUSION AND ORDER

For the reasons set forth above, it is hereby

**ORDERED** that plaintiffs' Motion to Dissolve Stay of Execution and for Leave to Register Judgment in Any Other District, ECF No. 139, is **GRANTED**; it is further

**ORDERED** that the stay of execution of the final judgment entered on December 18, 2023, and of proceedings to enforce it, provided under Federal Rule of Civil Procedure 62(a), is DISSOLVED, effective immediately; it is further

**ORDERED** that, pursuant to 28 U.S.C. § 1963, plaintiffs are authorized to register immediately the final judgment entered on December 18, 2023, in any other district of the United States; and it is further

**ORDERED** that the Clerk of Court is directed to issue plaintiffs a completed and signed Form AO451, together with a copy of the final judgment entered on December 18, 2023, and a copy of this Memorandum and Order.

**SO ORDERED**.

Date:  December 20, 2023

_____
**BERYL A. HOWELL**
United States District Judge