UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUBY FREEMAN<br><br>and<br><br>WANDREA' MOSS,<br><br>       Plaintiffs,<br><br>   v.<br><br>RUDOLPH W. GIULIANI,<br><br>       Defendant. | Civil Action No. 21-3354 (BAH) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW**

## <u>TABLE OF CONTENTS</u>

Table of Contents ........................................................................................................... i

Table of Authorities ...................................................................................................... ii

Introduction ................................................................................................................... 1

Legal Standard .............................................................................................................. 1

Background .................................................................................................................... 2

    A.    Defendant Giuliani Incurs A Default Judgment As To Liability As A Rule 37 Sanction For His Willful Discovery Violations. ...................................................... 3

    B.    The Case Goes To Trial In December 2023, During Which The Court Denies Defendant Giuliani's Rule 50(a) Motion, And A Jury Awards More Than $148 Million In Compensatory And Punitive Damages. ................................................. 3

    C.    Defendant Giuliani Files for Bankruptcy Protection Under Chapter 11. .................... 6

Argument ....................................................................................................................... 7

  I.    Defendant Giuliani's Argument That Plaintiffs' Complaint Fails to State a Claim Is Foreclosed as a Matter of Law. ................................................................ 8

  II.    Defendant Giuliani's Objection to the Inclusion Of "Unpleaded" Statements Is Foreclosed as a Matter of Law. ............................................................................. 9

  III.    Defendant Giuliani Is Not Entitled to Relief Based on His Argument that the IIED Claims Are Barred by the Statute of Limitations. ............................................. 10

  IV.    Defendant Giuliani Is Not Entitled to Judgment as a Matter of Law or a New Trial on the Award of IIED Damages. ................................................................... 15

  V.    Defendant Giuliani Is Not Entitled to Judgment as a Matter of Law Relating to the Expert Testimony of Dr. Humphreys. .................................................... 19

Conclusion ................................................................................................................... 23

Certificate of Service ................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*Browning v. Clinton,*
    292 F.3d 235 (D.C. Cir. 2002) ............................................................................... 14

*Daskalea v. District of. Columbia,*
    227 F.3d 433 (D.C. Cir. 2000) ............................................................................... 16

*David v. District of Columbia,*
    No. 02-1145 (RWR), 2006 WL 1582277 (D.D.C. June 6, 2006) ............................ 18

*Eastman v. Wolf,*
    No. 87-CV-1952-OG, 1988 WL 35361 (D.D.C. Apr. 5, 1988) ................................ 21

*Freeman v. Hoft,*
    No. 4:21-cv-01424 (E.D. Mo. Dec. 5, 2021) .......................................................... 17

*Hanoch Tel-Oren v. Libyan Arab Republic,*
    517 F. Supp. 542 (D.D.C. 1981) ............................................................................ 14

*Huthnance v. District of Columbia,*
    793 F. Supp. 2d 183 (D.D.C. 2011) ................................................................ *passim*

*Jones v. NVR Inc.,*
    No. CV 20-453 (CKK), 2022 WL 951338 (D.D.C. Mar. 29, 2022) ......................... 22

*United States ex rel. Landis v. Tailwind Sports Corp.,*
    No. 10-CV-00976 (CRC), 2017 WL 5905509 (D.D.C. Nov. 28, 2017) ................... 21

*LaShawn A. v. Barry,*
    87 F.3d 1389 (D.C. Cir. 1996) ................................................................................. 8

*Martin v. Howard Univ.,*
    No. 99-1175 TFH, 2006 WL 2850656 (D.D.C. Oct. 4, 2006) .................................. 8

*Masias v. EPA,*
    906 F.3d 1069 (D.C. Cir. 2018) ............................................................................. 12

*McGill v. Muñoz,*
    203 F.3d 843 (D.C. Cir. 2000) ........................................................................... 2, 19

*O'Connell v. Fernandez-Pol,*
    542 F. App'x 546 (9th Cir. 2013) ........................................................................... 13

*Perioperative Servs. & Logistics, LLC v. U.S. Dep't of Veterans Affs.,*
    57 F.4th 1061 (D.C. Cir. 2023) .......................................................................... 9, 12

*In re Rudolph W. Giuliani,*
No. 23-12055 (SHL) (Bankr. S.D.N.Y. Dec. 21, 2023) ...........................................6

*Sedgwick v. Giant Food, Inc.,*
110 F.R.D. 175 (D.D.C. 1986) .......................................................................19

**Statutes**

11 U.S.C. § 108(b)(2) ...................................................................................6

11 U.S.C. § 362(a) .......................................................................................6

**Other Authorities**

Fed. R. Civ. P. 8(c)(1) ..................................................................................11

Fed. R. Civ. P. 12(h)(2) ................................................................................11

Fed. R. Civ. P. 50, 2006 ................................................................................2

Fed. R. Civ. P. 50(a)(1) .................................................................................2

Fed. R. Civ. P. 50(a)(2) ..............................................................................2, 9

Fed. R. Civ. P. 51(b), (c) ..............................................................................16

Fed. R. Civ. P. 59(a), (e) ...............................................................................2

Federal Rule of Evidence 703 ..........................................................................21

11 Wright & Miller, Fed. Prac. & Proc. Civ. § 2803 (3d ed.) .....................................19

Plaintiffs Ruby Freeman and Wandrea' ArShaye "Shaye" Moss ("Plaintiffs") respectfully submit this opposition to Defendant Rudolph W. Giuliani's renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure ("Rule" or "Rules") 50, and in the alternative for a new trial and/or to alter or amend the Final Judgment under Rule 59. *See* ECF No. 147 (the "Motion").

## <u>INTRODUCTION</u>

This Court should swiftly deny Defendant Giuliani's Motion. Consistent with the way he has litigated throughout this case, Defendant Giuliani attempts to do the bare minimum to raise theoretical defenses without seriously engaging with the questions before this Court, much less offering any legitimate basis to disturb the jury's verdict or the judgment. As Defendant Giuliani acknowledged at the Rule 50(a) stage, most of the arguments he raises in this Motion are foreclosed by the effect of the default judgment, which resolved all liability questions in Plaintiffs' favor. These arguments are therefore unavailable to Defendant Giuliani in this Court *or* on appeal unless he first succeeds in overturning this Court's discretionary imposition of a default judgment sanction. Further, as this Court held at the Rule 50(a) stage, the bulk of Defendant Giuliani's remaining legal arguments are foreclosed by the law of the case because the Court has already considered and rejected them. Defendant Giuliani has given no more reason to revisit them here than he did at the Rule 50(a) stage. And Defendant Giuliani's remaining arguments are waived. Thus, the Court need not engage with the merits of the arguments in the Motion to deny it in full. But even if it does, the same result should follow.

## <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 50(a) authorizes a party to ask for judgment as a matter of law if a "court finds that a reasonable jury would not have a legally sufficient evidentiary basis to

find for the party on that issue." Fed. R. Civ. P. 50(a)(1). Such a motion "must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). If a Rule 50(a) motion is not granted, Rule 50(b) permits a party who moved under Rule 50(a) to "file a renewed motion." Fed. R. Civ. P. 50(b). Because "a post-trial Rule 50(b) motion is limited to a renewal of a Rule 50(a) motion for judgment as a matter of law, the post-trial motion is limited to those grounds that were specifically raised in the prior motion." *Huthnance v. District of Columbia*, 793 F. Supp. 2d 183, 197 (D.D.C. 2011); *see* Fed. R. Civ. P. 50, 2006 Advisory Committee Note ("Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion."). "Judgment as a matter of law is appropriate only if the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not have reached a verdict in plaintiff's favor." *McGill v. Muñoz*, 203 F.3d 843, 845 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Rule 59 authorizes a court to grant a new trial or to alter or amend a judgment. Fed. R. Civ. P. 59(a), (e). "A district court should deny a motion for new trial unless 'the court is convinced that the jury verdict was a seriously erroneous result where denial of the motion will result in a clear miscarriage of justice.'" *Huthnance*, 793 F. Supp. 2d at 204 (citations and quotation marks omitted).

## **<u>BACKGROUND</u>**

The relevant factual and procedural background of this case is extensive, and well known to this Court. Plaintiffs summarize it here only as relevant to the Motion.

**A.    Defendant Giuliani Incurs A Default Judgment As To Liability As A Rule 37 Sanction For His Willful Discovery Violations.**

Defendant Giuliani contested his liability in only two filings during the pendency of the case: (1) in a motion to dismiss, directed at the legal sufficiency of Plaintiffs' allegations (ECF No. 26), which the Court denied in all respects, holding that Plaintiffs' Amended Complaint adequately alleged defamation per se, intentional infliction of emotional distress, and civil conspiracy (ECF No. 31); and (2) in an answer that raised certain affirmative defenses, including a broad reference to "the applicable statute of limitations (the single publication rule)" (ECF No. 33, at ¶ 194). On August 30, 2023, the Court entered default judgment as to liability, as a sanction for Defendant Giuliani's "willful shirking of his discovery obligations." ECF No. 94 ("Default Judgment Order"), at 5. The Default Judgment Order conclusively deemed Plaintiffs' factual allegations admitted and resolved Mr. Giuliani's liability to Plaintiffs as to all claims. *Id.* at 56. The Court determined that before "final judgment may be entered reflecting the amount of compensatory and punitive damages, if any, to be awarded to plaintiffs, a trial on such damages is required." *Id.* at 56.

**B.    The Case Goes To Trial In December 2023, During Which The Court Denies Defendant Giuliani's Rule 50(a) Motion, And A Jury Awards More Than $148 Million In Compensatory And Punitive Damages.**

This Court held a jury trial between December 11–14, 2023. Before the case was submitted to the jury, Defendant Giuliani made an oral motion for a directed verdict. *See* Exhibit A at 33–46.[1] During the Rule 50(a) Motion, Defendant Giuliani moved for a directed verdict based on the following six arguments: (1) the complaint failed to state a claim (Ex. A at 34:5–8); (2) the Court allowed in without engaging in a statement-by-statement analysis of certain unpleaded statements,

_____

[1] An excerpted copy of the transcript from December 14, 2023 is attached as Exhibit A.

including pre-December 23, 2020 statements relating to the IIED claim, that are "protected opinion, protected under the First Amendment, and failed to adequately plead actual malice as to those statements" (*id*. at 34:15–37:3); (3) the civil conspiracy claim cannot survive because "they were not identified as overt act in furtherance of the conspiracy" (*id*. at 37:4–6); and (4) the IIED conduct occurring before December 23, 2020 is barred by the statute of limitations based on "case law that I am familiar with that says you can't repackage what is really a defamation claim in the form of an IIED claim and then try to avoid limitations" (*id*. at 37:7–13); and (5) the lack of "competent evidence" to support "future emotional harm or mental anguish" due to the lack of expert testimony (while acknowledging that "for past mental anguish damages, there is no need for an expert to testify on that") (*id*. at 37:17–38:1); and (6) the impressions model is "unreliable" (*id*. at 38:2–6). During the Rule 50(a) Motion, Defendant Giuliani's counsel explained that he understood that the "Court had stricken our answer" but was making the statute of limitations argument anyways for purposes of appeal. *Id*. at 37:14–16.

The Court issued an oral ruling denying the Rule 50(a) Motion. *Id*. at 41–46. The Court observed:

> Given the particular posture of this case, where this Court has already found that plaintiffs' claims are legally sufficient in a ruling denying Mr. Giuliani's motion to dismiss the complaint, and in this Court's ruling that Mr. Giuliani is liable by default for his discovery misconduct on plaintiffs' three claims for defamation, intentional infliction of emotional distress and civil conspiracy, the testing of plaintiffs' claims again on the Rule 50 motion, to my mind, may very well be foreclosed by law of the case.

*Id*. at 42:18–43:2. The Court explained that "to the extent that Mr. Sibley has revived all of his motion-to-dismiss claims as part of his Rule 50 motion, the Court will rest on both its motion-to-dismiss decision as well as its default judgment decision in resolving those—and the law of the case doctrine, not to go into all of the details of all of that yet again." *Id*. at 43:3–8. But the denial

of the Rule 50(a) Motion did not rest on the law of the case doctrine alone, with the Court explaining that "the evidence presented at trial has only further established a legally sufficient evidentiary basis for a jury to find for plaintiffs on the three claims they present due to the default judgment." *Id*. at 43:15–18. The Court's denial of the Rule 50(a) Motion concluded:

> Based on all of the evidence presented by plaintiffs, including their own testimony describing what they have been through since Mr. Giuliani and his co-conspirators seized on and spread lies about their conduct on election night in 2020, the expert testimony, the testimony of the Georgia officials and the Republican poll watcher, a reasonable jury would have a legally sufficient evidentiary basis to find for the plaintiffs and award at least some damages as compensation for the harm caused by Mr. Giuliani and his co-conspirators, and as punitive damages against Mr. Giuliani for his continued promotion of these same lies up to the very first day of this trial.

*Id*. at 45:14–46:25.

On December 15, the jury returned a verdict awarding Plaintiffs more than $148 million in combined compensatory and punitive damages. ECF No. 135. The Court entered final judgment on December 18, 2023. ECF No. 142. That same day, Plaintiffs filed a motion seeking leave to register the judgment in any district of the United States, and for relief from Rule 62(a)'s automatic 30-day stay of execution. ECF No. 140. The Court granted that motion on December 20, 2023. ECF No. 144. In doing so, the Court observed,

> [w]hile not pre-judging any remittitur arguments that may be made by Giuliani, the obvious fact that the jury's unanimous awards were conservative as to the plaintiffs' requested compensation for reputational harm due to Giuliani's defamation *per se*, based on the expert's calculation of the cost of repairing their reputations, and the jury's punitive damages award was nearly equivalent to compensatory damages, rather than multiplied by up to four times compensatory damages, reduction of the award on remittitur faces some challenges.

*Id.* at 11.

### C.       Defendant Giuliani Files for Bankruptcy Protection Under Chapter 11.

The day after the Court authorized Plaintiffs to immediately execute on the verdict, Defendant Giuliani filed a Chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). *See In re Rudolph W. Giuliani*, No. 23-12055 (SHL) (Bankr. S.D.N.Y. Dec. 21, 2023), ECF No. 1. The filing of that petition triggered the automatic bankruptcy stay, applicable to this case, pursuant to 11 U.S.C. § 362(a).

On January 5, 2024, Mr. Giuliani moved in the Bankruptcy Court for an order modifying the automatic stay to permit him to file Rule 50(b) and 59 motions in this Court, and for leave to file a notice of appeal and prosecute such an appeal. *See* Debtor's Motion for an Order Modifying the Stay, *In re Rudolph W. Giuliani*, No. 23-12055 (SHL) (Bankr. S.D.N.Y. Jan. 5, 2024), ECF No. 25. In that motion, Mr. Giuliani argued that the respective deadlines to file those documents were extended for 60 days following the petition date by operation of 11 U.S.C. § 108(b)(2). *Id.* ¶ 8. Plaintiffs opposed the motion but, after receiving assurances that no estate assets would be expended on Mr. Giuliani's post-trial briefing or his filing of a notice of appeal, ultimately consented to a limited modification of the stay for the *sole* purpose of preserving Mr. Giuliani's rights to seek review of the judgment below.

Accordingly, on February 20, 2024, the Bankruptcy Court entered an Order Granting Limited Relief from the Automatic Stay to Preserve Certain Post-Trial Rights. *In re Rudolph W. Giuliani*, No. 23-12055 (SHL) (Bankr. S.D.N.Y. Feb. 20, 2024), ECF No. 124 (the "Partial Lift Stay Order"). A copy of that Partial Lift Stay Order is attached to this brief as Exhibit D. As set forth in the Partial Lift Stay Order, the Bankruptcy Court "modified" the automatic stay

> solely as to [Mr. Giuliani and Plaintiffs] and solely to the extent necessary to permit and authorize (a) [Mr. Giuliani] to (i) file and litigate in the District Court a post-trial motion (or motions) in the Freeman Litigation under Federal Rule of Civil Procedure 50 and/or Federal Rule of Civil Procedure 59 (each, a 'Post-Trial Filing'), and

(ii) file a notice of appeal from the Freeman Judgment entered on December 18, 2023 ('Notice of Appeal'); and (b) [Plaintiffs] to litigate and otherwise oppose such Post-Trial Filings.

Ex. D ¶ 2. The Order further provided:

For the avoidance of doubt, the automatic stay is modified solely as set forth above and the Post-Trial Filings shall be adjudicated in the discretion of the District Court. Except with respect to the filing of a Notice of Appeal, any appeal of the Freeman Litigation shall remain subject to the automatic stay.

*Id.* ¶ 3.[2]

Mr. Giuliani filed the instant Motion on February 20, 2023. Minutes later, Mr. Giuliani filed a notice of appeal to the D.C. Circuit, which that court docketed as No. 24-7021. The D.C. Circuit promptly entered an order holding that case in abeyance pending disposition of the instant motion in this Court. *See* ECF No. 150. Plaintiffs have also notified the D.C. Circuit that, independent of its order holding Mr. Giuliani's appeal in abeyance, any appeal remains stayed pursuant to the terms of the Partial Lift Stay Order, with the sole exception of the filing of a notice of appeal. Letter from M. Gottlieb to Hon. M. Langer, *Freeman v. Giuliani*, No. 24-7021 (D.C. Cir. Feb. 23, 2024).

## **ARGUMENT**

Defendant Giuliani asks the Court to revisit its prior holdings and undo the jury's unanimous verdict based on five arguments: (1) the complaint's purported failure to state a claim based on the arguments that the Court rejected in denying his motion to dismiss; (2) the Court's

---

[2] As the Partial Lift Stay Order makes clear, the Bankruptcy Court authorized Defendant Giuliani to file the instant Motion but left all other matters related to its disposition, including the timing of Plaintiffs' opposition and the Court's ultimate decision, to this Court's "discretion." Ex. ¶ 3. While the Court should of course exercise that discretion as it sees fit, now that Plaintiffs have seen that Defendant Giuliani's Motion is primarily an attempt to preserve issues for appeal (rather than seek meaningful relief from this Court), Plaintiffs' position is that the Court should deny the Motion promptly.

decision (at ECF No. 119) allowing the inclusion of "unpleaded statements" that Defendant Giuliani claims were protected opinion and lacked adequate proof of actual malice or that they were "taken in furtherance of any conspiracy Giuliani was a member of"; (3) the claimed untimeliness of the IIED-related statements; (4) the purported lack of "competent evidence because there was no expert testimony as to future harm or mental anguish damages"; and (5) the "inadmissible" testimony of Dr. Ashlee Humphreys. As discussed in turn below, none of these arguments warrant overturning the jury's "conservative" verdict.

## I.    Defendant Giuliani's Argument That Plaintiffs' Complaint Fails to State a Claim Is Foreclosed as a Matter of Law.

First, Defendant Giuliani "incorporates by reference his arguments in his Motion to Dismiss, and reargues them." Motion at 4. As this Court properly held at the Rule 50(a) stage, even if Defendant Giuliani were permitted to test these arguments at the Rule 50 stage in light of the default judgment, those arguments are foreclosed by the Court's prior decisions as law of the case. Ex. A at 42:18–43:14; *see* ECF No. 119 (rejecting the sufficiency of the pleading argument as "law of the case" and citing cases); *see* ECF No. 31 (denying Defendant Giuliani's motion to dismiss). Defendant Giuliani has offered no reason why the result should be any different at the Rule 50(b) stage and, of course, there is none. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (under "the law-of-the-case doctrine[,] the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result"*); *Martin v. Howard Univ.*, No. 99-1175 TFH, 2006 WL 2850656, at *5 (D.D.C. Oct. 4, 2006) ("The purpose of a Rule 50(b) motion is not to rehash decisions that were made pre-trial, but to determine whether the jury verdict was supported by the evidence presented at trial."); *see also id.* (denying Rule 59 motion for a new trial where same arguments did not "show a manifest error of law or fact").

## II.     Defendant Giuliani's Objection to the Inclusion Of "Unpleaded" Statements Is Foreclosed as a Matter of Law.

Defendant Giuliani repeats his objection to Plaintiffs' reliance on evidence of so-called "unpleaded conduct" at the trial on damages, arguing that the "unpleaded conduct suffers from the same defects as the pleaded conduct – it fails to properly allege conspiracy" and "actual malice, as well as being protected opinion." Mot. at 4. Defendant Giuliani does not in the Motion provide any explanation of which actual conduct before the jury constituted "unpleaded" conduct, let alone to "specify" the fact or law that entitles him to judgment as a matter of law on this basis. Fed. R. Civ. P. 50(a)(2); *see, e.g., Perioperative Servs. & Logistics, LLC v. U.S. Dep't of Veterans Affs.*, 57 F.4th 1061, 1067 (D.C. Cir. 2023) (to preserve an argument, it is insufficient to "mention[] it in the most skeletal way") (cleaned up). The failure to do so alone warrants rejecting this argument.

If the Court is inclined to try to discern what the Motion means when it refers to "unpleaded" conduct, Defendant Giuliani refers to the Court's December 7, 2023 order in which the Court rejected Defendant Giuliani's attempt to limit Plaintiffs "to proving damages on all claims based only on twelve defamatory statements identified in" the Amended Complaint. *See* Mot. at 4 (citing ECF No. 119 (order) and ECF Nos. 110 & 114 (Giuliani filings)); *see also* ECF No. 119 at 14–16 (explaining that Defendant Giuliani had been on notice of the additional four statements since before the Default Judgment Order).[3] By Defendant Giuliani's own admission, the Court already has heard and rejected the Motion's argument about "unpleaded" conduct. Accordingly, the law-of-the-case doctrine forecloses Defendant Giuliani's arguments, and he has

---

[3] The Court confirmed during its discussion of the Rule 50(a) Motion that the four statements refer to two tweets posted by Team Trump and two posts by Mr. Giuliani, all of which were disclosed prior to the Default Judgment Order. Ex. A at 35:2-36:5; *see also* ECF No. 119 at 14–16.

not cited any basis for why the Court's sound reasoning in the December 7, 2023 order warrants reversal—let alone provides the basis for a directed verdict or new trial.

While Defendant Giuliani does not, directly or indirectly, reference any other "unpleaded conduct" in the Motion, his counsel in the Rule 50(a) Motion also alluded to pre-December 23, 2020 statements that he claimed Plaintiffs were trying to "sue on" for IIED and that the Court was therefore required to assess with a "statement-by-statement analysis" for opinion, actual malice, or First Amended defense. Ex. A at 35:21–36:16. The Court need not engage with that argument because Defendant Giuliani has neither renewed it here, nor explained why the Court's earlier rejection of the argument should be revisited, which it should not. Defendant Giuliani never made the argument at any point prior to his Rule 50(a) Motion and, when he raised the argument during the Rule 50(a) Motion, he failed to provide the requisite factual and legal basis the law requires. *See supra* at 9; *infra* at 12. Defendant Giuliani did not then or now provide any legal support for his contention that Plaintiffs were required to plead—and the Court required to individually assess—every single statement that formed part of a course of conduct underlying Plaintiffs' IIED claim. Finally, the Default Judgment Order bars this argument because Defendant Giuliani lost the opportunity to wage legal defenses to liability, including that the IIED-related conduct was constitutionally protected, by choosing to refuse to comply with discovery and orders of the Court.

## III.    Defendant Giuliani Is Not Entitled to Relief Based on His Argument that the IIED Claims Are Barred by the Statute of Limitations.

Defendant Giuliani argues that he is entitled to judgment as a matter of law or a new trial because Plaintiffs' IIED claim is time-barred since "the one-year statute of limitations for defamation applies to any cause of action based on such conduct." Motion at 4 (citing cases). Like his first argument, this argument is foreclosed by the Default Judgment, which struck his Answer and affirmative defenses, including any limitations defense. Defendant Giuliani conceded as much

in his Rule 50(a) motion, where he expressly stated: "I understand the Court has stricken our answer in that defense, but for purposes of appeal, I would make that argument now." Ex. A at 37:15–16. That concession is equally binding in this Rule 50(b) renewal of Defendant's Rule 50(a) motion. Additionally, this Court should go a step further and hold that this argument is also waived because Defendant Giuliani raised it for the first time only in his Rule 50(a) motion, and then with insufficient specificity to preserve the issue. And in any event, as Defendant Giuliani acknowledges, this argument is also foreclosed by the effect of the Default Judgment. Finally, Defendant Giuliani's argument is meritless.

First, the argument is waived several times over. Defendant Giuliani did not raise it in his motion to dismiss. ECF No. 26-2.[4] He did not raise the argument in the parties' joint pre-trial statement. ECF No. 105 at 4. He did not raise it in his final pretrial objections. *See* ECF No. 119 at 15–16 (noting that "Giuliani does not address plaintiffs' IIED claim, arguing only about limitations on plaintiffs' claimed damages for defamation and civil conspiracy"). A statute-of-limitations argument is not a "failure to state a claim" defense that can be raised as late as trial, *see* Fed. R. Civ. P. 12(h)(2). It is an affirmative defense that must be raised in a responsive pleading and litigated throughout discovery and pre-trial proceedings. *See* Fed. R. Civ. P. 8(c)(1). An oral Rule 50(a) motion is too late. Plaintiffs' counsel promptly noted as much in responding to Defendant Giuliani's Rule 50(a) motion, Ex. A at 40:3–13 ("This argument is waived.").

---

[4] In his motion to dismiss, Defendant Giuliani argued only that if Plaintiffs' defamation claims were dismissed, their IIED claims should be dismissed too, because (according to him) they "rely on the same facts" ECF No. 26-2, at 19. He never addressed the statute of limitations, and crucially, did not argue what he is arguing now: namely, that *even if Plaintiffs' defamation claims succeeded*, the IIED claim could not proceed because of factual similarity between the two. Plaintiffs have never had a chance to respond—including at the Rule 50(a) stage—to the argument Defendant Giuliani has belatedly arrived at today. In addition to the numerous other grounds to reject it, the Court should deem it waived for this reason as well.

Furthermore, and separately, Defendant Giuliani did not adequately raise this argument even in his Rule 50(a) motion. In that motion, Defendant Giuliani's counsel asserted that "*there is case law that I am familiar with* that says you can't repackage what is really a defamation claim in the form of an IIED claim and then try to avoid limitations." Ex. A 37:7–16. (emphasis added). As is well established, to raise an issue adequately for preservation purposes, it is insufficient to "mention[] it in the most skeletal way." *Perioperative Servs.*, 57 F.4th at 1067 (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.")) (internal quotation marks omitted). Given that his oral Rule 50(a) motion was the first time that Defendant Giuliani ever even hinted at this defense, Plaintiffs could not fairly have been expected to respond to Defendant Giuliani's counsel's citation-free statements that "case law [he is] familiar with" supported this new argument. Meanwhile, at that point in the case, Defendant Giuliani had been aware of Plaintiffs' intention to rely on this evidence to quantify their IIED damages since at least October 6, 2023, when Dr. Humphreys' first supplemental report was produced, and had never moved to exclude it, or otherwise raised this objection at any of the many opportunities he had before the close of evidence. His "single, conclusory sentence," was not enough to raise the issue at the Rule 50(a) stage, *Masias v. EPA*, 906 F.3d 1069, 1077 (D.C. Cir. 2018) (internal quotation marks omitted), and because it was not properly raised at the Rule 50(a) stage, this argument is not properly before the Court at the Rule 50(b) stage.

Even if it were not waived, Defendant Giuliani's statute-of-limitations argument is foreclosed by the effect of the Default Judgment, which—Defendant Giuliani concedes—had the effect of striking his answer and affirmative defenses, including the statute of limitations. Ex. A at

37:15–16. ("I understand the Court has stricken our answer in that defense, but for purposes of appeal, I would make that argument now.").[5] That concession is correct: this Court's entry of default judgment on liability had the effect of striking Defendant Giuliani's answer and affirmative defenses, leaving as the only question—as far as liability is concerned—whether Plaintiffs' allegations stated a plausible claim for relief on the face of the Amended Complaint, taking its allegations as true and drawing all reasonable inferences in Plaintiffs' favor. ECF No. 119, at 2–3. Had Defendant Giuliani wished to litigate a statute-of-limitations defense in this case, he could have complied with his discovery obligations, permitted Plaintiffs to develop a factual record on which such a defense could be litigated, and affirmatively prosecuted the defense through trial. Obviously, he did not. Defendant Giuliani's choice to flout his preservation and discovery obligations has consequences, including the inability to mount a statute-of-limitations defense (among other affirmative defenses). Therefore, Defendant Giuliani is correct that he can make this argument only "for purposes of appeal," because before any court could consider it, that court would first have to vacate the Default Judgment as an abuse of discretion. *See, e.g.*, *O'Connell v. Fernandez-Pol*, 542 F. App'x 546, 547 (9th Cir. 2013) (where a statute of limitations defense is

---

[5] Other than the stricken Answer, Defendant Giuliani did not make a statute-of-limitations defense at any time before the Rule 50(a) Motion, including: in his motion to dismiss (ECF No. 26-2); in the parties' joint pre-trial statement, in which Plaintiffs specified they would be asking for IIED compensatory damages beginning in 2020 (ECF No. 105 at 4, 20); in his final pretrial objections (ECF No. 119 at 15–16 (noting that "Giuliani does not address plaintiffs' IIED claim")); or during the pre-trial conference, including after Plaintiffs' counsel explained in response to questions about Dr. Humphreys' analysis but unrelated to any argument about statute of limitation that they "always argued from the start that intentional infliction of emotional distress has a different statute of limitations; started as early as December 3rd" (ECF No. 122 at 50:7–11). Nor did Defendant Giuliani lodge objections to any of the IIED-related jury instructions, including that the jury, for purposes of IIED compensatory damages, "may consider harm caused by Defendant Giuliani and his co-conspirators that occurred anytime after December 23, 2018." ECF no. 105-4 at 23.

foreclosed by Rule 37 sanctions, the only question for appeal is whether the sanctions were appropriate).[6]

The law-of-the-case doctrine also bars Defendant Giuliani's statute-of-limitations argument. In both of the cases he cites, the non-defamation torts were held to be duplicative of the defamation torts because they were premised on identical elements of proof. *See Browning v. Clinton*, 292 F.3d 235, 244 (D.C. Cir. 2002) (tortious interference claim based solely on statements alleged to be defamatory); *Hanoch Tel-Oren v. Libyan Arab Republic*, 517 F. Supp. 542, 550 (D.D.C. 1981), *aff'd sub nom. Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774 (D.C. Cir. 1984) (torts stemming from same conduct). The Court previously reached the opposite conclusion here, holding that the claims require different elements of proof and that Plaintiffs sufficiently "pleaded their IIED claim based on the course of conduct causing Plaintiffs extreme mental distress." ECF No. 119 at 15 (cleaned up); *see also* ECF No. 31 at 22–23 (citing cases). Instead, as the Court already held, the course of conduct undergirding the IIED claim—and the harm and damages considered by the jury[7]—was distinct and separate from the statements that the Court determined were actionable as defamation, and was premised on outrageous conduct from at least December

---

[6] The Default Judgment Order bars the argument for another, independent reason. In the Default Judgment Order, the Court reasoned Defendant Giuliani's choice to refuse to engage in discovery "severely hampered" Plaintiffs' ability to amass evidence related to their IIED claim, including to demonstrate the full scope of conduct. ECF No. 94 at 36. The natural consequence of that default is that all of the allegations of the Amended Complaint are conceded, and the Court already found that those allegations sufficiently state a claim for IIED. ECF No. 31 at 22–23; *see also* ECF No. 119 at 15–16. Defendant Giuliani is barred by law of the case from arguing, as he attempts to do here, that Plaintiffs had any additional burden with respect to IIED liability.

[7] The Court instructed the jury that "the amount of compensatory damages you award for defamation should only consider the amount to compensate plaintiffs for harm to their reputation and ***must not include any harm relating to the emotional distress plaintiffs suffered***." ECF No. 137 at 9 (emphasis added); *see also* ECF 105-4 at 25.

3, 2020, through the trial itself. *See, e.g.*, ECF No. 22 ¶¶ 4–6, 12, 38–39, 40, 46 n.31, 53 n.38, 57, 8, 98–101, 139-142, 151, 153, 173–77, 178–86; *see also* Ex. B at 99:13–100:11.[8]

## IV. Defendant Giuliani Is Not Entitled to Judgment as a Matter of Law or a New Trial on the Award of IIED Damages.

Defendant Giuliani argues that Plaintiffs "were required to have an expert testify as to how much of their emotional harm was caused by Giuliani as opposed to other sources that pre-dated Giuliani's alleged conduct." Motion at 6. The Court can, and should, easily reject this argument.

During the oral Rule 50(a) Motion on IIED damages, Defendant Giuliani moved "for a directed verdict on any ***future*** emotional harm or mental anguish damages for the plaintiffs based on lack of competent evidence" because there was "no expert testimony testifying as to ***future*** emotional harm or mental anguish damages" and acknowledged that "***there is no need for an expert to testify***" about "***past*** mental anguish damages." Ex. A at 37:17–25 (emphasis added). Defendant Giuliani's Motion seemingly attempts to argue for the first time that Plaintiffs were obligated to proffer expert testimony for purposes of establishing past emotional harm too. Because Defendant Giuliani did not raise it at the Rule 50(a) stage, the sole related argument properly before the Court is whether Plaintiffs were required to provide an expert for purposes of *future* harm. *Huthnance*, 793 F. Supp. 2d at 197. They were not, and Defendant Giuliani is precluded from arguing otherwise.

Defendant Giuliani's argument attempts to impose a new burden on Plaintiffs post-trial that is contrary to the legal standard to which he agreed at trial. Defendant Giuliani did not object to any of the jury instructions relating to IIED,[9] including to the Court's instruction that "Plaintiffs'

---

[8] An excerpted copy of the transcript from the morning of December 13, 2023 is attached as Exhibit B.

[9] *See* ECF No. 105-5 at 6 & 23; ECF Nos. 117–118.

burden is to provide a reasonable basis from which you can estimate their compensatory damages"
and, "for the subset of damages plaintiffs seek for future losses, plaintiffs must establish those
damages by a preponderance of the evidence" standard, which means that it is "more likely so than
not so." ECF No. 137 at 8. Defendant Giuliani has waived the right to argue that the Plaintiffs were
required to prove IIED damages with expert testimony because he did not make that argument
with respect to jury instructions on Plaintiffs' burden. Fed. R. Civ. P. 51(b), (c) (a party must object
to a jury instruction "on the record, stating distinctly the matter objected to," and "before the
instructions and [closing] arguments are delivered").

Defendant Giuliani is wrong that the law required Plaintiffs to proffer expert testimony to
do so. As the Motion explicitly states, expert testimony is only necessary "'in cases presenting
medically complicated questions due to multiple and/or other preexisting causes[.]'" Motion at 5–
6 (brackets in original) (citation omitted). Defendant Giuliani does not, and cannot, point to any
"medically complicated questions" implicated by the evidence in this case. "[I]t does not take an
expert to confirm the jury's common sense with respect to both" the existence and cause of
emotional and physiological injury that are "hardly surprising or unexpected in light of the" alleged
conduct. *Daskalea v. District of Columbia*, 227 F.3d 433, 444 (D.C. Cir. 2000). Nor does or can
Defendant Giuliani point to any "preexisting" condition that pre-dated his IIED-related conduct,
which began on December 3, 2020. The only attempt he makes is to claim there were "multiple
actors," specifically The Gateway Pundit, making "defamatory statements regarding the Plaintiffs
that were identical to those made by Giuliani and his alleged co-conspirators" but which "pre-
dated" Defendant Giuliani's conduct. Motion at 6. But the IIED damages are distinct from and
pre-dated the "defamatory statements" and the harm they caused, as the Court explained to the
jury in an unchallenged jury instruction:

> When determining the amount of damages to award for this claim of intentional emotional distress, you must not consider any of the reputational harm for which you have already awarded compensatory damages for defamation. In considering damages for intentional infliction of emotional distress, you may consider harm caused by Mr. Giuliani and his co-conspirators that occurred any time after December 3, 2020.

ECF No. 137 at 8. There is no evidence in the record, and the Motion does not cite to any, of anyone (including the Gateway Pundit) who engaged in any similar behavior that "pre-dated" December 3, 2020. *See Freeman v. Hoft*, No. 4:21-cv-01424 (E.D. Mo. Dec. 5, 2021), ECF No. 1-2 (Gateway Pundit lawsuit reflecting publication of first article only after Defendant Giuliani's conspiracy launched). Moreover, Defendant Giuliani was able to argue this point to the jury in closing, relying on the Gateway Pundit complaint, that other causes contributed to Plaintiffs' damages. Ex. A at 96:20–104:13. Defendant Giuliani has failed to provide any legal basis to support his argument that Plaintiffs were obligated to proffer expert opinion in this case.

Finally, Defendant Giuliani's claim that there was "no competent evidence of emotional distress" is wrong, and directly contrary to the experience of anyone who listened to the Plaintiffs testify about the "mental pain and suffering, fear, inconvenience, nervousness, indignity, insult, humiliation, or embarrassment that each plaintiff suffered because of Mr. Giuliani and his co-conspirators' conduct." Motion at 5; ECF No. 137 at 8. Ms. Freeman testified, for example, about feeling "terrorized" after receiving hundreds of hateful messages in December 2020, saying: "I'm just scared like people are coming to kill me. They got my address. You know, you saw they had my phone number. They had my name, I just, I was always scared."[10] Ms. Freeman testified that she does not feel safe using her name anymore,[11] and that as a result of her fear she doesn't "have

---

[10] ECF No. 146 (Dec. 13, 2023 PM Transcript) ("Dec. 13 PM Tr."), at 120:4–11.

[11] *Id*. at 137:16–20.

a life."[12] Likewise, Ms. Moss testified that they "instantly felt like a pariah in the office" and that it "was very hard for me to remain professional and not break down, not cry" or suffer from panic attacks. Ex. C. at 53:14–54:5.[13] Ms. Moss explained how she "secluded" herself from friends and loved ones, and found herself "stuck" in a never-ending "pattern of cry, eat, sleep, cry, eat, sleep."[14] She cannot have a normal life: "I am always afraid, and I don't trust anybody."[15] Such testimony—standing on its own, without any expert testimony—is more than sufficient to sustain an award of IIED damages, and defeats any argument that the Court should (or could) overturn the jury's verdict. *See David v. District of Columbia*, No. 02-1145 (RWR), 2006 WL 1582277, at *2 (D.D.C. June 6, 2006) (rejecting motion for a new trial based on causation argument as "meritless" because "the jury could have reasonably inferred that [the plaintiff] had experienced recurring nightmares, sleeplessness, and crying spells since the night of the incident on June 11, 2001").[16]

---

[12] *Id.* at 146:16–20.

[13] An excerpted copy of the transcript from the morning of December 12, 2023 is attached as Exhibit C.

[14] *Id.* at 63:22–64:20.

[15] *Id*. at 62:21–63:4.

[16] To the extent Defendant Giuliani is attempting to resuscitate a causation defense by arguing Plaintiffs have a burden to prove causation for purposes of liability, that argument is barred by the Default Judgment Order. As the Court explained in its December 7, 2023 pre-trial order when Defendant Giuliani attempted to make a similar argument, Defendant Giuliani "muddles the 'categorical distinction between the element 'proximate cause,' as it pertains to the assignment of liability in the first instance, and 'proximate cause' as it relates to the ministerial calculation of damages in the context of a default judgment.'" ECF No. 119 at 6 (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992)). As the Court instructed the jury (with another instruction to which Defendant Giuliani did not object), "the Court already has determined that his actions caused each plaintiff to suffer severe emotional distress" by granting default judgment. ECF No. 137 at 8 (emphasis added); *see also id.* at 2 ("caused Ms. Freeman and Ms. Moss to suffer severe emotional distress"). The only, limited, causation argument left for Defendant Giuliani post-default judgment relates to the "ministerial calculation" of damages, not the wholesale causation argument he attempts to resurrect in his Motion.

## V.     Defendant Giuliani Is Not Entitled to Judgment as a Matter of Law Relating to the Expert Testimony of Dr. Humphreys.

Defendant Giuliani's final argument in his Motion is that the Court should have struck the testimony of two of Plaintiffs' witnesses—Regina Scott of Jensen Hughes, who testified about her monitoring of online threats and commentary about Plaintiffs, and Dr. Ashlee Humphreys, the sole expert in the case who estimated the cost to repair Plaintiffs' reputations in light of Defendant Giuliani's statements about them. The Motion asks only to strike their testimony and makes no attempt to explain why excluding their testimony would warrant overturning the jury verdict. Because Defendant Giuliani has not even attempted to meet the rigorous standards Rules 50 and 59 require, the Court should reject this argument. 11 Wright & Miller, Fed. Prac. & Proc. Civ. § 2803 (3d ed.) ("the burden of showing harmful error rests on the party seeking the new trial"); *Huthnance*, 793 F. Supp. 2d at 207 (denial of new trial where defendants "provide no new reasons to believe the Court's decisions on these matters were incorrect much less that they require a new trial"); *McGill,* 203 F.3d at 845 (Rule 50(b) only if evidence is "'so one-sided that reasonable men and women could not' have reached a verdict in plaintiff's favor"); *Sedgwick v. Giant Food, Inc.*, 110 F.R.D. 175, 177 (D.D.C. 1986) (verdict not "seriously erroneous" or a "clear miscarriage of justice" because it was "by no means clear that the jury's verdict" was based on the challenged testimony, as opposed to other evidence that could have led to the verdict) (cleaned up).

But even if the Court were to consider Defendant's arguments respecting Plaintiffs' expert testimony, it should reject them.

*First*, Defendant Giuliani waived any argument relating to the testimony of Ms. Regina Scott by omitting it from his Rule 50(a) motion. The only objection he raised as to Dr. Humphreys was the reliability of her "impressions" model. Ex. A at 38:2–6. The Court should reject any other objections to the testimony of Dr. Humphreys and Ms. Scott because they were not presented at

the Rule 50(a) stage and are accordingly not properly before this Court. *See Huthnance*, 793 F. Supp. 2d at 207.

*Second*, Defendant Giuliani provides no basis for the Court to reconsider its denial of the argument in Defendant Giuliani's Rule 50(a) Motion as to the reliability of Dr. Humphreys' impressions model. Motion at 7, nn.8–9. Nor could he. His objection to the reliability of Dr. Humphreys' "impressions" model was untimely when he first made it (and when the Court first rejected it) at the close of his cross-examination on December 13, 2023: Plaintiffs disclosed that model on July 28, 2023, and the Court set a deadline for motions *in limine* of October 23, 2023. Defendant Giuliani had ample time to object to Dr. Humphreys' "impressions model" but did not do so; indeed, he did not even depose her. As Defendant Giuliani expressly admits, he was able to raise these issues to the jury through his cross-examination, which is where his quibbles with her methods or bases were appropriately raised. For all of the reasons stated in Dr. Humphreys' testimony on direct, cross, and redirect, her methods were reliable based on scientific methods and opinions that were fully disclosed, including publicly available data that more than sufficiently satisfies the requirements of Rule 702. His attempt to cure strategic choices he now regrets provides no basis to strike her testimony belatedly, let alone to receive the extreme remedy of overturning a jury verdict or receiving a new trial.

*Third*, the Court should reject Defendant Giuliani's claims that Dr. Humphreys' entire testimony should be stricken because she "relied on the work done" by Ms. Scott – an argument not raised in the Rule 50(a) Motion. Motion at 6–7 (citing ECF No. 146 ("Dec. 13 PM Tr."), at 23:16–24:8). In fact, Defendant Giuliani never objected to Dr. Humphreys' reliance on information compiled by Jensen Hughes despite that reliance having been disclosed in Dr. Humphreys' July

28, 2023 expert report and the October 6, 2023 supplement to that report. Even if this argument had been preserved at the Rule 50(a) stage for Rule 50(b) consideration, it would be waived.

In any event, the Jensen Hughes information that Dr. Humphreys testified she considered—specifically "social media and other online information related to some key search terms like Ruby Freeman and Shaye Moss"—is precisely the type of information on which experts are entitled to rely without the need for additional expert disclosures. *See, e.g.*, *United States ex rel. Landis v. Tailwind Sports Corp.*, No. 10-CV-00976 (CRC), 2017 WL 5905509, at *7 (D.D.C. Nov. 28, 2017) (expert reliance on independent compilations of media and online information is a "sound and reasonable" foundation for calculating impressions); *see, e.g., Huthnance*, 793 F. Supp. 2d at 207 ("Federal Rule of Evidence 703 permits a testifying expert to rely on reports prepared by others for the specific purpose of providing a basis for the testifying expert's opinions as long as they are 'of a type reasonably relied upon by experts in the particular field'"). The remedy for any defect as to reliability or accuracy of those supporting materials is cross-examination, not exclusion, and it is certainly *not* appropriate to overturn the jury's verdict on that basis. *Huthnance*, 793 F. Supp. 2d at 207 (no new trial based on undisclosed underlying expert relied on by testifying expert because "nothing prevented counsel from challenging those conclusions by cross-examining the parroting expert witness"); *Eastman v. Wolf*, No. 87-CV-1952-OG, 1988 WL 35361, at *2 (D.D.C. Apr. 5, 1988) ("Defendants were free to present contradictory evidence and impeach the witness" and their "failure to do so persuasively does not form the basis for a new trial"). Nor does, or can, Defendant Giuliani argue that Dr. Humphreys' reliance on this information from Jensen Hughes would necessitate striking her *entire* testimony. Dr. Humphreys confirmed that the absence of that information "would have changed a little bit of the characterization of the social media commentary, but **the impressions numbers and the damages**

*numbers would remain exactly the same*." *See* Dec. 13 PM Tr. at 23:16–26:19. Even if, *arguendo*, striking *some* portion of Dr. Humphreys' testimony were appropriate, that would not prevent the jury from hearing any of her ultimate conclusions.

Finally, Defendant Giuliani's argument about Ms. Scott, also not properly before the Court, boils down to insisting that she "claimed" her work "was, essentially, an expert report and required specialized knowledge and expertise" and that the Court should have stricken her testimony because she was not disclosed as an expert. Motion at 6–7. Even had Ms. Scott said her work required "specialized knowledge" (which were the words of Defendant Giuliani's counsel, not hers (*see* ECF No. 145 ("Dec. 11, 2023 PM Transcript") at 72:1–5, 114:25–115:6), whether she qualifies as an expert under the federal rules is a legal question for the Court. As the Court noted during the trial, Ms. Scott was not offering any sort of an opinion that would require her admission as an expert, she was "testifying as a fact witness about what she is seeing, and as a fact witness, not an expert witness." *See, e.g. id*. at 76:10–20; 106:1–4; *see also id*. at 118:19–119:2 ("Being an expert in a field doesn't mean that somebody is testifying as an expert under Federal Rule of Evidence 702"). The sole case Defendant Giuliani cites does not have anything to do with Rule 50 or Rule 59 motions and relates only to excluding testimony of a witness who was attempting to, unlike Ms. Scott, offer "opinions" based on "scientific, technical, or other specialized knowledge" rather than "rationally based on" her own perception. *Jones v. NVR Inc.*, No. CV 20-453 (CKK), 2022 WL 951338, at *7 (D.D.C. Mar. 29, 2022) (cleaned up).

## CONCLUSION

The Motion should be denied.

Respectfully submitted.

*/s/ Michael J. Gottlieb*
**WILLKIE FARR & GALLAGHER LLP**
Michael J. Gottlieb (974960)
Meryl C. Governski (1023549)
J. Tyler Knoblett (1672514)
Timothy P. Ryan (1719055)
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com
mgovernski@willkie.com
anathan@willkie.com
jknoblett@willkie.com

**WILLKIE FARR & GALLAGHER LLP**
Aaron E. Nathan (1047269)
M. Annie Houghton-Larsen*
787 7th Avenue
New York, New York
Tel: (212) 728-8164
Fax: (212) 728-9164
anathan@willkie.com
mhoughton-larsen@willkie.com

**UNITED TO PROTECT DEMOCRACY**
John Langford*
Rachel Goodman*
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
john.langford@protectdemocracy.org
rachel.goodman@protectdemocracy.org

**DUBOSE MILLER LLC**
Von A. DuBose*
75 14th Street NE, Suite 2110
Atlanta, GA 30309
Tel: (404) 720-8111
dubose@dubosemiller.com

**UNITED TO PROTECT DEMOCRACY**
Christine Kwon*
555 W. 5th St.
Los Angeles, CA 90013
Tel: (919) 619-9819
Christine.kwon@protectdemocracy.org

**UNITED TO PROTECT DEMOCRACY**
Sara Chimene-Weiss*
7000 N 16th Street Ste. 120, #430
Phoenix, AZ 85020
Tel: (202) 579-4582
sara.chimene-weiss@protectdemocracy.org

*Admitted pro hac vice*

**Attorneys for Plaintiffs Ruby Freeman and Wandrea' Moss**

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on March 5, 2024, the foregoing was served on all parties through their counsel of record by filing it with the Court's CM/ECF system.

*s/ Michael J. Gottlieb*    
